1    Robert N. Phillips (SBN 120970)
      Ethan B. Andelman (SBN 209101)
2    HOWREY SIMON ARNOLD & WHITE, LLP
      525 Market Street, Suite 3600
3    San Francisco, CA 94105
      T: (415) 848-4900
4    F: (415) 848-4999

5    David A. Rammelt
      Susan J. Greenspon
6    Christopher T. Sheean
      Dawn M. Beery
7    KELLEY DRYE & WARREN LLP
      333 West Wacker Drive
8    Suite 2600
      Chicago, IL 60606
9    T: (312) 857-7070
      F: (312) 857-7095

Attorneys for Defendant
AMERICAN BLIND AND WALLPAPER
FACTORY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation, | CASE NO. C 03-5340 JF |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY** |
| v. | |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, INCLUSIVE, | Date: March 29, 2004<br>Time: 9:00 a.m.<br>Courtroom 3 |
| Defendant. | |

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................................ 1

I.   INTRODUCTION ............................................................................................................... 2

II.  FACTUAL BACKGROUND ............................................................................................. 3
    A.  The Internet And The World Wide Web ................................................................. 3
    B.  The Business Of Defendant American Blind .......................................................... 3
    C.  The Business Of Defendant Google ........................................................................ 5
    D.  Google's Conduct And The Harm To Plaintiff ....................................................... 6
    E.  Google's Lawsuit ..................................................................................................... 8
    F.  American Blind's Lawsuit ....................................................................................... 9

III. ARGUMENT ....................................................................................................................... 9
    A.  This Court Should Dismiss Google's Improper Anticipatory Action ..................... 9
    B.  The "First To File Rule" Does Not Save Google's Forum Shopping .................... 11
    C.  This Court Should Exercise Its Discretion And Dismiss Google's Improper
        "Declaratory Judgment" Action ............................................................................ 13
    D.  If This Court Will Not Dismiss Google's Complaint, Then It Should Stay This
        Action Pending Resolution Of American Blind's New York Action ................... 14

IV.  CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

## **CASES**

Albie's Foods, Inc. v. Menusaver, Inc., 170 F. Supp. 2d 736
(E.D. Mich. 2001) ........................................................................................................9, 12, 13

Essex Group, Inc. v. Cobra Wire & Cable, Inc., 100 F. Supp. 2d 912
(N.D. Ind. 2000).................................................................................................................... 10

First Fishery Development Service, Inc. v. Lane Laboratoriess USA, Inc.,
1997 WL. 579165 (S.D. Cal. July 21, 1997)..........................................................9, 13, 14

Galileo International Partnership v. Global Village Communication, Inc.,
1996 WL. 452273 (N.D. Ill. Aug. 8, 1996)......................................................................... 10

NSI Corp. v. Showco., Inc., 843 F. Supp. 642 (D. Or. 1994) ......................................... 12

Technical Tape Corp. v. Minnesota Mining and Manufacturing Co.,
135 F. Supp. 505 (S.D. N.Y. 1955) ..................................................................................... 13

Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746
(7th Cir. 1987) ........................................................................................................................ 12

Ven-Fuel, Inc. v Department of the Treasury, 673 F.2d 1194 (11th Cir. 1982) ............... 10

Z-Line Designs, Inc. v. Bell'O International LLC, 218 F.R.D. 663
(N.D. Cal. 2003) ........................................................................................................9, 10, 11

Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associate, Inc., 2001 WL.897452
(6th Cir. July 31, 2001) ......................................................................................................... 12

## **STATUTES**

28 U.S.C. § 2201................................................................................................................ 13

Lanham Act, 15 U.S.C. §§ 1114(1) ................................................................................... 8

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)..................................................... 8

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 29, 2004, at 9:00 a.m., in Courtroom 3 of the above-captioned court, Defendant American Blind and Wallpaper Factory, Inc. will and hereby does move to dismiss, or alternatively, to stay, Plaintiff Google's Complaint because it is an improper anticipatory filing and because the declaratory relief sought by Google is inappropriate.

The motion will be based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and upon such other evidence as may be presented at the hearing on this matter.

