KELLEY DRYE & WARREN LLP
Paul W. Garrity (PG 3492)
101 Park Avenue
New York, New York 10178
(212) 808-7800
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



**04 CV 00642**

**JUDGE STANTON**

---

AMERICAN BLIND AND WALLPAPER
FACTORY, INC., d/b/a
DECORATETODAY.COM, INC.,

               Plaintiff,

v.

GOOGLE, INC., AMERICA ONLINE, INC.,
NETSCAPE COMMUNICATIONS
CORPORATION, COMPUSERVE
INTERACTIVE SERVICES, INC.; ASK
JEEVES, INC., and EARTHLINK, INC.

               Defendants.

Case No.

**COMPLAINT**

RECEIVED JAN 27 2004 U.S.D.C. S.D.N.Y. CASHIERS

---

      Plaintiff, American Blind and Wallpaper Factory, Inc., d/b/a decoratetoday.com, Inc.

("American Blind"), by and through its counsel, Kelley Drye & Warren LLP, for its Complaint

against Google, Inc. ("Google"), America Online, Inc. ("AOL"), Netscape Communications

Corporation ("Netscape"), CompuServe Interactive Services, Inc.("CompuServe"), Ask Jeeves,

Inc. ("Ask Jeeves"), and EarthLink, Inc. ("EarthLink") (hereinafter collectively the

"Defendants"), states as follows:

## NATURE OF CASE

    1.    The Defendants operate for their own profit various Internet "search engines,"

which are used by consumers to search the World Wide Web for, among other things, products

and services. In disregard of American Blind's intellectual property rights, Defendants have sold

**EXHIBIT 6**

Dockets.Justia.com

"keywords" identical to certain of American Blind's trademarks to various third parties and have deliberately manipulated Defendants' search engine "results" so that, when consumers use these search engines to find American Blind's products and services, the consumers are unwittingly diverted to competitors' products and services. By this unfair and deceitful conduct, Defendants have infringed and diluted, and continue to infringe and dilute, American Blind's registered and unregistered service marks and trademarks.

**Parties**

2.     American Blind is a Delaware corporation with its principal place of business at 909 North Sheldon Road, Plymouth, Michigan.

3.     Upon information and belief, Google is a Delaware corporation with a principal place of business in Mountain View, California. Upon information and belief, Google maintains an office at 1440 Broadway, 21st Floor, New York, New York. In addition, Google advertises, solicits clients, and conducts sales and purchases in the State of New York.

4.     Upon information and belief, AOL is a Delaware corporation with its principal place of business in Dulles, Virginia. Upon information and belief, AOL maintains an office at 54 West 18th Street, New York, New York. In addition, AOL advertises, solicits clients, and conducts sales and purchases in the State of New York.

5.     Upon information and belief, Ask Jeeves is a Delaware corporation with its principal place of business in Emeryville, California. Upon information and belief, Ask Jeeves maintains an office at 50 West 17th Street, New York, New York. In addition, Ask Jeeves advertises, solicits clients, and conducts sales and purchases in the State of New York.

6.    Upon information and belief, CompuServe is a Delaware corporation with its principal place of business in Columbus, Ohio. Compuserve advertises, solicits clients, and conducts sales and purchases in the State of New York.

7.    Upon information and belief, EarthLink is a Delaware corporation with its principal place of business in Atlanta, Georgia. Earthlink advertises, solicits clients, and conducts sales and purchases in the State of New York.

8.    Upon information and belief, Netscape is a Delaware corporation with its principal place of business in Mountain View, California. Netscape advertises, solicits clients, and conducts sales and purchases in the State of New York.

<u>Jurisdiction and Venue</u>

9.    This is an action arising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c). This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

10.    The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11.    Defendants are subject to the personal jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this litigation occurred in the State of New York.

12.    In addition, Defendants are subject to the personal jurisdiction of this Court because, among other things, upon information and belief each of the Defendants is subject to New York's long-arm statute.

