1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   RAVIND S. GREWAL - # 220543
3  710 Sansome Street
   San Francisco, CA  94111-1704
4  Telephone:  (415) 391-5400
   Facsimile:  (415) 397-7188
5
   Attorneys for Plaintiff
6  GOOGLE INC.

7

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13 | GOOGLE INC., a Delaware corporation, | Case No. C 03-5340 JF (EAI)
14 | Plaintiff, | **GOOGLE INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**
15 | v. |
16 | AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, inclusive, | Date: April 5, 2004
17 | | Time: 9:00 a.m.
   | | Courtroom: 3, 5th Floor
18 | | Judge: Hon. Jeremy Fogel
   | Defendants. |

327556.01

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT ...............................................................................................................2

    A.    Google's Suit is Not "Anticipatory" ...................................................................3

    B.    Google is Not Engaged in Forum Shopping .........................................................6

    C.    American Blind's Naming of Additional Parties in its New York Complaint is Irrelevant .................................................................................8

III.    CONCLUSION ..........................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Albie's Foods, Inc. v. Menusaver, Inc.,
  170 F. Supp. 2d 736 (E.D. Mich. 2001)......................................................................................8

Alltrade, Inc. v. Uniweld Product, Inc.,
  946 F.2d 622 (9th Cir. 1991) ..........................................................................................2, 3, 6

Charles Schwab v. Duffy,
  49 U.S.P.Q. 2d 1862 (N.D. Cal. 1998) .........................................................................................5

Church of Scientology of California v. U.S. Department of the Army,
  611 F.2d 738 (9th Cir. 1979) ........................................................................................................3

Essex Group. Inc. v. Cobra Wire & Cable Inc.,
  100 F. Supp. 2d 912 (N.D. Ind. 2000) ..........................................................................................9

First City National Bank and Trust Co. v. Simmons,
  878 F.2d 76 (2d. Cir. 1989) ..........................................................................................................6

First Fishery Development Service, Inc. v. Lane Labs USA, Inc.,
  1997 WL 579165 ..........................................................................................................................8

Galileo International P'ship v. Global Village Communication,
  40 U.S.P.Q. 2d 1690 (E. D. Ill. 1996)...........................................................................................5

Guthy-Renker-Fitness LLC v. Icon Health & Fitness Inc.,
  46 U.S.P.Q. 2d 1344 (C.D. Cal. 1998) ......................................................................................2, 9

Kahn v. General Motors Corp.,
  889 F.2d 1078 (Fed. Cir. 1989) ....................................................................................................9

Maryland Casualty Co. v. Pacific Coal and Oil Co.,
  312 U.S. 270 (1941)......................................................................................................................3

NSI Corp. v. Showco. Inc.,
  843 F. Supp. 642 (D. Ore. 1994) ..................................................................................................6

National Basketball Association v. SDC Basketball Club,
  815 F.2d 562 (9th Cir. 1987) ........................................................................................................3

Precise Exercise Equipment v. Kmart,
   2000 U.S. Dist. LEXIS 21498 (C.D. Cal. 2000)..................................................................9

Royal Queentex v. Sara Lee,
   2000 WL 246599 ..........................................................................................................4, 5, 9

Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,
   819 Fed. 2d. 746, 750 (7th Cir. 1987)..................................................................................6

Ward v. Follett Corp.,
   158 F.R.D. 645 (N.D. Cal. 1994)..................................................................................2, 3, 4

Z-Line Designs, Inc. v. Bell'O International,
   218 F.R.D. 663 (N.D. Cal. 2003).........................................................................................5

Zide Sport Shop of Ohio v. Ed Tobergate Assocs.,
   16 Fed. Appx. 433 (6th Cir. 2001).......................................................................................5

**MISCELLANEOUS**

8 Donald S. Chisum, Chisum on Patents § 21.02[4][c] ..........................................................9

## I.     INTRODUCTION

If ever there were a paradigmatic declaratory relief suit, this is it. American Blind and Wallpaper Factory, Inc. ("American Blind") has been demanding that Google, Inc. ("Google") change its business practices--and threatening suit if Google does not--for nearly two years. On July 23, 2002, American Blind's counsel wrote to Google, setting forth American Blind's purported trademark infringement claims, advising Google of its prior successful suits enforcing its trademarks, and demanding that Google "immediately" modify its AdWords program. See Declaration of Rose A. Hagan ("Hagan Decl."), Exh. A. The parties corresponded and spoke further on the issue, but because Google did not and does not believe its AdWords program violates any of American Blind's rights, Google informed American Blind that it could not agree to modify that program. Id., ¶¶ 2-4.

