KELLEY DRYE &
WARREN LLP
333 WEST W

# I.
# **INTRODUCTION**

Google's Opposition To Defendant's Motion To Dismiss, Or, Alternatively, To Stay ("Opposition Brief") represents either revisionist history or a severe disconnect between Google's business people and its legal staff.

Specifically, in its Opposition Brief, Google claims that it maintained an "unequivocal position that its AdWords program did not infringe any of American Blind's rights and thus that Google would not acquiesce to American Blind's demand." (Opposition Brief, p. 1-2). However, Google's own declaratory judgment complaint and a review of various e-mails exchanged between American Blind representatives and Google representatives tell a very different story. While Google now claims that it consistently refused to provide American Blind with any protection for its trademarks during the 16 months leading up to the filing of Google's suit, that is simply untrue. In September, 2002, Google's Senior Trademark Counsel, Rose Hagan, informed American Blind that "Google would be able to prevent others from using as keywords [American Blind's] trademarks . . ." Rose Hagan's September 26, 2002 e-mail is attached to the Declaration of Rose A. Hagan In Opposition To Defendant's Motion To Dismiss, Or, Alternatively, To Stay (the "Hagan Declaration"), as Exhibit B. Then, in January, 2003, a Google Client Services Specialist was working with American Blind to prevent USA Wallpaper, a competitor of American Blind, from using American Blind's trademarked terms in its on-line advertising. *See* January 3, 2003 e-mail from Britton Mauchline at Google to Bill Smith at American Blind, attached to the Declaration of Susan J. Greenspon In Support Of Defendant's Reply Brief In Support Of Its Motion To Dismiss, Or, Alternatively, To Stay (the "Greenspon Declaration") as Exhibit A.

These discussions continued verbally, including from the time of the filing of Google's declaratory judgment action until just days before the filing of American Blind's complaint in the Southern District of New York. In the discussions that followed the filing of Google's declaratory judgment action, American Blind learned that Google was and is not providing any protection for American Blind's trademarks, including its federally registered trademarks. The

1  reality is worse; Google has been and continues to actually promote to American Blind's
2  competitors that they purchase American Blind's trademarked terms, or words that are nearly
3  identical to American Blind's trademarked terms, again including its federally registered
4  trademarked terms, for their own advertising campaigns.  Google's continued assurances of
5  trademark protection and apparent willingness to work with American Blind to resolve the
6  parties' disputes lulled American Blind into not bringing suit immediately.  Google then took this
7  opportunity to file its own anticipatory suit against American Blind.

8         In addition, in its Opposition Brief, Google asserts that its filing of this lawsuit was
9  not an improper anticipatory filing because American Blind's suit was not imminent.  Rather,
10 Google states that it expected that American Blind "would have continued its established course
11 of threatening but not filing suit." (Opposition Brief, p. 6).  Google's assertion, however, is
12 betrayed by the press release that it issued shortly after the filing of this case, in which Google
13 explained that it filed this lawsuit because it was "***being threatened with an imminent lawsuit by***
14 ***American Blind and Wallpaper Factory***."  Alex Salkever, *Searching For Trouble? Keyword ads*
15 *are big earners for Google, Yahoo!, and AOL, so trademark lawsuits currently in the courts could*
16 *spell major hassles*, Business Week online, January 22, 2004, a copy of which is attached to the
17 Greenspon Declaration as Exhibit B.  Google's own admission in this press release makes clear
18 that it filed suit because of the threat of an "imminent lawsuit by American Blind and Wallpaper
19 Factory."  Google's press release is consistent with the fact that Google filed suit only 14 days
20 after American Blind's counsel informed Google that he had been authorized to prepare a
21 complaint against Google.  Since Google only filed this case because it believed a suit by
22 American Blind was imminent, this case constitutes an improper anticipatory suit.

