NOT FOR CITATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN BLIND & WALLPAPER FACTORY, INC., <br><br> Defendant. | Case Number C 03-05340 JF <br><br> **ORDER DENYING MOTION TO DISMISS OR STAY** <br><br> [Docket #5] |

Defendant moves to dismiss, or alternatively, to stay the instant action for declaratory relief. The Court has considered the moving and opposing papers and the oral arguments presented at the hearing on April 5, 2004. For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

Plaintiff Google Inc. ("Google") is a Delaware corporation with its principal place of business in Mountain View, California. It provides Internet "search engine" services to Internet users and advertising services to businesses and others involved in Internet sales and marketing. Defendant American Blind & Wallpaper Factory, Inc. ("ABWF") is a Delaware corporation that operates Internet

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

websites through which it sells blinds, home decorating products, and related services. This action arises from a dispute as to whether ABWF's trademarks are infringed by Google's "AdWords" advertising program.

Internet users seeking a specific retailer or product often do not know the website address at which the retailer or product may be found. Such users may search for the website address by entering into Google's search engine textual terms related to the retailer's name or the product being sought. After such terms, known as "keywords," are entered, the search engine displays a list of websites in order of relevancy to the keywords. Also displayed are advertised websites denoted as "Sponsored Links," which are part of Google's AdWords service. The keywords entered determine the advertised websites that are displayed. Individuals and businesses bid on particular keywords that will lead to their advertisement being displayed as a Sponsored Link. They then compensate Google based on the number of users who click on their advertisement.

ABWF asserts that Internet users often enter keywords that are identical or similar to marks adopted or registered by ABWF, such as AMERICAN BLIND, AMERICAN BLINDS, AMERICAN BLIND & WALLPAPER FACTORY, AMERICAN BLIND FACTORY, and DECORATETODAY. When an Internet user intending to find ABWF's website enters such keywords, Google's search engine allegedly displays as Sponsored Links the websites of ABWF's direct competitors. According to ABWF, this occurs because Google has allowed ABWF's competitors to bid on keywords identical to or similar to ABWF's marks.

On July 23, 2002, Susan Greenspon, ABWF's trademark counsel, informed Google by letter that "use of the following similar marks by Google's advertisers constitutes infringement of ABWF's registered marks . . ." Hagan Decl., Ex. A. Among the similar marks listed were "american blind" and "american wallpaper," and other combinations of the words "american," "blind," "wallpaper," "factory," and "company." *Id.* Greenspon noted that ABWF had obtained a permanent injunction enjoining a competitor from using "the word 'American' in any variation or combination with the word 'Blinds' either singular or plural." *Id. See* Rammelt Decl., Ex. 1 (Permanent Injunction Order). Greenspon requested that Google "immediately (a) cease selling ABWF's proprietary marks and marks similar

