1   Robert N. Phillips (SBN 120970)
    Ethan B. Andelman (SBN 209101)
2   HOWREY SIMON ARNOLD & WHITE
    525 Market Street, Suite 3600
3   San Francisco, CA 94105
    T: (415) 848-4900
4   F: (415) 848-4999

5   David A. Rammelt (Admitted *Pro Hac Vice*)
    Susan J. Greenspon (Admitted *Pro Hac Vice*)
6   Dawn M. Beery
    KELLEY DRYE & WARREN LLP
7   333 West Wacker Drive, Suite 2600
    Chicago, IL 60606
8   T: (312) 857-7070
    F: (312) 857-7095
9
    Attorneys for Defendant/Counter-Plaintiff
10  AMERICAN BLIND AND WALLPAPER
    FACTORY, INC.
11

**Filed**

**MAY 0 4 2004**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  GOOGLE INC., a Delaware                 CASE NO. C 03-5340 JF
    corporation,
16
                  Plaintiff,               **DEFENDANT AMERICAN BLIND &
17                                          WALLPAPER FACTORY, INC.'S
           v.                               ANSWER, AFFIRMATIVE
18                                          DEFENSES, COUNTERCLAIMS,
    AMERICAN BLIND &                        AND THIRD-PARTY CLAIMS**
19  WALLPAPER FACTORY, INC., a
    Delaware corporation d/b/a
20  decoratetoday.com, Inc., and DOES       **DEMAND FOR JURY TRIAL**
    1-100, INCLUSIVE,
21
                  Defendant.
22

23  AMERICAN BLIND &
    WALLPAPER FACTORY, INC., a
24  Delaware corporation d/b/a
    decoratetoday.com, Inc.,
25
                  Counter-Plaintiff,
26
           v.
27
    GOOGLE, INC., AMERICA
28  ONLINE, INC., NETSCAPE
    COMMUNICATIONS

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

Dockets.Justia.com

CORPORATION, COMPUSERVE
INTERACTIVE SERVICES, INC.,
ASK JEEVES, INC., and
EARTHLINK, INC.

Counter-Defendants/
Third-Party Defendants.

Defendant American Blind & Wallpaper Factory, Inc. d/b/a decoratetoday.com, Inc. ("American Blind") hereby answers the Complaint of Plaintiff Google, Inc. ("Google") as follows:

1.      American Blind admits that Google provides Internet search engine services to Internet users.  American Blind is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 1, and on that basis denies each and every remaining allegation contained therein.

2.      American Blind admits the allegations contained in paragraph 2.

3.      American Blind admits that jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question), 17 U.S.C. § 1051 et seq. (Lanham Act), and 28 U.S.C. § 1338(a) (trademarks).  American Blind denies the remaining allegations contained in paragraph 3.

4.      American Blind admits the allegations contained in paragraph 4.

5.      American Blind admits the allegations contained in paragraph 5.

6.      American Blind admits that it has asserted that Google's sale of keyword-triggered advertising services constitutes trademark infringement.  American Blind denies the remaining allegations contained in paragraph 6.

7.      American Blind is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 7, and on that basis denies each and every allegation contained therein.

8.      American Blind admits that Google offers to it is business customers a keyword triggered advertising program entitled "AdWords."  American Blind is without sufficient

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 2 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1   knowledge or information to form a belief as to the truth of the remaining allegations contained in

2   paragraph 8, and on that basis denies each and every allegation contained therein.

3       9.      American Blind admits that Google's AdWords program permits Google's

4   advertising customers to purchase advertising links associated with certain keywords. American

5   Blind is without sufficient knowledge or information to form a belief as to the truth of the

6   remaining allegations contained in paragraph 9, and on that basis denies each and every allegation

7   contained therein.

8       10.     American Blind denies the allegations contained in paragraph 10.

9       11.     American Blind admits the allegations contained in paragraph 11.

10      12.     American Blind admits the allegations contained in paragraph 12.

11      13.     American Blind denies that Kelley Drye subsequently acknowledged that it had a

12  conflict of interest in representing American Blind because it also represented Google in another

13  matter. American Blind admits that Google was instructed to contact American Blind directly to

14  resolve this matter.

