1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   RAVIND S. GREWAL - #220543
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
   Attorneys for Plaintiff and Counterdefendant
6  GOOGLE INC. and Third-Party Defendants
   ASK JEEVES, INC. and EARTHLINK, INC.
7

8

9                  UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

| 12 | GOOGLE INC., a Delaware corporation, | Case No. C 03-5340-JF (EAI) |
|---|---|---|
| 13 | Plaintiff, | **NOTICE OF MOTION AND MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 14 | v. | |
| 15 | AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.; and DOES 1-100, inclusive, | |
| 16 | | |
| 17 | | Date: September 17, 2004 |
| 18 | Defendants. | Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel |
| 19 | AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc. | |
| 20 | | |
| 21 | Counterclaimant, | |
| 22 | v. | |
| 23 | GOOGLE, INC., AMERICA ONLINE, INC., NETSCAPE COMMUNICATIONS CORPORATION, COMPUSERVE INTERACTIVE SERVICES, INC., ASK JEEVES, INC., and EARTHLINK, INC., | |
| 24 | | |
| 25 | | |
| 26 | Counterdefendants/<br>Third-Party Defendants. | |

27

28

333698.02      MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS
                   CASE NO. C 03-5340-JF (EAI)

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** |

**PLEASE TAKE NOTICE** that on September 17, 2004 at 9 a.m., or as soon thereafter as the matter may be heard before the Honorable Jeremy Fogel in Department 3 of the above-entitled court, 280 South First Street, San Jose, California, plaintiff and counterdefendant Google Inc. ("Google") and third-party defendants Ask Jeeves, Inc. ("Ask Jeeves") and Earthlink, Inc. ("Earthlink") will and hereby do move to dismiss with prejudice all of the counterclaims filed against them by defendant and counterclaimant American Blind & Wallpaper Factory, Inc. ("American Blind"), on the ground that none of them use any of American Blind's putative trademarks to identify the source of their products or services, and because none of them have engaged in wrongful activity.

This motion is based on Fed. R. Civ. P. 12(b)(6) and is supported by the accompanying memorandum of points and authorities and the authorities cited therein, the Court's file and such argument as may be presented at the hearing on this motion.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.  INTRODUCTION ...........................................................................................................1

II. BACKGROUND FACTS ................................................................................................3

III. ARGUMENT ...................................................................................................................5

   A.  Defendants do not use American Blind's claimed trademarks to identify the source of their search engine or their advertising products. .................5

   B.  Defendants' advertisers do not use American Blind's claimed trademarks to identify the source of their products ..................................................8

   C.  American Blind's remaining claim, for tortious interference with prospective economic advantage, must also fail ........................................................9

      1.  American Blind fails to allege an independently wrongful act ....................9

      2.  American Blind has also failed to allege a probability of future economic benefit ..........................................................................................10

IV. CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
  309 F. Supp. 2d 467 (S.D.N.Y. 2003) ..................................................................................6

*Academy of Motion Picture Arts and Sciences v. Network Solutions*,
  989 F. Supp. 1276 (C.D. Cal. 1997) ..............................................................................5, 6, 7

*Batzel v. Smith*
  333 F.3d 1018 (9th Cir. 2003) ............................................................................................11

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ............................................................................................11

*DaimlerChrysler AG v. Bloom*,
  315 F.3d 932 (8th Cir. 2003) ................................................................................................7

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,
  326 F.3d 687 (6th Cir. 2003) .......................................................................................6, 7, 9

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................................................7, 8

*Lockheed Martin Corp. v. Network Solutions, Inc.*
  985 F. Supp. 949 (C.D. Cal. 1997) ......................................................................................7

*Lockheed Martin Corp. v. Network Solutions, Inc.*
  141 F. Supp. 2d 648 (N.D. Tex. 2001) ................................................................................7

*New Kids on the Block v. News America Publishing, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ................................................................................................5

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990) .................................................................................................6

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
  354 F.3d 1020 (9th Cir. 2004) .....................................................................................6, 7, 8

*Prestonettes, Inc. v. Coty*,
  264 U.S. 359 (1924) ..............................................................................................................5

*Toho Co. v. Sears, Roebuck & Co.*,
  645 F.2d 788 (9th Cir. 1981) ................................................................................................5

*U-Haul International, Inc. v. WhenU.com, Inc.*,
  279 F. Supp. 2d 723 (E.D. Va. 2003) ..........................................................................6, 7, 8

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ..............................................................................................................7

*Wells Fargo & Co. v. WhenU.com, Inc.*,
  293 F. Supp. 2d 734 (E.D. Mich. 2003) ..............................................................................6

*Zeran v. America Online*,
  129 F.3d 327 (4th Cir. 1997) .............................................................................................11

# STATE CASES

*Blank v. Kirwan*,
　39 Cal. 3d 311 (1985) ..................................................................................................10

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
　11 Cal. 4th 376 (1995) ...................................................................................................9

*JRS Products, Inc. v. Matsushita Electric Corp. of America*,
　115 Cal. App. 4th 168 (2004) .......................................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
　29 Cal. 4th 1134 (2003) .................................................................................................9

*Roth v. Rhodes*,
　25 Cal. App. 4th 530 (1994) ........................................................................................10

*Sunset House Distributing Corp. v. Coffee Dan's Inc.*,
　240 Cal. App. 2d 748 (1966) .........................................................................................5

*Westside Center Associates v. Safeway Stores 23, Inc.*,
　42 Cal. App. 4th 507 (1996) ........................................................................................10

# FEDERAL STATUTES

15 U.S.C. § 1125(a)(1)............................................................................................................4

15 U.S.C. § 1127......................................................................................................................5

47 U.S.C. § 230(c)(2), (e)(2)..................................................................................................11

47 U.S.C. § 230(f)..................................................................................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case is a prime example of the confusion that sometimes occurs when parties attempt to apply straightforward and established principles of law to new technologies—in this case, applying established trademark law to Internet search engines.  For some reason, rules and propositions that are easily understood in more traditional contexts get hopelessly muddled when applied to the Internet.

Imagine, for example, that Ford wants to target its advertising at Toyota customers.  Ford goes to magazines such as Car and Driver, and pays to have a full-page Ford ad face every Toyota review the magazine prints that year.  Ford is aware that many of the readers of those ads go to those pages looking for information about Toyotas.  After all, that is precisely the point: Ford wants to target its ads at its competitor's customers and prospective customers, and win those customers as its own.  In so doing, Ford has "used" its competitor's trademark, "Toyota," in the sense that it is the criterion determining where the Ford ads will appear.  But—so long as the Ford ads themselves do not deceive the reader into thinking that Ford's cars are made or sponsored by Toyota—there is no trademark violation in deliberately targeting one's advertisements at customers who are buying, or considering buying, or merely seeking information about, one's competitor's product instead.  That isn't trademark infringement, it's competition.

Similarly, no one would suggest that the owner of a new pizza restaurant runs afoul of trademark law by handing flyers to customers on their way into the neighboring Domino's. Neither is there anything wrong with buying billboard space as close to one's competitor's store as one can, displaying generic painkillers next to brand name painkillers, or in mailing advertisements to one's competitor's customers if one can lawfully obtain a list of them.  In each instance, one is "using" one's competitor's trademark in the sense that the trademark is used as the selection mechanism or "trigger" for one's own ads.  But as the courts have explained, this is not "use" for purposes of trademark analysis.

When this same, entirely legitimate competitive activity moves to the Internet, some

people think the rules are (or should be) different. Faced with advertising legitimately targeted at search engine users searching by phrases that match its trademarks, counterclaimant American Blind accuses Google (as well as five third-party defendant web portals that are part of Google's ad network)[1] of violating trademark laws, even though neither Defendants nor their advertisers use American Blind's putative trademarks to brand their products. American Blind alleges only that Defendants permit advertisers to intentionally display ads in response to user queries containing what it alleges are trademark terms; it does not allege that Defendants or any of their advertisers use these supposed trademarks to identify the source of their own products. Permitting advertisers to display ads alongside search results so that consumers are presented with distinct choices does not violate trademark laws. Quite to the contrary, this practice epitomizes fair play and robust free-market competition. American Blind fundamentally miscomprehends the purpose of trademark law and, in so doing, fails to state a claim upon which relief can be granted.

When a user enters a search phrase that contains one of American Blind's claimed trademarks, Google displays a results page that shows search results along the left side. These search results are non-commercial and are objectively determined using Google's proprietary algorithms, including its PageRank technology. For the query "American blind" – to which American Blind claims trademark rights – these algorithms happen to yield one of American Blind's own websites (www.decoratetoday.com) as the first search result.[2] In addition, Google makes space available on the right side of the page (next to the search results) for advertisers to place their ads.[3] To target potential customers, Google's advertisers can display their ads when

---

[1] American Blind names as third-party defendants America Online, Inc. ("AOL"), Netscape Communications Corp. ("Netscape"), CompuServe Interactive Services, Inc. ("CompuServe"), Ask Jeeves and Earthlink. This brief refers to these third-party defendants, collectively, as the "Web Portals." This brief refers to the Web Portals and Google, collectively, as "Defendants."

[2] The www.decoratetoday.com website is also listed as the first search result when this query is entered at Earthlink (search.earthlink.net), AOL (search.aol.com), Netscape (http://channels.netscape.com/ns/search/default.jsp), and CompuServe (http://webcenters.compuserve.com/compuserve/search/default.jsp).

[3] Similarly, the Web Portals make space available for ads above the search results. These ads are variously labled "Sponsored Web Results" (Ask Jeeves), "Sponsored Results" (Earthlink), or "Sponsored Links" (AOL, Netscape, and CompuServe).

1  search engine users enter selected search terms.  Therefore, if any advertisers have chosen
2  "American blind" as a trigger, Google also displays their advertisements on the right side of the
3  results page, alongside the search results.  These ads do not mimic or incorporate American
4  Blind's purported trademarks—they simply link to the advertisers' own websites and offer the
5  searcher options in addition to the search results.

6      Stripped of its high-tech trappings, American Blind alleges only that Defendants permit
7  their advertisers to compete head-to-head with American Blind, by targeting their advertisements
8  at potential American Blind customers.  The law encourages, rather than forbids, robust
9  competition.  Because American Blind has not alleged that Defendants or their advertisers use
10 American Blind's trademarks to identify their own products or services, American Blind has
11 failed to state a claim and the Court should grant the motion to dismiss American Blind's
12 counterclaims.

## II.    BACKGROUND FACTS

14     For purposes of this motion only, Google accepts as true the allegations of American
15 Blind's Counterclaims.  Google's popular search engine helps users find what they are looking
16 for on the Internet.  Counterclaims, ¶¶ 35-36.  Users enter a term into Google's search engine,
17 which then produces a results page listing websites related to the search term.  *Id.*, ¶ 35.  To
18 generate revenue, Google also sells advertising space, in which advertisers can place text ads that
19 link to their websites.  *Id.*, ¶ 38.  Under the Google "AdWords" program, advertisers can have
20 their ads displayed when Google users enter designated search terms, including trademarks.  *Id.*,
21 ¶¶ 38, 42.  Titled "Sponsored Links," these ads appear in separate sections alongside and above
22 the search results.  *Id.*, ¶ 38.  The Web Portals each operate websites that also offer search results
23 provided by Google's search engine in response to user queries,[4] as well as ads.  *Id.*, ¶¶ 68, 73;
24 Exh. F.
25     Thus, when a user enters the phrase "American Blind,"[5] Google provides search results

---

[4] Ask Jeeves actually uses only Google's ads, not its web search results.  However, because this is a motion to dismiss, the moving parties accept as true for purposes of this motion the allegations in the counterclaims.

[5] American Blind alleges that Defendants' activities infringe three of its registered trademarks –

3

1  that link to web pages deemed relevant by its algorithms to this query phrase, which search

2  results might include web pages owned by American Blind (like www.decoratetoday.com),

3  websites of American organizations for the blind, such as the American Blind Skiing Foundation

4  (www.absf.org), or web pages that simply contain the searched-for phrase somewhere in their

5  text, such as news reports or third-party websites that rate American Blind's products and

6  services.  *See* Counterclaims, Exh. D.  In the margins above and alongside these search results,

7  Google may display "Sponsored Links," paid for by companies such as www.EZblinds.com or

8  www.Homedepot.com, that want their ads displayed near search results for "American blind."

9  *Id.*, ¶¶ 44, 72; Ex. D.  These advertisers may provide links to websites that offer products and

10 services that compete with American Blind's own products and services.  *Id.*, ¶¶ 44, 72.

11         Google also offers advertisers a service that, upon request, provides them with "ideas for

12 new keywords" that they may wish to consider for their ads.  Counterclaims, ¶ 45.  These new

13 keywords include queries that may already trigger an ad if the advertiser is using the "broad

14 match" feature.[6]  *Id.*, ¶ 46.  In an attempt to improve the performance of their ads, advertisers

15 may wish to replace general keywords with more specific keywords.  *Id.*  Alternatively,

16 advertisers may wish to ensure that their advertisements do not show up when irrelevant queries

17 are entered, and may therefore wish to add some of these keywords as "negative keywords."[7]  *Id.*

18         American Blind does not allege that any of these advertisements mimic or incorporate

19 American Blind's trademarks.  Nor does American Blind allege that Defendants or their

20 advertisers use American Blind's marks to brand or otherwise identify the source of their

21 products.  Indeed, American Blind does not even allege that its trademarks appear anywhere in

---

"AMERICAN BLIND & WALLPAPER FACTORY;" "AMERICAN BLIND FACTORY;" and "DECORATETODAY" – as well as its alleged marks "AMERICAN BLIND" and "AMERICAN BLINDS."  Counterclaims, ¶¶ 17-18.

[6] An ad using the broad match feature is triggered by the keywords selected by the advertiser, and also by synonyms, related phrases, and plurals.

[7] The "negative keyword" feature allows advertisers to exclude irrelevant queries.  For example, an advertiser selling fruit who selects "apple" as a keyword may also want to select "-computer" (the dash denotes a negative keyword) to keep the ad from being triggered by queries with the word "computer" in them.

1  the advertisements.

2  ### III.   ARGUMENT

3  **A.   Defendants do not use American Blind's claimed trademarks to identify the source of their search engine or their advertising products.**

4

5  American Blind alleges that Defendants' use of American Blind's purported trademarks

6  to trigger third-party advertisements constitutes trademark infringement, false representation and

7  dilution under the Lanham Act, injury to business reputation and dilution and unfair competition

8  under the California Business and Professions Code, and common law trademark infringement

9  and unfair competition.  All of these causes of action require American Blind to prove that

10  Google and the other Defendants *use* its trademarks.  *See Academy of Motion Picture Arts and*

11  *Sciences v. Network Solutions*, 989 F. Supp. 1276, 1279-81 (C.D. Cal. 1997) (federal trademark

12  infringement and dilution claims and state law unfair competition claims require that defendant

13  "used" another's mark without permission in connection with its own goods and services); *Toho*

14  *Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 793 (9th Cir. 1981) (dilution doctrine codified in

15  Business and Professions Code protects trademark holder from harm due to defendant's "use" of

16  its mark); *Sunset House Distributing Corp. v. Coffee Dan's Inc.*, 240 Cal. App. 2d 748, 753

17  (1966) (state law trademark infringement and unfair competition claims require defendant's "use

18  of a confusingly similar tradename" to tradename used by plaintiff); 15 U.S.C. § 1125(a)(1)

19  (false representation actionable under Lanham Act if party "uses in commerce" a "false or

20  misleading representation of fact").

21  But not all "uses" of a trademark are actionable. Trademarks "identify and distinguish"

22  goods "from those manufactured or sold by others" and "indicate the source of the goods."  15

23  U.S.C. § 1127; *New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 305 (9th Cir.

24  1992).  As a result, courts have long recognized that "[a] trade-mark only gives the right to

25  prohibit the use of it so far as to protect the owner's good will against the sale of another's

26  product as his." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.).  Simply put,

27  "[i]f defendants are only using [plaintiff's] trademark in a 'non-trademark' way—that is, in a

28  way that does not identify the source of a product—then trademark infringement and false

1  designation of origin laws do not apply." *Interactive Prods. Corp. v. a2z Mobile Office
2  Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003); *see also Academy of Motion Picture Arts and
3  Sciences*, 989 F. Supp. 1276 at 1279 ("commercial use" under Lanham Act requires that
4  defendant attach marks to goods or services that it sells); *Pirone v. MacMillan, Inc.*, 894 F.2d
5  579, 583 (2d Cir. 1990) (a defendant "can infringe [a trademark owner's] rights only if [the
6  defendant's] use was a 'trademark use,' that is, one indicating source or origin").

7  Another district court recently decided a case with facts nearly identical to those
8  presented here and, not surprisingly, it held that when a defendant uses trademarks encountered
9  on the Internet to trigger advertisements, but does not use the trademark to identify the source of
10 its goods, the defendant does not use the trademark in a way that runs afoul of trademark laws.
11 *See U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003). In *U-Haul*, the
12 defendant WhenU's computer software SaveNow monitored software licensees' Internet use,
13 searching for designated terms, including trademarks. *Id.* at 725-26. When the licensee
14 encountered the trademark "U-Haul," the SaveNow software triggered and displayed "pop-up
15 advertisements" that obscured the other windows on the licensees' computer screens. *Id.* at 726-
16 27. The court held that this practice "does not constitute 'use' under the Lanham Act," because
17 "U-Haul fails to adduce any evidence that WhenU uses U-Haul's trademarks to identify the
18 source of its goods or services." *Id.* at 728; *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293
19 F. Supp. 2d 734, 757-58 (E.D. Mich. 2003) (also holding that selling pop-up advertisements
20 triggered by trademarked keywords is not actionable under the Lanham Act); *but see 1-800
21 Contacts, Inc. v. WhenU.com, Inc.*, 309 F. Supp. 2d 467, 490 n.43 (S.D.N.Y. 2003) (declining to
22 follow, without discussion, *U-Haul* and *Wells Fargo*), *appeal under submission*, No. 04-0026-cv
23 (2d Cir. April 5, 2004).[8]

---

[8] American Blind may cite *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004), as contrary authority, but *Playboy* is inapposite. In *Playboy*, the court held that the defendant Internet search engine operators were not entitled to summary judgment on claims that they infringed and diluted the plaintiff's trademarks by selling unlabeled banner advertisements that were triggered by queries including those trademarks. *Id.* at 1023.

The issue raised by the instant motion – whether the use of a trademark as a keyword to trigger advertising can be actionable under trademark law – was not before the *Playboy* court. In the *Playboy* appeal, there was "[n]o dispute" that the "defendants used the marks in commerce," as

1  Similarly, courts have rejected trademark claims against Internet domain name registrars such as Network Solutions for selling trademarks as domain names to cybersquatters, even where the cybersquatters are making an infringing use of the mark. These courts reason that Network Solutions cannot be held liable because it is not using the protected term to identify Network Solutions' services or products.[9] *See Academy of Motion Picture Arts and Sciences*, 989 F. Supp. at 1279-80 ("There has been no allegation that Network Solutions markets its registration service or the quality of its service by displaying or otherwise exploiting the Academy's marks); *Lockheed Martin Corp. v. Network Solutions*, 985 F. Supp. 949, 967-68 (C.D. Cal. 1997), *aff'd on other grounds,* 194 F.3d 980, 983-85 (9th Cir. 1999); *Lockheed Martin Corp. v. Network Solutions,* 141 F. Supp. 2d 648, 654-55 (N.D. Tex. 2001).

Defendants do not use any of American Blind's purported trademarks to identify the source of their search engine or advertising products. Google uses its stylized "GOOGLE" mark to identify its search engine and AdWords products. Similarly, each of the other Defendants uses its own mark to identify its products. Defendants employ American Blind's putative marks only as triggers for displaying advertisements; nowhere in its counterclaims does American Blind accuse any Defendant of using American Blind's marks "to identify the source" of any of its products or services. *U-Haul*, 279 F. Supp. 2d at 728. Defendants therefore use American Blind's claimed marks in a "'non-trademark' way" and "trademark infringement and false designation or origin laws do not apply." *Interactive Prods.*, 326 F.3d at 695. As a result, American Blind's federal and state law claims for infringement, false representation, dilution,

---

required in order to sustain a claim of trademark infringement. *Id.* at 1024. Because there was no dispute as to the "use in commerce" requirement, the court focused on whether there was a likelihood of confusion under the doctrine of initial interest confusion. *Id.* The *Playboy* court's assumption of "use in commerce" therefore has no bearing on the instant motion. *See United States v. Verdugo-Urquidez,* 494 U.S. 259, 272 (1990) (issues assumed in reaching a decision "are not binding in future cases that directly raise the questions").

Moreover, the *Playboy* is further distinguishable because that case related solely to "<u>unlabeled</u> banner advertisements." 354 F.3d at 1025 (emphasis added). In contrast, the ads at issue in the case at bar all include URLs that identify the source of the ads. Counterclaims, Exhs. C-F; 354 F.3d at 1025 n.16 (noting that had the advertisements in *Playboy* clearly identified their source, "no confusion would occur").

[9] *See also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) (holding that a telecommunications company did not use the term "Mercedes" in a trademark case merely by

1  and unfair competition must fail.

2  **B.    Defendants' advertisers do not use American Blind's claimed trademarks to identify the source of their products**

3

4  To succeed on its alternative claims that Defendants contributorily or vicariously

5  infringes its claimed trademarks, American Blind must, among other things, allege that

6  Defendants' advertisers infringe those trademarks. *See Lockheed Martin Corp. v. Network*

7  *Solutions, Inc.*, 194 F.3d 980, 983-86 (9th Cir. 1999) (contributory infringement and dilution

8  claims require a showing that the defendant materially contributed to another's improper use of a

9  trademark).

10  Nowhere in its complaint does American Blind allege that Google's advertisers

11  incorporate or refer to American Blind's putative trademarks. And, in fact, none of the ads

12  included in the Exhibits to American Blind's counterclaims incorporate or refer to its supposed

13  trademarks. *See* Counterclaims, Exhs. C-F. Those advertisers instead use their own names (such

14  as www.EZblinds.com) to identify the source of their products. *Id.* All American Blind alleges

15  is that the advertisers have elected to have their ads appear as "Sponsored Links" (or "Sponsored

16  Web Results" or "Sponsored Results") near search results for, for example, "American blind."[10]

17  Because Google's advertisers do not use American Blind's claimed trademarks to identify the

18  source of their products, but only as a trigger for the display of their advertisements, those

19  advertisers do not infringe American Blind's claimed trademarks.[11] *See U-Haul*, 279 F. Supp. 2d

20  ───────────────────────────

21  licensing a vanity phone number that spelled 1-800-MERCEDES to Mercedes dealers).

22  [10] *See also Playboy,* 354 F.3d at 1025 n.16 (noting that had the advertisements in *Playboy* clearly identified their source, "no confusion would occur," in which case the initial interest confusion claim would have failed).

23

24  [11] American Blind may point out that its complaint alleges that Google "actively promotes and encourages" advertisers to use American Blind's claimed marks as keywords. *See*
25  Counterclaims, ¶¶ 45-48. Because this is a motion to dismiss, the Court must, for present purposes, accept the well-plead allegations of American Blind's counterclaims as true. Those
26  allegations are, however, irrelevant. The allegations fail to suggest that Google is branding its products with American Blind's marks; thus, Google is not a direct infringer. And those
27  allegations cannot support American Blind's claims for contributory or vicarious infringement, because, as noted above, American Blind has not and cannot allege direct infringement by
28  Google's advertisers.

1  at 728; *Interactive Prods.*, 326 F.3d at 695.

2  Because American Blind alleges no trademark "use" of its purported marks in any

3  advertisements, no set of facts contained in its countercomplaint can support its claims against

4  Defendants for contributory infringement or contributory dilution.

5  **C.  American Blind's remaining claim, for tortious interference with prospective economic advantage, must also fail**

6

7  American Blind's sole remaining claim, for tortious interference with prospective

8  economic advantage must be dismissed because (1) American Blind fails to allege an

9  independently wrongful act; and (2) American Blind fails to allege a probability of future

10  economic benefit from existing economic relationships.[12]

11  **1.    American Blind fails to allege an independently wrongful act**

12  "[A] plaintiff seeking to recover for an alleged interference with prospective contractual

13  or economic relations must plead and prove as part of its case-in-chief that the defendant not

14  only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was

15  wrongful by some legal measure other than the fact of interference itself." *Della Penna v.*

16  *Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). An act is independently wrongful

17  only if it is unlawful pursuant to some "constitutional, statutory, regulatory, common law, or

18  other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

19  1134, 1159 (2003).

20  American Blind has accused Defendants of doing nothing more than permitting their

21  advertisers to display ads to persons using American Blind's supposed trademarks as part of a

22  search engine query. Neither Defendants nor their advertisers use American Blind's claimed

23  trademarks to identify their products. Google, and the remaining Defendants, simply allow

24  advertisers to promote products and services in competition with American Blind. As explained

---

[12] To plead the tort of intentional interference with prospective economic advantage, plaintiff must allege: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit or advantage to the plaintiff; (2) defendant knew of the existence of that relationship; (3) defendant intentionally engaged in wrongful conduct designed to interfere with or disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the wrongful conduct of the defendant.

1  above, such activity does not violate any law or legal standard.  Indeed, there is nothing

2  untoward about allowing advertisers to promote their businesses.  Because Defendants' actions

3  are not independently wrongful, American Blind fails to state a claim for tortious interference

4  with prospective economic advantage.

5  **2.  American Blind has also failed to allege a probability of future economic benefit**

6

7  Even if American Blind had alleged an independent wrong on Defendants' part, the

8  interference claim would fail, because American Blind fails to allege the existence of an ongoing

9  economic relationship with which Defendants' interfered.  *See Roth v. Rhodes*, 25 Cal. App. 4th

10  530, 546 (1994*)* (allegation of an existing economic relationship is an "essential element" of an

11  interference claim).

12  American Blind does not allege that Defendants interfered with any existing contract,

13  agreement or other relationship between it and its customers.  American Blind only alleges that

14  some of American Blind's past and prospective customers *may* have purchased products and

15  services from American Blind, but instead – due to Defendants' actions – clicked on

16  advertisements and links to American Blind's competitors' websites.  Counterclaims, ¶¶ 120-23.

17  Thus, American Blind alleges that it lost "future and prospective sales." *Id.*, ¶ 123.

18  These allegations are inadequate to support a claim for tortious interference.  The tort

19  "protects the expectation that the [specified] relationship eventually will yield the desired

20  benefit, not necessarily the more speculative expectation that a potentially beneficial relationship

21  will eventually arise." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507,

22  524 (1996) (precluding application of the tort to future "hypothetical relationships" with all

23  possible buyers not developed at the time of the allegedly tortious acts); *see also Blank v.

24  Kirwan*, 39 Cal. 3d 311, 331 (1985) (plaintiff had no protectable expectancy of a relation with

25  the class of potential poker club patrons "but at most a hope for an economic relationship and a

26  desire for future benefit"); *Roth*, 25 Cal. App. 4th at 546 (podiatrist denied space in medical

27  building did not have existing relationships with "speculative future patients").

28

---

*JRS Products, Inc. v. Matsushita Elec. Corp. of America*, 115 Cal. App. 4th 168, 179-80 (2004).

For the independent reason that American Blind fails to allege that Defendants interfered with any specific economic relationship – offering instead only speculative and conclusory allegations about the possibility of lost sales – the Court should dismiss the tortious interference counterclaim.[13]

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should dismiss American Blind's counterclaims with prejudice.

Dated:  June 23, 2004                                         KEKER & VAN NEST, LLP


By:   /s/ Michael H. Page
MICHAEL H. PAGE
Attorneys for Plaintiff and Counterdefendant
GOOGLE INC. and Third-Party Defendants
ASK JEEVES, INC. and EARTHLINK, INC.

---

[13] American Blind's claim of tortious interference with prospective economic advantage is also barred by Section 230 of the Communications Decency Act, which creates a federal immunity to any civil, non-intellectual property cause of action that would hold an interactive computer service liable for content provided by a third party. 47 U.S.C. § 230(c)(2), (e)(2). "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content – are barred." *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997) (cited with approval in *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003)). Defendants are interactive computer services under the Act because they are or provide an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) ("robust" immunity conferred by Section 230 immunized Internet dating service provider from liability arising from its publishing of a false profile of an actress based on questionnaire submitted by third-party). As a result, Defendants are immune from American Blind's claim for tortious interference with prospective economic advantage.