IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE, INC. and<br>OVERTURE SERVICES, INC.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>) Civil Action No. 1:04cv507<br>) 　　　　　LMB/TCB<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY BRIEF OF GOOGLE INC.
## IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

GEICO's Opposition obscures and confuses the central question before the Court: is alleged use of GEICO's trademarks as keywords a "use" at all under the Lanham Act, or is it not? If—as the Lanham Act prohibits—Google (or its advertisers) are "using" the GEICO marks "in connection with" the sale of goods or services,[1] then the trier of fact will have to move on to the next step of the analysis: whether the alleged use is likely to cause confusion. If, on the other hand, the conduct alleged is not a "use", the analysis ends, and this case must be dismissed.

---

[1]    GEICO argues that the meaning of trademark "use" differs depending whether one is considering use by the plaintiff or the defendant. The cases cited by Google make clear, however, that proof of trademark use is an element of a claim for infringement, not merely a prerequisite for protection. *See U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 728 (E.D. Va. 2003) (defendant did not "use" trademarked terms for purposes of Lanham Act claim where it did not use those terms "to identify the source of its goods or services"); *Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276, 179-80 (C.D. Cal. 1997) (defendant could not have infringed plaintiff's marks if it did not market its own services "by displaying or otherwise exploiting the [plaintiff's] marks"); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) ("use" under the Lanham Act requires that the accused infringer "caus[es] the public to see the protected mark and associate the infringer's goods or services with those of the mark holder.")

As explained in Google's opening brief, not every use of a trademark is a "use" under the Lanham Act. Bringing one's own product to the attention of a shopper—even if that shopper is deliberately and actively seeking out the product of one's competitor at the time—is simple competition beyond the reach of the Lanham Act <u>unless</u> the act involves misidentifying one's product as originating from or being endorsed by the competitor.

GEICO distorts Google's argument by claiming it requires an alleged infringer to brand its own goods or services with the plaintiff's trademark. This is not Google's position. Instead, Google's position is that there is no "trademark use" when a trademark is used "in a way that does not identify the source of a product," *Interactive Prods. Corp. v. a2z Mobile Office Sol'ns*, 326 F.3d 687, 695 (6th Cir. 2003), or in some way that indicates endorsement by the mark owner.

In the present case, the "use" at issue is the internal use by Google's computer algorithms of the term GEICO as part of the way Google decides what ads to display on a particular search results page. That activity does not use the GEICO mark in a way that identifies the source of any product or service, nor does it indicate endorsement by GEICO. Indeed, the term GEICO may never be displayed as part of any advertisement. Absent this identification function, there can be no trademark use.

Because GEICO fails to allege that Google or its advertisers use GEICO's trademark to identify their own goods or services, GEICO's claims fail. The problem is not one of proof or of sufficiency of factual allegations. The defect is in the legal theory that GEICO alleges – that a search engine can be liable for trademark infringement because it permits advertisers to run ads using keywords that accurately identify their content. The law does not and should not forbid such lawful, pro-competitive conduct. The Court should dismiss GEICO's complaint.

## ARGUMENT

### I. GEICO DOES NOT STATE A CLAIM FOR TRADEMARK INFRINGEMENT

#### A. Defendants do not make a trademark use of GEICO's mark

GEICO fails to meet the requirement that Google – or its advertisers – "use" its trademark in a manner prohibited by the Lanham Act. Indeed, GEICO's entire opposition is an attempt to obscure the basic requirement that an infringer must use a mark to identify its goods or services as originating from – or being endorsed or approved by – the trademark holder.

As the Sixth Circuit has explained, "[i]f defendants are only using [plaintiff's] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply." *Interactive Prods.*, 326 F.3d at 695. In *Interactive Products*, the issue presented was whether the defendant's "use" of the phrase "laptraveler" (a variant of the plaintiff's mark "Lap Traveler") in the "post-domain path" of a URL[2/] violated the Lanham Act. *Id.* at 696. The court recognized that the domain name itself will usually signify source. *Id.* (citing *PACCAR, Inc. v. TeleScan Tech. LLC*, 319 F.3d 243 (6th Cir. 2003), and *Brookfield Comms., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999)). The post-domain path, however, is different. "The post-domain path merely shows how the website's data is organized within the host computer's files." *Id.* at 696-97 (citing *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, at *4 n.6 (N.D. Cal. Dec. 18, 1997)). Relying on the lack of a source-signifying function for the post-domain path, the Sixth Circuit observed that "it is unlikely that the presence of another's trademark in a

---

[2/]   A URL typically begins with a "domain name," like www.google.com. Anything following the domain name can be referred to as the "post-domain path." So, for example, in the URL http://www.google.com/tm_complaint.html, "tm_complaint.html" is in the post-domain path of the URL.

3

post-domain path of a URL would ever violate trademark law." *Id.* at 698. The court therefore affirmed the trial court's judgment of non-infringement, holding that "it was unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks." *Id.*

This Court applied similar reasoning in concluding there was no trademark use in *U-Haul International, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003) (Lee, J., presiding). In that case, U-Haul contended that WhenU's internal usage of the U-Haul trademark to select advertisements constituted trademark use. *Id.* at 724-26. This Court rejected that argument, stating that "WhenU's incorporation of U-Haul's URL and 'U-Haul' in the SaveNow program is not a trademark use because WhenU merely uses the marks for the 'pure machine-linking function' and in no way advertises or promotes U-Haul's web address or any other U-Haul trademark." *Id.* at 728. In other words, this Court found that WhenU was not using the U-Haul mark in a way that identified goods or services as originating from or being endorsed by U-Haul.

The use of keywords to trigger advertisements is analogous to these cases. When an ad appears to the right of Google web search results after a user enters the query "GEICO," this merely indicates that Google's advertising data is organized by its computers in a certain way. Just as the presence of the plaintiff's mark in a URL's post-domain path was held not to infringe in *Interactive Products,* so too should this Court hold that any internal use of GEICO's mark by Google as part of its computer algorithms is a non-trademark (and thus non-infringing) use. And just as WhenU did not make a trademark use the U-Haul mark by using it to select which advertisements to display, neither do Google's computer algorithms make trademark use of the GEICO mark when using it to select advertisements to display.

4

This result makes perfect sense. Indeed, expanding trademark law to find liability here would be directly at odds with the purposes behind trademark law. As the Supreme Court and the Fourth Circuit have made clear, trademarks are not property rights that grant their owners control over any use of the term. Rather, the trademark laws are designed to reduce consumer search costs, making it easier for consumers to find what they are looking for. *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (stating that federal trademark law, "by preventing competitors from copying a source-identifying mark, reduces the customer's costs of shopping and making purchasing decisions") (citations and internal quotations omitted); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Dev.*, 170 F.3d 449, 459 (4th Cir. 1999) ("we simply cannot believe that, as a general proposition, Congress could have intended . . . to create property rights in gross, unlimited in time (via injunction), even in 'famous' trademarks."). Google's keywords program enables consumers interested in insurance to find not just the official GEICO page, but comparative price information, advertisements by companies offering competitive or related services, and even criticism of GEICO. Finding a search engine to have engaged in trademark infringement because it gave consumers access to this information would undermine rather than promote the goals of trademark law. The relevant question, therefore, is not whether Google or an advertiser made any sort of reference to GEICO's trademark – doing so is not illegal – but whether the reference is the sort of trademark use the law forbids.

B. <u>The Cases Cited by GEICO Are Consistent With Google's Argument Regarding Use</u>

Through this analytical lens—asking whether in each case the alleged use is in fact trademark "use"—we can understand and harmonize the various cases cited by the parties here.

Contrary to GEICO's assertion, both *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) ("*PETA*"), and *Cardservice International, Inc. v. McGee*, 950 F. Supp. 737, 741 (E.D. Va. 1997), *aff'd without opinion*, 129 F.3d 1259 (4th Cir. 1997), involved obvious, garden variety trademark use. In both *PETA* and *Cardservice*, the defendant was using the trademark to identify goods or services being offered, namely its website. In the Internet context, naming one's website is no less identifying the source of one's goods and services than placing a sign over the door of a "bricks and mortar" store: there is no meaningful distinction for trademark purposes between the "Sears" sign over the door and the www.sears.com URL on the website. As the *Cardservice* court noted, "a domain name is more than a mere internet address. It also identifies the internet site to those who reach it, much like a person's name identifies a particular person, or, more relevant to trademark disputes, a company's name identifies a specific company." *Id.* at 741; *see also Interactive Prods.*, 326 F.3d at 696.

Thus, both *PETA* and *Cardservice* are consistent with Google's position that trademark use requires that the mark be used to identify goods or services that originate from or are endorsed by the trademark owner. In each case, the defendant used the plaintiff's trademark to identify its website. *PETA*, 263 F.3d at 362-64; *Cardservice*, 950 F. Supp. at 738-40. By doing so, the defendants at a minimum implied that their site was endorsed by the trademark owner and perhaps even implied that the goods or services being offered (i.e., the site) originated from the trademark owner. This usage is consistent with Google's position.

Here, by contrast, there is no allegation that either Google or its advertisers have used the GEICO mark in a manner that implies origination or endorsement by GEICO. In fact, the <u>only</u> allegation anywhere in GEICO's complaint that <u>anyone</u> uses the word "GEICO" in any manner is the passing reference, in paragraph 3, that unspecified advertisers "incorporate those Marks into

6

the advertisements . . . ." But, as is discussed in more detail in Part II.B, *infra,* there is no trademark violation in nominative references such as "compare our rates to GEICO" or "get quotes from GEICO and Allstate," absent any allegation that the advertiser has falsely identified its own goods or services as GEICO's.[3/]

GEICO also urges this Court to disregard the holdings of *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003), and *U-Haul* (the latter from this Court, the Honorable Gerald B. Lee presiding), in favor of the contrary holding of *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 309 F. Supp. 2d 467 (S.D.N.Y. 2003), *appeal under submission,* No. 04-0026-cv (2d Cir. April 5, 2004). All three cases concerned the same WhenU "pop-up" ads, so GEICO's attempt to distinguish the first two on their facts while relying on the third is curious at best. The three cases are all directly apposite here, as they squarely address the issue whether the use of trademarks "behind the scenes" as selection criteria for advertisements constitutes trademark "use." *See Wells Fargo,* 293 F. Supp. 2d at 746-47; *U-Haul,* 279 F. Supp. 2d at 727-29; *1-800 Contacts,* 309 F. Supp. 2d at 488-90. The holding in *1-800 Contacts* directly

---

[3/]  GEICO has submitted voluminous exhibits in opposition to Google's motion to dismiss, including carefully selected (but unauthenticated) screenshots of Google searches. Such evidence in a Rule 12(b)(6) motion is clearly improper, and Google asks that it be stricken. While the Fourth Circuit recognizes one exception to the general rule that a court cannot consider material outside the complaint – for written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action, *see New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir.1994) – GEICO did not specifically refer to or incorporate these screenshots into its complaint. Thus, this narrow exception does not apply here. GEICO's "me too" attempt to justify its submission on the ground that Overture also submitted evidence (and thus has waived the right to object) is unavailing: regardless whether Overture has waived its rights, Google has not, and the proffered evidence is improper. Should the Court choose to consider it, however, it will see that the use of "GEICO" in those examples appears to be legitimate nominative use by agents either selling GEICO insurance or comparing GEICO's rates to their own. *See* Opp., Exhs. A, J-K.

contradicts the holdings of *Wells Fargo* and *U-Haul*. We submit that the latter two were correctly decided: the *1-800 Contacts* reasoning is strained and unpersuasive.

The *1-800 Contacts* court purported to find use of the plaintiff's mark by the defendant by noting that the mark appears <u>on the plaintiff's website</u>, and reasoning that—because the defendant's ads (which did not use the marks) appear while the user is trying to visit the plaintiff's website, that constitutes use of the mark <u>by the defendant</u>. 309 F. Supp. 2d at 489. But under that reasoning, every computer program and window that is open on a user's computer when the user is viewing the plaintiff's website would be "using" plaintiff's trademark, which certainly stretches the scope of trademark usage. In addition, this makes no more sense in cyberspace than it would in the real world. Under this reasoning, when our hypothetical pizza parlor operator hands out flyers on the sidewalk near Domino's,[4] he is somehow using the Domino's mark because the mark appears on the front of the Domino's store, and some of the recipients are on their way to that store. The *1-800 Contacts* court's effort to address *U-Haul* and *Wells Fargo* is similarly unpersuasive; the opinion simply states, without explanation, that "[t]his Court disagrees with, and is not bound by these findings." *Id.* at 490, n.43. It goes without saying that this Court is likewise unbound by the flawed findings of the *1-800 Contacts* court.

The *1-800 Contacts* court's second basis—that the inclusion of the mark at issue in an unseen index constitutes "use" of the mark—is even less persuasive. *See* 309 F. Supp. 2d at 489. Without any particular explanation, the court simply asserted that such activity constituted trademark use. But this assertion is also questionable. To extend the analogy, it is the same as saying that the pizza parlor "uses" the Domino's mark when he decides to stand near Domino's,

---

[4]   *See* Google's Memo. in Supp. of Mot. to Dismiss at 3.

or that a drug manufacturer "uses" a competitor's mark when it pays a drugstore to place its own product on the same shelf.

In short, this court should follow the reasoning of the *U-Haul* and *Wells Fargo* cases and reject that of *1-800 Contacts*.

### C. The *Playboy v. Netscape* and Metatag Cases Cited by GEICO Are Inapposite or Unpersuasive

GEICO chastises the defendants for not spending more time discussing *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004), and goes so far as to proclaim that this Ninth Circuit case is the "leading case directly on point." (Opp. at 3.) But the opinion for the court in *Playboy* does not even address the critical issues raised in this motion – what constitutes trademark use, and the circumstances under which a search engine might be liable for contributory infringement. Indeed, as explained in more detail below, the court focused on whether there was a likelihood of confusion under the doctrine of initial interest confusion. *Id.* The *Playboy* court's assumption that the Lanham Act "use" requirement was met[5] therefore has no bearing on this motion. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990) (issues assumed in reaching a decision "are not binding in future cases that directly raise the questions"). In addition, the Ninth Circuit skirted the issue of contributory liability completely, saying only that there must be some problem with Netscape's conduct, and that it didn't need to decide exactly what that problem was. *Playboy*, 354 F.3d at 1054 ("Whether the defendants are directly or merely contributorily liable proves to be a tricky

---

[5]   The trademark use issue was not before the *Playboy* court. In the *Playboy* appeal, there was "[n]o dispute" that the "defendants used the marks in commerce," as required for a claim of trademark infringement. *Id.* at 1024.

9

question. However, we need not decide that question here.").[6] Accordingly, the *Playboy* case is not inconsistent with Google's argument.

Although the court's opinion in *Playboy* does not address the distinction between non-trademark and trademark "uses" under the Lanham Act, Judge Berzon discusses this in her concurrence:

> There is a big difference between hijacking a customer to another website by making the customer think he or she is visiting the trademark holder's website (even if only briefly), which is what may be happening in this case when the banner advertisements are not labeled, and just distracting a potential customer with another *choice,* when it is clear that it is a choice. True, when the search engine list generated by the search for the trademark ensconced in a metatag comes up, an internet user might *choose* to visit westcoastvideo.com, the defendant's website in *Brookfield*, instead of the plaintiff's moviebuff.com website, but such choices do not constitute trademark infringement off the internet, and I cannot understand why they should on the internet.
>
> For example, consider the following scenario: I walk into Macy's and ask for the Calvin Klein section and am directed upstairs to the second floor. Once I get to the second floor, on my way to the Calvin Klein section, I notice a more prominently displayed line of Charter Club clothes, Macy's own brand, designed to appeal to the same people attracted by the style of Calvin Klein's latest line of clothes. Let's say I get diverted from my goal of reaching the Calvin Klein section, the Charter Club stuff looks good enough to me, and I purchase some Charter Club shirts instead. Has Charter Club or Macy's infringed Calvin Klein's trademark, simply by having another product more prominently displayed before one reaches the Klein line? Certainly not. *See* Gregory Shea, Note, *Trademarks and Keyword Banner Advertising*, 75 S. CAL. L. REV. 529, 554 (2002) (comparing keyed banner advertisements to a customer entering a supermarket, requesting Tylenol, and then being directed to the pain reliever section which includes generic Acetaminophen, along with other generic and name-brand pain relievers); Julie A. Rajzer, Comment, *Misunderstanding the Internet: How Courts are Overprotecting Trademarks Used in Metatags*, 2001 L. REV. MICH. ST. U. C.

---

[6] The potential broader implications of the decision were persuasively criticized in Judge Berzon's concurrence, which took issue with the Ninth Circuit's idiosyncratic view of initial interest confusion. *See Brookfield Comms., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1062 (quoting *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997)). Furthermore, the parties settled the case before a petition for rehearing en banc could be filed. *Playboy* is of dubious precedential value even in the Ninth Circuit, and certainly should not be extended to other circuits not already burdened with the Ninth Circuit's bizarre "initial interest confusion" rule.

10

> L. 427, 462-63 (2001) (highlighting the brick-and-mortar world in which Kellogg's Raisin Bran and Post Raisin Bran both appear next to one another on the same aisle).
>
> Similarly, suppose a customer walks into a bookstore and asks for Playboy magazine and is then directed to the adult magazine section, where he or she sees Penthouse or Hustler up front on the rack while Playboy is buried in back. One would not say that Penthouse or Hustler had violated Playboy's trademark. This conclusion holds true even if Hustler paid the store owner to put its magazines in front of Playboy's.
>
> One can test these analogies with an on-line example: If I went to Macy's website and did a search for a Calvin Klein shirt, would Macy's violate Calvin Klein's trademark if it responded (as does Amazon.com, for example) with the requested shirt and pictures of other shirts I might like to consider as well? I very much doubt it.

*Id.* at 1035 (emphasis in original).

Just as there is no trademark issue when Hustler uses the PLAYBOY mark to select placement of its magazine in a bookstore, there is no trademark use when a Google advertiser uses the GEICO mark to select placement for its advertisement. As long as those advertisements do not "use" GEICO's trademarks to falsely identify the source or affiliation of the advertiser's goods and services, there is no Lanham Act claim.[2/]

Instead of addressing trademark use, the *Playboy* case involved a classic analysis involving likelihood of confusion, finding the potential for trademark violation based on the manner in which the offending "banner ads" were presented to the user. When the user typed in the PLAYBOY mark, he or she was presented with an <u>unlabeled</u> banner advertisement. The *Playboy* court reasoned that there was at least a question of fact whether that user would thereby

---

[2/]   GEICO in opposition attempts to argue that it has alleged such use. As discussed *infra* in Part II.B, however, GEICO has not. GEICO can allege that some advertisements contain the word "GEICO,"—of course, a broker either offering GEICO insurance policies or comparing the rates of others to GEICO's must and may make nominative use of the word—but not that those advertisements use the GEICO mark to falsely identify the source or affiliation of goods or services.

11

be misled—at least initially—into thinking that the banner ad was provided by (and provided a link to) Playboy. To extend Judge Berzon's analogy, it was as if, when she walked into Macy's and asked for Calvin Klein jeans, the salesperson silently handed her an unlabeled pair of Charter Club jeans in response. It was the fact that the banner ad was anonymous that drove the *Playboy* decision: as the court expressly held, "**if a banner advertisement clearly identified its source or, even better, overtly compared [Playboy's] products to the sponsor's own, no confusion would occur . . . .**" *Playboy*, 354 F.3d at 1025 n.16 (emphasis added). "**[W]e note that we are not addressing a situation in which a banner advertisement clearly identifies its source with its sponsor's name,** or in which a search engine clearly identifies a banner advertisement's source. . . . Rather, we are evaluating a situation in which defendants display competitors' **unlabeled banner advertisements, with no label** or overt comparison to [Playboy], after Internet users type in [Playboy's] trademarks." *Id.* at 1030 (emphasis added); *see also id.* at 1036 (Berzon, J., concurring) ("Our opinion limits the present holding to situations in which the banner advertisements are not labeled or identified.").

GEICO has made, and can make, no such allegations in this case. To the contrary, Google's "Sponsored Links" appear in a separate, clearly labeled section of advertisements, and each one prominently displays the name of the advertiser's website (the "URL"), highlighted in color.[8/] Similarly, GEICO makes no allegation that—when advertisers use the word "GEICO" in their advertisements—those advertisers are not in fact either selling GEICO insurance policies or comparing their prices to GEICO. Both, of course, are paradigmatic lawful uses. *See* 15 U.S.C. § 1115(b)(4); *The New Kids On The Block v. News America Publishing, Inc.*, 971 F.2d 302, 307

---

[8/]   Again, we note that—although the "evidence" submitted by GEICO and pasted into its brief is not properly before the Court—GEICO's exhibits demonstrate that the Google "Sponsored Links" clearly identify their source. *See* Opp., Exhs. A, J-K.

(9th Cir. 1992) ("competitors may use a rival's trademark in advertising . . . if the use is not false or misleading. . . . Cases like these are best understood as involving a non-trademark use of a mark—a use to which the infringement laws simply do not apply").

For similar reasons, the three cases GEICO cites, at pages 16-17 of its opposition, holding that infringement claims can arise from the use of trademarked terms as unseen "metatags" are wrongly decided and contradict the law of this district. *See Bihari v. Gross*, 119 F. Supp. 2d 309, 319 (S.D.N.Y. 2000); *Promatek Indus. Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812-13; *Brookfield*, 174 F.3d at 1061-62. Metatags are keywords in the HTML code of a website which, though they may be scanned by search engines, are not visible to Internet users. A company may seek to attract customers by using a competitor's trademarks as metatags, in the hopes that its own website will appear when those customers search for those trademarked terms. Hence, Pepsi may seek to have its own website appear on a search result listings page in response to a user's query for "Coca-Cola," by inserting "Coca-Cola" as a metatag in the HTML code of its own website. *See generally Brookfield*, 174 F.3d at 1061-62 and n.23. It does not follow, however, that inserting trademarks into metatags constitutes "use" of those marks for the purposes of the Lanham Act.

Judge Berzon, in the Ninth Circuit's *Playboy* decision, explains this distinction, and explains that *Brookfield* (and, correspondingly, *Promatek*, which relied on *Brookfield*) is wrong on the law, to the extent that it suggests that a clearly labeled, keyword-triggered ad could give rise to a Lanham Act violation:

> As applied to this case, *Brookfield* might suggest that there could be a Lanham Act violation even if the banner advertisements were clearly labeled, either by the advertiser or by the search engine. I do not believe that to be so. . . . Even the main analogy given in *Brookfield* belies its conclusion. The Court gives an example of Blockbuster misdirecting customers from a competing video store, West Coast Video, by putting up a highway billboard sign giving directions to

13

> Blockbuster but telling customers that a West Coast Video store is located there. *Brookfield*, 174 F.3d at 1064. Even though customers who arrive at the Blockbuster realize that it is not West Coast Video, they were initially misled and confused. *Id.*
>
> But there was no similar misdirection in *Brookfield*, nor would there be similar misdirection in this case were the banner ads labeled or otherwise identified. The *Brookfield* defendant's website was described by the court as being accurately listed as westcoastvideo.com in the applicable search results. Consumers were free to choose the official moviebuff.com website and were not hijacked or misdirected elsewhere. I note that the billboard analogy has been widely criticized as inapplicable to the internet situation, given both the fact that customers were not misdirected and the minimal inconvenience in directing one's web browser back to the original list of search results.

*Playboy*, 354 F. 3d at 1035-36 (concurring opinion). As Judge Berzon's reasoning makes clear, no Lanham Act violation can exist if search results – or "Sponsored Links" – clearly identify their source. There is a risk of trademark infringement in the metatag cases only if the defendant does something to confuse visitors lured to their site by the metatag. To the extent the "metatag" cases hold otherwise, they are flatly inconsistent with this court's own holdings in the pop-up cases and incorrect under longstanding principles of trademark law.[9]

## II. GEICO HAS NOT STATED A CLAIM BASED ON USE OF THE TERM "GEICO" IN THE TEXT OF SPONSORED LINKS

GEICO next attempts to salvage its contributory and vicarious trademark infringement claims by creatively recasting its Complaint. The basis of GEICO's Complaint is that the use of the "GEICO" marks <u>as keywords</u> constitutes trademark infringement. For example, GEICO's

---

[9] GEICO's citation of a fourth purported "metatag" opinion, *Playboy Enterprises, Inc. v. AsiaFocus International, Inc.*, 1998 WL 724000 (E.D. Va. April 10, 1998), is actually just another garden-variety trademark use case. In that case, the defendant used Playboy's trademarks in its own domain names, <u>asian-playmates.com</u> and playmates-asian.com, as well as in the visible text of those websites. *Id.* at *3. Accordingly, the Court's infringement finding was unsurprising. *See, e.g., id.* at *7 (relying on "defendants' use of the term 'playmate' as the main component of the domain names" and their use of "the slogan 'FOR THE PLAYBOY IN ALL OF US' on the home page of each Web site"). But it certainly doesn't follow from this result that any representation of a mark invisibly in a computer is necessarily trademark infringement.

Second Claim for Relief (for Contributory Trademark Infringement) alleges that "[I]n particular, the use of the GEICO marks on Defendants' search engines <u>to trigger competitor advertisements</u> is likely to cause confusion . . . ." Complaint at ¶ 57. Nowhere in that Claim for Relief is there a hint that GEICO is attempting to state a claim based on the inclusion of the GEICO marks in the text of advertisements. And <u>a fortiori</u>, because that claim does not address such alleged use at all, it does not allege that use to be unlawful. Nor can it, as there is nothing unlawful about nominative use of a competitor's trademark.

Neither do any of GEICO's other federal Claims for Relief state any claim based on the use of the word "GEICO" in the text of advertisements. Rather, each is directed (as best one can discern from the amorphous phrase "use of GEICO's registered trademarks in connection with their search-based advertising programs") at the use of trademarks <u>as keywords</u>.[10/] GEICO's Complaint makes this quite clear at the outset. Paragraph 1, captioned "<u>NATURE OF THE CASE</u>," reads:

> This is an action for trademark infringement and related causes of action arising from Defendants' practice of selling GEICO's federally registered service marks [] <u>as search terms or "key words"</u> to advertisers on Defendants' Web sites . . . .

Complaint, ¶ 1 (emphasis added).

---

[10/] Indeed, as previously noticed, the <u>only</u> reference to the inclusion of GEICO's marks anywhere in GEICO's 107-paragraph Complaint is the fragment of Paragraph 3 alleging that some unspecified advertisers "in some cases incorporate those Marks into the advertisements accompanying the 'sponsored listings'"—but apparently not the sponsored listings themselves. If—as GEICO now appears to claim—the use of the word "GEICO" on unspecified third-party websites is the gravamen of its claim, it has done an excellent job of obscuring that claim until now. And of course, if GEICO is now seeking to state a claim against Google based on the contents of its advertisers' own website, it has failed entirely to allege any facts or advance any argument that would make Google responsible for the content of those third-party websites.

15

GEICO cannot avoid dismissal of the claim it has brought—that the use of trademarks <u>as keywords</u> constitutes trademark infringement—by pretending it has brought a very different claim.

## III.   GEICO'S STATE LAW CLAIMS MUST ALSO BE DISMISSED

GEICO's remaining claims, for tortious interference with prospective economic advantage and unlawful business conspiracy, are also groundless. As set forth in Google's opening brief, because GEICO's allegations do not demonstrate that Google either committed or conspired to commit an underlying wrong, the claims must be dismissed. *See* Google's Mot. at 9-10.

GEICO's attempt to evade the independent bar on these claims imposed by Section 230 of the Communications Decency Act ("CDA") is likewise unpersuasive. The CDA bars all "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content[.]" *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997). GEICO alleges that Google facilitates its advertisers' attempts to divert GEICO's customers with advertisements that appear alongside search requests. To the extent that any improper diversion could occur, it would only be because the advertisements themselves were misleading. Google's publication of these advertisements is, of course, part and parcel of "a publisher's traditional editorial functions." Because Google's advertisers are third parties to this action, the CDA bars GEICO's state law claims.

## CONCLUSION

For all of the foregoing reasons, Google requests that the Court dismiss all claims against it with prejudice.

16

Respectfully submitted,

*David P. Donovan (signature) (BDW)*

David P. Donovan (VSB #47640)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1600 Tysons Boulevard
Suite 1000
McLean, Virginia 22102
(703) 251-9760
(703) 251-9797 (FAX)

Michael H. Page
KEKER & VAN NEST, L.L.P.
710 Sansome Street
San Francisco, California 94111-1704
(415) 391-5400
(415) 397-7188 (FAX)

*Attorneys for Defendant Google Inc.*

June 26, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July, 2004, a true copy of the foregoing Reply Brief of Google Inc. in Support of Motion to Dismiss was mailed first class, postage prepaid to:

John F. Anderson
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102

Charles D. Ossola
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004

*Attorneys for Plaintiff Government Employees Insurance Company*

Richard C. Sullivan, Jr.
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, Virginia 22042

David S. Fleming
BRINKS HOFER GILSON & LIONE, P.C.
455 North Cityfront Plaza Drive, Suite 3600
Chicago, Illinois 60611

*Attorneys for Defendant Overture Services, Inc.*

_____
Bradley T. Miller