1   KEKER & VAN NEST, LLP
    MICHAEL H. PAGE - #154913
2   MARK A. LEMLEY - #155830
    RAVIND S. GREWAL - #220543
3   710 Sansome Street
    San Francisco, CA  94111-1704
4   Telephone:  (415) 391-5400
    Facsimile:  (415) 397-7188
5
6   Attorneys for Plaintiff and Counterdefendant
    GOOGLE INC. and Third-Party Defendants
7   ASK JEEVES, INC. and EARTHLINK, INC.

8

9                         UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11

12  GOOGLE INC., a Delaware corporation,          Case No. C 03-5340-JF (EAI)

13                            Plaintiff,          **REPLY IN SUPPORT OF MOTION BY
                                                  GOOGLE, ASK JEEVES AND
14        v.                                      EARTHLINK TO DISMISS
                                                  COUNTERCLAIMS AND THIRD-PARTY
15  AMERICAN BLIND & WALLPAPER                    CLAIMS**
    FACTORY, INC., a Delaware corporation
16  d/b/a decoratetoday.com, Inc.; and DOES 1-    Date:        September 17, 2004
    100, inclusive,                               Time:        1:30 p.m.
17                                                Courtroom: 3, 5th Floor
                              Defendants.         Judge:       Hon. Jeremy Fogel
18  _____
    AMERICAN BLIND & WALLPAPER
19  FACTORY, INC., a Delaware corporation
    d/b/a decoratetoday.com, Inc.
20
                        Counterclaimant,
21
          v.
22
    GOOGLE, INC., AMERICA ONLINE, INC.,
23  NETSCAPE COMMUNICATIONS
    CORPORATION, COMPUSERVE
24  INTERACTIVE SERVICES, INC., ASK
    JEEVES, INC., and EARTHLINK, INC.,
25
                  Counterdefendants/
26              Third-Party Defendants.
    _____
27

28

337011.02
          REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
                         COUNTERCLAIMS AND THIRD-PARTY CLAIMS
                              CASE NO. C 03-5340-JF (EAI)

                                                                        Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ..........................................................................................................2

        A.      American Blind does not state a claim for infringement, dilution or
                unfair competition ......................................................................................2

                1.      The complaint fails to allege that Defendants make a trademark
                        use of American Blind's claimed marks ........................................2

                2.      The *Playboy v. Netscape* and metatag cases cited by American
                        Blind are inapposite .......................................................................5

                3.      The "pop-up" cases demonstrate that Defendants are not using
                        American Blind's trademarks in a prohibited manner .............10

        B.      American Blind also fails to state a claim for indirect infringement ...................12

        C.      The Court should also dismiss American Blind's state law claims ......................13

III.    CONCLUSION ....................................................................................................15

i

337011.02

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4

*1-800 Contacts, Inc. v. WhenU.com, Inc.,*
   309 F. Supp. 2d 467 (S.D.N.Y. 2003) ........................................................10, 11

5

*Asdar Group v. Pillsbury, Madison & Sutro,*
   99 F.3d 289 (9th Cir. 1996) ...............................................................................6

6

7

*Am. Te. & Tel. Co. v. Winback &*
   *Conserve Program, Inc.,*
   42 F.3d 1421 (3d Cir. 1994) .............................................................................13

8

9

*Bihari v. Gross,*
   119 F. Supp. 2d 309 (S.D.N.Y. 2000) ................................................................8

10

11

*Brookfield Comms., Inc. v. West Coast Entm't Corp.,*
   174 F.3d at 1036 (9th Cir. 1999) ................................................................4, 8, 9

12

13

*DaimlerChrysler AG v. Bloom,*
   315 F.3d 932 (8th Cir. 2003) .............................................................................4

14

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
   539 U.S. 23 (2003)............................................................................................5

15

16

*Holiday Inns, Inc. v. 800 Reservation, Inc.,*
   86 F.3d 619 (6th Cir. 1996) ...............................................................................4

17

18

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,*
   326 F.3d 687 (6th Cir. 2003) .............................................................................3

19

20

*In'l Union of Bricklayers v. Martin Jaska, Inc.,*
   752 F.2d 1401 (9th Cir. 1985) ...........................................................................6

21

22

*Inwood Labs. v. Ives Labs.,*
   456 U.S. 844 (1982)........................................................................................13

23

24

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
   194 F.3d 980 (9th Cir. 1999) ...........................................................................12

25

26

*PACCAR, Inc. v. TeleScan Tech. LLC,*
   319 F.3d 243 (6th Cir. 2003) ..........................................................................3,4

27

28

*Patmont Motor Werks, Inc. v. Gateway Marine, Inc.,*
   1997 WL 811770 (N.D. Cal. Dec. 18, 1997)......................................................4

ii

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ......................................................13

*Playboy Enters., Inc. v. Netscape Communications Corp.,*
    354 F.3d 1020 (9th Cir. 2004) ...........................................................5, 8, 9

*Prestonettes, Inc. v. Coty,*
    264 U.S. 359 (1924)................................................................................3

*Promatek Indus. Ltd. v. Equitrac Corp.,*
    300 F.3d 808 (7th Cir. 2002) ...........................................................................8

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
    2004 WL 1810243 (5th Cir. Aug. 12, 2004) ......................................................2

*Sony Corp. of America v. Universal City Studios,*
    464 U.S. 417 (1984)..............................................................................13

*Transphase Sys., Inc. v. S. Cal. Edison Co.,*
    834 F. Supp. 711 (C.D. Cal. 1993) ..................................................................14

*U-Haul Int'l, Inc. v. WhenU.com, Inc.,*
    279 F. Supp. 2d 723 (E.D. Va. 2003) ..............................................................10

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990)...................................................................................6

*Wells Fargo & Co. v. WhenU.com, Inc.*
    293 F. Supp. 2d 734 (E.D. Mich. 2003).............................................................10

*Zeran v. America Online,*
    129 F.3d 327 (4th Cir. 1997) ........................................................................15

**STATE CASES**

*Blank v. Kirwan,*
    39 Cal. 3d 311 (1985) ...................................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ................................................................................14

*Roth v. Rhodes,*
    25 Cal. App. 4 th 530 (1994) ..........................................................................14

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.,*
    42 Cal. App. 4th 507 (1996) ...........................................................................14

iii

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

337011.02

1

## DOCKETED CASES

2

*Government Employees Insurance Co. v. Google, Inc.*
No. 1:04cv507 (E.D. Va. August 25, 2004) ................................................................11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

337011.02

## I.    INTRODUCTION

American Blind is correct about one thing:  the Internet is new and different, and presents courts with an unfamiliar field of decision.  Unsurprisingly, courts have sometimes reached conflicting decisions when required to apply traditional legal concepts in this novel context.  But the better-reasoned decisions are those that do not lose sight of the fact that the law of trademark is no different in the electronic marketplace than in any other, and must protect and promote legitimate competitive activity there as well.

American Blind attempts to obscure the central question before this Court:  is the alleged use of its trademarks as keywords a use at all under the Lanham Act, or is it not?  If—as the Lanham Act prohibits—Defendants (or their advertisers) are "using" American Blind's marks "in connection with" the sale of goods or services, then the trier of fact will have to move on to the next step of the analysis:  whether the alleged use is likely to cause confusion.  If, on the other hand, the conduct alleged is not a "use," the analysis ends, and this case must be dismissed.

American Blind would have this Court expand trademark law far beyond its existing reach.  America Blind has not alleged – because it cannot – that Defendants have used American Blind's trademarks to brand their own goods or services.  In fact, American Blind does not even allege that Defendants' *advertisers* brand *their* products misleadingly.  Instead, American Blind appears to argue that *any* keyword-triggered advertising is illegal.  Merely because an advertisement (always identified as a "Sponsored Link," "Sponsored Result," or "Sponsored Web Result") appears beside search results, American Blind alleges that computer users will be confused.  But that is not the law.  Search engines are not liable for permitting advertisers to run ads that accurately identify their content.  Nor should it be the law.  American Blind's argument would ban *any* advertisement linked to the use of the search terms "American blind," "American wallpaper," or a host of others.  On its theory, Defendants would violate the law if they permitted Consumer Reports to advertise the comparative price and quality information it provides, or competitors to offer ads comparing the merits of their products to American Blind's, or even the American Society for the Blind to attempt to reach its members.

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

The Court should reject American Blind's attempt to insulate its online sales from lawful competition.[1]  Its counterclaims must be dismissed.

## II.    ARGUMENT

### A.    American Blind does not state a claim for infringement, dilution or unfair competition

#### 1.    The complaint fails to allege that Defendants make a trademark use of American Blind's claimed marks

For all of its rhetoric, American Blind cannot overcome the thrust of Defendants' motion to dismiss:  the complaint does not allege that Google, the remaining defendants, or their advertisers use American Blind's purported trademarks in a manner prohibited by the Lanham Act, the California Business and Professions Code, or as required to state a claim for common law trademark infringement or unfair competition.  All of these causes of action require that the accused infringer use a mark to identify its own goods or services as originating from – or being endorsed or approved by – the trademark holder.  Because American Blind's complaint fails to allege this threshold element, it cannot survive a motion to dismiss.

We begin by noting the broad sweep of American Blind's theory.  According to American Blind, its argument is not that consumers are confused by specific advertisements, but that Google has violated the law whenever *any* advertiser uses a long list of keywords that American Blind would like to declare contraband.  This is true regardless of the text of the ad itself, and regardless of how it appears on the page.  No matter how clear it is to consumers that there is no relationship whatsoever between American Blind and an advertiser, American Blind asks this Court to ban that ad.   Its claim is all the more remarkable because what American Blind would like the Court to declare off-limits is not a unique, fanciful mark, but three common words in the English language – "American," "blind," and "wallpaper."  The idea that no one should be permitted to run advertisements seeking to reach anyone searching for those common English words flies in the face both of trademark law and of common sense.

---

[1] As the Fifth Circuit recently stated in the context of a trademark infringement and dilution action, "[i]ntent to compete . . . is not tantamount to intent to confuse."  *Scott Fetzer Co. v. House of Vacuums, Inc.*, 2004 WL 1810243 at *5 (5th Cir. Aug. 12, 2004).

337011.02

Further, American Blind alleges that Google is itself a *direct* infringer, even though Google never uses American Blind's trademarks anywhere on its website. American Blind seeks to merge together its concerns about what advertisers might do in the text of their ads with Google's policy permitting advertisers to target their advertisements based on certain keywords. But the two must remain distinct. For Google to be liable as a direct infringer, this Court would have to find that Google itself has made some use of American Blind's trademarks that confuses consumers, regardless of what its advertisers do. To the extent that what American Blind is really complaining about is the appearance of ads that it thinks are confusing, it is the advertiser who is allegedly a direct infringer, and Google is liable, if at all, only on a theory of indirect infringement. We address that latter contention below.

Google is not a direct infringer because it is not itself making a trademark use of American Blind's marks. Contrary to American Blind's contention, branding one's own goods or services with another's trademark is the only "use" of a trademark prohibited under the Lanham Act. "A trade-mark only gives the right to prohibit the use of it so far to protect the owner's good will against the sale of another's products as his." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.). As the Sixth Circuit recently explained, "[i]f defendants are only using [plaintiff's] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003).

In *Interactive Products*, the issue presented was whether the defendant's "use" of the phrase "laptraveler" (a variant of the plaintiff's mark "Lap Traveler") in the "post-domain path" of a URL violated the Lanham Act. *Id.* at 696.[2] The court recognized that the domain name itself will usually signify source. *Id.* (citing *PACCAR, Inc. v. TeleScan Tech. LLC*, 319 F.3d 243

---

[2] A URL typically begins with a "domain name," like www.google.com. Anything following the domain name can be referred to as the "post-domain path." So, for example, in the URL http://www.google.com/tm_complaint.html, "tm_complaint.html" is in the post-domain path of the URL.

337011.02

1    (6th Cir. 2003) and *Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir.

2    1999)).  The post-domain path, however, is different.  "The post-domain path merely shows how

3    the website's data is organized within the host computer's files."  *Id.* at 696-97 (citing *Patmont*

4    *Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, at *4 n.6 (N.D. Cal. Dec. 18,

5    1997)).

6         Because only the domain name – and not the post-domain path – has a source-signifying

7    function, the Sixth Circuit observed that "it is unlikely that the presence of another's trademark in

8    a post-domain path of a URL would ever violate trademark law."  *Id.* at 698.  The court therefore

9    affirmed the trial court's judgment of non-infringement, holding that "it was unnecessary for the

10   district court to examine the eight factors traditionally used to determine likelihood of confusion

11   between two source-signifying marks."  *Id.*[3]

12        The use of keywords to trigger advertisements similarly does not constitute the requisite

13   trademark use for a Lanham Act violation.  Even if Defendants and their advertisers, as

14   American Blind claims, "deliberately intended to piggyback on American Blind's name and

15   reputation" (Opp. at 10), they would not violate the Lanham Act absent trademark use of

16   American Blind's marks.  If Hyundai buys billboard space immediately outside the entrance to a

17   Ford dealership, Hyundai may well be attempting to "piggyback" on Ford's success.  But unless

18   Hyundai affixed the Ford mark to one of its own cars on that billboard, such an attempt would be

19   lawful.

20        To permit a finding of liability here would be directly at odds with the purposes behind

21   trademark law.  As the Supreme Court has made clear, trademarks are not property rights that

22

23   [3] Numerous other decisions confirm that use of a trademark in a source-signifying manner is a
     prerequisite to a Lanham Act claim.  *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d
24   619, 626 (6th Cir. 1996) ("the defendant's use of a protected mark or their use of a misleading
     representation is a prerequisite to the finding of a Lanham Act violation.  Absent such a finding,
25   the eight factor test [of confusion] is irrelevant") (emphasis in original); *DaimlerChrysler AG v.*
     *Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) ("the mark holder is generally not entitled to relief
26   unless the defendant advertises or otherwise promotes [the actual mark] thereby causing the
     public to see the protected mark and associate the infringer's goods or services with those of the
27   mark holder"); Graeme Dinwoodie et al., TRADEMARKS AND UNFAIR COMPETITION:  LAW AND
     POLICY 460 (2004) ("although the 'likelihood of confusion' standard is the heart of the
28   infringement inquiry, there is necessarily a prerequisite that the defendant's activities constitute
     'use.'").

337011.02

1    grant their owners control over any use of the term.  Rather, the trademark laws are designed to

2    reduce consumer search costs, making it easier for consumers to find what they are looking for.

3    *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (stating that

4    federal trademark law, "by preventing competitors from copying a source-identifying mark,

5    reduces the customer's costs of shopping and making purchasing decisions") (citations and

6    internal quotations omitted).  Keyword-triggered advertising enables consumers interested in

7    home decorating to find not just American Blind's websites, but comparative price information,

8    advertisements by companies offering competitive or related services, criticism of American

9    Blind, and other unrelated groups that use the same terms, such as the American Society for the

10   Blind.  Finding a search engine to have engaged in trademark infringement because it gave

11   consumers access to this information would undermine rather than promote the goals of

12   trademark law.  The relevant question, therefore, is not whether Google or an advertiser made

13   any sort of reference to American Blind's trademark – doing so is not illegal – but whether the

14   reference is the sort of trademark use the law forbids.

15        **2.    The *Playboy v. Netscape* and metatag cases cited by American Blind are
           inapposite**

16

17        American Blind relies heavily on *Playboy Enters., Inc. v. Netscape Communications*

18   *Corp.*, 354 F.3d 1020 (9th Cir. 2004), despite the fact that *Playboy* explicitly does *not* address

19   the critical issues raised in this motion – what constitutes trademark use, and the circumstances

20   under which a search engine might be liable for contributory infringement.  354 F.3d at 1024

21   (noting that there was "[n]o dispute" that the "defendants used the marks in commerce"); *id.*

22   ("Whether the defendants are directly or merely contributorily liable proves to be a tricky

23   question.  However, we need not decide that question here.").  Although the Ninth Circuit went

24   out of its way to note that that the parties did not dispute the element of "use," American Blind

25   argues that the "Ninth Circuit no doubt would have raised it *sua sponte* if it felt it was

26   appropriate."  Opp. at 14.  But appellate courts do not find it "appropriate" to address and resolve

27   every conceivable dispute in the cases before them.  Instead, appellate courts resolve the issues

28

337011.02

1    in dispute *as framed by the parties*.  *See* Fed. R. App. Proc. 28(a)(5) (appellant's brief must

2    contain "a statement of the issues presented for review").  As a matter of course, appellate courts

3    do not address issues that the parties fail to raise, regardless of the impact they would have had

4    on the outcome.  *See, e.g., Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 296 n.9 (9th

5    Cir. 1996) ("Because the parties did not raise or brief the issue of whether or not the judgment in

6    the underlying action against [the appellant] has been satisfied, we do not address that issue");

7    *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will

8    not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued

9    in appellant's opening brief.")  Because issues assumed in reaching a decision "are not binding in

10   future cases that directly raise the questions," *United States v. Verdugo-Urquidez*, 494 U.S. 259,

11   272 (1990), *Playboy* is simply inapplicable here.

12        Moreover, although the opinion of the court in *Playboy* does not address the distinction

13   between non-trademark and trademark "uses" under the Lanham Act, Judge Berzon's

14   concurrence does:

15        There is a big difference between hijacking a customer to another website
         by making the customer think he or she is visiting the trademark holder's website
16       (even if only briefly), which is what may be happening in this case when the
         banner advertisements are not labeled, and just distracting a potential customer
17       with another *choice*, when it is clear that it is a choice.  True, when the search
         engine list generated by the search for the trademark ensconced in a metatag
18       comes up, an internet user might *choose* to visit westcoastvideo.com, the
         defendant's website in *Brookfield*, instead of the plaintiff's moviebuff.com
19       website, but such choices do not constitute trademark infringement off the
         internet, and I cannot understand why they should on the internet.

20
         For example, consider the following scenario:  I walk into Macy's and ask
21       for the Calvin Klein section and am directed upstairs to the second floor.  Once I
         get to the second floor, on my way to the Calvin Klein section, I notice a more
22       prominently displayed line of Charter Club clothes, Macy's own brand, designed
         to appeal to the same people attracted by the style of Calvin Klein's latest line of
23       clothes.  Let's say I get diverted from my goal of reaching the Calvin Klein
         section, the Charter Club stuff looks good enough to me, and I purchase some
24       Charter Club shirts instead.  Has Charter Club or Macy's infringed Calvin Klein's
         trademark, simply by having another product more prominently displayed before
25       one reaches the Klein line?  Certainly not.  *See* Gregory Shea, Note, *Trademarks
         and Keyword Banner Advertising*, 75 S. CAL. L. REV. 529, 554 (2002)
26       (comparing keyed banner advertisements to a customer entering a supermarket,
         requesting Tylenol, and then being directed to the pain reliever section which
27       includes generic Acetaminophen, along with other generic and name-brand pain
         relievers); Julie A. Rajzer, Comment, *Misunderstanding the Internet: How Courts*

28

6
REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

337011.02

1
2
3
4
5
6

> *are Overprotecting Trademarks Used in Metatags*, 2001 L. REV. MICH. ST. U.C.L. 427, 462-63 (2001) (highlighting the brick-and-mortar world in which Kellogg's Raisin Bran and Post Raisin Bran both appear next to one another on the same aisle).
>
> Similarly, suppose a customer walks into a bookstore and asks for Playboy magazine and is then directed to the adult magazine section, where he or she sees Penthouse or Hustler up front on the rack while Playboy is buried in back. One would not say that Penthouse or Hustler had violated Playboy's trademark. This conclusion holds true even if Hustler paid the store owner to put its magazines in front of Playboy's.

7
8
9
10
11
12

*Id.* at 1035 (emphases in original). As Judge Berzon cogently explained, the Lanham Act does not prohibit the use of a term that happens to be a trademark to trigger the display of alternatives to the mark-holder's products or services. And, in fact, we need not wonder how Judge Berzon would apply these principles to the use of trademarked terms to trigger ads in an online search engine – because she tells us:

13
14
15

> One can test these analogies with an on-line example: If I went to Macy's website and did a search for a Calvin Klein shirt, would Macy's violate Calvin Klein's trademark if it responded (as does Amazon.com, for example) with the requested shirt and pictures of other shirts I might like to consider as well? I very much doubt it.

16

*Id.*

17
18
19
20
21
22

Just as there would be no trademark issue if searches at the Macy's site for "Calvin Klein" triggered ads for products made by Calvin Klein's competitors, so too there is no trademark use when a Google advertiser uses one of American Blind's alleged marks to select placement for its advertisement. As long as those advertisements do not "use" American Blind's trademarks to falsely identify the source or affiliation of the advertiser's goods and services, there is no Lanham Act claim.

23
24
25
26
27
28

Instead of addressing trademark use, the *Playboy* case involved a classic analysis of likelihood of confusion—an issue that need only be addressed if, in fact, there is a trademark use. In the *Playboy* case, when a user typed in the plaintiff's mark, he or she was presented with an *unlabeled* banner advertisement. The Playboy court reasoned that there was at least a question of fact whether that user would thereby be misled—at least initially—into thinking that the banner ad was provided by (and provided a link to) Playboy. To extend Judge Berzon's analogy, it was

7

1    as if, when she walked into Macy's and asked for Calvin Klein jeans, the salesperson silently

2    handed her an unlabeled pair of Charter Club jeans in response.

3        It was the fact that the banner ad was anonymous that drove the Playboy decision:  as the

4    court expressly held, "*if a banner advertisement clearly identified its source* or, even better,

5    overtly compared [Playboy's] products to the sponsor's own, no confusion would occur . . . ."

6    *Playboy*, 354 F.3d at 1025 n.16 (emphasis added).  "*[W]e note that we are not addressing a*

7    *situation in which a banner advertisement clearly identifies its source with its sponsor's name*,

8    *or in which a search engine clearly identifies a banner advertisement's source*. . . . Rather, we

9    are evaluating a situation in which defendants display competitors' *unlabeled* banner

10   advertisements, *with no label* or overt comparison to [Playboy], after Internet users type in

11   [Playboy's] trademarks."  *Id.* at 1030 (emphases added); *see also id.* at 1036 (Berzon, J.,

12   concurring) ("Our opinion limits the present holding to situations in which the banner

13   advertisements are not labeled or identified.").

14       In the present case, the ads at issue all include URLs that identify their source.

15   Counterclaims, Exhs. C-F.  All appear in a separate, clearly labeled section of advertisements,

16   and each one prominently displays the name of the advertiser's website (the "URL"), highlighted

17   in color.  As such – according to *Playboy* – no confusion can occur.[4]

18       For similar reasons, the three cases American Blind cites, at pages 15-16 of its opposition,

19   holding that infringement claims can arise from the use of trademarked terms as unseen

20   "metatags," do not apply here.  *See Brookfield*, 174 F.3d at 1061-62; *Promatek Indus. Ltd. v.*

21   *Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002); *Bihari v. Gross*, 119 F. Supp. 2d 309, 319

22   (S.D.N.Y. 2000).  Metatags are keywords in the HTML code of a website which, though they

---

[4] American Blind also claims that the designations "Sponsored Links" (or "Sponsored Web Results" or "Sponsored Results") are themselves confusing, despite the fact that ads so labeled are clearly segregated from search results.  This contention is meritless.  Indeed, the Federal Trade Commission – the government agency responsible for regulating false advertising – has explicitly endorsed the use of the terms "Sponsored Links" and "Sponsored Search Listings" as precisely the type of "clear and conspicuous disclosures" required to distinguish paid listings from search results.  *See* http://www.ftc.gov/os/closings/staff/commercialalertletter.htm.  In any event, because this allegation relates to the display of advertisers' marks, rather than the use of keywords to select advertisements, it is relevant only if American Blind could make a case for contributory infringement.  As we explain below, it cannot.

8

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

337011.02

1   may be scanned by search engines, are not visible to Internet users.  A company may seek to

2   attract customers by using a competitor's trademarks as metatags, in the hopes that its own

3   website will appear when those customers search for those trademarked terms.  Hence, Pepsi

4   may seek to have its own website appear on a search result listings page in response to a user's

5   query for "Coca-Cola," by inserting "Coca-Cola" as a metatag in the HTML code of its own

6   website.  *See generally Brookfield*, 174 F.3d at 1061-62 and n.23.  It does not follow, however,

7   that inserting trademarks into metatags constitutes "use" of those marks for the purposes of the

8   Lanham Act.[5]

9       Judge Berzon, in her *Playboy* concurrence, explains this distinction, and explains that

10  *Brookfield* (and, correspondingly, *Promatek*, which relied on *Brookfield*) should not be read to

11  suggest that a clearly labeled, keyword-triggered ad could give rise to a Lanham Act violation:

12          As applied to this case, *Brookfield* might suggest that there could be a
            Lanham Act violation even if the banner advertisements were clearly labeled,
13          either by the advertiser or by the search engine. I do not believe that to be so. . . .
            Even the main analogy given in *Brookfield* belies its conclusion.  The Court gives
14          an example of Blockbuster misdirecting customers from a competing video store,
            West Coast Video, by putting up a highway billboard sign giving directions to
15          Blockbuster but telling customers that a West Coast Video store is located there.
            *Brookfiel*d, 174 F.3d at 1064.  Even though customers who arrive at the
16          Blockbuster realize that it is not West Coast Video, they were initially misled and
            confused.  *Id.*

17
            But there was no similar misdirection in *Brookfield*, nor would there be
18          similar misdirection in this case were the banner ads labeled or otherwise
            identified.  The *Brookfield* defendant's website was described by the court as being
19          accurately listed as westcoastvideo.com in the applicable search results.
            Consumers were free to choose the official moviebuff.com website and were not
20          hijacked or misdirected elsewhere.  I note that the billboard analogy has been
            widely criticized as inapplicable to the internet situation, given both the fact that
21          customers were not misdirected and the minimal inconvenience in directing one's
            web browser back to the original list of search results.

22
    *Playboy*, 354 F. 3d at 1034-36 (concurring opinion).  As Judge Berzon's reasoning makes clear,
23
    no Lanham Act violation can exist if advertisements clearly identify their source.  There is a risk
24

25  _____

26  [5] It should be noted that *Brookfield*, like *Playboy*, does not directly address the issue of whether
    the defendant's actions can constitute a Lanham Act "use."  *Brookfield*, 174 F.3d at 1053-54
27  (proceeding directly to "likelihood of confusion" analysis).  Thus, it cannot determine the
    outcome of this case.
28

of trademark infringement in the metatag cases only because the defendant does something to confuse visitors lured to their site by the metatag. To the extent the "metatag" cases hold otherwise, they are inconsistent with longstanding principles of trademark law, and should not be extended to the rather different case of keywords.

### 3. The "pop-up" cases demonstrate that Defendants are not using American Blind's trademarks in a prohibited manner

American Blind also urges this Court to disregard the holdings of *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003), and *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003), in favor of the contrary holding of *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 309 F. Supp. 2d 467 (S.D.N.Y. 2003), *appeal under submission,* No. 04-0026-cv (2d Cir. April 5, 2004). All three cases concerned the same WhenU "pop-up" ads, so American Blind's attempt to distinguish the first two on their facts while relying on the third is curious at best. The three cases are all directly apposite here, as they squarely address the issue whether the use of trademarks "behind the scenes" as selection criteria for advertisements constitutes trademark "use." *See Wells Fargo*, 293 F. Supp. 2d at 746-47; *U-Haul*, 279 F. Supp. 2d at 727-29; *1-800 Contacts*, 309 F. Supp. 2d at 488-90. The holding in *1-800 Contacts* directly contradicts the holdings of *Wells Fargo* and *U-Haul*. We submit that the latter two were correctly decided: the *1-800 Contacts* reasoning is strained and unpersuasive.

The *1-800 Contacts* court purported to find use of the plaintiff's mark by the defendant by noting that the mark appears *on the plaintiff's website*, and reasoning that—because the defendant's ads (which did not use the marks) appear while the user is trying to visit the plaintiff's website, that constitutes use of the mark *by the defendant*. 309 F. Supp. 2d at 489.[6] But under that reasoning, every computer program and window that is open on a user's computer when the user is viewing the plaintiff's website would be "using" plaintiff's trademark, which

---

[6] Note, moreover, that the "pop-up" cases involved advertising that appeared when the user was in the process of directing his browser directly to the plaintiff's own website. Here, by contrast, the user has merely entered some part of American Blind's name into a search engine, and will receive tens or hundreds of thousands of results, only a few of which lead to American Blind's own sites. The remainder of the results include *any* website containing those words, including news articles about American Blind, legitimate comparative advertising, consumer reports, complaints about American Blind's products, and even the American Society for the Blind.

337011.02

1    certainly stretches the scope of trademark usage.  This makes no more sense in cyberspace than it

2    would in the real world.  Under this reasoning, when a pizza parlor operator hands out flyers on

3    the sidewalk near Domino's, he is somehow using the Domino's mark because the mark appears

4    on the front of the Domino's store, and some of the recipients are on their way to that store.  The

5    *1-800 Contacts* court's effort to address *U-Haul* and *Wells Fargo* is similarly unpersuasive; the

6    opinion simply states, without explanation, that "[t]his Court disagrees with, and is not bound by

7    these findings."  *Id.* at 490, n.43.  It goes without saying that this Court is likewise unbound by

8    the flawed findings of the *1-800 Contacts* court.[7]

9         The *1-800 Contacts* court's second basis—that the inclusion of the mark at issue in an

10    unseen index constitutes "use" of the mark—is even less persuasive.  *See* 309 F. Supp. 2d at 489.

11    Without any particular explanation, the court simply asserted that such activity constituted

12    trademark use.  But this assertion is also questionable.  To extend the analogy, it is the same as

13    saying that the pizza parlor owner "uses" the Domino's mark when he decides to stand near

14    Domino's, or that a drug manufacturer "uses" a competitor's mark when it pays a drugstore to

---

15    Thus the tight causal linkage present in the pop-up cases (as well as in *Playboy*) is absent here.

16    [7] American Blind will no doubt also urge that this Court should consider—and defer to—a recent decision from the Eastern District of Virginia, in a case brought by GEICO against Google and Overture.  The District Court denied Defendants' motion to dismiss the plaintiff's Lanham Act

17    claims.  *See Government Employees Ins. Co. v. Google, Inc. ("GEICO")*, No. 1:04cv507 (E.D.

18    Va. August 25, 2004), mem. op. at 14.

19    The allegations in that case, however, are different for two reasons.  First, with respect to GEICO's direct infringement and unfair competition claims, the court noted that GEICO alleged that defendants' had used its trademarks in a manner likely to confuse advertisers.  The Court

20    denied defendants' motion to dismiss those claims on that ground:  "when defendants sell the rights to link advertising to plaintiff's trademarks, they are using the trademarks in

21    commerce in a way that may imply that defendants have permission from the trademark holder to do so."  *GEICO*, mem. op. at 8.  American Blind, however, does not allege that the present

22    defendants are "using" American Blind's putative marks in a manner that may imply to their advertisers that defendants "have permission from the trademark holder."  Instead, American Blind alleges only that "Defendants' search engines are deceptive and mislead *consumers*."

23    Counterclaims, ¶ 75 (emphasis added).

24    Second, the Virginia court's ruling with respect to GEICO's secondary liability claims is also inapplicable here.  GEICO alleges that the text of "Sponsored Links" themselves (as well as the websites to which those advertisements link) use GEICO's trademarks in ways likely to confuse

25    readers, and thus that Google should be held contributorily liable for that claimed confusion.  *See GEICO*, mem. op. at 8 (noting that GEICO alleges that Defendants' advertisers "make

26    'trademark use' of the GEICO marks by incorporating them into the advertisements, which are likely to deceive customers into believing that the advertisers provide accurate information about GEICO's products or are somehow related to GEICO").  American Blind, by contrast, makes no

27    such claim, instead relying solely on the invisible "use" of its alleged marks as keywords.  For the Court's convenience, a copy of the *GEICO* opinion is attached hereto as Exhibit A.

28                                             11

---

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

1    place its own product on the same shelf.

2        In short, this court should follow the reasoning of the *U-Haul* and *Wells Fargo* cases and

3    reject that of *1-800 Contact*s.

4    **B.    American Blind also fails to state a claim for indirect infringement**

5        Perhaps recognizing the sweeping nature of its claims, American Blind alternatively

6    attempts to salvage its case by raising contributory trademark infringement and dilution claims.

7    This is a very different claim than the broader theory that all advertisements are illegal because

8    they involve the use of a keyword, whether or not the text of the advertisements confuses

9    consumers.  This alternative theory depends on proof that a particular advertiser ran an ad that

10   confused consumers into thinking that it was an American Blind ad, and that Google unlawfully

11   contributed to that infringement.  But American Blind has not pled direct infringement by

12   advertisers, and without an act of direct infringement there can be no act of contributory

13   infringement.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983-86 (9th

14   Cir. 1999) (contributory infringement requires a showing that the defendant materially

15   contributed to a third party's infringement of a mark).[8]  American Blind's counterclaims contain

16   no allegations that Defendants or their advertisers brand their own products or services with

17   American Blind's marks.  Indeed, American Blind concedes that its counterclaims contain no

18   allegation that Defendants' advertisers include American Blind's marks in the text of

19   advertisements.  Accordingly, American Blind cannot state a case for contributory liability where

20   there is no allegation of direct liability.

21       Recognizing this problem, American Blind instead simply repeats its keyword-based

22   claims anew, recasting Defendants' alleged "use" as their advertisers' "use" instead.  But

23   regardless of who American Blind chooses to denominate the "user," for the reasons set forth

24   above the use of trademarks as keywords alone cannot constitute trademark infringement, and

25

26   [8] It is doubtful that a cause of action for "contributory dilution" even exists.  *See Lockheed
     Martin*, 194 F.3d at 986 ("no appellate court or statute has yet established [that] cause of
27   action").  Even if such a cause of action could exist, however, American Blind's claim would
     fail, because it has not alleged that Defendants' advertisers make the prerequisite trademark
28   "use" of American Blind's purported marks to support a claim for direct dilution.

12

1    thus American Blind fails to state a claim for contributory infringement on that basis either.[9]

2         Second, even if American Blind could amend its claims to allege that advertisers engaged

3    in trademark use, that amendment would be futile because Defendants have done nothing that

4    would qualify as contributory liability for such a use.  Unlike the standard in patent and

5    copyright cases, the standard for indirect infringement in trademark cases is truly narrow.  *Sony*

6    *Corp. of America v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984) (noting that "narrow

7    standard for contributory trademark infringement" has little bearing on indirect infringement

8    standards in copyright and patent law).  Contributory infringement applies only to the provision

9    of goods labeled with a counterfeit mark, and is clearly inapplicable here.  *See id.* (*citing Inwood*

10   *Labs. v. Ives Labs.*, 456 U.S. 844, 854-55 (1982) ("a manufacturer or distributor could be held

11   liable to the owner of a trademark if it intentionally induced a merchant . . . to pass off its

12   product as that of the trademark owner's or if it continued to supply a product which could

13   readily be passed off to a particular merchant whom it knew was mislabeling the product with

14   the trademark owner's mark"); *see also Perfect 10, Inc. v. Visa Int'l Service Assoc.*, 2004 WL

15   1773349 at *6 (N.D. Cal. Aug. 5, 2004) (dismissing contributory trademark infringement claim

16   despite the fact that "the complaint contains the allegation that Defendants 'are knowingly

17   inducing' the alleged infringing conduct," because "there are no facts presented in the complaint

18   that support such an allegation").  It would be futile to permit American Blind to amend its

19   complaint to try to allege a cause of action for indirect infringement.[10]

20   **C.    The Court should also dismiss American Blind's state law claims**

21        American Blind's remaining claim, for tortious interference with prospective economic

22   advantage, must also be dismissed.  As set forth in Defendants' opening brief, American Blind

---

23   [9] For this reason, American Blind's allegations that Google offers advertisers a service providing
     them with "ideas for new keywords" that they may wish to consider for their ads, and that some
24   of these "ideas" include American Blind's putative marks, is irrelevant.  *See* Counterclaims, ¶¶
     45-47.  American Blind admits that "this feature is not available to, or even viewable by, the
25   public."  *Id.*, ¶ 45.  These allegations thus have no bearing on the determination of whether
     Defendants or their advertisers have used American Blind's claimed trademarks in connection
26   with their own goods or services, as required for a Lanham Act violation.
     [10] American Blind has neither alleged nor argued a theory of vicarious infringement, which
27   would require proof that advertisers acted as Google's agents, a claim that is obviously not true.
     *See American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1430-31 (3d
28                                                  13

337011.02

1   fails to allege an independently wrongful act.  American Blind attempts to resuscitate its claim

2   by pointing to a number of paragraphs in its counterclaims where it alleges that Defendants'

3   actions violate various Lanham Act provisions and state laws.  *See* Opp. at 21.  But this only

4   begs the question.  As set forth above, none of the *factual* allegations in American Blind's

5   counterclaims describe an independently wrongful act on the part of Defendants or their

6   advertisers.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (an

7   act is "independently wrongful" only if it is unlawful pursuant to some "constitutional, statutory,

8   regulatory, common law, or other determinable legal standard.")  American Blind's remaining

9   contentions that Defendants violated the law are merely "conclusory allegations" that have no

10  bearing on the outcome of this motion.  *Transphase Sys., Inc. v. S. Cal. Edison Co.*, 839 F. Supp.

11  711, 718 (C.D. Cal. 1993).

12         Second, American Blind fails to allege the requisite element of a probability of future

13  economic benefit.  American Blind's contention that Defendants have confused the elements of a

14  claim of tortious interference with contract with a claim for tortious interference with prospective

15  economic advantage is incorrect.  All three cases cited by Defendants treat the latter variety of

16  claim.  *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523-25 (1996)

17  (precluding application of interference with prospective economic advantage tort to future

18  "hypothetical" relationships with all possible buyers not developed at the time of the allegedly

19  tortious acts); *Blank v. Kirwan*, 39 Cal. 3d 311, 331 (1985) (plaintiff had no protectable

20  expectancy of a relation with the class of potential poker club patrons "but at most a hope for an

21  economic relationship and a desire for future benefit"); *Roth v. Rhodes*, 25 Cal. App. 4th 530,

22  546 (1994) (podiatrist denied space in medical building did not have existing relationships with

23  "speculative 'future patients'").  While American Blind is correct that the tort does not require

24  the defendant to plead an existing contract, it does require an existing "economic relationship

25  between the plaintiff and some third party."  *Korea Supply*, 29 Cal. 4th at 1153.  Because

26  American Blind alleges only that Defendants' actions may have cost it future sales, and fails to

27

28  Cir. 1994) (noting that agency principles apply to Lanham Act vicarious liability claim).

REPLY IN SUPPORT OF MOTION BY GOOGLE, ASK JEEVES AND EARTHLINK TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS
CASE NO. C 03-5340-JF (EAI)

337011.02

1   allege that they interfered with any specific economic relationship, the tortious interference

2   counterclaim must be dismissed.  *See GEICO*, mem. op. at 12 (granting Defendants' motion to

3   dismiss claim for tortious interference with prospective economic advantage on the ground that

4   "general expectancy that consumers will purchase insurance from the GEICO Website, which is

5   all that plaintiff has alleged, does not suffice").

6       Finally, American Blind's attempt to evade the independent bar imposed by Section 230 of

7   the Communications Decency Act ("CDA") contradicts every case interpreting that statute.  The

8   CDA bars all "lawsuits seeking to hold a service provider liable for its exercise of a publisher's

9   traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter

10  content[.]"  *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997).  American Blind does

11  not allege that Defendants provided any of the content in the complained-of advertisements.

12  American Blind instead argues that "the Defendants are taking an active role in determining

13  when advertisers' sponsored links will be displayed and how the display of the sponsored links

14  will appear to Internet users."  Opp. at 24.  But this is true of *every* publishing intermediary; after

15  all, a newspaper publisher also determines where ads will run and how they will appear to

16  readers.  To the extent that any improper confusion and diversion of Defendants' users could

17  occur, it would only be because the ads they run themselves were misleading.  Defendants'

18  publication of these advertisements is, of course, part and parcel of "a publisher's traditional

19  editorial functions."  Because Defendants' advertisers are third parties to this action, the CDA

20  bars American Blind's state law claims.

21              **III.    CONCLUSION**

22       For all of the foregoing reasons, the Court should dismiss American Blind's counterclaims

23  with prejudice.

24  Dated:  September 3, 2004                    KEKER & VAN NEST, LLP

25
                                         By:   ___/s/ Michael H. Page_____
26                                            MICHAEL H. PAGE
                                              Attorneys for Plaintiff and Counterdefendant
27                                            GOOGLE INC. and Third-Party Defendants
                                              ASK JEEVES, INC. and EARTHLINK, INC.,
28

337011.02