# EXHIBIT A

geico1215.txt

269

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | . | Civil Action No. 1:04cv507 |
| Plaintiff, | . | |
| vs. | . | Alexandria, Virginia |
| | . | December 15, 2004 |
| GOOGLE, INC., | . | 10:00 a.m. |
| Defendant. | . | |

. . . . . . . . . . .

TRANSCRIPT OF BENCH TRIAL
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

VOLUME II

APPEARANCES:

FOR THE PLAINTIFF:    CHARLES D. OSSOLA, ESQ.
                     CHRISTOPHER WINTERS, ESQ.
                     MICHAEL J. ALLAN, ESQ.
                     ROBERTA L. HORTON, ESQ.
                     Arnold & Porter LLP
                     555 Twelfth Street, N.W.
                     Washington, D.C. 20004
                       and
                     JOHN F. ANDERSON, ESQ.
                     Troutman Sanders LLP
                     1660 International Drive, Suite 600
                     McLean, VA 22102
                       and
                     JONATHAN L. SHAFNER, ESQ.
                     Government Employees Companies
                     One Geico Plaza
                     Washington, D.C. 20076

(APPEARANCES CONT'D. ON FOLLOWING PAGE)

(Pages 269 - 295)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

270

Page 1

geico1215.txt

| | | |
|---|---|---|
| 1 | FOR THE DEFENDANT: | MICHAEL H. PAGE, ESQ. |
| 2 | | JOSHUA H. LERNER, ESQ. |
| | | ANJALI S. SAKARIA, ESQ. |
| 3 | | Keker & Van Nest, LLP |
| | | 710 Sansome Street |
| | | San Francisco, CA 94111-1704 |
| 4 | | and |
| | | MELANIE D. COATES, ESQ. |
| 5 | | Wilmer Cutler Pickering Hale and Dorr LLP |
| 6 | | 1600 Tysons Boulevard, Suite 1000 |
| | | McLean, VA 22102 |
| 7 | | and |
| | | MICHAEL S. KWUN, ESQ. |
| 8 | | Google |
| | | 1600 Amphitheatre |
| 9 | | Mountain View, CA 94043 |
| 10 | | |
| | ALSO PRESENT: | RHONDA L. ANDREW |
| 11 | | DAVID GORDON |
| 12 | | |
| | OFFICIAL COURT REPORTER: | ANNELIESE J. THOMSON, RDR, CRR |
| 13 | | U.S. District Court, Fifth Floor |
| | | 401 Courthouse Square |
| 14 | | Alexandria, VA 22314 |
| | | (703)299-8595 |

271

1                        P R O C E E D I N G S
2              THE COURT:  Good morning, counsel.
3              MR. OSSOLA:  Good morning, Your Honor.

Page 2

geico1215.txt
25 that's already been submitted on the papers beyond that which is

278

1 presented in open court.
2         THE COURT:  That's fine.  And just for the record,
3 because this case went in in a somewhat -- the plaintiff's case
4 has gone in in a somewhat unusual fashion, for any appellate
5 purposes if that were to be necessary, we need to clear up what
6 exhibits are actually in evidence.
7         In particular, Mr. Page, you referred to several of your
8 exhibits during the course of the plaintiff's case.  I believe I
9 have every one of those recorded, but we would just need to make
10 sure that that's done, and you should check with Ms. Travers if
11 there's any question about that.  All right?
12         MR. OSSOLA:  Yes, Your Honor.
13         THE COURT:  All right.  Mr. Page?
14         MR. PAGE:  Your Honor, at this time, Google would like
15 to move for judgment as a matter of law in this case.
16         THE COURT:  All right, sir.
17         MR. PAGE:  At the opening of this case, I said that the
18 Court would be able to dispose of this case before hearing
19 testimony on damages.  That got a bit of a laugh, but I was quite
20 serious.  Now that the Court has heard plaintiff's case, we
21 believe you can rule in Google's favor as a matter of law.
22         On the key issue in this case, whether the use of
23 trademarks as keywords violates the Lanham Act, GEICO's own
24 evidence proves Google's case.  To the extent users are confused
25 at all, that confusion comes from either the use of GEICO's

279

Page 9

geico1215.txt
1  trademark in the text of the sponsored link or from the natural
2  and nonactionable assumption that any site that offers to compare
3  insurance rates will likely include GEICO.
4           It's important to note this assumption is only wrong
5  because GEICO as a business decision has chosen to make it wrong.
6  That's their choice.  As you heard from their witnesses, it's an
7  integral part of their business strategy to sell only direct to
8  customers and not to allow other companies to quote rates that may
9  not be accurate.
10          It's a perfectly legitimate strategy and, combined with
11 a great marketing campaign, has resulted in a remarkable success
12 story.  That's their choice, but Google cannot be liable for
13 confusion that's a natural result of that business strategy.
14          What GEICO's evidence shows is that the use of
15 trademarks as keywords does not itself create confusion.  As they
16 bear the burden of proof on this point, that's the end of the
17 analysis.
18          If the Court were to deny this motion, this afternoon or
19 tomorrow you would hear from Google's survey expert, Dr. Jacoby,
20 whose own survey clearly establishes the same point.  When
21 respondents enter the word "GEICO" as a search term and are
22 presented with sponsored links that offer car insurance quotes,
23 some of them say yes when asked if they think they can get
24 information about GEICO there, but they also say yes at a
25 frequency that is actually slightly higher when asked the same

                                                              280


1  question about Allstate, even though "Allstate" appears nowhere on
2  the search term, the organic results, or on the sponsored links.
3           So on the question of whether the use of trademarks as

geico1215.txt

4  keywords violates the Lanham Act, the answer is clearly no.
5           Turning to the question of GEICO's mark in the text of
6  ads and whether that gives rise to confusion, we believe that the
7  flaws in GEICO's survey, which is their only evidence on this
8  point, mandate a finding as a matter of law in Google's favor, but
9  the Court need not throw out that evidence in order to rule in our
10 favor.  As GEICO concedes, such use is already banned by Google's
11 trademark policy, and Google vigorously enforces that policy.
12          GEICO has told you that nonetheless, some ads
13 occasionally slip through, although they have presented no
14 evidence of how often that occurs, but as I noted in opening
15 argument, the inability to achieve perfect enforcement of that
16 policy does not give rise to contributory liability.  In order to
17 prevail on that claim, GEICO would have to establish far more:
18 that Google affirmatively encouraged or knowingly assisted in a
19 violation of trademark law by the alleged infringers.
20          There's no such evidence before the Court because Google
21 does not condone or encourage infringement.  Quite to the
22 contrary, we were the first search engine to implement a trademark
23 enforcement policy, both because it is the right thing to do and
24 because it makes business sense.
25          Trademark owners are our own customers on the

281

1  advertising side, just as the users are our customers on the
2  search side.  Thus, we carefully balance the dual goals of
3  protecting trademark rights on the one hand with providing our
4  users with the most complete and relevant information possible on
5  the other hand.
6           We believe that our current trademark policy strikes
7  exactly the correct balance, neither over- nor under-protecting

geico1215.txt

8  trademark rights.  Therefore, we ask that the Court enter judgment
9  as a matter of law in Google's favor.  Thank you.
10         THE COURT:  All right, thank you.
11         Mr. Ossola?
12         MR. OSSOLA:  Your Honor, good morning.  Mr. Page starts
13  out by describing the issue that he believes there's a failure of
14  proof with respect to as a matter of law as whether the use of
15  keywords -- whether the use of trademarks as keywords in and of
16  itself gives rise to a likelihood of confusion and claims that
17  GEICO has failed to establish that proposition, but I would submit
18  to you that that is not the proposition that GEICO is advancing in
19  this case.
20         The claim of infringement, the claim of likelihood of
21  confusion is one that is based on the sponsored links that result
22  from under Google's system the user's entry of the search term
23  "GEICO," and it is the relationship between the search term and
24  those sponsored listings that gives rise to the likelihood of
25  confusion.

                                                                  282


1          One cannot in our view view -- look at the question of
2  the use of "GEICO" as a keyword by itself as presenting the real
3  question to be decided based on the evidence presented in this
4  case.
5          And as we have attempted to make clear, it is the two
6  categories of sponsored listings that at least thus far are
7  generated by GEICO as a keyword that gives rise to the likelihood
8  of confusion.  One of those categories is the bulk of the
9  sponsored listings that the searches that we have put into
10 evidence demonstrates, and that is those that include "GEICO" in

Page 12

geico1215.txt

11  the text, the title or heading of the sponsored listing.
12           As to that category of sponsored listings, as we said in
13  our opening statement, it seems to me that there is a complete
14  sufficiency of proof, particularly when there is no proof to the
15  contrary that will be offered by Google to conclude that there is
16  a likelihood of confusion, and I say that for two reasons.
17           One is simply by looking at the searches themselves that
18  had -- that establish a connection between a search term and a
19  sponsored listing.  Secondly, Dr. Ford's survey, if it proves
20  nothing else, certainly establishes based on the sponsored
21  listings that he tested, both that included the "GEICO" as a
22  search term and the one that did not, that there is an
23  overwhelming likelihood of confusion that is associated with
24  sponsored listings that include the trademark in the text.
25           That is something that's established by his survey.

                                                                    283

1   It's established by the other evidence submitted, the searches
2   themselves, and particularly given the evidence that came in with
3   respect to GEICO's focal point of its advertising of its business
4   on GEICO as a, a trademark that is used to prompt potential
5   customers to search for a rate quote from GEICO, the fact that a
6   GEICO rate quote cannot be found, the evidence shows, from any
7   site other than GEICO's, and the fact that a consumer would be
8   misled into believing that a third-party source that is offering a
9   comparison of rate quotes that either refers to GEICO specifically
10  or does not refer to GEICO specifically suggests to the consumer
11  that they can find a rate quote from GEICO at those sites, and
12  it's clear, I think, from the evidence that they cannot and that
13  those ads are inherently misleading.
14           Now, Mr. Page refers to the fact that Google already --

geico1215.txt
15  in its policy already provides that sponsored listings that have
16  the trademark in the text should not be displayed, and as we
17  pointed out, that has always been the case under Google's policy.
18  Its policy did not change with respect to that.
19           And I think the evidence is clear that that has
20  happened.  It has continued to happen, and despite the policy, the
21  reality is that those sponsored listings have been displayed
22  despite the objection of GEICO, and in evidence are those
23  objections, in evidence are the numerous instances in which
24  sponsored listings containing the search term "GEICO" continued to
25  appear.

                                                                 284


1            So far from slipping through, it seems to me that the
2   bulk of the search terms that are in evidence establish that those
3   are the type of categories of listings, that is, with "GEICO" in
4   the title, that have, in fact, occurred in the marketplace and, we
5   believe, clearly give rise to a likelihood of confusion.
6            With respect to the question of whether Dr. Ford's
7   survey establishes a likelihood of confusion as to those sponsored
8   listings that do not have "GEICO" in the title, we submit that
9   Dr. Ford's survey is sufficient to prove that proposition.  He
10  did, in fact, test both sponsored listings that include and do not
11  include "GEICO" in the text.  The result -- the respondents in the
12  survey were asked independently to react to each of those five
13  sponsored listings.
14           The evidence shows that the responses with respect to a
15  source affiliation were not appreciably different among those
16  respondents.  There was a slight dimunition in the level of
17  confusion associated with the fifth sponsored link, but it's still

```
                                   geico1215.txt
18   in excess of 50 percent.
19              So we believe that the evidence clearly establishes that
20   there is a likelihood of confusion based both upon the use of
21   "GEICO" in the text, and in this case, given the fact that "GEICO"
22   is a mark associated with rate quotes, that it is also sufficient
23   to establish a likelihood of confusion with respect to those
24   sponsored listings that do not contain "GEICO" in the text.
25              Thank you, Your Honor.
```

                                                                       285


```
1               THE COURT: All right. Well, since this is a bench
2    trial, I could be wrong, but I'm going to assume that this motion
3    is raised under rule 52(c). I think that's the right rule.
4               MR. PAGE: That is correct, Your Honor.
5               THE COURT: And what the Court is being called upon to
6    do at this point in the trial is to evaluate the strength of the
7    plaintiff's evidence to see whether or not the case should go
8    forward on any or all of the issues in this case, and having
9    carefully considered the plaintiff's case, the Court is going to
10   grant in part and deny in part the defendant's motion.
11              As we all know, there are five essential elements to a
12   Lanham Act claim. First, the plaintiff must establish that it
13   possesses a mark that is protectable, and of course, that's not an
14   issue in this case. "GEICO" clearly is.
15              The remaining elements require basically a focus on what
16   the defendant does. Question No. -- the second element is that
17   the defendant uses the mark; three, that the defendant's use of
18   the mark in commerce; four, that the defendant's use of the mark
19   is in connection with the sale, offering for sale, distribution,
20   or advertising of goods and services; and fifth and what has in my
21   mind been the key issue in why I could not grant summary judgment
                                   Page 15
```

geico1215.txt

22  initially in this case or grant the motion to dismiss that was
23  previously filed was that the use of the mark is done in a manner
24  that's likely to cause confusion.
25           Having heard the plaintiff's case, the Court is

286

1   satisfied that the plaintiff has not established that the mere use
2   of its trademark by Google as a search word or keyword or even
3   using it in their AdWord program standing alone violates the
4   Lanham Act because that activity in and of itself, there's no
5   evidence that that activity standing alone causes confusion.
6           The Court also finds that there was insufficient
7   evidence presented in the plaintiff's case to let this case go
8   forward on the question of whether Google violated the Lanham Act
9   after it barred -- or after it began to bar the use of the GEICO
10  mark from either the titles or the text of the sponsored ads that
11  appear as a result of use of the AdWord program.
12          And the reason I find insufficient evidence of that, as
13  we sort of -- I sort of indicated during the testimony of
14  Dr. Ford's, is that, frankly, Dr. Ford either wasn't asked or
15  chose not to actually query that particular issue because the
16  survey focused on either ads that had "GEICO" in the title -- I
17  mean, the page that people were looking at had five sponsored ads,
18  the first four of which had "GEICO" either in the title and/or in
19  the text.  The fifth one did not, but it was on a page that had
20  the four previous sponsored links.
21          The test -- the control in this case used Nike, but what
22  I don't feel was presented to the Court that needed to be
23  presented to the Court would have been ads of insurance that did
24  not have "GEICO" in it, and I was not satisfied therefore that the

Page 16

geico1215.txt

25   plaintiff's evidence was sufficient.

287

1            However, as to the narrow issue of whether the plaintiff
2   has presented sufficient evidence at this point to let the case
3   continue on the issue of whether Google is liable for violating
4   the Lanham Act for those sponsored ads using GEICO's name in
5   either the title or the text that appear next to a -- and a GEICO
6   organic listing as a result of the AdWord program, at this point,
7   there has been enough evidence of confusion as a result of
8   Dr. Ford's report to deny the motion and to allow the case to
9   continue so the Court can consider the defendant's evidence as to
10  whether or not this situation creates a likelihood of confusion in
11  the marketplace and, if so, what damages might be appropriate.
12           Now, counsel, is my ruling clear, and any questions
13  about what I have just done?
14           MR. OSSOLA:  Your Honor, I have just one.
15           THE COURT:  Yes.
16           MR. OSSOLA:  You made reference to the -- what you
17  believed to be the insufficiency of evidence after Google began to
18  bar the use of the trademark in the sponsored link.  I think
19  that's what you said.  I just want to make clear that Google has
20  always barred --
21           THE COURT:  And I should clarify that.  I realize that,
22  but in this particular case, they -- I meant to confine that to
23  the facts of this case; that is, I didn't mean to suggest that
24  Google did not have that policy in place, but the reality was that
25  we do have evidence that there were -- "GEICO" was being used in

288

geico1215.txt
1   titles and in text until Google was advised to stop that, and then
2   following its own policy, it implemented that policy.
3           MR. OSSOLA:  I understand.
4           THE COURT:  All right.
5           MR. OSSOLA:  But the insufficiency evidence on that
6   point is that with respect to those sponsored listings that do not
7   have "GEICO" in the text or heading of the ad, as to those -- that
8   category of sponsored listings, the Court is finding that there is
9   not sufficient evidence of likelihood of confusion.
10          THE COURT:  In this case.
11          MR. OSSOLA:  In this case.
12          THE COURT:  Correct.
13          MR. OSSOLA:  Thank you.
14          THE COURT:  All right?
15          Mr. Page, was there anything you needed clarified?
16          MR. PAGE:  No, I think that covers it, Your Honor.
17          THE COURT:  All right.  Now, I think as we all know,
18  there's serious legal issues that are involved in this decision
19  that I've just rendered, in particular, the status of how
20  trademarks as used in keywords, etc., and I think I would like
21  time to write a more detailed opinion on these legal issues, and
22  so depending upon how you-all want to proceed, as you know, I've
23  also been encouraging you to see if you can resolve the case, and
24  I've given you now some very clear parameters as to how the case
25  would continue.

289

1           Unless there's any objection, what I propose is that we
2   terminate the trial at this point, I don't mean end it, but stop
3   right now what we're doing to give the Court a brief amount of

geico1215.txt
4  time, which given the holiday season might be two or three weeks,
5  although we're going to try to do it sooner than that, to get a
6  written opinion out on this ruling, consistent with this ruling,
7  and to allow you-all the opportunity to see whether or not there
8  can be a resolution of what is left in the case.
9           Does that meet with all of your approval?
10          MR. PAGE:  Yes, Your Honor, that would be fine.
11          MR. OSSOLA:  Yes, Your Honor.
12          THE COURT:  All right.  Now, I'm not going to set
13 another date at this point for when we would start up Round 2 if
14 that becomes necessary.  We'll get the opinion out as quickly as
15 possible, and then you can get back to me as to how you want to
16 proceed.
17          In the meantime, since this courtroom is not going to be
18 used again until January 3, and I'm hoping we have it resolved by
19 then, you can if you want leave your exhibits up here.  If the
20 case ultimately has been resolved, then there's no need for any of
21 the exhibits to stay at the courthouse, and we'll ask you to come
22 and get them.
23          If the case goes on to the, what I would call the second
24 phase, then obviously, we'll need to get the appellate record
25 cleaned up in terms of just what exhibits are in or out.  All

                                                              290


1  right?
2           MR. OSSOLA:  Yes.
3           THE COURT:  Anything further we need to address at this
4  point?
5           MR. OSSOLA:  Your Honor, just the second phase, if we
6  get there, would be -- would include damages as well; is that
7  correct?
                         Page 19

geico1215.txt

8          THE COURT: Yes. It would be the defendant's
9  opportunity to rebut liability, and obviously, if I were to find
10 that as a matter of law there was no issue left on liability and
11 find in the defendant's favor, then we wouldn't have to have a
12 damages phase, but if I find liability, then there would be a
13 damages phase. All right?
14          MR. OSSOLA: What's been established to date then is
15 that the category of sponsored listings that have "GEICO" in the
16 title and text are -- have been found to be confusing and
17 misleading under the Lanham Act?
18          THE COURT: No. I have found that you've presented
19 enough evidence at this point to avoid a motion for judgment as a
20 matter of law. In other words, there certainly is a prima facie
21 case that you've established that they are confusing based on
22 Dr. Ford's survey.
23          Now, I haven't heard the rebuttal evidence, so I'm not
24 making a specific finding on that. I'm at this point weighing the
25 quality of the evidence, the amount of evidence. You've presented

291

1  enough to let the case go forward.
2          MR. OSSOLA: Thank you, Your Honor.
3          THE COURT: All right?
4          MR. PAGE: Thank you, Your Honor.
5          THE COURT: All right? And, counsel, that one piece of
6  paper that was on each of your chairs was a joke. It was not
7  serious. But we happened to see it and thought it was
8  appropriate.
9          All right, I wish you-all a happy holiday, and we'll get
10 back to you as quickly as possible.

geico1215.txt

11        We'll recess court for the day.
12        MR. OSSOLA: Thank you, Your Honor.
13        MR. PAGE: Thank you, Your Honor.
14        (Recess from 10:31 a.m., until 11:09 a.m.)
15        THE COURT: All right, for the record, Mr. Ossola has
16   brought to the Court's attention the following matter: My
17   understanding, Mr. Ossola, is that your view of the defendant's
18   evidence is that Google will not be able to offer any evidence to
19   counter GEICO's evidence that those sponsored sites that contain
20   "GEICO" either in their title or in their text that have been at
21   issue in this case are confusing. Is that correct?
22        MR. OSSOLA: That's correct, Your Honor.
23        THE COURT: And it's my understanding that, what, the
24   expert -- is it Dr. Jacoby, Mr. Page? Whose report would have --
25        MR. PAGE: That's correct. It would be Dr. Jacoby's

292

1   report. Mr. Ossola is correct. Our survey addressed Google's
2   current policy, so the sponsored links that we tested do not
3   contain the word "GEICO." We were testing the keyword issue.
4        THE COURT: All right.
5        MR. PAGE: So Dr. Jacoby's survey says nothing either
6   way as to whether a link with GEICO is confusing.
7        THE COURT: All right. Then the Court should have
8   clarified its earlier -- well, it couldn't clarify -- should have
9   said in its earlier ruling and says now in response to your motion
10  that the evidence before this Court does establish that those
11  sponsored sites that contain "GEICO" either in the title or in the
12  text are likely to confuse for purposes of the Lanham Act
13  requirements, and therefore, to the extent that the defendant's
14  motion was based on that issue, that will also be denied.

Page 21

geico1215.txt

15       And that reduces the issues that would have to go
16  forward were there -- if there is a second phase to this trial.
17  The sole issues that would remain -- and correct me if I'm
18  wrong -- are, No. 1, whether or not Google is liable for any
19  Lanham Act violation based upon those sponsored sites, and 2, if
20  Google were liable, then what damages would be appropriate.
21       Now, is that a correct phrasing from your standpoints as
22  to what would be left in this case?
23       MR. PAGE:  That is correct, Your Honor.  The issue that
24  will remain is, is since the Court has found a likelihood of
25  confusion for ads that have "GEICO" in them, the question is

                                                               293


1   whether Google is contributorily liable or whether only the
2   advertiser would be liable.
3        THE COURT:  Well, actually, because the advertisers are
4   not in this case, the only question before us would be whether or
5   not Google is liable.
6        MR. PAGE:  That's correct, Your Honor.
7        THE COURT:  Right.  Mr. Ossola?
8        MR. OSSOLA:  I believe that's right.  Under contributory
9   liability or any other theory that may be asserted by GEICO, that
10  remains to be seen.
11       THE COURT:  Correct.
12       MR. OSSOLA:  Phase 2.
13       THE COURT:  So there has been -- just so we're clear for
14  the record, there has been no finding of liability -- there's been
15  no finding that Google is liable at this point.  What we have
16  found, however, is that this particular group of sponsored sites
17  does violate the Lanham Act.

```
                              geico1215.txt
18              MR. OSSOLA:  Yes, Your Honor.
19              THE COURT:  All right?
20              MR. PAGE:  That's correct.
21              THE COURT:  Do you think we need to clarify anything
22   further for the record?
23              MR. OSSOLA:  No, Your Honor, thank you.
24              THE COURT:  All right.  Thank you very much for bringing
25   that to our attention.  We'll recess court once again.
```

                                                                      294


```
 1              (Recess at 11:12 a.m.)
 2
 3                    CERTIFICATE OF THE REPORTER
 4      I certify that the foregoing is a correct transcript of the
 5   record of proceedings in the above-entitled matter.
 6
 7
 8
                                        Anneliese J. Thomson
 9
10
11
12
13
14
15
16
17
18
19
20
21
```