IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED
AUG 2 5 2004
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

GOVERNMENT EMPLOYEES         )
INSURANCE COMPANY,           )
                             )
        Plaintiff,           )
                             )
    v.                       )   1:04cv507 (LMB/TCB)
                             )
GOOGLE, INC., et al.,        )
                             )
        Defendants.          )

## MEMORANDUM OPINION

Before the Court are Motions to Dismiss filed by defendants Google, Inc. ("Google") and Overture Services, Inc. ("Overture"), in which the two defendants move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiff's First Amended Complaint for failure to state a claim. We heard oral argument on August 6, 2004. For the reasons discussed below, the motions will be granted in part and denied in part.

### I. Background

Plaintiff Government Employees Insurance Company ("GEICO") brings an eight-count complaint against defendants Google and Overture based on defendants' use of GEICO trademarks in selling advertising on defendants' Internet search engines. The first five claims in the complaint[1] allege, respectively, trademark infringement, contributory trademark infringement, vicarious

---

[1] The original Complaint was filed on May 4, 2004. A First Amended Complaint was filed on May 14, 2004. All references to the complaint in this opinion are to the First Amended Complaint.

trademark infringement, false representation, and dilution under the Lanham Act, 15 U.S.C. § 1051 et seq. Claim 6 alleges common law unfair competition, Claim 7 alleges tortious interference with prospective economic advantage, and Claim 8 alleges statutory civil business conspiracy, all under Virginia state law.

As alleged by plaintiff, Google and Overture operate Internet search engines, which are used by consumers to search the World Wide Web for, among other things, Websites offering products and services. The search engines work by comparing search terms entered by the Internet user with databases of Websites maintained by the search engine, generating a results page that lists the Websites matching the search term. A search term may be any term that the user believes may assist her in retrieving the information sought, from a proper name such as Anton Dvorak, a generic term such as "squirrel," or a trademark such as plaintiff's "GEICO" mark. Both Google and Overture also sell advertising linked to search terms, so that when a consumer enters a particular search term, the results page displays not only a list of Websites generated by the search engine program using neutral and objective criteria, but also links to Websites of paid advertisers (listed as "Sponsored Links"). As the holder

of trademark rights to marks incorporating the term "GEICO,"[2] plaintiff alleges that defendants' practice of selling advertising linked to the trademarks directly violates the Lanham Act, contributes to third parties violating the Act, and also constitutes various state law torts.

Defendants move to dismiss, arguing that the practices alleged by GEICO in the complaint do not violate the Lanham Act as a matter of law, and that the state law claims are indequately pled.

## II. Analysis

A complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true ... it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). In considering defendants' motions to dismiss, the Court accepts as true all of GEICO's factual allegations. See Papasan v. Allain, 478 U.S. 265, 286 (1986).

### A. Lanham Act claims

A plaintiff alleging causes of action for trademark infringement and unfair competition must show 1) that it

---

[2] The complaint alleges that plaintiff has obtained federal trademark registration for "GEICO" and "GEICO DIRECT."

3

possesses a mark; 2) that the defendant used the mark; 3) that the defendant's use of the mark occurred "in commerce"; 4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and 5) that the defendant used the mark in a manner likely to confuse customers. 15 U.S.C. §§ 1114, 1125(a); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001) (internal quotations omitted).[3]

1. Trademark use

Defendants argue that the facts alleged by plaintiff do not establish the third and fourth prongs of a Lanham Act cause of action. Specifically, defendants argue that the complaint fails to alleges facts supporting a claim that defendants use the marks "in commerce" and "in connection with the sale, offering for sale, distribution, or advertising of goods and services" (hereinafter "trademark use"), because the complaint does not allege that defendants used plaintiff's trademarks in a way that identifies the user as the source of a product or indicates the endorsement of the mark owner. Defendants further argue that because they only use the trademarks in their internal computer

---

[3] The elements of trademark infringement and unfair competition under the Lanham Act are identical to the elements of unfair competition under Virginia state law. See Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 930 n. 10 (4th Cir. 1995). Accordingly, our discussion of the Lanham Act claims applies equally to Claim 6, plaintiff's claim of common law unfair competition.

4

algorithms to determine which advertisements to show, this use of the trademarks never appears to the user. Therefore, the user cannot be confused as to the origin of goods.

Defendants support their argument as to the legal meaning of trademark use with cases that have found the use of trademarks by software companies to generate pop-up Internet advertisements not to constitute "trademark use" of those marks under the Lanham Act. Those cases are based on a finding that the marks were not used by the company making the pop-up software to identify the source of its goods or services. See U-Haul Int'l, Inc. v. WhenU.com, Inc., 279 F.Supp.2d 723, 727 (E.D.Va. 2003); Wells Fargo & Co. v. WhenU.com, Inc., 293 F.Supp.2d 734, 762 (E.D.Mich. 2003). In U-Haul, the court held that WhenU, the pop-up software company, did not place the U-Haul trademarks in commerce, it merely used them for a "pure machine-linking function." Defendants also rely upon Interactive Products Corp. v. a2z Mobile Office Solutions, 326 F.3d 687, 695 (6th Cir. 2003), which held that the use of a trademark within a longer Web address did not constitute a trademark use under the infringement test, distinguishing such a use from use of a trademark in the domain name itself. In Interactive, the trademark at issue was "LapTraveler," and the allegedly infringing address was "a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm." The court held that such use of the trademark was a purely technical

5

use, rather than a "trademark use." However, if the trademark had been used in the heart of the domain name, for example as "www.laptraveler.com," the use would be a "trademark use," and could be infringing.

Plaintiff focuses on cases which have reached the opposite conclusion. In <u>1-800 Contacts, Inc. v. WhenU.com</u>, 309 F.Supp.2d 467 (S.D.N.Y. 2003), on facts identical to those found in the <u>U-Haul</u> and <u>Wells Fargo</u> cases, the court found that WhenU was making "trademark use" of the plaintiff's trademark in two ways – by using plaintiff's mark in the advertising of competitor's Websites, and by including plaintiff's mark in the directory of terms that triggers pop-up advertisements. Similarly, on facts nearly identical to the facts pled by GEICO, the Ninth Circuit held that the use of plaintiff's trademarks as advertising keywords by the Netscape and Excite search engines potentially created the likelihood of confusion, and the court found no dispute that the defendants used the marks in commerce. <u>Playboy Enterprises, Inc. v. Netscape Comm. Corp.</u>, 354 F.3d 1020, 1024 (9th Cir. 2004). In the Fourth Circuit's <u>PETA</u> decision, it specifically rejected the argument that the defendant's use of the PETA trademark in a domain name was not in connection with goods and services: "[the defendant] need only have prevented users from obtaining or using PETA's goods or services, or need only have connected the website to other's goods or services."

263 F.3d at 365. Similarly, courts have found that the use of trademarks in "metatags," which are invisible text within Websites that are used by search engines for indexing, constitute a use in commerce under the Lanham Act. See Bihari v. Gross, 119 F.Supp.2d 309 (S.D.N.Y. 2000); Playboy Enterprises, Inc. v. AsiaFocus Int'l, Inc., 1998 WL 724000 (E.D.Va. Apr. 10, 1998).

Of the two lines of cases cited by the parties, the Court finds that plaintiff's authorities are better reasoned. Under those cases, as well as an unstrained reading of the complaint, the Court finds that plaintiff has pled sufficient facts which, taken as true for purposes of this motion, allege "trademark use." Contrary to defendants' argument, the complaint is addressed to more than the defendants' use of the trademarks in their internal computer coding. The complaint clearly alleges that defendants use plaintiff's trademarks to sell advertising, and then link that advertising to results of searches.[4] Those links appear to the user as "sponsored links." Thus, a fair reading of the complaint reveals that plaintiff alleges that defendants have unlawfully used its trademarks by allowing advertisers to bid on the trademarks and pay defendants to be linked to the trademarks.

---

[4] As plaintiff pointed out during oral argument, defendants' narrow approach to the complaint also misses plaintiff's allegations of contributory and vicarious infringement.

7

Under the analysis in PETA, defendants' offer of plaintiff's trademarks for use in advertising could falsely identify a business relationship or licensing agreement between defendants and the trademark holder. In other words, when defendants sell the rights to link advertising to plaintiff's trademarks, defendants are using the trademarks in commerce in a way that may imply that defendants have permission from the trademark holder to do so. This is a critical distinction from the U-Haul case, because in that case the only "trademark use" alleged was the use of the trademark in the pop-up software – the internal computer coding. WhenU allowed advertisers to bid on broad categories of terms that included the trademarks, but did not market the protected marks themselves as keywords to which advertisers could directly purchase rights.

Plaintiff further alleges that under theories of contributory and vicarious liability, defendants are liable when the advertisers themselves make "trademark use" of the GEICO marks by incorporating them into the advertisements, which are likely to deceive customers into believing that the advertisers provide accurate information about GEICO products or are somehow related to GEICO. Plaintiff also alleges that defendants exercise significant control over the content of advertisements that appear on their search results pages, and accordingly defendants are liable for Lanham Act violations by the

8

advertisers. Accepting as true the facts alleged by plaintiff regarding the inclusion of the marks in advertisements and defendants' overall control of their advertising program, we find that plaintiffs have alleged facts sufficient to support their claims that advertisers make a "trademark use" of GEICO's marks, and that defendants may be liable for such "trademark use."

Accordingly, we find that plaintiff has sufficiently alleged that defendants used plaintiff's protected marks in commerce. This decision does not necessarily mean that defendants' use of plaintiff's trademarks violates either the Lanham Act or Virginia common law of unfair competition. That decision cannot be reached until discovery has been completed. "[W]here keyword placement of ... advertising is being sold, the portals and search engines are taking advantage of the drawing power and goodwill of these famous marks. The question is whether this activity is fair competition or whether it is a form of unfair free riding on the fame of well-known marks." J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:70.1 (2004). Whether defendants' uses are legitimate fair uses of the trademarks in competition, and whether they create a likelihood of confusion, are fact-specific issues not properly resolved through a motion to dismiss.

9

2. <u>Other Lanham Act issues</u>

Although "trademark use" is the primary issue advanced by defendants in their motions to dismiss, they also argue that plaintiff has failed to plead other elements necessary to support various Lanham Act counts. For example, Google argues for dismissal of the contributory trademark infringement claim because the third-party advertisers did not make "use in commerce" of the GEICO trademarks. That argument has no merit. GEICO has alleged that the advertisers made "use in commerce" of the trademarks by using the marks as source identifiers in the advertising links posted on Google's search results page. This is sufficient to state a claim for contributory trademark infringement.

Overture argues for dismissal of the contributory infringement count on the grounds that GEICO has not pled either intentional inducement to infringe, or that defendant continued to supply a product while having actual or constructive knowledge of infringement. <u>Inwood Labs, Inc. v. Ives Labs, Inc.</u>, 456 U.S. 844, 854 (1982). GEICO has alleged that Overture encourages advertisers to bid on trademarked words, and monitors and controls the allegedly infringing third-party advertisements. Although Overture argues that its monitoring is intended to prevent, not encourage, trademark infringement, that argument raises a disputed fact that cannot be resolved by a motion to

dismiss. The claim that Overture monitors and controls the third-party advertisements is sufficient to plead the actual or constructive knowledge required to allege contributory infringement. Size v. Network Solutions, Inc., 255 F.Supp.2d 568, 573 (E.D.Va. 2003) (Brinkema, J.), citing Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999).

As to the vicarious liability claims, Google again relies on its argument that the complaint does not adequately allege that the third-party advertisers "use in commerce" GEICO trademarks, an argument which we reject for the reasons discussed above. Accordingly, GEICO has stated a claim for vicarious trademark infringement against Google. Overture argues that GEICO has not pled that Overture and the third-party advertisers have a principal-agent relationship, required for vicarious trademark infringement. Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678 (D.Md. 2001). GEICO argues that a principal-agent relationship is only one example of a relationship that can give rise to vicarious liability, and that vicarious liability can also occur if the defendant and the infringer "exercise joint ownership and control over the infringing product." Hard Rock Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143, 1150 (7th Cir. 1992). Because GEICO has alleged that both Overture and the advertisers control the appearance of the advertisements on Overture's search results page and the use of GEICO trademarks

11

therein, plaintiff has stated a claim for vicarious infringement against Overture.

B. State law claims

Defendants' motions to dismiss the state law claims have more merit. As to Claim 7 (tortious interference with prospective economic advantage), Overture correctly argues that Virginia law requires that a plaintiff plead a specific prospective economic advantage or business expectancy, and that a general expectancy that consumers will purchase insurance from the GEICO Website, which is all that plaintiff has alleged, does not suffice. "The evidence of an expectancy must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction." Moore v. United Int'l Investigative Services, Inc., 209 F.Supp.2d 611, 619-20 (E.D.Va. 2002); see also Masco Contractor Services East, Inc. v. Beals, 279 F.Supp.2d 699 (E.D.Va. 2003) (cause of action provides a legal remedy for interference with a "particular party's *specific, existing* contract or business expectancy" (emphasis in original)). Because GEICO's allegations are too broad and conclusory to plead a specific, existing contract or expectancy with a specific party, plaintiff's claim for tortious

12

interference with prospective economic advantage will be dismissed.[5]

A similar failing dooms plaintiff's claim of statutory business conspiracy. Under Va. Code § 18.2-499, a business conspiracy cause of action arises when two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." However, business conspiracy, like fraud, must be pleaded with particularity, and with more than "mere conclusory language." Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F.Supp.2d 483, 499 (E.D.Va. 2003). The heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim.

Claim 8 alleges that "[d]efendants have made agreements with and mutually undertaken with third parties for the purposes of willfully and maliciously injuring GEICO in its trade and/or business. Defendants and/or such third parties entered into their conspiracies intentionally, purposefully, and without lawful justification." Although Claim 8 incorporates all the

---

[5] Having determined that Claim 7 should be dismissed under Rule 12(b)(6), we do not reach the issue of whether defendants enjoy immunity from such a claim pursuant to Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which grants immunity to computer service providers from claims arising from information originated by a third party user of the service.

13

facts alleged in the complaint, these facts are not sufficiently specific to support the conclusory language that the parties entered into an agreement with the purpose of injuring GEICO in its business. At best, Claim 8 alleges that the defendants had agreements to sell advertising to GEICO's competitors. None of the facts pled support a claim that defendants were entering into the advertising agreements with the intent to injure GEICO maliciously. Accordingly, plaintiff's claim for statutory business conspiracy will also be dismissed.

III. Conclusion

For the reasons discussed above, defendants' Motions to Dismiss will be granted in part and denied in part. The motions will be granted as to the state law claims of tortious interference with prospective business advantage and statutory business conspiracy (Claims 7 and 8), and denied as to all Lanham Act claims and the state law claim of unfair competition. An appropriate Order will issue.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 25th day of August, 2004.

/s/ Leonie M. Brinkema
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia