# EXHIBIT B

Dockets.Justia.com

RECEIVED

JUN 1 0 2005

1  Robert N. Phillips (SBN 120970)
    Ethan B. Andelman (SBN 209101)
2  HOWREY, LLP
    525 Market Street, Suite 3600
3  San Francisco, CA  94105
    Telephone:  (415) 848-4900
4  Facsimile:   (415) 848-4999

5  David A. Rammelt (Admitted *Pro Hac Vice*)
    Susan J. Greenspon (Admitted *Pro Hac Vice*)
6  Dawn M. Beery (Admitted *Pro Hac Vice*)
    KELLEY DRYE & WARREN LLP
7  333 West Wacker Drive, Suite 2600
    Chicago, IL  60606
8  Telephone:  (312) 857-7070
    Facsimile:   (312) 857-7095

9

    Attorneys for Defendant/Counter-Plaintiff
10  AMERICAN BLIND AND WALLPAPER
    FACTORY, INC.

11

12           UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA

13  GOOGLE INC., a Delaware corporation,      Case No. C 03-5340-JF (EAI)

14        Plaintiff,

15      v.

16  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation
17  d/b/a decoratetoday.com, Inc.; and DOES 1-
    100, inclusive,
18

19        Defendants.

20  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation
21  d/b/a decoratetoday.com, Inc.,

22        Counter-Plaintiff,

23      v.

24  GOOGLE, INC., AMERICA ONLINE, INC.,
    NETSCAPE COMMUNICATIONS
25  CORPORATION, COMPUSERVE
    INTERACTIVE SERVICES, INC., ASK
26  JEEVES, INC., and EARTHLINK, INC.,

27        Counter-Defendants/

28

**AMERICAN BLIND & WALLPAPER
FACTORY, INC.'S RESPONSES TO
GOOGLE, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS**

American Blind's Responses to Google's First Set of Document Requests
Case No. C03-5340 JF (EAI)
DM_US\8214784.v1

1 | Third-Party Defendants

2

PROPOUNDING PARTY:    PLAINTIFF/COUNTER-DEFENDANT GOOGLE, INC.

3

RESPONDING PARTY:    DEFENDANT/COUNTER-PLAINTIFF AMERICAN BLIND &
4                    WALLPAPER FACTORY, INC.

5 SET NUMBER:        ONE

6        Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind")

7 hereby answers Plaintiff/Counter-Defendant Google, Inc.'s First Set Of Requests For Production Of

8 Documents And Things From American Blind & Wallpaper Factory, Inc. as follows:

9                                    **REQUESTS**

10 **REQUEST NO. 1**:

11        All DOCUMENTS RELATING TO AMERICAN BLIND's selection, adoption and clearance
of each of the AMERICAN BLIND MARKS, including, but not limited to, searches, investigations,
12 reports and opinions.

13 **RESPONSE TO REQUEST NO. 1**:

14        American Blind objects to this request because it is overbroad, unduly burdensome, and not

15 reasonably calculated to lead to the discovery of relevant or admissible evidence.  American Blind also

16 objects to this request to the extent that it calls for the production of documents protected by the

17
   attorney client privilege or the attorney work product doctrine.  Subject to and without waiving these
18
   objections, American Blind states that it will produce any responsive documents in its possession
19
20 regarding the adoption and clearance of each of the American Blind Marks.

21 **REQUEST NO. 2**:

22        All DOCUMENTS demonstrating that AMERICAN BLIND owns the AMERICAN BLIND
   MARKS.
23

24 **RESPONSE TO REQUEST NO. 2**:

        Responsive documents will be produced.
25

26 **REQUEST NO. 3**:

27        All DOCUMENTS RELATING TO AMERICAN BLIND's first commercial use of each of the
   AMERICAN BLIND MARKS.

28                                        -2-

**RESPONSE TO REQUEST NO. 3**:

American Blind objects to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Specifically, Google's request for all documents related to American Blind's first commercial use of the American Blind Marks is overbroad and unduly burdensome. Subject to and without waiving these objections, responsive documents will be produced that illustrate the date of first commercial use of the American Blind Marks.

**REQUEST NO. 4**:

All DOCUMENTS RELATING TO AMERICAN BLIND's first use of each of the AMERICAN BLIND DOMAIN NAMES.

**RESPONSE TO REQUEST NO. 4**:

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Specifically, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain records for each individual domain name, rather information for all domain names owned by American Blind is collected and maintained together. To the extent that this request calls for the production of documents related to all 500 domain names owned by American Blind, it is overbroad and unduly burdensome. Subject to and without waiving these objections, American Blind will produce a listing of domain names owned by American Blind. To the extent that Google wants detailed information on

-3-

1  each of these domain names, that information is publicly available through the Internet at

2  www.enom.com.

3  **REQUEST NO. 5**:

4      Copies of all advertising and promotional materials featuring the AMERICAN BLIND

5  MARKS or AMERICAN BLIND DOMAIN NAMES.

6  **RESPONSE TO REQUEST NO. 5:**

7      American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

8  burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

9  As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

10  Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

11  Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

12  & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

13  of American Blind through which customers may purchase American Blind's products or services."

14

15  American Blind owns approximately 500 Internet domain names, but at present it only actively uses

16  and markets approximately 12 domain names.  Moreover, American Blind does not generally maintain

17  records for each individual domain name, rather information for all domain names owned by American

18  Blind is collected and maintained together.  To the extent that this request calls for the production of

19  documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

20  burdensome.  Moreover, American Blind spends millions of dollars each year advertising the

21  American Blind Marks and domain names, including pervasive advertising in over forty national

22  magazines, on every major search engine, on national television and radio, and through millions of

23  direct mailings and catalogs distributed throughout the United States.  American Blind has advertised

24  the American Blind Marks and domain names since its inception, and this request is not limited in

25  time.  It would be extremely burdensome for American Blind to produce copies of all of its advertising

26

27

28                                   -4-

1  and promotional materials ever created.  Subject to and without waiving these objections, American

2  Blind will produce a sample of its more recent advertising and promotional materials.

3  **REQUEST NO. 6**:

4     All DOCUMENTS RELATING TO AMERICAN BLIND's efforts to defend its trademarks

5  and domain names.

6  **RESPONSE TO REQUEST NO. 6**:

7     Americn Blind objects to this request because it is overbroad, unduly burdensome, and not

8  reasonably calculated to lead to the discovery of relevant or admissible evidence.  As written, this

9  request would require the production of every document submitted in every lawsuit brought by

10  American Blind to defend its trademark rights.  These litigation files are voluminous and are not likely

11  to lead to the discovery of relevant or admissible evidence in this case.  In addition, American Blind

12  objects to this request to the extent that it seeks the production of attorney/client privileged

13  communications.  Subject to and without waiving these objections, American Blind will produce

14  copies of cease and desist letters sent to entities infringing and/or diluting American Blind's

15  trademarks and copies of initial pleadings filed by American Blind seeking to protect its trademark

16  rights.

17  **REQUEST NO. 7**:

18     All business plans, reports, analyses and research RELATING TO the AMERICAN BLIND

19  MARKS and AMERICAN BLIND DOMAIN NAMES, including, but not limited to, strategic plans,

20  forecasts, or projections.

21  **RESPONSE TO REQUEST NO. 7**:

22     American Blind has no documents responsive to this request.

23  **REQUEST NO. 8**:

24     All of AMERICAN BLIND's quarterly and annual audited financial statements and annual

25  reports from 1997 to the present, including all corresponding notes and schedules.

26

27

28                                               -5-

**RESPONSE TO REQUEST NO. 8**:

American Blind objects to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. To the extent that this request calls for the production of notes and schedules to American Blind's audited financial statements, it is overbroad and unduly burdensome. American Blind will produce its annual audited financial statements from 1997 to the present. American Blind states that it does not prepare quarterly audited financial statements.

**REQUEST NO. 9**:

All DOCUMENTS demonstrating AMERICAN BLIND's monthly gross revenues from products and services sold under the AMERICAN BLIND MARKS from the first use of those marks to the present.

**RESPONSE TO REQUEST NO. 9**:

American Blind objects to this request as over broad and unduly burdensome. Revenues from products and services sold under the American Blind Marks is equivalent to total company revenues because virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks. As a result, the quantity of documents demonstrating monthly gross revenues for American Blind is extremely voluminous and would be very burdensome to assemble and produce. In addition, American Blind has been using its Marks since at least 1986 and it would be extremely burdensome, if not impossible, to produce documents relating to monthly gross revenues for such a long time period. Subject to and without waiving these objections, American Blind states that it will produce annual audited financial statements from 1997 to the present.

**REQUEST NO. 10**:

All DOCUMENTS demonstrating AMERICAN BLIND's monthly gross revenues from products and services sold through the AMERICAN BLIND DOMAIN NAMES on a monthly basis from the first use of those domain names to the present.

-6-

1    **RESPONSE TO REQUEST NO. 10**:

2        American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

3    burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

4    As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

5    Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

6    Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

7

8    & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

9    of American Blind through which customers may purchase American Blind's products or services."

10   American Blind owns approximately 500 Internet domain names, but at present it only actively uses

11   and markets approximately 12 domain names.  Moreover, American Blind does not generally maintain

12   records for each individual domain name, rather information for all domain names owned by American

13   Blind is collected and maintained together.  To the extent that this request calls for the production of

14   documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

15   burdensome.  In addition, it is very difficult for American Blind to attempt with accuracy to divide

16

17   and/or separate revenues from or between its Internet domain names and its toll-free telephone

18   numbers.  For example, customers often shop for products on American Blind's website and then call

19   its toll-free number to place an order.  It is unclear from Google's request whether such sales would

20   qualify as made "through the American Blind domain names" or not.  Subject to and without waiving

21   these objections, American Blind states that it will produce annual audited financial statements from

22

23   1997 to the present.

24   **REQUEST NO. 11**:

25       All DOCUMENTS demonstrating AMERICAN BLIND's monthly profits and/or losses for
     products and services sold under the AMERICAN BLIND MARKS from the first use of those marks

26   to the present.

27

28                                        -7-

**RESPONSE TO REQUEST NO. 11**:

American Blind objects to this request as over broad and unduly burdensome. Profits and/or losses from products and services sold under the American Blind Marks is equivalent to total company profits and/or losses because virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks. As a result, the quantity of documents demonstrating monthly profits and/or losses for American Blind is extremely voluminous and would be very burdensome to assemble and produce. In addition, American Blind has been using its Marks since at least 1986, and it would be extremely burdensome, if not impossible, to produce documents relating to monthly profits and/or losses for such a long time period. Subject to and without waiving these objections, American Blind states that it will produce annual audited financial statements from 1997 to the present.

**REQUEST NO. 12**:

All DOCUMENTS demonstrating AMERICAN BLIND's monthly profits and/or losses for products and services sold through the AMERICAN BLIND DOMAIN NAMES on a monthly basis from the first use of those domain names to the present.

**RESPONSE TO REQUEST NO. 12**:

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain

-8-

1  records for each individual domain name, rather information for all domain names owned by American

2  Blind is collected and maintained together.  To the extent that this request calls for the production of

3  documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

4  burdensome.  In addition, it is very difficult for American Blind to attempt with accuracy to divide

5  and/or separate profits and/or losses from or between its Internet domain names and its toll-free

6  telephone numbers.  For example, customers often shop for products on American Blind's website and

7  then call its toll-free number to place an order.  It is unclear from Google's request whether such sales

8  would qualify as made "through the American Blind domain names" or not.  Subject to and without

9  waiving these objections, American Blind states that it will produce annual audited financial

10  statements from 1997 to the present.

11

12  **REQUEST NO. 13**:

13      All DOCUMENTS demonstrating AMERICAN BLIND'S monthly advertising and
14  promotional expenditures for products or services marketed under the AMERICAN BLIND MARKS
    from the first use of those marks to the present.
15

16  **RESPONSE TO REQUEST NO. 13**:

17      Since all of American Blind's products and services are marketed under the American Blind

18  Marks, this request is actually requesting all documents demonstrating American Blind's monthly

19  advertising and promotional expenditures.  American Blind objects to this request because it is vague,

20  ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of

21  relevant or admissible evidence.  As an initial matter, the phrase "advertising and promotional

22  expenditures" is vague and ambiguous because it is unclear what fixed and/or variable expenses

23  qualify in Google's view as "expenditures," nor has Google made any distinction between marketing

24  expenditures and what are properly includable as advertising and promotional expenditures.  In

25  addition, this request is overbroad because American Blind began using its Marks as early as 1986, and

26  it would be too burdensome to produce documents dating from 1986, assuming that they even exist.

27

28

-9-

1    Subject to and without waiving these objections, American Blind states that it will produce documents

2    generally evidencing annual advertising expenditures.

3    **REQUEST NO. 14**:

4    All DOCUMENTS demonstrating AMERICAN BLIND's monthly advertising and

5    promotional expenditures for products and services sold through the AMERICAN BLIND DOMAIN
     NAMES from the first use of those domain names to the present.

6

7    **RESPONSE TO REQUEST NO. 14**:

        American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

8    burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

9    As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

10   Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

11

12   Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

13   & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

14   of American Blind through which customers may purchase American Blind's products or services."

15   American Blind owns approximately 500 Internet domain names, but at present it only actively uses

16   and markets approximately 12 domain names. Moreover, American Blind does not generally maintain

17

18   records for each individual domain name, rather information for all domain names owned by American

19   Blind is collected and maintained together. To the extent that this request calls for the production of

20   documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

21   burdensome. In addition, the phrase "advertising and promotional expenditures" is vague and

22   ambiguous because it is unclear what fixed and/or variable expenses qualify in Google's view as

23   "expenditures," nor has Google made any distinction between marketing expenditures and what are

24

25   properly includable as advertising and promotional expenditures. In addition, this request is overbroad

26   because American Blind began using its domain names many years ago, and it would be too

27   burdensome to produce documents from such a long time ago, assuming that they even exist. Finally,

28                                                    -10-

1   American Blind's advertising expenditures are not necessarily separated to reflect advertising

2   expenditures for products and services sold through the American Blind domain names as opposed to

3   through other channels.  Subject to and without waiving these objections, American Blind states that it

4   will produce documents generally evidencing annual advertising expenditures.

5   **REQUEST NO. 15**:

6       All DOCUMENTS identifying the weekly number of hits received by each of the websites

7   reachable through the AMERICAN BLIND DOMAIN NAMES from the first use of those domain

8   names to the present.

9   **RESPONSE TO REQUEST NO. 15**:

10      American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

11  burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

12  As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

13  Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

14  Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

15  & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

16  of American Blind through which customers may purchase American Blind's products or services."

17  American Blind owns approximately 500 Internet domain names, but at present it only actively uses

18  and markets approximately 12 domain names.  Moreover, American Blind does not generally maintain

19  records of "hits" for each individual domain name; rather information for all domain names owned by

20  American Blind is collected and maintained together.  To the extent that this request calls for the

21  production of documents related to all 500 domain names owned by American Blind, it is overbroad

22  and unduly burdensome.  In addition, American Blind has been using certain of its domain names for

23  many years and this request, which calls for the production of document from the first use of the

24  domain names to the present is overbroad in its time frame.  Finally, this request is vague and

25  ambiguous because it is unclear what exactly Google means by the phrase "number of hits received."

28                                                    -11-

1  **REQUEST NO. 16**:

2      All DOCUMENTS identifying the weekly number of unique users accessing the websites
reachable through the AMERICAN BLIND DOMAIN NAMES from the first use of those domain
3  names to the present.

4  **RESPONSE TO REQUEST NO. 16**:

5      American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

6  burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

7  As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

8  Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of
9

10  Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

11  & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

12  of American Blind through which customers may purchase American Blind's products or services."

13  American Blind owns approximately 500 Internet domain names, but at present it only actively uses

14  and markets approximately 12 domain names. Moreover, American Blind does not generally maintain
15

16  records for each individual domain name; rather information for all domain names owned by American

17  Blind is collected and maintained together. To the extent that this request calls for the production of

18  documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

19  burdensome. In addition, American Blind has been using certain of its domain names for many years

20  and this request, which calls for the production of document from the first use of the domain names to

21  the present is overbroad in its time frame. Finally, this request is vague and ambiguous because it is

22  unclear what exactly Google means by the phrase "unique users." For example, if a consumer visits

23  the American Blind website on Monday and then again on Tuesday, does he/she only constitute one
24

25  unique user for that week? In contrast, if a consumer visits the American Blind website on Friday and

26  then again the following Monday, does he/she constitute a separate unique user for both weeks?

27

28                                                -12-

**REQUEST NO. 17:**

All DOCUMENTS RELATING TO COMMUNICATIONS between AMERICAN BLIND AND GOOGLE.

**RESPONSE TO REQUEST NO. 17:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. American Blind presently is a customer of Google and, therefore, regularly communicates with Google representatives concerning business matters, including but not limited to American Blind's advertising campaign with Google. In addition, this request is overbroad because it is not limited to any definite period of time and American Blind has been doing business with Google for many years. Subject to and without waiving these objections, American Blind will produce electronic communications between American Blind and Google regarding Google's sale of American Blind's trademarks as keywords as part of the AdWords program, as well as monthly invoices received from Google concerning American Blind's participation in Google's AdWords program.

**REQUEST NO. 18:**

All DOCUMENTS RELATING TO COMMUNICATIONS between AMERICAN BLIND and the THIRD-PARTY DEFENDANTS.

**RESPONSE TO REQUEST NO. 18:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. American Blind has communicated with the third-party defendants concerning business matters, including but not limited to potential advertising campaigns, which have no relevance to the current dispute. Subject to and without waiving these objections, American Blind states that it has no documents relating to direct communications with the third-party defendants regarding the sale of American Blind's trademarks as keywords.

-13-

1  **REQUEST NO. 19**:

2      All DOCUMENTS RELATING TO any trademark, servicemark, trade name, Internet domain
   name, or any other application/registration owned by or on behalf of AMERICAN BLIND, through
3  assignment or otherwise, for any name, mark, or designation comprised of or containing the
   AMERICAN BLIND MARKS, or any variation thereof.
4

5  **RESPONSE TO REQUEST NO. 19**:

6      Responsive documents, to the extent that they exist, will be produced.

7  **REQUEST NO. 20**:

8      All DOCUMENTS RELATING TO any research, reports, surveys, investigations, or studies
   conducted by or on behalf of AMERICAN BLIND, relating to consumer or customer perception,
9  understanding or recognition of any name, mark or designation comprised of or containing the
   AMERICAN BLIND MARKS, or any variation thereof.
10

11 **RESPONSE TO REQUEST NO. 20**:

12     American Blind objects to this Interrogatory on the grounds that it is premature given that

13 American Blind has not yet received meaningful discovery responses from Google and has not yet had

14 an opportunity to take any depositions in this case.  American Blind further objects to this

15 Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony

16 prior to the time for disclosure of expert opinions.  American Blind further objects to this request to the

17 extent it calls for the production of documents protected by the attorney/client privilege and/or the

18 attorney work product doctrine.  Subject to and without waiving these objections, American Blind will
19
   produce responsive non-privileged documents, to the extent that they exist, regarding consumer or
20
21 customer perceptions of the American Blind Marks.

22 **REQUEST NO. 21**:

23     All DOCUMENTS RELATING TO GOOGLE or any of the THIRD-PARTY DEFENDANTS.

24 **RESPONSE TO REQUEST NO. 21**:

25     American Blind objects to this request because it is over broad, unduly burdensome, and not

26 reasonably calculated to lead to the discovery of relevant or admissible evidence.  This request is so

27 overbroad as to be without meaning.

28                                                        -14-

**REQUEST NO. 22**:

DOCUMENTS identifying AMERICAN BLIND's corporation structure, including divisions and departments.

**RESPONSE TO REQUEST NO. 22**:

Responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 23**:

DOCUMENTS identifying AMERICAN BLIND's employees and their job descriptions.

**RESPONSE TO REQUEST NO. 23**:

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. American Blind has more than a hundred employees, each with slightly varying job descriptions. To the extent that this request seeks each employee's job description, it is overbroad. Subject to and without waiving these objections, American Blind will produce an employee roster identifying the individuals that presently work for American Blind and the department in which they work.

**REQUEST NO. 24**:

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendant Google actively solicits others to purchase not only American Blind's registered and unregistered trademarks, but also virtually every conceivable iteration of these marks."

**RESPONSE TO REQUEST NO. 24**:

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving this objection, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors. Discovery and investigation continue and this response may be supplemented as required.

-15-

**REQUEST NO. 25:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants have deliberately manipulated their search engine 'results' so that, when consumers use these search engines to find American Blind's products and services, the consumers are unwittingly diverted to competitors' products and services."

**RESPONSE TO REQUEST NO. 25:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine.. Subject to and without waiving this objection, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors. Discovery and investigation continue and this response may be supplemented as required.

**REQUEST NO. 26:**

All DOCUMENTS RELATING TO AMERICAN BLIND's contention that "the American Blind Marks have acquired an outstanding celebrity as a source of quality home decorating products and related services."

**RESPONSE TO REQUEST NO. 26:**

American Blind objects to this request because it is overbroad and unduly burdensome because it would require the production of all of American Blind's advertising, marketing, and promotional materials. American Blind further objects to this request on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 27:**

All DOCUMENTS RELATING TO AMERICAN BLIND's contention that "[t]he public has used and now uses the American Blind Marks to identify American Blind and its home decorating

-16-

1  products and related services from the home decorating products and related services offered by

2  others[.]"

**RESPONSE TO REQUEST NO. 27:**

3

4      American Blind objects to this request because it is overbroad and unduly burdensome because

5  it would require the production of all of American Blind's advertising, marketing, and promotional

6  materials.  American Blind further objects to this request on the ground that it seeks information that

7  will likely be the subject of expert testimony prior to the time for disclosure of expert opinions.

8  American Blind objects to this request to the extent it calls for the production of documents protected

9  by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and without

10 waiving these objections, responsive documents, to the extent that they exist, will be produced.

11

**REQUEST NO. 28:**

12

13      All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "[t]he designation
'Sponsored Link' is itself confusing and misleading."

14

**RESPONSE TO REQUEST NO. 28:**

15

16      American Blind objects to this Interrogatory on the ground that it seeks information that will

17 likely be the subject of expert testimony prior to the time for disclosure of expert opinions.  American

18 Blind objects to this request to the extent it calls for the production of documents protected by the

19 attorney/client privilege and/or the attorney work product doctrine.  Subject to and without waiving

20 these objections, American Blind states that it does not presently have in its possession documents that

21 relate to the interpretation of Google's use of the word "Sponsored."  American Blind believes that

22 there are numerous such documents in the possession of Google and other third parties.

23

**REQUEST NO. 29:**

24

25      All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google has sold
many keywords comprised, in whole or in part, of the American Blind marks, to competitors of
American Blind."

26

27

28                                        -17-

**RESPONSE TO REQUEST NO. 29**:

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors. Discovery and investigation continue and this response may be supplemented as required.

**REQUEST NO. 30**:

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google . . . actively promotes and encourages competitors to embark on a sweeping competitive raid on the American Blind Marks and virtually every conceivable, though indistinguishable, iteration of those marks."

**RESPONSE TO REQUEST NO. 30**:

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors.

**REQUEST NO. 31**:

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google intentionally has designed its financially lucrative 'AdWords' program to maximize the infringement and dilution of American Blind's marks."

**RESPONSE TO REQUEST NO. 31**:

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

-18-

1  However, American Blind believes that the requested documents are largely within the possession and

2  custody of Google and American Blind's competitors.

3  **REQUEST NO. 32**:

4      All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google has

5  knowingly sold the American Blind Marks in commerce and included them in Google's search engine
   for Google's own profit and to increase the competitive advantage of American Blind's competitors."

6  **RESPONSE TO REQUEST NO. 32**:

7      American Blind objects to this request to the extent it calls for the production of documents

8

9  protected by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and

10 without waiving these objections, responsive documents, to the extent that they exist, will be produced.

11 However, American Blind believes that the requested documents are largely within the possession and

12 custody of Google and American Blind's competitors.

13 **REQUEST NO. 33**:

14     All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google adopted

15 and used this former trademark policy because it believed it would be, or could be, found liable for
   trademark infringement or other related claims if it did not block such purchases."

16 **RESPONSE TO REQUEST NO. 33**:

17     American Blind objects to this request to the extent it calls for the production of documents

18

19 protected by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and

20 without waiving these objections, responsive documents, to the extent that they exist, will be produced.

21 However, American Blind believes that the requested documents are largely within the possession and

22 custody of Google and American Blind's competitors.

23 **REQUEST NO. 34**:

24     All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants and

25 their advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such
   as American Blind."

26

27

28

-19-

**RESPONSE TO REQUEST NO. 34**:

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors.

**REQUEST NO. 35**:

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants' search engines are deceptive and mislead consumers into believing falsely that the website links to which they are directed via manipulated search 'results' links are sponsored or authorized by and/or originat[e] from American Blind[.]"

**RESPONSE TO REQUEST NO. 35**:

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 36**:

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "[t]he manipulated search engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a source of its goods and services."

**RESPONSE TO REQUEST NO. 36**:

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

-20-

1

**REQUEST NO. 37**:

2         All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "American Blind's customers have been and will likely continue to be confused about the origin and sponsorship of the

3    companies other than American Blind listed by the Defendants in their deceptive search engine 'results.'"

4

5    **RESPONSE TO REQUEST NO. 37**:

6         American Blind objects to this Interrogatory on the ground that it seeks information that will

7    likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American

8    Blind objects to this request to the extent it calls for the production of documents protected by the

9    attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving

10   these objections, responsive documents, to the extent that they exist, will be produced.

11   **REQUEST NO. 38**:

12        All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants' actions steal customers from American Blind's website, divert consumers to inferior products and

13   services, erode the distinctiveness of American Blind's Marks, and impair American Blind's honest and good faith efforts to promote and sell its products on the Internet."

14

15   **RESPONSE TO REQUEST NO. 38**:

16        American Blind objects to this Interrogatory on the ground that it seeks information that will

17   likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American

18   Blind objects to this request to the extent it calls for the production of documents protected by the

19   attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving

20   these objections, responsive documents, to the extent that they exist, will be produced.

21   **REQUEST NO. 39**:

22        All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants'

23   actions have caused damage and irreparable injury to American Blind."

24   **RESPONSE TO REQUEST NO. 39**:

25        American Blind objects to this Interrogatory on the ground that it seeks information that will

26   likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American

27   Blind objects to this request to the extent it calls for the production of documents protected by the

28                                                      -21-

1   attorney/client privilege and/or the attorney work product doctrine.  Subject to and without waiving

2   these objections, responsive documents, to the extent that they exist, will be produced.

3   **REQUEST NO. 40**:

4       All DOCUMENTS identified in, RELATING TO, or which were relied upon in responding to

5   Google's First Set of Interrogatories to American Blind.

6   **RESPONSE TO REQUEST NO. 40**:

7       Responsive documents will be produced.

8   **REQUEST NO. 41**:

9       All DOCUMENTS upon which AMERICAN BLIND will rely in this lawsuit.

10  **RESPONSE TO REQUEST NO. 41**:

11      Responsive documents will be produced.

12

13

    Dated:        June 10, 2005                    HOWREY LLP
14

15

16                                  By: _____
                                        ROBERT N. PHILLIPS
17                                      ETHAN B. ANDELMAN

18                                      David A. Rammelt
                                        Susan J. Greenspon
19                                      Dawn M. Beery
                                        KELLEY DRYE & WARREN LLP
20                                      333 West Wacker Drive, Suite 2600
                                        Chicago, IL  60606
21
                                        Attorneys for Defendant/Counter-Plaintiff
22                                      AMERICAN BLIND AND WALLPAPER
                                        FACTORY, INC.
23

24

25

26

27

28                                      -22-

1

## PROOF OF SERVICE

2      I am a citizen of the United States and a resident of the State of California. I am employed in

3 San Francisco County, State of California, in the office of a member of the bar of this Court, at whose
direction the service was made. I am over the age of eighteen years, and not a party to the within

4 action. My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105. On the date
set forth below, I served the document(s) described below in the manner described below:

5

6 **AMERICAN BLIND & WALLPAPER FACTORY, INC.'S RESPONSES TO GOOGLE, INC.'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

7      **VIA MESSENGER**

8      Michael H. Page
       Mark A. Lemley

9      Ravind S. Grewal
       Keker & Van Nest, LLP

10     710 Sansome Street
       San Francisco, CA 94111

11     Facsimile: (415) 397-7188

12     (BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon
Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused

13 such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed
below.

14     (BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey

15 Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I
caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by

16 Federal Express for overnight delivery.

17 **XX**     (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier
and/or process server for hand delivery on this date.

18     (BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey

19 Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the
United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be

20 placed in the United States Postal Service at San Francisco, California.

21     Executed on June 10, 2005, at San Francisco, California.

22

23 _____        _____
            Patricia Cranmer                              (Signature)

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE