# EXHIBIT D

LAW OFFICES
# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

March 16, 2006

**VIA FACSIMILE**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Re:   *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear David:

    I am writing to follow up on a set of financial documents that Google requested from American Blind & Wallpaper Factory, Inc. ("ABWF") and that were never produced.

    Requests 9-12 of Google's First Set of Requests for Production of Documents and Things cover financial documents demonstrating monthly gross revenues, profits, and losses for ABWF's trademarked products and products sold through ABWF's websites. ABWF agreed to produce only annual audited financial statements from 1997 to 2004, which do not contain monthly sales information, and do not contain any breakdown of sales data by product. Production of merely these annual audited financial statements in response to Requests 9-12 does not satisfy ABWF's discovery obligations.

### *1. Relevance of Requests 9-12*

    The documents described in Requests 9-12 are clearly relevant to this case. For instance, ABWF alleges, "Absent Defendants' intentional and improper interference through their deceptive and manipulated search engine 'results,' it is reasonably certain that American Blind would realize additional sales from existing customers and/or new customers." Defendant American Blind & Wallpaper Factory, Inc.'s Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims, ¶ 122. In order to evaluate this allegation and others like it, Google is entitled to detailed documentation of ABWF sales figures over time, including sales attributable to ABWF's websites.

    Additionally, Google will require documents covered by Requests 9-12 for the purpose of establishing that ABWF was actually selling products and services under ABWF's claimed trademarks and through ABWF's claimed domain names, dating back to the time of ABWF's first claimed use of these trademarks and domain names.

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 2

### 2. ABWF's Undue Burden Objection

ABWF's primary objection to producing these documents is that doing so would be unduly burdensome. That objection, however, does not justify producing no documents that permit analysis of ABWF's sales. As mentioned above, information about ABWF's sales is central to one ABWF's allegations, and Google is entitled to documents about this information. ABWF must therefore produce a comprehensive set of documents that permits a complete analysis of ABWF's allegation of lost sales.

### 3. ABWF's Claimed Inability to Distinguish Between Website and Telephone Sales

Another improper objection raised by ABWF, in response to Requests 10 and 12, is ABWF's claimed difficulty of distinguishing between website and telephone sales. ABWF claims that it cannot distinguish between such sales because some ABWF customers may be inspired by ABWF's website to execute a telephonic order.

First, regardless of what root cause inspired the customer to initiate a purchase, Requests 10 & 12 address sales "*through*" ABWF's website. To be clear, Requests 10 & 12 address only sales that were executed over ABWF's websites.

Second, documents demonstrating ABWF's telephonic sales data should be produced anyway in response to Requests 9 & 11. As Requests 9 & 11 cover sales data for any products and services "sold under the American Blind Marks," and ABWF has taken the position that "virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks," Requests 9 & 11 necessarily cover all of ABWF's sales data, whether the sale was executed via the internet, telephone, or otherwise.

### 4. Timeframe

A final issue is the timeframe of Requests 9-12. In response to Requests 9-12, ABWF refused to produce documentation of sales prior to 1997. *For purposes of evaluating ABWF's allegation of lost sales*, documentation of sales for 1997 and later years will suffice. This will include information from January 1, 2005 to the present. Notably, the annual audited financial statements that ABWF produced to date do not cover the time period after December 31, 2004.

However, Google will also require pre-1997 documents, covered by Requests 9-12, for the purpose of establishing that ABWF was actually selling products and services under ABWF's claimed trademarks and through ABWF's claimed domain names dating back to the time of ABWF's first claimed use of these trademarks and domain names. Google will therefore require some documents prior to 1997 that are sufficient for performing a complete analysis of the volume of sales (as indicated by gross revenues, profits and losses) under those trademarks and through those domain names. Because the documentation needed for analyzing ABWF's volume of sales will be less voluminous than that needed for analyzing alleged lost sales, I expect that the burden on ABWF to produce pre-1997 documents in response to Requests 9-12 will not be particularly heavy.

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 3

### 5. *Summary of Documents Responsive to Requests 9-12*

Google is not in a position to know what sorts of records ABWF maintains, and ABWF's responses have not explained how or why compliance with Requests 9-12 would be burdensome. Nonetheless, in the interest of advancing this process, the following is a non-exhaustive summary of documents ABWF should produce in response to Requests 9-12 in order to comply with its discovery obligations:

- In order to evaluate ABWF's claim of lost sales, for <u>each product</u> for which ABWF claims lost sales, documents from January 1, 1997 until the present that demonstrate:

  - the monthly volume of sales (i.e., number of units sold);

  - price per unit (including information about discounts, sales, and price changes);

  - gross revenues;

  - profits and/or losses; and

  - for each transaction, all information collected that relates to whether and how the sale was attributable to an ABWF trademark or domain name, including but not limited to:

    - The medium of the transaction (*i.e.*, by website (and if so, which one), telephone, in-store purchase, etc.); and

    - All information conveyed by the customer indicating the reason for the purchase; and

- In order to evaluate ABWF's claim that it was selling goods under its claimed trademarks and through its claimed domain names from the date of the first use of those trademarks and domain names:

  - For <u>each claimed trademark</u>, documents dating back to the first use of the trademark:

    - Demonstrating which products were sold under the trademark; and

    - Demonstrating the monthly volume of sales (i.e., through number of units sold, gross revenues, and profits and/or losses) of those products sold under the trademark; and

  - For <u>each claimed domain name</u>, documents dating back to the first use of the domain name:

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 4

- Demonstrating which products were sold through the domain name; and

- Demonstrating the monthly volume of sales (i.e., through number of units sold, gross revenues, and profits and/or losses) of those products sold through the domain name.

    Please let me know as soon as possible whether ABWF intends to produce the documents described in this letter. Thank you for your prompt attention to this matter. Please do not hesitate to contact me if you have any questions.

Sincerely,

Ajay S. Krishnan

cc: Caroline C. Plater, Esq.

369259.02