**EXHIBIT A**

Dockets.Justia.com

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

March 16, 2006

**VIA FACSIMILE**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Re:     *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear David:

I am writing to follow up on a set of financial documents that Google requested from American Blind & Wallpaper Factory, Inc. ("ABWF") and that were never produced.

Requests 9-12 of Google's First Set of Requests for Production of Documents and Things cover financial documents demonstrating monthly gross revenues, profits, and losses for ABWF's trademarked products and products sold through ABWF's websites. ABWF agreed to produce only annual audited financial statements from 1997 to 2004, which do not contain monthly sales information, and do not contain any breakdown of sales data by product. Production of merely these annual audited financial statements in response to Requests 9-12 does not satisfy ABWF's discovery obligations.

### 1. Relevance of Requests 9-12

The documents described in Requests 9-12 are clearly relevant to this case. For instance, ABWF alleges, "Absent Defendants' intentional and improper interference through their deceptive and manipulated search engine 'results,' it is reasonably certain that American Blind would realize additional sales from existing customers and/or new customers." Defendant American Blind & Wallpaper Factory, Inc.'s Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims, ¶ 122. In order to evaluate this allegation and others like it, Google is entitled to detailed documentation of ABWF sales figures over time, including sales attributable to ABWF's websites.

Additionally, Google will require documents covered by Requests 9-12 for the purpose of establishing that ABWF was actually selling products and services under ABWF's claimed trademarks and through ABWF's claimed domain names, dating back to the time of ABWF's first claimed use of these trademarks and domain names.

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 2

### 2. ABWF's Undue Burden Objection

ABWF's primary objection to producing these documents is that doing so would be unduly burdensome. That objection, however, does not justify producing no documents that permit analysis of ABWF's sales. As mentioned above, information about ABWF's sales is central to one ABWF's allegations, and Google is entitled to documents about this information. ABWF must therefore produce a comprehensive set of documents that permits a complete analysis of ABWF's allegation of lost sales.

### 3. ABWF's Claimed Inability to Distinguish Between Website and Telephone Sales

Another improper objection raised by ABWF, in response to Requests 10 and 12, is ABWF's claimed difficulty of distinguishing between website and telephone sales. ABWF claims that it cannot distinguish between such sales because some ABWF customers may be inspired by ABWF's website to execute a telephonic order.

First, regardless of what root cause inspired the customer to initiate a purchase, Requests 10 & 12 address sales *"through"* ABWF's website. To be clear, Requests 10 & 12 address only sales that were executed over ABWF's websites.

Second, documents demonstrating ABWF's telephonic sales data should be produced anyway in response to Requests 9 & 11. As Requests 9 & 11 cover sales data for any products and services "sold under the American Blind Marks," and ABWF has taken the position that "virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks," Requests 9 & 11 necessarily cover all of ABWF's sales data, whether the sale was executed via the internet, telephone, or otherwise.

### 4. Timeframe

A final issue is the timeframe of Requests 9-12. In response to Requests 9-12, ABWF refused to produce documentation of sales prior to 1997. *For purposes of evaluating ABWF's allegation of lost sales,* documentation of sales for 1997 and later years will suffice. This will include information from January 1, 2005 to the present. Notably, the annual audited financial statements that ABWF produced to date do not cover the time period after December 31, 2004.

However, Google will also require pre-1997 documents, covered by Requests 9-12, for the purpose of establishing that ABWF was actually selling products and services under ABWF's claimed trademarks and through ABWF's claimed domain names dating back to the time of ABWF's first claimed use of these trademarks and domain names. Google will therefore require some documents prior to 1997 that are sufficient for performing a complete analysis of the volume of sales (as indicated by gross revenues, profits and losses) under those trademarks and through those domain names. Because the documentation needed for analyzing ABWF's volume of sales will be less voluminous than that needed for analyzing alleged lost sales, I expect that the burden on ABWF to produce pre-1997 documents in response to Requests 9-12 will not be particularly heavy.

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 3

### 5. *Summary of Documents Responsive to Requests 9-12*

Google is not in a position to know what sorts of records ABWF maintains, and ABWF's responses have not explained how or why compliance with Requests 9-12 would be burdensome. Nonetheless, in the interest of advancing this process, the following is a non-exhaustive summary of documents ABWF should produce in response to Requests 9-12 in order to comply with its discovery obligations:

➢ In order to evaluate ABWF's claim of lost sales, for <u>each product</u> for which ABWF claims lost sales, documents from January 1, 1997 until the present that demonstrate:

  ▪ the monthly volume of sales (i.e., number of units sold);

  ▪ price per unit (including information about discounts, sales, and price changes);

  ▪ gross revenues;

  ▪ profits and/or losses; and

  ▪ for each transaction, all information collected that relates to whether and how the sale was attributable to an ABWF trademark or domain name, including but not limited to:

    • The medium of the transaction (*i.e.*, by website (and if so, which one), telephone, in-store purchase, etc.); and

    • All information conveyed by the customer indicating the reason for the purchase; and

➢ In order to evaluate ABWF's claim that it was selling goods under its claimed trademarks and through its claimed domain names from the date of the first use of those trademarks and domain names:

  ▪ For <u>each claimed trademark</u>, documents dating back to the first use of the trademark:

    • Demonstrating which products were sold under the trademark; and

    • Demonstrating the monthly volume of sales (i.e., through number of units sold, gross revenues, and profits and/or losses) of those products sold under the trademark; and

  ▪ For <u>each claimed domain name</u>, documents dating back to the first use of the domain name:

369259.02

David A. Rammelt, Esq.
March 16, 2006
Page 4

- Demonstrating which products were sold through the domain name; and

- Demonstrating the monthly volume of sales (i.e., through number of units sold, gross revenues, and profits and/or losses) of those products sold through the domain name.

Please let me know as soon as possible whether ABWF intends to produce the documents described in this letter. Thank you for your prompt attention to this matter. Please do not hesitate to contact me if you have any questions.

Sincerely,

Ajay S. Krishnan

cc:    Caroline C. Plater, Esq.

369259.02

**EXHIBIT B**

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

March 28, 2006

**VIA FACSIMILE**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Re:     *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear David:

I am writing to follow up on some outstanding discovery issues concerning the documents produced by American Blind and Wallpaper Factory, Inc. ("ABWF") in response to Google's First Set of Requests for Production of Documents and Things (the "Document Requests").

*First*, we have not yet received a response to my letter of March 16, 2006 concerning production of financial documents in response to Requests 9 – 12 of the Document Requests. I requested in the letter that you notify me as soon as possible whether ABWF intends to produce those financial documents. I repeat that request now.

*Second*, ABWF's production does not comply with Federal Rule of Civil Procedure 34(b) ("A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."). ABWF did not "organize and label the [produced documents] to correspond with the categories in the request." You must therefore provide us with an index that indicates by Bates number to which requests for production the documents you have produced respond. Alternatively, if your position is that ABWF has produced these documents "as they are kept in the usual course of business," *please explain how ABWF's production satisfies this requirement*. As you know, ABWF has and continues to claim that Google's production of documents does not satisfy Rule 34(b), so it is important that we come to a consistent understanding as to the meaning of the language "as they are kept in the usual course of business."

*Third*, ABWF's response to Request 3 exemplifies ABWF's failure to "organize and label the [produced documents] to correspond with the categories in the request." Request 3 asks

369940.01

David A. Rammelt, Esq.
March 28, 2006
Page 2

for "all DOCUMENTS RELATING TO AMERICAN BLIND's first commercial use of each of the AMERICAN BLIND MARKS." ABWF responded that "responsive documents will be produced that illustrate the date of first commercial use of the American Blind Marks." After reviewing ABWF's entire production – which do not appear to be kept in the usual course of business – I found no documents "illustrating" the first commercial use of *any* of ABWF's claimed marks, let alone "each" of them. I saw nothing dating back to 1986, the date ABWF alleges its oldest claimed marks were used in commerce. Independently of how we resolve the ongoing discovery issue pertaining to Rule 34(b)'s "usual course of business" language, ABWF must either produce all responsive documents relating to first commercial use of *each* of its asserted marks, or indicate where such documents are located in ABWF's production.

    *Fourth*, ABWF has not adequately responded to Request 1 of the Document Requests. Request 1 asks for "All DOCUMENTS RELATING TO AMERICAN BLIND's selection, adoption and clearance of each of the AMERICAN BLIND MARKS . . . ." Apart from its objections, ABWF responded that "it will produce any responsive documents in its possession regarding the adoption and clearance of each of the American Blind Marks," but does not address documents relating to *selection*. If it is ABWF's position that it has no unprivileged documents regarding the selection of its marks, please state so. Otherwise, please produce all documents relating to ABWF's selection of each claimed ABWF trademark.

    Moreover, because ABWF's production does not organize and label documents to correspond with Google's document requests, it appears that American Blind has failed even to produce documents relating to the adoption and clearance of *each* of its asserted marks. Again, independently of how we resolve the ongoing discovery issue pertaining to Rule 34(b)'s "usual course of business" language, ABWF must either produce all responsive documents relating to adoption and clearance of *each* of its asserted marks, or indicate where such documents are located in ABWF's production.

    *Fifth*, ABWF's responses to Requests 13 and 14 are wholly inadequate. Those requests ask for documents demonstrating ABWF's monthly advertising and promotional expenditures for products or services marketed under the American Blind marks and domain names. Google is entitled to whatever documents ABWF has regarding ABWF's expenditures on advertising and promotional efforts with regard to ABWF's claimed marks and with regard to websites from which ABWF alleges its customers were diverted. Such documents are therefore relevant and ABWF does not deny that it possesses them. The handful of documents that ABWF has produced thus far make clear that ABWF has a great deal of nuanced financial information on its advertising expenditures, and that this information has been or easily can be broken down by product, by website, and by month. Annualized information is not sufficient. Google has provided similar detailed analyses to ABWF in response to ABWF's document requests.

    To address some of ABWF's objections: ABWF objects that "the phrase 'advertising and promotional expenditures' is vague and ambiguous because it is unclear what fixed and/or variable expenses qualify in Google's view as 'expenditures.'" Google need not be more specific: "fixed" and "variable" expenses are obviously both expenditures. Similarly, ABWF

David A. Rammelt, Esq.
March 28, 2006
Page 3

objects that Google has not "made any distinction between marketing expenditures and what are properly includable as advertising and promotional materials." Once again, Google need not be more specific. If a document demonstrates "advertising or promotional expenditures," it is responsive whether or not it pertains to marketing.

Next, ABWF objects that Request 13 is overbroad because ABWF has been "using its Marks as early as 1986, and it would be too burdensome to produce documents dating from 1986." Google must know ABWF's investment in the goodwill associated with its asserted trademarks to evaluate ABWF's claim that those trademarks were valid and actually used in commerce. If ABWF wishes to claim its marks were valid since 1986, ABWF must produce proof of its investment in goodwill dating back to that time. The burden of this discovery request is therefore no greater than is required to evaluate ABWF's allegations.

ABWF then objects that "American Blind's advertising expenditures are not necessarily separated to reflect advertising expenditures for products and services sold through the American Blind domain names as opposed to through other channels." This statement does not even constitute a valid objection. It is up to ABWF to perform a reasonable investigation to determine whether ABWF's advertising expenditures are or are not separated; the statement that ABWF's advertising expenditures "are not necessarily separated" is simply an admission that ABWF has failed to perform a reasonable investigation. Moreover, an investigation of the caliber ABWF has requested Google to perform in response to ABWF's document requests would surely reveal domain-specific expenditures. If not, ABWF must simply produce all documents that would permit Google to properly evaluate, to the extent possible, domain-specific expenditures.

*Sixth*, ABWF has not adequately responded to Requests 7 and 20 because ABWF has produced no documents relating to research, analysis, or investigation as to ABWF's decisions on how to name its business. Request 7 asks for, among other things, "analyses and research RELATING TO the AMERICAN BLIND MARKS and AMERICAN BLIND DOMAIN NAMES." ABWF claimed it had no responsive documents. Request 20 asks for "all DOCUMENTS RELATING TO research, reports, surveys, investigations, or studies conducted by or on behalf of AMERICAN BLIND, relating to consumer or customer perception, understanding, or recognition of any name, mark or designation comprised of or containing the AMERICAN BLIND MARKS, or any variation thereof." ABWF only objected to producing documents that were privileged, related to its expert testimony *in this case*, or not yet in its possession.

A review of ABWF's production reveals, however, that ABWF has produced no documents relating to research, analysis, or investigation as to ABWF's decisions on how to name its business. Responsive documents would include internal communications (including emails, Powerpoint presentations, memoranda, etc.) as to what trademarks and names ABWF ought to use to brand or describe its business. Responsive documents would also include any in-house or commissioned studies, research, analyses, or investigations (other than privileged documents or those materials that will be the subject of expert discovery) as to how consumers respond to ABWF's various domain names, trademarks, and variants thereof. Is it the position of

David A. Rammelt, Esq.
March 28, 2006
Page 4

ABWF – a company that uses several different names to identify itself, claims several trademarks, and spends substantial resources in trademark enforcement and litigation – that it has never internally discussed or analyzed which name or names it ought to use? If so, please state so. Otherwise, please produce these documents. Such documents will pertain to the strength of ABWF's claimed trademarks and are therefore relevant to this litigation.

As you have not responded to my past letter, I will now request that you respond to this letter by Monday, April 3rd. As you know, we will need these documents rather urgently due to our upcoming Rule 30(b)(6) deposition of ABWF, which is currently scheduled for April 20, 2006. I assume, however, that ABWF's and Google's legal teams will discuss the second point I raised (concerning the application of Rule 34(b)'s "usual course of business" language) before Monday, as that point pertains to a live dispute over ABWF's document requests.

Thank you for your attention to these important matters.

Sincerely,

Ajay S. Krishnan

cc:    Caroline C. Plater, Esq.

**EXHIBIT C**

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## 333 WEST WACKER DRIVE

### SUITE 2600

### CHICAGO, ILLINOIS 60606

———

(312) 857-7070

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
STAMFORD, CT
PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(312) 857-7095
www.kelleydrye.com

DIRECT LINE: (312) 857-2501
EMAIL: cplater@kelleydrye.com

April 10, 2006

**VIA FACSIMILE**

Ajay S. Krishnan
Keker & Van Nest
710 Sansome Street
San Francisco, CA 94111-1704

Re:  Google Inc. v. American Blind & Wallpaper Factory, Inc.

Dear Ajay:

This responds to your correspondence of March 28, 2006 and March 16, 2006 regarding Google's disputes over American Blind's responses to Google's First Set of Requests for Production of Documents and Things.

First, the documents produced were produced as they are kept in the ordinary course of business. American Blind will be producing additional documents, as referenced herein, as they are kept in the ordinary course of business. Unlike Google's production, American Blind's production is not voluminous. Thus, we believed that you would have no difficulty ascertaining that they were produced as they are kept in the ordinary course of business and to which of your requests the documents responded. We are afforded the option to produce our documents in this manner under the Federal Rules of Civil Procedure. Google, however, was under a court order to match the Bates range to the specific request. As an accommodation, we will provide you with similar explanations as to whose files and/or where the documents came from, consistent with the level of information provided to us by Klaus Hamm in the course of Google's production.

Second, with regard to the financial documents requested in your March 16, 2006 letter, we will produce responsive, non-privileged documents.

Third, with regard to documents illustrating American Blind's first commercial use of any of the American Blind marks, American Blind will produce responsive, non-privileged documents.

### KELLEY DRYE & WARREN LLP

Ajay S. Krishnan
April 10, 2006
Page Two

     Fourth, with regard to American Blind's selection of the American Blind marks, the decision regarding American Blind's name was made many years ago and was not documented at that time. The marks were selected based on the corporate name chosen. Accordingly, no responsive documents exists as to the *selection* of the American Blind name and resulting marks. We, however, are producing non-privileged documents relating to the clearance and adoption of each mark.

     Fifth, with regard to American Blind's responses to Requests 13 and 14, American Blind will produce responsive, non-privileged documents regarding its advertising expenditures. The point of the statement that "American Blind's advertising expenditures are not necessarily separated to reflect advertising expenditures for products and services sold through the American Blind domain name as opposed to through other channels", was merely to inform you of the scope and relevance of the information in our possession.

     Sixth, with regard to Google's request for documents relating to research, analysis, or investigation as to American Blind's decision on how to name its business, as addressed above, no responsive documents exist on name selection.

     We are currently in receipt of some, but not all, of the documents that we intend to produce and will be sending them out for Bates labeling and copying once we have received the full set of the documents. We will provide you with copies of the above-referenced documents as soon as practicable.

               Sincerely,

               Caroline C. Plater

CCP:ccp

cc:    David A. Rammelt

CH01/PLATC/207923.1

**EXHIBIT D**

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

May 12, 2006

**VIA FACSIMILE**

Caroline C. Plater, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear Caroline:

This letter addresses several outstanding issues regarding the documents produced by American Blind & Wallpaper Factory ("ABWF") in response to Google Inc.'s First Set of Requests for Production of Documents and Things from American Blind & Wallpaper Factory, Inc. (the "Document Requests").

*First*, despite agreeing to do so, ABWF has not produced product-specific financial information in response to Google's Document Requests 9 – 12. In my March 16th letter to David Rammelt, I made clear that Requests 9 – 12 require ABWF to produce monthly financial information (i.e., number of units sold, price per unit, gross revenues, and profits or losses) for "each product." *See* Letter to David Rammelt, March 16, 2006 at 3 (emphasis in original). In your letter of April 10th letter, the entirety of your response to my March 16th letter was "with regard to the financial documents requested in your March 16, 2006 letter, we will produce responsive, non-privileged documents." The two pages of purportedly responsive documents that were produced—ABWF002889 and ABWF002890—were insufficient. First, these documents break down the monthly sales information by "product category," not by product. *See* ABWF002888. Second, the only monthly information given for each product category is a bare number—there are no units, and no indication whether this number is the number of units sold, gross revenues, profits, or something else entirely. Moreover, whatever this number signifies, it is still only one number. The financial information requested, which you stated you would produce, covered at least four items of information—number of units sold, price per unit, gross revenues, and profits or losses. Without this level of product-specific information, it will be impossible to compute the alleged damages for the period over which ABWF alleges injury.

Caroline C. Plater, Esq.
May 12, 2006
Page 2

Please advise me as to whether and when ABWF will produce this product-specific financial information (including number of units sold, price per unit, gross revenues, and profits or losses) responsive to Requests 9-12.

*Second*, ABWF has not produced all responsive documents "relating to" ABWF's first commercial use of each of its claimed marks. *See* Document Request 3. Both in its response to Document Request 3, and in your April 10th letter, ABWF states that it will produce documents "illustrating" the first commercial use of each of its claimed marks. That is insufficient. Google requires all documents "relating to" ABWF's first commercial use of each of its claimed marks to evaluate whether these claimed marks were actually used in commerce in some substantial manner during the asserted time period. This means that Google requires *all* documents relating to advertising or any other communications to consumers or potential consumers constituting first commercial use for each of ABWF's claimed marks.

Please advise me as to whether and when ABWF will produce these documents responsive to Request 3.

*Third*, ABWF has not responded adequately to Google's repeated request for information concerning selection of ABWF's claimed marks. See Document Request 1. In your April 10th letter and again in an email to myself and Klaus Hamm on April 18, 2006, you took the position that ABWF has no documents concerning the selection of the American Blind name. This does not explain why there are no documents concerning the selection of American Blind's other claimed marks, namely "American Blinds," "American Blind & Wallpaper Factory, "American Blind Factory," and "Decoratetoday." You stated in your April 18, 2006 email that you might be able to find responsive documents about the selection of these claimed marks "in the trademark files" and that you would follow up on this. For one thing, to my knowledge, you have not followed up on this issue. Moreover, unless ABWF's maintains meticulous "trademark files" that includes every internal communication, including e-mail, concerning selection of marks, a mere search of ABWF's "trademark files" would not constitute a sufficiently diligent search under the Federal Rules. Google is entitled to all internal communications and any other documents relating to the selection of ABWF's claimed marks.

Please advise me as to whether and when ABWF will produce these documents responsive to Request 1.

*Fourth*, please produce all non-privileged documents in the ABWF "trademark files" to which you refer in your April 18, 2006 email. All documents in these trademark files are likely responsive to one or more of the following Document Requests: 1-7, 17-21, 26, 27, 36-38, and 41.

If you are of the position that the trademark files contain non-privileged documents that are not responsive to any of Google's First Set of Document Requests, and that ABWF need not produce such documents absent a formal document request, please represent that this is the case, and I will draft and serve a formal document request.

Caroline C. Plater, Esq.
May 12, 2006
Page 3

*Fifth*, ABWF has not produced the detailed information about ABWF's advertising and promotional expenditures that you stated ABWF would produce. *See* Document Requests 13 & 14. In my March 28th letter, I put forth a detailed, four-paragraph response to ABWF's objections. In your April 10th letter, you responded that "ABWF will produce responsive, non-privileged documents regarding its advertising expenditures." ABWF never produced this information. Additionally, ABWF's obligation is to produce documents relating to advertising *and promotional expenditures*, not merely advertising expenditures.

Please advise me as to whether and when ABWF will produce these documents responsive to Requests 13 and 14.

*Sixth*, ABWF has produced no documents responsive to Requests 20, 26, and 27. These requests pertain to documents relating to consumer recognition and perception of ABWF's marks. Such documents would include, among other things, any research reports, consumer studies or surveys, or any internal discussion of actual and anticipated consumer recognition or perception of the ABWF marks. Obviously, these requests do not require production of expert witness work product in furtherance of this litigation. But ABWF has produced *no* responsive documents. It is difficult to believe that ABWF—a company that spends substantial effort protecting its trademarks, purchasing rights to other trademarks, and purchasing hundreds of domain names—has never thought to study how consumers perceive their trademarks (especially since ABWF has alleged its marks "have acquired an outstanding celebrity"). Presumably some such work would have been done in the course of producing ABWF's advertisements. Nonetheless, if it is truly ABWF's position that it possesses no documents relating to consumer recognition and perception of ABWF's marks (other than ones that are privileged or the work product of expert witnesses in furtherance of this litigation), please confirm that this is so.

Otherwise, please advise me as to whether and when ABWF will produce these documents responsive to Requests 20, 26, and 27.

*Seventh*, ABWF has not produced any documents of which I am aware that relate to ABWF's allegations about trademark dilution, consumer confusion, and website diversion. *See* Document Requests 36-39. These would include documents about actual consumers who were confused by Google's advertising practices, brand recognition surveys, or any internal analysis of lost sales or lost internet traffic.

Again, these requests do no require production of expert witness work product in furtherance of this litigation. But to the extent an expert relies on facts or documents that were obtained from ABWF and that developed in the normal course of business, such facts and documents are not beyond the proper scope of discovery simply because they were submitted to the expert. The language of ABWF's objections to Requests 36-39—that the document request "seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions"—therefore suggests an incorrect statement of the law.

Caroline C. Plater, Esq.
May 12, 2006
Page 4

Please advise me as to whether and when ABWF will produce these documents that relate to ABWF's allegations about trademark dilution, consumer confusion, and website diversion (such as documents about actual consumers who were confused by Google's advertising practices, brand recognition surveys, or any internal analysis of lost sales or lost internet traffic) and that are responsive to Request 3.

**Eighth**, ABWF has improperly withheld documents responsive to Requests 15 and 16. These requests cover documents relating to the weekly number of hits received on ABWF's websites and the weekly number of unique users to ABWF's website. Although ABWF's objections to Requests 15 and 16 border on frivolous, I address them here simply to avoid further delay in obtaining these documents.

As an initial matter, ABWF has represented that it maintains information for all of its domain names together. This appears to be because most, if not all, of ABWF's domain names simply redirect visitors to ABWF's primary website, which is currently located at www.decoratetoday.com. If that is indeed the case, and ABWF does not possess individualized information as to how much internet traffic ABWF receives from each of its domain names, ABWF need only produce aggregated information for all of its domain names. However, if ABWF is able to determine, by domain name, the number of visits each, individual ABWF domain name receives, that information is covered by Requests 15 and 16 and must therefore be produced.

As for time frame, this request dates back to the time when ABWF first used its website. It is ABWF that placed at issue in this litigation the popularity of its website from its inception. *See* Defendant American Blind & Wallpaper Factory's Answer, Affirmative Defenses, and Counterclaims, ¶ 27-34 ("Since 1997, American Blind has continuously operated a distinctive website," and "The company estimates, each day, it receives in excess of thirty thousand (30,000) visits by customers or potential customers to its Internet website"). Moreover, this information is necessary to track and understand web traffic to ABWF's website over time so as to determine whether there was a decline in traffic during the times alleged by ABWF.

The phrase "number of hits received"—as used in Request 15—means the number of visits to ABWF's destination website (i.e., the one to which ABWF's other domain names redirect visitors). As for request 16, ABWF's objection does not question what a "unique" user is, so much as how to calculate the "weekly number of unique users." This is the objection that most clearly stands out as frivolous. First, this objection is irrelevant because Google requested *all* documents pertaining to the weekly number of unique users accessing ABWF's website. Thus, Request 16 would cover documents pertaining to *any* method for determining the weekly number of unique users. Second, the alleged ambiguities are non-existent. Assuming the week begins on Monday, a consumer who visits the website once on Monday and once on Tuesday would count as one unique user for that week. Similarly, a consumer who visits the website once on Friday and then once the following Monday would clearly count as a unique user for each week. Of course, any method used for delineating weeks (e.g., Monday to Sunday, Wednesday to Tuesday) would be responsive to Request 16.

Caroline C. Plater, Esq.
May 12, 2006
Page 5

Please advise me as to whether and when ABWF will produce these documents that relate to the number of weekly hits and weekly number of unique users on ABWF's website(s) and that are responsive to Requests 15 and 16.

*Ninth*, ABWF has failed to produce documents identifying ABWF's corporate structure despite stating that it would produce such documents. *See* Document Request 22. If ABWF has produced these documents—and my review of ABWF's original production suggests ABWF has not produced them—please identify the Bates numbers of these documents.

Otherwise, please advise me as to when ABWF will produce these documents that identify ABWF's corporate structure and that are responsive to Request 22.

*Tenth*, ABWF has failed to produce documents responsive to Request 23, concerning ABWF's employees and their job descriptions. First, in its response to Request 23, ABWF stated that it would produce an employee roster identifying the individuals that presently work for American Blind and the department in which they work. My review of ABWF's production did not reveal these documents. If ABWF has produced them, please identify them by Bates number. Second, such an employee roster is insufficient. Producing the job descriptions of roughly 100 employees is not an overly burdensome task, and in any event, Google requires this information in order to independently evaluate who at ABWF will have relevant information concerning this lawsuit.

Please advise me as to whether and when ABWF will produce the job descriptions of all of ABWF's employees, in response to Request 23.

*Eleventh*, please update ABWF's production in response to Request 41, which covers "All documents upon which American Blind will rely in this lawsuit." Please advise me as to when ABWF will produce these documents.

*Finally*, as a general matter, there has been a serious disparity in the willingness of Google and ABWF to produce responsive documents in this litigation. Google has produced well over a hundred thousand pages of documents in response to ABWF's document requests, has refrained from withholding documents based on objections that will ultimately be overruled. By contrast, ABWF has produced relatively few documents and consistently claims it will produce responsive documents without actually doing so. There are also serious questions—based on the paucity of documents ABWF has produced—as to whether ABWF has actually performed a diligent search, as required by the Federal Rules, and whether ABWF is actually producing *all* responsive documents when it claims to do so.

I am more than willing to engage in further dialogue about ABWF's production obligations, based on reliable representations as to what will be produced. I am unwilling, however, to entertain another iteration of letter-writing in which ABWF ignores issues that I raise, narrows the scope of Google's discovery requests without providing any justification, or claims that it will produce documents without doing so.

Caroline C. Plater, Esq.
May 12, 2006
Page 6


<u>Please respond to each of the issues raised in this letter by Thursday, May 18, 2006.</u>

Thank you for your attention to this important matter.  Please also feel free to contact me by telephone or email to discuss any of the issues raised in this letter.

Sincerely,

Ajay S. Krishnan

ASK/rwt

cc: David A. Rammelt, Esq.

**EXHIBIT E**

## Klaus Hamm

**From:** Ajay Krishnan
**Sent:** Thursday, June 15, 2006 1:57 PM
**To:** Klaus Hamm
**Subject:** FW: Google - 5/12/06 correspondence


-----Original Message-----
**From:** Plater, Caroline C. [mailto:CPlater@KelleyDrye.com]
**Sent:** Monday, May 15, 2006 12:28 PM
**To:** Ajay Krishnan
**Cc:** Rammelt David A.
**Subject:** RE: Google - 5/12/06 correspondence

Sounds fine.

> -----Original Message-----
> **From:** Ajay Krishnan [mailto:AKrishnan@kvn.com]
> **Sent:** Monday, May 15, 2006 2:25 PM
> **To:** Plater, Caroline C.
> **Cc:** Rammelt David A.
> **Subject:** RE: Google - 5/12/06 correspondence
>
> Carrie -- I have no problem waiting until May 22nd for the responsive letter, with the understanding that ABWF will move quickly on actually producing whatever documents you agree to produce. My interest is in minimizing any delay in making a decision on a motion to compel regarding this set of document requests. Let me know if that is okay.
>
> Thanks, Ajay
>
> > -----Original Message-----
> > **From:** Plater, Caroline C. [mailto:CPlater@KelleyDrye.com]
> > **Sent:** Monday, May 15, 2006 7:21 AM
> > **To:** Ajay Krishnan
> > **Cc:** Rammelt David A.
> > **Subject:** Google - 5/12/06 correspondence
> >
> > Ajay - I have been out of town and just received and reviewed your letter this morning. I will not be able to respond to the numerous items addressed in your letter by May 18, 2006, as you have requested. I will be able to respond by May 22, 2006. Please advise if this is acceptable.
> >
> > Thanks, Carrie
> >
> >
> > Caroline C. Plater
> > Kelley Drye & Warren LLP
> > 333 W. Wacker, Suite 2600
> > Chicago, IL 60606
> > 312.857.2501 (direct)
> > 312.857.7095 (fax)

**EXHIBIT F**

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(312) 857-7095
www.kelleydrye.com

DIRECT LINE: (312) 857-2501
EMAIL: cplater@kelleydrye.com

June 6, 2006

VIA FACSIMILE

Klaus Hamm
Ajay Krishnan
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Re:    Google Inc. v. American Blind & Wallpaper Factory Inc.

Dear Klaus and Ajay:

I am responding to both of your recent correspondence in this matter. With regard to Ajay's May 12, 2006 letter, as you know, American Blind has gone through a change of management since we received your letter. As soon as was practicable, we began working with new management to address Google's discovery issues and have been told that we should receive responsive documents this week. Therefore, we will produce all responsive documents in our possession or indicate that none exist to you by next week.

With regard to the deposition notices sent by Klaus, we can confirm that we will be representing Joe Charno. However, we will need to select a different date that is mutually convenient. We cannot confirm that we are representing Steve Katzman at this time. I will contact you when a decision is made in this regard.

Please feel free to contact me regarding the foregoing.

Sincerely,

Caroline C. Plater

CCP:ccp

cc: Susan Greenspon

CH01/PLATC/209998.1

**EXHIBIT G**

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

February 15, 2006

**VIA FACSIMILE**

Caroline C. Plater, Esq.
David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Robert N. Phillips, Esq.
Howrey Simon Arnold & White, LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708

Re:    *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear Counsel:

Please find attached Google's notice for a Rule 30(b)(6) deposition of American Blind and Wallpaper Factory, Inc. We have noticed the deposition for March 15, 2006. We are willing, however, to try to find a mutually agreeable date. Please feel free to contact me with any questions you might have.

Sincerely,

Ajay S. Krishnan

ASK/rwt

Enclosure

367428.01

1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   KLAUS H. HAMM - #224905
3  AJAY S. KRISHNAN - #222476
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Plaintiff and Counterdefendant
   GOOGLE INC. and
7  Third-Party Defendants ASK JEEVES, INC.
   and EARTHLINK, INC.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  GOOGLE INC., a Delaware corporation,          Case No. C 03-5340-JF (EAI)

12                                 Plaintiff,     **NOTICE OF 30(b)(6) DEPOSITION OF**
                                                  **AMERICAN BLIND AND WALLPAPER**
13          v.                                    **FACTORY, INC.**

14  AMERICAN BLIND & WALLPAPER
15  FACTORY, INC., a Delaware corporation
    d/b/a decoratetoday.com, Inc. and DOES 1-
16  100, inclusive,

17                               Defendants.

18  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation
19  d/b/a decoratetoday.com, Inc.,

20                          Counter Plaintiff,

21          v.

22  GOOGLE INC., AMERICA ONLINE, INC.,
    NETSCAPE COMMUNICATIONS
23  CORPORATION, COMPUSERVE
    INTERACTIVE SERVICES, INC., ASK
24  JEEVES, INC., and EARTHLINK, INC.,

25                       Counter Defendants/
                         Third-Party Defendants.
26

27

28

1    PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

2    Procedure, Google Inc. ("Google"), will take the deposition upon oral examination of a

3    representative of Defendant/Counter-Plaintiff American Blind and Wallpaper Factory, Inc.

4    ("American Blind"). The topics to be covered are listed in Schedule A attached hereto.

5    The deposition shall take place at the offices of Pepper Hamilton, LLP, 100 Renaissance

6    Center # 3600, Detroit, MI 48243, beginning on March 15, 2006, at 9:30 a.m., and shall continue

7    from day-to-day until completed. The testimony shall be recorded by stenographic and sound

8    and visual (videotaping) means.

9

10    DATED:  February 15, 2006              KEKER & VAN NEST, LLP

11

12

                                          By: _____
13                                        AJAY S. KRISHNAN
                                          Attorney for Plaintiff and Counter-Defendant
14                                        GOOGLE INC. and Third-Party Defendants
                                          ASK JEEVES, INC. and EARTHLINK, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
NOTICE OF 30(b)(6) DEPOSITION
Case No. C 03-5340-JF (EAI)

1    **SCHEDULE A**

2         As used herein, "the AMERICAN BLIND MARKS" shall refer to any and/or all

3    trademarks alleged to be infringed or diluted by Counter-Defendants and/or Third Party

4    Defendants.

5         Topics to be covered are:

6         1.    American Blind's acquisition, selection, ownership, adoption, clearance, and use

7    of each of the AMERICAN BLIND MARKS;

8         2.    The validity of each of the AMERICAN BLIND MARKS and registrations;

9         3.    Any trademark searches which were conducted by or for American Blind in

10   connection with each of the AMERICAN BLIND MARKS;

11        4.    American Blind's first use of each of the AMERICAN BLIND MARKS;

12        5.    Every name that American Blind has used to identify its website;

13        6.    For each instance in which American Blind has changed the name of its website,

14   its reasons for so doing;

15        7.    American Blind's products and services offered in connection with each of the

16   AMERICAN BLIND MARKS;

17        8.    Market research, consumer surveys, or consumer studies relating to each of the

18   AMERICAN BLIND MARKS or products and services sold in connection with each of the

19   AMERICAN BLIND MARKS;

20        9.    American Blind's volume of sales, in units and dollar amounts, or products and

21   services sold in connection with each of the AMERICAN BLIND MARKS;

22        10.   American Blind's advertising and promotional activities and expenditures in

23   connection with products and services sold under each of the AMERICAN BLIND MARKS;

24        11.   American Blind's methodology for bidding on keywords in Google's Adwords

25   advertising program;

26        12.   American Blind's methodology for determining the value of a click-through[1] for

27   ―――――――――――――――――――――――

28   [1] A "click-through" refers to a single instance of a Google web search user clicking on the internet link located in a sponsored advertisement triggered by the user's web search

2

1   an American Blind advertisement in Google's Adwords advertising program;

2       13.    Licensing of the AMERICAN BLIND MARKS;

3       14.    Third party use of each of the AMERICAN BLIND MARKS in connection with

4   goods and services of the type sold by American Blind;

5       15.    Channels of trade for American Blind's goods and services sold in connection

6   with the AMERICAN BLIND MARKS;

7       16.    Purchasers of American Blind's goods and services sold in connection with the

8   AMERICAN BLIND MARKS;

9       17.    The strength, consumer recognition and fame of each of the AMERICAN BLIND

10   MARKS;

11       18.    Any alleged confusion or dilution of each of the AMERICAN BLIND MARKS

12   caused by Google's actions;

13       19.    The injuries and damages allegedly suffered by American Blind as a result of

14   Google's actions;

15       20.    The average number of visitors to American Blind's website(s) per day, month,

16   and year;

17       21.    The average number of visitors to American Blind's website(s) per day, month,

18   and year, who purchase products and services through the website(s).

19       22.    American Blind's net profit for each product or service purchased though

20   American Blind's website(s);

21       23.    American Blind's Affliate Program.

22       24.    American Blind's relationship or business dealings with any person or entity that

23   purchased a keyword that consists in whole or in part of AMERICAN BLIND MARKS in

24   Google's Adwords advertising program;

25       25.    American Blind's relationship or business dealings with any person or entity that

26   American Blind allows to use the AMERICAN BLIND MARKS in the text or title of Sponsored

27   Links appearing on Google.

28

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111. On **February 15, 2006**, I served the following document:

**Notice of 30(b)(6) Deposition of American Blind and Wallpaper Factory, Inc.**

☑    by **FACSIMILE TRANSMISSION (IKON)**, by placing a true and correct copy with IKON Office Solutions, the firm's in-house facsimile transmission center provider, for transmission on this date. The transmission was reported as complete and without error.

Robert N. Phillips, Esq.                    Caroline C. Plater, Esq.
Howrey Simon Arnold & White, LLP            David A. Rammelt, Esq.
525 Market Street, Suite 3600               Kelley Drye & Warren LLP
San Francisco, CA  94105-2708               333 West Wacker Drive
*Facsimile:    415/848-4999*                Chicago, IL  60606
                                            *Facsimile:    312/857-7095*

Executed on February 15, 2006, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Robert W. Thomas*

Robert W. Thomas

**EXHIBIT H**

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE

### SUITE 2600

### CHICAGO, ILLINOIS 60606

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2501

EMAIL: cplater@kelleydrye.com

February 22, 2006

**VIA FACSIMILE**

Klaus Hamm
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Re:   Google Inc. v. American Blind & Wallpaper Factory, Inc.

Dear Klaus:

We are in receipt of Google's Notice of 30(b)(6) Deposition of American Blind & Wallpaper Factory, Inc. However, the corporate representative and president of American Blind, Steve Katzman, is not available the week of March 15, 2006, as he will be on his honeymoon at that time. Please provide us with additional dates after the week of the March 15, 2006.

Sincerely,

Caroline Plater

Caroline C. Plater

CCP:ccp

cc:   David A. Rammelt