KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
MARK A. LEMLEY - #155830
KLAUS H. HAMM - #224905
AJAY S. KRISHNAN - #222476
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff and Counter Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, inclusive,<br><br>Defendants. | Case No. C 03-5340-JF (RS)<br><br>**GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)**<br><br>Date: August 9, 2006<br>Time: 9:30 a.m.<br>Dept: 4<br>Judge: Honorable Richard Seeborg<br><br>Date Comp. Filed:   November 26, 2003<br><br>Trial Date: May 15, 2007 |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.,<br><br>Counter Plaintiff,<br><br>v.<br><br>GOOGLE INC., AMERICA ONLINE, INC., NETSCAPE COMMUNICATIONS CORPORATION, COMPUSERVE INTERACTIVE SERVICES, INC., ASK JEEVES, INC. and EARTHLINK, INC.,<br><br>Counter Defendant/<br>Third-Party Defendants. | |

376695.02

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO
COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

Dockets.Justia.com

## I.    INTRODUCTION

American Blind & Wallpaper Factory Inc.'s ("American Blind") motion to compel is the height of absurdity. According to American Blind, it is somehow Google Inc.'s responsibility to either (1) have a corporate designee memorize hundreds of pages of raw data and come to a deposition prepared to perform calculations on that data in her head, or (2) anticipate *both* that American Blind would want to waste time in a deposition having a witness perform calculations it could as easily do itself, *and* that American Blind's counsel would nonetheless fail to bring the previously-produced data to the deposition, thereby requiring Google to guess that those exhibits would be required and bring them in his stead.

American Blind, of course, cites no authority for this remarkable proposition: instead, it merely asserts without citation that "[c]ommon sense and the Federal Rules require that, at a minimum, if a corporate designee cannot memorize a document, but cannot answer a single question without it, the document must be brought to the deposition." Mot. 3. In place of authority, American Blind relies on numerous mischaracterizations and outright falsehoods in an attempt to convert its own counsel's failure to prepare for a deposition into nefarious gamesmanship by Google. As a result, it is necessary to present the Court with a full and accurate summary of this dispute, in order that the Court may see the folly of this motion.

## II.    STATEMENT OF FACTS

This case has been pending for nearly three years. American Blind's core contention is that Google's AdWords program violates American Blind's trademark rights by allowing advertisers to "trigger" advertisements based on users' search terms. American Blind claims that, when an ad is displayed in response to a user's query for (for example) "American Blind & Wallpaper Factory," that ad infringes, even if there is no use of American Blind's claimed trademarks[1] anywhere in the ad or on the website to which it links.

Google disputes this contention, and believes that using a trademark solely as a triggering

---

[1] American Blind has registered trademarks such as "American Blind & Wallpaper Factory" and "decoratetoday." It also makes much broader claims of rights to unregistered generic terms such as "American Blind." Google disputes those broader claims, but nonetheless has responded to discovery regarding those generic terms.

criterion is not "use" under the Lanham Act at all.  Numerous courts agree with Google: *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp.2d 402, 415 (S.D.N.Y. 2006); *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 408 (2d Cir. 2005); *Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003).  But regardless of the merits, Google does not dispute that evidence of which advertisers have triggered which ads off which keywords is discoverable, and has repeatedly produced that information.  Last October, Google provided American Blind with a summary of every advertiser that had used any of American Blind's claimed marks either as keywords or in the text of their advertisements.  That data was current through June, 2005.  In the cover letter to American Blind, Google advised American Blind of that fact:

> This data was current in June.  Google reserves the right to supplement its responses, and likely will do so near the close of fact discovery.

Declaration of Klaus H. Hamm ("Hamm Decl."), filed herewith, Ex. A.

As the close of discovery approached, Google did precisely that:  on April 6, 2006, Google provided American Blind with current, more detailed data from its advertising database. Google did not, however, "bury" that data in thousands of pages of documents, as American Blind claims.  Instead, it specifically called American Blind's attention to the data, both by "Bates" number and subject matter:

> Finally, GGLE00020950 - GGLE0021227, is data from AdsDB, which is a Google database for ad serving and reporting.  This data is responsive to many of American Blind's document requests, including but not limited to request numbers 1-3, 6, 17, 18, 24, 28 and 29.  Google, however, does not necessarily intend to give significance, legal or otherwise, to the terminology used in these requests. For example, request number 3 refers to the "selling or marketing of trademarks in connection with the AdWords program," and Google does not sell or market trademarks in connection with AdWords.  As a result, the data provided is responsive to this request only insofar as this request accurately reflects the governing law and the facts of this case.

Hamm Decl. Ex. B.

Because it is important to understand the nature of this document, we submit it, in its entirety, to the Court.  Hamm Decl. Ex. C.  It is a spreadsheet, comprising hundreds of pages of raw data. It lists, for every single instance is which any advertiser has triggered an ad off any of

2
GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1  the terms American Blind listed in its discovery requests, every available piece of information in
2  Google's possession:  the dates on which the ad began and stopped running, the text of the ad,
3  the number of times it appeared ("impressions"), the number of times a user clicked on the ad,
4  the amount the advertiser paid, the average "cost per click," and so forth.  From this data, anyone
5  (including American Blind, its counsel, and its experts) can extract whatever they please:  if one
6  wants to know how much Google was paid for ads triggered by the word "decoratetoday" during
7  2003, one need only select those entries and add up the amounts.  These are simple mathematical
8  calculations, based on data now equally available to both parties.  These are not, however,
9  calculations that anyone at Google has ever done, or has ever had any reason to do.
10         The next week, on April 12, 2006, American Blind took the 30(b)(6) deposition of
11 Google's Alana Karen.  Ms. Karen was designated to testify in response to topic No. 4, which is
12 the topic at issue in American Blind's motion:

> The display, bidding, sale, purchase or other use (or claimed use) of American
> Blind's trademarks, as identified in the counterclaims, in connection with
> Google's Adwords program, including the purchase of such trademarks by any
> American Blind competitor or by any Google advertiser or bidder other than
> American Blind.

16 Declaration of David A. Rammelt ("Rammelt Decl."), dated June 21, 2006, Ex. D at 3.
17         Ms. Karen was familiar with the contents of the spreadsheet, and was specifically
18 prepared to answer the sorts of questions one would expect to be asked, such as what each
19 column in the spreadsheet meant, how the data was collected, and the like.  Rammelt Decl. Ex. C
20 at 228:21-24; 230:16-23.  Ms. Karen had not, of course, attempted to memorize the tens of
21 thousands of entries in the spreadsheet.  At her deposition, however, it became obvious that
22 American Blind's counsel had never even looked at the data:  he had brought neither the April 6
23 spreadsheet nor the October data as an exhibit, and expressed surprise when informed that
24 American Blind already had the information he was seeking.  Instead, he proceeded to ask Ms.
25 Karen a long series of questions concerning mathematical totals of the data in the spreadsheet
26 and dozens of other terms that American Blind had never indicated it would ask about:
27         MR. RAMMELT:  Q.  Since 2003, what revenues has Google generated by the
28

3
GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO
COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1     sale of the terms identified in Deposition Exhibit Number 6?[2]

2     MR. PAGE: Objection. Asked and answered. You just asked exactly that question.

3

4     THE WITNESS: I don't know.

    MR. RAMMELT: Q. And I apologize if I am asking the same question, but what

5     I'm trying to do is get a temporal component. So, is it fair to say that you don't know what revenues Google generated by the sale of the terms identified in

6     Exhibit 6 in 2003; is that a correct statement?

7     A. Yes.

8     Q. And is it also a correct statement that you don't know what revenues Google generated by the sale of the terms identified in Deposition Exhibit Number 6 in

9     2004?

10     A. Yes.

11     Q. And would you have the same answer for 2005?

12     A. Yes.

13     Q. And would you have the same answer for 2006 to the present?

14     A. Yes.

15     Q. And to the extent that Google has generated revenues from the sale of the terms identified in Deposition Exhibit Number 6, you have no idea what

16     percentage of that revenue was derived from the sale of those terms as keywords as opposed to the sale of those terms as ad text, correct?

17

    A. Correct.

18

    Q. And do you know how many of the terms identified in Deposition Exhibit

19     Number 6 were purchased as keywords, not ad text but keywords alone in 2003?

20     A. No.

21     Q. And would you have the same answer for 2004, 2005, and 2006?

22     A. Yes.

23 Rammelt Decl. Ex. C at 226:23-228:9.

24     At that point, counsel for Google reminded Mr. Rammelt that the answers to all of his

25 questions were contained in the data that had already been produced to American Blind, and

26 ---

27 [2] Deposition Exhibit 6 was a letter written by American Blind's counsel in 2002, which lists 37 phrases for which American Blind claimed trademark protection. Hamm Decl. Ex. D. Topic No. 4 of American Blind's deposition notice described only the three trademarks that American

28 Blind trademarks "identified in the counterclaims[.]" Rammelt Decl. Ex. D at 3.

4

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1  suggested that, if American Blind had questions about that data, it would help to show it to the

2  witness.[3]  The following colloquy ensued:

3      MR. PAGE:  David, can I ask you a question?

4      MR. RAMMELT:  Sure.

5      MR. PAGE:  You know that we have produced all this data to you in a single spreadsheet, right?  Keyword by keyword, advertiser by advertiser.

6

7      MR. RAMMELT:  I know you have produced something and it wasn't clear to me, and that's the reason that we wanted to take a 30(b)(6) witness that was testifying on behalf of the company.

8

9      MR. PAGE:  Okay.

    MR. RAMMELT:  So --

10

11      MR. PAGE:  Why don't you show her that spreadsheet?  She can explain any question you have about it.  She is prepared specifically to do that for you.

12      MR. RAMMELT:  Q.  Well, is your testimony here today, on behalf of Google, dependent on your ability to review a spreadsheet created by Google?

13

14      MR. PAGE:  Well, objection.  It's argumentative.

    MR. RAMMELT:  I'm asking.

15

16      MR. PAGE:  Did she memorize all the data in it?  No, she didn't.  Would it help her to be able to see it?  Yes, it would.

17      MR. RAMMELT:  No.  Does your ability to completely and truthfully answer questions about bidding on American Blind's trademarks depend on your ability to look at a spreadsheet that was prepared by Google?

18

19      MR. PAGE:  Object as argumentative.

20      THE WITNESS:  No, but I don't know the answers to these questions.

21      MR. RAMMELT:  Okay.  In order to give me a truthful, accurate, and complete answer to the questions I have asked you, do you need to rely on a spreadsheet that Google prepared?

22

23      A.  No.

24      Q.  And did you bring with you today the spreadsheet that Mr. Page said that you need in order to be able to answer the questions that I have asked you?

25

26      MR. PAGE:  Objection.  You bring the exhibits, she doesn't.

---

27  [3] The data Google provided to American Blind is about the terms that American Blind sought information in its written discovery: American Blind & Wallpaper Factory, American Blind

28  Factory, American Blind, American Blinds, decoratetoday and decoratetoday.com.

5

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1    MR. RAMMELT:  You know what, I don't want to argue, but if you present a --

2    MR. PAGE:  If your position is she should have memorized hundreds of pages of spreadsheet data rather than you showing it to her, that's ridiculous.

3

4    MR. RAMMELT:  Not at all.  But if you present a 30(b)(6) witness whose testimony is going to depend on that, you have to bring it or the witness has got to bring it.

5

6    MR. PAGE:  No.

7    MR. RAMMELT:  You can't just show up and say, "Well, I don't know the answers to these questions.  They are set forth on a spreadsheet.  I don't have it.  I didn't bring it."  You need to --

8

9    MR. PAGE:  Fine.  If you want to play the game of establishing that she does not have committed to memory any of the figures on the data we have already produced to you, go right ahead.  If you want to ask her questions about that data, show it to her.  You can ask her what the different columns mean, what the different categories mean.

10

11
*Id.* at 228:10-230:23.

12

13    American Blind's counsel, however, declined to ask any additional questions concerning

14    the spreadsheet data.  At the conclusion of the deposition, it became clear that American Blind's

15    counsel in fact was unaware of the existence of the document, when in colloquy he described the

16    data in it as "dated," apparently referring to the data, current through June, 2005, that had been

17    produced back in October:

18    [MR. RAMMELT]:  I also am reserving my right to ask questions about the document that Michael mentioned.  I was never told that any of your testimony was going to in any way depend on anything that had been produced to us in this case, the spreadsheet.  Moreover, the one spreadsheet that was produced to us is extremely dated.  So, your testimony today, assuming I had known I needed to bring that in order to get answers from you, would have necessarily been dated, and I wouldn't have been able to ask you about activity over the last six months and revenues and things that are relevant to my damages.  So, I reserve my right to ask additional questions based on that spreadsheet that you mentioned.

19

20

21

22

23    MR. PAGE:  Okay.  Briefly to respond, for the record, it is not my understanding that the data we have given you is extremely dated.  I believe it's up to date as of this month.  I'm not certain, but that was my recollection.  At any rate, the numbers in the spreadsheet are the numbers in the spreadsheet.  So, being able to ask her what the totals are won't add to the knowledge you can extract from it.  To the extent you wanted to ask her about the interpretation of what various columns or terms in it mean, you were, of course, free to ask her about that document like you were free to ask her about any other document.  And your choice not to bring it and ask her questions about it does not give rise to you hav[ing] the right to reopen the deposition when you change your mind, and that's my record.

24

25

26

27

28

6
GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1  *Id.* at 238:8-239:11.

2  After the conclusion of the deposition, American Blind's counsel continued to insist that

3  he be allowed to resume Ms. Karen's deposition to re-ask his questions concerning the

4  spreadsheet data. Google's counsel explained, repeatedly, that the answer to each of those

5  questions was easily ascertained by reference to the data already produced by Google:

> We have not yet received Ms. Karen's transcript. However, as you know, the questions at issue were of the form "how much was spent on ads triggered by [keywords] during [year]," "how much was spent on ads triggered by [keywords] in total," "how many advertisers have keyed ads off [particular keywords]," and the like. These are not things that anyone at Google knows, for the simple reason that no one has ever bothered to add up the data in the ways you want to. But the data from which those simple calculations can be made are all in the spreadsheet, and you can perform them as easily as we. Your request that I identify specific lines at which the answers can be found reflects a fundamental misconception: your questions did not seek particular data, but rather mathematical conclusions from those data. For example, if you want to know how many different advertisers used a particular keyword, sort by keyword and advertiser, and count. This is not a task that Ms. Karen could do, or is required to do, at deposition, either from memory or aided by a printout. Similarly, if you want to know the dollars spent on ads triggered by a particular keyword, sort by keyword, and add. For your convenience, I attach a copy of the spreadsheet.

Hamm Decl. Ex. E.

16  Google also provided American Blind with an electronic copy of the spreadsheet,[4] *id.,*

17  and offered to assist American Blind if it felt that there was any information it could not glean

18  from the spreadsheet:

> As I told you yesterday, if you have real questions to which you do not have the answers, just tell me, and I'll get them for you. If you think it is useful to continue to argue about whether we had some obligation to (1) anticipate that you would ask Ms. Karen to calculate spreadsheet totals in her head at the deposition, (2) anticipate that you would nevertheless fail to bring a copy of the spreadsheet as an exhibit, and (3) therefore provide you with one ourselves, I suppose we can continue in this vein. But I would prefer to move on to more fruitful pursuits.

23  *Id.* In response, American Blind filed the instant motion.

### III.    ARGUMENT

25  While Rule 30(b)(6) requires a corporation to prepare its designee about those topics

---

[4] American Blind has chosen not to advise the Court that it was given an electronic version of the spreadsheet, instead complaining at length about difficulties it claims to have encountered in printing the "tiff" version. Those difficulties are a mystery to Google: we have no problem printing the .tiff version in a matter of moments. But given that American Blind has the Excel

7

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1  described "with reasonable particularity," it "is not designed to be a memory contest." *Equal*
2  *Employment Opportunity Comm'n v. Am. Int'l Group, Inc.*, 1994 WL 376052, at *3 (S.D.N.Y.
3  July 18, 1994); *see also Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 137, 143
4  (D.D.C. 1998) ("Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but need
5  not be subjected to a 'memory contest.'") (quoting *Zappia Middle East Construction Co. v.*
6  *Emirate of Abu Dhabi*, 1995 WL 686715 (S.D.N.Y. Nov. 17, 1995)).  And if a party wants
7  highly detailed information that is found in a particular document, it is sufficient to provide that
8  party with the document.  For example, in *Equal Employment Opportunity Comm'n*, the court
9  held that the EEOC did not violate Rule 30(b)(6) by presenting a witness who could not answer
10  certain questions about a file.  "It is not reasonable to expect any individual to remember every
11  fact in an EEOC investigative file[.]"  *Id.*   Instead, because the EEOC produced the actual file,
12  the deposing party did "not have a legitimate need to inquire into facts contained in the file."  *Id.*
13  American Blind's motion thus fails for fundamental reasons:  it seeks highly detailed
14  information that (1) American Blind already has, (2) no one at Google knows, and which (3)
15  American Blind was free to seek at Ms. Karen's deposition had its counsel brought the
16  documents he had questions about.  American Blind cannot identify (either to this Court or to
17  Google) any information that it has been denied.  To the contrary, the answers to virtually any
18  question American Blind might have about its claimed trademarks are contained in data
19  previously provided to American Blind.  The numbers are what they are, everyone has them, and
20  no one disputes them.  If American Blind wants to add up the data however it pleases, it can
21  easily do so.
22  More importantly, the raw data already in American Blind's possession is the sum of
23  Google's knowledge regarding any question American Blind have about the terms described in
24  its deposition notice.  Regardless whether Ms. Karen (or anyone else) had the hundreds of pages
25  of data before her at deposition, her answers would not change:  no one at Google knows the
26  answers to American Blind's questions (such as "Since 2003, what revenues has Google
27  generated by the sale of the [American Blind claimed marks]?"), because no one at Google has
28

version as well, those difficulties are wholly irrelevant.

8

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO
COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

1 gone through the exercise of adding up the data.  Ms. Karen's answers in a reconvened

2 deposition, with the data in a pile in front of her, would be unchanged: "I don't know.  But the

3 data is right here, and you can add it up as easily as I can."

4     It is American Blind's counsel's job to review documents produced to them, and to select

5 whatever exhibits they wish to question a witness regarding.  American Blind cites no authority

6 for its argument that Google should have performed that function for them.  But in this instance,

7 it would make no difference if American Blind's view were the law, as the exhibit in question

8 would not have mattered:  the data are the data, and nothing Google's witness could have said if

9 presented with the data would have changed those data.

10     Moreover, American Blind has not complied with Rule 30(b)(6)'s requirement that it set

11 forth its deposition topics with "reasonable particularity."  Deposition topic No. 4 sought

12 testimony about the "display, bidding, sale, purchase or other use (or claimed use) of American

13 Blind's trademarks, as identified in the counterclaims, in connection with Google's AdWords

14 program[.]"  American Blind's counterclaims identify three trademarks.  Counterclaims ¶ 18.

15 American Blind's questions to Ms. Karen, however, sought detailed information about "all of the

16 marks and phrases and names identified in Deposition Exhibit Number 6," *i.e.*, some 37 terms,

17 many of which bear only a passing resemblance to the three trademarks identified in American

18 Blinds counterclaims.  Rammelt Decl. Ex. C at 223:5-6; Hamm Decl. Ex. D.  For example,

19 American Blind's counterclaim identifies its trademarks as "American Blind Factory &

20 Wallpaper Factory", "American Blind Factory" and "Decoratetoday", yet American Blind

21 demanded that Ms. Karen provide calculations about a group of terms that included "american

22 wall covering" and "decorate today discount".  Hamm Decl. Ex. D.

23     If American Blind wanted testimony about these 37 terms it should have identified them

24 with reasonable particularity.  And, if American Blind wanted precise information about them,

25 such as how many of the 37 terms were purchased as keywords, but not ad text in 2003, it should

26 have described this topic with reasonably particularity in its deposition notice.  But it did not.  As

27 a result, it should not now complain that Ms. Karen could not provide answers to its questions.

28

9

GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO
COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02

**IV.   CONCLUSION**

Rule 30(b)(6) is not a memory exam and it is not a guessing game. American Blind asked questions to Ms. Karen to which she could not possibly have anticipated or memorized the responses. Now it seeks to re-depose her even though it has a document containing the information it wants and even though Ms. Karen still cannot be expected to memorize the hundreds of pages of data. No possible purpose can be served by compelling such an empty exercise. American Blind's motion should be denied, and Google awarded its fees and costs for opposing it.

Dated:  July 12, 2006                         KEKER & VAN NEST, LLP


                                              By: /s/ Klaus H. Hamm
                                                  KLAUS H. HAMM
                                                  Attorneys for Plaintiff and Counter Defendant
                                                  GOOGLE INC.

10
GOOGLE INC.'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a)
CASE NO. C 03-5340-JF (RS)

376695.02