# EXHIBIT A

MANUAL FILING NOTIFICATION

Regarding Exhibit A to the DECLARATION OF KLAUS H. HAMM IN SUPPORT OF GOOGLE'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a).

This filing is in paper form only, and is being maintained in the case file in the Clerk's office. If you are a participant in this case, this filing will be served in hard-copy shortly.

This document was not electronically filed because it is under seal.

376905.01

**EXHIBIT B**

LAW OFFICES
# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

KLAUS H. HAMM
KHAMM@KVN.COM

April 6, 2006

**VIA FEDERAL EXPRESS**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
26th Floor
Chicago, IL  60606

Re: <u>Google Inc. v. American Blind & Wallpaper Factory, Inc.</u>,
SDC ND Cal. Case No. C-03-5340

Dear David:

Enclosed please find documents Bates labeled GGL005572 – GGL005970. The documents labeled GGL005572 - GGL005710 were collected from Michael Kwun, and consist of papers and presentations regarding, among other things, Google's trademark policy regarding keywords. The range GGL005711 – GGLE005970 is information from the Google AdWords Help Center.

Also please find enclosed a CD labeled GGLE003. The range GGLE00018969 - GGLE19809 consists of emails collected from Rose Hagan; GGLE00019810 – GGLE00019864 are emails collected from Rosalyn Huynh; and the range GGLE00019865 – GGLE00019867 is an email collected from Tu Tsao. GGLE00019868 – GGLE00020949 are documents from Google's customer service interface program and are organized by ticket number (generally visible in the subject line).

Finally, GGLE00020950 - GGLE0021227, is data from AdsDB, which is a Google database for ad serving and reporting. This data is responsive to many of American Blind's document requests, including but not limited to request numbers 1-3, 6, 17, 18, 24, 28 and 29. Google, however, does not necessarily intend to give significance, legal or otherwise, to the terminology used in these requests. For example, request number 3 refers to the "selling or marketing of trademarks in connection with the AdWords program," and Google does not sell or market trademarks in connection with AdWords. As a result, the data provided is responsive to this request only insofar as this request accurately reflects the governing law and the facts of this case.

370576.01

David A. Rammelt, Esq.
April 6, 2006
Page 2

Should you have questions, please feel free to contact me.

Very truly yours,

Klaus H. Hamm

KHH:daj
Enclosures

370576.01

**EXHIBIT C**

## MANUAL FILING NOTIFICATION

Regarding Exhibit C to the DECLARATION OF KLAUS H. HAMM IN SUPPORT OF GOOGLE'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a).

This filing is in paper form only, and is being maintained in the case file in the Clerk's office. If you are a participant in this case, this filing will be served in hard-copy shortly.

This document was not electronically filed because it is under seal.

376905.01

# EXHIBIT D

MANUAL FILING NOTIFICATION

Regarding Exhibit D to the DECLARATION OF KLAUS H. HAMM IN SUPPORT OF GOOGLE'S OPPOSITION TO AMERICAN BLIND & WALLPAPER FACTORY, INC.'S MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO F.R.C.P. 37(a).

This filing is in paper form only, and is being maintained in the case file in the Clerk's office. If you are a participant in this case, this filing will be served in hard-copy shortly.

This document was not electronically filed because it is under seal.

376905.01

**EXHIBIT E**

-----Original Message-----
**From:** Michael Page
**Sent:** Tuesday, May 02, 2006 9:23 AM
**To:** Rammelt David A.; sgreenspon@kelleydrye.com
**Subject:** RE: Alana Karen Deposition

At the risk of beating the horse, I feel I need to explain a bit better.

First, the spreadsheet was not--as you continue to assert--buried in 111,000 pages. We went out of our way to update the data, provided the updated version to you in advance of Ms. Karen's depo, and specifically called your attention to it in Klaus's letter of April 6 (including, at your insistence, listing each document request to which it was responsive):

"Finally, GGLE00020950 - GGLE0021227, is data from AdsDB, which is a Google database for ad serving and reporting. This data is responsive to many of American Blind's document requests, including but not limited to request numbers 1-3, 6, 17, 18, 24, 28 and 29. Google, however, does not necessarily intend to give significance, legal or otherwise, to the terminology used in these requests. For example, request number 3 refers to the "selling or marketing of trademarks in connection with the AdWords program," and Google does not sell or market trademarks in connection with AdWords. As a result, the data provided is responsive to this request only insofar as this request accurately reflects the governing law and the facts of this case."

It was apparent from your comments at the depo (i.e., stating that the data we had produced was "very stale") that you had not even reviewed the spreadsheet in preparation for the deposition. As to your comment that we failed to provide documents at the deposition in response to a document "rider," we had already provided the documents in advance of the deposition. If in the future you would prefer that we not provide documents until the day of each deposition, we will happily accomodate that request.

We have not yet received Ms. Karen's transcript. However, as you know, the questions at issue we of the form "how much was spent on ads triggered by [keywords] during [year]," "how much was spent on ads triggered by [keywords] in total," "how many advertisers have keyed ads off [particular keywords]," and the like. These are not things that anyone at Google knows, for the simple reason that no one has ever bothered to add up the data in the ways you want to. But the data from which those simple calculations can be made are all in the spreadsheet, and you can perform them as easily as we. Your request that I identify specific lines at which the answers can be found reflects a fundamental misconception: your questions did not seek particular data, but rather mathematical conclusions from those data. For example, if you want to know how many different advertisers used a particular keyword, sort by keyword and advertiser, and count. This is not a task that Ms. Karen could do, or is required to do, at deposition, either from memory or aided by a printout. Similarly, if you want to know the dollars spent on ads tiggered by a particular keyword, sort by keyword, and add. For your convenience, I attach a copy of the spreadsheet.

As I told you yesterday, if you have real questions to which you do not have the answers, just tell me, and I'll get them for you. If you think it is useful to continue to argue about whether we had some obligation to (1) anticipate that you would ask Ms. Karen to calculate spreadsheet totals in her head at the deposition, (2) anticipate that you would nevertheless fail to bring a copy of the spreadsheet as an exhibit, and (3) therefore provide you with one ourselves, I suppose we can continue in this vein. But I would prefer to move on to more fruitful pursuits.

Mike

---

**From:** Rammelt David A. [mailto:DRammelt@KelleyDrye.com]
**Sent:** Tuesday, May 02, 2006 3:33 AM
**To:** Michael Page
**Subject:** Alana Karen Deposition

Thank you for your note yesterday and for taking a half hour to discuss this matter. Clearly, you and I differ with regard to the obligations of a 30(b)(6) deponent. As the designee, if the deponent intends to testify about a subject that requires a document, it is incumbent upon the designee or the company to provide that document. Indeed, we included a document rider with our subpoena if I am not mistaken, and nothing was produced at the deposition.

Your position is that it was incumbent upon us to wade through over 111,000 pages of documents and guess which ones the deponent would rely upon. Clearly, we just differ with respect to the law.

If you believe that all of the questions to which Ms. Karen testified "I don't know" can easily be answered by reference to some spreadsheet, I invite you to idenitfy the precise page and column of each such spreasheet(s) that would correspond with and answer each of the questions to which Ms. Karen testified "I don't know" during the last hour of her deposition. The questions can be located easily in the transcript.

As for the future deponents, please either produce or identify any documents that the witness requires in order to testify as a corporate designee. Also, please make sure we have seen the consumer confusion experiments Mr. Fuloria referenced in his prior testimony.

David A. Rammelt
Kelley Drye & Warren LLP
333 W. Wacker Drive
Chicago, Illinois 60606
(312) 857-7077 (direct)
(312) 857-7095 (fax)
drammelt@kelleydrye.com

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.