1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   KLAUS H. HAMM - #224905
3  AJAY S. KRISHNAN - #222476
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6
   Attorneys for Plaintiff and Counter Defendant
7  GOOGLE INC.

8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

11

12 GOOGLE INC., a Delaware corporation,        Case No. C 03-5340-JF (EAI)

13                              Plaintiff,     **COUNTER-DEFENDANT GOOGLE
                                               INC.'S MEMORANDUM OF POINTS
                                               AND AUTHORITIES IN SUPPORT OF
14        v.                                   ITS MOTION TO COMPEL COUNTER-
                                               PLAINTIFF ABWF TO SATISFY ITS
15 AMERICAN BLIND & WALLPAPER                  OUTSTANDING DISCOVERY
   FACTORY, INC., a Delaware corporation       OBLIGATIONS**
16 d/b/a decoratetoday.com, Inc., and DOES 1-
   100, inclusive,                             Date:      October 18, 2006
17                                             Time:      9:30 a.m.
                               Defendants.     Courtroom: 4
18                                             Judge:     Hon. Richard Seeborg

19 AMERICAN BLIND & WALLPAPER
   FACTORY, INC., a Delaware corporation
20 d/b/a decoratetoday.com, Inc.,

21                         Counter-Plaintiff,

22        v.

23 GOOGLE INC.,

24                         Counter-Defendant.

25

26

27

28

---

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTS ...................................................................................................................1

     A.     ABWF alleges that Google's AdWords program violates its trademarks by allowing ABWF's competitors to bid on keywords resembling those marks.......................................................................1

     B.     With the discovery cut-off having past, ABWF still has substantial outstanding discovery obligations...........................................2

III.   ARGUMENT ..........................................................................................................2

     A.     ABWF must produce more readable versions of its Online Customer Satisfaction Survey and all documents associated with this survey. .......................2

     B.     ABWF must produce copies of spreadsheets such that all of the information in the cells is readable. .................................................4

     C.     ABWF must produce an adequately-prepared Rule 30(b)(6) deposition witness on the issue of damages. .................................................5

     D.     ABWF must produce Jeffrey Alderman for a supplemental 30(b)(6) deposition and must produce the responsive documents about which he testified.....................................................................6

     E.     ABWF must produce substantive responses to Google's First Set of Requests for Admissions..................................................................8

     F.     ABWF must provide dates that it began and ceased using the four names that it has used in communications with customers to refer to its retail business.........................................................................12

     G.     If ABWF is unable to produce all of the Kaden questionnaires, it must explain why....................................................................13

     H.     ABWF must either produce all documents related to the "American Wallpaper Survey" or explain why such documents do not exist. .......................14

     I.     If ABWF is unable to find the original copy of ABWF 1308 – 1310, it must explain why. ....................................................................16

     J.     ABWF must either produce documents "as they are kept in the usual course of business" or organize and label them to correspond with the categories in Google's document requests.......................................16

IV.   CONCLUSION........................................................................................................20

i

379927.01

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbott v. United States*,
177 F.R.D. 92 (N.D. N.Y. 1997) ........................................................................10

*Aureflam Corp. v. Pho Hoa Hiep, Inc.*,
2006 WL. 2411411 (N.D. Cal. Aug. 18, 2006) ...........................................4, 16

*Buchanan v. Consol. Stores Corp.*,
206 F.R.D. 123 (D. Md. 2002) ...................................................................4, 15

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*,
408 F.3d 1142 (9th Cir. 2005) ...........................................................................10

*California v. The Joules Fribourg*,
19 F.R.D. 432 (N.D. Cal. 1955)......................................................................9, 10

*Cardenas v. Dorel Juvenile Group, Inc.*,
230 F.R.D. 611 (D. Kan. 2005) .........................................................................17

*Hagemayer N. Am., Inc. v. Gateway Data Scis. Corp.*,
222 F.R.D. 594 (E.D. Wis. 2004) ...............................................................4, 16

*Herrera v. Scully*,
143 F.R.D. 545 (S.D.N.Y. 1992) ...................................................................9, 11

*iSmart Int'l Ltd. v. I-Doc-Secure, LLC*,
2006 WL. 2263910 (N.D.Cal. Aug. 8, 2006) ...........................................4, 8, 16

*Marchand v. Mercy Medical Ctr.*,
22 F.3d 933 (9th Cir. 1994) ...............................................................................10

*Nevada Power Co. v. Monsanto Co.*,
891 F. Supp. 1406 (D. Nev. 1995).......................................................................5

*Playboy Enterprises, Inc. v. Welles*,
60 F. Supp. 2d 1050 (S.D. Cal. 1999)....................................................................9

*Sony Electronics, Inc. v. Soundview Technologies, Inc.*,
217 F.R.D. 104 (D. Conn. 2002) ...........................................................................6

## FEDERAL STATUTES

Fed. R. Civ. P. 30(b)(6) .................................................................................2, 5

Fed. R. Civ. P. 34(b) ....................................................................16, 17, 18

Fed. R. Civ. P. 36.......................................................................................9, 10

Fed. R. Civ. P. 37(a) ..........................................................................................5

ii

379927.01

1

## I.    INTRODUCTION

2        By this motion, Google Inc. seeks to compel American Blind & Wallpaper Factory, Inc.

3   ("ABWF") to comply with a myriad of unfulfilled discovery obligations.  While ABWF was

4   wasting the Court's time by unsuccessfully moving to compel Google to produce numerous

5   witnesses for deposition and to respond to requests for admission, it was simultaneously

6   committing discovery violation after discovery violation.  Google has repeatedly asked ABWF to

7   complete its document production and to provide substantive responses to its interrogatories and

8   requests for admission.  But ABWF refuses even though its obligations are clear.

9        ABWF's violations are numerous and laid out in detail in this motion.  By way of

10  example, ABWF refuses to produce documents that one of its employees testified he relied upon

11  this spring in reaching conclusions about advertising on Google.  As another example, ABWF

12  has produced spreadsheets that hide—apparently because of printing errors—much of the

13  information they contain.  Yet ABWF refuses to produce the missing information even though it

14  does not deny that this information is in its possession.  And, as a third example, even though

15  ABWF earlier moved for an order compelling Google to produce documents as kept in the usual

16  course of business or to label them to correspond with the categories in the request, American

17  Blind has refused to conduct its document production in this manner.

18       Since ABWF has not complied with its discovery obligations and Google's exhaustive

19  efforts to resolve these violations informally have failed, Google moves for an order from the

20  Court on ten issues, described below.

21                        ## II.    FACTS

22  **A.    ABWF alleges that Google's AdWords program violates its trademarks by allowing
        ABWF's competitors to bid on keywords resembling those marks.**

23       In brief, the substance of this case is as follows:  ABWF—the nominal Defendant and

24  Counter-Plaintiff in this case—claims that Google's AdWords program infringes ABWF's

25  trademarks.  Google's AdWords programs allows advertisers to place targeted advertising on the

26

27

28

1

results page of a Google search.[1]  Specifically, when a user types a query into Google's search engine, that query can trigger advertisements that will be displayed in special sections of the search results page.[2]  Google allows advertisers to bid on keywords, such that if a user's query contains that keyword or variants of that keyword, the advertiser's advertisement will be more likely to be displayed on the search results page.[3]

This case arises out of Google's policy of permitting advertisers to bid on keywords that include their competitors' trademarks.[4]  ABWF claims that because Google permits ABWF's competitors to bid on keywords such as "American Blinds" and "American Blind and Wallpaper Factory"—which are identical or similar to ABWF's alleged trademarks—Google infringes ABWF's trademarks.[5]  This is so even though Google prohibits advertisers from including a competitor's trademark in the text of their advertisements.[6]

**B.    With the discovery cut-off having past, ABWF still has substantial outstanding discovery obligations.**

The cut-off for fact discovery in this case was August 29, 2006.  This motion seeks to compel discovery in response to discovery requests, interrogatories, requests for admission, and a Rule 30(b)(6) deposition notice.  With regard to all of the issues raised herein, Google attempted to meet and confer with ABWF, but ultimately failed to obtain the discovery it sought.

### III.    ARGUMENT

**A.    ABWF must produce more readable versions of its Online Customer Satisfaction Survey and all documents associated with this survey.**

On August 1, 2006, ABWF produced documents that it described as "an online customer survey conducted by American Blind regarding customer satisfaction with the products and

---

[1] *See* Defendant American Blind & Wallpaper Factory, Inc.'s Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims ("ABWF's Complaint"), ¶ 38.

[2] *Id.*

[3] *Id.*

[4] *Id.*, ¶ 44.

[5] *Id.*, ¶ 43-50.

[6] *Id.*

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

services of American Blind" (the "Online Customer Satisfaction Survey").[7]  These documents are barely readable.  They were printed as a text file that contains so much unreadable metadata, that it is impossible to tell what the document means or how it is organized.  Indeed, ABWF concedes that the documents are "difficult to read,"[8] and ABWF's corporate representative testified that one of the survey documents "looks like a bunch of gobbley gook."[9]  Nonetheless, ABWF's corporate representative did testify that the documents contain customer feedback from an online survey form.[10]  He also testified that ABWF "captures this information and…distributes it in spreadsheets on a weekly basis to [its] management team."[11]  ABWF has never argued that this survey or documents related to it are outside the scope of Google's document requests.

Google has requested a more readable version of the Online Customer Satisfaction Survey documents, as well as all documents associated with the survey, such as analysis of the survey results, documents outlining the survey methodology, and documents indicating the survey questions.  ABWF's position has been unambiguous—more readable versions of the survey documents do not exist and no documents associated with the survey exist.[12]

But how could this possibly be?  ABWF's corporate representative testified that ABWF "captures [the survey] information and distributes it *in spreadsheets* on a *weekly* basis to its management team."[13]  Where are these weekly spreadsheets?  There are nine members of the

---

[7] *See* Declaration of Ajay S. Krishnan in Support of Counter-Defendant Google Inc.'s Motion to Compel Counter-Plaintiff ABWF to Satisfy its Outstanding Discovery Obligations ("Krishnan Decl."), ¶ 21.  The Online Customer Satisfaction Survey actually consists of three documents: a 13-page file entitled "survey data comments 2001.txt" (ABWF 48851 - 48863), a 125-page file entitled "product surveys.txt" (ABWF 48864 – 48987), and a 247-page file entitled "customer surveys.txt" (ABWF 48988 – 49232).  The first ten pages of each of these files are attached to the supporting declaration.  *See id.*, Ex. J.

[8] *Id.*, ¶ 22.

[9] *Id.*, Ex. K at 37:2.

[10] *Id.*, Ex. K at 38-40.

[11] *Id.*, Ex. K at 41:18 – 41:22.

[12] *Id.*, ¶ 22-23.

[13] *Id.*, Ex. K at 41:18 – 41:22 (emphasis added).

3

1    management team,[14] so there should at least be nine copies of each weekly spreadsheet.

2    Moreover, documents must exist that indicate the survey questions, the survey methodology, and

3    analysis of the survey results.

4         ABWF should be compelled to produce readable versions of the survey results and all

5    documents associated with the survey.  If ABWF insists that no such documents exist, ABWF

6    should be compelled to explain, in an affidavit or otherwise, why it is that no responsive

7    documents exist.  *See Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 125 (D. Md. 2002)

8    (holding that a party can be compelled to produce an affidavit outlining document search and

9    collection efforts when there is a basis for disbelieving the party's assertion that no responsive

10   documents exist); *Hagemayer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598

11   (E.D. Wis. 2004) (same); *cf. Aureflam Corp. v. Pho Hoa Hiep, Inc.*, No. C 04-03824 JW (RS),

12   2006 WL 2411411 at *1 (N.D. Cal. Aug. 18, 2006) (requiring responding party to certify by

13   declaration that a diligent search effort was performed when questions are raised as to the

14   adequacy of its representations regarding the existence of documents); *iSmart Int'l Ltd. v. I-Doc-*

15   *Secure, LLC*, No. C 04-03114 RMW (RS), 2006 WL 2263910 at * 3 (N.D.Cal. Aug. 8, 2006)

16   (requiring a responding party to produce a declaration explaining why it could not comply with

17   its production obligations).

18   **B.    ABWF must produce copies of spreadsheets such that all of the information in the
     cells is readable.**

19

20        ABWF has produced at least two sets of spreadsheets—ABWF 5530 – 5534 and ABWF

21   5605 – 7802—that have been printed in such a way that some of the information inside particular

22   spreadsheet "cells" has been omitted.[15]  The bottom line is that given the way ABWF printed the

23   spreadsheets, some of the information contained in the spreadsheet has not been produced.

24        Rather than simply produce either an electronic version of these spreadsheets or a better

25   print-out, ABWF has taken the extreme position that it will not produce any such documents

26   ---
     [14] *Id.*, Ex. K at 42:18 – 42:24.

27   [15] These two sets of spreadsheets are ABWF 5530 – 5534 and ABWF 5605 – 7802.  Because of
     the volume of the second Bates range, Google has provided the first five pages of those
28   spreadsheets as a representative sample.  *See id.*, Ex. L.

---

4

379927.01

1   until Google re-produces all of the spreadsheets it has produced to date in electronic form.[16]  Not

2   only has Google previously produced spreadsheets in electronic form when doing so would assist

3   ABWF, but Google has done so voluntarily.[17]  Moreover, Google has offered to produce any

4   omitted information where, as here, the nature of the print-out precludes the reader from seeing

5   all of the information in the spreadsheet.

6           ABWF should be compelled to produce its spreadsheets in such a way that all of the

7   information in the spreadsheet is visible.

8   **C.    ABWF must produce an adequately-prepared Rule 30(b)(6) deposition witness on
           the issue of damages.**

9

10          Google noticed and took a Rule 30(b)(6) deposition of ABWF.  Topic 19 of the

    deposition notice was: "The injuries and damages allegedly suffered by American Blind as a
11
    result of Google's actions."[18]  ABWF designated Gerald Curran, ABWF's Chief Financial
12
    Officer, to testify on this topic.[19]  Mr. Curran understood that he was responsible for testifying
13
    on Topic 19, and he had met with ABWF counsel to prepare for his deposition.[20]
14
            Yet, Mr. Curran testified that he had done nothing to prepare for testifying on Topic 19.[21]
15
    He also testified that he has never attempted to calculate the damages ABWF would suffer, that
16
    he was not aware of any such calculations, and that "[i]t would be hard to calculate" what portion
17
    of ABWF's decrease in revenues is attributable to Google.[22]
18
            ABWF is obligated to provide a witness that is able to testify fully as to the topics
19
    identified in the notice, and must provide a substitute deponent if it turns out at the deposition
20
    that the original designee is unable to so testify.  Fed. R. Civ. P. 30(b)(6); *Nevada Power Co. v.*
21

22   _____

23   [16] *See id.*, ¶ 24.

24   [17] Google Inc.'s Opposition to American Blind & Wallpaper Factory, Inc.'s Motion to Compel
     and for Sanctions Pursuant to F.R.C.P. 37(a) (Docket Item No. 138) at 7.

25   [18] Krishnan Decl., Ex. I at 3.

26   [19] *Id.*, ¶ 25.

27   [20] *Id.*, Ex. M at 10:11 – 11:4.

     [21] *Id.*, Ex. M at 13:1 – 15:11.
28
     [22] *Id.*

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

*Monsanto Co.*, 891 F.Supp. 1406, 1417-18 (D. Nev. 1995); *Sony Electronics, Inc. v. Soundview Technologies, Inc.*, 217 F.R.D. 104, 112 (D. Conn. 2002).

Given that Mr. Curran was unable to testify as to Topic 19, ABWF should be compelled to produce an adequately prepared corporate designee on that topic.

**D.    ABWF must produce Jeffrey Alderman for a supplemental 30(b)(6) deposition and must produce the responsive documents about which he testified.**

ABWF produced Jeffrey Alderman, its Director of Business Development and E-Commerce, to testify as to Topic 23 in Google's 30(b)(6) Deposition Notice of ABWF, "American Blind's Affiliate Program."[23]  ABWF's Affiliate Program is a marketing program, in which ABWF affiliates—who are third parties that advertise for ABWF on their websites—receive commissions for web traffic that they direct to ABWF's website.  Mr. Alderman testified about a relatively technical issue—the impact on ABWF's sales when ABWF implemented a policy for six weeks in May and June of 2006 of prohibiting affiliates from competing with ABWF when bidding for priority placement in search engine advertising (the "May/June 2006 Affiliate Bidding Experiment")—the specifics of which are not important here.[24]

The important issue is that in testifying about the conclusions he had drawn from the May/June 2006 Affiliate Bidding Experiment, Mr. Alderman testified that he had relied on certain documents (the "Alderman documents"), *which include an analysis of ABWF's natural search results* .[25]  Mr. Alderman's deposition took place on August 4, 2006.[26]  At the deposition itself, ABWF agreed to identify the Alderman documents or to produce them.[27]  Google did not hear back from ABWF.[28]  On August 14, Google reminded ABWF that it had not yet identified

---

[23] *Id.*, Ex. I at 3.

[24] Declaration of Michael H. Page in Support of Counter-Defendant Google Inc.'s Motion to Compel Counter-Plaintiff ABWF to Satisfy Outstanding Discovery Obligations ("Page Decl."), ¶ 4.

[25] *Id.*, ¶ 4.

[26] *Id.*, ¶ 3.

[27] *Id.*, ¶ 4.

[28] *Id.*, ¶ 5.

the Alderman documents.[29]  There was still no response from ABWF.[30]  On August 28, Google

again reminded ABWF to identify the Alderman documents.[31]

On August 30, ABWF referred Google to a certain Bates range of documents that it had

already produced, claiming that these were the Alderman documents.[32]  Google reviewed the

referenced documents, and explained that these could not have been *all* of the Alderman

documents because they did not include *an analysis of ABWF natural search results*.[33]  Next,

ABWF attempted to sidestep the issue by demanding that Google identify the document requests

to which the Alderman documents were responsive.[34]  Google provided eight document requests.

Finally, on September 6, ABWF produced eleven pages of new documents, which were alleged

to be the last of the Mr. Alderman documents.[35]

These newly produced documents raise two issues.  First, these documents amount to the

"good cause" necessary for a supplemental deposition of Mr. Alderman.  Specifically, it is not at

all clear how Mr. Alderman, using these documents, would have arrived at the conclusions to

which he testified at his deposition.  There is also no explanation as to why ABWF produced

these documents late.  After all, all of the Alderman documents must have existed prior to Mr.

Alderman's deposition, as these are the documents he claims to have reviewed and relied on in

June or July of 2006.  Google therefore requires a supplemental deposition of Mr. Alderman

regarding these new eleven pages of documents and the May/June 2006 Affiliate Bidding

Experiment to which they relate.

Second, the new documents still do not appear to include *an analysis of ABWF natural

search results*, which Mr. Alderman claims to have reviewed.[36]  ABWF must produce the

---

[29] *Id.*, ¶ 5.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*, ¶ 6.

[35] *Id.*, ¶ 7.

[36] *Id.*

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

379927.01

analysis of ABWF's natural search results that Mr. Alderman claims to have reviewed in June

2006, or in the alternative, explain why such documents no longer exist. *See, e.g.*, *iSmart Int'l*

*Ltd.*, 2006 WL 2263910 at * 3 (requiring a responding party to produce a declaration explaining

why it could not comply with its production obligations).

**E.    ABWF must produce substantive responses to Google's First Set of Requests for Admissions.**

As explained above, the core of this lawsuit involves ABWF's allegation that Google's

policy of permitting ABWF's competitors to bid on keywords that resemble ABWF's alleged

trademarks—such as "American Blind & Wallpaper Factory"—violates ABWF's trademarks.

ABWF fears that a person entering "American Blind & Wallpaper Factory" as a search engine

query might trigger a competitor's advertisement, and accidentally click through to the

competitor's website, thinking that he or she was actually visiting ABWF's website.[37]  But what

if ABWF's competitors merely bid on the keyword "blind," which is not an ABWF trademark?

In this scenario, it is still possible that a search engine user, by entering the query "American

Blind & Wallpaper Factory," would trigger the competitor's advertisement—because the query

contains the word "blind."  And once the competitor's ad is triggered, the user might accidentally

visit the competitor's website, instead of ABWF's.  Does ABWF claim that this, too, violates its

trademark?  This is the very question that Google posed in two requests for admissions and that

ABWF twice refused to answer.

Google's First Set of Requests for Admissions consists of two requests.  The first request

("Request One") states:

> Admit that if an ad appears on a Google search results page when a user searches
> for "American Blind & Wallpaper Factory" only because the advertiser has
> selected "blind" as a BROAD MATCH KEYWORD, and that if the ad does not
> include any variant of the ALLEGED AMERICAN BLIND MARKS in its text,
> no ALLEGED AMERICAN BLIND MARKS has been "used" within the
> meaning of the Lanham Act.[38]

The following definition is included in the First Set of Requests for Admissions:

---

[37] ABWF's Complaint, ¶ 51.

[38] Krishnan Decl., Ex. E.

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The term "BROAD MATCH KEYWORD" shall mean a term that will trigger an ad on a Google search results page when a user's query includes that term, even if the query includes other terms.  A BROAD MATCH KEYWORD also will trigger an ad if the user's query includes synonyms, related phrases, and plurals, even if the query does not contain the precise BROAD MATCH KEYWORD itself.[39]

ABWF's response to Request One was:

Objection.  This request for admission (a) improperly seeks conclusions and/or admissions of law that do not relate to the facts of this case,[40] (b) presents a hypothetical question which is not within the purview of Fed. R. Civ. P. 36,[41] (c) improperly seeks to compel American Blind to prove Google's legal position in this case,[42] and (d) could not be answered even with reasonable inquiry because no information known or readily obtainable by American Blind could allow it to fairly admit or deny the request.[43]  Furthermore, this request contains vague and ambiguous wording which fails to comply with Fed. R. Civ. P. 36 in that it does not present simple cones statements of facts which would allow American Blind to fairly admit or deny the statements without explanation or qualification.[44]

The second request ("Request Two") states:

Admit that if an ad appears on a Google search results page when a user searches for "american blind," the user has no way to determine for certain whether the ad's appearance was triggered by the phrase "american blind" or some other word or phrase.[45]

ABWF's objections to Request Two are identical to those for Request One except that ABWF *omitted* the following two objections: "improperly seeks conclusions and/or admissions of law that do not relate to the facts of this case," and "improperly seeks to compel American Blind to prove Google's legal position in this case."[46]

---

[39] *Id.*

[40] In later correspondence, ABWF cited *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999), in support of this objection.

[41] In later correspondence, ABWF cited *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D. N.Y. 1997), in support of this objection.

[42] In later correspondence, ABWF cited *California v. The Joules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955), in support of this objection.

[43] In later correspondence, ABWF failed to substantiate or even re-state this objection.

[44] In later correspondence, ABWF cited *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992), in support of this objection.  *See also* Krishnan Decl., Ex. F.

[45] Krishnan Decl., Ex. E.

[46] *Id.*

9

379927.01

1    Each of ABWF's objections lacks merit.  As a general matter, Google ABWF's

2  "boilerplate objections" are insufficient to assert an objection.  *See Burlington N. & Santa Fe Ry.*

3  *Co. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Nonetheless, Google

4  deals with each ABWF objection in turn.

5    *First*, ABWF objects that Request One improperly seeks legal conclusions.  That

6  objection is inapplicable to Request One.  Request One clearly seeks an application of law to

7  fact—namely, whether bidding on the word "blind" constitutes a Lanham Act "use" of ABWF's

8  alleged trademarks—which is expressly permitted by Rule 36.  *See* Fed. R. Civ. P. 36(a) ("A

9  party may serve…a written request for the admission…of the application of law to fact");

10  *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 937 n.4 (9th Cir. 1994).

11    *Second*, ABWF objects that these two Requests pose improper hypothetical questions,

12  citing *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D. N.Y. 1997).  ABWF takes *Abbott*

13  completely out of context.  *Abbott* noted at least six times that the requests for admission at issue

14  involved, "hypothetical fact situations *unrelated to the facts of the case*."  *Id.* at 92-94.  *Abbott*

15  reasoned that such applications of law to hypothetical, wholly unrelated to the facts of the case

16  were tantamount to pure legal questions.  *Id.* at 93.  Of course, the facts raised in these requests

17  are in no way hypothetical.  The very core of ABWF's complaint envisions user searches for

18  "American Blind" and "American Blind & Wallpaper Factory."[47]  And as a simple Google

19  search for "blind" or "blinds" reveals, those keywords are bid on by many advertisers, including,

20  apparently, ABWF.  Moreover, *Abbott* has no applicability at all to Request Two, since Request

21  Two is a purely factual question.  Request Two could not therefore, under any circumstances, be

22  tantamount to a purely legal question.

23    *Third*, ABWF claims that Request One is improper because it would "compel American

24  Blind to prove Google's legal position."  But this is precisely what a request for admission seeks

25  to do.  ABWF cites *California v. The Joules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955), a

26  1955 district court case in support of this objection.  *Id.* at 436 ("[T]here is general agreement

27

28  ───────────────
[47] ABWF's Complaint, ¶¶ 44 & 47.

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

1   that requests for admission are not to be treated as substitutes for discovery processes to uncover

2   evidence, and that they may not be applied to controverted legal issues lying at the heart of the

3   case.  Their purpose is to eliminate from the trial matters as to which there is no genuine

4   dispute").  As a preliminary matter, this legal proposition is bizarre: If the request for admission

5   pertains to a controverted legal issue, the responding party is free to deny the request.  In any

6   event, *The Joules Fribourg* has no application here as Request One pertains to an issue that is

7   reasonably beyond dispute, and should be eliminated from trial.

8       *Fourth*, ABWF objected that it had no readily available information that would permit it

9   to admit or deny the request.  ABWF has had a full opportunity to take discovery.  Moreover,

10  when pressed in early September to elaborate on its objections, ABWF did not re-assert this

11  objection, which suggests that it has been abandoned.[48]

12      *Fifth*, ABWF objects that neither of the requests is "direct, simple and limited to singular

13  relevant fact so that it can be admitted or denied without explanation."  Here, in particular, the

14  boilerplate nature of the objection should be held against ABWF:  Neither ABWF, nor the case it

15  cites, *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992), explains what it means to be too

16  indirect or complicated to be admitted or denied without explanation.   In any event, Request

17  One and Request Two both pose "direct" questions.  And to the extent either Request is not

18  "simple"—Request One contains two "if" clauses and Request Two contains one—it is that way

19  precisely so that it can be admitted or denied without explanation.  Indeed, failing to include all

20  the necessary assumptions in the request itself would make it more complicated, as the

21  responding party would have to clarify its assumptions.  Finally, although Request One includes

22  the phrase "BROAD MATCH KEYWORD," which is defined elsewhere, that phrase was only

23  defined because it is not used in common parlance.  ABWF, like anyone familiar with Google's

24  AdWords program, knows perfectly well what a broad match keyword is.

25      As Request One and Request Two are proper requests for admissions and ABWF's

26  objections are invalid, ABWF should be compelled to respond substantively to these requests.

27

28  [48] Krishnan Decl., ¶ 26.

---

11

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

**F.    ABWF must provide dates that it began and ceased using the four names that it has used in communications with customers to refer to its retail business.**

Google's first Interrogatory in its Second Set of Interrogatories states:

For each name that AMERICAN BLIND has used, in communications with customers and/or potential customers, to refer to its retail business, STATE the name that was used, the dates that AMERICAN BLIND began and ceased using the name, and the reasons for adopting and ceasing to use each name.[49]

ABWF's response states:

American Blind objects to this interrogatory because it is over broad [*sic*], unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. American Blind also objects to this request to the extent that it calls for the production of documents protected by the attorney client privilege or the attorney work product doctrine. Subject to and without waiving these objections, American Blind states that the name changes that American Blind has undergone reflect the changes in the products being sold by American Blind at any given time and changes in the marketplace in general. By way of example, as the company expanded from selling window treatments to selling wall coverings and window treatments, the name was changed from "American Blind" to "American Blind and Wallpaper Factory." When the company decided to expand its product offerings to include light fixtures, pictures and throw rugs, the company changed its name to "American Blind & Wallpaper & More."[50] During the late 1990's, the company changed its corporate name to "decoratetoday.com" to include additional products and services then being offered by the Company and to evidence its strong internet presence. It was subsequently determined that customers identified with the "American Blind" names too strongly to fully cross over to the "decoratetoday.com" brand name as the sole brand name. As a result, the name was changed back to "American Blind, Wallpaper & More"[51] to incorporate the "American Blind" names while signifying that the company sold more than window treatments and wall coverings. American Blind refers to documents Bates range ABWF 003054-003772 for a complete list of all the names under which American Blind has done business, including corporate minutes regarding name changes, corporate name change information and assumed name filings.[52]

This interrogatory response does not provide the dates during which ABWF used particular names, as the interrogatory specifically requests. This interrogatory response clearly states that ABWF used four names "in communications with customers and/or potential customers, to refer to its retail business": "American Blind," "American Blind and Wallpaper

---

[49] *Id.*

[50] ABWF almost certainly intended to use the name "American Blinds, Wallpaper & More," as that is the name currently on ABWF's website.

[51] ABWF almost certainly intended to use the name "American Blind*s*, Wallpaper & More" (emphasis added), as that is the name currently on ABWF's website.

[52] Krishnan Decl., Ex. H at 2-3.

1   Factory," "American Blinds, Wallpaper & More," and "decoratetoday.com."  When asked to

2   produce the dates that ABWF began and ceased using these four names, ABWF referred Google

3   to the 700 pages of documents listed in the interrogatory response.[53]

4          But these 700 pages of documents do not and could not contain the response to Google's

5   interrogatory.  As the interrogatory response states, those 700 pages contain a list of several

6   hundred names under which ABWF claims to have done business, its corporate minutes

7   regarding name changes, and assumed name filings for numerous business names.  Notably,

8   none of these documents list the dates that ABWF has used particular names "*in communications*

9   *with customers and/or potential customers to refer to its retail business*," as the interrogatory

10  specifies.  Nor could these documents answer Google's interrogatory because ABWF could (and

11  indeed did) have one corporate name, while having a different assumed name, and yet another

12  name that it used in communications with customers to refer to its retail business.  Google only

13  seeks ABWF's names that were used in communications with customers and potential customers

14  to refer to its retail business.  This is not the information that ABWF provided.

15         Thus, ABWF should be compelled to provide dates on which it began and ceased using

16  the names it used in communications to customers and potential customers to refer to its retail

17  business.

18  **G.    If ABWF is unable to produce all of the Kaden questionnaires, it must explain why.**

19         The Kaden Company conducted three focus groups on behalf of ABWF in the past

20  several years.[54]  The Kaden Company offered to provide ABWF with the questionnaires that

21  accompanied these focus groups.[55]  Google requested production of these questionnaires, and

22  ABWF initially refused because it was not in direct possession of the Kaden questionnaires.[56]

23  Google then provided ABWF with legal authority indicating that ABWF is obligated to obtain

24

25  ---
    [53] *Id.*

26  [54] *Id.*, ¶ 28.

27  [55] *Id.*

28  [56] *Id.*, ¶ 29.

13

379927.01

1  these questionnaires and produce them.[57]  ABWF agreed to do so, but only if the documents

2  exist—a constant refrain from ABWF.[58]  ABWF has not yet told Google whether these

3  documents exist.  If they do exist, ABWF must produce them.  If ABWF is unable to produce the

4  Kaden questionnaires, ABWF should be compelled to explain, by affidavit or otherwise, why it

5  was unable to produce these questionnaires.

6  **H.    ABWF must either produce all documents related to the "American Wallpaper
       Survey" or explain why such documents do not exist.**

7

8          In roughly July 2004—while this lawsuit was pending—ABWF conducted an online

9  survey of those individuals who visited ABWF's website after performing an internet search for

10  the phrase "american wallpaper" (the "American Wallpaper Survey").[59]  Individuals were asked

11  why they visited ABWF's website.  The survey was conducted by Michael Layne, ABWF's

12  Vice-President of Internet Content.  Michael Layne was also a designated witness for the

13  30(b)(6) deposition of ABWF.[60]

14          At the time of Google's deposition of Mr. Layne (who was testifying on behalf of

15  ABWF), ABWF had produced only two sets of documents associated with the American

16  Wallpaper Survey: (1) four CDs containing the raw data from the survey, which consisted of

17  captured screenshots indicating how the survey participants navigated the online survey, which

18  was placed on ABWF's website, and (2) an 8-line e-mail from May 2006—two years after the

19  survey was conducted—in which Mr. Layne explained the survey results that were obtained in

20  July 2004, using very specific numbers.[61]

21          At the time of the Layne deposition, Google requested that ABWF produce *all* documents

22  related to the American Wallpaper Survey, including any documents discussing the survey

23  methodology or analyzing the results.[62]  Google pointed out that there must at least have been a

24  ---
   [57] *Id.*

25  [58] *Id.*

26  [59] *Id.*

27  [60] *Id.*

    [61] *Id.*, ¶ 31 & Ex. N.

28  [62] *Id.*, ¶ 31.

14

1    document from July 2004 describing the survey results, because Mr. Layne could not have

2    possibly remembered the precise results of the survey two years after the fact.[63]  Google received

3    ABWF's counsel's usual refrain that it had produced all the documents received from ABWF,

4    but that they would check if further documents existed.[64]  One week later, ABWF produced only

5    one additional document—a July 2004 email to which Mr. Layne had referred when he drafted

6    his May 2006 email.[65]  This July 2004 email was sent to at least seven non-lawyers at ABWF.[66]

7           Importantly, ABWF still maintains that the only documents in its possession concerning

8    the July 2004 American Wallpaper Survey are the raw data from the survey, the July 2004 email

9    reporting the survey results, and the May 2006 email from Mr. Layne recapitulating the July

10   2004 email results.[67]  This survey took place *after* Google served its first set of document

11   requests.  Bafflingly, ABWF must therefore contend that there were no written communications

12   at ABWF about a survey, the results of which were reported to seven members of the company,

13   most of whom were in upper management.  Additionally, ABWF contends that there were no

14   such communications concerning the need for the survey, or how it might be constructed.

15   Finally, there were seven individuals copied on the July 2004 e-mail and three individuals copied

16   on Layne's May 2006 e-mail—why did Google only receive one copy of the email in ABWF's

17   document production?

18           Obviously, Google cannot know the adequacy of ABWF's document search and

19   collection efforts.  But given the serious questions raised as to ABWF's document search,

20   ABWF should be compelled either to produce all documents related to the American Wallpaper

21   Survey or explain, by affidavit or otherwise, why no such documents exist.  *See Buchanan*, 206

22   F.R.D. at 125 (holding that a party can be compelled to produce an affidavit outlining document

23   search and collection efforts when there is a basis for disbelieving the party's assertion that no

24   _____

25   [63] *Id.*, ¶ 32.

     [64] *Id.*

26   [65] *Id.*, ¶ 33 & Ex. O.

27   [66] *Id.*, ¶ 33.

28   [67] *Id.*

responsive documents exist); *Hagemayer N. Am., Inc.*, 222 F.R.D. at 598 (same); *Aureflam Corp.*, 2006 WL 2411411 at *1 (requiring responding party to certify by declaration that a diligent search effort was performed when questions are raised as to the adequacy of its representations regarding the existence of documents); *iSmart Int'l Ltd.*, 2006 WL 2263910 at *3 (requiring a responding party to produce a declaration explaining why it could not comply with its production obligations).

## I.    If ABWF is unable to find the original copy of ABWF 1308 – 1310, it must explain why.

A relatively minor matter—which primarily serves to highlight Google's concerns about ABWF's document production—is ABWF's inability to explain why the top portion of a particular document, ABWF 1308 – 1310,[68] was redacted on the basis of attorney-client privilege.  When Google asked, ABWF counsel responded, "at this time, I can only speculate as to why ABWF 1308 was redacted because we have been unable to locate the original."[69] Google has encountered many times before the inability of ABWF counsel to find documents known to exist.  ABWF should therefore be required to explain its inability to find the original document if it is ultimately unable to do so.  *See iSmart Int'l Ltd.*, 2006 WL 2263910 at *3 (requiring a responding party to produce a declaration explaining why it could not comply with its production obligations).

## J.    ABWF must either produce documents "as they are kept in the usual course of business" or organize and label them to correspond with the categories in Google's document requests.

Federal Rule of Civil Procedure 34(b) requires that "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."  ABWF has not done this, despite numerous requests by Google.  ABWF must therefore be compelled to comply with Rule 34(b).

---

[68] Krishnan Decl., Ex. P.

[69] *Id.*, ¶ 34.

16

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

379927.01

1    The Court is likely familiar with Rule 34(b)'s requirements as to the form of document

2    production because ABWF brought a motion several months ago seeking to compel Google to

3    comply with these requirements.  In granting that motion, the Court's Order ("the Discovery

4    Order") recognized several legal principles that are relevant here.  First, this Court explained that

5    an unsupported statement that that documents were produced "as they were kept in the usual

6    course of business" will not satisfy Rule 34(b).[70]   Second, this Court stressed that "merely

7    categorizing the documents produced does not, without some further explanation, satisfy the

8    requirement that they be produced as kept in the usual course of business."[71]  The Court

9    explained that categorization, "though perhaps somewhat helpful," must "correspond to the

10   manner in which those files were maintained."[72]  Finally, the Court emphasized that Rule 34(b)

11   places the obligation on the responding party to organize and label the produced documents.[73]

12       It is abundantly clear that ABWF paid no heed to the Court's Discovery Order.  First, a

13   quick perusal of the cover letters that accompanied ABWF's document productions[74] will show

14   that ABWF repeatedly provided categorization that did not "correspond to the manner in which

15   those files were maintained."  For instance, on June 14, 2006, a cover letter produced by ABWF

16   stated, in relevant part:

17       Enclosed please find the following documents, Bates range ABWF 002926 –
18       007802.  These documents are responsive to Google's initial and second set of
         document requests.

19       Bates Range ABWF 002926-00002936 contains trademark information;

20       Bates Range ABWF 002937-00002949 contains information concerning website
21       visits;

22       Bates Range ABWF 002950-00003017 contains consumer and advertising
         research and analysis information;

23

24   [70] Order Granting Defendant's Motion to Enforce Protective Order and to Compel Designation
     of and Classification of Documents ("Discovery Order") (Docket Item No. 94), filed February 8,
25   2006, at 5 (citing *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611 (D. Kan. 2005)

     [71] *Id.* (quoting *Cardenas*, 230 F.3d at 618).
26
     [72] *Id.* at 5-6.
27
     [73] *Id.* at 6 (quoting *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996)).
28   [74] Krishnan Decl., Ex. Q.

17

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

379927.01

Bates Range ABWF 003018-003053 contains advertising costs and spending information;[75]

Obviously, this sort of categorization provides no insight at all as to how "those files were maintained."

During the meet-and-confer process, Google requested so many times that ABWF correct its document production to comply with Rule 34(b) that ABWF stated that the issue had been discussed "ad nauseum." Nonetheless, ABWF took two consistent positions: the documents were produced as they were "kept in the usual course of business," and the guidelines of the Court's Discovery Order applied only to Google, not to ABWF.

In fact, ABWF's production could not have been produced as they were kept in the usual course of business. Although the examples are too numerous to count, the following provide an illustration of ABWF's failure to produce documents in the "usual course of business":

- On July 7, ABWF produced documents with Bates ranges ABWF 044473 – 045522 and 046457 – 046870, which consisted of roughly 1500 pages of documents. ABWF's cover letter accompanying the production stated that these Bates ranges "contain annual capitalization documentation for the payroll expenses attributable to the maintenance of American Blind's website for the years 2000-2006."[76] These 1500 pages are simply a compilation of loose-leaf papers without any divisions, tabs, or indices.[77] There is also no indication of whose files these are. It defies belief that ABWF would be able to use a compilation of 1500 loose-leaf sheets of paper without any divisions, tabs, or indices "in the usual course of business."

- As stated above, ABWF produced numerous spreadsheets with data missing from the print-outs. Obviously, in the "usual course of business," employees can read all of the information in a spreadsheet.

---

[75] Id.

[76] Id.

[77] Krishnan Decl., ¶ 35.

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)

379927.01

1
2
3
4
5
6
7
8
9

- On July 7, 2006, ABWF produced, *inter alia*, ABWF 046106 – 046114, a chart titled "Google Top Drivers 2005," with notes in the margin.[78]  The cover letter accompanying the production simply states that this document, along with 900 pages of adjacent documents, "contain information regarding American Blind's internet search engine marketing, including financial analyses (e-commerce reviews), search engine results analyses and other data regarding internet searches for American Blind)."[79]  This description provides no explanation as to how "those files were maintained."  Additionally, there is no way to know whose handwriting is on the document.

10
11
12
13
14
15
16

- On June 30, 2006, ABWF produced, *inter alia*, ABWF 043139 – 043140, a chart titled "SEO Analysis for MSN."[80]  This chart is devoid of any context at all.  The accompanying cover letter states that the document, along with 200 pages of adjacent documents, "contain information regarding keyword and search engine analysis and strategy, including financial analysis regarding the same."[81]  Not only is this description inscrutable, but it is impossible to tell who maintained this file.

17
18
19

Thus, ABWF must be compelled either to re-produce its documents "as they are kept in the usual course of business" or to organize and label them to correspond with Google's document requests.

20

/ / /

21
22
23
24
25

---

[78] *Id.*, Ex. R.
[79] *Id.*, Ex. Q.
[80] *Id.*, Ex. S.
[81] *Id.*, Ex. Q.

26
27
28

19

379927.01

1

## IV.    CONCLUSION

2          For the foregoing reasons, Google respectfully requests that Court compel ABWF to

3  satisfy its outstanding discovery obligations, as laid out above and in the accompanying proposed

4  order.

5  Dated:  September 7, 2006                    KEKER & VAN NEST, LLP

6

7

                                         By:    _____/s/ Ajay S. Krishnan_____
8                                              AJAY S. KRISHNAN
                                               Attorneys for Plaintiff and Counter Defendant
9                                              GOOGLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

COUNTER-DEFENDANT GOOGLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO COMPEL COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING
DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (EAI)