# Exhibit B

Dockets.Justia.com

1  Robert N. Phillips (SBN 120970)
   Ethan B. Andelman (SBN 209101)
2  HOWREY, LLP
   525 Market Street, Suite 3600
3  San Francisco, CA 94105
   Telephone: (415) 848-4900
4  Facsimile: (415) 848-4999

5  David A. Rammelt (Admitted *Pro Hac Vice*)
   Susan J. Greenspon (Admitted *Pro Hac Vice*)
6  Dawn M. Beery (Admitted *Pro Hac Vice*)
   KELLEY DRYE & WARREN LLP
7  333 West Wacker Drive, Suite 2600
   Chicago, IL 60606
8  Telephone: (312) 857-7070
   Facsimile: (312) 857-7095

9
   Attorneys for Defendant/Counter-Plaintiff
10 AMERICAN BLIND AND WALLPAPER
   FACTORY, INC.

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13 GOOGLE INC., a Delaware corporation,        Case No. C 03-5340-JF (EAI)

14            Plaintiff,                        **AMERICAN BLIND & WALLPAPER
                                               FACTORY, INC.'S RESPONSES TO
15       v.                                    GOOGLE, INC.'S FIRST SET OF
                                               REQUESTS FOR PRODUCTION OF
16 AMERICAN BLIND & WALLPAPER                  DOCUMENTS AND THINGS**
   FACTORY, INC., a Delaware corporation
17 d/b/a decoratetoday.com, Inc.; and DOES 1-
   100, inclusive,
18
            Defendants.
19
   AMERICAN BLIND & WALLPAPER
20 FACTORY, INC., a Delaware corporation
   d/b/a decoratetoday.com, Inc.,
21
            Counter-Plaintiff,
22
         v.
23
   GOOGLE, INC., AMERICA ONLINE, INC.,
24 NETSCAPE COMMUNICATIONS
   CORPORATION, COMPUSERVE
25 INTERACTIVE SERVICES, INC., ASK
   JEEVES, INC., and EARTHLINK, INC.,
26
            Counter-Defendants/
27

28

HOWREY LLP   American Blind's Responses to Google's First Set of Document Requests
             Case No. C03-5340 JF (EAI)
             DM_US\8214784.v1

1  | Third-Party Defendants

2

PROPOUNDING PARTY:   PLAINTIFF/COUNTER-DEFENDANT GOOGLE, INC.

3

RESPONDING PARTY:    DEFENDANT/COUNTER-PLAINTIFF AMERICAN BLIND &
4                    WALLPAPER FACTORY, INC.

5  SET NUMBER:           ONE

6       Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind")

7  hereby answers Plaintiff/Counter-Defendant Google, Inc.'s First Set Of Requests For Production Of

8  Documents And Things From American Blind & Wallpaper Factory, Inc. as follows:

9                            **REQUESTS**

10 **REQUEST NO. 1:**

11      All DOCUMENTS RELATING TO AMERICAN BLIND's selection, adoption and clearance
   of each of the AMERICAN BLIND MARKS, including, but not limited to, searches, investigations,
12 reports and opinions.

13 **RESPONSE TO REQUEST NO. 1:**

14      American Blind objects to this request because it is overbroad, unduly burdensome, and not

15 reasonably calculated to lead to the discovery of relevant or admissible evidence.  American Blind also

16 objects to this request to the extent that it calls for the production of documents protected by the

17 attorney client privilege or the attorney work product doctrine.  Subject to and without waiving these

18 objections, American Blind states that it will produce any responsive documents in its possession

19

20 regarding the adoption and clearance of each of the American Blind Marks.

21 **REQUEST NO. 2:**

22      All DOCUMENTS demonstrating that AMERICAN BLIND owns the AMERICAN BLIND
   MARKS.
23

24 **RESPONSE TO REQUEST NO. 2:**

25      Responsive documents will be produced.

26 **REQUEST NO. 3:**

27      All DOCUMENTS RELATING TO AMERICAN BLIND's first commercial use of each of the
   AMERICAN BLIND MARKS.
28                                        -2-

**RESPONSE TO REQUEST NO. 3:**

American Blind objects to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Specifically, Google's request for all documents related to American Blind's first commercial use of the American Blind Marks is overbroad and unduly burdensome.  Subject to and without waiving these objections, responsive documents will be produced that illustrate the date of first commercial use of the American Blind Marks.

**REQUEST NO. 4:**

All DOCUMENTS RELATING TO AMERICAN BLIND's first use of each of the AMERICAN BLIND DOMAIN NAMES.

**RESPONSE TO REQUEST NO. 4:**

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Specifically, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services."  American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names.  Moreover, American Blind does not generally maintain records for each individual domain name, rather information for all domain names owned by American Blind is collected and maintained together.  To the extent that this request calls for the production of documents related to all 500 domain names owned by American Blind, it is overbroad and unduly burdensome.  Subject to and without waiving these objections, American Blind will produce a listing of domain names owned by American Blind.  To the extent that Google wants detailed information on

-3-

HOWREY LLP

1    each of these domain names, that information is publicly available through the Internet at

2    www.enom.com.

3    **REQUEST NO. 5:**

4        Copies of all advertising and promotional materials featuring the AMERICAN BLIND

5    MARKS or AMERICAN BLIND DOMAIN NAMES.

6    **RESPONSE TO REQUEST NO. 5:**

7        American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

8    burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

9    As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

10   Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

11   Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

12   & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

13   of American Blind through which customers may purchase American Blind's products or services."

14   American Blind owns approximately 500 Internet domain names, but at present it only actively uses

15   and markets approximately 12 domain names. Moreover, American Blind does not generally maintain

16   records for each individual domain name, rather information for all domain names owned by American

17   Blind is collected and maintained together. To the extent that this request calls for the production of

18   documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

19   burdensome. Moreover, American Blind spends millions of dollars each year advertising the

20   American Blind Marks and domain names, including pervasive advertising in over forty national

21   magazines, on every major search engine, on national television and radio, and through millions of

22   direct mailings and catalogs distributed throughout the United States. American Blind has advertised

23   the American Blind Marks and domain names since its inception, and this request is not limited in

24   time. It would be extremely burdensome for American Blind to produce copies of all of its advertising

25

26

27

28                                              -4-

1    and promotional materials ever created.  Subject to and without waiving these objections, American

2    Blind will produce a sample of its more recent advertising and promotional materials.

3    **REQUEST NO. 6:**

4        All DOCUMENTS RELATING TO AMERICAN BLIND's efforts to defend its trademarks
5    and domain names.

6    **RESPONSE TO REQUEST NO. 6:**

7        Americn Blind objects to this request because it is overbroad, unduly burdensome, and not

8    reasonably calculated to lead to the discovery of relevant or admissible evidence.  As written, this

9    request would require the production of every document submitted in every lawsuit brought by

10   American Blind to defend its trademark rights.  These litigation files are voluminous and are not likely

11   to lead to the discovery of relevant or admissible evidence in this case.  In addition, American Blind

12   objects to this request to the extent that it seeks the production of attorney/client privileged

13   communications.  Subject to and without waiving these objections, American Blind will produce

14   copies of cease and desist letters sent to entities infringing and/or diluting American Blind's

15   trademarks and copies of initial pleadings filed by American Blind seeking to protect its trademark

16   rights.

17

18   **REQUEST NO. 7:**

19       All business plans, reports, analyses and research RELATING TO the AMERICAN BLIND
20   MARKS and AMERICAN BLIND DOMAIN NAMES, including, but not limited to, strategic plans,
     forecasts, or projections.

21
22   **RESPONSE TO REQUEST NO. 7:**

23       American Blind has no documents responsive to this request.

24   **REQUEST NO. 8:**

25       All of AMERICAN BLIND's quarterly and annual audited financial statements and annual
     reports from 1997 to the present, including all corresponding notes and schedules.

26

27

28                                    -5-

**RESPONSE TO REQUEST NO. 8:**

American Blind objects to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  To the extent that this request calls for the production of notes and schedules to American Blind's audited financial statements, it is overbroad and unduly burdensome.  American Blind will produce its annual audited financial statements from 1997 to the present.  American Blind states that it does not prepare quarterly audited financial statements.

**REQUEST NO. 9:**

All DOCUMENTS demonstrating AMERICAN BLIND's monthly gross revenues from products and services sold under the AMERICAN BLIND MARKS from the first use of those marks to the present.

**RESPONSE TO REQUEST NO. 9:**

American Blind objects to this request as over broad and unduly burdensome.  Revenues from products and services sold under the American Blind Marks is equivalent to total company revenues because virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks.  As a result, the quantity of documents demonstrating monthly gross revenues for American Blind is extremely voluminous and would be very burdensome to assemble and produce.  In addition, American Blind has been using its Marks since at least 1986 and it would be extremely burdensome, if not impossible, to produce documents relating to monthly gross revenues for such a long time period.  Subject to and without waiving these objections, American Blind states that it will produce annual audited financial statements from 1997 to the present.

**REQUEST NO. 10:**

All DOCUMENTS demonstrating AMERICAN BLIND's monthly gross revenues from products and services sold through the AMERICAN BLIND DOMAIN NAMES on a monthly basis from the first use of those domain names to the present.

-6-

**RESPONSE TO REQUEST NO. 10**:

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain records for each individual domain name, rather information for all domain names owned by American Blind is collected and maintained together. To the extent that this request calls for the production of documents related to all 500 domain names owned by American Blind, it is overbroad and unduly burdensome. In addition, it is very difficult for American Blind to attempt with accuracy to divide and/or separate revenues from or between its Internet domain names and its toll-free telephone numbers. For example, customers often shop for products on American Blind's website and then call its toll-free number to place an order. It is unclear from Google's request whether such sales would qualify as made "through the American Blind domain names" or not. Subject to and without waiving these objections, American Blind states that it will produce annual audited financial statements from 1997 to the present.

**REQUEST NO. 11**:

All DOCUMENTS demonstrating AMERICAN BLIND's monthly profits and/or losses for products and services sold under the AMERICAN BLIND MARKS from the first use of those marks to the present.

-7-

**RESPONSE TO REQUEST NO. 11:**

American Blind objects to this request as over broad and unduly burdensome. Profits and/or losses from products and services sold under the American Blind Marks is equivalent to total company profits and/or losses because virtually all, if not all, of the products and services sold by American Blind are sold under the American Blind Marks. As a result, the quantity of documents demonstrating monthly profits and/or losses for American Blind is extremely voluminous and would be very burdensome to assemble and produce. In addition, American Blind has been using its Marks since at least 1986, and it would be extremely burdensome, if not impossible, to produce documents relating to monthly profits and/or losses for such a long time period. Subject to and without waiving these objections, American Blind states that it will produce annual audited financial statements from 1997 to the present.

**REQUEST NO. 12:**

All DOCUMENTS demonstrating AMERICAN BLIND's monthly profits and/or losses for products and services sold through the AMERICAN BLIND DOMAIN NAMES on a monthly basis from the first use of those domain names to the present.

**RESPONSE TO REQUEST NO. 12:**

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain

-8-

1   records for each individual domain name, rather information for all domain names owned by American

2   Blind is collected and maintained together.  To the extent that this request calls for the production of

3   documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

4   burdensome.  In addition, it is very difficult for American Blind to attempt with accuracy to divide

5   and/or separate profits and/or losses from or between its Internet domain names and its toll-free

6   telephone numbers.  For example, customers often shop for products on American Blind's website and

7   then call its toll-free number to place an order.  It is unclear from Google's request whether such sales

8   would qualify as made "through the American Blind domain names" or not.  Subject to and without

9   waiving these objections, American Blind states that it will produce annual audited financial

10  statements from 1997 to the present.

11  **REQUEST NO. 13:**

12      All DOCUMENTS demonstrating AMERICAN BLIND'S monthly advertising and

13  promotional expenditures for products or services marketed under the AMERICAN BLIND MARKS

14  from the first use of those marks to the present.

15  **RESPONSE TO REQUEST NO. 13:**

16      Since all of American Blind's products and services are marketed under the American Blind

17  Marks, this request is actually requesting all documents demonstrating American Blind's monthly

18  advertising and promotional expenditures.  American Blind objects to this request because it is vague,

19  ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of

20  relevant or admissible evidence.  As an initial matter, the phrase "advertising and promotional

21  expenditures" is vague and ambiguous because it is unclear what fixed and/or variable expenses

22  qualify in Google's view as "expenditures," nor has Google made any distinction between marketing

23  expenditures and what are properly includable as advertising and promotional expenditures.  In

24  addition, this request is overbroad because American Blind began using its Marks as early as 1986, and

25  it would be too burdensome to produce documents dating from 1986, assuming that they even exist.

28                                          -9-

1  Subject to and without waiving these objections, American Blind states that it will produce documents

2  generally evidencing annual advertising expenditures.

3  **REQUEST NO. 14:**

4    All DOCUMENTS demonstrating AMERICAN BLIND's monthly advertising and

5  promotional expenditures for products and services sold through the AMERICAN BLIND DOMAIN

6  NAMES from the first use of those domain names to the present.

   **RESPONSE TO REQUEST NO. 14:**

7    American Blind objects to this request because it is vague, ambiguous, overbroad, unduly

8
9  burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

10 As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because

11 Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of

12 Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind

13 & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf

14 of American Blind through which customers may purchase American Blind's products or services."

15 American Blind owns approximately 500 Internet domain names, but at present it only actively uses

16
17 and markets approximately 12 domain names.  Moreover, American Blind does not generally maintain

18 records for each individual domain name, rather information for all domain names owned by American

19 Blind is collected and maintained together.  To the extent that this request calls for the production of

20 documents related to all 500 domain names owned by American Blind, it is overbroad and unduly

21 burdensome.  In addition, the phrase "advertising and promotional expenditures" is vague and

22 ambiguous because it is unclear what fixed and/or variable expenses qualify in Google's view as

23 "expenditures," nor has Google made any distinction between marketing expenditures and what are

24 properly includable as advertising and promotional expenditures.  In addition, this request is overbroad

25
26 because American Blind began using its domain names many years ago, and it would be too

27 burdensome to produce documents from such a long time ago, assuming that they even exist.  Finally,

28                                              -10-

HOWREY LLP

American Blind's Responses to Google's First Set of Documents Requests
Case No. C03-5340 JF (EAI)
DM_US\8214784.v1

American Blind's advertising expenditures are not necessarily separated to reflect advertising expenditures for products and services sold through the American Blind domain names as opposed to through other channels. Subject to and without waiving these objections, American Blind states that it will produce documents generally evidencing annual advertising expenditures.

**REQUEST NO. 15**:

All DOCUMENTS identifying the weekly number of hits received by each of the websites reachable through the AMERICAN BLIND DOMAIN NAMES from the first use of those domain names to the present.

**RESPONSE TO REQUEST NO. 15**:

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain records of "hits" for each individual domain name; rather information for all domain names owned by American Blind is collected and maintained together. To the extent that this request calls for the production of documents related to all 500 domain names owned by American Blind, it is overbroad and unduly burdensome. In addition, American Blind has been using certain of its domain names for many years and this request, which calls for the production of document from the first use of the domain names to the present is overbroad in its time frame. Finally, this request is vague and ambiguous because it is unclear what exactly Google means by the phrase "number of hits received."

-11-

**REQUEST NO. 16:**

All DOCUMENTS identifying the weekly number of unique users accessing the websites reachable through the AMERICAN BLIND DOMAIN NAMES from the first use of those domain names to the present.

**RESPONSE TO REQUEST NO. 16:**

American Blind objects to this request because it is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, the phrase American Blind Domain Names is vague and ambiguous because Google defines the term to mean a certain list of domain names (as set forth at page 2, paragraph 5 of Google Inc.'s First Set Of Requests For Production Of Documents And Things From American Blind & Wallpaper Factory, Inc.) and then includes "any other Internet domain name owned by or on behalf of American Blind through which customers may purchase American Blind's products or services." American Blind owns approximately 500 Internet domain names, but at present it only actively uses and markets approximately 12 domain names. Moreover, American Blind does not generally maintain records for each individual domain name; rather information for all domain names owned by American Blind is collected and maintained together. To the extent that this request calls for the production of documents related to all 500 domain names owned by American Blind, it is overbroad and unduly burdensome. In addition, American Blind has been using certain of its domain names for many years and this request, which calls for the production of document from the first use of the domain names to the present is overbroad in its time frame. Finally, this request is vague and ambiguous because it is unclear what exactly Google means by the phrase "unique users." For example, if a consumer visits the American Blind website on Monday and then again on Tuesday, does he/she only constitute one unique user for that week? In contrast, if a consumer visits the American Blind website on Friday and then again the following Monday, does he/she constitute a separate unique user for both weeks?

-12-

**REQUEST NO. 17:**

All DOCUMENTS RELATING TO COMMUNICATIONS between AMERICAN BLIND AND GOOGLE.

**RESPONSE TO REQUEST NO. 17:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  American Blind presently is a customer of Google and, therefore, regularly communicates with Google representatives concerning business matters, including but not limited to American Blind's advertising campaign with Google.  In addition, this request is overbroad because it is not limited to any definite period of time and American Blind has been doing business with Google for many years.  Subject to and without waiving these objections, American Blind will produce electronic communications between American Blind and Google regarding Google's sale of American Blind's trademarks as keywords as part of the AdWords program, as well as monthly invoices received from Google concerning American Blind's participation in Google's AdWords program.

**REQUEST NO. 18:**

All DOCUMENTS RELATING TO COMMUNICATIONS between AMERICAN BLIND and the THIRD-PARTY DEFENDANTS.

**RESPONSE TO REQUEST NO. 18:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  American Blind has communicated with the third-party defendants concerning business matters, including but not limited to potential advertising campaigns, which have no relevance to the current dispute.  Subject to and without waiving these objections, American Blind states that it has no documents relating to direct communications with the third-party defendants regarding the sale of American Blind's trademarks as keywords.

-13-

**REQUEST NO. 19:**

All DOCUMENTS RELATING TO any trademark, servicemark, trade name, Internet domain name, or any other application/registration owned by or on behalf of AMERICAN BLIND, through assignment or otherwise, for any name, mark, or designation comprised of or containing the AMERICAN BLIND MARKS, or any variation thereof.

**RESPONSE TO REQUEST NO. 19:**

Responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 20:**

All DOCUMENTS RELATING TO any research, reports, surveys, investigations, or studies conducted by or on behalf of AMERICAN BLIND, relating to consumer or customer perception, understanding or recognition of any name, mark or designation comprised of or containing the AMERICAN BLIND MARKS, or any variation thereof.

**RESPONSE TO REQUEST NO. 20:**

American Blind objects to this Interrogatory on the grounds that it is premature given that American Blind has not yet received meaningful discovery responses from Google and has not yet had an opportunity to take any depositions in this case.  American Blind further objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions.  American Blind further objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, American Blind will produce responsive non-privileged documents, to the extent that they exist, regarding consumer or customer perceptions of the American Blind Marks.

**REQUEST NO. 21:**

All DOCUMENTS RELATING TO GOOGLE or any of the THIRD-PARTY DEFENDANTS.

**RESPONSE TO REQUEST NO. 21:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  This request is so overbroad as to be without meaning.

-14-

**REQUEST NO. 22:**

DOCUMENTS identifying AMERICAN BLIND's corporation structure, including divisions and departments.

**RESPONSE TO REQUEST NO. 22:**

Responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 23:**

DOCUMENTS identifying AMERICAN BLIND's employees and their job descriptions.

**RESPONSE TO REQUEST NO. 23:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. American Blind has more than a hundred employees, each with slightly varying job descriptions. To the extent that this request seeks each employee's job description, it is overbroad. Subject to and without waiving these objections, American Blind will produce an employee roster identifying the individuals that presently work for American Blind and the department in which they work.

**REQUEST NO. 24:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendant Google actively solicits others to purchase not only American Blind's registered and unregistered trademarks, but also virtually every conceivable iteration of these marks."

**RESPONSE TO REQUEST NO. 24:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving this objection, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors. Discovery and investigation continue and this response may be supplemented as required.

-15-

1   **REQUEST NO. 25**:

2       All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants have
deliberately manipulated their search engine 'results' so that, when consumers use these search engines
3   to find American Blind's products and services, the consumers are unwittingly diverted to competitors'
4   products and services."

5   **RESPONSE TO REQUEST NO. 25**:

6       American Blind objects to this request to the extent it calls for the production of documents

7   protected by the attorney/client privilege and/or the attorney work product doctrine.. Subject to and

8   without waiving this objection, responsive documents, to the extent that they exist, will be produced.

9   However, American Blind believes that the requested documents are largely within the possession and

10  custody of Google and American Blind's competitors.  Discovery and investigation continue and this

11  response may be supplemented as required.

12

13  **REQUEST NO. 26**:

14      All DOCUMENTS RELATING TO AMERICAN BLIND's contention that "the American
Blind Marks have acquired an outstanding celebrity as a source of quality home decorating products
15  and related services."

16  **RESPONSE TO REQUEST NO. 26**:

17      American Blind objects to this request because it is overbroad and unduly burdensome because

18  it would require the production of all of American Blind's advertising, marketing, and promotional

19  materials.  American Blind further objects to this request on the ground that it seeks information that

20  will likely be the subject of expert testimony prior to the time for disclosure of expert opinions.

21  American Blind objects to this request to the extent it calls for the production of documents protected

22  by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and without

23  waiving these objections, responsive documents, to the extent that they exist, will be produced.

24

25  **REQUEST NO. 27**:

26      All DOCUMENTS RELATING TO AMERICAN BLIND's contention that "[t]he public has
used and now uses the American Blind Marks to identify American Blind and its home decorating
27

28                                        -16-

1   products and related services from the home decorating products and related services offered by
2   others[.]"

3   **RESPONSE TO REQUEST NO. 27:**

4           American Blind objects to this request because it is overbroad and unduly burdensome because
5   it would require the production of all of American Blind's advertising, marketing, and promotional
6   materials.  American Blind further objects to this request on the ground that it seeks information that
7   will likely be the subject of expert testimony prior to the time for disclosure of expert opinions.
8   American Blind objects to this request to the extent it calls for the production of documents protected
9   by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and without
10  waiving these objections, responsive documents, to the extent that they exist, will be produced.

11
12  **REQUEST NO. 28:**

13          All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "[t]he designation
    'Sponsored Link' is itself confusing and misleading."
14
    **RESPONSE TO REQUEST NO. 28:**
15
16          American Blind objects to this Interrogatory on the ground that it seeks information that will
17  likely be the subject of expert testimony prior to the time for disclosure of expert opinions.  American
18  Blind objects to this request to the extent it calls for the production of documents protected by the
19  attorney/client privilege and/or the attorney work product doctrine.  Subject to and without waiving
20  these objections, American Blind states that it does not presently have in its possession documents that
21  relate to the interpretation of Google's use of the word "Sponsored."  American Blind believes that
22  there are numerous such documents in the possession of Google and other third parties.

23  **REQUEST NO. 29:**

24          All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google has sold
25  many keywords comprised, in whole or in part, of the American Blind marks, to competitors of
    American Blind."
26

27

28                                              -17-

**RESPONSE TO REQUEST NO. 29:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors. Discovery and investigation continue and this response may be supplemented as required.

**REQUEST NO. 30:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google . . . actively promotes and encourages competitors to embark on a sweeping competitive raid on the American Blind Marks and virtually every conceivable, though indistinguishable, iteration of those marks."

**RESPONSE TO REQUEST NO. 30:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors.

**REQUEST NO. 31:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google intentionally has designed its financially lucrative 'AdWords' program to maximize the infringement and dilution of American Blind's marks."

**RESPONSE TO REQUEST NO. 31:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

-18-

1  However, American Blind believes that the requested documents are largely within the possession and

2  custody of Google and American Blind's competitors.

3  **REQUEST NO. 32:**

4     All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google has

5  knowingly sold the American Blind Marks in commerce and included them in Google's search engine
   for Google's own profit and to increase the competitive advantage of American Blind's competitors."

6  **RESPONSE TO REQUEST NO. 32:**

7     American Blind objects to this request to the extent it calls for the production of documents

8  protected by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and

9  without waiving these objections, responsive documents, to the extent that they exist, will be produced.

10

11 However, American Blind believes that the requested documents are largely within the possession and

12 custody of Google and American Blind's competitors.

13 **REQUEST NO. 33:**

14    All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Google adopted

15 and used this former trademark policy because it believed it would be, or could be, found liable for
   trademark infringement or other related claims if it did not block such purchases."

16 **RESPONSE TO REQUEST NO. 33:**

17    American Blind objects to this request to the extent it calls for the production of documents

18 protected by the attorney/client privilege and/or the attorney work product doctrine.  Subject to and

19 without waiving these objections, responsive documents, to the extent that they exist, will be produced.

20

21 However, American Blind believes that the requested documents are largely within the possession and

22 custody of Google and American Blind's competitors.

23 **REQUEST NO. 34:**

24    All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants and

25 their advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such
   as American Blind."

26

27

28                                              -19-

**RESPONSE TO REQUEST NO. 34:**

American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced. However, American Blind believes that the requested documents are largely within the possession and custody of Google and American Blind's competitors.

**REQUEST NO. 35:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants' search engines are deceptive and mislead consumers into believing falsely that the website links to which they are directed via manipulated search 'results' links are sponsored or authorized by and/or originat[e] from American Blind[.]"

**RESPONSE TO REQUEST NO. 35:**

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 36:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "[t]he manipulated search engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a source of its goods and services."

**RESPONSE TO REQUEST NO. 36:**

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

-20-

**REQUEST NO. 37:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "American Blind's customers have been and will likely continue to be confused about the origin and sponsorship of the companies other than American Blind listed by the Defendants in their deceptive search engine 'results.'"

**RESPONSE TO REQUEST NO. 37:**

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 38:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants' actions steal customers from American Blind's website, divert consumers to inferior products and services, erode the distinctiveness of American Blind's Marks, and impair American Blind's honest and good faith efforts to promote and sell its products on the Internet."

**RESPONSE TO REQUEST NO. 38:**

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the attorney/client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, responsive documents, to the extent that they exist, will be produced.

**REQUEST NO. 39:**

All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that "Defendants' actions have caused damage and irreparable injury to American Blind."

**RESPONSE TO REQUEST NO. 39:**

American Blind objects to this Interrogatory on the ground that it seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions. American Blind objects to this request to the extent it calls for the production of documents protected by the

-21-

1  attorney/client privilege and/or the attorney work product doctrine.  Subject to and without waiving

2  these objections, responsive documents, to the extent that they exist, will be produced.

3  **REQUEST NO. 40:**

4      All DOCUMENTS identified in, RELATING TO, or which were relied upon in responding to

5  Google's First Set of Interrogatories to American Blind.

6  **RESPONSE TO REQUEST NO. 40:**

7      Responsive documents will be produced.

8  **REQUEST NO. 41:**

9      All DOCUMENTS upon which AMERICAN BLIND will rely in this lawsuit.

10  **RESPONSE TO REQUEST NO. 41:**

11      Responsive documents will be produced.

12

13  Dated:        June 10, 2005                      HOWREY LLP

14

15

16                                           By:  _____

17                                                ROBERT N. PHILLIPS
                                                 ETHAN B. ANDELMAN
18
                                                 David A. Rammelt
19                                               Susan J. Greenspon
                                                 Dawn M. Beery
20                                               KELLEY DRYE & WARREN LLP
                                                 333 West Wacker Drive, Suite 2600
21                                               Chicago, IL  60606

22                                               Attorneys for Defendant/Counter-Plaintiff
                                                 AMERICAN BLIND AND WALLPAPER
23                                               FACTORY, INC.

24

25

26

27

28                                    -22-

American Blind's Responses to Google's First Set of Documents Requests
Case No. C03-5340 JF (EAI)
DM_US\8214784 v1

1

## PROOF OF SERVICE

2

I am a citizen of the United States and a resident of the State of California.  I am employed in

San Francisco County, State of California, in the office of a member of the bar of this Court, at whose

3
direction the service was made.  I am over the age of eighteen years, and not a party to the within

4
action.  My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105.  On the date

set forth below, I served the document(s) described below in the manner described below:

5

6
**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S RESPONSES TO GOOGLE, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

7

**VIA MESSENGER**

8
Michael H. Page
Mark A. Lemley

9
Ravind S. Grewal
Keker & Van Nest, LLP

10
710 Sansome Street
San Francisco, CA 94111

11
Facsimile:  (415) 397-7188

12
(BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon

Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused

13
such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed

below.

14

(BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey

15
Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I

caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by

16
Federal Express for overnight delivery.

17
**XX**      (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier

and/or process server for hand delivery on this date.

18

(BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey

19
Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the

United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be

20
placed in the United States Postal Service at San Francisco, California.

21
Executed on June 10, 2005, at San Francisco, California.

22

23  _____          _____

Patricia Cranmer                                    (Signature)

24

25

26

27

28