1   KEKER & VAN NEST, LLP
    MICHAEL H. PAGE - #154913
2   MARK A. LEMLEY - #155830
    KLAUS H. HAMM - #224905
3   AJAY S. KRISHNAN - #222476
    710 Sansome Street
4   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
5   Facsimile:  (415) 397-7188

6
    Attorneys for Plaintiff and Counter Defendant
7   GOOGLE INC.

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

11
    GOOGLE INC., a Delaware corporation,        Case No. C 03-5340-JF (RS)
12
                                Plaintiff,      **COUNTER-DEFENDANT GOOGLE
13                                              INC.'S REPLY BRIEF IN SUPPORT OF
                                                ITS MOTION TO COMPEL COUNTER-
14         v.                                   PLAINTIFF ABWF TO SATISFY ITS
                                                OUTSTANDING DISCOVERY
15  AMERICAN BLIND & WALLPAPER                  OBLIGATIONS**
    FACTORY, INC., a Delaware corporation
16  d/b/a decoratetoday.com, Inc., and DOES 1-  Date:      October 18, 2006
    100, inclusive,                             Time:      9:30 a.m.
17                                              Courtroom: 4
                                Defendants.     Judge:     Hon. Richard Seeborg
18
    AMERICAN BLIND & WALLPAPER
19  FACTORY, INC., a Delaware corporation
    d/b/a decoratetoday.com, Inc.,
20
                            Counter-Plaintiff,
21
           v.
22
    GOOGLE INC.,
23
                            Counter-Defendant.
24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT ................................................................................................................2

   A.    With regard to the Online Customer Satisfaction Survey, ABWF has
         not explained why other documents—which are either known to have
         existed or must have existed—were not produced. ...................................................2

   B.    The issue concerning ABWF's production of more readable versions
         of two spreadsheets will only be moot once ABWF produces the
         spreadsheets. ...........................................................................................................4

   C.    Google is entitled to depose ABWF's 30(b)(6) designee on the topic of
         damages......................................................................................................................4

   D.    Google is entitled to a follow-up deposition of Mr. Alderman on a
         document that apparently existed earlier this year but was destroyed
         and never produced. ..................................................................................................6

   E.    ABWF still has no basis for refusing to answer Google's First Set of
         Requests for Admissions.............................................................................................8

   F.    ABWF has not responded to Google's first interrogatory in its Second
         Set of Interrogatories, despite representing that it would do so.................................9

   G.    The issue regarding the Kaden questionnaires is moot...........................................9

   H.    ABWF's position on the "American Wallpaper Survey" documents
         indicates deep and glaring issues with its entire document search and
         collection process.....................................................................................................10

   I.    The issue regarding ABWF 1308-1309 is now moot. ...........................................12

   J.    ABWF must re-produce documents either as they are kept in the usual
         course of business or with designations that correspond to Google's
         document requests.....................................................................................................12

i

381567.01

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Briddell v. Saint Gobain Abrasives, Inc.,*
    233 F.R.D. 57 (D. Mass. 2005)...................................................................4

*Buchanan v. Consolidated Stores Corp.,*
    206 F.R.D. 123 (D. Md. 2002)...................................................................11

*Burlington N. & Santa Fe Ry. Co. v. United States District Court,*
    408 F.3d 1142 (9th Cir. 2005) ...................................................................8

*Crown Insurance Co. v. Craig,*
    995 F.2d 1376 (7th Cir. 1993) ...................................................................8

*Gray v. Faulkner,*
    148 F.R.D. 220 (N.D. Ind. 1992)...............................................................11

*In re Vitamins Antitrust Litigation,*
    217 F.R.D. 229 (D.D.C. 2002).................................................................4, 5

## DOCKETED CASES

*Williams v. Taser International, Inc,*
    No. 1:06-CV-0051-RWS, 2006 WL 1835437 at *7 (N.D. Ga. June 30, 2006).......................14

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b)(1)....................................................................5

Fed. R. Civ. P. 34(a) .....................................................................7

381567.01

1
## I.    INTRODUCTION

2         ABWF seeks plaudits for taking unreasonable positions throughout discovery, and then

3   finally capitulating when Google filed a motion to compel and the Court ordered the parties to

4   meet and confer.[1]  But wherever the credit or blame falls, the Court's meet-and-confer order has

5   produced results.  Of the ten issues Google presented in its opening brief, two are now moot

6   (Issues G and I, concerning the Kaden questionnaires and the reasons for redacting a document,

7   respectively), and two issues are on the way to becoming moot (Issues B and F, concerning

8   readable versions of two spreadsheets and an interrogatory response, respectively).  Four down,

9   six to go.

10        Were it only that easy.  There are four live issues that cast serious doubt on ABWF's

11  document search, collection, and production practices.  ABWF has now admitted—albeit

12  unintentionally—that it has destroyed documents and that it has failed to perform a reasonable

13  search for documents.  This poor discovery behavior has been exacerbated by the additional

14  discovery violation of failing to produce the documents in the manner Rule 34(b) requires.

15  These four issues are:

16      • **Issue A: Documents Associated with the Online Customer Satisfaction**

17         **Survey.**  ABWF has admitted to destroying documents (i.e., the weekly

18         spreadsheets that were circulated to management).  This raises serious questions

19         as to whether ABWF's representations that it possesses <u>no</u> documents concerning

20         the methodology or analysis of the surveys—which are performed on an on-going

21         basis—can be believed.  ABWF should be compelled to explain, by affidavit, why

22         no such documents exist.

23      • **Issue D: Re-deposing Jeff Alderman.**  ABWF admitted—in its fifth iteration of a

24         continually evolving story—that Mr. Alderman destroyed an electronic document,

25         which was material to his deposition testimony and which it never produced.

26

27  _____

[1] Google was and is mindful of its continuing meet-and-confer obligations.  The instant motion
28  had to be filed while those efforts were ongoing only because the time limit under Local Rule
    26-2 required it.

COUNTER-DEFENDANT GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (RS)

381567.01

1    Since Google never had an opportunity to depose him about this document, which

2    he claims to have relied on for his testimony, Google needs to re-depose him.

3    • **Issue H: The "American Wallpaper Survey" documents and inadequate**

4    **searches of employee email accounts.** ABWF produced suspiciously few

5    documents concerning the methodology and analysis of the American Wallpaper

6    Survey. Why? ABWF has admitted that it does not know whether it adequately

7    searched its former employees' email accounts. That is a major admission

8    because many of the key players at ABWF are former employees. Also, many of

9    them left ABWF only very recently, which raises questions as to whether there

10    has been an adequate search of current employee email accounts.

11    • **Issue J: Producing documents as kept in the usual course of business.** This

12    issue is linked with the other document search and collection issues. Many of

13    those issues were not identified earlier because of the inscrutable manner in which

14    ABWF has produced documents. Because ABWF has no complied with Rule

15    34(b), it takes a forensic level of attention to review ABWF's document

16    productions. This has severely burdened Google.

17    The remaining two issues are simply representative examples of ABWF's typical

18    stonewalling in discovery. With regard to Issue C—an adequately prepared 30(b)(6) designee on

19    the issue of damages—ABWF's prior designee explicitly testified that he did nothing to prepare

20    for testifying on that topic, and yet, ABWF will not produce a supplemental designee. With

21    regard to Issue E, ABWF insists on raising numerous meritless boilerplate objections to two

22    perfectly valid requests for admission. These are typical of ABWF's discovery conduct.

23

24    **II.    ARGUMENT**

25    A.    **With regard to the Online Customer Satisfaction Survey, ABWF has not explained why other documents—which are either known to have existed or must have existed—were not produced.**

26

27    This issue is still live. ABWF is wrong when it asserts that the issue is moot. It is true

28    that ABWF has produced readable versions of the Online Customer Satisfaction Survey itself.

2

381567.01

1  These documents are crucial to the case because they are direct evidence of the strength or

2  weakness of ABWF's claimed trademarks.  But ABWF still has not adequately addressed the

3  issue of documents *associated with* the Online Customer Satisfaction Survey.  Google raised

4  numerous concerns in its motion regarding documents associated with the survey.[2]  ABWF states

5  that it possesses no other documents associated with this survey.

6      But that is not good enough.  Google requires an explanation.  The survey is conducted

7  continuously, and Jeffrey Alderman—ABWF's 30(b)(6) designee—testified that weekly

8  spreadsheets containing the survey data are circulated to management.[3]  Google requested these

9  spreadsheets, and ABWF has now produced some of them, but others of them were destroyed.

10  ABWF states that "counsel for American Blind inquired and was told that American Blind did

11  not generally retain these weekly spreadsheets generated off the raw data."[4]   But why not?

12  Google's document requests in this case have been pending for two years.  Why were some of

13  these weekly spreadsheets destroyed?  What instructions were employees given about document

14  destruction?  ABWF should be compelled to answer this question, by affidavit.

15      More importantly, what other documents were destroyed?  ABWF claims that there are

16  no documents concerning the survey methodology and no documents analyzing the survey

17  results.  But the survey was circulated to at least nine members of management.[5]  Did none of

18  these nine individuals ever jot down a note or raise a question or concern about the survey

19  results?  ABWF would have us believe that the answer is no.  But that is a difficult answer to

20  accept, given that ABWF has admitted to destroying the weekly circulated spreadsheets.

21  Perhaps ABWF has not told its counsel the full story.  After all, ABWF's opposition uses the

22  somewhat suspicious construction "counsel for American Blind inquired and was told that

23

24  ---

[2] *See* Mot. at 3:11-4:3.

25  [3] *See* Mot. at 3:7-8

26  [4] Opp. at 2:18-20.  ABWF has produced some of the weekly spreadsheets that were not
    destroyed.  *See* Supplemental Declaration of Ajay S. Krishnan in Support of Counter-Defendant
27  Google Inc.'s Motion to Compel Counter-Platiniff ABWF to Satisfy its Outstanding Discovery
    Obligations ("Supp. Krishnan Decl."), ¶ 6.

28  [5] *See* Mot. at 3:18-4:1.

COUNTER-DEFENDANT GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (RS)

381567.01

1    American Blind did not generally retain these weekly spreadsheets."[6]   Whatever the case,

2    Google needs to know what associated survey documents exist—particularly methodology and

3    analysis—and is not in a position to ascertain these facts for itself.  ABWF should therefore be

4    compelled to explain adequately, by affidavit, why no such documents exist.

5

6    **B.    The issue concerning ABWF's production of more readable versions of two spreadsheets will only be moot once ABWF produces the spreadsheets.**

7        Again, ABWF uses the term "moot" a little too loosely.[7]  ABWF has agreed to produce

8    more readable versions of both spreadsheets.[8]  It has produced one, and once the second

9    spreadsheet is produced, the issue will be moot.

10   **C.    Google is entitled to depose ABWF's 30(b)(6) designee on the topic of damages.**

11       Gerald Curran, ABWF's 30(b)(6) designee on the topic of damages, testified that he did

12   nothing to prepare on the topic of damages.[9]  For this reason alone, Google is entitled to a real

13   opportunity to discover information from ABWF on the issue of damages.  ABWF is obligated to

14   provide all information available to the corporation at its 30(b)(6) deposition. *See, e.g., In re*

15   *Vitamins Antitrust Litigation*, 217 F.R.D. 229, 233-34 (D.D.C. 2002); *Briddell v. Saint Gobain*

16   *Abrasives, Inc.*, 233 F.R.D. 57, 60 (D. Mass 2005). Obviously, Mr. Curran's lack of preparation

17   precluded Google from discovering information available to ABWF.  As such, Google requires a

18   follow-up 30(b)(6) deposition on damages.

19       ABWF makes three arguments that, even if meritorious, would not detract from the larger

20   point that Mr. Curran did nothing to prepare to testify on the topic of damages.  Nonetheless, all

21   three of ABWF's arguments lack merit.

22       *First*, ABWF attempts to draw a hair-splitting line between "injuries and damages" and

23   "calculation of injuries and damages."  This distinction is absurd.  The term "injuries and

24   damages," as a matter of common sense, includes the amount of those damages.  To hold

25

26   [6] Opp. at 2:18-20.

27   [7] *Id.* at 3:5.

     [8] *Id.* at 3:5-6.

28   [9] Mot. at 5:9-15.

---

4

381567.01

1    otherwise, would require a party noticing a 30(b)(6) deposition to specify topics at too fine a

2    level of detail.  Additionally, the fact that both words—"injuries" and "damages"—are used

3    denotes the *type* and *amount* (i.e., calculation) of damages, respectively.  Otherwise, why use two

4    separate words?  Lastly, even if there were a distinction between "damages" and "calculation of

5    damages," it would not matter.  Because Mr. Curran had not prepared for the topic, he was

6    unable to testify to it, whether or not it is construed to include "calculation."

7        *Second*, ABWF tries to make something of the fact that some of the information about

8    damages is in Google's possession.  That changes nothing.  First, ABWF has now had a full

9    opportunity to obtain discovery and now has whatever information was initially in Google's

10   possession.  Second, there is still a good deal of information about damages that is not in

11   Google's possession.  For instance, Mr. Curran testified that Google knows how much web

12   traffic would have been diverted away from ABWF's paid advertisements.  Even so, ABWF

13   should still have information about how much revenue the company lost due to this diverted web

14   traffic, as well as how that data is stored at ABWF.  But when asked, Mr. Curran simply stated

15   that it would be "hard to calculate," that he had made no attempt to calculate it, and that no one

16   at ABWF had made any attempt to calculate it.[10]

17       *Third*, ABWF argues that Google is not prejudiced by the lack of live testimony on

18   damages because "American Blind's calculation of potential damages is for American Blind to

19   prove at trial."  But that is no basis for withholding discovery.  Discovery is permitted on any

20   matter relevant to a claim or defense.  Fed. R. Civ. P. 26(b)(1).

21       As a final matter, ABWF's offer to answer written questions instead of providing live

22   testimony is unsatisfactory.  Google is entitled to pursue the type of discovery it chooses.  *See In*

23   *re Vitamins Antitrust Litigation*, 217 F.R.D. at 233 (rejecting, with regard to a 30(b)(6)

24   deposition, the "substitution theory of discovery—that a defendant can respond as it sees fit

25   rather than as requested by the plaintiffs").

26       Thus, ABWF must produce an adequately prepared 30(b)(6) designee on damages.

27

28   [10] Krishnan Decl., Ex. M at 14:14-15:19.

5

381567.01

1    **D.    Google is entitled to a follow-up deposition of Mr. Alderman on a document that
         apparently existed earlier this year but was destroyed and never produced.**

2

3          The dispute surrounding a follow-up deposition of Mr. Alderman is that he testified at his

4    deposition to having performed, in May or June of 2006, potentially important analysis regarding

5    Google's *natural* search results for searches relating to ABWF. The analysis pertained to an

6    experimental ABWF policy on whether ABWF's affiliates could bid on ABWF's branded

7    keywords. By so testifying, Mr. Alderman acknowledged the existence of documents

8    concerning *natural* search results. But most of the documents that ABWF has produced in this

9    litigation concern Google's *paid* search results. Google has been asking the same question since

10   the time of Mr. Alderman's deposition: Where are these documents analyzing *natural* search

11   results? Google needed these documents before Mr. Alderman's deposition to understand what

12   analyses he had performed. But ABWF will not give Google a straight answer, effectively

13   blocking Google's discovery on the analysis Mr. Alderman claims he performed.

14         Remarkably, ABWF's position has shifted yet again. What follows is a timeline of

15   ABWF's continuously evolving position on the natural-search-results documents that Mr.

16   Alderman claims he relied on:

17         **Story #1 (August 4, 2006): "We don't know."** At the time of Mr. Alderman's

18   deposition, Michael Page, counsel for Google asked Paul Garrity, counsel for ABWF, for the

19   documents that Mr. Alderman relied on for his testimony concerning natural search results. Mr.

20   Garrity said he would look in to it and get back to Mr. Page, but never did so. Mr. Page then

21   wrote two follow-up letters to David Rammelt, counsel for ABWF.[11]

22         **Story #2 (August 30, 2006): "Please see these 100 pages of documents."** When ABWF

23   finally responded to Google's repeated questions about the documents, they referred Google to

24   100 pages of documents in ABWF's production. But these could not have been the documents

25   Mr. Alderman relied on, because they contained no analysis of natural search results.[12]

26

27   _____

     [11] Mot. at 6:18-7:2.

28   [12] *Id.* at 7:3-6.

6

**Story #3 (September 6, 2006): "Please see the 100 pages of documents, plus 11 other pages of documents."**  ABWF then took the position that there were eleven additional pages of documents that Mr. Alderman had relied on that had not yet been produced.  When Google reviewed these documents, it told ABWF that these could not have been the documents Mr. Alderman relied on either, as they did not contain analysis of natural search results.[13]

**Story #4 (September 19, 2006): "Please see the 100 pages of documents, plus the 11 extra pages, plus 35,000 pages of Coremetrics reports, plus Mr. Alderman's peculiar ability to "glean" information about natural search results by analyzing paid search results."**  This time, ABWF added two twists to the story.  First, ABWF stated that in addition to the previous 111 pages of documents, Mr. Alderman had also relied on the "Coremetrics reports" that had already been produced.  But which Coremetrics reports?  ABWF produced 35,000 pages of Coremetrics reports.  Which had Mr. Alderman relied on?  ABWF has never answered this question, though it was asked twice.  Second, ABWF stated that even though the documents did not contain any analysis of natural search results, Mr. Alderman may have been able to glean information about natural search results by analyzing paid search results.  To Google, this was impossible, and only heightened Google's need to re-depose Mr. Alderman.[14]

**Story #5 (September 27, 2006):  "Actually, Mr. Alderman now believes that he just created an electronic document concerning natural search results and then destroyed it."**  Finally, in ABWF's opposition brief, it takes a wholly new position: Mr. Alderman apparently created an electronic analysis of natural search results and neglected to save it.

Google has two responses to ABWF's latest story.  First, it appears that ABWF has created documents—electronic analyses of, at least, natural search results—and then destroyed them.  That analysis that Mr. Alderman claims to have run regarding natural search results is a "document," under Rule 34.  Fed. R. Civ. P. 34(a) (defining "documents" to include "data

---

[13] *Id.* at 7:9-21.

[14] Declaration of Caroline C. Plater in Support of American Blind and Wallpaper Factory, Inc.'s Opposition to Counter-Defendant Google Inc.'s Motion to Compel Counter-Plaintiff ABWF to Satisfy Its Outstanding Discovery Obligatons ("Plater Decl."), Ex. A at 2, ¶¶ 2-3.; Supp. Krishnan Decl., ¶ 7.

381567.01

1    compilations from which information can be obtained"); *see Crown Ins. Co. v. Craig*, 995 F.2d

2    1376, 1382-83 (7th Cir. 1993). ABWF should have saved and then produced this analysis.

3    Google requires an affidavit documenting all analyses concerning Google search results that

4    ABWF has generated, but failed to save. Second, Google will need to depose Mr. Alderman

5    concerning the document he claims to have destroyed, regarding natural search results.

6    **E.    ABWF still has no basis for refusing to answer Google's First Set of Requests for**
7    **Admissions.**

8          Google has already addressed in its opening brief each of the points that ABWF raised

9    with regard to Google's first request for admission in its First Set of Requests for Admissions.

10    No further discussion of that request is necessary. With regard to Google's second request for

11    admission ("Request Two"), Google will address the new point raised by ABWF in its

12    opposition brief.

13          ABWF contends that "the use of such phrases as 'no way to determine for certain' and

14    'some other word or phrase' are so ambiguous that there is no way this request could be

15    answered without qualification or explanation." This argument makes no sense.

16          As a threshold matter, ABWF waived this objection for failing to state it with

17    particularity in its response to Request Two. *Burlington N. & Santa Fe Ry. Co. v. United States*

18    *Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). Rather, ABWF simply used the boilerplate

19    language, "this request contains vague and ambiguous wording."[15]

20          Putting aside waiver, ABWF does not explain what is ambiguous about these phrases.

21    Rather, ABWF relies on bald assertion. In fact, these phrases are extremely concrete, and result

22    in a request for admission that has a very clear meaning. The whole request, which provides

23    context, states:

24          Admit that if an ad appears on a Google search results page when a user searches
             for "american blind," the user has no way to determine for certain whether the
25          ad's appearance was triggered by the phrase "american blind" or some other word
             or phrase.

26

27

28    [15] Mot. at 9:8-10.

1    The phrase "no way to determine for certain" asks whether there is *any* analytical technique that

2    a user could apply to deduce a particular fact (*i.e.*, what word or phrase triggered the ad) with

3    *complete* accuracy.  The absolute nature of the words "no way" and "for certain" actually gives

4    this phrase a very definite meeting.   Similarly, in context, the term "some other word or phrase"

5    refers to *any* keyword (or related word or phrase) *except for* "american blind" that, as a search

6    term, could *possibly* have triggered the displayed ad.  Thus, this phrase too, when taken in

7    context, actually has a very defined meaning.  As explained in more detail in Google's opening

8    brief, the request, as a whole, is manageable and makes sense.[16]

9        For these reasons, and the ones given in the opening brief, ABWF should be compelled to

10    answer Google's First Set of Requests for Admissions.

11    **F.    ABWF has not responded to Google's first interrogatory in its Second Set of
         Interrogatories, despite representing that it would do so.**

12

13        ABWF stated in its opposition that it would provide the dates responsive to Google's first

14    interrogatory in its Second Set of Interrogatories prior to the date of Google's reply.  It has not

15    done so yet.  The issue is therefore still live.

16        Importantly, ABWF has completely abandoned its prior unreasonable position.  Before

17    the Court ordered the parties to meet and confer further, ABWF's unyielding position was that

18    the answer to this interrogatory was located in 700 referenced pages of documents.[17]  Google

19    insisted that those 700 pages did not contain the information it sought.[18]  ABWF should have

20    answered this interrogatory months ago.

21    **G.    The issue regarding the Kaden questionnaires is moot.**

22        ABWF has produced email correspondence between itself and Kaden, adequately

23    demonstrating that Kaden no longer possesses the questionnaires that Google sought.  This issue

24    is now moot.

25

26

---

27    [16] *Id.* at 8:6-19.

[17] *Id.* at 13:1-3.

28    [18] *Id.* at 13:4-14.

9

381567.01

1      Google should point out, however, that the email correspondence ABWF produced offers

2   precisely the type of *transparency* in the document collection process that ABWF typically does

3   not provide.  All Google seeks from ABWF are reliable indicia of reasonable document search

4   and collection efforts.  All too often, ABWF responds with the inscrutable "All responsive

5   documents have been produced"—a statement devoid of information or explanation that

6   therefore requires blind trust.  ABWF's belated conduct with regard to the Kaden questionnaires

7   stands in marked contrast to its conduct elsewhere.

8   **H.    ABWF's position on the "American Wallpaper Survey" documents indicates deep
           and glaring issues with its entire document search and collection process.**

9

10      ABWF's position on the July 2004 American Wallpaper Survey—an online survey of

11   visitors who arrived at ABWF's website after performing a search for the term "American

12   Wallpaper"—is extremely troubling.  Indeed, it shines doubt on ABWF's entire document search

13   and collection process.

14      In its opening brief, Google raised serious concerns about ABWF's document search and

15   collection efforts for documents related to the American Wallpaper Survey.  First, ABWF had

16   previously represented that it had produced all documents related to the American Wallpaper

17   Survey when it had not actually done so.  Second, ABWF produced suspiciously few documents

18   related to American Wallpaper Survey.  A July 2004 email, which contained the survey results,

19   was particularly troubling.  Seven ABWF employees received the email but only one copy of

20   that email was produced.  It therefore appeared either that copies of that email (and probably

21   other documents) had been destroyed while Google's document requests were pending, or that

22   employee emails had not been adequately searched.

23      ABWF's opposition brief confirms, at the least, that employee emails have not been

24   adequately searched.  ABWF openly admits that it either has not searched or does not know

25   whether it searched the email accounts of three former employees.[19]  One of these former

26   employees, Steve Katzman, ABWF's long-time CEO, lies at the heart of this case.  Mr.

27   Katzman, prior to leaving in May 2006, was ABWF's 30(b)(6) designee on all 25 topics noticed

28

10

381567.01

1   by Google.[20]  He clearly had relevant knowledge.  How could ABWF not know whether it had

2   searched Mr. Katzman's email account?  This was particularly troubling because the discovery

3   deadline has already passed.

4        This raises other questions:  What other former-employee email accounts has ABWF

5   neglected to search?  ABWF mentions two others, Ron Myers and Sam Stephens, because they

6   are relevant to the American Wallpaper Survey issue.  But neglecting to search Mr. Katzman's

7   email account has implications far beyond the American Wallpaper Survey.  ABWF underwent a

8   sweeping management change in the last several months.  Were the emails of those departed

9   employees searched with regard to any document requests?  For instance, many of the ABWF

10   employees that are identified in ABWF's initial disclosures as people with relevant knowledge

11   have left the company.[21]  Have their email accounts been searched?

12        Indeed, the issue is not even limited to the email accounts of *former* employees.  Mr.

13   Katzman was at ABWF until May 2006.  At that point, his email account would have already

14   contained any July 2004 American Wallpaper Survey documents.  Had Mr. Katzman's emails

15   been properly searched when he was still at the company?  What about other current-employee

16   email accounts?  ABWF's opposition brief raises more questions than it answers.

17        There is only one way to remedy these sorts of fundamental concerns about ABWF's

18   document search and collection process:  ABWF must be compelled to produce an affidavit

19   describing its document search and collection process.  *Buchanan v. Consol. Stores Corp.*, 206

20   F.R.D. 123, 125 (D. Md. 2002) (compelling a responding party "to provide an affidavit

21   describing the efforts made to locate documents"); *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D.

22   In. 1992) (requiring an "indication beyond mere suspicion that the response is incomplete or

23   incorrect" before disbelieving a party's assertion that it has produced all responsive documents in

24   its possession).  Only then can Google have any faith in the reliability of ABWF's document

25   search and collection.

26

27   [19] *See* Opp. at 9:7-16.

      [20] Supp. Krishnan Decl., ¶ 8.

28   [21] Supp. Krishnan Decl., ¶ 9 & Ex. A.

COUNTER-DEFENDANT GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (RS)

381567.01

1   Requiring ABWF to produce such an affidavit will not only explain why so few

2   documents on the American Wallpaper Survey were produced, but it will also explain other

3   holes in ABWF's document production.[22]

4   **I.    The issue regarding ABWF 1308-1309 is now moot.**

5   As with the Kaden issue, ABWF has now provided a reasonable explanation for not

6   producing a document, and Google accepted it.

7   **J.    ABWF must re-produce documents either as they are kept in the usual course of
        business or with designations that correspond to Google's document requests.**

8

9   Google has moved for an order compelling ABWF to produce documents as they are kept

10  in the usual course of business.  For starters, it is quite clear that the documents were not

11  produced as they are kept, despite ABWF's repeated, meaningless assertions that they were.

12  Moreover, although ABWF has provided some descriptions of the documents that it has

13  produced, these descriptions were often unhelpful because they do not indicate how the files

14  were maintained at ABWF.  The manner of ABWF's production is causing great hardship to

15  Google because Google must perform time-consuming analysis of documents (or waste

16  deposition time) to determine where documents came from or what they are.  Additionally,

17  ABWF's manner of production is a major reason why Google has no idea where ABWF has

18  searched for documents thus far.

19  ABWF repeats numerous times that its documents were produced as kept in the usual

20  course of business as if that somehow makes it true.[23]  As the Court stated in its prior discovery

21  order on this issue ("Discovery Order"),[24] an unsupported statement that the documents were

22

23  [22] Google reserves its rights to pursue all appropriate remedies, including another motion to
     compel, if and when it receives this affidavit.

24  [23] *See* Opp. at 9:21-23 ("American Blind has informed Google that it has produced its documents
     as they are kept in the usual course of business…"); *id.* at 10:5-8 ("The fact that American Blind

25  produced its documents as they are kept in the usual course of business and also provided an
     index and description of the documents, by Bates Range, is in accord with what courts have

26  required"); *id.* at 10:14-15 ("American Blind has always stated that it was producing its
     documents as they are kept in the ordinary course of business"); *id.* at 11:1-3 ("American Blind

27  has provided Google with a detailed description of the type of documents produced, in addition
     to producing them as they were kept by American Blind").

28  [24] Order Granting Defendant's Motion to Enforce Protective Order and to Compel Designation

12

COUNTER-DEFENDANT GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (RS)

381567.01

1   produced as they were kept in the usual course of business will not satisfy Rule 34(b). Not once

2   does ABWF explain why its production reflects the way documents were maintained at ABWF.

3   Nor does ABWF respond to any of the *four examples* Google raised in its opening brief that

4   demonstrate why these documents could not have been kept at ABWF in the manner that they

5   were produced.[25]

6        An additional example is ABWF's initial production, which consisted of 2790 pages of

7   documents, lumped together in a box.[26] The cover letter provided no information about the

8   documents.[27] That production is a hodgepodge of cease-and-desist correspondence, litigation

9   files, email correspondence between Google and ABWF, correspondence between ABWF and

10  other search engines, among other things.[28] There are no divisions between the individual

11  documents and there is no rhyme or reason as to the order of the documents.[29] Thus, in the

12  cease-and-desist correspondence and in the litigation files it is difficult (and sometimes

13  impossible) to tell where one matter ends and the next matter begins.[30] ABWF emails are

14  interspersed throughout the production.[31] No business would file a box of unrelated documents

15  such as these together, without any dividers or labels of any sort. The record therefore clearly

16  contradicts ABWF's bare assertion that it produced documents as they are kept in the usual

17  course of business.

18        Thus, the only question is whether ABWF's cover letters (which ABWF refer to as an

19  "index"), which include document descriptions by Bates Number, satisfy the "usual course of

20  business" requirement. As the Discovery Order stated, "merely categorizing the documents

21  produced does not, without some further explanation, satisfy the requirement that they be

22  _____

23  of and Classification of Documents ("Discovery Order") (Docket Item No. 94), filed February 8, 2006, at 5.

24  [25] *See* Mot. at 18:9-19:16.

    [26] Krishnan Decl., Ex. Q at 2 (cover letter to production).

25  [27] *Id.*

26  [28] Supp. Krishnan Decl., ¶10.

    [29] *Id.*

27  [30] *Id.*

28  [31] *Id.*

COUNTER-DEFENDANT GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
COUNTER-PLAINTIFF ABWF TO SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS
CASE NO. C 03-5340-JF (RS)

381567.01

1    produced as kept in the usual course of business."[32]  Mere categorization, "though somewhat

2    helpful," is insufficient.[33]  Rather, document designations must "correspond to the manner in

3    which those files were maintained."[34]  Although Google cited this language of the Discovery

4    Order in its opening brief, ABWF completely ignored it.[35]  Instead, ABWF simply cited to a

5    single case from a District Court in Georgia, which only stands for the proposition that if a party

6    chooses to produce documents as they are kept in the usual course of business, there will

7    sometimes be an additional obligation to organize the files in a helpful way.  *See Williams v.*

8    *Taser Int'l, Inc*, no. 1:06-CV-0051-RWS, 2006 WL 1835437 at *7 (N.D. Ga. June 30, 2006).

9    But *Williams* does not address the issue, raised in this Court's Discovery Order, of what the

10   underlying duty to produce documents as they are kept in the usual course of business entails.

11   Importantly, ABWF does not dispute Google's characterization of ABWF's document

12   designations—that they do not correspond to the manner in which the files were maintained.

13   Rather, ABWF stands by these designations, but nonetheless claims that they satisfy Rule

14   34(b).[36]

15   _____

16   [32] Discover Order at 5.

      [33] *Id.* at 5-6.

17   [34] *Id.*

18   [35] ABWF ironically suggests that there was some sort of hypocrisy between Google's earlier
      position, that the Court's Discovery Order did not apply to Google's productions that post-dated

19   that order, and Google's position now, that the Discovery Order contains relevant law that
      governs ABWF's productions that post-dated that order.  Opp. at 10 n.6.  Of course, there is no

20   tension between these positions.  Google's position that its productions post-dating the
      Discovery Order are not governed by the order was based on the fact that Rule 34(b) provides

21   parties the option of either producing documents as they were kept in the usual course of
      business or producing designations that correspond to the document requests, whereas the

22   Discovery Order limited Google to the latter manner of production.  Google simply took the
      position that all productions referenced in ABWF's moving papers were literally subject to the

23   Discovery Order, whereas subsequent productions were governed only by Rule 34(b), and
      therefore could be produced in either manner permitted by the Rule.  By contrast, Google now

24   argues that the Discovery Order's legal analysis, which interprets Rule 34(b)'s "usual course of
      business" option, binds the parties.  Thus, the distinction is between whether the *operative*

25   *portion* of a Court order purporting to apply only to certain productions also applies to other
      productions (it does not) and whether the *legal analysis* in a Court order binds the parties (it

26   does).

      [36] By way of distraction, ABWF focuses on the way that Google produced its documents.  Opp.

27   at 11 n.7.  This is a bit of a sidetrack, since ABWF did not move to compel Google to produce its
      documents differently.  Since the Court's Discovery Order, Google has typically produced

28   documents with designations that correspond to the manner in which the files are maintained.

                                                   14

381567.01

1    Third, and most importantly, ABWF's method of production has caused Google

2  substantial hardship and expense throughout discovery, and continues to create difficulty in

3  understanding the documents that ABWF has produced. Because of ABWF's method of

4  production, Google was frequently forced to discover *during depositions* what certain documents

5  are; sometimes ABWF employees were unable to identify the documents, given the lack of

6  context.[37] Not knowing who in ABWF maintained certain documents forced Google to spend

7  numerous additional hours analyzing documents to understand what they were. ABWF's initial

8  production—the 2970 pages of documents that were produced without divisions or labeling and

9  without any information at all in the cover letter—is an irrefutable example of the shortcomings

10  in ABWF's production that burdens Google. With regard to many documents, Google is still

11  without answers. Finally, Google has not been able to keep track of ABWF's document search

12  and collection efforts, because it has no way of knowing where the documents are coming from.

13  Given the serious concerns that have now been raised about the scope of ABWF's document

14  search and retention efforts, it is particularly important for Google to know how the documents

15  that have been produced were maintained. These are the major burdens imposed on Google by

16  ABWF's improper manner of production.

17    Thus, ABWF should be required to re-produce documents in compliance with Rule 34.

18

19  Dated: October 4, 200                    KEKER & VAN NEST, LLP

20

21                                          By: /s/ Ajay S. Krishnan
                                                AJAY S. KRISHNAN
22                                              Attorneys for Plaintiff and Counter
                                                Defendant GOOGLE INC.
23

24
_____
*See* Plater Decl., Ex I at 60-65. Moreover, when ABWF has complained that Google's
25  designations were not sufficiently specific, Google produced more specific designations. *See id.*,
    Ex. I at 62-65.
26
    [37] *See, e.g.*, Krishnan Decl., Ex. B at 94:21-98:25 & 102:18-24 (transcript of deposition of Scot
27  Powers); *id.*, Ex. C at 97:1-24, 106:1-107:20, 230:14-231:23 & 280:7-17 (transcript of deposition
    of Joe Charno); *id.*, Ex. D at 36:19-37:13, 84:22-85:4, 98:2-98:25 & 102:25-104:12 (transcript of
28  deposition of Jeffrey Alderman).

381567.01