# Exhibit A

Dockets.Justia.com

1  Robert N. Phillips (SBN 120970)
   Ethan B. Andelman (SBN 209101)
2  HOWREY SIMON ARNOLD & WHITE, LLP
   525 Market Street, Suite 3600
3  San Francisco, CA  94105
   Telephone:  (415) 848-4900
4  Facsimile:  (415) 848-4999

5  David A. Rammelt (Admitted *Pro Hac Vice*)
   Susan J. Greenspon (Admitted *Pro Hac Vice*)
6  Dawn M. Beery (Admitted *Pro Hac Vice*)
   KELLEY DRYE & WARREN LLP
7  333 West Wacker Drive, Suite 2600
   Chicago, IL  60606
8  Telephone:  (312) 857-7070
   Facsimile:  (312) 857-7095

9

   Attorneys for Defendant/Counter-Plaintiff
10 AMERICAN BLIND AND WALLPAPER
   FACTORY, INC.

11

12                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA

13 GOOGLE INC., a Delaware corporation,        | Case No. C 03-5340-JF (EAI)

14              Plaintiff,                       **AMERICAN BLIND & WALLPAPER
                                                FACTORY, INC.'S INITIAL
15         v.                                   DISCLOSURES PURSUANT TO
                                                FEDERAL RULE OF CIVIL
16 AMERICAN BLIND & WALLPAPER                   PROCEDURE 26
   FACTORY, INC., a Delaware corporation
17 d/b/a decoratetoday.com, Inc.; and DOES 1-
   100, inclusive,
18
19              Defendants.

20 AMERICAN BLIND & WALLPAPER
   FACTORY, INC., a Delaware corporation
21 d/b/a decoratetoday.com, Inc.,

22              Counter-Plaintiff,

23         v.

24 GOOGLE, INC., AMERICA ONLINE, INC.,
   NETSCAPE COMMUNICATIONS
25 CORPORATION, COMPUSERVE
   INTERACTIVE SERVICES, INC., ASK
26 JEEVES, INC., and EARTHLINK, INC.

27              Counter-Defendants/
                Third-Party Defendants

28

HOWREY
SIMON
ARNOLD &
WHITE, LLP

AMERICAN BLIND'S INITIAL DISCLOSURES

1    Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff

2  American Blind & Wallpaper Factory, Inc. ("American Blind") hereby makes the following Initial

3  Disclosures as follows:

## GENERAL OBJECTIONS

6    1.  The following disclosures are based upon information reasonably available to, and currently

7  in the possession, custody or control of, American Blind.  To the best of American Blind's knowledge,

8  information and belief, these disclosures are complete and correct as of the date they are made.

9  American Blind anticipates that it will obtain additional facts, identify additional persons who may

10  have knowledge relevant to the issues in this action, and identify additional documents relevant to the

11  factual disputes in this action through their continuing pre-trial research, investigation and analysis and

12  through discovery of Plaintiff/Counter-Defendant Google, Inc., the Third-Party Defendants, and/or

13  other third parties.  American Blind expressly reserves its rights:  (a) to make subsequent revision,

14  supplementation or amendment to these disclosures based upon any information, evidence, documents,

15  facts and things which hereafter may be discovered, or the relevance of which may hereafter be

16  discovered; and (b) to produce, introduce or rely upon additional or subsequently acquired or

17  discovered writings, evidence and information at trial or in any pre-trial proceedings held herein.

18    2.  American Blind objects to producing any documents or other tangible things that are, or

19  fairly constitute, trade secrets or that otherwise contain confidential, proprietary or sensitive

20  information until the entry of an appropriate Protective Order governing the disclosure and

21  dissemination of such information.

## WITNESSES

As of the date of these Initial Disclosures, American Blind believes, based on information

reasonably available to it, that the following individuals may have information that American Blind

may use to support its case:

1.  Steve Katzman, CEO & President, American Blind

1    Mr. Katzman can be contacted through counsel for American Blind.

2    Mr. Katzman has knowledge regarding American Blind's trademarks, the amount of

3    time and money spent by American Blind building up the value of its trademarks, American Blind's ad

4    campaign with Google, Google's sale of American Blind's trademarks as Keywords to American

5    Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

6    due to the "Sponsored Links" posted by Google in response to a search for American Blind's

7    trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's

8    trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by

9    American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of

10   Google's AdWords Program.

11

12       2.   Joe Charno, Vice President of Marketing, Advertising & E-Commerce, American Blind

13              Mr. Charno can be contacted through counsel for American Blind.

14       Mr. Charno has knowledge regarding American Blind's trademarks, the amount of time

15   and money spent by American Blind building up the value of its trademarks, American Blind's ad

16   campaign with Google, Google's sale of American Blind's trademarks as keywords to American

17   Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

18   due to the "Sponsored Links" posted by Google in response to a search for American Blind's

19   trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's

20   trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by

21   American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of

22   Google's AdWords Program.

23       3.   Bill Smith, Ecommerce Advisor, American Blind

24              Mr. Smith can be contacted through counsel for American Blind.

25       Mr. Smith has knowledge regarding American Blind's trademarks, the amount of time

26   and money spent by American Blind building up the value of its trademarks, American Blind's ad

27   campaign with Google, Google's sale of American Blind's trademarks as keywords to American

28   Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

1  due to the "Sponsored Links" posted by Google in response to a search for American Blind's

2  trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's

3  trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by

4  American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of

5  Google's AdWords Program.

6

7      4.  Jeff Alderman, Ecommerce Relationship Manager, American Blind

8          Mr. Alderman can be contacted through counsel for American Blind.

9          Mr. Alderman has knowledge regarding American Blind's trademarks, the amount of

10  time and money spent by American Blind building up the value of its trademarks, American Blind's ad

11  campaign with Google, Google's sale of American Blind's trademarks as keywords to American

12  Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

13  due to the "Sponsored Links" posted by Google in response to a search for American Blind's

14  trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's

15  trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by

16  American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of

17  Google's AdWords Program.

18      5.  Scott Powers, Ecommerce Coordinator, American Blind

19          Mr. Powers can be contacted through counsel for American Blind.

20          Mr. Powers has knowledge regarding American Blind's trademarks, the amount of time

21  and money spent by American Blind building up the value of its trademarks, American Blind's ad

22  campaign with Google, Google's sale of American Blind's trademarks as keywords to American

23  Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

24  due to the "Sponsored Links" posted by Google in response to a search for American Blind's

25  trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's

26  trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by

27  American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of

28  Google's AdWords Program.

6. Rick Steele, Select Blinds

American Blind believes that Mr. Steele has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

7. Sergey Brin, Google

Mr. Brin has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

8. Larry Page, Google

Mr. Page has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

9. Eric Schmidt, Google

Mr. Schmidt has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

10. Kristina C., Google

American Blind believes that Kristina C. has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

11. Jill Randell, Google

AMERICAN BLIND'S INITIAL DISCLOSURES

1    American Blind believes that Ms. Randell has knowledge regarding American Blind's

2 ad campaign with Google, the amount of money American Blind pays Google for American Blind's

3 own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

4 competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization

5 campaign, and the amount of revenue earned Google by selling American Blind's trademarks as

6 Keywords to American Blind's competitors.

7

   12. Carrie Chung, Google

8
         American Blind believes that Ms. Chung has knowledge regarding American Blind's ad
9
   campaign with Google, the amount of money American Blind pays Google for American Blind's own
10
   ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's
11
   competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization
12
   campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as
13
   Keywords to American Blind's competitors.
14

15    13. Allison Maranz, Google

16         American Blind believes that Ms. Maranz has knowledge regarding American Blind's

17 ad campaign with Google, the amount of money American Blind pays Google for American Blind's

18 own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

19 competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization

20 campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

21 Keywords to American Blind's competitors.

22
   14. Laura Balkovich, Google
23
         American Blind believes that Ms. Balkovich has knowledge regarding American
24
   Blind's ad campaign with Google, the amount of money American Blind pays Google for American
25
   Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American
26
   Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind
27
   optimization campaign, and the amount of revenue earned by Google by selling American Blind's
28

1  trademarks as Keywords to American Blind's competitors.

2

3      15. Kulpreet Rana, Google

4          American Blind believes that Kulpreet Rana has knowledge regarding Google's

5  AdWords program, Google's policy regarding the sale of trademarks as keywords to advertisers as part

6  of the AdWords program, Google's broad matching algorithm, other lawsuits against Google for sale

7  of a party's trademarks as Keywords as part of the AdWords program, and Google's settlement with

8  other trademark owners regarding the use of trademarks as Keywords.

9      16. Britton Mauchline (n/k/a Britton Picciolini), Google

10         Ms. Picciolini was one of American Blind's primary contacts with Google regarding

11  American Blind's own AdWords campaign, and American Blind's complaints regarding Google's sale

12  of American Blind's trademarks to other as Keywords.  American Blind believes that Ms. Picciolini

13  has knowledge regarding American Blind's ad campaign with Google, the amount of money American

14  Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's

15  trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions

16  feature, the American Blind optimization campaign, and the amount of revenue earned by Google by

17  selling American Blind's trademarks as Keywords to American Blind's competitors.

18

19      17. Rose A. Hagan, Google

20         American Blind believes that Ms. Hagan has knowledge regarding Google's AdWords

21  program, Google's policy regarding the sale of trademarks as keywords to advertisers as part of the

22  AdWords program, Google's broad matching algorithm, other lawsuits against Google for sale of a

23  party's trademarks as Keywords as part of the AdWords program, and Google's settlement with other

24  trademark owners regarding the use of trademarks as Keywords.

25      18. K. Robertson, Google

26         American Blind believes that K. Robertson has knowledge regarding American Blind's

27  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

28  own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

1   competitors, and the amount of revenue earned by Google by selling American Blind's trademarks as

2   Keywords to American Blind's competitors.

3       19. Charles A. Kilmer, Advertiser on Google

4           7008 Tyndale Street, Mclean, VA  22101

5           American Blind believes that Mr. Kilmer has knowledge regarding Google's sale of

6   American Blind's trademarks as Keywords to American Blind's competitors as part of Google's

7   AdWords Program, Google's AdWords Keywords Suggestions feature, and the American Blind

8   optimization campaign.

9

10      20. Evan Scott, Advertiser on Google

11          1466 Laurel Oaks Drive, Streamwood, IL  60107

12          American Blind believes that Mr. Scott has knowledge regarding Google's sale of

13  American Blind's trademarks as Keywords to American Blind's competitors as part of Google's

14  AdWords Program, Google's AdWords Keywords Suggestions feature, and the American Blind

15  optimization campaign.

16

17      21. Jeff Edwards, Google

18          American Blind believes that Mr. Edwards has knowledge regarding American Blind's

19  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

20  own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

21  competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

22  campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

23  Keywords to American Blind's competitors.

24      22. Kimberli Heard, Google

25          American Blind believes that Ms. Heard has knowledge regarding American Blind's ad

26  campaign with Google, the amount of money American Blind pays Google for American Blind's own

27  ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

28  competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

1  campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

2  Keywords to American Blind's competitors.

3

4      23. A. Dimarco, Google

5         American Blind believes that A. Dimarco has knowledge regarding American Blind's

6  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

7  own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

8  competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

9  campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

10  Keywords to American Blind's competitors.

11      24. John DiCola, Google

12         American Blind believes that Mr. DiCola has knowledge regarding American Blind's

13  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

14  own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

15  competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

16  campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

17  Keywords to American Blind's competitors.

18      25. Caroline Escobar, Google

19         American Blind believes that Ms. Escobar has knowledge regarding American Blind's

20  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

21  own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

22  competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

23  campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

24  Keywords to American Blind's competitors.

25

26      26. Emily Nichols, Google

27         American Blind believes that Ms. Nichols has knowledge regarding American Blind's

28  ad campaign with Google, the amount of money American Blind pays Google for American Blind's

AMERICAN BLIND'S INITIAL DISCLOSURES

1    own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

2    competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

3    campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as

4    Keywords to American Blind's competitors.

5            27. Hema Prashad, Google

6                    American Blind believes that Hema Prashad has knowledge regarding American

7    Blind's ad campaign with Google, the amount of money American Blind pays Google for American

8    Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American

9    Blind's competitors, and the amount of revenue earned by Google by selling American Blind's

10   trademarks as Keywords to American Blind's competitors.

11

12           28. A corporate representative of eRank.com

13                   American Blind believes that this corporate representative has knowledge regarding

14   Google's sale of American Blind's trademarks as keywords to American Blind's competitors,

15   Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

16           29. A corporate representative of The Blind Factory

17                   American Blind believes that this corporate representative has knowledge regarding

18   Google's sale of American Blind's trademarks as keywords to American Blind's competitors,

19   Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

20

21           30. A corporate representative of wallpaperstore.com

22                   American Blind believes that this corporate representative has knowledge regarding

23   Google's sale of American Blind's trademarks as keywords to American Blind's competitors,

24   Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

25           31. A corporate representative of SelectBlinds.com

26                   American Blind believes that this corporate representative has knowledge regarding

27   Google's sale of American Blind's trademarks as keywords to American Blind's competitors,

28

1  Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

2        32. A corporate representative of America Online, Inc.

3             American Blind believes that this corporate representative has knowledge regarding

4  America Online, Inc.'s relationship with Google, the revenues and profits earned by America Online,

5  Inc. from posting Google's "Sponsored Links" in response to searches on its website, America Online,

6  Inc.'s policy regarding the sale of trademarks as Keywords, and damages suffered by American Blind

7  as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's

8  AdWords Program.

9

10       33. A corporate representative of Netscape Communications Corp.

11            American Blind believes that this corporate representative has knowledge regarding

12 Netscape Communications Corp.'s relationship with Google, the revenues and profits earned by

13 Netscape Communications Corp. from posting Google's "Sponsored Links" in response to searches on

14 its website, Netscape Communications Corp.'s policy regarding the sale of trademarks as Keywords,

15 and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks

16 as Keywords as part of Google's AdWords Program.

17

18       34. A corporate representative of Compuserve Interactive Services, Inc.

19            American Blind believes that this corporate representative has knowledge regarding

20 Compuserve Interactive Services, Inc.'s relationship with Google, the revenues and profits earned by

21 Compuserve Interactive Services, Inc. from posting Google's "Sponsored Links" in response to

22 searches on its website, Compuserve Interactive Services, Inc.'s policy regarding the sale of

23 trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of

24 American Blind's trademarks as Keywords as part of Google's AdWords Program.

25       35. A corporate representative of Ask Jeeves, Inc.

26            American Blind believes that this corporate representative has knowledge regarding

27 Ask Jeeves, Inc.'s relationship with Google, the revenues and profits earned by Ask Jeeves, Inc. from

28 posting Google's "Sponsored Links" in response to searches on its website, Ask Jeeves, Inc.'s policy

1  regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of

2  Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

3      36. A corporate representative of Earthlink, Inc.

4          American Blind believes that this corporate representative has knowledge regarding

5  Earthlink, Inc.'s relationship with Google, the revenues and profits earned by Earthlink, Inc. from

6  posting Google's "Sponsored Links" in response to searches on its website, Earthlink, Inc.'s policy

7  regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of

8  Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

9

10     37. A corporate representative of Overture Services Inc. n/k/a Yahoo! Search Marketing Group

11 ("Overture")

12         American Blind believes that this corporate representative has knowledge regarding

13 Overture's policy regarding the sale of trademarks as keywords or search terms, the confusion suffered

14 by Internet users that results from the sale of trademarks as keywords or search terms, revenues and

15 profits derived from the sale of keywords and search terms, and the technology used to prevent

16 advertisers from bidding on and/or purchasing the trademarks of others.

17                          **DOCUMENTS**

18     Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure and subject to the General

19 Objections stated above, American Blind identifies the following category of documents that American

20 Blind may use to support its case:

21     38. Screen prints of the Google search results page showing that American Blind's competitors'

22 advertisements appear in response to searches for American Blind's trademarks.

23

24     39. Screen prints of the Google search results page from September 17, 2004 from users

25 performing searches for American Blind's trademarks in San Jose, California and other geographic

26 locations in the United States.

27

28     40. Google's past and present printed trademark policies.

HOWREY
SIMON
ARNOLD &
WHITE, LLP

41. Documents filed by Google with the Securities and Exchange Commission in connection with and subsequent to Google's initial public offering.

42. Various e-mail and letter communications between American Blind and Google regarding American Blind's advertising campaign.

43. Various e-mail and letter communications between American Blind and Google regarding American Blind's competitors' use of American Blind's trademarks as Keywords.

44. Communications between American Blind and some of American Blind's competitors regarding the competitors' use of American Blind's trademarks as keywords for Google's AdWords Program.

45. Assorted financial data from American Blind to prove the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords.

46. Communications between Google and its advertisers illustrating the advertisers' purchase of American Blind's trademarks as Keywords.

47. Overture Services, Inc. n/k/a Yahoo! Search Marketing Group's policy regarding the sale of trademarks as keywords or search terms.

48. The transcript of a 60 Minutes segment aired on January 2, 2005 regarding Google.

49. The Playboy magazine article regarding Google and its founders.

50. Documents evidencing American Blind's rights to the American Blind federally registered and common law trademarks.

51. The Permanent Injunction Order issued by the United States District Court for the Eastern District of Michigan permanently enjoining a competitor from using American Blind's "trademarks, service marks or the word 'American' in any variation or combination with the word "Blinds" either singular or plural...."

52. Documents evidencing the strength of American Blind's federally registered and common law trademarks.

53. Documents evidencing the proximity and/or similarity of the goods sold by American Blind and American Blind's competitors to whom Google sells American Blind's trademarks as keywords.

54. Documents evidencing the similarity between the American Blind trademarks and the keywords sold by Google to American Blind's competitors.

55. Documents evidencing confusion by customers and potential customers as a result of Google's sale of American Blind's federally registered and common law trademarks to American Blind's competitors as keywords.

56. Research and studies indicating that consumers are confused by the sale of trademarks as keywords.

57. Documents evidencing that American Blind and American Blind's competitors to whom Google sells American Blind's federally registered and common law trademarks as keywords are using the same marketing channels.

58. Documents evidencing the type of goods sold by American Blind and the degree of care likely to be exercised by the purchaser of American Blind's goods.

## DAMAGES

American Blind is unable to quantify its damages at this early stage of this litigation. American Blind's damages result from lost Internet traffic, lost sales, and lost visibility because customers and potential customers are diverted to competitors' websites due to Google's illegal sale of American Blind's trademarks to American Blind's competitors. American Blind is also damaged because its brand name is diluted and tarnished, which has resulted in further lost sales. However, much of the information that American Blind (and its expert witnesses) will require for American Blind's damages computation is in Google's possession and has not been produced to American Blind.

1   Until American Blind obtains discovery from Google, for example, it cannot know how much Internet

2   traffic has been diverted to its competitors' websites by Google's "Sponsored Links" that were

3   triggered by searches for American Blind's trademarks.

4                                    **INSURANCE**

5           American Blind believes that it does not have insurance coverage covering the types of

6   claims asserted in this case.

7
    Dated: April 27, 2005                        HOWREY SIMON ARNOLD & WHITE,
8                                                 LLP

9

10                                       By:  _____
11                                            ROBERT N. PHILLIPS

12                                            David A. Rammelt
                                              Susan J. Greenspon
13                                            Dawn M. Beery
                                              KELLEY DRYE & WARREN LLP
14                                            333 West Wacker Drive, Suite 2600
                                              Chicago, IL  60606
15
                                              Attorneys for Defendant/Counter-Plaintiff
16                                            AMERICAN BLIND AND WALLPAPER
                                              FACTORY, INC.
17

18

19

20

21

22

23

24

25

26

27

28

-15-

## PROOF OF SERVICE

I am a citizen of the United States and a resident of the State of California. I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105. On the date set forth below, I served the document(s) described below in the manner described below:

**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26**

**VIA FACSIMILE & U.S. MAIL**
Michael H. Page
Mark A. Lemley
Ravind S. Grewal
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Facsimile: (415) 397-7188

**VIA FACSIMILE & U.S. MAIL**
Stephen E. Taylor
Jan J. Klohonatz
Taylor & Company Law Offices, Inc.
One Ferry Building, Suite 355
San Francisco, CA 94111
Facsimile: (415) 788-8208

XX    (BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

(BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

(BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

XX    (BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

Executed on April 27, 2005, at San Francisco, California.

_Patricia Cranmer_
(Signature)

_____
Patricia Cranmer

HOWREY
SIMON
ARNOLD &
WHITE