1   Robert N. Phillips (SBN 120970)
    Ethan B. Andelman (SBN 209101)
2   HOWREY LLP
    525 Market Street, Suite 3600
3   San Francisco, CA  94105
    Telephone:  (415) 848-4900
4   Facsimile:   (415) 848-4999

5   David A. Rammelt (Admitted *Pro Hac Vice*)
    Susan J. Greenspon (Admitted *Pro Hac Vice*)
6   KELLEY DRYE & WARREN LLP
    333 West Wacker Drive, Suite 2600
7   Chicago, IL  60606
    Telephone:  (312) 857-7070
8   Facsimile:   (312) 857-7095

9   Attorneys for Defendant/Counter-Plaintiff
    AMERICAN BLIND AND WALLPAPER
10  FACTORY, INC.

11                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
12

13  GOOGLE INC., a Delaware corporation,          Case No. C 03-5340-JF (RS)

14          Plaintiff,

15      v.                                          **AMERICAN BLIND AND WALLPAPER
                                                    FACTORY, INC.'S RESPONSE TO
16  AMERICAN BLIND & WALLPAPER                      GOOGLE INC.'S OBJECTIONS TO
    FACTORY, INC., a Delaware corporation           MAGISTRATE JUDGE'S ORDER
17  d/b/a decoratetoday.com, Inc.; and DOES 1-      COMPELLING DEPOSITION OF
    100, inclusive,                                 GOOGLE CO-FOUNDER AND
18                                                  PRESIDENT LARRY PAGE**
            Defendants.
19

20  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation           Judge:  Hon. Jeremy Fogel
    d/b/a decoratetoday.com, Inc.,
21
            Counter-Plaintiff,
22
        v.
23
    GOOGLE, INC.
24
            Counter-Defendants.
25

26

27

28

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606        CH01/PLATC/213369.2

                        DM_US\8397895.v1

1

## I.    **INTRODUCTION**

2      Google seeks the extraordinary measure of overturning Magistrate Judge Seeborg's

3  decision on a discovery matter that is clearly within his purview and discretion, and particularly

4  within his specialized knowledge of the travails of discovery in this case.  Incredibly, Google fails

5  to adequately explain the single most compelling fact that confronted the Magistrate:  on the eve

6  of the close of discovery, the company's Senior Trademark Counsel admitted for the first time

7  under oath that the very trademark policy that Google itself has placed in issue by filing this

8  lawsuit was changed at the direction of one person – company co-founder Larry Page.  Despite

9  this testimony, Google argues that Mr. Page has no relevant knowledge, even though it appears

10  Google has not even conferred with Mr. Page to verify this — Google offers only a hearsay

11  attorney declaration, rather than a declaration from Mr. Page himself, in its attempt to prevent the

12  deposition of Mr. Page from moving forward.

13      Scrambling to avoid having to produce Mr. Page for a limited, three-hour deposition in

14  this case, Google elevates form over substance in advancing several arguments that are without

15  support in the record.  First, Google incorrectly claims that American Blind should be denied its

16  right to this discovery because discovery in this case languished for "31 months between when

17  Google filed suit and the close of discovery …."   In fact, Google itself sought a stay for most of

18  this period, and even after the stay was lifted, Google did not produce documents in useable form

19  until March 10, 2006, after being ordered to do so by the Magistrate.

20      Second, Google argues that, even though it doggedly fought American Blind's attempts to

21  extend discovery or to depose any lower-level Google employees, American Blind ought

22  nonetheless to have been required to depose dozens of Google employees first, before deposing

23  Mr. Page.  Putting aside the incongruity of this argument, the law does not require a party to

24  depose the full infantry before questioning the general.  Even Google admits that the trademark

25  policies that it placed at issue by filing this case were changed "at the directive"[1] of Mr. Page and

26  that "he remains *actively involved* in Google's day to day operations",[2] which is more than

---

27  [1]    (Obj. at  11:17.)

28  [2]    Kwun Decl. at ¶ 4 (emphasis supplied).

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                - 2 -

DM_US\8397895.v1

1   enough to establish the relevance of his testimony under Rule 26 of the Federal Rules of Civil

2   Procedure.

3       Third, Google's argument about the propriety and timeliness of the deposition notice at

4   issue is flat wrong.  The deposition notice at issue was served ***before*** the June 27th discovery cut-

5   off.  Thus, under the kind of strict interpretation favored by Google,[3] technically American Blind

6   was not required to obtain consent or to make any showing of good cause in order to depose Mr.

7   Page.  If anything, Google was required to seek a protective order to quash the deposition, which

8   Google failed to do (thus waiving its objection now).

9       Finally, technical niceties aside, Google's contention that the Magistrate made a *sua*

10  *sponte* ruling that was contrary to the law is simply incorrect.  Although the Latin term is liberally

11  tossed about by Google in its papers, "*sua sponte*" is in fact defined by Black's Law Dictionary to

12  mean:  "Without prompting or suggestion; on its own motion."  The Magistrate's ruling was not

13  the product of whimsical fancy, as Google's *sua sponte* argument insinuates.  Rather, the issue of

14  whether American Blind should be allowed to depose Larry Page was squarely before the

15  Magistrate in American Blind's motion to compel[4] and addressed in Google's opposition papers –

16  with no less than three separate arguments – and further argued at oral arguments.  (*See* Docket

17  Item Nos. 142, 174, 183.)  It simply is not true to say that Google did not have the opportunity to

18  address this issue.  Just because Google failed to convince the Magistrate that American Blind

19  had not established "good cause" to take this deposition of Larry Page during the extension of

20  discovery does not mean that the Magistrate's ruling is clearly erroneous or contrary to law.

21  Google's objection should be overruled.

22

---

23  [3]    Google self-servingly argues for a strict interpretation of court orders only when it will
          benefit Google.  Last month, in arguing that American Blind should not be permitted to
24        depose six lower-level Google employees, Google argued that American Blind's mistaken
          interpretation of this Court's June 23, 2006 Order extending discovery should preclude it
25        from deposing these individuals.  Even though Magistrate Judge Seeborg agreed that
          American Blind's interpretation was a good faith mistake, he nonetheless strictly
26        construed the Order at Google's urging against American Blind.

27  [4]    As the title would suggest, American Blind's Motion to Compel Discovery Timely Served
          ("Motion to Compel") was directed to all outstanding discovery, including Mr. Page's
28        deposition.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                        - 3 -

DM_US\8397895.v1

## II.    ARGUMENT

Tellingly, not once in its papers does Google address the stringent standard it is required to meet in order to overturn Magistrate Judge Seeborg's Order.  The law is clear that the standard for reviewing a magistrate judge's ruling is extremely deferential and, therefore, it is very difficult to meet the clearly erroneous or contrary to law standard.  Federal Rule of Civil Procedure, 72(a), along with Civil L.R. 72-2, govern objections to nondispositive pretrial decisions by magistrate judges. Rule 72(a) provides:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; ... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard applies to the magistrate judge's findings of fact. *Wolpin v. Morris, Inc.*, 189 F.R.D. 418, 422 (C.D.Cal. 1999) (citations omitted).  In finding that the magistrate judge's decision is "clearly erroneous," the Court must "arrive at a 'definite and firm conviction that a mistake has been committed.'"  *Id.* (citations omitted) (emphasis added).  "This standard is extremely deferential and the Magistrate's rulings should be considered the final decisions of the District Court."  *EEOC  v. Lexus of Serramonte*, 2006 WL 2567878 (N.D. Cal. Sept. 5, 2006) (defendants' objection to magistrate's order overruled) (citations omitted) (emphasis added); *see also Doe v. City of Chula Vista*, 196 F.R.D. 562, 564 (S.D. Cal. 1999) ("review under the clearly erroneous standard is significantly deferential").

### A.    The Magistrate's Order was not *sua sponte*

By claiming that the Magistrate's order was *sua sponte*, Google acts as if it was not involved in the briefing of American Blind's Motion to Compel or any of the events leading up to it.  The briefs and correspondence leading up to the Magistrate's decision to order Larry Page's deposition belie Google's feigned surprise.  As the briefs and the transcript of the oral arguments show, Google has had more than a fair opportunity to present its arguments against deposing

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2

- 4 -

DM_US\8397895.v1

1    Mr. Page.  American Blind issued its Notice of Deposition of Larry Page on June 26, 2006 —

2    prior to the original discovery cutoff date — and shortly thereafter met and conferred with

3    Google's counsel about Google's willingness to produced Mr. Page. (Declaration of Caroline C.

4    Plater, "Plater Decl.", Ex. A, B).  Google indicated it would not willingly produce Mr. Page for

5    deposition based on its position that the notice was "untimely."  (Plater Decl. Ex. A.)  Google

6    subsequently responded to Mr. Page's deposition notice with nothing more than a document

7    entitled: "Objections to the Notice of Deposition of Larry Page ("Notice Objection"), based solely

8    on the objection to the timeliness of the notice. (Plater Decl. Ex. C.)  For whatever reason, even

9    though American Blind's Notice of Deposition was served before the original discovery cut-off,

10   Google choose not to file a motion for protective order under Rule 26(c).

11           Instead, Google waited for American Blind to bring the issue to the attention of the court.

12   After American Blind filed its Motion to Compel, which clearly indicated that Mr. Page's

13   deposition was an issue, Google set forth all of its objections to Mr. Page's deposition in its

14   Opposition.  Because Google had not objected to Mr. Page's deposition on any grounds other

15   than timeliness at the time of the filing of the Motion to Compel, American Blind did not address

16   any other "potential" objections that Google may have tried to later assert.  (*See* Docket Item

17   No.142).  Rather, it was up to Google to assert its own additional objections, if any, in its

18   opposition papers, or through a motion for protective order.

19           Contrary to Google's claims that it reserved the issue of raising any objection beyond

20   timeliness, it had opportunity to and did address several bases for objecting to Mr. Page's

21   deposition in its Opposition.  (*See* Docket Item No. 174, at 8-10).  Google's Opposition raised

22   three separate bases on which it objected to the deposition of Mr. Page: (1) timeliness (the notice

23   should have been issued earlier) (*Id*. at 8); (2) limited involvement (based on emails that Google

24   had produced in October 2005, but which were not identified as American Blind's basis for

25   claiming that Mr. Page had direct knowledge) (*Id*. at 9); and (3) American Blind had not

26   established Mr. Page's unique knowledge pertinent to the issues in this case. (*Id*. at 9).  Thus,

27   Google's current position that it did not have the opportunity to properly raise its objections with

28   the Magistrate is belied by the arguments Google did raise .

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                                    - 5 -

DM_US\8397895.v1

1    Google's suggestion that the Magistrate "reached out and decided *sua sponte*" this issue is

2    preposterous.  (Obj. at 8.)  While Google claimed that this issue was not brought before the

3    Magistrate in the "proper form" in oral arguments, the Magistrate rejected Google's form-over-

4    substance argument, stating:  "[W]hether or not they presented it in the proper form or not, they

5    did include arguments in the paperwork…that identified a basis for concluding that Mr. Page is a

6    deponent who had something to say on the subject."  (Plater Decl. Ex. D at 10:14-22.)

7    Thereafter, the parties engaged in lengthy arguments regarding the propriety of allowing Larry

8    Page's deposition.  (*Id*. at 11-18.)  During this exchange, the Magistrate made it clear that he was

9    well versed in the law regarding deposition of high-level executives and took that into

10    consideration in reaching his decision.  (*Id*. at 16-17.)  At the end of the hearing, the Magistrate

11    indicated he would take the matter under advisement.  (*Id*. at 19.)  Google's counsel made no

12    objection and made no attempt to stop the Magistrate from ruling on the issue  – such as asking

13    for further briefing on the issue because Google had not had the proper opportunity to address the

14    issue.  (*Id*. at 19.)  It is clear that, at the time, Google felt it had been sufficiently heard on the

15    issue.

16        Thus, the record shows that this issue was fully briefed and argued and the Magistrate was

17    well within his authority to render a ruling on this discovery dispute.  Nothing in the record

18    suggests this was a *sua sponte* decision.[5]

19        **B.    Both parties directly addressed whether Mr. Page had relevant knowledge.**

20        Given that significant portions of both parties' written submissions and oral arguments

21    were explicitly dedicated to the issue of whether Mr. Page may be subject to deposition, it is clear

22    that neither party had any intention of reserving this issue, as Google now claims.  Again, one

23    must ask, was Google not present for the briefing and argument of the Motion to Compel?  Faced

24    with the overwhelming evidence that this issue was fully developed before the Magistrate,

25

---

[5]    Furthermore, even if it were *sua sponte*, the cases relied upon by Google do not support
26    the contention that non-dispositive discovery issues cannot be decided *sua sponte* — in
       each instance the *sua sponte* decision of the court was on a dispositive issue.  *See Day v.*
27    *McDonough*, 126 S.Ct. 1675 (2006) (district court *sua sponte* raised issue of timeliness
       and dismissed petition for a writ of habeas corpus); *Verizon Delaware Inc. v. Covad*
28    *Comm. Co*., 377 F.3d 1081 (9th Cir. 2004) (*sua sponte* grant of summary judgment).

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                                    - 6 -

DM_US\8397895.v1

1   Google points to some boilerplate reservation it made in its Opposition, which is directly at odds

2   with the body of its Opposition and statements made by its lead counsel during oral argument.

3   Google's arguments in this regard stretch credulity.

4           As described above, in both its written papers and oral argument, Google presented at

5   least <u>three</u> distinct reasons why Mr. Page should not be subject to deposition:  (1) timeliness

6   (Docket Item No. 174 at 8); (2) limited involvement (*Id.* at 9); and (3) failure to show that

7   Mr. Page has some unique knowledge pertinent to the issues in this case (*Id.* at 9).  The most

8   significant arguments raised by Google, for purposes of this Objection, are the second and third

9   arguments.  These are also the exact same arguments that Google submits to this Court and that

10  Google claims it did not have a chance to address with the Magistrate.  Aside from exposing the

11  untenable argument that Google is presenting to this Court, the foregoing also establishes that

12  Google had not reserved this issue.

13          American Blind's Reply in Support of its Motion to Compel in turn addressed the three

14  arguments asserted by Google in seeking to oppose the Motion to Compel with regard to

15  Mr. Page's deposition.  Specifically, American Blind addressed Google's claim that Mr. Page had

16  limited involvement.  American Blind explained that the documents relied upon by Google

17  (showing Mr. Page as one of many recipients on an email concerning the change in Google's

18  trademark policy) were not part of the analysis American Blind conducted in arriving at the

19  conclusion that it had sufficient evidence regarding Mr. Page's involvement in the decision to

20  change Google's trademark policy, given his high ranking status un the company.  Rather,

21  American Blind relied upon the testimony of several lower level Google personnel, statements

22  made under oath by Google's Senior Trademark Counsel, Rose Hagan, and numerous documents

23  produced by Google, which established Mr. Page's unique knowledge regarding the decision to

24  change Google's trademark policy.  (Docket Item No. 142 at 3-4; Docket Item No. 183 at 6-8.)

25      **C.**      <u>**American Blind has established that Mr. Page is subject to deposition in this case.**</u>

26

27          On the merits, Google's position is inconsistent.  First, Google complains that American

28  Blind noticed Mr. Page's deposition too late.  Then, it complains, after American Blind waited to

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                          - 7 -

DM_US\8397895.v1

1    notice Mr. Page's deposition until it had sufficient information that indicated Mr. Page's unique

2    personal knowledge of core issues of the case, that American Blind has not carried its burden to

3    show that Mr. Page has relevant information.  Google cannot have it both ways.

4        American Blind was well aware of the need to have specific factual support justifying the

5    deposition of Mr. Page.  That is why the deposition notice was served near the end of the original

6    discovery period, after American Blind had deposed two lower level Google employees, who

7    each testified to Mr. Page's unique knowledge, and after American Blind had received additional

8    documents from Google, on June 22, 2006, concerning Mr. Page's unique knowledge of the

9    decision to change Google's trademark policy.

10       1.    **Google's 30(b)(6) testimony uniformly refers to Mr. Page's unique
             knowledge regarding in the decision to change the trademark policy.**

11

12       American Blind deposed three lower level employees, who were nonetheless quite high in

13   the pecking order, Alana Karen (Policy Manager), Prashant Fuloria (Group Product Manager),

14   and Rose Hagan, (Senior Trademark Counsel), all of whom were listed in the initial disclosures.

15   Each one of these 30(b)(6) witnesses denied possessing knowledge regarding the decisions to

16   change the trademark policy at Google and identified Mr. Page as the person with the knowledge

17   regarding that decision.  It defies logic that American Blind should ignore the testimony of three

18   Google employees that Larry Page is the man to talk to about the decision to change the policy,

19   and instead seek to depose "any of the 20 lower level employees that Google listed in its initial

20   disclosures."  (Obj. at 10).  Moreover, Rose Hagan was the 30(b)(6) witness who testified on the

21   topic of Google's trademark policy and she specifically pointed to Larry Page as the person who

22   made the decisions regarding the change in Google's trademark policy.

23       Though American Blind had ample evidence supporting its right to depose Mr. Page prior

24   to the Motion to Compel, even more persuasive support for Mr. Page's unique knowledge came

25   to light ***after*** the filing of the Motion to Compel and was addressed by American Blind in its

26   Reply in Support.  The Motion to Compel was filed on July 13, 2006.  On August 10, 2006, Rose

27   Hagan was deposed on the topic of Google's trademark policy.  Ms. Hagan, like other Google

28   30(b)(6) witnesses before her, including Alana Karen and Prashant Fuloria, identified Mr. Page as

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                    - 8 -

DM_US\8397895.v1

1   the person who made the decision to change the trademark policy.  None of Google's 30(b)(6)

2   witnesses, by their own admission, possess the same level of knowledge as Mr. Page on the issue

3   of the decision to change the trademark policy.  (Docket Item No. 183 at 7.)

4           Though Google offers one excerpt from the testimony of Prashant Fuloria that identifies

5   Mr. Page as part of a team involved in the approval of the change of the trademark policy, Google

6   cannot distance itself from Ms. Hagan's frank admission identifying Mr. Page alone as someone

7   with relevant information.  And if Ms. Hagen misspoke, Google could have easily cleared up the

8   issue by presenting the Magistrate or this Court with an affidavit from Mr. Page, as is commonly

9   done when opposing the deposition of high-level executives.  *See Consolidated Rail Corp. v.*

10  *Primary Industries Corp.*, 1993 WL 364471 (S.D.N.Y. Sept. 10, 1993) (deposition of top

11  executives who submitted affidavits attesting to no personal knowledge of the underlying claims

12  deferred "until it has been demonstrated that they have some unique knowledge pertinent to the

13  issues in these cases.").  Google did not submit or offer to submit any statement from Mr. Page at

14  any time, electing instead to rely upon a hearsay declaration from a Google attorney that purports

15  to inform the Court that Mr. Page knows nothing.

16              2.      **Google's last minute production contained several documents that
                        demonstrate Mr. Page's unique knowledge regarding in the decision
17                      to change the trademark policy.**

18          American Blind's Reply in Support of the Motion to Compel also addressed several

19  documents which were produced by Google, on June 22, 2006, just days before the original close

20  of discovery, that further supported Mr. Page's role as a central character in the decision to

21  change Google's trademark policy and, thus, his unique knowledge on the topic.  (Docket Item

22  No. 183 at 8.)  Google argued, erroneously, in both its Opposition and at oral argument that the

23  only documents referring to Mr. Page and the trademark policy were emails where Mr. Page was

24  one of many recipients.  Though these emails exist, they are not the documentary support that

25  American Blind relied upon.  Documents contained in the June 22, 2006 production revealed that

26  Mr. Page was personally involved in courting eBay in an attempt to persuade eBay to endorse

27  Google's new trademark policy.  (*Id.*)  Mr. Page also participated in a transcribed meeting with

28  eBay in which he made comments regarding the need to uniformly apply Google's new

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                      - 9 -

DM_US\8397895.v1

1   trademark policy.  (*See Id.*)  Mr. Page's position on Google's trademark policy and the difficulty

2   in applying this policy is also referenced in one of the emails contained in the June 22, 2006

3   production.  (*Id.*)

4          Taken as a whole, the testimony of Google's three 30(b)(6) witnesses along with the

5   contents of Google's June 22, 2006 production, support the conclusion reached by the Magistrate

6   that American Blind had established good cause to proceed with the deposition of Larry Page

7   during the extension of fact discovery.

8                    3.       **The change of the trademark policy is a core issue in this case.**

9          In an effort to avoid the correct conclusion drawn by the Magistrate, Google seems to

10  suggest that Mr. Page merely is merely identified as having approved a policy and if that was

11  followed to its logical end then "every time someone sued a major corporation he could depose

12  their executives…" (Obj. at 9).  That, however, does not accurately represent the importance of

13  the policy at issue in this case or the testimony of Google's witnesses regarding Mr. Page's role in

14  instigating and approving the policy.  Google, not American Blind, chose to file this lawsuit and

15  to seek this Court's imprimatur that Google's new trademark policy was legal.  American Blind's

16  position is that the new policy does violate the law and the decision and reasoning behind

17  changing Google's trademark policy from one that comported with the law to one that violated

18  the law is central to this case for a variety of reasons.  For example, whether any infringement

19  was deliberate bears directly on the issue of liability and damages.  Moreover, the policy change

20  can be considered an admission against interest.[6]  In short, despite Google's strident protests, the

21  Magistrate recognized the relevance of Mr. Page's testimony to the issues in this case.[7]  (Plater

22

23  [6]     These two issues are simply examples of the relevance of Mr. Page's testimony.
        American Blind is not required to divulge its full strategy for deposing Mr. Page.

24  [7]     The Magistrate is also within his authority to make relevance determinations regarding
25          discovery requests.  *See Wolpin*, 189 F.R.D. at 422.  "Where the magistrate's decision
        concerns an evidentiary question of relevance, 'the Court must review the magistrate's
26          order with an eye toward the <u>broad standard of relevance</u> in the discovery context.  Thus,
        the standard of review in most instances is not the explicit statutory standard, but the
27          clearly implicit standard of abuse of discretion.'"  *Id*. (citations omitted) (emphasis
        added).  "A judge abuses his discretion 'only when his decision is based on an erroneous
28          conclusion of law or where the record contains no evidence on which he rationally could
        have based that decision.'"  *Id*. (citations omitted).  As discussed herein, the Magistrate

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                              - 10 -

DM_US\8397895.v1

1    Decl. Ex. D at 15-16.)

2        Faced with the Magistrate's statement that he considered this a relevant issue, Google now

3    attempts to convince the Court of Mr. Page's limited role and limited knowledge as a means of

4    avoiding deposition.  Google, however, has not argued that Mr. Page has no knowledge of the

5    decision to change Google's trademark policy.  Rather, Google claims that Mr. Page's testimony

6    would not be relevant because he "has never had any contact with any representative of American

7    Blind & Wallpaper, or with anyone else, concerning American Blind & Wallpaper, its

8    relationship with Google, or its claims in this litigation."  (Kwun Decl. ¶6).  This position, of

9    course, carefully avoids what Mr. Page <u>does</u> have knowledge of -- the decision to change the

10   trademark policy.  Mr. Page does not need to have knowledge of anything specific to American

11   Blind to possess relevant knowledge to this case – which centers on the decision to change

12   Google's trademark policy.  Simply put, the parties would not be before the Court if Google had

13   not changed its trademark policy.  Mr. Page was at the center of that decision, and the Magistrate

14   properly ordered that he should be deposed.

15       **D.      What does Mr. Page have to say on the issue?**

16       Google does not submit the declaration of Larry Page in support of its claims that he has

17   no relevant knowledge and is too busy to be deposed.  *Compare Thomas v. International Business*

18   *Machines,* 48 F.3d 478, 483 (10th Cir. 1995) (deposition of top executive not ordered where

19   executive submitted an affidavit testifying to his lack of personal knowledge of any aspect of the

20   plaintiff's employment in an age discrimination case).  Instead, Google submits the declaration of

21   Michael Kwun, Senior Litigation Counsel, on issues regarding Larry Page's personal knowledge

22   and heavy business schedule.  Mr. Kwun's declaration is self serving, hearsay, and immaterial to

23   the current issue.  Mr. Kwun carefully informs the Court of Mr. Kwun's knowledge of Mr. Page's

24   busy schedule, demonstrating that this is hearsay testimony.  (Kwun Decl. ¶5.)  Mr. Kwun even

25   declares that "based on a review of corporate records, and excluding privileged, company-internal

26
_____

27   *(Footnote Cont'd from previous page)*

28       based his Order on significant factual support viewed through the appropriate legal
         standard.

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2

DM_US\8397895.v1

1   communications, Mr. Page has never had any contact with any representative of American Blind
2   & Wallpaper, or with anyone else, concerning American Blind & Wallpaper, its relationship with
3   Google, or its claims in this litigation." (Kwun Decl. ¶6). Again, this is hearsay testimony and
4   should be ignored. Notably, Mr. Kwun does not state that his review of these materials informed
5   him that Mr. Page has no knowledge regarding the decision to change Google's trademark policy
6   or regarding any of Google's claims in this litigation. Even if the Court were inclined to rely on
7   Mr. Kwun's hearsay testimony, his failure to state unequivocally that Mr. Page has no relevant
8   information whatsoever demonstrates why Mr. Page should be deposed.

9   **E.    This is a textbook example of when a high level executive should be deposed.**

10   Here, the Magistrate was presented with facts that showed: (1) several lower level
11   employees were deposed and could not provide the same information that Larry Page could; and
12   (2) this testimony and the documents produced by Google showed that Larry Page possesses
13   knowledge relevant to the issues of the case. This is a textbook case where the deposition of a
14   high level executive should be allowed.

15   There is no *per se* rule barring depositions of top corporate executives. *See Salter v.*
16   *Upjohn Co*, 593 F.2d 649, 651 (5th Cir. 1979). Courts often restrict efforts to depose top
17   executives where the party seeking the deposition can obtain the same information through a less
18   intrusive means or where the party has not established that the executive has some unique
19   knowledge pertinent to the issues in the case. *Id*. at 650-51. Here, American Blind satisfied both
20   of those criteria in its Motion to Compel and the Magistrate recognized this. As has been amply
21   established in the Motion to Compel and above, the testimony and documents indicate that Mr.
22   Page is in possession of unique knowledge that is relevant to the issues of the case. The
23   corporate depositions have been taken and the corporate designees pointed to Mr. Page as the
24   person most knowledgeable about the decision to change Google's trademark policy. Allowing
25   for Mr. Page's deposition comports with the law in this regard. In fact, the cases relied upon by
26   Google support this approach. *See Folwell v. Hernandez,* 210 F.R.D. 169, 173-174 (M.D. N.C.
27   2002) (deposition of Sara Lee CEO ordered where lower level employees had been deposed and
28   CEO's special knowledge was demonstrated); *Baine v. General Motors Corp*., 141 F.R.D. 332,

1   335 (M.D. Ala. 1991) (deposition of high level executive reserved until corporate depositions

2   were taken to determine if the information sought could be obtained from the corporate

3   depositions); *Cardenas v. The Prudential Ins. Co. of America*, 2003 WL 21293757, *1 (D.C.

4   Minn. May 16, 2003).

5        Moreover, consistent with the approach that the "court may fashion a remedy which

6   reduces the burden on the executive" where a top executive's deposition is ordered, the

7   Magistrate ordered that Mr. Page only be subject to a three hour deposition. *See Folwell*, 210

8   F.R.D. at 174. The Magistrate's order compelling Larry Page's deposition followed the letter of

9   the law. Thus, the Magistrate's order was neither clearly erroneous nor contrary to law.

10
11       **F.**    **American Blind established good cause for the allowance of additional
                    discovery during the extension.**

12       As this Court stated when it granted the extension of discovery, any matters regarding

13  conducting new discovery were to be taken up with Magistrate Judge Seeborg for good cause.

14  Following extensive briefing, Magistrate Judge Seeborg found that American Blind had shown

15  good cause shown for allowing the deposition of Larry Page. This Court also found good cause

16  existed for extending the discovery cut off based on the diversion caused by the change of

17  management at American Blind during the last months of the initial discovery deadline.

18  American Blind sought an extension of time precisely because it needed extra time for discovery.

19       While Google repeatedly points out that American Blind could have served the discovery

20  at issue during this period of change or even prior to that time, this is a over-simplification of

21  matters. As the Magistrate recognized, Mr. Page's "personal involvement in the policy change

22  did not come to full light until August 10, 2006." (Docket Item No. 182.) Google, quick to

23  dismiss all the testimony and documents that give rise to good cause for Mr. Page's deposition,

24  falls back on the argument that the deposition should have been noticed earlier. Yet, if it had

25  been noticed earlier, Google would have objected that American Blind could not show that Mr.

26  Page had any unique knowledge to the issues of the case, given that the bulk of the support for

27  Mr. Page's deposition came to light near the end of or after the original close of discovery.

28  Google, however, cannot un-ring the bell – the evidence belatedly produced days before the

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/213369.2                                    - 13 -

DM_US\8397895.v1

1  original close of discovery and elicited in testimony after the close of discovery indicate that

2  Larry Page has unique knowledge regarding a core issue in this case.  Whether the documents

3  and testimony regarding Larry Page established good cause for his deposition during the

4  extension of discovery is a matter that this Court directed the parties to submit to the Magistrate

5  for consideration and decision.  The Magistrate considered the facts presented and rendered his

6  ruling.  This is not a question of law that was erroneously decided.[8]

7  **III.    CONCLUSION**

8  While Google may disagree with the Magistrate's ruling, that is not sufficient to vacate

9  the order compelling Larry Page's deposition.  The Magistrate's ruling was not *sua sponte* and

10  neither party reserved this issue from consideration.  The Magistrate entered a valid order, under

11  the facts presented and the appropriate legal standard was applied, following full briefing, oral

12  arguments and further consideration by the Magistrate of the issues.  Nothing in the record even

13  remotely suggests that this order was clearly erroneous or contrary to law.

14  Accordingly, Google's request to vacate the Magistrate's order compelling the deposition

15  of Larry Page and its request for oral argument regarding the same should be denied.

16  Dated: October 10, 2006                    HOWREY LLP

18                                          By:   /s/ Ethan B. Andelman
19                                               ETHAN B. ANDELMAN

20                                          David A. Rammelt (Admitted *Pro Hac Vice*)
                                            Susan J. Greenspon (Admitted *Pro Hac Vice*)
21                                          KELLEY DRYE & WARREN LLP
                                            333 West Wacker Drive, Suite 2600
22                                          Chicago, IL  60606

23                                          Attorneys for Defendant/Counter-plaintiff,
                                            AMERICAN BLIND AND WALLPAPER
24                                          FACTORY, INC.

---

[8]  Contrary to Google's assertions, American Blind has not "admitted its own lack of diligence" nor "relied on its own lack of diligence in conducting discovery." (Objection at 12.)  As this Court is well aware, American Blind's underwent significant corporate disruption just prior to the close of discovery.   That is why the extension was granted.  During the extension, existing discovery was completed that indicated that the deposition of Larry Page was necessary and amply supported.

KELLEY DRYE & WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606
CH01/PLATC/213369.2                    - 14 -
DM_US\8397895.v1