*E-FILED 11/13/06*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GOOGLE INC.,

      Plaintiff,

  v.

AMERICAN BLIND & WALLPAPER FACTORY, INC.,

      Defendant.

NO. C 03-5340 JF (RS)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL**

## INTRODUCTION

Before the Court is the motion of plaintiff Google, Inc. to compel defendant American Blind & Wallpaper Factory, Inc. "to satisfy its outstanding discovery obligations," which was taken under submission without oral argument, pursuant to Local Civil Rule 7-1 (b). The matter having been fully briefed, the motion will be granted in part, and denied in part, as set forth below.

## BACKGROUND[1]

At the time Google filed this motion, it presented ten topics of dispute (lettered A through J). Upon initial review of the motion, the Court issued an order directing the parties to engage in further meet and confer efforts to resolve as many of the disputes between them as possible.[2] Those efforts have resulted in the parties' full agreement that topics G and I have been resolved, and in some

---

[1] The general factual background of this action has been described in prior orders and will not be repeated here.

[2] Google represents that it would have done so even in the absence of a specific order, and that the motion had been filed while meet and confer efforts were ongoing only because of the filing deadline imposed by Local Civil Rule 26-2.

1

Dockets.Justia.com

narrowing of certain other issues. Topics B and F have also been resolved, contingent on American Blind fulfilling the promises it has made to produce certain additional materials, which it is hereby ordered to do, if it has not already. The remaining issues will be discussed below, using the lettering of Google's motion.

DISCUSSION

1. Topic A

American Blind represents that it has now produced all responsive, existing documents in this category, in readable form, and that the topic is therefore moot. Google contends that because American Blind has effectively admitted that additional documents previously existed but have since been destroyed, it should be "compelled to explain adequately, by affidavit, why no such documents exist." On this record, the Court agrees that American Blind must do more than assert through counsel that all responsive documents have been produced. Accordingly, within 20 days of the date of this order, American Blind shall provide a verified statement signed by a responsible corporate official that American Blind has made a good faith search for responsive materials and that all responsive, non-privileged documents in this category have been produced.

2. Topic C

Google seeks to re-depose American Blind's designee under Fed. R. Civ. P. 30 (b) (6) on the topic of damages. The deponent testified as to American Blind's *theory* of damages, but frankly admitted both that the calculation of damages would be "difficult" and that neither he nor any one else at American Blind has performed such a calculation. While American Blind is correct that it bears the burden of proof at trial with respect to its damages, that does not end the inquiry at this juncture. If American Blind intends to present its damages calculations solely through expert testimony, then its position that its 30 (b) (6) witness has adequately addressed the topic by providing all information known to the company will be accepted. If, however, American Blind intends to offer the testimony of any of its employees regarding the amount, extent, or quantification of its damages, American Blind must present for deposition one or more designees who are fully-prepared to testify as to all such information in the possession of the company. American Blind

2

shall inform Google as to how it intends to proceed within 3 days of the date of this order, and if further depositions are to be had, they shall be scheduled and completed as promptly as practicable.

3.  Topic D

American Blind designated Jeffery Alderman to testify regarding "American Blind's Affiliate Program." Google contends that during the deposition, Alderman testified that "he had relied on certain documents . . . includ[ing] an analysis of ABWF's natural search results." Google further argues that American Blind's counsel promised at the deposition to identify all of the documents on which Alderman had relied, and to produce any that had not already been produced. Google then points to what it contends has been a "continuously evolving position" on the part of American Blind regarding what documents Alderman relied on, and argues that American Blind has still failed to produce any document that contains any analysis of "natural search results."

Google reads too much into Alderman's testimony in reaching its conclusion that some document or documents have not been produced. The transcript submitted by Google reveals the following exchange:

Q: Did you do any analysis of whether there was an increase or decrease in visits to your website via natural results on branded searches?

A: We did.

Q: And what was the result?

A: We did not see any increase.

Then, several pages later, in the context of questioning regarding *other* conclusions reached by Alderman, the following took place:

Q: Do you have that data?

A: I don't know if it's here in front of us; but, obviously we could pull that together. I'm sure that was – I'm surprised it was not sent.

[American Blind's counsel]: Certainly, yeah, if it wasn't previously sent, of course we would be happy to send it.

3

Nowhere in the testimony submitted by Google is there any definitive statement that Alderman performed or relied on any *written* analysis of "natural search results." Although there are some minor inconsistencies in American Blind's subsequent identification of the documents to which Alderman was referring, its basic position is consistent both with Alderman's deposition testimony and with its argument that no documents of the nature envisioned by Google have ever existed. The real controversy appears to arise from the fact that Google simply does not find it credible that Alderman could have done any meaningful "analysis" of "natural search results" from the data in the documents that were before him. Google has failed to show, however, that any failure to produce or identify documents prior to or at the deposition precluded it from inquiring further regarding the analysis Alderman testified was done. Google's choice not to follow up during the deposition on Alderman's assertion that the analysis occurred does not justify reopening the deposition now. On this record, no further deposition of Alderman or other further response will be required.

4.  Topic E

Google seeks to compel American Blind to respond (other than with objections) to two requests for admissions. The first request seeks an admission that under certain described circumstances no "use" of American Blind's trademarks would occur "within the meaning of the Lanham Act." Under Fed. R. Civ. R. 36, requests for admission may properly relate to "the application of law to fact," but "requests for admissions cannot be used to compel an admission of a conclusion of law." *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1057 (S.D.Cal. 1999). Google's attempt to characterize this request as merely calling for application of law to fact is not persuasive. The request in essence calls for American Blind to admit (or deny) a conclusion of law, and no further response will be compelled.

The second request seeks an admission that if a Google user searches for "american blind," the user will have "no way to determine for certain" whether an ad appearing on the search results page "was triggered by the phrase 'american blind' or some other word or phrase." It is unclear what hypothetical Google is proposing in this request. If the only search term or terms entered by

the user is "american blind" (with or without the quotation marks), then presumably any ads appearing on the results page necessarily would have been "triggered" by one or both of those words, unless the ad was not "triggered" by *anything* in the search. It may be that Google is attempting to ask about a hypothetical situation where a user enters "american blind" (again with or without quotation marks) *and* one or more *other* words or phrases. The request, however, does not say that; it refers only to a situation where a "user searches for 'american blind.'" Accordingly, the request relies on an incomplete and confusing hypothetical, and no further response will be required.

5. Topic H

As with Topic A, American Blind represents that it has produced all responsive documents in this category. Google demands that American Blind be compelled to produce an affidavit "describing its document search and collection processes." Google points out that American Blind has effectively admitted that it did not previously search employees' email accounts, not only for documents in this category but possibly with respect to other document requests as well.

American Blind, of course, was not necessarily under an obligation to search every employee email account for documents responsive to every document request propounded in this action; instead it needed to make a reasonable and diligent effort to locate any responsive documents in any place they were likely to be found. It appears that American Blind may have not previously recognized that its obligation to search for documents extended to searching relevant email accounts, but that counsel has now taken steps to rectify the situation. On this record, the Court will not compel American Blind to describe its document search and collection process, but it will require American Blind to provide within 20 days of the date of this order a verified statement signed by a responsible corporate official that American Blind has made a good faith search for responsive materials and that all responsive, non-privileged documents in this category have been produced.

6. Topic J

Google seeks to compel American Blind either to reproduce all of the documents it has produced in this action "as they are kept in the ordinary course of business" or to "organize and label them to correspond with the categories in [Google's] request[s]." See Fed. R. Civ. P. 34 (b). Google points to the fact that the Court previously issued an order imposing the same requirement

5

on Google.

American Blind does not dispute that it must either produce documents as kept "in the ordinary course of business" or organized and labeled to correspond with the requests. Instead, American Blind simply repeats that it has produced documents as kept in the ordinary course of business, and that the cover letters or indexes it provided with each production were sufficient. American Blind fails to respond to any of the specific examples Google provides to show that there is simply no reasonable basis to believe that "in the ordinary course of business" American Blind in fact keeps the documents in the form produced.

At heart, American Blind is arguing that it has adequately described the nature and relevance of each group of documents it has produced, and that Google is being unreasonable and hyper-technical by insisting on something more. Google, on the other hand, asserts that it has experienced genuine difficulty and prejudice from not being able to determine readily "where documents came from or what they are."

The purpose of the rules is not to impose "make-work," but to facilitate efficient discovery that strikes a reasonable balance between the burdens to each party, with flexibility as to what works best in a particular circumstance. Thus, when it is more convenient for a party to produce documents as kept "in the ordinary course," it may do so, *provided* that the documents actually are produced as kept. Here, American Blind has failed to show that it did so.

Accordingly, American Blind has the option of reproducing the documents as kept, or of providing Google with an index correlating the documents produced with each of Google's requests. American Blind has argued that "the descriptions provided by American Blind *can easily be correlated* to Google's 30 (b) (6) topics *and document requests.*" Thus, any concern that doing so would only be "make-work" is ameliorated by American Blind's admission that it will not be a burdensome task. Therefore, within 20 days of the date of this order, American Blind shall provide an index identifying by production number all documents responsive to each of Google's document requests; or, at its option, American Blind shall reproduce its documents as kept in the ordinary course of business.

6

## CONCLUSION

Google's motion to compel is granted to the extent set forth above and is otherwise denied.

IT IS SO ORDERED.

Dated: November 13, 2006

RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Ethan B. Andelman    andelmane@howrey.com, gagnons@howrey.com

Dawn Beery    dbeery@kelleydrye.com

Susan Jean Greenspon    sgreenspon@kelleydrye.com, cplater@kelleydrye.com; vallen@kelleydrye.com; sdunlap@kelleydrye.com

Ravind Singh Grewal    rsg@kvn.com

Klaus Hemingway Hamm    khamm@kvn.com, efiling@kvn.com; wik@kvn.com

Ajay Krishnan    akrishnan@kvn.com, efiling@kvn.com; rthomas@kvn.com

Mark A. Lemley    mlemley@kvn.com, srosen@kvn.com

Michael H. Page    mhp@kvn.com, efiling@kvn.com; sjr@kvn.com; nsn@kvn.com

Robert Nathan Phillips    phillipsr@howrey.com, gagnons@howrey.com

David A. Rammelt    drammelt@kelleydrye.com, sdunlap@kelleydrye.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 11/13/06**                                        **Chambers of Judge Richard Seeborg**

                                                           **By:    /s/ BAK**

C 03-5340 JF (RS)

8