# EXHIBIT G

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
GOOGLE, INC.,

                    Plaintiff,

        -against-

AMERICAN BLIND & WALLPAPER FACTORY, INC.,
d/b/a DECORATETODAY.COM, INC., and
DOES 1-100, Inclusive,

                    Defendants.
------------------------------------x
AMERICAN BLIND & WALLPAPER FACTORY, INC.,
d/b/a DECORATETODAY.COM, INC., and
DOES 1-100, Inclusive,

                    Counter-Plaintiffs,
        -against-
GOOGLE, INC.,

                    Counter-Defendant.
Case No.: C03-5340-JF (RS)
------------------------------------x

                    1114 Avenue of the Americas
                    New York, New York
                    November 21, 2006
                    10:08 a.m.


        Videotaped Deposition of ALVIN OSSIP,
before Denise Posillico, a Notary Public of the
State of New York.
```

CERTIFIED COPY



LEGALINK®
A MERRILL
COMMUNICATIONS
COMPANY

575 Market St
11th Floor
San Francisco, CA 94105

```
 1    A L V I N   O S S I P,    called as a witness,
 2        having been duly sworn by a Notary Public,
 3        was examined and testified as follows:
 4
 5    EXAMINATION BY
 6    MR. PAGE:
 7        Q.    Good morning, Mr. Ossip.
 8        A.    Good morning.
 9        Q.    I know you've been deposed many
10    times, so I won't do the this is a deposition
11    introduction.  The only instruction I give you is
12    that please if there is anything about any
13    question that I ask that's at all ambiguous to
14    you, please don't guess at what I mean and ask me
15    to clarify.  You'll find that I often ask
16    questions that don't make sense to the witness.
17            Mr. Ossip, what are American Blinds?
18        A.    American Blinds are a brand of window
19    blinds that are sold by a company called American
20    Blinds, Wallpaper and More.
21        Q.    Okay.  And when you say they are a
22    brand of window blinds, do you mean that there
23    are window blinds out there that say American
24    Blinds on them?
25        A.    That are called -- yeah, that are
```

8

```
                        OSSIP
 1
 2   sold by this company.
 3       Q.    Okay.  And the brand name on them is
 4   American Blinds?
 5       A.    I don't know about the brand name on
 6   them if I looked at the blinds, but that is -- if
 7   I went in and asked for that brand, that's the
 8   brand that I would be shown.
 9       Q.    And when you said went in and asked
10   for, where would you go in and ask for them?
11       A.    Well, if I were to do it personally,
12   I could go to a store like Target or I could do
13   it on the internet.
14       Q.    Okay.  And when you go into a store
15   like Target or do it on the internet and you buy
16   something called American Blinds, is that the
17   brand name on them?
18       MR. GARRITY:  Object to the extent
19       it's been asked and answered.
20       A.    That is the brand name.
21       Q.    Okay.  Have you ever seen something
22   called American Blinds blind?
23       A.    Only through the internet.
24       Q.    Okay.  And when you say through the
25   internet, what did you see?
```

9

1                    OSSIP

2        Q.    Let me know when you're ready to
3   answer that question.
4        A.    No, you are correct, they received
5   four total copies of the CDs.  They received four
6   CDs, two and two.
7        Q.    I see, okay.  And when you say they
8   received four copies, who are you referring to?
9        A.    I'm referring to the 21 field
10  services involved in conducting the survey.
11       Q.    Okay.  So each of the field services
12  conducted both Phase 1 and Phase 2 studies?
13       A.    Yes.
14       Q.    Okay.  Which of Exhibits 1 through 4
15  are -- were used for test cells versus controls?
16       A.    There was no control set.
17       Q.    Okay.  Isn't it typical in doing
18  confusion surveys to use a control?
19       A.    Sometimes it is, sometimes it isn't.
20       Q.    Okay.  Why would you not use a
21  control in this case?
22       A.    You might not use a control because
23  there is not a fair and reasonable control to
24  use.
25       Q.    Okay.  Well, let me backup.  What

1            OSSIP

2  hypothesis were you testing in this experiment?

3       A.   My hypothesis was that in a situation
4  where American Blinds did not have to run paid
5  for ads to defend the selection of their
6  products, I tried to isolate the effect of one
7  competitive ad at the head of the organic and
8  another situation where there were four
9  competitive ads, two on the left, two on the
10 right.

11      Q.   I see.  So you were testing the
12 different levels of confusion where there was one
13 ad versus four ads?

14      A.   Yes, in essence.

15      Q.   Okay.  Were you testing the effect of
16 the search term that was used by the user in
17 generating the screens?

18      A.   They were given the search term.

19      Q.   Okay.  So you didn't test any search
20 term other than American Blinds, correct?

21      A.   That is correct.

22      Q.   Okay.  So do you have an opinion as
23 you sit here today as to the effect of using the
24 search term American Blinds as opposed to a
25 different search term, like blinds?

OSSIP

aware of American Blinds brand or company, and they were told to go look for it.

Q. Do you have any scientific basis for the opinion that the confusion would have been less using the search term blinds?

A. I didn't do it, so I can't say I have evidence in that regard.

Q. When were you first retained in this case?

A. Did you say when?

Q. Yeah, when?

A. Like mid-August, I believe.

Q. Okay. What was -- take me through the process of how you were first contacted, by whom, you know.

MR. PAGE: Yes, I know it calls for a narrative.

Q. If you could walk me through the process of your becoming involved in this case?

A. Well, I got a call from Paul Garrity of Kelley Drye, Paul's familiar with my work, and he told me about the suit of American Blinds and Google, and that a ruling had been given on one or more issues in the study, but not on others in

24

1             OSSIP

2  correct?

3     A.    Yes.

4     Q.    And your experience is that when you

5  do that you get ads for American Blinds, right,

6  for the company American Blind & Wallpaper

7  Factory, correct?

8     A.    At present, yes.

9     Q.    Do you also see ads for something

10  called Decoratetoday?

11     A.    Yes.

12     Q.    Okay.  And who is Decoratetoday?

13     A.    That's the website of American

14  Blinds.

15     Q.    Okay.  Do you also see ads that link

16  to something called Americanwallpaper.com?

17     A.    Yes.

18     Q.    Okay.  And what is that?

19     A.    That is also a part of American

20  Blinds.  They also sell wallpaper.

21     Q.    Okay.  When you do consumer confusion

22  testing, isn't it a basic principle that you are

23  supposed to try to replicate the real world as

24  much as possible?

25     A.    It depends on the hypothesis that

```
 1                        OSSIP
 2   you're testing.
 3          Q.    Okay.  In the real world searchers on
 4   Google, when they search for, for example, the
 5   term American Blinds, are presented with
 6   sponsored links from American Blinds, correct?
 7          A.    That is correct.
 8          Q.    In the real world those ads are
 9   typically the first they see, correct?
10          A.    Probably.
11          Q.    Okay.  So why is it appropriate for
12   you to do a test in which you don't replicate
13   that real world experience?
14          A.    Because American Blinds, it is my
15   understanding, is forced to use these ads on this
16   particular site because of the competitive ads
17   that appear, and they're concerned that many
18   people seeing that will assume there is a link
19   between the ads and American Blinds, and so
20   they're put into a situation of having to
21   advertise on it.
22          Q.    Okay.  So your study doesn't test
23   whether there is actually confusion going on now
24   in the real world, your study tests whether there
25   would be confusion if the real world were
```

27

```
 1                    OSSIP
 2   different in the sense of American Blind &
 3   Wallpaper not advertising; is that correct?
 4        A.   Yes.
 5        Q.   Okay.  Your study won't tell me
 6   anything about whether people today are actually
 7   confused when they're presented with web pages
 8   that include ads for American Blinds & Wallpaper,
 9   correct?
10        A.   It will tell me which they pick
11   first, it will tell me whether they think various
12   things will link or connect them.
13        Q.   You just said it will tell me which
14   they pick first, what will tell you what they
15   pick first?
16        A.   Response to the question of if
17   you're -- if I use the same question, if you're
18   looking to order blinds from American Blinds,
19   where would you go first on this site.
20        Q.   Okay.  When you say this site, are
21   you referring to the real one or the one you
22   built?
23        A.   Well, the real one.
24        Q.   Okay.  So had you tested stimuli that
25   included American Blinds & Wallpaper ads, you
```

28

```
 1                       OSSIP
 2   websites?
 3        A.    I looked at them.  What went through
 4   my mind, I don't know at the moment.
 5        Q.    Okay.  And you looked at them to
 6   determine whether they were American Blind &
 7   Wallpaper site, correct?
 8        A.    Or that you could link to it, because
 9   my assumption was you couldn't.
10        Q.    And because you determined these
11   were -- that you couldn't get to American Blind &
12   Wallpaper Factory at these sites, you felt it was
13   okay to use them as examples?
14        A.    Yes.
15        Q.    Okay.
16        A.    One of the reasons.
17        Q.    Did you have difficulty making that
18   determination?
19        A.    I don't recall having difficulty.
20        Q.    Did you do anything to study whether
21   consumers, once they go to these competitive
22   sites, have difficulty determining whether
23   they're American Blind & Wallpaper sites?
24        A.    No.
25        Q.    Let me turn to your report, Exhibit
```

58

```
 1                    OSSIP
 2   one.  And Mr. Garrity told me that it is a
 3   registered trademark of ABW.
 4       Q.    Did Mr. Garrity tell you on which
 5   register that term is registered?
 6       A.    He may have, but I did not retain it.
 7       Q.    Do you know whether American Blinds
 8   is registered on the primary register of the
 9   Patent & Trademark Office?
10       A.    I have no idea.
11       Q.    Okay.  Did you do anything to
12   determine whether the term American Blinds has
13   achieved secondary meaning with consumers?
14       A.    No.
15       Q.    You're familiar with secondary
16   meaning surveys, correct?
17       A.    Yes.
18       Q.    And you've done them in the past,
19   correct?
20       A.    Yes.
21       Q.    But you did not do one in this case,
22   correct?
23       A.    That's right.
24       Q.    Were you asked to?
25       A.    Was I asked to?  No.
```

60

1                    OSSIP
2       Q.   I see.  What was the awareness level?
3       A.   As I recall, among the group who got
4  down to that point, I don't know, maybe 40
5  percent, 50 percent.  I don't know, something
6  like that.
7       Q.   Okay.  Did you do anything to
8  tabulate or form an opinion as to its secondary
9  meaning?
10      A.   No, I didn't.
11      Q.   Okay.  So you're not -- let me put it
12 this way:  As an expert you're not offering an
13 opinion on whether there is secondary meaning,
14 correct?
15      A.   Right.
16      Q.   In the next paragraph -- in the next
17 paragraph you say, after saying your report was
18 commissioned by Kelley Drye & Warren, "To help
19 determine the extent to which, if any, those who
20 enter the term 'american blinds' in the Google
21 search engine, seeking to buy on-line that
22 specific window blind brand or from that specific
23 company, are misled," and it continues on.
24           Which of those were you testing,
25 people who were seeking to buy that specific

```
                                                    232

 1                    C E R T I F I C A T E
 2
 3    STATE OF NEW YORK      )
 4                           ) ss.:
 5    COUNTY OF SUFFOLK      )
 6
 7         I, Denise Posillico, a Notary Public
 8    within and for the State of New York, do
 9    hereby certify:
10         That ALVIN OSSIP, the witness whose
11    deposition is hereinbefore set forth, was
12    duly sworn by me and that such deposition is
13    a true record of the testimony given by such
14    witness.
15         I further certify that I am not
16    related to any of the parties to this action
17    by blood or marriage; and that I am in no
18    way interested in the outcome of this
19    matter.
20         IN WITNESS WHEREOF, I have hereunto
21    set my hand this 30th day of November, 2006.
22
23                    _____
24                         DENISE POSILLICO
25
```