# EXHIBIT K

Each of the above TLDs is intended for use by a certain type of organization. For example, the TLD ".com" is for use by commercial, for-profit organizations. However, the administrator of the .com, .net, .org and .edu TLDs does not check the requests of parties seeking domain names to ensure that such parties are a type of organization that should be using those TLDs. On the other hand, .mil, .gov, and .int TLD applications are checked, and only the U.S. military, the U.S. government, or international organizations are allowed in the respective domain space.

*Country Code TLDs.* Country code TLDs are for use by each individual country. For example, the TLD ".ca" is for use by Canada, and the TLD ".jp" is for use by Japan. Each country determines who may use their code. For example, some countries require that users of their code be citizens or have some association with the country, while other countries do not.

## 1215.02 Use as a Mark

When a trademark, service mark, collective mark or certification mark is composed, in whole or in part, of a domain name, neither the beginning of the URL ("http://www.") nor the TLD have any source-indicating significance. Instead, those designations are merely devices that every Internet site provider must use as part of its address. Advertisements for all types of products and services routinely include a URL for the web site of the advertiser, and the average person familiar with the Internet recognizes the format for a domain name and understands that "http," "www," and a TLD are a part of every URL.

### 1215.02(a) Use Applications

A mark composed of a domain name is registrable as a trademark or service mark only if it functions as a source identifier. The mark as depicted on the specimens must be presented in a manner that will be perceived by potential purchasers to indicate source and not as merely an informational indication of the domain name address used to access a web site. *See In re Eilberg,* 49 USPQ2d 1955 (TTAB 1998).

In *Eilberg,* the Trademark Trial and Appeal Board held that a term that only serves to identify the applicant's domain name or the location on the Internet where the applicant's web site appears, and does not separately identify applicant's services, does not function as a service mark. The applicant's proposed mark was WWW.EILBERG.COM, and the specimens showed that the mark was used on letterhead and business cards in the following manner:

> **WILLIAM H. EILBERG**
> 
> ATTORNEY AT LAW
> 
> 820 HOMESTEAD ROAD, P.O. BOX 7
> 
> **JENKINTOWN, PENNSYLVANIA 19046**
> 
> 215-885-4600
> 
> FAX 215-885-4603
> 
> EMAIL WHE@EILBERG.COM
> 
> PATENTS TRADEMARKS
> AND COPYRIGHTS                                   WWW.EILBERG.COM

(The specimen submitted was the business card of William H. Eilberg, Attorney at Law, 820 Homestead Road, P.O. Box 7, Jenkintown, Pennsylvania 19046, 215-855-4600, email whe@eilberg.com.)

The Board affirmed the examining attorney's refusal of registration on the ground that the matter presented for registration did not function as a mark, stating that:

> [T]he asserted mark, as displayed on applicant's letterhead, does not function as a service mark identifying and distinguishing applicant's legal services and, as presented, is not capable of doing so. As shown, the asserted mark identifies applicant's Internet domain name, by use of which one can access applicant's Web site. In other words, the asserted mark WWW.EILBERG.COM merely indicates the location on the Internet where applicant's Web site appears. It does not separately identify applicant's legal services as such. *Cf. In re The Signal*

*Companies, Inc.*, 228 USPQ 956 (TTAB 1986).

> This is not to say that, if used appropriately, the asserted mark or portions thereof may not be trademarks or [service marks]. For example, if applicant's law firm name were, say, EILBERG.COM and were presented prominently on applicant's letterheads and business cards as the name under which applicant was rendering its legal services, then that mark may well be registrable.

49 USPQ2d at 1957.

The examining attorney must review the specimens in order to determine how the proposed mark is actually used. It is the perception of the ordinary customer that determines whether the asserted mark functions as a mark, not the applicant's intent, hope or expectation that it does so. *See In re Standard Oil Co.*, 275 F.2d 945, 125 USPQ 227 (C.C.P.A. 1960).

If the proposed mark is used in a way that would be perceived as nothing more than an Internet address where the applicant can be contacted, registration must be refused. Examples of a domain name used only as an Internet address include a domain name used in close proximity to language referring to the domain name as an address, or a domain name displayed merely as part of the information on how to contact the applicant.

> *Example*: The mark is WWW.ABC.COM for online ordering services in the field of clothing. Specimens of use consisting of an advertisement that states "visit us on the web at www.ABC.com" do not show service mark use of the proposed mark.

> *Example*: The mark is ABC.COM for financial consulting services. Specimens of use consisting of a business card that refers to the service and lists a phone number, fax number, and the domain name sought to be registered do not show service mark use of the proposed mark.

If the specimens of use fail to show the domain name used as a mark and the applicant seeks registration on the Principal Register, the examining attorney must refuse registration on the ground that the matter presented for registration does not function as a mark. The statutory bases for the refusals are §§1, 2 and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052, and 1127, for trademarks; and §§1, 3 and 45 of the Act, 15 U.S.C. §§1051, 1053 and 1127, for service marks.

If the applicant seeks registration on the Supplemental Register, the examining attorney must refuse registration under Trademark Act §23, 15 U.S.C. §1091.

### 1215.02(b) Advertising One's Own Products or Services on the Internet is not a Service

Advertising one's own products or services is not a service. *In re Reichhold Chemicals, Inc.*, 167 USPQ 376 (TTAB 1970). See **TMEP §§1301.01(a)(ii)** and **1301.01(b)(i)**. Therefore, businesses that create a web site for the sole purpose of advertising their own products or services cannot register a domain name used to identify that activity. In examination, the issue usually arises when the applicant describes the activity as a registrable service, *e.g.*, "providing information about [a particular field]," but the specimens of use make it clear that the web site merely advertises the applicant's own products or services. In this situation, the examining attorney must refuse registration because the mark is used to identify an activity that does not constitute a "service" within the meaning of the Trademark Act. Trademark Act §§1, 3 and 45, 15 U.S.C. §§1051, 1053 and 1127.

### 1215.02(c) Agreement of Mark on Drawing with Mark on Specimens of Use

In viewing a domain name mark (*e.g.*, ABC.COM or HTTP://WWW.ABC.COM), consumers look to the second level domain name for source identification, not to the top-level domain (TLD) or the terms "http://www." or "www." Therefore, it is usually acceptable to depict only the second level domain name on the drawing page, even if the specimens of use show a mark that includes the TLD or the terms "http://www." or "www." *Cf. Institut National des Appellations D'Origine v. Vintners Int'l Co., Inc.*, 958 F.2d 1574, 22 USPQ2d 1190 (Fed. Cir. 1992) (CHABLIS WITH A TWIST held to be registrable separately from CALIFORNIA CHABLIS WITH A TWIST as shown on labels); *In re Raychem Corp.*, 12 USPQ2d 1399 (TTAB 1989) (refusal to register TINEL-LOCK based on specimens showing "TRO6AI-TINEL-LOCK-RING" reversed). *See also* 37 C.F.R. §§2.51(a) and (b), and **TMEP §§807.12** *et. seq.*

> *Example*: The specimens of use show the mark HTTP://WWW.ABC.COM. The applicant may elect to depict only the term "ABC" on the drawing.

Sometimes the specimens of use fail to show the entire mark sought to be registered (*e.g.*, the drawing of the mark is HTTP://WWW.ABC.COM, but the specimens only show ABC). If the drawing of the mark includes a TLD, or the terms "http://www.," or "www.," the specimens of use must also show the mark used with those terms. Trademark Act §1(a)(3)(C), 15 U.S.C. §1051(a)(3)(C).

> *Example*: If the drawing of the mark is ABC.COM, specimens of use that only show the term ABC are unacceptable.

See **TMEP §§807.14** *et seq.* and **1215.08** *et seq.* regarding material alteration.

### 1215.02(d) Marks Comprised Solely of TLDs for Domain Name Registry Services

If a mark is composed solely of a TLD for "domain name registry services" (*e.g.*, the services of registering .com domain names), registration should be refused under Trademark Act §§1, 3 and 45, 15 U.S.C. §§1051, 1053 and 1127, on the ground that the TLD would not be perceived as a mark. The examining attorney should include evidence from the LEXIS® database, the Internet, or other sources to show that the proposed mark is currently used as a TLD or is under consideration as a new TLD.

If the TLD merely describes the subject or user of the domain space, registration should be refused under Trademark Act §2(e)(1), 15 U.S.C. §2(e)(1), on the ground that the TLD is merely descriptive of the registry services.

### 1215.02(e) Intent-to-Use Applications

A refusal of registration on the ground that the matter presented for registration does not function as a mark relates to the manner in which the asserted mark is used. Generally, in an intent-to-use application, a mark that includes a domain name will not be refused on this ground until the applicant has submitted specimens of use with either an amendment to allege use under §1(c) of the Trademark Act, or a statement of use under §1(d) of the Act, 15 U.S.C. §1051(c) or (d). The specimens provide a better record upon which to determine the registrability of the mark. However, the examining attorney should include an advisory note in the first Office action that registration may be refused if the proposed mark, as used on the specimens, identifies only an Internet address. This is done strictly as a courtesy. If information regarding this possible ground for refusal is not provided to the applicant prior to the filing of the allegation of use, the Office is not precluded from refusing registration on this basis.

### 1215.02(f) Section 44 and §66(a) Applications

If the record indicates that the proposed mark would be perceived as merely an informational indication of the domain name address used to access a web site rather than an indicator of source, the examining attorney should refuse registration in an application under §44 or §66(a) of the Trademark Act, on the ground that the subject matter does not function as a mark.

## 1215.03 Surnames

If a mark is composed of a surname and a TLD, the examining attorney must refuse registration because the mark is primarily merely a surname under Trademark Act §2(e)(4), 15 U.S.C. §1052(e)(4), absent a showing of acquired distinctiveness under Trademark Act §2(f), 15 U.S.C. §1052(f). A TLD has no trademark significance. If the primary significance of a term is that of a surname, adding a TLD to the surname does not alter the primary significance of the mark as a surname. *Cf. In re I. Lewis Cigar Mfg. Co.*, 205 F.2d 204, 98 USPQ 265 (C.C.P.A. 1953) (S. SEIDENBERG & CO'S. held primarily merely a surname); *In re Hamilton Pharmaceuticals Ltd.*, 27 USPQ2d 1939 (TTAB 1993) (HAMILTON PHARMACEUTICALS for pharmaceutical products held primarily merely a surname); *In re Cazes*, 21 USPQ2d 1796 (TTAB 1991) (BRASSERIE LIPP held primarily merely a surname where "brasserie" is a generic term for applicant's restaurant services). *See also* **TMEP §1211.01(b)(vi)** regarding surnames combined with additional wording.

## 1215.04 Descriptiveness