# EXHIBIT H

```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA

GOOGLE, INC., a Delaware corporation,

                Plaintiff,
     vs.                        Case No. C 03-5340-JF

AMERICAN BLIND & WALLPAPER
FACTORY, INC., a Delaware corporation
d/b/a decoratetoday.com, Inc., and
DOES 1 - 100, inclusive,

                Defendants.
_____/

AMERICAN BLIND & WALLPAPER
FACTORY, INC., a Delaware corporation
d/b/a decoratetoday.com, Inc.,

                Counter-Plaintiff,
     vs.

GOOGLE INC.,

                Counter-Defendant.
_____/
```

**CERTIFIED COPY**

        The video deposition of MICHAEL D. LAYNE, taken pursuant to the Rules of the State of California, before Lana Kia Haws, CRR, CM, RPR, CSR-0995, a Notary Public in the County of Oakland, Acting in the County of Wayne, State of Michigan, at the Inn at St. John's, 44045 Five Mile Road, Plymouth, Michigan, on August 2, 2006, commencing at or about the hour of 9:00 a.m.

APPEARANCES:
    Keker & Van Nest, LLP
    BY: MR. MICHAEL H. PAGE
    710 Sansome Street
    San Francisco, CA 94111-1704
    (415) 391-5400
        Appearing on behalf of the Plaintiff.

    Kelley Drye & Warren, LLP
    BY: MR. PAUL W. GARRITY
    101 Park Avenue
    New York, New York 10178
    (212) 808-7613
        Appearing on behalf of the Defendant.

**U.S. LEGAL**
*Support*
*Certified Shorthand Reporters*
180 Montgomery Street, Suite 2180
San Francisco, CA 94104

888-575-3376 • Fax 888-963-3376
www.uslegalsupport.com

1  please state your appearances for the record and begin
2  examination.
3              MR. PAGE:  Michael Page of Keker and Van
4  Nest representing Google.
5              MR. GARRITY:  Paul Garrity from Kelley Drye
6  and Warren representing American Blind and Wallpaper
7  Factory, Inc.
8
9
10                    CROSS-EXAMINATION
11 EXM. BY MR. PAGE:
12    Q.  Good morning, Mr. Layne.
13    A.  Good morning.
14    Q.  We met off the record but for the record, my name
15 is Michael Page.  I represent Google in this matter.
16          I have marked as Exhibits 1 and 2 the
17 Amended Notice of 30(b)(6) Deposition of American Blind
18 and Wallpaper Factory, Inc., as 1 and then a letter to
19 Klaus Hamm from your counsel, Caroline Plater, as Exhibit 2.
20          Have you seen Exhibit 1 before?
21    A.  I have.
22    Q.  Okay.  Is it your understanding that you have been
23 designated to testify on certain of these topics on behalf
24 of American Blind and Wallpaper?
25    A.  Yes.

5

1  Q. Okay. Which topics have you been designated to
2  testify on?
3  A. I have been designated to testify on topics five,
4  six, seven, and, to a limited extent, on topic eight.
5  Q. Okay, and is Mr. Alderman also designated on
6  topic eight?
7  MR. GARRITY: That's correct, Mike.
8  Mike, just for the record, so there is a little bit of a
9  difference between what Michael was designated for in
10 Exhibit 2; and that really was the product of further
11 conversations that we had with Michael.
12 MR. PAGE: Right, right. So my understanding
13 matches yours, which is a pleasant change.
14 Q. (BY MR. PAGE) Mr. Layne, have you ever been
15 deposed before?
16 A. I have not.
17 Q. I assume your counsel has gone over the ground
18 rules, but just a couple of things to keep in mind.
19 First, because our words are being taken
20 down, it's important that we each wait for the other to stop
21 talking before responding or asking another question, which
22 is difficult to do in normal conversation.
23 You tend to see where the question is going
24 and jump in and answer it, but we have to both try to pause
25 and wait for each other to finish.

6

1    A.  I was responsible for hiring and managing a group
2 of individuals whose responsibility was to provide content
3 for our website.
4    Q.  At the time -- this was in -- at the time you
5 became Director of Internet Content, did American Blind
6 have a website?
7    A.  Yes.
8    Q.  Do you know when American Blind first had a
9 website?
10   A.  1996.
11   Q.  I see.  And was there a Director of Internet
12 Content prior to you?
13   A.  There was not.
14   Q.  I see.  So it was a new position?
15   A.  Yes.
16   Q.  Okay.  As Director of Internet Content, how many
17 people reported to you?  Start initially in '99.
18   A.  Initially, three.
19   Q.  What -- so I know when to stop asking, what's your
20 current position?
21   A.  Vice-President of Internet Content.
22   Q.  When did you become Vice-President of Internet
23 Content?
24   A.  In May of this year.
25   Q.  I see.  Did your job responsibilities change

14

1             Are you asking for titles?

2      Q.  I am just trying to get a rough sense of whether
3  it's 100 people, two people.

4      A.  It would be 12 to 15 people, probably.

5      Q.  So, essentially, vice-presidents and that level?

6      A.  Vice-presidents and directors, senior managers.

7      Q.  As best you recall, what did Mr. Katzman say during
8  this announcement?

9      A.  That we had filed a lawsuit or were filing a
10 lawsuit against Google.

11     Q.  Anything else?

12     A.  He may have talked about a reason for doing so,
13 that being related to the sale of Google ad words.

14     Q.  Were you -- at any point between the time of
15 that announcement and today, were you asked to search
16 for documents in connection with this lawsuit?

17     A.  During what time frame, please?

18     Q.  Any time from when you first learned of the
19 existence of the lawsuit to today.

20     A.  Yes.

21     Q.  When?  When were you first asked to look for
22 documents?

23     A.  I was asked to look for a document maybe a month
24 to two months ago.

25     Q.  And what -- did you say a document?  Was it a

1  specific document?

2  A. Yes.

3  Q. What document was that?

4  A. It was a study that we had conducted of -- a type
5  of survey.

6  Q. Prior to that, have you been asked to look for
7  any documents?

8  A. Prior to that, no.

9  Q. Do you know, does American Blind have any written
10  document retention rules or guidelines?

11  A. I have not seen a document like that, no.

12  Q. Have you ever received any instruction as to
13  what e-mails you are to keep or not keep?

14  A. No.

15  Q. Have you ever received any instructions from --
16  concerning what paper documents you are to keep or
17  not keep?

18  A. No.

19  Q. Are you pretty much left to your own judgment
20  as to what files you maintain?

21  A. I would say so.

22  Q. Do you use e-mail in the course of your business?

23  A. Yes.

24  Q. Sometimes we ask questions to which the answers
25  are gonna be obvious.

36

1        What is your personal practice in terms of
2  retaining e-mails?
3        A.  I have a file structure within my e-mail system
4  into which I move e-mails in order to bring them off the
5  e-mail server.
6        We have a limited amount of space for each
7  of our accounts on the e-mail server.  So I bring them down
8  to the hard drive of my P.C.
9        Q.  And do you keep all of your e-mails in that manner
10 or just the ones you want to keep?
11       A.  Just the ones I want to keep.
12       Q.  As to e-mails that you don't move off of the
13 server onto your P.C., what happens to them?
14       A.  They remain on the server.
15       Q.  Are they, at some point, deleted from the server?
16       A.  Not by anybody but me.
17       Q.  So if you were to simply stop moving e-mails out
18 of your in box, would it just simply continue to grow?
19       A.  No.  There is a limit on the size.  I would
20 receive a notice by e-mail that my mailbox was full and be
21 asked to either delete e-mails or move them off the server.
22       Q.  Okay.
23       A.  I could also request that the size limit on my
24 mailbox be increased.
25       Q.  Those are those ones you always get when you are on

37

CERTIFICATE OF NOTARY

STATE OF MICHIGAN   )
                    ) ss.
COUNTY OF OAKLAND   )

        I, Lana Kia Haws, Certified Shorthand Reporter and Notary Public in and for the above county and state, do hereby certify that the deposition of MICHAEL D. LAYNE was taken before me at the time and place hereinbefore set forth; that the witness was by me first duly sworn to testify to the truth, the whole truth and nothing but the truth; that thereupon the foregoing questions were asked and foregoing answers made by the witness which were duly recorded by me stenographically and later reduced to computer transcription; and I certify that this is a true and correct transcript of my stenographic notes so taken.

64

65

1
2
3      I further certify that I am not Of Counsel
4  to either party nor interested in the event of this cause.
5
6  _____
7  Lana Kia Haws, CM, RPR, CSR-0995
8  Notary Public
9  State of Michigan
10 County of Oakland
11 Acting in the County of Wayne
12
13
14 My Commission Expires:
15 September 29, 2011
16
17
18
19
20
21
22
23
24
25