# EXHIBIT K

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

May 12, 2006

**VIA FACSIMILE**

Caroline C. Plater, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:   *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear Caroline:

     This letter addresses several outstanding issues regarding the documents produced by American Blind & Wallpaper Factory ("ABWF") in response to Google Inc.'s First Set of Requests for Production of Documents and Things from American Blind & Wallpaper Factory, Inc. (the "Document Requests").

     *First*, despite agreeing to do so, ABWF has not produced product-specific financial information in response to Google's Document Requests 9 – 12. In my March 16th letter to David Rammelt, I made clear that Requests 9 – 12 require ABWF to produce monthly financial information (i.e., number of units sold, price per unit, gross revenues, and profits or losses) for "each product." *See* Letter to David Rammelt, March 16, 2006 at 3 (emphasis in original). In your letter of April 10th letter, the entirety of your response to my March 16th letter was "with regard to the financial documents requested in your March 16, 2006 letter, we will produce responsive, non-privileged documents." The two pages of purportedly responsive documents that were produced—ABWF002889 and ABWF002890—were insufficient. First, these documents break down the monthly sales information by "product category," not by product. *See* ABWF002888. Second, the only monthly information given for each product category is a bare number—there are no units, and no indication whether this number is the number of units sold, gross revenues, profits, or something else entirely. Moreover, whatever this number signifies, it is still only one number. The financial information requested, which you stated you would produce, covered at least four items of information—number of units sold, price per unit, gross revenues, and profits or losses. Without this level of product-specific information, it will be impossible to compute the alleged damages for the period over which ABWF alleges injury.

372971.01

Caroline C. Plater, Esq.
May 12, 2006
Page 2

Please advise me as to whether and when ABWF will produce this product-specific financial information (including number of units sold, price per unit, gross revenues, and profits or losses) responsive to Requests 9-12.

*Second*, ABWF has not produced all responsive documents "relating to" ABWF's first commercial use of each of its claimed marks. *See* Document Request 3. Both in its response to Document Request 3, and in your April 10th letter, ABWF states that it will produce documents "illustrating" the first commercial use of each of its claimed marks. That is insufficient. Google requires all documents "relating to" ABWF's first commercial use of each of its claimed marks to evaluate whether these claimed marks were actually used in commerce in some substantial manner during the asserted time period. This means that Google requires *all* documents relating to advertising or any other communications to consumers or potential consumers constituting first commercial use for each of ABWF's claimed marks.

Please advise me as to whether and when ABWF will produce these documents responsive to Request 3.

*Third*, ABWF has not responded adequately to Google's repeated request for information concerning selection of ABWF's claimed marks. See Document Request 1. In your April 10th letter and again in an email to myself and Klaus Hamm on April 18, 2006, you took the position that ABWF has no documents concerning the selection of the American Blind name. This does not explain why there are no documents concerning the selection of American Blind's other claimed marks, namely "American Blinds," "American Blind & Wallpaper Factory, "American Blind Factory," and "Decoratetoday." You stated in your April 18, 2006 email that you might be able to find responsive documents about the selection of these claimed marks "in the trademark files" and that you would follow up on this. For one thing, to my knowledge, you have not followed up on this issue. Moreover, unless ABWF's maintains meticulous "trademark files" that includes every internal communication, including e-mail, concerning selection of marks, a mere search of ABWF's "trademark files" would not constitute a sufficiently diligent search under the Federal Rules. Google is entitled to all internal communications and any other documents relating to the selection of ABWF's claimed marks.

Please advise me as to whether and when ABWF will produce these documents responsive to Request 1.

*Fourth*, please produce all non-privileged documents in the ABWF "trademark files" to which you refer in your April 18, 2006 email. All documents in these trademark files are likely responsive to one or more of the following Document Requests: 1-7, 17-21, 26, 27, 36-38, and 41.

If you are of the position that the trademark files contain non-privileged documents that are not responsive to any of Google's First Set of Document Requests, and that ABWF need not produce such documents absent a formal document request, please represent that this is the case, and I will draft and serve a formal document request.

372971.01

Caroline C. Plater, Esq.
May 12, 2006
Page 3

> *Fifth*, ABWF has not produced the detailed information about ABWF's advertising and promotional expenditures that you stated ABWF would produce. *See* Document Requests 13 & 14. In my March 28th letter, I put forth a detailed, four-paragraph response to ABWF's objections. In your April 10th letter, you responded that "ABWF will produce responsive, non-privileged documents regarding its advertising expenditures." ABWF never produced this information. Additionally, ABWF's obligation is to produce documents relating to advertising *and promotional expenditures*, not merely advertising expenditures.
>
> Please advise me as to whether and when ABWF will produce these documents responsive to Requests 13 and 14.
>
> *Sixth*, ABWF has produced no documents responsive to Requests 20, 26, and 27. These requests pertain to documents relating to consumer recognition and perception of ABWF's marks. Such documents would include, among other things, any research reports, consumer studies or surveys, or any internal discussion of actual and anticipated consumer recognition or perception of the ABWF marks. Obviously, these requests do not require production of expert witness work product in furtherance of this litigation. But ABWF has produced *no* responsive documents. It is difficult to believe that ABWF—a company that spends substantial effort protecting its trademarks, purchasing rights to other trademarks, and purchasing hundreds of domain names—has never thought to study how consumers perceive their trademarks (especially since ABWF has alleged its marks "have acquired an outstanding celebrity"). Presumably some such work would have been done in the course of producing ABWF's advertisements. Nonetheless, if it is truly ABWF's position that it possesses no documents relating to consumer recognition and perception of ABWF's marks (other than ones that are privileged or the work product of expert witnesses in furtherance of this litigation), please confirm that this is so.
>
> Otherwise, please advise me as to whether and when ABWF will produce these documents responsive to Requests 20, 26, and 27.
>
> *Seventh*, ABWF has not produced any documents of which I am aware that relate to ABWF's allegations about trademark dilution, consumer confusion, and website diversion. *See* Document Requests 36-39. These would include documents about actual consumers who were confused by Google's advertising practices, brand recognition surveys, or any internal analysis of lost sales or lost internet traffic.
>
> Again, these requests do no require production of expert witness work product in furtherance of this litigation. But to the extent an expert relies on facts or documents that were obtained from ABWF and that developed in the normal course of business, such facts and documents are not beyond the proper scope of discovery simply because they were submitted to the expert. The language of ABWF's objections to Requests 36-39—that the document request "seeks information that will likely be the subject of expert testimony prior to the time for disclosure of expert opinions"—therefore suggests an incorrect statement of the law.

Caroline C. Plater, Esq.
May 12, 2006
Page 4

Please advise me as to whether and when ABWF will produce these documents that relate to ABWF's allegations about trademark dilution, consumer confusion, and website diversion (such as documents about actual consumers who were confused by Google's advertising practices, brand recognition surveys, or any internal analysis of lost sales or lost internet traffic) and that are responsive to Request 3.

*Eighth*, ABWF has improperly withheld documents responsive to Requests 15 and 16. These requests cover documents relating to the weekly number of hits received on ABWF's websites and the weekly number of unique users to ABWF's website. Although ABWF's objections to Requests 15 and 16 border on frivolous, I address them here simply to avoid further delay in obtaining these documents.

As an initial matter, ABWF has represented that it maintains information for all of its domain names together. This appears to be because most, if not all, of ABWF's domain names simply redirect visitors to ABWF's primary website, which is currently located at www.decoratetoday.com. If that is indeed the case, and ABWF does not possess individualized information as to how much internet traffic ABWF receives from each of its domain names, ABWF need only produce aggregated information for all of its domain names. However, if ABWF is able to determine, by domain name, the number of visits each, individual ABWF domain name receives, that information is covered by Requests 15 and 16 and must therefore be produced.

As for time frame, this request dates back to the time when ABWF first used its website. It is ABWF that placed at issue in this litigation the popularity of its website from its inception. *See* Defendant American Blind & Wallpaper Factory's Answer, Affirmative Defenses, and Counterclaims, ¶ 27-34 ("Since 1997, American Blind has continuously operated a distinctive website," and "The company estimates, each day, it receives in excess of thirty thousand (30,000) visits by customers or potential customers to its Internet website"). Moreover, this information is necessary to track and understand web traffic to ABWF's website over time so as to determine whether there was a decline in traffic during the times alleged by ABWF.

The phrase "number of hits received"—as used in Request 15—means the number of visits to ABWF's destination website (i.e., the one to which ABWF's other domain names redirect visitors). As for request 16, ABWF's objection does not question what a "unique" user is, so much as how to calculate the "weekly number of unique users." This is the objection that most clearly stands out as frivolous. First, this objection is irrelevant because Google requested *all* documents pertaining to the weekly number of unique users accessing ABWF's website. Thus, Request 16 would cover documents pertaining to *any* method for determining the weekly number of unique users. Second, the alleged ambiguities are non-existent. Assuming the week begins on Monday, a consumer who visits the website once on Monday and once on Tuesday would count as one unique user for that week. Similarly, a consumer who visits the website once on Friday and then once the following Monday would clearly count as a unique user for each week. Of course, any method used for delineating weeks (e.g., Monday to Sunday, Wednesday to Tuesday) would be responsive to Request 16.

372971.01

Caroline C. Plater, Esq.
May 12, 2006
Page 5

     Please advise me as to whether and when ABWF will produce these documents that relate to the number of weekly hits and weekly number of unique users on ABWF's website(s) and that are responsive to Requests 15 and 16.

     *Ninth*, ABWF has failed to produce documents identifying ABWF's corporate structure despite stating that it would produce such documents. *See* Document Request 22. If ABWF has produced these documents—and my review of ABWF's original production suggests ABWF has not produced them—please identify the Bates numbers of these documents.

     Otherwise, please advise me as to when ABWF will produce these documents that identify ABWF's corporate structure and that are responsive to Request 22.

     *Tenth*, ABWF has failed to produce documents responsive to Request 23, concerning ABWF's employees and their job descriptions. First, in its response to Request 23, ABWF stated that it would produce an employee roster identifying the individuals that presently work for American Blind and the department in which they work. My review of ABWF's production did not reveal these documents. If ABWF has produced them, please identify them by Bates number. Second, such an employee roster is insufficient. Producing the job descriptions of roughly 100 employees is not an overly burdensome task, and in any event, Google requires this information in order to independently evaluate who at ABWF will have relevant information concerning this lawsuit.

     Please advise me as to whether and when ABWF will produce the job descriptions of all of ABWF's employees, in response to Request 23.

     *Eleventh*, please update ABWF's production in response to Request 41, which covers "All documents upon which American Blind will rely in this lawsuit." Please advise me as to when ABWF will produce these documents.

     *Finally*, as a general matter, there has been a serious disparity in the willingness of Google and ABWF to produce responsive documents in this litigation. Google has produced well over a hundred thousand pages of documents in response to ABWF's document requests, has refrained from withholding documents based on objections that will ultimately be overruled. By contrast, ABWF has produced relatively few documents and consistently claims it will produce responsive documents without actually doing so. There are also serious questions—based on the paucity of documents ABWF has produced—as to whether ABWF has actually performed a diligent search, as required by the Federal Rules, and whether ABWF is actually producing *all* responsive documents when it claims to do so.

     I am more than willing to engage in further dialogue about ABWF's production obligations, based on reliable representations as to what will be produced. I am unwilling, however, to entertain another iteration of letter-writing in which ABWF ignores issues that I raise, narrows the scope of Google's discovery requests without providing any justification, or claims that it will produce documents without doing so.

372971.01

Caroline C. Plater, Esq.
May 12, 2006
Page 6

<u>Please respond to each of the issues raised in this letter by Thursday, May 18, 2006.</u>

Thank you for your attention to this important matter. Please also feel free to contact me by telephone or email to discuss any of the issues raised in this letter.

Sincerely,

*[signature]*

Ajay S. Krishnan

ASK/rwt

cc: David A. Rammelt, Esq.

372971.01