# EXHIBIT L

LAW OFFICES
# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

March 28, 2006

**VIA FACSIMILE**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Re:   *Google Inc. v. American Blind & Wallpaper Factory, Inc.*

Dear David:

I am writing to follow up on some outstanding discovery issues concerning the documents produced by American Blind and Wallpaper Factory, Inc. ("ABWF") in response to Google's First Set of Requests for Production of Documents and Things (the "Document Requests").

*First,* we have not yet received a response to my letter of March 16, 2006 concerning production of financial documents in response to Requests 9 – 12 of the Document Requests. I requested in the letter that you notify me as soon as possible whether ABWF intends to produce those financial documents. I repeat that request now.

*Second,* ABWF's production does not comply with Federal Rule of Civil Procedure 34(b) ("A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."). ABWF did not "organize and label the [produced documents] to correspond with the categories in the request." You must therefore provide us with an index that indicates by Bates number to which requests for production the documents you have produced respond. Alternatively, if your position is that ABWF has produced these documents "as they are kept in the usual course of business," *please explain how ABWF's production satisfies this requirement*. As you know, ABWF has and continues to claim that Google's production of documents does not satisfy Rule 34(b), so it is important that we come to a consistent understanding as to the meaning of the language "as they are kept in the usual course of business."

*Third,* ABWF's response to Request 3 exemplifies ABWF's failure to "organize and label the [produced documents] to correspond with the categories in the request." Request 3 asks

369940.01

Case 5:03-cv-05340-JF   Document 243-13   Filed 12/26/2006   Page 3 of 5

David A. Rammelt, Esq.
March 28, 2006
Page 2

for "all DOCUMENTS RELATING TO AMERICAN BLIND's first commercial use of each of the AMERICAN BLIND MARKS." ABWF responded that "responsive documents will be produced that illustrate the date of first commercial use of the American Blind Marks." After reviewing ABWF's entire production – which do not appear to be kept in the usual course of business – I found no documents "illustrating" the first commercial use of *any* of ABWF's claimed marks, let alone "each" of them. I saw nothing dating back to 1986, the date ABWF alleges its oldest claimed marks were used in commerce. Independently of how we resolve the ongoing discovery issue pertaining to Rule 34(b)'s "usual course of business" language, ABWF must either produce all responsive documents relating to first commercial use of *each* of its asserted marks, or indicate where such documents are located in ABWF's production.

*Fourth*, ABWF has not adequately responded to Request 1 of the Document Requests. Request 1 asks for "All DOCUMENTS RELATING TO AMERICAN BLIND's selection, adoption and clearance of each of the AMERICAN BLIND MARKS . . . ." Apart from its objections, ABWF responded that "it will produce any responsive documents in its possession regarding the adoption and clearance of each of the American Blind Marks," but does not address documents relating to *selection*. If it is ABWF's position that it has no unprivileged documents regarding the selection of its marks, please state so. Otherwise, please produce all documents relating to ABWF's selection of each claimed ABWF trademark.

Moreover, because ABWF's production does not organize and label documents to correspond with Google's document requests, it appears that American Blind has failed even to produce documents relating to the adoption and clearance of *each* of its asserted marks. Again, independently of how we resolve the ongoing discovery issue pertaining to Rule 34(b)'s "usual course of business" language, ABWF must either produce all responsive documents relating to adoption and clearance of *each* of its asserted marks, or indicate where such documents are located in ABWF's production.

*Fifth*, ABWF's responses to Requests 13 and 14 are wholly inadequate. Those requests ask for documents demonstrating ABWF's monthly advertising and promotional expenditures for products or services marketed under the American Blind marks and domain names. Google is entitled to whatever documents ABWF has regarding ABWF's expenditures on advertising and promotional efforts with regard to ABWF's claimed marks and with regard to websites from which ABWF alleges its customers were diverted. Such documents are therefore relevant and ABWF does not deny that it possesses them. The handful of documents that ABWF has produced thus far make clear that ABWF has a great deal of nuanced financial information on its advertising expenditures, and that this information has been or easily can be broken down by product, by website, and by month. Annualized information is not sufficient. Google has provided similar detailed analyses to ABWF in response to ABWF's document requests.

To address some of ABWF's objections: ABWF objects that "the phrase 'advertising and promotional expenditures' is vague and ambiguous because it is unclear what fixed and/or variable expenses qualify in Google's view as 'expenditures.'" Google need not be more specific: "fixed" and "variable" expenses are obviously both expenditures. Similarly, ABWF

369940.01

David A. Rammelt, Esq.
March 28, 2006
Page 3

objects that Google has not "made any distinction between marketing expenditures and what are properly includable as advertising and promotional materials." Once again, Google need not be more specific. If a document demonstrates "advertising or promotional expenditures," it is responsive whether or not it pertains to marketing.

Next, ABWF objects that Request 13 is overbroad because ABWF has been "using its Marks as early as 1986, and it would be too burdensome to produce documents dating from 1986." Google must know ABWF's investment in the goodwill associated with its asserted trademarks to evaluate ABWF's claim that those trademarks were valid and actually used in commerce. If ABWF wishes to claim its marks were valid since 1986, ABWF must produce proof of its investment in goodwill dating back to that time. The burden of this discovery request is therefore no greater than is required to evaluate ABWF's allegations.

ABWF then objects that "American Blind's advertising expenditures are not necessarily separated to reflect advertising expenditures for products and services sold through the American Blind domain names as opposed to through other channels." This statement does not even constitute a valid objection. It is up to ABWF to perform a reasonable investigation to determine whether ABWF's advertising expenditures are or are not separated; the statement that ABWF's advertising expenditures "are not necessarily separated" is simply an admission that ABWF has failed to perform a reasonable investigation. Moreover, an investigation of the caliber ABWF has requested Google to perform in response to ABWF's document requests would surely reveal domain-specific expenditures. If not, ABWF must simply produce all documents that would permit Google to properly evaluate, to the extent possible, domain-specific expenditures.

*Sixth*, ABWF has not adequately responded to Requests 7 and 20 because ABWF has produced no documents relating to research, analysis, or investigation as to ABWF's decisions on how to name its business. Request 7 asks for, among other things, "analyses and research RELATING TO the AMERICAN BLIND MARKS and AMERICAN BLIND DOMAIN NAMES." ABWF claimed it had no responsive documents. Request 20 asks for "all DOCUMENTS RELATING TO research, reports, surveys, investigations, or studies conducted by or on behalf of AMERICAN BLIND, relating to consumer or customer perception, understanding, or recognition of any name, mark or designation comprised of or containing the AMERICAN BLIND MARKS, or any variation thereof." ABWF only objected to producing documents that were privileged, related to its expert testimony *in this case*, or not yet in its possession.

A review of ABWF's production reveals, however, that ABWF has produced no documents relating to research, analysis, or investigation as to ABWF's decisions on how to name its business. Responsive documents would include internal communications (including emails, Powerpoint presentations, memoranda, etc.) as to what trademarks and names ABWF ought to use to brand or describe its business. Responsive documents would also include any in-house or commissioned studies, research, analyses, or investigations (other than privileged documents or those materials that will be the subject of expert discovery) as to how consumers respond to ABWF's various domain names, trademarks, and variants thereof. Is it the position of

David A. Rammelt, Esq.
March 28, 2006
Page 4

ABWF – a company that uses several different names to identify itself, claims several trademarks, and spends substantial resources in trademark enforcement and litigation – that it has never internally discussed or analyzed which name or names it ought to use? If so, please state so. Otherwise, please produce these documents. Such documents will pertain to the strength of ABWF's claimed trademarks and are therefore relevant to this litigation.

As you have not responded to my past letter, I will now request that you respond to this letter by Monday, April 3rd. As you know, we will need these documents rather urgently due to our upcoming Rule 30(b)(6) deposition of ABWF, which is currently scheduled for April 20, 2006. I assume, however, that ABWF's and Google's legal teams will discuss the second point I raised (concerning the application of Rule 34(b)'s "usual course of business" language) before Monday, as that point pertains to a live dispute over ABWF's document requests.

Thank you for your attention to these important matters.

Sincerely,

Ajay S. Krishnan

cc:   Caroline C. Plater, Esq.

369940.01