## SUMMARY OF ARGUMENT

To deprive the Defendant of its rightful choice of forum, Google rushed to file this declaratory action as a preemptive measure against the lawsuit Defendant had earlier informed Google it intended to file. Now that the Defendant has filed a separate lawsuit in the Southern District of New York, this anticipatory action should be dismissed.

Even aside from the fundamental unfairness and impropriety of Google's procedural maneuvering, this action should be dismissed because it will not fully resolve the present controversy. Defendant's lawsuit against Google and others alleges federal trademark infringement and dilution, tortious interference with prospective economic advantage, violations of New York state law, and unfair competition. Unlike Plaintiff's action here, which in piecemeal fashion seeks a ruling in favor of Google's general advertising policies rather than a true adjudication of the parties' rights, the action filed by Defendant in New York will finally and forever resolve all of the controversy between these parties (as well as other involved parties deliberately left out of the instant action by Google). Because Google's action does not seek any coercive relief, this Court should exercise its discretion and refuse to hear this case in favor of the action filed by Defendant in New York.

## I.
## INTRODUCTION

In the case presently before this Court, Plaintiff Google, Inc. ("Google") seeks a sweeping judicial declaration that "its current policy regarding the sale of keyword-triggered advertising does not constitute trademark infringement." (Pl. Cmpl. at ¶22.) Although the only named defendant is American Blind & Wallpaper Factory, Inc. (d/b/a decoratetoday.com) ("American Blind"), Google's Complaint does not restrict the relief sought to its dispute with American Blind, but rather seeks a more global stamp of approval of its marketing practices. In other words, Google does not ask this Court to declare that it has not infringed upon or otherwise violated American Blind's *specific* marks, but rather that Google generally has a "right to sell keyword-triggered advertising to its customers." (Pl. Cmpl. at ¶¶20-23.)

This fatal overbreadth aside, Google's Complaint should be dismissed for at least two reasons. First, the Complaint is an improper anticipatory filing. As federal courts in this Circuit and elsewhere have recognized under similar settings, this kind of declaratory action – which is accorded less deference by federal courts – is nothing more than forum shopping. Any doubt about Google's motive here is resolved when it is revealed that this action followed on the heels of a written statement by American Blind's lawyer (in Washington, D.C.) on November 12, 2003, that American Blind intended to file a lawsuit if a settlement between the parties could not be reached. Despite the fact that the parties were then still engaged in ongoing settlement negotiations, Google quickly filed this lawsuit in order to prevent American Blind from selecting the forum in which to litigate the infringement and dilution of its own trademarks.

Second, the piecemeal, one-sided relief sought by Google should give way to the legitimate lawsuit filed by American Blind against Google and others in the United States District Court for the Southern District of New York. In the New York lawsuit, which seeks more comprehensive judicial relief, American Blind alleges that Google and a number of other Internet service providers have committed trademark infringement and dilution, unfair competition, and tortious interference with prospective economic advantage by, among other things, selling the AMERICAN BLIND and AMERICAN BLINDS name and marks to Defendant's competitors

and, at the same time, manipulating Google's search engine "results" to misleadingly divert consumers away from American Blind's products and services. The lawsuit filed by American Blind in New York will more fully and completely resolve the dispute between the parties than this declaratory judgment action filed by Google. Furthermore, American Blind's lawsuit includes additional claims and legal theories, and names parties in addition to Google.

The suspect "declaratory" nature of Google's Complaint, coupled with the disparity of parties and legal issues between this lawsuit and American Blind's lawsuit, weighs against strict adherence to the "first-to-file" rule and in favor of dismissal of this action in order to allow American Blind's lawsuit to proceed to judgment. Accordingly, American Blind asks this Court to exercise its discretion and refuse to hear this declaratory judgment action in favor of the action filed by American Blind in the Southern District of New York.

## II.
## FACTUAL BACKGROUND

### A.    The Internet And The World Wide Web

The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially suited to displaying images and sound, in addition to text. Much of the information on the World Wide Web is stored in the form of "webpages," which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer or Netscape Navigator. "Websites" are locations on the World Wide Web containing a collection of webpages. A webpage is identified by its own unique Uniform Resource Locator ("URL") – for example, www.americanblinds.com – that ordinarily incorporates its site's "domain name" (*e.g.* "American Blind"). It is estimated that 65 million American households use the Internet, and that $92 billion is spent by consumers each year in connection with Internet purchases.

### B.    The Business Of Defendant American Blind

American Blind is the largest direct-to-consumer retailer of custom window treatments and wall coverings in the United States and on the Internet. American Blind, in conjunction with

1  its predecessor companies, has been in the home decorating business for over a half century.
2  Today, American Blind has over six million customers nationwide and generates annual revenues
3  in excess of $100 million.
4      American Blind spends millions of dollars each year advertising its brand, including
5  advertising in over forty national magazines, on national television and radio, and through
6  millions of direct mailings and catalogs distributed throughout the United States.
7      Since at least as early as 1986, and long prior to the acts of Google that are at issue,
8  American Blind adopted and used, and has continued to use, the names and marks AMERICAN
9  BLIND and AMERICAN BLINDS (hereinafter collectively identified as "AMERICAN BLIND")
10 in connection with home decorating products and related services which have been offered for
11 sale and sold in interstate commerce in the United States.  In addition, American Blind is the
12 owner of and has exclusive rights to the following trademarks registered with the United States
13 Patent and Trademark Office: AMERICAN BLIND & WALLPAPER FACTORY (Reg. No.
14 2,022,925, December 17, 1996), AMERICAN BLIND FACTORY (Reg. No. 1,463,548,
15 November 3, 1987), and DECORATETODAY (Reg. No. 2,470,542, July 17, 2001).  Since the
16 adoption and first use of the AMERICAN BLIND name and marks, American Blind has
17 continuously used them by prominently displaying them on the packaging and advertising for
18 American Blind's products and services.
19     American Blind was among the first to successfully exploit the business potential of the
20 Internet.  Since 1997, American Blind has continuously operated distinctive Internet websites,
21 located, among other places, at www.americanblinds.com, through which the company sells
22 blinds and other window treatments, wall coverings and other home decorating products and
23 related services.  Today, American Blind owns numerous Internet domain names, including, but
24 not limited to: americanblind.com, americanblinds.com, americanblindfactory.com,
25 americanblindandwallpaper.com, americanblindandwallpaperfactory.com and decoratetoday.com.
26 If a consumer using an Internet web browser types in any of the company's Uniform Resource
27 Locators ("URLs") – for example, if a consumer types www.americanblinds.com into his or her
28 web browser address bar – the consumer is directed to American Blind's web servers where he or

1 she can view, browse and purchase the company's products and services.

2 A significant and critical amount of American Blind's business is conducted via the
3 Internet. The company estimates that, each day, it receives in excess of thirty thousand (30,000)
4 "hits" or visits by customers or potential customers to its Internet website. American Blind has
5 spent over $10 million in developing its website, and spends in excess of $1 million per year in
6 maintaining, enhancing and updating its website. In addition, American Blind employs over fifty
7 (50) full-time employees in connection with its Internet operations, all of whom are rigorously
8 trained and supervised.

9 American Blind has vigorously protected its AMERICAN BLIND name and marks,
10 particularly in connection with commerce on the Internet. For example, when a direct competitor
11 tried in 2001 to incorporate the AMERICAN BLIND name and marks in the competitor's
12 website, American Blind filed suit and obtained a Permanent Injunction Order. Specifically, in
13 recognition of the protection and goodwill associated with these marks, the United States District
14 Court for the Eastern District of Michigan permanently enjoined this competitor from using "the
15 name 'American Blind' or the word 'American' in any variation or combination with the word
16 'Blind,' either singular or plural…." (Permanent Injunction Order dated March 16, 2001 (Hon.
17 Gerald E. Rosen), attached as Exhibit 1 to the Declaration of David A. Rammelt in Support of
18 Defendant's Motion to Dismiss ("Rammelt Decl.")).

19 **C.    The Business Of Defendant Google**

20 Internet customers who are searching for a specific company, product, or information, but
21 who do not know the exact domain name or website address at which it may be found, may use
22 "keywords" and/or "search engines" to locate websites which match the keywords sought by the
23 customer. Keywords are the textual terms that a consumer enters to locate the desired website or
24 domain name. A search engine, such as Google, checks the keywords against its databases and
25 produces a search results page, which lists the websites, in order of decreasing relevance with the
26 most relevant websites listed first, that match the customer's keyword search.

27 Google's Internet search engine, which is free to consumers, is the most widely-used
28 Internet search engine in the world. It answers 200 million search requests each day. Exploiting

1  this penetration, Google sells a number of products and services to individuals, businesses, and
2  educational and governmental entities. One of the programs Google offers to its business
3  customers is a keyword-triggered advertising program entitled "AdWords."

4      Google's "AdWords" program enables advertisers to purchase or bid on keywords that
5  generate an advertising link (known as a "Sponsored Link") to the purchaser's website. For
6  example, American Blind may bid on the keyword "wallpaper" through Google's "AdWords"
7  program so that American Blind's website will be the first listed "Sponsored Link" when a
8  customer searches for the keyword "wallpaper" to find websites that sell wallpaper. Google posts
9  the "Sponsored Links" on the top and margins of its search engine "results" page based on
10 whichever keywords appear in user queries posted to Google's Internet search engine.

11     Google's advertising customers then pay Google based on the number of Internet users
12 who click on these advertising links. Google's advertisers select the keywords that will trigger
13 their advertisements, but Google profits every time an Internet user clicks on a "Sponsored Link"
14 for one of Google's advertisers.

15 **D.**     **Google's Conduct And The Harm To Plaintiff**

16     American Blind has not given Google permission or a license to utilize AMERICAN
17 BLIND or any of American Blind's marks for the promotion or sale of its competitor's products.
18 Still, Google and certain of American Blind's competitors seek to exploit the reputation,
19 goodwill, and hard-earned popularity and success of American Blind. In an attempt to illegally
20 capitalize on American Blind's trademarks, Google has permitted certain of American Blind's
21 competitors to bid on advertising keywords that are identical or substantially similar to American
22 Blind's trademarks.

23     For example, a consumer can run a search on Google's search engine for "American Blind
24 and Wallpaper Factory," one of American Blind's registered marks, with the obvious intent of
25 locating and visiting American Blind's website. Nonetheless, the first "Sponsored Link" shown
26 on the Google search "results" page may be for one of American Blind's direct competitors, such
27 as TheBlindFactory.com. (*See e.g.*, Rammelt Decl., Exhibit 2). Similarly, if a consumer types
28 "American Blinds" in the Google search bar, they may be directed to a "results" page in which

the first two companies listed at the top are direct competitors – Justblinds.com and EZblinds.com – as are at least six of the eight companies – SelectBlinds.com, Blinds.com, eDirectBlinds.com, Homedepot.com, NetShutters.com and StarDecorating.com – listed along the margin. (*See, e.g.,* Rammelt Decl., Exhibit 3). Search Google for "americanblinds.com" – a domain name owned by and registered to American Blind – and the consumer is directed to search "results" that list EZblinds.com and JustBlinds.com at the top of the page. (*See, e.g.,* Rammelt Decl., Exhibit 4).

Google's search engine – which is also used by a number of other companies in one form or another – is designed and intended to divert and lure consumers from the websites that they intend to visit – *e.g.,* the American Blind website – to other websites owned by competing advertisers such as TheBlindFactory.com, *et al.* By design, Google and its advertisers profit when consumers click on competitors' links and visit an advertiser's site. None of this revenue, however, is paid to the owner of the trademark for whom the consumer was searching. Thus, Google and its advertisers are free riding on the goodwill and reputation of American Blind and other trademark owners.

Google's search engine is inherently deceptive and misleads consumers into believing falsely that the website links to which they are directed via manipulated search "results" are sponsored, authorized by, and/or originating with the trademark owner for which the user was searching, such as American Blind. The manipulated search "results" engineered by Google fail to inform the consumer that the companies listed may not be authorized and supplied by the trademark owner for which the user was searching.[1]

---

[1] In some cases, the competitor companies listed at the top or in the margins of these manipulated search engine "results" are nebulously identified as "Sponsored Links." This designation is as, if not more, confusing to consumers because Google does not indicate by whom these links supposedly are "sponsored." Consumers may believe falsely that American Blind or other mark holders "sponsor" or otherwise are affiliated with these links. Moreover, the "Sponsored Links" are deliberately designed to be virtually indistinguishable from the legitimate mark holders' website links. The actual links to the "Sponsored Links" are not a different color, nor are they a different typeface or font size. No meaningful effort is made to conspicuously separate the truth from the paid advertisements. Specifically, the Defendants could, but do <u>not</u>, advise the consumer that the so-called "Sponsored Links" are in fact paid advertisements that are neither sponsored by or affiliated with the mark holders.

1  American Blind's current customers have been and will likely continue to be confused
2  about the origin and sponsorship of the companies other than American Blind listed by Google in
3  its deceptive search engine "results." These deliberate acts constitute common law unfair
4  competition, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and
5  1125(a), dilution of American Blind's famous marks in violation Section 43(c) of the Lanham
6  Act, 15 U.S.C. § 1125(c), and tortious interference with prospective economic advantage.

7  As a result, beginning in July, 2002, American Blind, through its counsel, contacted
8  Google and demanded that Google cease all unauthorized use of its trademarks and/or
9  confusingly similar terms in its keyword Internet advertising. From July, 2002 through
10 November, 26, 2003, American Blind and Google exchanged a number of communications
11 regarding Google's infringement of American Blind's trademarks and possible solutions to the
12 parties' dispute. Most recently, on November 12, 2003, American Blind's counsel in
13 Washington, D.C. sent an e-mail to Google stating that American Blind believed that Google was
14 infringing its trademark and that American Blind would have no choice but to file a lawsuit if the
15 parties could not resolve their differences. (A copy of the November 12, 2003 e-mail is attached
16 as Exhibit 5 to the Rammelt Decl.) Google's response was to preempt American Blind's stated
17 intention by filing this lawsuit on November 26, 2003.

18 **E.    Google's Lawsuit**

19 Not surprisingly, the lawsuit filed by Google on November 26, 2003 – just weeks after
20 American Blind stated it would file suit – was filed in Google's backyard. Google's Complaint,
21 which is less than six pages long, seeks a far-reaching and global declaration from this Court that
22 "its current policy regarding the sale of keyword-triggered advertising does not constitute
23 trademark infringement." (Pl. Cmpl. at ¶22.) The relief sought by Google is not limited to the
24 dispute with American Blind, but rather this Court improperly is being asked to bless Google's
25 "AdWords" program and policies, without regard to the trademark owners that may be affected.
26 As a result, Google's Complaint is not a proper declaratory judgment action.

### F. American Blind's Lawsuit

On January 27, 2004, American Blind filed suit in the Southern District of New York against Google, America Online, Inc, Netscape Communications Corporation, Compuserve Interactive Services, Inc., Askjeeves, Inc., and Earthlink, Inc. for trademark infringement and dilution in violation of the Lanham Act and certain New York statutes, unfair competition, and tortious interference with prospective economic advantage. America Online, Inc, Netscape Communications Corporation, Compuserve Interactive Services, Inc., Askjeeves, Inc., and Earthlink, Inc. all utilize Google's search engine to "power" their own website's search function. In its case, American Blind seeks a preliminary and permanent injunction, monetary damages, and attorneys' fees and costs. (A copy of the Complaint filed by American Blind in the Southern District of New York is attached as Exhibit 6 to the Rammelt Decl.)

### III.
### ARGUMENT

### A. This Court Should Dismiss Google's Improper Anticipatory Action

There can be no serious dispute that the instant action was prompted by, and intended to preempt, the lawsuit threatened by American Blind on November 12, 2003. Almost a year of settlement discussion had occurred with no success, and then, only *after* American Blind's lawyer indicated a lawsuit was imminent if talks continued to falter, Google filed a hastily-assembled Complaint two weeks later. This timing speaks volumes.

The right of an aggrieved party to select the forum to adjudicate a violation of that party's rights is fundamental. Accordingly, federal courts in the Ninth Circuit and elsewhere routinely refuse to hear declaratory judgment actions when the circumstances indicate that they have been filed solely to deprive the injured party of his traditional choice of forum and timing. *See Z-Line Designs, Inc. v. Bell'O Int'l.* LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) ("[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse."); *First Fishery Development Service, Inc. v. Lane Labs USA, Inc.*, 1997 WL 579165 at * 2 (S.D. Cal. July 21, 1997); *see also Albie's Foods, Inc. v. Menusaver, Inc.*, 170 F. Supp. 2d 736, 739 (E.D. Mich. 2001);

*Essex Group, Inc. v. Cobra Wire & Cable, Inc.,* 100 F.Supp.2d 912 (N.D. Ind. 2000) (dismissing a first-filed declaratory judgment action in favor of a later filed infringement action); *Galileo Int'l. Partnership v. Global Village Communication, Inc.*, 1996 WL 452273 at * 3 (N.D. Ill. Aug. 8, 1996) (refusing to dismiss a later-filed infringement action despite the fact that there was an earlier-filed declaratory judgment action pending in another jurisdiction); *Ven-Fuel, Inc. v Dept. of the Treasury*, 673 F.2d 1194 (11th Cir. 1982) (dismissing a first-filed declaratory judgment action in favor of a later filed civil action where the first-filed declaratory judgment action was filed "in apparent anticipation of imminent judicial proceedings" by the government to collect a penalty).

In *Z-Line Designs, Inc.*, both a declaratory judgment action and a "coercive" action – *i.e.,* a more traditional action in which a party seeks judicial intervention to stop or remedy illegal conduct and award damages – arose out of the alleged infringement of copyright and trade dress rights. 218 F.R.D. at 664. The alleged infringer filed its declaratory judgment action first in this Court, but only after receiving a cease-and-desist letter from the copyright owner's counsel. *Id.* at 664-65. The owner of the copyright and trade dress rights subsequently filed an action for infringement in the District of New Jersey. This Court dismissed the first-filed declaratory judgment action holding that:

> Denial of defendant's motion to dismiss [the first-filed declaratory judgment action] would discourage pre-litigation settlement discussions. At a minimum, such a denial would encourage parties interested in protecting their intellectual property rights to file a complaint prior to attempting settlement. 'Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint.' . . . In addition, ***where as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first.***

*Id.* at 666-67 (emphasis supplied).

The application of this Court's rationale in *Z-Line Designs, Inc.* to the present case requires dismissal of the pending action. Just as in *Z-Line Designs, Inc.*, Google filed its declaratory judgment action only after receipt of a cease and desist letter from American Blind's

1  counsel and only after being informed by American Blind's counsel that the company would file

2  a complaint against Google unless the parties could resolve their differences. The sound logic

3  expressed by this Court in *Z-Line Designs, Inc.* is particularly applicable here, and thus Google's

4  Complaint for declaratory judgment should be dismissed in favor of American Blind's case

5  pending in New York.

6  **B.    The "First To File Rule" Does Not Save Google's Forum Shopping**

7  Google may argue that this case should proceed because it was filed "first." Ordinarily,

8  the first-filed case is indeed heard first. "The 'first to file' rule allows a district court to transfer,

9  stay or dismiss an action when a similar complaint has been filed in another federal court." *See*

10 *Z-Line Designs, Inc.*, 218 F.R.D. at 665. The rule, however, is seldom applied in circumstances

11 like these. In determining whether to follow the "first to file" rule, the court initially considers

12 three factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the

13 similarity of the issues." *Id.*

14 First, although the parties can probably agree that Google's Complaint technically was

15 filed first, American Blind's lawsuit followed a mere eight weeks later. Moreover, during the

16 interim, the parties had been engaged in active settlement discussions throughout the holidays and

17 into the New Year. American Blind's lawsuit, therefore, was filed shortly after a last-ditch effort

18 at settlement collapsed. Thus, the chronology of the two actions is inconsequential.

19 Applying the second factor, the parties in the two cases are *not* the same. As previously

20 described, American Blind has filed suit in New York against Google and five additional parties –

21 America Online, Inc, Netscape Communications Corporation, Compuserve Interactive Services,

22 Inc., Askjeeves, Inc., and Earthlink, Inc. At a minimum, the presence of these parties is essential

23 for a full and final resolution of this dispute. Each of these defendants use Google's search

24 engine to "power" their own website's search function and, therefore, each defendant is infringing

25 upon and diluting American Blind's trademarks.[2] In addition, each of these defendants is

---

26 [2] It is interesting to note the incestuous manner in which these defendants are careful not to infringe upon
each other. For example, if a consumer using Netscape's website types in the mark "American Blinds," the search
27 "results" page deceptively buries American Blind amongst competitors and so-called "Sponsored Links." (Exhibit 7,
Rammelt Decl.) Of course, the infringers are more careful with each other. If the same Netscape user types in
28 "America Online," the resulting search page is pristine, identifying America Online and AOL websites – no

1  profiting from the advertising revenue generated when an Internet user clicks on one of the
2  "Sponsored Links" offered by Google. As a result, if Google's "AdWords" program is found to
3  infringe upon and dilute American Blinds' trademarks, American Blind will not be able to obtain
4  complete relief here without the inclusion of the additional defendants in the litigation.

5  Application of the third factor also cuts against the "first to file" rule. While some of the
6  issues are similar between the cases, they are by no means identical. Because more parties are
7  involved, more issues and legal claims arise. For example, the manner in which certain of these
8  defendants display the "Sponsored Links" generated by Google is even more confusing to
9  consumers, which means that the technical evidence, survey evidence and payment/fee schedules
10 will all be the subject of different proofs. Since American Blind's Complaint includes a number
11 of defendants in addition to Google that are essential for a full and final resolution of this dispute,
12 the threshold criteria for application of the "first to file" rule are not met.

13 The equities also favor disavowing strict adherence to the rule. The "first to file" rule
14 will not be applied in circumstances where bad faith, anticipatory suit, and forum shopping exist.
15 *Id.* Other courts addressing analogous situations have similarly refused to apply the "first to file"
16 rule and have dismissed first-filed lawsuits. For example, in *Albie's Foods, Inc.,* the Eastern
17 District of Michigan stated that "[t]he 'first to file' rule is discretionary … and is not to be applied
18 'too rigidly or mechanically.'" 170 F. Supp. 2d at 740. Rejecting the first-filed action, that court
19 held that "a declaratory judgment action filed prior to an infringement action would serve no
20 useful purpose because the patent owner's right to a coercive remedy has accrued." *Id.* (citing
21 *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.* 819 F.2d 746, 749 (7th Cir. 1987); *see
22 also*, *NSI Corp. v. Showco., Inc.,* 843 F. Supp. 642, 646 (D. Or. 1994) (granting motion to dismiss
23 first-filed declaratory judgment action and stating "NSI took advantage of the fact that Showco
24 had deferred the filing of expensive and probably protracted litigation because of its belief that
25 settlement negotiations were under way"); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc.,
26 Inc.*, 2001 WL 897452 at *3-4 (6th Cir. July 31, 2001) (declining to apply the "first to file" rule
27 and stating "[a] plaintiff, even one who files first, does not have a right to bring a declaratory

28 "Sponsored Links" or competitors are found anywhere. (Exhibit 8, Rammelt Decl.)

- 12 -

C 03-5340 JF
MOTION TO DISMISS

judgment action in the forum of his choosing.").

In keeping with this precedent, this Court should refuse to apply the "first to file" rule because Google's only purpose in filing its declaratory judgment action was to preempt the right of American Blind to choose its forum. It is American Blind's rights that are being abridged. The harm that is accruing is being suffered by American Blind, not Google. Why then, should Google get to choose when and where the case is adjudicated? Under the law, it should not, and Google's complaint should be dismissed.

### C.  This Court Should Exercise Its Discretion And Dismiss Google's Improper "Declaratory Judgment" Action

Although an action for declaratory judgment pursuant to 28 U.S.C. § 2201 is within the jurisdiction of the federal courts, it is well-established that federal courts have discretion to decline to hear such actions. *See First Fishery Development*, 1997 WL 579165 at * 2; *Albie's Foods,* 170 F. Supp. 2d at 736, 739; *Technical Tape Corp. v. Minnesota Mining and Manufacturing Co.*, 135 F. Supp. 505, 508-09 (S.D.N.Y. 1955). As explained in *First Fishery Development*, "[a] court ordinarily will grant declaratory relief if doing so would (1) serve a useful purpose in clarifying the legal relations at issue; or (2) terminate uncertainty, insecurity, and controversy surrounding the parties' relations." 1997 WL 579165 at *1; *see also Albie's Foods*, 170 F. Supp. 2d at 739.

First, as indicated earlier, Google seeks in this action a determination that exceeds jurisdictional bounds, not to mention common sense. The relief sought by Google is not restricted to American Blind and its trademarks, but rather Google urges this Court generally to place an imprimatur on Google's entire "keyword" advertising program. (Pl. Cmpl. at ¶22.) At issue, then, is a determination of the rights of every trademark holder in the United States, since all would be implicated by a decision purporting to cover Google's policies. Obviously, this is improper.

Second, Google's declaratory action cannot provide a complete remedy. While the declaratory judgment action before this Court might clarify some of the disputed legal issues between the parties, as described above, it likely would not resolve them all. For example, if this

1  Court were to reject Google's theory and find that Google's "AdWords" program infringes upon
2  or dilutes American Blinds' trademarks, additional pleadings and/or hearings would be required
3  to award damages – and possibly injunctive relief – to American Blind.  Furthermore, other
4  parties who are not present (*i.e.,* Netscape, America Online, et al.) would be affected.  In contrast,
5  American Blind's lawsuit pending in the Southern District of New York can dispose of the
6  dispute regardless of whether infringement is found because monetary damages and injunctive
7  relief are sought in American Blind's complaint.

8  In *First Fishery Development,* the court faced a similar tactical maneuver.  1997 WL
9  579165 at *1.  In that case, as discussed earlier, First Fishery filed a declaratory action in
10 California first, followed second by a lawsuit in New Jersey filed by Lane Labs.  Both cases
11 essentially asked their respective courts to determine whether First Fishery engaged in false
12 advertising, though the only party whose rights were alleged to have been violated was Lane
13 Labs.  The Southern District of California dismissed First Fishery's declaratory action, holding
14 that "a party may not file a declaratory relief action merely to assert what it ordinarily would raise
15 as a defense in another pending action."  *Id.* at *2.  The court went on to note that a declaratory
16 action offered only partial relief:

> Because no relevant uncertainty existed here, and the New Jersey
> litigation effectively could settle the legal relations at issue, it
> appears that granting declaratory relief would serve no useful
> purpose.  This makes such relief inappropriate even in the absence
> of forum shopping.

20 *Id.* at *3, n. 2 (internal citations omitted).

21 Likewise, in the present case, the New York litigation can effectively resolve all disputes
22 between the parties, and no uncertainty would exist between the parties.  As a result, the
23 declaratory judgment action filed by Google would serve no useful purpose and should be
24 dismissed.

25 **D.    If This Court Will Not Dismiss Google's Complaint, Then It Should Stay This Action Pending Resolution Of American Blind's New York Action**

26 Should this Court decide not to dismiss Google's complaint as an impermissible
27 declaratory judgment, the Court should, at a minimum, stay this action until American Blind's
28

New York action has been resolved. In the absence of dismissal or a stay in this action, there is the possibility of inconsistent judgments on the same issues. Furthermore, it would be a waste of judicial resources for both this Court and the Southern District of New York to preside over analogous cases. In the interests of judicial economy, this Court should stay this case pending resolution of the New York action.

## IV.
## CONCLUSION

Google's filing of this case represents nothing more than an anticipatory filing and an effort to prevent American Blind from selecting the forum in which this dispute would be resolved. As a result, this Court should refuse to hear Google's improper declaratory judgment action since it will not resolve all of the issues between American Blind and Google. Moreover, this Court should refuse to apply the "first to file" rule because there is not an identity of parties between this case and the New York case and because Google's complaint was a clear attempt at forum shopping. For all of these reasons, Google's complaint should be dismissed, or alternatively stayed, in favor of American Blind's case pending in the Southern District of New York.

Dated: January 28, 2004                    HOWREY SIMON ARNOLD & WHITE, LLP


By:   /s/ Robert N. Phillips
        ROBERT N. PHILLIPS

        David A. Rammelt
        Susan J. Greenspon
        Christopher T. Sheean
        Dawn M. Beery
        KELLEY DRYE & WARREN LLP
        333 West Wacker Drive
        Suite 2600
        Chicago, Illinois 60606

        Attorneys for Defendant
        AMERICAN BLIND AND WALLPAPER
        FACTORY, INC.