13.    In addition, Defendants are subject to the personal jurisdiction of this Court because, among other things, upon information and belief each of the Defendants has transacted

-3-

and presently is transacting business in the state of New York by: (a) providing Internet users in New York access to its search engine; (b) providing Internet users in New York advertising on its website; (c) contracting with, or attempting to contract with, New York residents for the sale of goods or services, including the sale of advertising space on its Internet website; (d) selling or attempting to sell goods or services to residents of the State of New York; (e) maintaining an office in the State of New York; and/or (f) committing tortious acts in the State of New York.

14.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district and the Defendants are all residents of this district.

## PLAINTIFF'S TRADEMARKS

15.     American Blind is the largest direct-to-consumer retailer of custom order window treatments and wall coverings in the United States and on the Internet. American Blind, in conjunction with its predecessor companies, has been in the home decorating business for over a half century. American Blind sells and promotes its home decorating products and related services across the United States through a website and toll-free telephone numbers.

16.     Since at least as early as 1986, and long prior to the acts of the Defendants complained of herein, American Blind adopted and used, and has continued to use, the names and marks AMERICAN BLIND and AMERICAN BLINDS (hereinafter collectively identified as "AMERICAN BLIND") in connection with home decorating products and related services, which have been offered for sale and sold in interstate commerce in the United States, including the State of New York. Since the adoption and first use of the AMERICAN BLIND name and mark as aforesaid, American Blind has continuously used said mark by prominently displaying it on the packaging and advertising for American Blind's products, which products have been

-4-

advertised, promoted, offered for sale and sold in interstate commerce in the United States, including the State of New York.

17.    In addition to the AMERICAN BLIND name and mark, American Blind is the owner of and has the exclusive rights to use the following trademarks registered with the United States Patent and Trademark Office:

| Mark | Reg. Number | Reg. Date |
|------|-------------|-----------|
| AMERICAN BLIND & WALLPAPER FACTORY | 2,022,925 | 12/17/96 |
| AMERICAN BLIND FACTORY | 1,463,548 | 11/03/87 |
| DECORATETODAY | 2,470,542 | 07/17/01 |

(True and accurate copies of proof of these registrations are attached hereto as Exhibit A.)  The foregoing registered marks, together with the AMERICAN BLIND name and mark are hereinafter collectively referred to as the "American Blind Marks."

18.    The name and mark AMERICAN BLIND comprises a distinctive part of American Blind's corporate title and trade name, which trade name has been prominently displayed by American Blind upon the packaging for its home decorating products and related services sold under the American Blind Marks.

19.    Since long prior to the acts of the Defendants complained of herein, American Blind's home decorating products and related services sold under the American Blind Marks have been extensively advertised, promoted and sold by American Blind in interstate commerce throughout the United States, including the State of New York.  American Blind each year expend millions of dollars in connection with the advertisement and promotion of its products and services sold under the American Blind Marks.

-5-

20.    The dollar amount of sales in the United States of American Blind's home decorating products and related services sold under the American Blind Marks offered for sale and sold under the American Blind Marks since its original adoption and use are well in excess of many tens of millions of dollars.

21.    Plaintiffs have been careful, skillful and meticulous in the conduct of their home decorating products and related services under the American Blind Marks.

22.    As a consequence, and as a result of the substantial sales and extensive advertising and promotion of American Blind's home decorating products and related services, American Blind's home decorating products and related services sold under the American Blind Marks have acquired a fine reputation, and are famous among prospective purchasers of home decorating products and related services in the United States, including the State of New York. The public has used and now uses the American Blind Marks to identify American Blind and its dietary supplements and to distinguish American Blind and its products and services from the home decorating products and related services offered by others, and the American Blind Marks have acquired an outstanding celebrity as a source of quality home decorating products and related services, and symbolizes and embodies the goodwill rightfully belonging exclusively to American Blind.

## FACTUAL BACKGROUND

### A.    The Internet And The World Wide Web

23.    The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially suited to displaying images and sound, in addition to text. Much of the information on the World Wide Web is stored in the form of "webpages," which can be accessed through a computer connected to the Internet (available

-6-

through commercial Internet service providers or "ISPs"), and viewed using a computer program

called a "browser," such as Microsoft Internet Explorer or Netscape Navigator. "Websites" are

locations on the World Wide Web containing a collection of webpages. A webpage is identified

by its own unique Uniform Resource Locator ("URL") (*e.g.* http://www.americanblind.com ),

which ordinarily incorporates its site's "domain name" (*e.g.* "American Blind").

24.    Internet use in the United States has grown substantially in the last few years.

Upon information and belief, more than half of the nation are now online.

25.    Among internet users in the United States, it is estimated that thirty-nine percent

(39%) currently use the Internet to make online purchases.

26.    As a result, it is estimated that, today, annual Internet sales exceed $92 billion.

**B.    The Business Of Plaintiff American Blind**

27.    American Blind spends millions of dollars each year advertising The American

Blind Marks, including advertising in over eighty national magazines, on every major search

engine, on national television and radio, and through millions of direct mailings and catalogs

distributed throughout the United States.

28.    For example, American Blind advertises its goods and services under the

American Blind Marks on national television on the Home & Garden Network and in national

magazines such as Better Homes & Gardens, Good Housekeeping, and Country Living.

29.    Today, American Blind has over six million customers nationwide and generates

annual revenues in excess of $100 million.

30.    Since 1997, American Blind has continuously operated a distinctive Internet

website located, among other places, at www.americanblind.com, through which the company

sells blinds and other window treatments, wall coverings and other home decorating products and related services.

31.    Today, American Blind owns many Internet domain names, including but not limited to the following: americanblind.com, americanblinds.com, americanblindfactory.com, americanblindandwallpaper.com, americanblindandwallpaperfactory.com and decoratetoday.com.  Accordingly, if a consumer using an Internet web browser types in any of the company's Uniform Resource Locators ("URLs") – for example, if a consumer types www.americanblind.com in his or her web browser address bar – the consumer is directed to American Blind's web servers where he or she can view, browse and purchase the company's products and services.

32.    A significant and critical amount of American Blind's business is conducted via the Internet.  The company estimates that, each day, it receives in excess of thirty thousand (30,000) "hits" or visits by customers or potential customers to its Internet websites and processes hundreds of thousands of Internet transactions every year.

33.    American Blind has spent over $10 million in developing its website, and spends in excess of $1 million per year in maintaining, enhancing and updating its website.  In addition, American Blind employs over 50 full-time employees in connection with its Internet operations, all of whom are rigorously trained and supervised.

**C.    The Business Of Defendant Google**

34.    Internet customers who are searching for a specific company product or information, but who do not know the exact domain name or website address at which it may be found, may use "keywords" and/or "search engines" to locate websites which match the keywords sought by the customer.  Keywords are the textual terms that a consumer enters to

locate the desired website or domain name. A search engine, such as Google, checks the keywords against its databases and produces a search results page, which lists the websites, in order of decreasing relevance with the most relevant websites listed first, that match the customer's keyword search.

35.    Google's Internet search engine, which is free to consumers, is the most widely-used Internet search engine in the world. It answers hundreds of millions of user searches and covers billions of web pages daily.

36.    Google also sells a number of products and services to individuals, businesses, and educational and governmental entities. One of the programs Google offers to its business customers is a keyword-triggered advertising program entitled "AdWords."

37.    Google's "AdWords" program enables advertisers to purchase or bid on keywords that generate an advertising link (known as a "Sponsored Link") to the purchaser's website. For example, American Blind may bid on the keyword "wallpaper" through Google's "AdWords" program so that American Blind's website will be the first, or among the first, listed "Sponsored Link" when a customer searches for the keyword "wallpaper" to find websites that sell wallpaper. Google posts the "Sponsored Links" on the top of and at margins of its search engine results page based on whichever keywords appear in user queries posted to Google's Internet search engine. Google's advertising customers then pay Google based on the number of Internet users who click on these advertising links.

38.    Google's advertisers select the keywords that will trigger their advertisements, but Google profits every time an Internet user clicks on a "Sponsored Link" for one of Google's advertisers.

**D.    Defendant Google's Acts**

39.    Google has sold many keywords comprised, in whole or in part, of the American Blind Marks, to competitors of American Blind.

40.    After repeated requests, Google has agreed to stop selling certain of the American Blind Marks as keywords to American Blind's competitors. Google refuses, however, to cease selling other keywords comprised, in whole or in part, of the American Blind Marks that, for whatever reason, Google unilaterally has deemed less worthy of recognition and protection. Specifically, Google continues to sell, over American Blind's objections, certain combinations of words within the American Blind Marks to American Blind's competitors. Consequently, Google permits the purchase of the American Blind Marks to trigger these competitor's links to appear in Google's search results when a consumer types in one of the American Blind Marks.

41.    For example, Google continues to sell to American Blind's competitors the keywords "American Blind," "American Blinds" and "Americanblinds.com." Accordingly, if a consumer using Google's search engine types "American Blind and Wallpaper Factory" in the search window, competitors who have purchased "American Blind" or even just "blind" can still appear at the top or in the margins of the results page. Similarly, it is possible for a consumer who types "American Blinds" or "Americanblinds.com" in the Google search window to be directed to a "results" web page that displays American Blind's competitors products and services at the top or in the margins.

42.    In each of these examples, by the operation and design of Google's search engine, consumers who specifically intend and desire to find American Blind's products and services are instead diverted to search "results" web pages that list American Blind's competitor's products and services. This result is intended, both by Google and its customers who purchase keywords

-10-

consisting of the American Blind Marks. Google sells, and its customers hope to purchase, the possibility that they will intercept consumers who, due to American Blind's extensive and pervasive advertising resulting in invaluable goodwill, are trying to find the nation's largest and most respected and trusted direct-to-consumer retailer of window treatments and wall coverings in the United States.

43.    Once intercepted, consumers may click on American Blind's competitors' links and thus be directed to the competitors' websites. Consumers may not realize that they have unwittingly "clicked" on a competitors' website. Once there, the consumer, having been distracted, may not ever return to American Blind's website. Even if the consumer appreciates the diversion, he or she will have to spend time and energy trying to backtrack or otherwise find American Blind.

44.    Through this practice, Google traffics in the infringement and dilution of the American Blind Marks. Google has knowingly sold the American Blind Marks and included them in Google's search engine for Google's own profit and to increase the competitive advantage of American Blind's competitors. This practice began after the American Blind Marks were registered and/or became famous and distinctive.

E.    **The Business Of The Other Defendants**

45.    AOL, Ask Jeeves, CompuServe, Earthlink, and Netscape (hereinafter collectively referred to as the "Non-Google Defendants") each operates a website that includes a search engine for locating websites and information on the internet.

46.    On information and belief, the Non-Google Defendants pay Google in exchange for Google providing access to its web searching platform. By utilizing the Google web searching platform, the Non-Google Defendants display virtually the same results of search

queries as those displayed by Google. On information and belief, each of the Non-Google

Defendants also profit every time an Internet user clicks on any of the links provided by these

search results.

**F.    Harm To Plaintiff**

47.    American Blind has not given the Defendants permission or a license to utilize the

American Blind Marks for the promotion or sale of its competitor's products.

48.    Defendants and certain of American Blind's competitors seek to exploit the hard-

earned popularity and success of American Blind and the products and services sold by

American Blind under the famous American Blind Marks. In an attempt to illegally capitalize on

the American Blind Marks, Defendants have permitted certain of American Blind's competitors

to bid on advertising keywords so that their websites are listed in a position above or next to

American Blind's link when a consumer types a search query identical or substantially similar to

the American Blind Marks.

49.    For example, a consumer can run a search on Google's search engine for

"American Blind and Wallpaper Factory," one of American Blind's registered marks, with the

obvious intent of locating and visiting American Blind's website. Nonetheless, the first link

shown on the Google search "results" page may be for one of American Blind's competitors,

such as theblindfactory.com. (*See e.g.*, Exhibit B). Similarly, if a consumer types "American

Blinds" in the Google search bar, they may be directed to a "results" page in which the first two

companies listed at the top are direct competitors – Justblinds.com and EZblinds.com – as are at

least six of the eight companies – SelectBlinds.com, Blinds.com, eDirectBlinds.com,

Homedepot.com, NetShutters.com and StarDecorating.com – listed along the margin. (*See, e.g.,*

Exhibit C). Search Google for "americanblinds.com" – a domain name owned by and registered

-12-

to American Blind – and the consumer is directed to search "results" that list EZblinds.com and JustBlinds.com at the top of the page. (*See, e.g.,* Exhibit D). If the consumer clicks on any of these competing websites, Google will be entitled to a fee from these competitors. In addition, these competitors will have obtained a customer, or potential customer, solely as a result of the goodwill and reputation associated with American Blind and its products and services.

50.    A similar, though different and possibly more confusing, search "result" occurs when a consumer uses one of the Non-Google Defendants' websites to conduct a Google "powered" or "enhanced" search (*i.e.,* where Google provides the underlying search engine). For example, a consumer who conducts a search for "American Blinds" from Netscape's website is confronted misleadingly with a host of competitor's advertisements. Some competitor's are called "Sponsored Links," while others are given priority treatment with graphics at the very top of the search "results" page. (*See, e.g.,* Exhibit E.) Again, this diversion and confusion is the intended result – allowing American Blind's competitor's to intercept consumers looking for American Blind.

51.    The Defendants' search engines are designed and intended to divert and lure consumers from the websites that they intend to visit – *e.g.,* the American Blind websites – to other websites owned by competing advertisers such as BlindsGalore.Com, et. al. By design, the Defendants profit when consumers click on competitors' links and visit an advertiser's site. None of this revenue, however, is paid to the owner of the trademark for whom the consumer was searching. Thus, Defendants and their advertisers are free-riding on the goodwill and reputation of trademark owners such as American Blind.

52.    Defendants' search engines are inherently deceptive and mislead consumers into believing falsely that the website links to which they are directed via manipulated search

"results" links are sponsored or authorized by and/or originating with the trademark owner for which the user was searching.

53. The manipulated search "results" engineered by the Defendants fail to inform the consumers that the companies listed therein may have no relationship with – and, indeed, may directly compete with – the trademark owner for which the user was searching.

54. The manipulated search engine "results," which are in fact advertisements sold by Defendants based on a search utilizing the American Blind Marks, dilute the ability of the American Blind Marks to identify American Blind as a source of its goods and services.

55. In some cases, the competitor companies listed at the top or in the margins of these manipulated search engine "results" are nebulously identified as "Sponsored Links." This designation is as, if not more, confusing to consumers because the Defendants do not indicate by whom these links supposedly are "sponsored." Consumers may believe falsely that American Blind or other mark holders "sponsor" or otherwise are affiliated with these links.

56. Moreover, the "Sponsored Links" are deliberately designed to be virtually indistinguishable from the legitimate mark holders' website links. The actual links to the "Sponsored Links" are not a different color, nor are they a different typeface or font size. No meaningful effort is made to conspicuously separate the truth from the paid advertisements. Specifically, the Defendants could, but do not, advise the consumer that the so-called "Sponsored Links" are in fact paid advertisement that are neither sponsored by or affiliated with the trademark owner for which the user was searching.

57. American Blind's current customers have been and will likely continue to be confused about the origin and sponsorship of the companies other than American Blind listed by the Defendants in their deceptive search engine "results."

-14-

CH01/SHEEC/168222.6

58.    Confusion regarding the companies identified under Defendants' search engine "results" implies an affiliation with American Blind that has damaged and will continue to damage Plaintiff's reputation and customer relationships.

59.    Upon information and belief, Defendants caused these advertisements to appear under on the search "results" pages with the intent to infringe and to cause advertisers to infringe on American Blind's Marks. Alternatively, Defendants acted in reckless disregard for American Blind's Marks.

60.    In the short term, Defendants' actions steal customers from American Blind's website, divert consumers to inferior products and services, erode the distinctiveness of American Blind's Marks, and impair American Blind's honest and good faith efforts to promote and sell its products on the Internet.

61.    Defendants' actions have caused damage and irreparable injury to American Blind. Further damage and irreparable injury will result if Defendants are allowed to continue to violate American Blind's rights.

62.    These deliberate acts constitute trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), dilution of American Blind's famous marks in violation Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), unfair competition and dilution in violation of the common law and the laws of the State of New York, and tortious interference with prospective economic advantage in violation of the laws of the State of New York.

63.    In addition to harming American Blind's reputation and the value of its marks, Defendants have realized and continue to realize profits and other benefits rightfully belonging to American Blind.

-15-

64.    Defendants repeatedly have ignored American Blind's demands to cease all unauthorized use of the American Blind Marks and/or words confusingly similar thereto in their keyword Internet advertising.

65.    Defendants' repeated failure to comply with American Blind's demands manifests their intent to continue to wrongfully compete with, infringe upon and dilute American Blind's proprietary rights in the American Blind Marks.  American Blind seeks an injunction to halt Defendants' wrongful conduct and award of damages as well as attorneys' fees and expenses for Defendants' willful and wanton conduct.

### FIRST CAUSE OF ACTION
### Lanham Act – Trademark Infringement

66.    American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth

67.    Defendants' unauthorized and willful use of copies, variations, reproductions, simulations or colorable imitations of American Blind's registered marks among the American Blind Marks in connection with the advertising, offering for sale and sale of Defendants' keyword advertising services constitutes use in commerce which infringes American Blind's exclusive rights in its federally-registered marks and is likely to cause confusion, mistake or deception as to the source of the services advertised by Defendants.

68.    The aforesaid acts of Defendants, namely, the unauthorized and willful use of copies, variations, reproductions, simulations or colorable imitations of American Blind's registered marks in connection with the sale of keyword advertising, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

69.    The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

-16-

70.   American Blind has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Lanham Act – False Representation

71.   American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth.

72.   Use by Defendants of copies, variations, reproductions, simulations or colorable imitations of the American Blind Marks on and in connection with keyword advertising conveys the misleading commercial impression to the public that the advertisers other than American Blind listed in the Defendants' manipulated search "results" pages, or their products, are approved by, sponsored by or are somehow affiliated or connected with American Blind.

73.   The aforesaid acts of Defendants, namely, the use of copies, variations, reproductions, simulations or colorable imitations of the American Blind Marks on and in connection with keyword advertising, constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.   The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

75.   American Blind has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### Lanham Act - Dilution

76.   American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth.

77.   Use by Defendants of copies, variations, reproductions, simulations or colorable imitations of American Blind's registered marks among the American Blind Marks in connection

-17-

with the advertising, offering for sale and sale of Defendants' keyword advertising services has and will continue to lessen the capacity of American Blind's famous and distinctive American Blind Marks to distinguish American Blind's products and services from those of others, and has diluted the distinctive quality of American Blind's famous and distinctive American Blind Marks.

78.    The aforesaid acts of Defendants constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

79.    The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

80.    American Blind has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Injury to Business Reputation and Dilution – GBL § 360-1

81.    American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth.

82.    The unauthorized use by Defendants of copies, variations, reproductions, simulations or colorable imitations of American Blind's registered marks among the American Blind Marks in connection with the advertising, offering for sale and sale of Defendants' keyword advertising services will dilute or tarnish American Blind's business reputation and/or the effectiveness of the well-known, famous and distinctive American Blind Marks.

83.    The aforesaid acts of Defendants constitute dilution and injury to American Blind's business reputation in violation of New York General Business Law § 360-1.

84.    The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

85.    American Blind has no adequate remedy at law.

-18-

## FIFTH CAUSE OF ACTION

Common Law – Trademark Infringement and Unfair Competition

86.    American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth.

87.    The aforesaid acts of Defendants constitute trademark infringement and unfair competition in violation of American Blind's rights under the common law of the State of New York.

88.    The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

89.    American Blind has no adequate remedy at law.

## SIXTH CAUSE OF ACTION

Tortious Interference With Prospective Economic Advantage

90.    American Blind incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 with the same force and effect as if here fully set forth.

91.    Many of Plaintiff's customers regularly purchase products from American Blind's website, and are repeat customers.  It is probable that such customers and others will continue to seek to visit American Blind's website and purchase Plaintiff's goods and services in the future.

92.    Upon information and belief, Defendants were aware of the existence of Plaintiff's reasonable expectation of future transactions with Plaintiff's returning customers, as well as consumers who may be attracted to Plaintiff's goods and service as a result of Plaintiff's goodwill and extensive advertising and promotion.

93.    Absent Defendants' intentional and improper interference through their deceptive and manipulated search engine "results," it is reasonably certain that Plaintiff would realize additional sales from existing customers and/or new customers.

94.   Defendants have intentionally and improperly interfered with Plaintiff's future and prospective sales through the Defendants' conduct; namely, their deceptive and manipulated search engine "results" that divert consumers from Plaintiff's websites.

95.   The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause American Blind to suffer irreparable injury.

96.   American Blind has no adequate remedy at law.

### Prayer for Relief

WHEREFORE, as to all counts of this Complaint, Defendants will continue its unlawful activities unless enjoined and Plaintiff's remedy at law is inadequate; and

WHEREFORE, as to all counts of this Complaint, Plaintiff requests:

(A)   A preliminary and a permanent injunction prohibiting Defendants and their officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with them from:

1.   directly or indirectly selling or offering for sale advertising keywords that are identical or substantially similar to the American Blind Marks, which are likely to cause consumer confusion, mistake, or deception with respect to the American Blind Marks;

2.   continuing to post listings for American Blind's competitors when Internet users run a search on Defendants' search engines using keywords that are identical or substantially similar to the American Blinds Marks;

3.   requiring Defendants to immediately contact all current advertisers who have purchased keywords identical or substantially similar to the American Blind Marks and/or terms confusingly similar thereto, to inform

-20-

them that the advertisers' links will no longer appear when an Internet user runs a search for a term that is identical or substantially similar to the American Blind Marks;

3.    making any use of the American Blind Marks and/or terms confusingly similar thereto;

4.    making any designations of origin, descriptions, representations or suggestions that American Blind is the source, sponsor or in any way affiliated with its competitors, their products or their websites; and

5.    engaging in any other act constituting unfair competition or deceptive practices with American Blind or constituting an infringement of American Blind's rights in and to the American Blind Marks.

(B)    That Defendants be required to reimburse American Blind for all actual damages and lost sales suffered by American Blind by reason of Defendants' illegal conduct, as well as any profits of Defendants that are attributable to Defendants' unfair competition, dilution and infringement not taken into account in computing the actual damages, and that punitive damages be awarded as authorized under the law;

(C)    That Defendants be required to pay all of American Blind's attorneys' fees, expenses and costs associated with this action pursuant to the Lanham Act, 15 U.S.C. §1117; and

(D)    That this Court grants such other and further relief as this Court may deem just and equitable.

-21-

CH01/SHEEC/168222.6