American Blind again complained to Google about the purported use of its trademarked terms in December 2002 and January 2003. Again, Google informed American Blind that it could not prevent advertisers from using purely descriptive terms through its AdWords program. Id., ¶¶ 5-6.

Six months later, on July 14, 2003, American Blind again wrote to Google, demanded that Google make changes to its AdWords program "immediately," and stated that "in the event our request is not complied with in the next 7 days we will have no choice but to involve our legal department." Id., Exh. D. Further discussions ensued, in the course of which Google again told American Blind that it would not make the demanded changes. Id., Exh. E.

Four months later, on November 12, 2003, American Blind's counsel once again wrote to Google, stating that "[O]ur client is quite upset about the matter, which has been at issue for more than a year without progress, and has asked us to prepare a Vuitton-type lawsuit if the matter cannot be resolved."[1] Hagan Decl., Exh. F. Once again, Google explained that it could not modify its AdWords program. Hagan Decl., ¶ 10.

Despite 16 months of threats--coupled with 16 months of Google's unequivocal position

---

[1] In August 2003, Louis Vuitton SA filed a lawsuit against Google in France, complaining that Google's sale of keyword-triggered advertising violated Vuitton's trademarks.

1  that its AdWords program did not infringe any of American Blind's rights and thus that Google
2  would not acquiesce to American Blind's demands--American Blind never brought suit against
3  Google.  Accordingly, on November 26, 2003, Google file the present lawsuit, seeking
4  declaratory relief.  American Blind did not respond by filing its own lawsuit, or by filing
5  affirmative counterclaims in this lawsuit, but rather requested a thirty-day extension of time to
6  respond, which Google granted.  On January 28, 2004, two months after this suit was filed,
7  American Blind moved to dismiss this action based on the pendency of a mirror-image action it
8  had filed in New York <u>the day before</u>, <u>eighteen months</u> after first asserting its purported claims,
9  and six months after giving Google a "7 day" ultimatum.  That suit was filed not in Google's
10 home district, nor in American Blind's home district in Michigan, but in the Southern District of
11 New York, where <u>neither</u> company is located.

12    Incredibly, American Blind now describes Google's decision to seek declaratory
13 judgment after sixteen months of threats by American Blind as a "rush[] to file," and Google's
14 choice to bring its suit in its home district (where in addition all relevant actions by Google
15 occurred) as "forum shopping," in the face of a later-filed action on the other side of the country.
16 Google's suit is a textbook example of why the declaratory judgment procedure exists:  so that a
17 company in Google's position does not have to sit by and wait for years while a company in
18 American Blind's position repeatedly threatens, but does not bring, a lawsuit.  This Court should
19 deny American Blind's motion.

20                **II.    ARGUMENT**

21    The "first to file" rule is well established, and clearly applicable here.  "When two actions
22 involving similar parties and issues are commenced in separate forums . . . preference is given to
23 the first-filed plaintiff's choice of forum under the 'first-to-file' rule."  <u>Guthy-Renker-Fitness</u>
24 <u>LLC v. Icon Health & Fitness Inc.</u>, 46 U.S.P.Q. 2d 1344, 1346 (C.D. Cal. 1998); <u>see also</u>
25 <u>Alltrade, Inc. v. Uniweld Prod., Inc.</u>, 946 F. 2d 622, 625 (9th Cir. 1991).  Absent compelling
26 reasons to the contrary, the first filed suit "should be given priority upon application of the 'first-
27 to-file' rule."  <u>Ward v. Follett Corp.</u>, 158 F.R.D. 645, 649 (N.D. Cal. 1994); <u>see also</u> <u>Guthy-</u>
28 <u>Renker-Fitness</u>, 46 U.S.P.Q. 2d at 1346 ("[U]nless compelling circumstances justify departure

1  from the rule, the first-filing party should be permitted to proceed without concern about a
2  conflicting order being issued in the later-filed action.") The "first to file" rule "should not be
3  disregarded lightly." Church of Scientology of California v. U.S. Dep't of the Army, 611 F.2d
4  738, 750 (9th Cir. 1979).
5       There is no question which action was first filed in this case: Google's complaint was
6  filed more than two months before American Blind's. Thus, unless Google's complaint falls into
7  one of the recognized categories of equitable exceptions to the "first to file" rule, Google's
8  choice of forum prevails. Those exceptions are (1) bad faith, (2) anticipatory suits, (3) forum
9  shopping, and (4) a balance of convenience weighing in favor of the latter-filed suit. Alltrade,
10 946 F.2d at 628; Ward, 158 F.R.D. at 648. American Blind urges the second and third of these
11 exceptions, arguing that Google's suit is both "anticipatory" and "forum shopping."
12      Neither claim survives scrutiny. Google's suit is not "anticipatory," both because it was
13 filed after a year and a half of indefinite threats of suit and because at no point did Google
14 mislead American Blind into thinking either that it was deferring suit until a date certain or that
15 further negotiation would alter Google's position. Neither is Google's suit "forum shopping," as
16 Google brought suit in the most appropriate venue. It is American Blind—whose responsive suit
17 was brought in a district in which neither party is found—that is classic "forum shopping."[2]
18 **A.  Google's Suit is Not "Anticipatory"**
19      American Blind misapprehends the meaning of the phrase "anticipatory suit."
20 Obviously, any declaratory relief suit is "anticipatory" in a trivial sense, because in order to bring
21 a declaratory relief action one must first have a reasonable apprehension of suit. See, e.g.,
22 Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273 (1941) (declaratory
23 judgment action justiciable if "there is a substantial controversy, between parties having adverse
24 legal interests, of sufficient immediacy and reality . . . ."); National Basketball Ass'n v. SDC

---

[2] American Blind also accuses Google's Complaint of "fatal overbreadth" (Motion at 2), in that it seeks a determination of the legality of Google's practices generally. American Blind, however, fails to explain why this purported overbreadth bears on the question of venue at all. Obviously, any decision in this case will have only persuasive or precedential effect, rather than res judicata effect, on trademark holders other than American Blind. But the same is of course true of the New York action, in which American Blind is the sole plaintiff. How that makes this action any

Basketball Club, 815 F.2d 562, 565 (9th Cir. 1987).  If a "substantial controversy . . . of sufficient immediacy" were enough to constitute an "imminent" suit, no declaratory judgment action could ever survive in its initial forum, because every declaratory judgment defendant could simply respond by filing its own affirmative claim wherever it chose rather than bring affirmative counterclaims in the original venue.

This is not the law of anticipatory suits.  In order for a suit to be deemed "anticipatory," it must be the result of a "race to the courthouse" in response to a "concrete indication that [the declaratory defendant's] own suit was imminent." Ward, 158 F.R.D. at 648-649.  Typically, courts find suits anticipatory where a "notice of suit" letter sets a specific deadline, and the other party "jumps the gun" by filing before that deadline, usually having first misled the other party into thinking it would not do so.  Simply advising the other party of one's legal demands, even combined with a threat of suit if the other party does not comply by a date certain, is not sufficient to establish "imminent suit."

For example, in Royal Queentex v. Sara Lee, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000) this Court declined to find a declaratory judgment action anticipatory in circumstances far more abrupt than here.  In that case, Sara Lee sent a single demand letter quite similar to the ones at issue here, stating:

> We are directing this correspondence in the hope that this matter may be resolved amicably.  L'EGGS products is willing to forego legal action to enforce its rights only if we receive prompt written assurances that Royal Queentex will immediately discontinue all use of any name containing the word 'LEG' or 'LEGS'. . . . If we do not receive a response with these assurances within fourteen (14) days of the date of this letter, L'EGGS Products has authorized this firm to take further legal action necessary and appropriate to enforce its valuable trademark rights.

Id. at **1-2.  Three days later, without responding to the letter, Royal Queentex filed a declaratory judgment action.  Two weeks after that, Sara Lee filed an affirmative action against Royal Queentex in North Carolina.  Id. at *2.  This Court denied Sara Lee's motion to transfer venue, expressly rejecting "the proposition that where a party mails a cease and desist letter, the opposing party may not steal away the choice of forum by immediately filing a declaratory more "piecemeal" or "one-sided" (id.) than the New York action escapes us.

1  judgment action." The Court instead stated that "[p]revailing law [does] not support such a neat
2  conclusion." Id. at *4.
3       In so holding, this Court made clear that Sara Lee's letter "constituted specific, concrete
4  indications of a legal dispute, but not specific, concrete indications that suit was imminent . . . ."
5  Id. at *5 (emphasis added). In analyzing the caselaw cited by the parties, the Queentex court
6  focused on the key question: whether the declaratory judgment plaintiff had done anything to
7  mislead the other party into delaying suit. In distinguishing Charles Schwab v. Duffy, 49
8  U.S.P.Q. 2d 1862 (N.D. Cal. 1998), the Queentex court noted that in the Schwab case "the court
9  was not penalizing plaintiff for winning the race to the courthouse; rather, the court penalized
10 plaintiff for the tactics used to win the race," the plaintiff having affirmatively misled the
11 trademark holder as to its intentions. Queentex, 2000 WL 246599 at *4 (emphasis added).
12      Similarly, this Court in Z-Line Designs, Inc. v. Bell'O Int'l, 218 F.R.D. 663, 666-67
13 (N.D. Cal. 2003), found a declaratory judgment suit to be anticipatory where, after the parties
14 had agreed upon a fixed deadline for suit, the accused infringer filed a declaratory judgment
15 action the day before the deadline expired. After noting "that suit cannot remain 'imminent' for
16 an indefinite period of time," the Z-Line Court distinguished Queentex because in that case
17 "there were no misleading communications by the first filing party before filing suit." Id. at 666.
18 In Z-Line, by contrast, "plaintiff's counsel accepted the second deadline extension . . . and
19 created a reasonable expectation that Z-Line would explore settlement rather than litigation.
20 This was a misleading communication." Id. And in Zide Sport Shop of Ohio v. Ed Tobergate
21 Assocs., 16 Fed. Appx. 433 (6th Cir. 2001) (an unpublished opinion improperly relied upon by
22 American Blind), the court dismissed a declaratory judgment action because the plaintiff filed
23 but did not serve a declaratory judgment action one day before the expiration of an agreed-upon
24 extension, and then proceeded to negotiate a settlement without telling the other side of the suit.
25 Not surprisingly, the court held that a "finding of bad faith is overwhelmingly supported by the
26 record." Id. at 438. Other cases on which American Blind relies are similarly based on bad faith
27 tactics. See, e.g. Galileo Int'l P'ship v. Global Village Communication, 40 U.S.P.Q. 2d 1690
28 (E. D. Ill. 1996) (declaratory judgment filed on the deadline date, not served or disclosed until 6

1  weeks later); NSI Corp. v. Showco. Inc., 843 F. Supp. 642, 645 (D. Ore. 1994) (declaratory

2  judgment filed one day before transmitting settlement offer, not disclosed until a month later).[3]

3        This case has all of the hallmarks of cases like Queentex and Ward, and none of the

4  hallmarks of cases like Z-Line and Zide. This was no "race to the courthouse:" it barely

5  qualifies as a saunter. For a year and a half, American Blind alternated between strident letters

6  threatening litigation if Google did not accede to its demands, and contradictory assurances that

7  they did not want to litigate, but instead wanted to convince Google to alter its polices to

8  conform with those demands. After sixteen months of American Blind "crying wolf," and

9  sixteen months of informing American Blind that Google simply disagreed with American

10 Blind's expansive view of trademark law and thus would not change its business to suit

11 American Blind, Google finally sought judicial determination of its rights and responsibilities.

12 Only then (in fact, only two months later) did American Blind choose to file its own action.

13 There is no basis to conclude that, had Google not sought declaratory relief, American Blind

14 would ever have sued Google. Rather, given the pattern of conduct over the previous year and a

15 half, one can only conclude that American Blind would have continued its established course of

16 threatening but not filing suit, combined with repeated efforts to convince Google to alter its

17 business without litigation.

**B.   Google is Not Engaged in Forum Shopping**

19       American Blind's second argument—that Google is "forum shopping" by filing suit in

20 this district—fares no better. To state the obvious, any litigant "shops" for a forum in the sense

---

[3] Note, moreover, that American Blind (located in the Seventh Circuit) relies primarily on cases from that circuit. The Seventh Circuit, however, expressly disfavors the first-to-file rule, unlike either this Circuit or the Second Circuit. See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 Fed. 2d. 746, 750 (7th Cir. 1987) ("This circuit has never adhered to a rigid 'first to file' rule"); Alltrade, 946 F.2d at 625 ("The first-to-file rule was developed to serve the purpose of promoting efficiency well and should not be disregarded lightly") (citation and internal quotation omitted); First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d. Cir. 1989) (noting that it is a "well-settled principle" in the Second Circuit that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second") (citation and internal quotation omitted). Having chosen to respond to a suit in the Ninth Circuit with a responsive suit in the Second Circuit, American Blind cannot opt to drag Seventh Circuit precedent along with it.

that every lawsuit must be filed <u>somewhere</u>, and that somewhere must be a court in which jurisdiction and venue lie. Sometimes litigants choose appropriate venues, such as the home district of the plaintiff or defendant, or the district in which the events underlying the action took place or the relevant evidence and witnesses are found. Other litigants make less appropriate choices, foregoing the obvious venue and instead filing suit in a district with little or no connection with the parties or events, because of a perceived advantage in that district's or circuit's law (or because the relative burden of far-flung litigation favors one party).

We call the latter case "forum shopping," and the Court need expend little energy deciding which party to this case is pushing the shopping cart. Google's headquarters and primary place of business is in Mountain View. The vast majority of its more than 1000 employees work at Google's Mountain View offices. Hagan Decl., ¶ 11. The development and administration of Google's AdWords program primarily takes place in this district. <u>Id.</u>, ¶ 12. All of American Blind's demand letters were sent to this district. All of Google's United States-based employees who process trademark complaints work in this district. <u>Id.</u> Thus, the conduct American Blind seeks to alter or enjoin primarily occurs in this district. Although Google has an office in New York, and of course does business with companies and is used by customers all over the world, this dispute is clearly centered in this district. Accordingly, when Google sought a judicial determination as to the legality of its actions in this district, it quite naturally filed that declaratory action here.

American Blind has no connection to New York either; it is located in Michigan. <u>See</u> Declaration of David A. Rammelt ("Rammelt Decl."), Exh. 6 at ¶ 2. Incredibly, however, American Blind's fifteen-page motion does not contain the word "Michigan" at all: American Blind apparently hopes it can convince this Court that a suit filed in the Northern District of California by a Mountain View company with San Francisco counsel is "forum shopping" to avoid a suit filed in the Southern District of New York by a Michigan company with Chicago counsel, by the simple expedient of neglecting to inform the Court of its own domicile.[4]

---

[4] Because neither party is located in New York, American Blind's reliance on <u>Albie's Foods, Inc. v. Menusaver, Inc.</u>, 170 F. Supp. 2d 736 (E.D. Mich. 2001) and <u>Essex Group. Inc. v. Cobra Wire</u>

7

1    American Blind makes no attempt to justify its choice of New York as a venue. It does
2 not argue that any of the parties is located there (they are not), or that any of the events at issue
3 occurred there (they did not), or that any witnesses or evidence are located there (they are not).
4 Instead, its argument of "forum shopping" consists simply of labeling this suit "a clear attempt at
5 forum shopping," without the slightest basis in fact.[5]

**C.    American Blind's Naming of Additional Parties in its New York Complaint is Irrelevant**

Finally, American Blind has chosen to add various of Google's customers as defendants in their later-filed New York action, and now seeks to parlay that tactical gambit into a reason to dismiss this case, arguing that those additional parties require this case to be litigated in New York rather than here. This argument also fails, for myriad reasons.

First, nothing prevented American Blind from adding those defendants to this case as counterclaim defendants: the purported claims against them could just as easily be stated here, as each is a national (or international) corporation amenable to suit in this District as well as New York.

Second, each of these additional defendants is merely a downstream user of Google's AdWords product. Thus, the factual issues will be the same as to whether that product infringes American Blind's trademarks regardless of whether the user accesses the Google search engine directly or through Google's customers. And of course, any injunctive relief against Google will have equal effect on search results accessed through Google's customers.

---

& Cable Inc., 100 F. Supp. 2d 912 (N.D. Ind. 2000) is misplaced. In those cases, the court was called upon to choose between suits filed by each party in its respective home district within the same Circuit, and noted that thus either way "one of the litigants will be put to the inconvenience of litigating outside of its home district." Albie's, 170 F. Supp. 2d at 740; see also Essex, 100 F. Supp. 2d at 916.

[5] Note, moreover, that (unlike in some cases where Court's conclude that a declaratory relief suit is forum shopping, such as First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc., 1997 WL 579165 (S.D. Cal. July 21, 1997), where the declaratory action was filed in response to a draft complaint served with notice it would be filed the next day in New Jersey)), American Blind never indicated to Google where it intended to file suit should it finally decide to do so. Google thus naturally assumed that suit would be filed in either California or Michigan, not New York. Absent any indication of American Blind's choice of New York, one cannot conclude that Google rushed to court to avoid that undisclosed choice of venue.

1   <u>Third</u>, none of the additional parties named in American Blind's New York complaint has a principal place of business in New York, while two of them maintain a principal place of business in this district.  <u>See</u> Rammelt Decl., Exh. 6 at ¶¶ 4-8.  Thus, the Northern District of California is a more appropriate and convenient forum for the additional parties named in American Blind's New York complaint, as well as for the current parties to this action.

<u>Fourth</u>, the existence of additional parties in the New York action should be accorded little or no weight where—as here—those additional parties are merely downstream distributors.  Thus, for example, this Court in <u>Guthy-Renker-Fitness</u> properly disregarded additional parties in deciding whether to apply the first-to-file rule:  "The additionally named defendants in the two actions are merely derivative manufacturers of the primary parties.  Therefore, the Court finds there is sufficient similarity between the parties in the two actions to satisfy this factor of the first-to-file rule."  <u>Id.</u>, 46 U.S.P.Q. 2d at 1347.  And in <u>Queentex</u>, this Court addressed a strikingly similar situation, where the declaratory judgment defendant had added additional customers to its responsive suit in North Carolina, by noting that the tactic was "suggestive of the conclusion that it was instituted with an eye towards supporting this motion to transfer venue and in thwarting transfer of the North Carolina action to this forum."  <u>Id.</u>, 2000 WL 246599 at *7.  Accordingly, this Court correctly concluded that "the principal parties in both actions are Sara Lee and Royal Queentex," and accordingly denied transfer.  The same logic applies here, where American Blind chose to sue Google's customers as defendants in New York one day before filing this motion.[6]

---

[6] Situations where trademark violations are alleged against downstream manufacturers and distributors are relatively rare.  In the patent context, where such situations are more common, a formal doctrine has evolved to handle situations where venue disputes are premised upon claims against downstream parties:  the "customer suit exception."  Under that doctrine, "a second-filed action may be given priority if the first action involves secondary parties, such as a customer of the accused manufacturer, and the second action involves the primary parties to the patent dispute."  8 Donald S. Chisum, <u>Chisum on Patents</u> § 21.02[4][c] at 21-207; <u>see also</u> <u>Kahn v. Gen. Motors Corp.</u>, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  The customer suit exception applies even where the action by the patent holder is a declaratory judgment action, and even if the declaratory judgment action is the second filed.  <u>Precise Exercise Equipment v. Kmart</u>, 2000 U.S. Dist. LEXIS 21498 (C.D. Cal. 2000).  This principle—that courts should give little or no weight to derivative suits against downstream customers in deciding venue disputes—applies with equal force in this action.

### III.   CONCLUSION

For all of the reasons set forth above, the Court should deny American Blind's motion.

Dated:  March 15, 2004                                        KEKER & VAN NEST, LLP


By:  /s/ Michael H. Page
     MICHAEL H. PAGE
     Attorneys for Plaintiff
     GOOGLE INC.