23        Contrary to applicable law, Google also contends that this Court should ignore the
24 fact that American Blind added a number of additional defendants when it filed its action in New
25 York.  (Opposition Brief, p. 8).  Google erroneously contends that the additional defendants
26 added by American Blind are insignificant because they are simply "downstream users" of
27 Google's AdWords product.  These additional defendants, however, can also be liable to
28 American Blind for trademark infringement, particularly since they share advertising revenues

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 3 -

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS,
OR, ALTERNATIVELY, TO STAY

with Google. Moreover, some of these additional defendants display Google's search results in their own unique way, thereby causing additional confusion to American Blind's prospective customers. By adding these additional defendants, American Blind ensured that it can obtain complete relief in its case.

Finally, Google asserts that its filing of this case in this judicial district does not constitute forum shopping because its primary place of business and the majority of its employees are in this district. (Opposition Brief, p. 7). In other words, Google filed this case in this judicial district because it is most convenient for Google. American Blind, however, has no offices and no employees located in this judicial district. Moreover, many of the additional defendants sued by American Blind are not located in this judicial district. Thus, this judicial district is a convenient forum for Google, and not for the majority of the other parties that would have to be involved in this litigation, assuming this case were to continue. By picking a forum that is convenient for itself and inconvenient for American Blind, Google clearly engaged in forum shopping.

## II.
## ARGUMENT

The parties agree that ordinarily the first-filed case is indeed heard first. The parties further agree that there are exceptions to the "first to file" rule. Specifically, the "first to file" rule will not be applied in circumstances where bad faith, anticipatory suit, and forum shopping exist. *Z-Line Designs, Inc. v. Bell'O Int'l.* LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003). All three of these exceptions are applicable in this case, and while Google denies the applicability of these exceptions in its Opposition Brief, Google's written and oral statements prior to the filing of this motion betray its position.

### A. Google Acted In Bad Faith To Dissuade American Blind From Filing Suit

In its Opposition Brief, Google would have this Court believe that it never strayed from its "unequivocal position that its AdWords program did not infringe any of American Blind's rights and thus that Google would not acquiesce to American Blind's demand." (Opposition Brief, p. 1-2). However, a review of the e-mails exchanged between American Blind

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 4 -

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS,
OR, ALTERNATIVELY, TO STAY

and Google makes clear that the parties were engaged in lengthy and complicated settlement discussions in an effort to avoid litigation while satisfying American Blind's need to protect its valuable trademarks. In fact, Google made a number of assurances to American Blind that its trademarks would be protected. Specifically, on September 26, 2002, Google's Senior Trademark Counsel, Rose Hagan, sent an e-mail to Bill Smith at American Blind stating:

> This follows our telephone conversation today. As we discussed, ***Google would be able to prevent others from using as keywords your trademarks*** "American Blind and Wallpaper Factory," "American Blind Factory" and "DecorateToday." However, we could not prevent people from using the descriptive terms American blind, American wallpaper, or other formatives.
>
> Rose Hagan's September 26, 2002 e-mail to Bill Smith, attached to the Hagan Declaration as Exhibit B (emphasis added).

This e-mail from Rose Hagan provided American Blind comfort because American Blind believed Google was agreeing to protect American Blind's trademarked terms. As a result, American Blind did not bring an immediate suit against Google.

Subsequently, on November 20, 2002, Britton Mauchline of Google sent an e-mail to Bill Smith at American Blind stating:

> As your letter states, you have trademarks in place for AMERICAN BLIND & WALLPAPER FACTORY, AMERICAN BLIND FACTORY, and DECORATE TODAY. I'll follow-up with you on my findings of advertisers that are bidding on your trademarked words. I'm unable to block any advertisers on AMERICAN WALLPAPER FACTORY until we have a record of that being a trademark for you as well. Please do forward that on to me if you do in fact hold that trademark.
>
> Britton Mauchline's November 20, 2002 e-mail to Bill Smith, a copy of which is attached to the Greenspon Declaration as Exhibit C.

This e-mail makes clear that as of November 20, 2002 – 4 months after American Blind sent its initial cease and desist letter to Google – Google was still investigating American Blind's claims of trademark infringement. Moreover, by stating that Google could not block advertisers from using American Wallpaper Factory as an advertising term absent proof of American Blind's ownership of that trademark, Google was certainly giving American Blind the impression that it would block advertisers' use of American Blind's federally registered trademarked terms. Given

the tone of this e-mail from Google, American Blind reasonably did not rush to the courthouse to file its own lawsuit because Google's staff was sending the clear message that it would work to eliminate the infringement of American Blind's trademarks.

Similarly, on January 3, 2003, Bill Smith of American Blind sent an e-mail to Britton Mauchline at Google asking "Can we block USA Wallpaper on our branded keywords? They were recently blocked from our words on Overture." Later that day, Britton Mauchline of Google responded by stating "*I've sent an email to our trademark group to have USA Wallpaper taken off those words.* I'll let you know as soon as its been processed." A copy of Bill Smith's January 3, 2003 e-mail and Britton Mauchline's reply is attached to the Greenspon Declaration as Exhibit A (emphasis added). This e-mail makes clear that Google was apparently willing to accommodate certain of American Blind's requests regarding the protection of its trademarks.

Google continued to mislead American Blind regarding Google's willingness to protect American Blind's trademarks when Google filed its Complaint For Declaratory Judgment Of Non-Infringement ("Complaint") in this action. Specifically, in its Complaint, Google states:

> While *Google has agreed to prevent other entities from using American Blind's registered trademarks themselves as keywords*, Google believes and maintains that descriptive terms (including terms such as "blind," "wallpaper," and "factory," which are component parts of American Blind's trademark) are not entitled to any such treatment, and that Google's sale of keyword-triggered advertising does not violate the Lanham Act.

(Google's Complaint, ¶ 18). In light of this allegation in Google's Complaint, American Blind continued to believe that Google was willing to provide protection for American Blind's federally registered trademarks. Given Google's apparent willingness to compromise its position regarding the protection of American Blind's trademarks, American Blind opted to continue negotiations with Google to resolve their dispute, rather than rushing to file its own litigation.[1]

American Blind has now learned that Google never intended to protect American

---

[1] American Blind had good reason to believe that Google might eventually accede to its demands. It is well-known that Google has given in to certain big companies, such as Dell, eBay, and Hewlett-Packard, by agreeing not to sell keywords related to those companies' names. *See* Alex Salkever, *Searching For Trouble? Keyword ads are big earners for Google, Yahoo!, and AOL, so trademark lawsuits currently in the courts could spell major hassles*, Business Week online, January 22, 2004, a copy of which is attached to the Greenspon Declaration as Exhibit B.

Blind's trademarks.  Instead, Google actively promotes and encourages American Blind's competitors to embark on a furious and scorched earth raid on American Blind's trademarks and virtually every conceivable, though indistinguishable, iteration of those trademarks.  This is accomplished by what Google calls its "AdWords Keywords Suggestions" feature, which lures Google's paying customers by the promise of "ideas for new keywords that can help you improve your ad relevance" (this feature is not available to, or even viewable by, the public).  It can not, therefore, be suggested that Google is merely selling "descriptive" terms that coincidentally comprise part (or all) of American Blind's marks or that the federally registered trademarks of American Blind are infringed upon only through Google's "broad match" program (which Google claims, albeit incorrectly, is not infringement).  Rather, Google intentionally has designed its financially lucrative "AdWords" program to maximize the infringement and dilution of American Blind's marks, including its federally registered trademarks.

For example, a competitor of American Blind who is considering purchasing the keywords "American Blind" – which Google freely, though improperly, sells to the highest bidder – is also encouraged by Google to spend even more money purchasing additional marks owned by American Blind.  More specifically, a competitor that types "American Blinds" into Google's "AdWords Keywords Suggestions" feature is encouraged to increase its profits by snapping up even more American Blind marks:

> If you're showing your ads on broad-matched keywords, these queries may trigger your ads. ***To increase your clickthrough rate, you should consider replacing your general keywords with any relevant, more specific suggestions you see here.*** You should also identify any irrelevant terms and add them as negative matches (otherwise your ads will show for terms that don't pertain to your business).
>
> ?? american blinds
> ?? american blinds and wallpaper
> ?? american wallpaper and blinds
> ?? american blinds wallpaper
> ?? american blinds & wallpaper
> ?? american wallpaper & blinds
> ?? american wallpaper blinds
> ?? american wall paper and blinds
> ?? american blinds and wallpaper factory

- ?? american blinds and wall paper
- ?? american windows and blinds
- ?? american blinds com
- ?? american window blinds
- ?? american blinds wallpaper & more
- ?? american window and blinds
- ?? american blinds and windows
- ?? american blinds and draperies
- ?? american blinds company
- ?? american blinds wallpaper and more
- ?? american blinds and wallpaper company
- ?? all american blinds
- ?? american blinds and wallcoverings
- ?? american mini blinds
- ?? american blinds factory
- ?? american blinds and wallpapers
- ?? american blinds and shades
- ?? american brand blinds
- ?? american blinds and wallcovering
- ?? american blinds & draperies
- ?? american blinds and drapes
- ?? american home blinds
- ?? american wall and blinds
- ?? american blinds and drapery
- ?? american blinds and wallpaper com

*See* Google's AdWords Keyword Suggestions, attached to the Greenspon Declaration as Exhibit D (emphasis added). Each of these Google "suggestions" involves the deliberate sale of American Blind's marks and iterations thereof. These "suggestions" are lumped into categories by Google and are sometimes referred to as an "optimization campaign" in marketing these key word groupings to Google's paying customers looking to increase their advertising on Google. To add insult to injury, Google has even labeled the optimization campaign containing every iteration of American Blind's marks, the "American Blind" optimization campaign. In addition to Google's website, Google's sales staff actively promotes this campaign of infringement to American Blind's competitors as well.

It is now apparent that although American Blind's negotiations with Google continued throughout 2003 and even after Google filed this lawsuit, Google was not negotiating with American Blind in good faith. Instead, Google was misleading American Blind by telling it

and its counsel that American Blind's federally registered trademarks would be protected, while at the same time Google was encouraging American Blind's competitors to blatantly misappropriate American Blind's trademarks and further line the pockets of Google at American Blind's expense. When it became clear that Google had no intention of protecting any of American Blind's trademarks, despite assurances to the contrary, American Blind filed its own action in New York on January 27, 2004, in which American Blind named as defendants a number of different infringers of American Blind's trademarks – not just Google.

Moreover, despite the ongoing settlement negotiations and frequent communications between the parties, Google never mentioned to American Blind nor its counsel that Google was considering filing suit to resolve the parties' dispute. Rather, Google continued to engage in settlement discussions with American Blind and continued to promise trademark protections, while its lawyers were secretly preparing and filing this action. Contrary to Google's suggestion in its Opposition Brief, American Blind was not sitting idly by for 16 months while Google continued to infringe its rights. Instead, American Blind relied on Google's assurances of trademark protection and negotiated with Google in good faith in an effort to resolve the parties' dispute, naively leaving Google with the opportunity to rush to the courthouse with this improper anticipatory action.

In its Opposition Brief, Google relies heavily on the case of *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, 2000 WL 246599 (N.D. Cal. 2000), for its proposition that its filing of this lawsuit was not anticipatory. *Royal Queentex*, however, is distinguishable from this case in two separate and very significant ways. First, in *Royal Queentex*, Sara Lee sent a ***single*** demand letter to Royal Queentex. *Id.* at *2. Royal Queentex then filed a declaratory judgment action against Sara Lee three days after receipt of the letter and without making any response to Sara Lee. *Id.* at *2. As a result, the Court found that Royal Queentex could not have misled Sara Lee not to file suit because the parties had never communicated prior to the filing of Royal Queentex's action. *Id.* at *4.

In contrast, American Blind sent its initial demand letter to Google in July, 2002. That initial demand letter was then followed with numerous e-mails and letters sent by both

1  American Blind directly and its counsel.  Google responded to each of these various e-mails and
2  letters.  In fact, the parties continuously negotiated for 16 months regarding possible solutions to
3  American Blind's demands.  At various times during this 16 month negotiation, Google promised
4  American Blind protection for its trademarks and made alleged efforts to limit American Blind's
5  competitors' use of American Blind's federally registered trademarked terms.  As a result,
6  through its misrepresentations, Google lulled American Blind into not bringing suit by its
7  misleading promises and alleged efforts to resolve American Blind's complaints.  These facts
8  make *Royal Queentex* distinguishable from this case.

9  In addition, *Royal Queentex* is distinguishable from this case in that the written
10 communications from American Blind and Sara Lee, the declaratory judgment defendants, are
11 completely different in both their words and their tone.  The *Royal Queentex* court found that
12 "Sara Lee's letter constituted specific, concrete indications of a legal dispute, but not specific,
13 concrete indications that suit was imminent."  *Id.* at *5.  As a result, the court found that Royal
14 Queentex's declaratory judgment action was proper.  *Id.* at *5.  In contrast, the last
15 communication sent by American Blind to Google prior to Google filing this action stated that
16 American Blind's counsel had been authorized to prepare a lawsuit and even told Google what
17 that lawsuit would look like by stating that it would be a "Vuitton-type lawsuit."  *See* Glenn
18 Manishin's November 12, 2003 e-mail, attached to the Hagan Declaration as Exhibit F.  While
19 Sara Lee's letter might not have constituted concrete indication that suit was imminent, Glenn
20 Manishin's November 12, 2003 e-mail clearly advised Google that American Blind's lawsuit was
21 imminent absent an immediate settlement.  Given these factual distinctions, *Royal Queentex* is
22 distinguishable from this case and can not be relied upon by Google to support its position that its
23 filing of this lawsuit was not anticipatory.

24 This situation is actually more analogous to *Elbex Video Ltd. v. Tecton, Ltd.*, 2000
25 WL 1708189 at *1-2 (S.D.N.Y. Nov. 15, 2000), in which the Southern District of New York
26 refused to dismiss a second-filed patent infringement action pursuant to the first to file rule,
27 despite the fact that the alleged infringer had filed a declaratory judgment action in the Central
28 District of California 19 days before the patent infringement action was filed.  In considering the

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 10 -

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS,
OR, ALTERNATIVELY, TO STAY

1  motion to dismiss the second-filed infringement action, the court found that the first-filed
2  declaratory judgment action was "an inappropriate filing resulting from an improper race to the
3  courthouse." *Id.* at *2. In *Elbex Video Ltd.*, the parties were engaged in ongoing settlement
4  discussions and the declaratory judgment plaintiff had requested additional information from the
5  patent-holder and a conference call between the parties. *Id.* at *1. Prior to the occurrence of that
6  conference call, the declaratory judgment plaintiff filed suit against the patent holder. *Id.* at *1.
7  In refusing to dismiss the second-filed patent infringement action, the court stated:

> Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation.

12 *Id.* at *2. The Southern District of New York went on to find that if the alleged infringer had not
13 appeared willing to engage in productive settlement negotiations, the patent-holder would have
14 filed its complaint. *Id.* at *3. As a result, the patent-holder would not be deprived of its choice of
15 forum as a result of the alleged infringer's misleading statements about the possibility of
16 settlement. *Id.* at *3.

17 Similarly, American Blind would have filed suit immediately if Google was not
18 willing to engage in productive settlement discussions. Google repeatedly assured American
19 Blind that its federally registered trademarks would be protected. As a result, American Blind
20 delayed filing suit. American Blind now knows that Google never intended to protect any of
21 American Blind's trademarks, but rather was trying to dissuade American Blind from promptly
22 bringing suit. Google then seized upon American Blind's delay in bringing suit and brought its
23 own improper anticipatory declaratory judgment action. This Court should follow the reasoning
24 in *Elbex Video, Ltd.* and dismiss Google's improper anticipatory action and let American Blind's
25 infringement action proceed to judgment.

### B. Google's Suit Was An Improper Anticipatory Filing

27 In its Opposition Brief, Google correctly notes that a suit is deemed to be "anticipatory" if
28 it is "the result of a 'race to the courthouse' in response to a 'concrete indication that [the

declaratory defendant's] own suit was imminent.'" (Opposition Brief, p. 4, citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648-49 (N.D. Cal. 1994)). In its Opposition Brief, Google further denies that American Blind's suit was imminent and instead accuses American Blind of "crying wolf." (Opposition Brief, p. 6). In fact, Google goes on to state "[t]here is no basis to conclude that, had Google not sought declaratory relief, American Blind would <u>ever</u> have sued Google." (Opposition Brief, p. 6). These allegations are betrayed by Google's own press release following the filing of this lawsuit. Specifically, Google issued a statement shortly after the filing of this lawsuit and before the filing of American Blind's motion to dismiss stating:

> Google filed this action because ***we were being threatened with an imminent lawsuit by American Blind and Wallpaper Factory***. We seek to have the court confirm our view that this methodology properly respects trademark owners' rights while at the same time simplifying the ad targeting process for our advertisers. Such a decision will ultimately benefit the online advertising industry at large, as well as Google.
>
> Alex Salkever, *Searching For Trouble? Keyword ads are big earners for Google, Yahoo!, and AOL, so trademark lawsuits currently in the courts could spell major hassles*, Business Week online, January 22, 2004, a copy of which is attached to the Greenspon Declaration as Exhibit B.

Google's own words make clear that Google was simply trying to beat American Blind to the courthouse when it filed this action because it knew that American Blind's suit was "imminent." As a result, this case should be dismissed as an improper anticipatory filing.

Moreover, in its Opposition Brief, Google suggests that nothing had changed between the parties in the 16 months beginning when American Blind sent its first cease and desist letter to Google and ending when Google filed suit. This is simply not true. In July, 2002, when American Blind's counsel, Susan Greenspon, sent the initial cease and desist letter to Google, American Blind simply requested that Google cease selling American Blind's trademarks, and marks substantially similar thereto, as part of Google's AdWords program. *See* Susan Greenspon's July 23, 2002 letter to Google, attached to the Hagan Declaration as Exhibit A. The parties themselves then participated in extensive settlement negotiations in an effort to avoid litigation, while preserving American Blind's trademark rights. Then, in his November 12, 2003 e-mail, American Blind's counsel, Glenn Manishin, informed Google that American Blind

1  had authorized its counsel to "prepare a Vuitton-type lawsuit if the matter cannot be resolved."

2  Glenn Manishin's November 12, 2003 e-mail is attached to the Hagan Declaration, as Exhibit F.

3  This statement by American Blind's counsel understandably got Google's attention because Louis

4  Vuitton was suing Google in France, where French travel firms Viaticum and Luteciel had

5  recently won US$90,570 from Google for trademark infringement. Upon being threatened with a

6  "Vuitton-type lawsuit," Google acted swiftly to preempt American Blind's case. In fact, Google

7  filed suit only 14 days after receiving Mr. Manishin's e-mail, and while still negotiating with

8  American Blind's counsel, Susan Greenspon, to resolve the parties' dispute. Curiously, Google

9  has provided no alternate explanation for why it finally decided to bring this suit in November,

10 2003, after 16 months of negotiations between the parties. Both Google's own words in its press

11 release and Google's actions make clear that Google only filed this case because it believed a suit

12 by American Blind was imminent and it wanted to beat American Blind to the courthouse.

13 **C.     American Blind's Inclusion Of Additional Defendants Is Relevant**

14          In its Opposition Brief, Google contends that this Court should ignore the fact that

15 American Blind sued additional defendants, besides Google, in its New York action. (Opposition

16 Brief, p. 8). This advice, however, is contrary to applicable law. In determining whether to

17 follow the "first to file" rule, the court initially is to consider three factors: "(1) the chronology of

18 the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z-Line*

19 *Designs, Inc.*, 218 F.R.D. at 665. Google can not argue that there is similarity of parties between

20 its suit and American Blind's suit, so it attempts to downplay the significance of the additional

21 defendants in American Blind's suit. For this reason, Google claims that American Blind's

22 additional defendants are simply "downstream users" of Google's AdWords product so as to

23 imply that the issues will be the same in both cases, despite the inclusion of the additional

24 defendants in American Blind's case. (Opposition Brief, p. 8). These additional defendants,

25 however, remain liable to American Blind for trademark infringement regardless of whether they

26 are using Google's advertising program or their own program. In fact, some of these additional

27 defendants display Google's search results in their own unique way (i.e., displaying the

28 "Sponsored Links" across the top of the page rather than down the side or highlighting the

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 13 -

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS,
OR, ALTERNATIVELY, TO STAY

"Sponsored Links,") thereby causing additional confusion to American Blind's prospective customers. Moreover, these additional defendants share advertising revenues with Google thereby enabling these additional defendants to directly profit from their infringement of American Blind's trademarks. As a result, in order for American Blind to obtain complete relief for the infringement of its trademarks, these additional defendants are essential parties to the action and can not be disregarded for purposes of a ruling on this motion.

### D. Google Rushed To The Courthouse To Select A Forum That Is Favorable To It, Which Amounts To Forum Shopping

Google somehow attempts to convince this Court that it was not forum shopping when it filed this lawsuit in its home jurisdiction based upon the mere fact that Google's headquarters and the majority of its employees are located in this judicial district. Google admits that this forum is exceptionally convenient for it and that American Blind has no connections or witnesses in this judicial district, but yet tries to deny that it engaged in forum shopping. A simple review of the facts illustrates that Google chose this judicial district to the detriment of American Blind, which is a clear example of forum shopping.

Google then goes on to suggest that American Blind was forum shopping by filing its action in New York – where American Blind has no offices and no employees. Google fails to mention that almost all of the defendants in American Blind's lawsuit, including Google, have offices in New York, and that New York was the only apparent common thread among the defendants. Since American Blind did not pick a forum convenient for itself, to the detriment of all other parties involved in the litigation, but rather selected a forum that has a connection to the majority of the parties involved in the case, American Blind cannot be accused of forum shopping.

## III.
## CONCLUSION

By Google's own admission in its press release, it only filed suit against American Blind in this judicial district because it believed American Blind's lawsuit against it was "imminent." There is no better evidence that this filing was an improper anticipatory filing, than Google's own words. In addition, Google engaged in lengthy, and complicated settlement negotiations with

1  American Blind over the period of 16 months.  During this time, Google made a number of
2  concessions that kept American Blind at the negotiating table and convinced it not to bring an
3  immediate suit.  American Blind has now learned that those concessions were fabricated to keep
4  American Blind from filing suit.  Moreover, Google never mentioned to American Blind that it
5  would file a lawsuit for a declaration of its rights if the parties could not reach a settlement of
6  their dispute.  Instead, Google continued to negotiate with American Blind while its lawyers
7  surreptitiously prepared and filed this lawsuit.  Google should not be rewarded for winning this
8  race to the courthouse by using such deceptive tactics.  As a result, this case should be dismissed,
9  or, alternatively, stayed, and American Blind's lawsuit in New York should proceed to judgment.

DATED: March 22, 2004          HOWREY SIMON ARNOLD & WHITE, LLP


By: /s/ Robert N. Phillips
    ROBERT N. PHILLIPS


    David A. Rammelt
    Susan J. Greenspon
    Dawn M. Beery
    KELLEY DRYE & WARREN LLP
    333 West Wacker Drive, Suite 2600
    Chicago, IL  60606

    Attorneys for Defendant
    AMERICAN BLIND AND WALLPAPER
    FACTORY, INC.

KELLEY DRYE & WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 15 -

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS,
OR, ALTERNATIVELY, TO STAY