2

1 thereto . . . (b) remove such marks from all campaigns, and (c) remove all advertisers who have
2 purchased such marks (including . . . USA Wallpaper . . .)." Hagan Decl., Ex. A.
3       In September 2002, after some discussion between Google and ABWF, Rose Hagan,
4 Google's senior trademark counsel, sent an email to Bill Smith, ABWF's e-commerce advisor,
5 indicating that Google "would be able to prevent others from using as keywords [ABWF's] trademarks
6 'American Blind and Wallpaper Factory,' 'American Blind Factory' and 'DecorateToday,'" but that
7 Google "could not prevent people from using the descriptive terms American blind, American
8 wallpaper, or other formatives." *Id.*, Ex. B.
9       On January 3, 2003, Smith sent an email to Google requesting that USA Wallpaper be
10 "blocked" on ABWF's "branded keywords." Greenspon Decl., Ex. A. A client specialist from
11 Google replied by email, stating that "I've sent an email to our trademark group to have USA
12 Wallpaper taken off those words." *Id.* On January 10, 2003, Glenn Manishin, ABWF's counsel,
13 notified Google that he was informed that "Google is still selling sponsored links to eBay and
14 USAWallpaper.com using the keywords 'American Blind and Wallpaper Factory,' which are
15 registered trademarks of ABFW." Hagan Decl., Ex. C. Manishin also indicated that he "hope[d] this
16 can be resolved . . . without the need for any formal cease-and-desist demands or other
17 unpleasantness." *Id.*
18       On July 11, 2003, Joe Charno, ABWF's vice president of marketing, advertising and
19 e-commerce, sent a cease-and-desist letter informing Google that ABWF believed that "The Blind
20 Factory has purchased advertising keywords from [Google] that are identical or substantially similar to
21 American Blinds, Wallpaper & More ('ABWM') registered trademarks" and that Google "immediately
22 cease selling ABWM's proprietary marks and marks similar thereto . . . to The Blind Factory and
23 immediately remove the referenced keywords from their program." *Id.*, Ex. D. Charno indicated that
24 he would "involve our legal department" if his request was not complied with in seven days. *Id.* On
25 August, 27, 2003, the Google AdWords Team responded by email as follows:
26     We searched with your trademark, 'American Blind Factory' and determined that the
    ad in question does not use your trademark as a keyword trigger. Rather, this ad
27     appears when 'Blind Factory' is entered as a search query. This ad is not using your
    trademarked term as a keyword trigger; but using 'Blind Factory' as a keyword trigger.
28

3

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

1  *Id.*, Ex. E. In concluding that it would not take further action, Google explained that "[w]e believe it is
2  appropriate for this ad to be triggered if the non-trademarked term 'Blind Factory' is entered as part of
3  a search query." *Id.*
4  On November 12, 2003, Manishin informed Google that "[o]ur client [ABWF] is quite upset
5  about the matter, which has been at issue for more than a year without progress, and has asked us to
6  prepare a Vuitton-type lawsuit if the matter cannot be resolved. I of course would like to avoid that . .
7  ."[1]  *Id.*, Ex. F. Thereafter on November 17, 2003 and again on November 23, 2003, Google's
8  representatives spoke with ABWF's representatives by telephone informing them that Google would
9  not modify its AdWords program and that Google would not comply with ABWF's demands. Hagan
10 Decl., ¶ 10.
11 On November 26, 2003, Google filed the instant action against ABWF, seeking a declaratory
12 judgment "that its current policy regarding the sale of keyword-triggered advertising does not constitute
13 trademark infringement." Compl., p. 22. On January 27, 2004, ABWF filed suit in the Southern
14 District of New York against Google, America Online, Inc., Netscape Communications Corp.,
15 Compuserve Interactive Services, Inc., Askjeeves, Inc., and Earthlink, Inc. for trademark infringement
16 and dilution, unfair competition, and tortious interference with prospective economic advantage. *See*
17 Rammelt Decl., Ex. 1 (Complaint, 04 CV 00642). Now before the Court is ABWF's motion to
18 dismiss or, alternatively, to stay proceedings based on equitable exceptions to the "first-to-file" rule.
19 //
20 //
21 //
22 **II. APPLICABLE LAW**
23 A lawsuit seeking federal declaratory relief must present an actual case or controversy
24 regarding a matter within the federal court's jurisdiction. 28 U.S.C. § 2201(a); *Gov't Employees Ins.*
25 *Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998). Such relief is discretionary, however, and a

---

[1] Google explains that the "Vuitton-type" lawsuit was a reference to an action filed in France on August 6, 2003, by Luis Vuitton SA against Google and its French subsidiary for trademark infringement arising out of similar advertising practices at issue here. Compl., p. 5.

4

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

1   district court may abstain from hearing a declaratory relief action. *Id*. at 1223; *Huth v. Hartford Ins.*
2   *Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002).

3   When two cases involving the same or substantially similar parties and issues have been filed in
4   two different federal courts, the court that received the latter filing has discretion to stay, transfer, or
5   dismiss the second action, and the first action filed generally should proceed to judgment. *Alltrade,*
6   *Inc. v. Uniweld Products, Inc*., 946 F.2d 622, 628 (9th Cir. 1991); *Pacesetter Systems, Inc. v.*
7   *Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982). This so-called first-to-file rule was developed to
8   "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade*, 946
9   F.2d at 625 (citing *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750
10  (9th Cir. 1979)). Nonetheless, it "is not a rigid or inflexible rule to be mechanically applied, but rather
11  is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at
12  95. "The circumstances under which an exception to the first-to-file rule typically will be made include
13  bad faith [citation], anticipatory suit, and forum shopping [citations]." *Alltrade*, 946 F.2d at 628. In
14  any event, "it is clear that the first-to-file rule is applied at the discretion of the district court." *Biosite,*
15  *Inc. v. XOMA Ltd.*, 168 F. Supp. 2d 1161, 1164 (N.D. Cal. 2001).

16  Furthermore, "[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his
17  conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *DeFeo v.*
18  *Procter & Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993). "Application of the first to file rule
19  in such situations would thwart settlement negotiations, encouraging intellectual property holders to file
20  suit rather than communicate with an alleged infringer." *Z-Line Designs, Inc. v. Bell'O Int'l., LLC*,
21  218 F.R.D. 663, 665 (N.D. Cal. 2003) (citing *Charles Schwab & Co. v. Duffy*, 49 U.S.P.Q.2d
22  1862, 1864 (N.D. Cal. 1998)). "Potential plaintiffs should be encouraged to attempt settlement
23  discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take
24  advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files
25  a complaint." *Id.* at 666-67 (quoting *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.
26  Supp. 1350, 1354 (S.D. N.Y.1992)).

27
28

5

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

## III. DISCUSSION

As an initial matter, the Court concludes that the present action satisfies the requirement of the Declaratory Judgment Act that there be an actual case or controversy within the Court's jurisdiction. A justiciable controversy arose, at the latest, with ABWF cease-and-desist letters, stating that use of certain keywords in Google's AdWords program was deemed to infringe ABWF's registered marks.

**A.   First-to-File Rule**

In applying the first-to-file rule, "a court looks at three threshold factors: (1) the chronology of the two actions; (2) the *similarity* of the parties, and (3) the *similarity* of the issues." *Id.* at 665 (emphasis added). ABWF argues that the instant action fails to satisfy each of these factors, and that priority should thus be given to the later-filed action in New York. The Court concludes otherwise.

First, ABWF contends that the eight week gap between Google's filing on November 26, 2003 and ABWF's filing on January 27, 2004 is insignificant given the fact that the parties were engaged in active settlement discussions even through the year-end holidays. However, ABWF cites no authority for its contention that the Court should disregard the undisputed chronology of filings simply because the parties were engaged in settlement discussions. *See Ward v. Follett Corp.*, 158 F.R.D. 645, 647 (N.D. Cal. 1994) (settlement discussions over several months did not preclude giving priority to the first-filed action).

As to the second factor, ABWF emphasizes that the parties in the two actions are not identical. However, strict identity of parties is not an absolute requirement of the first-to-file rule. *See British Telecomm. plc v. McDonnell Douglas Corp.*, No. C-93-0677 MHP, 1993 WL 149860, at *4 (N.D. Cal. May 3, 1993) (holding that the absence of strict identity of parties "does not mandate this court to disregard the first-to-file rule, rather it is another of the factors this court must consider in exercising its discretion"). The first-to-file rule may be applied if there is similarity or "substantial overlap" of the parties in the two actions. *See Dumas v. Major League Baseball Props., Inc.*, 52 F. Supp. 2d 1183, 1189 (S.D. Cal. 1999), *vacated on other grounds*, 104 F. Supp. 2d 1220 (S.D. Cal. 2000). The New York action includes five additional parties that allegedly profit from Google's search

6

engine and AdWords program, which they incorporate in their own websites' search function.[2] It is undisputed that the liability of these additional parties depends entirely upon whether Google's AdWords program is found to infringe ABWF's trademarks. Given this dependency and the fact that Google is a party in both actions, there clearly is a substantial overlap of the parties in the two actions.

Finally, ABWF urges the court not to apply the first-to-file rule because the issues presented in the two actions are not identical. ABWF contends that since more parties are involved in the New York action, more issues and legal claims arise that are not present in the instant action and that will require different proof. Although the two actions obviously are not mirror images of one another, it is clear that the fundamental issue in both actions–whether Google's AdWords program infringes ABWF's trademarks–is identical.

Having found that the first-to-file rule may be applied to the instant action, the Court now must address the question of whether application of the rule comports with sound judicial administration.

**B.     Alleged Anticipatory Action and Forum Shopping**

In support of its contention that Google should not receive the benefit of the first-to-file rule here, ABWF relies on *Z-Line Designs*, emphasizing that where "a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." 218 F.R.D. at 667. ABFW contends that it had been in settlement discussions for almost a year and that Google quickly filed suit only after it was informed on November 12, 2003 that a Vuitton-type lawsuit was imminent. ABWF also contends that Google admitted publicly that the instant action was anticipatory. In a January 22, 2004 report by Business Week Online, a Google representative was quoted as saying that "Google filed this action because we were being threatened with an imminent lawsuit by American Blind & Wallpaper Factory." Greenspon Decl., Ex. B. Although there is evidence supporting ABWF's position, the Court nonetheless

---

[2] The Court is unaware of any reason why the five additional parties could not be joined as counterclaim defendants in the instant action, or why the Southern District of New York is a more appropriate venue than this judicial district. With regard to convenience, ABWF notes that some of the additional defendants are not located in this judicial district. Google argues that this judicial district is more appropriate since it is where its headquarters and primary place of business are located, while ABWF is located in Michigan and allegedly has no significant connection to New York.

concludes that the totality of the circumstances suggests that Google's decision to file suit did not have an inappropriate purpose.

While its statement of January 22, 2004 shows that Google was concerned about the theat of imminent litigation when it filed its own suit, it does not follow that Google's decision to file suit resulted solely from Manishin's threat of a Vuitton-type lawsuit. Indeed, Google reasonably could have believed that a lawsuit was imminent as early as July 11, 2003, when Charno sent his cease-and-desist letter threatening to involve his legal department if his demands were not met within seven days. In that letter, Charno alluded specifically to the permanent injunction that ABWF had obtained in a similar lawsuit against another party. Forum shopping certainly might have been suspected had Google filed suit within the seven day period fixed by Charno or even immediately thereafter, and it is significant that Google did not do so. Google also reasonably could have believed a lawsuit was imminent on August 27, 2003, when its AdWords Team finally informed Charno that it would not comply with his demands, yet it did not file suit until almost three months later.

In light of this history, the Court is not persuaded that Manashin's email of November 12, 2003 threatening a Vuitton-type lawsuit precipitated an improper anticipatory action. If anything, the email is less threatening than Charno's cease-and-desist letter in that it did not set a deadline after which legal action ostensibly would be taken.

Nor is there any persuasive evidence that Google attempted to lull ABWF into a false sense of security through its responses to ABWF's demands. Beginning with its first cease-and-desist letter on July 23, 2002, ABWF demanded that Google prevent advertisers from using as keywords the term "American blind," and other variations and combinations of its registered marks. Nothing in the record suggests that Google led ABWF to believe that it might change its policy of allowing advertisers to use as keywords terms it believed were descriptive, such as "American blind" and "Blind Factory," as opposed to ABWF's registered marks, such as "American Blind Factory." *See* Hagan Decl, Ex. B & E. Google's stated willingness to prevent ABWF's competitor from using keywords identical to ABWF's registered marks was consistent with Google's previously stated position. *See* Greenspon Decl., Ex. A & C.

ABWF also contends that Google acted in bad faith, claiming that Google never intended to prevent others from using ABWF's registered marks as keywords. In support of its claim, ABWF proffers a copy of a screen depicting Google's AdWords Keyword Suggestions, which includes "american wallpaper and blinds factory," and "american blinds factory."[3]  Greenspon Decl., Ex. D. Although ABWF's trademark counsel states that the "'AdWords Keyword Suggestions' feature is not available to, or even viewable by the public," *id.*, ¶ 6, there is no indication that ABWF, as a business and potential Google AdWords advertiser, lacked access to the screen at all relevant times. Nor is there any indication that the AdWords Keyword Suggestions changed during negotiations, a fact that might have dissuaded ABWF from filing suit.

Considerations of sound judicial administration discourage anticipatory actions so as to encourage owners of intellectual property to engage in settlement prior to filing suit, but such considerations do not require that a party in continuous apprehension of a lawsuit be precluded from seeking declaratory relief in light of repeated threats. While the present case presents a close question, the Court concludes that the first-to-file rule should be applied.

**C.    Alleged Improper Declaratory Judgment**

In support of its motion to dismiss, ABWF argues that Google seeks a determination that exceeds this Court's jurisdiction to the extent that the relief sought is not restricted to ABWF and its trademarks. ABWF points out that Google seeks to validate its entire keyword advertising program as to every trademark holder in the United States. However, the Declaratory Judgment Act itself imposes no such jurisdictional limitation.[4]  Declaratory relief should be denied when it "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759

---

[3] It is worth noting that the AdWords Keyword Suggestions include the plural word "blinds" as opposed to the singular word "blind" in ABWF's registered trademarks.

[4] Section 2201 of Title 28 of the United States Code provides, in relevant part: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

F.2d 1353, 1357 (9th Cir. 1985). If granted, Google's requested declaratory judgment–that its current policy regarding the sale of keyword-triggered advertising does not constitute trademark infringement–would resolve the controversy between it and ABWF. As such, the instant action warrants consideration of the merits even though the relief sought is not limited to ABWF. "[T]he Court may, after a full consideration of the merits, exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought." *Id.*, at 1356.

ABWF also argues that the instant action is improper because it does not resolve all the issues presented in the later-filed New York action. ABWF relies on *First Fishery Dev. Serv., Inc. v. Lane Labs USA, Inc.*, No. CIV. 97-1069-R, 1997 WL 579165 (S.D. Cal. July 21, 1997), in which the plaintiff filed a declaratory relief action the day after the defendant threatened to file suit in three days if the plaintiff did not make further concessions. In dismissing the declaratory relief action, the court noted that: "Because no relevant uncertainty existed here, and the [later-filed] litigation effectively could settle the legal relations at issue, it appears that granting declaratory relief would serve no useful purpose. This makes such relief inappropriate even in the absence of forum shopping." *Id.*, at *3, n. 2. In the present case, however, a relevant uncertainty existed when Google filed the instant action on November 26, 2003. As discussed above, ABWF took no legal action after the seven day deadline in Charno's July 11, 2003 letter had passed, or after Google notified Charno forty-seven days later on August 27, 2003 that it would not comply with his demands. Because uncertainty existed as to whether ABWF would carry out its threat, the Court concludes that Google's request for declaratory relief is proper.

**D.     Motion to Stay**

In the event the Court decides not to dismiss the instant action, ABWF urges the Court to stay proceedings until the New York action is resolved. ABWF contends that there is a possibility of inconsistent judgments on the same issues. It is because of this possibility that the first-to-file rule exists. Furthermore, it is appropriate for the instant action to proceed under the first-to-file rule, as discussed above.

**IV. ORDER**

10

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

Good cause therefore appearing, IT IS HEREBY ORDERED that Defendant's motion to dismiss or alternatively to stay the instant proceedings is DENIED.

DATED: April 8, 2004

                                                   /s/ electronic signature authorized
                                                 JEREMY FOGEL
                                                 United States District Judge

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)

Copies of this Order have been served on following persons:

Michael H. Page
mhp@kvn.com

Ravind Singh Grewal
rsg@kvn.com

Robert Nathan Phillips
phillipsr@howrey.com

Case No. C 03-05340 JF
ORDER DENYING MOTION TO DISMISS OR STAY
(JFEX2)