15      14.     American Blind admits that on September 26, 2002 Rose Hagan, Google's Senior

16  Trademark Counsel, spoke with Bill Smith of American Blind regarding Google's ability to block

17  American Blind's competitors from purchasing keywords that are identical or substantially

18  similar to American Blind's trademarks. American Blind denies the remaining allegations

19  contained in paragraph 14.

20      15.     American Blind admits the allegations contained in paragraph 15.

21      16.     American Blind admits the allegations contained in paragraph 16.

22      17.     American Blind is without sufficient knowledge or information to form a belief as

23  to the truth of the allegation that on August 6, 2003, Luis Vuitton SA sued Google and its French

24  subsidiary for trademark infringement arising out of Google's posting of links to companies and

25  other organizations that have paid to associate themselves with certain keywords, and on that

26  basis denies this allegation. American Blind admits that Luis Vuitton SA sued Google for

27  trademark infringement. American Blind further admits the remaining allegations contained in

28  paragraph 17.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 3 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1      18.    American Blind denies the allegations contained in paragraph 18.

2                                    **CLAIMS FOR RELIEF**

3                                        **CLAIM ONE**

4      **(Declaratory Judgment of Non-infringement of Trademarks, 15 U.S.C. § 1051 et seq.)**

5      19.    American Blind repeats and incorporates by reference paragraphs 1-18 of this

6      Answer.

7      20.    American Blind admits that it has claimed that Google's sale of keywords that are

8      identical or substantially similar to American Blind's trademarks as part of Google's AdWords

9      program constitutes trademark infringement.  American Blind denies the remaining allegations

10     contained in paragraph 20.

11     21.    American Blind denies the allegations contained in paragraph 21.

12     22.    American Blind admits that Google is seeking a declaratory judgment from this

13     Court that its current policy regarding the sale of keyword-triggered advertising does not

14     constitute trademark infringement.  American Blind denies that Google is entitled to such a

15     declaratory judgment.

16                                    **PRAYER FOR RELIEF**

17     23.    American Blind denies that Google is entitled to judgment according to the

18     declaratory relief sought.

19     24.    American Blind denies that Google is entitled to costs in this action.

20     25.    American Blind denies that Google is entitled to any further relief.

21                                  **AFFIRMATIVE DEFENSES**

22                                   First Affirmative Defense

23                                    (Failure to State Facts)

24     Google's Complaint fails to state facts constituting a legally cognizable cause of action

25     against American Blind.

26                                  Second Affirmative Defense

27                             (Improper Declaratory Judgment Action)

28     Although the only named defendant is American Blind, Google's Complaint does not

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 4 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    restrict the relief sought to its dispute with American Blind, but rather seeks a more global stamp

2    of approval of its marketing practices.  In other words, Google does not ask this Court to declare

3    that it has not infringed upon or otherwise violated American Blind's *specific* marks, but rather

4    that Google generally has a "right to sell keyword-triggered advertising to its customers."

5    Pursuant to the Declaratory Judgment Act, this abstract question cannot be answered by a

6    declaratory judgment.  28 U.S.C. § 2201(a).

7                                    **COUNTERCLAIMS**

8            Defendant American Blind & Wallpaper Factory, Inc. d/b/a decoratetoday.com,

9    Inc. ("American Blind") as and for a Counterclaim against Counter-Defendant Google, Inc.

10   ("Google"), and Third-Party Defendants America Online, Inc. ("AOL"), Netscape

11   Communications Corporation ("Netscape"), CompuServe Interactive Services, Inc.

12   ("CompuServe"), Ask Jeeves, Inc. ("Ask Jeeves"), and EarthLink, Inc. ("EarthLink") (hereinafter

13   the Counter-Defendant and the Third-Party Defendants shall collectively be referred to simply as

14   the "Defendants"), alleges as follows:

15                                    **NATURE OF CASE**

16

17           1.      The Defendants operate for their own profit various Internet "search engines,"

18   which are used by consumers to search the World Wide Web for, among other things, products

19   and services.  In deliberate disregard of American Blind's long-standing intellectual property

20   rights, Defendants have advertised, promoted, offered for sale and sold "keywords" identical to

21   certain of American Blind's trademarks to various third parties.  Indeed, Defendant Google

22   actively solicits others to purchase not only American Blind's registered and unregistered

23   trademarks, but also virtually every conceivable iteration of these marks.  Furthermore, the

24   Defendants have deliberately manipulated their search engine "results" so that, when consumers

25   use these search engines to find American Blind's products and services, the consumers are

26   unwittingly diverted to competitors' products and services.  By this unfair and deceitful conduct,

27   Defendants have infringed and diluted, and continue to infringe and dilute, American Blind's

28   registered and unregistered service marks and trademarks.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 5 -        DEFENDANT'S ANSWER, AFFIRMATIVE
             DEFENSES, AND COUNTERCLAIMS

1

**Parties**

2   2.   American Blind is a Delaware corporation with its principal place of business at

3   909 North Sheldon Road, Plymouth, Michigan.

4   3.   Google is a Delaware corporation with a principal place of business in Mountain

5   View, California.

6   4.   Upon information and belief, AOL is a Delaware corporation with its principal

7   place of business in Dulles, Virginia.  Upon information and belief, AOL advertises, solicits

8   clients, and conducts sales and purchases in the State of California.

9   5.   Upon information and belief, Ask Jeeves is a Delaware corporation with its

10   principal place of business in Emeryville, California.  Upon information and belief, Ask Jeeves

11   advertises, solicits clients, and conducts sales and purchases in the State of California.

12   6.   Upon information and belief, CompuServe is a Delaware corporation with its

13   principal place of business in Columbus, Ohio.   Upon information and belief, Compuserve

14   advertises, solicits clients, and conducts sales and purchases in the State of California.

15   7.   Upon information and belief, EarthLink is a Delaware corporation with its

16   principal place of business in Atlanta, Georgia.  Upon information and belief, Earthlink

17   advertises, solicits clients, and conducts sales and purchases in the State of California.

18   8.   Upon information and belief, Netscape is a Delaware corporation with its principal

19   place of business in Mountain View, California.  Upon information and belief, Netscape

20   advertises, solicits clients, and conducts sales and purchases in the State of California.

21

**Jurisdiction and Venue**

22   9.   This is an action arising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a),

23   and 1125(c).  This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C.

24   § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

25   10.   The Court has subject matter jurisdiction over the state law claims pursuant to 28

26   U.S.C. § 1367(a).

27

28

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 6 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

11.    Defendants are subject to the personal jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this litigation occurred in the State of California.

12.    In addition, Defendants are subject to the personal jurisdiction of this Court because, among other things, upon information and belief each of the Defendants is subject to California's long-arm statute.

13.    In addition, Defendants are subject to the personal jurisdiction of this Court because, among other things, upon information and belief each of the Defendants has transacted and presently is transacting business in the state of California by: (a) providing Internet users in California access to its search engine; (b) providing Internet users in California advertising on its website; (c) contracting with, or attempting to contract with, California residents for the sale of goods or services, including the sale of advertising space on its Internet website; (d) selling or attempting to sell goods or services to residents of the State of California; (e) maintaining an office in the State of California; and/or (f) committing tortious acts in the State of California.

14.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district and the Defendants are all residents of this district.

15.    Google's counsel has represented that Google, Ask Jeeves, and Earthlink will consent to jurisdiction and venue in this judicial district.

## PLAINTIFF'S TRADEMARKS

16.    American Blind is one of the largest direct-to-consumer retailers of custom order window treatments and wall coverings in the United States and on the Internet. American Blind, in conjunction with its predecessor companies, has been in the home decorating business for over a half century. American Blind sells and promotes its home decorating products and related services across the United States through a website and toll-free telephone numbers.

17.    Since at least as early as 1986, and long prior to the acts of the Defendants complained of herein, American Blind adopted and used, and has continued to use, the names and

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 7 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

marks AMERICAN BLIND and AMERICAN BLINDS (hereinafter collectively identified as "AMERICAN BLIND") in connection with home decorating products and related services which have been offered for sale and sold in interstate commerce in the United States, including the State of California.  Since the adoption and first use of the AMERICAN BLIND name and mark as aforesaid, American Blind has continuously used said mark by prominently displaying it on the packaging and advertising for American Blind's products, which products have been advertised, promoted, offered for sale and sold in interstate commerce in the United States, including the State of California.

18.    In addition to the AMERICAN BLIND name and mark, American Blind is the owner of and has the exclusive rights to use the following trademarks registered with the United States Patent and Trademark Office:

| Mark | Reg. Number | Reg. Date |
|---|---|---|
| AMERICAN BLIND & WALLPAPER FACTORY | 2,022,925 | 12/17/96 |
| AMERICAN BLIND FACTORY | 1,463,548 | 11/03/87 |
| DECORATETODAY | 2,470,542 | 07/17/01 |

(True and accurate copies of proof of these registrations are attached hereto as Exhibit A.)  The foregoing registered marks, together with the AMERICAN BLIND name and mark are hereinafter collectively referred to as the "American Blind Marks."

19.    The name and mark AMERICAN BLIND comprises a distinctive part of American Blind's corporate title and trade name, which trade name has been prominently displayed by American Blind upon the packaging for its home decorating products and related services sold under the American Blind Marks.

20.    Since long prior to the acts of the Defendants complained of herein, American Blind's home decorating products and related services sold under the American Blind Marks have been extensively advertised, promoted and sold by American Blind in interstate commerce throughout the United States, including the State of California.  American Blind expends millions

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 8 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    of dollars each year in connection with the advertisement and promotion of its products and

2    services sold under the American Blind Marks.

3        21.    The dollar amount of sales in the United States of American Blind's home

4    decorating products and related services sold under the American Blind Marks offered for sale

5    and sold under the American Blind Marks since their original adoption and use are well in excess

6    of hundreds of millions of dollars.

7        22.    Plaintiffs have been careful, skillful and meticulous in the conduct of their

8    business offering home decorating products and related services under the American Blind

9    Marks.

10       23.    As a consequence, and as a result of the substantial sales and extensive advertising

11   and promotion of American Blind's home decorating products and related services, American

12   Blind's home decorating products and related services sold under the American Blind Marks have

13   acquired a fine reputation, and are famous among prospective purchasers of home decorating

14   products and related services in the United States, including the State of California.  The public

15   has used and now uses the American Blind Marks to identify American Blind and its home

16   decorating products and related services and to distinguish American Blind and its products and

17   services from the home decorating products and related services offered by others, and the

18   American Blind Marks have acquired an outstanding celebrity as a source of quality home

19   decorating products and related services, and symbolizes and embodies the goodwill rightfully

20   belonging exclusively to American Blind.

21                              **FACTUAL BACKGROUND**

22   **A.    The Internet And The World Wide Web**

23       24.    The Internet is a global network of millions of interconnected computers.  The

24   World Wide Web is a portion of the Internet especially suited to displaying images and sound, in

25   addition to text.  Much of the information on the World Wide Web is stored in the form of

26   "webpages," which can be accessed through a computer connected to the Internet (available

27   through commercial Internet service providers or "ISPs"), and viewed using a computer program

28

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 9 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

called a "browser," such as Microsoft Internet Explorer or Netscape Navigator. "Websites" are locations on the World Wide Web containing a collection of webpages. A website is identified by its own unique Uniform Resource Locator ("URL") (*e.g.* http://www.americanblind.com ), which ordinarily incorporates its site's "domain name" (*e.g.* "American Blind").

25.    Among Internet users in the United States, it is estimated that thirty-nine percent (39%) currently use the Internet to make online purchases.

26.    As a result, it is estimated that, today, annual sales of goods and services over the Internet exceed $92 billion.

**B.    The Business Of Plaintiff American Blind**

27.    American Blind spends millions of dollars each year advertising the American Blind Marks, including advertising in over forty national magazines, on every major search engine, on national television and radio, and through millions of direct mailings and catalogs distributed throughout the United States.

28.    For example, American Blind advertises its goods and services under the American Blind Marks on national television on the Home & Garden Network and in national magazines such as *Better Homes & Gardens*, *Good Housekeeping*, and *Country Living*.

29.    Today, American Blind has close to seven million households on file nationwide and generates annual revenues in excess of $100 million.

30.    Since 1997, American Blind has continuously operated a distinctive Internet website, through which the company sells blinds and other window treatments, wall coverings and other home decorating products and related services.

31.    Today, American Blind owns many Internet domain names, including but not limited to:

- www.americanblind.com
- www.americanblindandwallpaper.com
- www.americanblindandwallpaperfactory.com
- www.americanblindfactory.com
- www.americanblinds.com
- www.americanblindsandmore.com

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 10 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

- www.americanblindsandwallpaper,com
- www.americanblindsandwallpaperfactory.com
- www.americanblindswallpaperandmore.com
- www.americanblindwallpaper.com
- www.americanwallpaperandblind.com
- www.americanwallpaperandblinds.com

32.     Accordingly, if a consumer using an Internet web browser types in any of the company's URLs – for example, if a consumer types www.americanblinds.com in his or her web browser address bar – the consumer is directed to American Blind's web servers where he or she can view, browse and purchase the company's products and services.

33.     A significant and critical amount of American Blind's business is conducted via the Internet.  The company estimates that, each day, it receives in excess of thirty thousand (30,000) visits by customers or potential customers to its Internet website and processes over 400,000 Internet transactions every year.

34.     American Blind has spent over $10 million in developing its website, and spends in excess of $1 million per year in maintaining, enhancing and updating its website.  In addition, American Blind employs over 50 full-time employees in connection with its Internet operations, all of whom are rigorously trained and supervised.

**C.     The Business Of Defendant Google**

35.     Internet customers who are searching for a specific company product or information, but who do not know the exact domain name or website address at which it may be found, may use "keywords" and/or "search engines" to locate websites which match the keywords sought by the customer.  Keywords are the textual terms that a consumer enters to locate the desired website or domain name.  A search engine, such as Google, uses algorithms to process these keywords against its database and produces a search results page, which lists the websites (usually, in order of decreasing relevance with the most relevant websites listed first) that match the customer's keyword search.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 11 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

36.    Upon information and belief, Google's Internet search engine, which is free to consumers, is the most widely-used Internet search engine in the world. Upon information and belief, it answers hundreds of millions of user searches and covers billions of web pages daily.

37.    Upon information and belief, Google also sells a number of products and services to individuals, businesses, and educational and governmental entities. One of the programs Google offers to its business customers is a keyword-triggered advertising program entitled "AdWords."

38.    Google's "AdWords" program enables advertisers to purchase or bid on keywords that generate an advertising link (known as a "Sponsored Link") to the purchaser's website. For example, a company might bid on the keyword "wallpaper" through Google's "AdWords" program so that the company's website will be the first, or among the first, listed "Sponsored Links" when a customer enters the word "wallpaper" in Google's search engine window. Google posts these so-called "Sponsored Links" on the top of and at margins of its search engine results page based on whichever keywords appear in user queries posted to Google's Internet search engine. Google's advertising customers then pay Google based on the number of Internet users who "click" on these advertising links.

39.    The designation "Sponsored Link" is itself confusing and misleading. In many instances, the Defendants' search engine "results" pages are designed so that the "Sponsored Link" display is inconspicuous or otherwise not apparent. Moreover, it is not apparent who exactly "sponsors" these links.

40.    Google profits every time an Internet user clicks on a "Sponsored Link" for one of the advertisers to whom Google has sold keywords in its "AdWords" program.

41.    According to Google, 96% of its net revenues in the first quarter of 2004, which totaled $389 million, were derived from advertising revenues.

**D.    Defendant Google's Acts**

42.    Google has sold many keywords comprised, in whole or in part, of the American Blind Marks, to competitors of American Blind.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 12 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

43.    Although Google purported to agree not to sell American Blind's registered trademarks – which promise turns out to have been false – Google flat out refused to stop selling other American Blind Marks.  Indeed, Google has admitted that it continues to sell, over American Blind's objections, the name and mark AMERICAN BLIND and certain combinations of words within the American Blind Marks to American Blind's competitors.  Consequently, Google causes the purchase of the American Blind Marks to trigger a link to these competitor's websites to appear in Google's search results when a consumer types in any one of the American Blind Marks.

44.    For example, Google continues to sell to American Blind's competitors the keywords "American Blind," "American Blinds" and "Americanblinds.com," among others.  Accordingly, if a consumer using Google's search engine types "American Blind and Wallpaper Factory" in the search window, Google causes the links to websites of competitors who have purchased the "American Blind" keyword from Google to appear at the top or in the margins of the results page.  Similarly, it is possible for a consumer who types "American Blinds" or "Americanblinds.com" in the Google search window to be directed to a "results" web page that displays the products and services of American Blind's competitors through the keyword sold to them by Google.

45.    Google does not just sell American Blind's marks, it actively promotes and encourages competitors to embark on a sweeping competitive raid on the American Blind Marks and virtually every conceivable, though indistinguishable, iteration of those marks.  This is accomplished by what Google calls its "AdWords Keywords Suggestions" feature, which lures Google's paying customers by the promise of "ideas for new keywords that can help you improve your ad relevance" (this feature is not available to, or even viewable by, the public).

46.    Google's AdWords Keywords Suggestions feature generates additional recommended keyword purchases to Google's advertising customers.  Google likes to refer to this as "keyword targeting."  It cannot, therefore, be suggested that Google is merely selling terms that, by happenstance, coincidentally comprise part (or all) of the American Blind Marks.  Rather,

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 13 -                DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    Google intentionally has designed its financially lucrative "AdWords" program to maximize the

2    infringement and dilution of American Blind's marks.

3        47.    More specifically, a competitor of American Blind who is considering purchasing

4    the keyword "American Blind" – which Google freely, though improperly, sells to the highest

5    bidder – is also encouraged by Google to spend even more money purchasing additional marks

6    owned by American Blind:

7            If you're showing your ads on broad-matched keywords, these queries may
             trigger your ads.  *To increase your clickthrough rate, you should consider*
8            *replacing your general keywords with any relevant, more specific*
             *suggestions you see here.*  You should also identify any irrelevant terms
9            and add them as negative matches (otherwise your ads will show for terms
             that don't pertain to your business).
10

11        •    american blinds

12        •    american blinds and wallpaper

          •    american wallpaper and blinds
13
          •    american blinds wallpaper
14        •    american blinds & wallpaper

15        •    american wallpaper & blinds

          •    american wallpaper blinds
16
          •    american wall paper and blinds
17        •    american blinds and wallpaper factory

18        •    american blinds and wall paper

19        •    american windows and blinds

          •    american blinds com
20
          •    american window blinds
21        •    american blinds wallpaper & more

22        •    american window and blinds

          •    american blinds and windows
23
          •    american blinds and draperies
24        •    american blinds company

25        •    american blinds wallpaper and more

          •    american blinds and wallpaper company
26
          •    all american blinds
27        •    american blinds and wallcoverings

          •    american mini blinds
28        •    american blinds factory

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606                        - 14 -          DEFENDANT'S ANSWER, AFFIRMATIVE
                                                           DEFENSES, AND COUNTERCLAIMS

- american blinds and wallpapers
- american blinds and shades
- american brand blinds
- american blinds and wallcovering
- american blinds & draperies
- american blinds and drapes
- american home blinds
- american wall and blinds
- american blinds and drapery
- american blinds and wallpaper com

\*        \*        \*        \*

(See Exhibit B (emphasis supplied).)  The overlap with the American Blind Marks and domain names (*compare* to American Blind's registered domain names referenced in paragraph 31 *supra*) is unmistakable.  Each of these "suggestions" being made by Google to its customers involves the deliberate sale by Google of the American Blind Marks.

48.    These "suggestions" are lumped into categories by Google and are sometimes referred to as "optimization campaigns" in marketing keyword groupings to Google's paying customers looking to increase their advertising on Google.

49.    Adding insult to injury, Google has even labeled the optimization campaign containing every iteration of American Blind's marks, the "American Blind" optimization campaign.  Upon information and belief, Google's sales staff actively promotes this campaign of infringement under the "American Blind" optimization program to American Blind's competitors.

50.    In each of these examples, by the operation and design of its keyword sales program, Google causes consumers who specifically intend and desire to find American Blind's products and services to be diverted instead to search "results" web pages that list American Blind's competitor's products and services.  This result is intended, both by Google and its customers who purchase keywords consisting of the American Blind Marks.  Google sells, and its customers hope to purchase, the possibility that they will intercept consumers who, due to American Blind's extensive and pervasive advertising resulting in invaluable goodwill, are trying

KELLEY DRYE &
WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

- 15 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    to find one of the nation's largest and most respected and trusted direct-to-consumer retailer of

2    window treatments and wall coverings.

3        51.    Once intercepted, consumers may click on American Blind's competitors' links

4    and thus be directed to the competitors' websites. Consumers may not realize that they have

5    unwittingly "clicked" on a competitors' website. Once there, the consumer, having been

6    distracted, may not ever return to American Blind's website. Even if the consumer appreciates

7    the diversion, he or she will have to spend time and energy trying to backtrack or otherwise find

8    American Blind.

9        52.    Through this practice, Google traffics in the infringement and dilution of the

10   American Blind Marks. Google has knowingly sold the American Blind Marks in commerce and

11   included them in Google's search engine for Google's own profit and to increase the competitive

12   advantage of American Blind's competitors. This practice began after the American Blind Marks

13   were registered and/or became famous and distinctive.

14       53.    Google admits that, in connection with its AdWords program, companies in the

15   United States, Germany, and France have filed trademark claims against Google.

16       54.    A court in France has held Google liable for allowing advertisers to select as

17   "keywords" certain trademarked terms owned by others.

18       55.    Google admits that it may be found liable for its AdWords advertising program for

19   trademark infringement and other claims that have been asserted against it in the United States

20   and Europe.

21       56.    Prior to the filing of American Blind's related lawsuit in the Southern District of

22   New York on January 27, 2004, Google's own trademark policy provided that Google would

23   block companies from purchasing as "keywords" the trademarks of other companies.

24       57.    Indeed, as described earlier, Google had represented to American Blind that

25   Google was blocking competitors from purchasing American Blind's registered trademarks.

26       58.    Pursuant to Google's former trademark policy, once Google was advised of a

27   purchase of another company's trademark, Google would, at its discretion, block the purchase of

28   that trademark.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 16 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

59.     Google has the technological capability of blocking the purchase of keywords, if it desires.

60.     Google adopted and used this former trademark policy for over four years.

61.     Google adopted and used this former trademark policy because it believed it would be, or could be, found liable for trademark infringement or other related claims if it did not block such purchases.

62.     In conformity with this belief, Google confidentially settled a number of claims asserted by companies that had informed Google that Google's sales of their trademarks were illegal.

63.     Following the filing of American Blind's lawsuit in the Southern District of New York on January 27, 2004, Google changed its trademark policy.

64.     Under Google's new trademark policy, Google will no longer disable ads due to selection by advertisers of trademarks as keyword triggers for those ads.

65.     Google admits that as a result of this change in its trademark policy, it may be subject to more trademark infringement lawsuits.

66.     Google's change in its trademark policy and its continuing sale of the American Blind Marks constitutes conscious and deliberate disregard of American Blind's trademark rights.

**E.     The Business Of The Other Defendants**

67.     AOL, Ask Jeeves, CompuServe, Earthlink, and Netscape (hereinafter collectively referred to as the "Non-Google Defendants") each operate websites that include a search engine for locating information on the internet.

68.     On information and belief, the Non-Google Defendants pay Google in exchange for Google providing access to its web searching platform. By utilizing the Google web searching platform, the Non-Google Defendants display similar, if not virtually the same, results of search queries as those displayed by Google. On information and belief, each of the Non-Google Defendants also profit every time an Internet user clicks on any of the links provided by these search results.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

- 17 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    69.    Google has agreed, orally or in writing, to indemnify and provide a defense to each
2  of these Non-Google Defendants.

3  **F.    Harm To Plaintiff**

4    70.    American Blind has not given the Defendants permission or a license to utilize the
5  American Blind Marks for the promotion or sale of products and services of American Blind's
6  competitors.

7    71.    Defendants and certain of American Blind's competitors seek to exploit the hard-
8  earned popularity and success of American Blind and the products and services sold by American
9  Blind under the famous American Blind Marks.  In an attempt to illegally capitalize on the
10  American Blind Marks, Defendants have permitted and promoted certain of American Blind's
11  competitors to bid on advertising keywords so that their websites are listed in a position above or
12  next to American Blind's link when a consumer types a search query identical or substantially
13  similar to the American Blind Marks.

14    72.    For example, a consumer can run a search on Google's search engine for
15  "American Blind and Wallpaper Factory," one of American Blind's registered marks, with the
16  obvious intent of locating and visiting American Blind's website.  Nonetheless, the first link
17  shown on the Google search "results" page may be for one of American Blind's competitors, such
18  as theblindfactory.com.  (*See e.g.*, Exhibit C).  Similarly, if a consumer types "American Blinds"
19  in the Google search bar, they may be directed to a "results" page in which the first two
20  companies listed at the top are direct competitors – Justblinds.com and EZblinds.com – as are at
21  least six of the eight companies – SelectBlinds.com, Blinds.com, eDirectBlinds.com,
22  Homedepot.com, NetShutters.com and StarDecorating.com – listed along the margin.  (*See, e.g.,*
23  Exhibit D).  Search Google for "americanblinds.com" – a domain name owned by and registered
24  to American Blind – and the consumer is directed to search "results" that list EZblinds.com and
25  JustBlinds.com at the top of the page.  (*See, e.g.,* Exhibit E).  If the consumer clicks on any of
26  these competing websites, Google will be entitled to a fee from these competitors.  In addition,

27

28

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 18 -    DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1   these competitors will have obtained a customer, or potential customer, solely as a result of the

2   goodwill and reputation associated with American Blind and its products and services.

3        73.   A similar, though different and possibly more confusing, search "result" occurs

4   when a consumer uses one of the Non-Google Defendants' websites to conduct a Google

5   "powered" or "enhanced" search (*i.e.*, where Google provides the underlying search engine).  For

6   example, a consumer who conducts a search for "American Blinds" from Netscape's website is

7   confronted misleadingly with a host of competitor's advertisements.  Some competitors'

8   advertisements are called "Sponsored Links," while others are given priority treatment with

9   graphics at the very top of the search "results" page. (*See, e.g.*, Exhibit F.)  Again, this diversion

10   and confusion is the intended result – allowing American Blind's competitors to intercept

11   consumers looking for American Blind.

12        74.   The Defendants' search engines are designed and intended to divert and lure

13   consumers from the websites that they intend to visit – *e.g.,* the American Blind websites – to

14   other websites owned by competing advertisers such as BlindsGalore.Com, et. al.  By design, the

15   Defendants profit when consumers click on competitors' links and visit the advertisers' sites.

16   None of this revenue, however, is paid to the owner of the trademark for whom the consumer was

17   searching.  Thus, Defendants and their advertisers are wrongfully profiting off of the goodwill

18   and reputation of trademark owners such as American Blind.

19        75.   Defendants' search engines are deceptive and mislead consumers into believing

20   falsely that the website links to which they are directed via manipulated search "results" links are

21   sponsored or authorized by and/or originating from American Blind, the trademark owner for

22   which the user was searching.

23        76.   The manipulated search "results" engineered by the Defendants fail to inform the

24   consumers that the companies listed therein may have no relationship with – and, indeed, may

25   directly compete with American Blind – the trademark owner for which the user was searching.

26        77.   The manipulated search engine "results," which are in fact advertisements sold by

27   Defendants based on a search utilizing the American Blind Marks, dilute the ability of the

28   American Blind Marks to identify American Blind as a source of its goods and services.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606

- 19 -

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS