(c)    <u>Inventions and Patents</u>. All inventions, innovations or improvements in Corporation's products, improvements, software and discoveries, whether patentable or copyrightable or not, conceived or made by Executive, either alone or jointly with others, during the Employment Term (or during any earlier term of employment of Executive by the Corporation) are hereby assigned to and belong to the Corporation. Executive will promptly disclose in writing such inventions, innovations or improvements to the Board and perform, at the Corporation's expense, all actions reasonably requested by the Board to establish and confirm such ownership by Corporation, including, but not limited to, cooperating with and assisting Corporation in obtaining patents for Corporation in the United States of America and in foreign countries.

    (d)    <u>Covenant Not To Compete; No Solicitation</u>.

    (i)    Executive acknowledges and recognizes the highly competitive nature of Corporation's business and, in consideration of the Corporation's agreements hereunder, Executive agrees that during the Covered Time (as hereinafter defined), Executive will not: (aa) compete with the business of Corporation, which means that Executive will not engage, directly or indirectly, in the Covered Business (as hereinafter defined) in the Covered Area (as hereinafter defined); or (bb) directly or indirectly solicit or attempt to solicit any customer, vendor or distributor of the Corporation with respect to any product or service being furnished, made or sold by the Corporation.

    (ii)    Executive agrees that during the Covered Time he shall not directly or indirectly, solicit or attempt to solicit any of the executives or employees who are employed by the Corporation at the time of the termination of Executive's employment, to become executives or employees of any other person or entity with which he is affiliated.

    (iii)    Executive understands that the provisions of Section 11(d)(I) may limit his ability to earn a livelihood in a business similar to the business of Corporation but nevertheless agrees and hereby acknowledges that the consideration provided under this Agreement, including any amounts or benefits provided under Section 10, is sufficient to justify the restrictions contained in such provisions and in consideration thereof and in light of Executive's education, skills and abilities, Executive agrees that he will not assert that, and it should not be considered that, such provisions prevent him from earning a living or otherwise are void or unenforceable or should be voided or held unenforceable. Executive acknowledges and agrees that his duties with Corporation are of an executive nature and that he is a member of Corporation's management group.

Dockets.Justia.com

(e)    <u>Definition of Corporation</u>.  For purposes of this Section 11, the term "Corporation" shall include Corporation and any and all of its subsidiaries, ventures, whether currently existing or hereafter formed, which are engaged in the Covered Business or a portion thereof, as well as any person or entity to whom this Agreement is assigned as permitted by Section 17 herein; provided that for purposes of this Section 11, only that portion of such person's or entity's business: (i) that is a continuation of the Corporation's business; (ii) employs executives or employees who were executives or employees of the Corporation prior to such assignment; or (iii) has customers, vendors or distributors who or which were customers, vendors or distributors of the Corporation prior to such assignment, will be covered under this definition of Corporation.

(f)    <u>Enforcement</u>.

(i)    The parties hereto agree and acknowledge that the covenants and agreements contained herein are reasonably necessary in duration and to protect the reasonable competitive business interests of the Corporation including, without limitation, the value of the Proprietary Information and good will of the Corporation.

(ii)    Executive agrees that the covenants and undertakings contained in Section 11 of this Agreement relate to matters which are of a special, unique and extraordinary character and that the Corporation cannot be reasonably or adequately compensated in damages in an action at law in the event Executive breaches any of these covenants or undertakings. Therefore, Executive agrees that the Corporation shall be entitled, as a matter of course, without the need to prove irreparable injury, to an injunction, restraining order or other equitable relief from any court of competent jurisdiction, restraining any violation or threatened violation of any of such terms by Executive.

(iii)    Rights and remedies provided for in this Section are cumulative and shall be in addition to rights and remedies otherwise available to the parties under any other agreement or applicable law.

(iv)    In the event that any provision of this Agreement shall to any extent be held invalid, unreasonable or unenforceable in any circumstances, the parties hereto agree that the remainder of this Agreement and the application of such provision of this Agreement to other circumstances shall be valid and enforceable to the fullest extent permitted by law.  If any provision of this Agreement, or any part thereof, is held to be unenforceable because of the scope or duration of or the area covered by such provision, the parties hereto agree that the court or arbitrator making such determination shall reduce the scope, duration and/or area of such provision (and shall substitute appropriate provisions for any such unenforceable

provisions) in order to make such provision enforceable to the fullest extent permitted by law, and/or shall delete specific words and phrases, and such modified provision shall then be enforceable and shall be enforced. The parties hereto recognize that if, in any judicial proceeding or arbitration, a court or arbitrator shall refuse to enforce any of the separate covenants contained in this Agreement, then that unenforceable covenant contained in this Agreement shall be deemed eliminated from these provisions to the extent necessary to permit the remaining separate covenants to be enforced. In the event that any court or arbitrator determines that the time period or the area, or both, are unreasonable and that any of the covenants is to that extent unenforceable, the parties hereto agree that such covenants will remain in full force and effect, first, for the greatest time period, and second, in the greatest geographical area that would not render them unenforceable.

(g)    Certain Other Definitions.

(i)    "Covered Area" shall mean the United States of America, Canada or any territories, possessions or dependencies of such countries.

(ii)    "Covered Business" shall mean the sale through "800-numbers" or over the Internet, of any wallpaper, blinds or other window treatments, and wall coverings or any other business which the Corporation is actively engaged in at the time of the termination of Executive's employment with the Corporation; provided, however, that such "Covered Business" shall not include any third party entity whose sales of such products sold by the Corporation is not a material part of said third party entities' business and where Executive shall have no material involvement in that part of said third party entities' business.

(iii)    "Covered Time" means the period of time commencing on the Effective Date and ending on:

(aa)    except in the circumstances described in clauses (bb), and (cc); inclusive, (x) the end of one full calendar year following the date of termination of Executive's employment, if the Corporation terminates Executive's employment without Cause, the Corporation elects to not renew the Executive's Employment Agreement or Executive terminates his employment for Good Reason; provided, however, that if Executive declines to receive the payments to which he would be otherwise be entitled pursuant to Section 10 hereof in connection with such termination, the post-employment Covered Time shall be zero; provided further, that the non-Solicitation Provisions of Section 11(d)(ii) shall nonetheless remain in effect for a period of one full calendar year following the date of such termination; or (y) the end of one full calendar year following the date of Executive's termination

of Employment in the event that the Executive elects to not renew his Employment Agreement;

(bb)    the end of two full calendar years following the date of termination of Executive's employment if the Corporation terminates Executive's employment for Cause or Executive terminates his employment without Good Reason;

(cc)    the end of one full calendar year following the date of the termination of the Executive's employment as a result of a Change of Control;

(iv)    The phrase "engage, directly or indirectly" shall mean engaging directly or having an interest, directly or indirectly, as owner, partner, shareholder, independent contractor, capital investor, lender, renderer of consultation services or advice or otherwise (other than as the holder of less than 2% of the outstanding stock of a publicly-traded corporation), either alone or in association with others, in the operation of any aspect of any type of business or enterprise engaged in any aspect of the Covered Business. Executive shall be deemed engaged in business in the Covered Area if his place of business is located in the Covered Area or if he solicits customers located anywhere in, or delivers products anywhere in, the Covered Area.

12.    **Expenses.**

(a)    The Corporation shall reimburse Executive for all reasonable and ordinary expenses incurred by Executive in the performance of Executive's duties hereunder; provided, however, that Executive shall account to the Corporation for such expenses in the manner customarily prescribed by the Corporation for its senior executives.

(b)    The Corporation shall pay Executive's reasonable legal and other fees and expenses incurred by Executive in connection with the negotiation, execution and delivery of this Agreement and the Option Agreements.

13.    **Directors' and Officers Insurance; Indemnification.**  The Corporation shall, at all times during the Employment Term (or any Extended Employment Term, as applicable) and thereafter while any liability may exist, provide Executive, Daniel Gilmartin and all other Directors on the Corporation's Board of Directors with Directors and Officers insurance, in an amount customary for corporations similar in size and value to the Corporation and engaged in business activities similar to the business activities of the Corporation. Such insurance shall be obtained from an insurance company with not less than an AAA rating, licensed to engage in business in the state of Delaware. A certificate of such insurance shall be provided to Executive as soon as practicable after to the Effective date of this Agreement. Such insurance shall not be cancelled or not renewed

without giving Executive thirty (30) days prior written notice thereof. The Corporation further agrees to indemnify Executive to the fullest extent permitted by applicable law for all of his actions and inactions in connection with his employment hereunder, and shall advance to Executive legal fees, promptly upon submission of invoices therefor and a reasonably acceptable undertaking pursuant to which the Executive agrees to reimburse the Corporation if an arbitrator or court of competent jurisdiction determines that the Executive was not entitled to any such advances.

14.    **No Duty to Mitigate**. The Executive shall have no duty to mitigate the Base Severance Amount, or any other amounts payable to him hereunder, and such amounts shall not be subject to reduction for any compensation received by Executive from employment in any capacity or other source following the termination of Executive's employment with the Corporation and its subsidiaries. Amounts due Executive hereunder shall not be subject to offset by the Corporation for any claims the Corporation may have against Executive, unless otherwise specifically agreed to, in writing, by Executive.

15.    **Prior Agreements; Amendments; No Waiver**. This Agreement contains the entire understanding between the parties hereto with respect to the subject matter hereof. This Agreement may not be changed orally, but only by an instrument in writing signed by each party hereto. No failure on the part of either party to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any partial exercise of any right hereunder preclude any further exercise thereof. Without limiting the generality of the first sentence of this Section 15, any and all prior employment agreements between Corporation (or any predecessor-in-interest of the Corporation) and Executive are hereby terminated on and as of the Effective Date, including without limitation that certain (a) Employment Agreement dated as of November 4, 1993 by and between ABWF Acquisition Corp. and Executive (b) Sale Bonus Agreement dated as of April, 1997 by and between Executive, Color Tile, Inc. and American Blind and Wallpaper Factory, Inc. ("ABWF"); (c) the Interim Change of Control Agreement by and between the Bank Group and Executive, as adopted by the Bank Group as of January, 1998; and (d) the Original Employment Agreement dated as of August 14, 1998 between the Executive and ABWF.

16.    **Withholding**. The Corporation shall be entitled to withhold from any and all amounts payable to Executive hereunder such amounts as may, from time to time, be required to be withheld pursuant to applicable tax laws and regulations.

17.    **Succession, Assignability and Binding Effect**.

(a)    The Corporation may assign all of its rights and obligations hereunder to any successor or successors (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Corporation; provided, however, that the Corporation will require each such successor or successors to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Corporation would be required to perform it if no such succession had taken place and further provided that nothing

contained herein shall act as a release of the Corporation of its obligations hereunder.

(b)     This Agreement shall inure to the benefit of and shall be binding upon the Corporation and its successors and assigns. Executive may not assign, transfer, pledge, encumber, hypothecate or otherwise dispose of this Agreement or any of his rights or obligations hereunder without the prior written consent of the Corporation, and any such attempted assignment, transfer, pledge, encumbrance, hypothecation or other disposition without such consent shall be null and void and without effect. Notwithstanding the foregoing, it is expressly understood and agreed that the Executive's estate shall be entitled to all monies due to Executive hereunder in the event Executive dies at, or subsequent to, the termination of his employment, but prior to the receipt by Executive of monies due him pursuant to the terms hereof.

18.     **Headings.**  The Section and subsection headings contained herein are included solely for convenience of reference and shall not control or affect the meaning or interpretation of any of the provisions of this Agreement.

19.     **Notices.**  Any notices or other communications hereunder by either party shall be in writing and shall be deemed to have been duly given if delivered personally to the other party or, if sent by registered or certified mail, upon receipt, to the other party at his or its address set forth at the beginning of this Agreement or at such other address as such other party may designate in conformity with the foregoing.

20.     **Governing Law.**  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan applicable to contracts made and to be performed wholly in that state, without giving effect to the principles thereof relating to the conflicts of laws.

21.     **Arbitration.**

(a)     **Disputes Subject to Arbitration.**  Except as provided in Section 11, the Corporation and Executive mutually consent to the resolution by arbitration of any dispute between the Corporation and Executive under this Agreement (a "Dispute").

(b)     **Arbitration Procedures.**

(i)     The Corporation and Executive agree that, except as provided in this Agreement, any arbitration shall be in accordance with the then-current National Rules for the Resolution of Employment Disputes Model Employment Arbitration Procedures of the American Arbitration Association ("AAA") before an arbitrator who is licenced to practice law in the state in which the arbitration is convened (the "Arbitrator"). The arbitration shall take

place in or near the city in which Executive is or was last employed by the Corporation.

(ii)    The Arbitrator shall be selected as follows. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor and employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, said individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternatively until only one remains. If no common name remains on the lists of all parties, the AAA shall furnish an additional list and the parties shall alternate striking names on such second list until an arbitrator is selected.

(iii)    The Arbitrator shall apply the law of the state of Michigan applicable to contracts made and to be performed wholly in that state (without giving effect to the principles thereof relating to conflicts of law). The Federal Rules of Evidence shall apply. The Arbitrator shall render a decision within thirty days of the date upon which the Arbitrator is selected pursuant to Section 21(b)(ii), which decision shall be final and binding upon the parties.

(iv)    The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such notions under the Federal Rules of Civil Procedure.

(v)    Either party, at its expense, may arrange for and pay the costs of a court reporter to provide a stenographic report of proceedings.

(vi)    Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

(vii)    Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Section 21. Except as otherwise provided in this Section 21, both the Corporation and Executive agree that neither such party shall initiate or prosecute any lawsuit or administrative action in any way related to any Dispute covered by this Section 21.

(viii)    The arbitrator shall render an opinion in the form typically rendered in labor arbitrations.

(c)    <u>Arbitration Fees and Costs</u>.  The Corporation and Executive shall equally share the fees and costs of the Arbitrator.  Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in an amount and manner determined by the Arbitrator, ten (10) days before the first day of hearing. The losing party in the arbitration (as determined by the Arbitrator) shall pay for its own, and, if awarded by the arbitrator, the losing party shall also pay for the prevailing party's costs and attorneys' fees.

(d)    <u>Opportunity to Review</u>.  The Executive acknowledges that he has been given the opportunity to discuss this Agreement, including this Section 21, with his private legal counsel and has availed himself of that opportunity to the extent he wishes to do so.

(e)    <u>Law Governing</u>.  The parties agree that the arbitration provisions set forth in this Section 21 will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, ("FAA").  The parties further agree that all Disputes, whether arising under state or federal law, will be subject to the FAA, notwithstanding any state or local laws to the contrary.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

DECORATETODAY.COM, INC.

By: _____
Name: _____ D. J. Gilmartin _____
Title: _____ EVP & COO _____

EXECUTIVE: _____
_____
STEVEN B. KATZMAN

K:\ETA\SJG\dk\agmt\emplagmkatzman-2000-6.wpd



## Employee Hardware Loan

By signing the Employee agrees to be responsible for the return of the hardware and all peripherals in the same condition it was loaned to them. In the event the Employee does not return the equipment, or returns the equipment in unusable condition, the Employee will be responsible for the replacement value of the equipment and authorizes American Blind and Wallpaper Factory to properly deduct such amount from Employees last payroll check.

### Company Computer Hardware and Software Policy

Many different hardware and software programs are available to employees for business use. You must understand, acknowledge and observe policies pertaining to acquisition and use of computer equipment and software. It is your responsibility to adhere to the following policies.

- The Company licenses the use of computer software from a variety of software publishers. The Company does not own this software or its related documentation. Duplication of software except for backup or archival purposes is prohibited by the US Copyright Act, USC Section 117.
- The Company prohibits the installation and use of computer software "brought from home" on company-owned computers. Company owned computers and software are not to be used for personal use.
- It is your responsibility to virus check all incoming files, diskettes, and attachments.
- You agree to remove and return all company-acquired computer software, system diskettes and related documentation to the Company on or before your final day of employment
- Computer software documentation consisting of owner's manual, reference book, set up guides, etc., is to be kept at each workstation where personal computer software is installed. System diskettes will be stored at a central location of the Company. License agreements, warranty documents, registration information and workstation profiles will be maintained in a software library by the IT department of the Company.
- Supervisors should work with employees to ensure that they obtain their own personal access and security authorization needed for their position. This access information should not be shared or used by other employees.

IT may conduct a software audit of each computer owned by the company any time.

Name: Steve Katzman          Date Loaned: 2/14/06          Date Returned: _____

Employee Signature: _____

Management Approval Signature: _____

Make: DELL                    Model:  Latitude D610

Description: _____

_____

_____

Serial Number: CN-0C4708-48643-61A-1421
Asset Tag: 34HKF91
Battery: JP-0Y1338-42012-5CD-1935
Spare Battery: KR-0YF350-71763-61B-B0DN
Mouse: H0541556802
Power Cord: CN-007809-71615-5BS-11C2

L:\USRestworld\Laptop In\ABWF\Loan Forms\Steve-D610-x80F05.doc

<u>Peripherals sent with Hardware</u>

Power Cord                          Battery
Mouse                              Spare Battery

<u>Loan Checklist</u>

    Device works correctly
    All necessary peripherals are provided with the device
        o   If not, please give reason why:
        _____

    Unnecessary and/or sensitive software removed. (If CPU)

Technician Signature:_____


<u>Return Checklist</u>

    Device works correctly
    All peripherals sent with the device were returned
        o   If not, please give reason why:
        _____

    Personal information removed. (If CPU)

Technician Signature:_____ _Greg Augustdt_ _2/27/06_

L:\Network\Laptop Info\HW Loan Forms\Steve-D610-sADRD.doc





**American**
BLINDS, WALLPAPER & MORE

Steven Katzman
Chief Executive Officer

May 18, 2006

To The Board of Directors of American Blind and Wallpaper Factory, Inc.

Effective Immediately I resign my position as Chairman of the Board, as Board Member, Chief Executive Officer, President and Employee of American Blinds and Wallpaper Factory, Inc. I have enjoyed working with all of you and I will always cherish the support and guidance that you have provided. I only wish the best for each and every one of you.

Sincerely,

Steve Kaf



**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

————

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

SUSAN GREENSPON

DIRECT LINE: (312) 857-7080

EMAIL: sgreenspon@kelleydrye.com

May 19, 2006

<u>**VIA E-Mail (StevenKatzman1@yahoo.com)**</u>
<u>**VIA UPS**</u>

Mr. Steve Katzman
6531 Pembridge Hill
West Bloomfield, MI 48322

Dear Steve:

American Blind and Wallpaper Factory, Inc., ("ABWF") has informed me that various items that were in your office, including files, documents, records, electronic data, computer files and other proprietary information, are missing. The removal of any non-personal property from ABWF is criminal theft and civil conversion. ABWF hereby demands that you return any such property, or any and all other ABWF materials you have in your possession, by 5:00 p.m. on Monday, May 22, 2006. All electronic data and all other company materials in your possession are the property of ABWF, and ABWF treats such information and data as propriety and confidential. You are not in any manner to keep copies of such information.

In the event you fail to comply with ABWF's request, or you use or distribute any of ABWF's propriety and confidential information, ABWF will take appropriate legal action.

Sincerely,

Susan J. Greenspon

SG:bjm

CH01/GREES/209503.1



**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(312) 857-7095
www.kelleydrye.com

SUSAN GREENSPON
DIRECT LINE: (312) 857-7080
EMAIL: sgreenspon@kelleydrye.com

May 19, 2006

VIA FACSIMILE (248-592-1964) &
VIA E-MAIL (STEVENKATZMAN1@YAHOO.COM)

Steven Katzman
6531 Pembridge Hill
West Bloomfield, MI 48322

Re:   American Blind and Wallpaper Factory, Inc.

Dear Steve:

As counsel for American Blind and Wallpaper Factory, Inc. ("ABWF"), we have been instructed to contact you regarding certain conduct you have engaged in, which if true, may be actionable under Michigan state law. We have been informed that you have been in contact with certain vendors and creditors of ABWF following your tender of resignation from ABWF. We have also been advised that in at least one conversation with a vendor, you have indicated or implied that ABWF is in financial distress. Specifically, references to a representative of the new majority shareholder as a "workout man" taking over control of ABWF suggests a negative connotation with regard to the financial stability of ABWF. Based on these comments, at least one vendor has already elected to rescind credit and has refused to continue to manufacture and ship merchandise on behalf of ABWF. You should be aware that any representations you have made or may make regarding ABWF being in financial distress are absolutely false. As of Monday, May 22, ABWF will have access to a new $10 million revolving line of credit, $3.8 million of which is currently funded, and will be in complete compliance with all covenants.

As a shareholder of ABWF, a closely held corporation, you may still owe a duty of loyalty and a fiduciary duty not to harm the corporation in any manner, regardless of your employment status. As you know, ABWF has business relationships with its suppliers. Any intentional interference by you that causes the termination of these relationships may be considered tortious interference with economic advantage. Similarly, any dissemination by you

KELLEY DRYE & WARREN LLP

Steven Katzman
May 19, 2006
Page Two

of false information that tends to prejudice ABWF in the conduct of its business, or that deters others from dealing with ABWF, is actionable defamation.

If you do not refrain from any further communications with any vendors, creditors, suppliers, customers and/or employees on any matters which interfere with ABWF's relationships with these entities or individuals, which misrepresents or misstates ABWF's current condition, or is otherwise in violation of your duties under the law, ABWF will have no option but to protect its interests and assert any legal cause of action it may have against you

Sincerely,

Susan J. Greenspon

SJG:bjm



FW: Return of Property Demand letter

## Greenspon, Susan

| | |
|---|---|
| **From:** | Steven Katzman [stevenkatzman1@yahoo.com] |
| **Sent:** | Monday, June 05, 2006 12:07 PM |
| **To:** | Greenspon, Susan |
| **Subject:** | RE: Return of Property Demand letter |
| **Importance:** | High |

Susan --

As we discussed on the telephone for security purposes I did archive my corporate records on my home computer. Also as we discussed as of the first of the year we implemented a new program called Coremetrics that tracks all website activity. One of the features of this software is that it allows you to automate sending reports on a daily basis. Initially for some reason I was not receiving the reports in my corporate e-mail account so I added a personal yahoo e-mail account to also receive the daily reports.

With respect to the Coremetric e-mails, I have copied all 4,368 e-mails to a pst file on a disk and I am sending you 2 disks in the mail today (1 for you to forward to American Blinds and the other to keep for your files). I have also sent a copy to my attorney for safe keeping. I have done so in the event a dispute arises where the integrity of the information becomes important. I will not keep a copy nor will I or anyone on my behalf access the information for any purpose precluded by the employment agreement.

With respect to the corporate records, I am in the process of reviewing over 15,000 items so that I can remove any personal related items before sending you copies. As soon as I have completed this review I will forward pst files on a disk of all corporate related records that I have archived. If there are any specific corporate records that American Blinds believes they need immediately please let me know and I will get those out in advance of forwarding the entire file.

Thanks, Steve
248-310-3635

**From:** Greenspon, Susan [mailto:SGreenspon@KelleyDrye.com]
**Sent:** Wednesday, May 24, 2006 5:39 PM
**To:** Steven Katzman
**Subject:** FW: Return of Property Demand letter


Steve:
Per your request, attached is the letter sent to you on Friday regarding the return of corporate property.
Thanks
Susan

Susan J. Greenspon

KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.

FW: Return of Property Demand letter                                            Page 2 of 2

Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)

-----Original Message-----
**From:** Greenspon, Susan
**Sent:** Friday, May 19, 2006 9:35 PM
**To:** 'stevenkatzman1@yahoo.com'
**Cc:** 'Jon Bauer'
**Subject:** Return of Property Demand letter

<<209503.doc>>


Susan J. Greenspon

KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.
Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)


Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.


The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.


This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.


8/3/2006



FW: Return of Property Demand letter

## Greenspon, Susan

| | |
|---|---|
| **From:** | Steven Katzman [stevenkatzman1@yahoo.com] |
| **Sent:** | Monday, June 12, 2006 11:11 AM |
| **To:** | Greenspon, Susan |
| **Subject:** | RE: Return of Property Demand letter |
| **Importance:** | High |

Susan –

I am in receipt of your correspondence dated June 8, 2006. It is inaccurate in that you received the e-mail below on June 5th and not on June 7th. More importantly, I take exception to the fact that you are suggesting the first time you became aware that I was putting the requested information together was as a result of the e-mail below. You and I have had several discussions over the telephone concerning this matter since I received your correspondence of May 19th and prior to me sending the e-mail below. I advised you that I am, and continue to, diligently work on assembling the requested information. According to paragraph 11(b) of my employment agreement I am only required to return records that contain any proprietary information. I do not believe anyone is as well positioned as I am to pick out the personal information that is contained in the files. Once I began reviewing the information I discovered that there are in excess of 35,000 items and therefore it has proven to be a much more difficult task than I originally anticipated. I will certainly maintain the integrity of the proprietary information and I have every intention of complying with the non-disclosure requirements under paragraph 11(a) of my employment agreement. I have already sent you the Coremetrics e-mails and I anticipate sending the remaining files out this week. Upon reviewing the items, it is my sense that I don't have anything in my possession that is of a critical business nature. However, please let me know if there is anything that American Blinds believes is of a critical nature and assuming that I have such information I will forward such immediately.

Sincerely,

Steven Katzman

**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Monday, June 05, 2006 1:07 PM
**To:** 'Greenspon, Susan'
**Subject:** RE: Return of Property Demand letter
**Importance:** High

Susan –

As we discussed on the telephone for security purposes I did archive my corporate records on my home computer. Also as we discussed as of the first of the year we implemented a new program called Coremetrics that tracks all website activity. One of the features of this software is that it allows you to automate sending reports on a daily basis. Initially for some reason I was not receiving the reports in my corporate e-mail account so I added a personal yahoo e-mail account to also receive the daily reports.

FW: Return of Property Demand letter

With respect to the Coremetric e-mails, I have copied all 4,368 e-mails to a pst file on a disk and I am sending you 2 disks in the mail today (1 for you to forward to American Blinds and the other to keep for your files). I have also sent a copy to my attorney for safe keeping. I have done so in the event a dispute arises where the integrity of the information becomes important. I will not keep a copy nor will I or anyone on my behalf access the information for any purpose precluded by the employment agreement.

With respect to the corporate records, I am in the process of reviewing over 15,000 items so that I can remove any personal related items before sending you copies. As soon as I have completed this review I will forward pst files on a disk of all corporate related records that I have archived. If there are any specific corporate records that American Blinds believes they need immediately please let me know and I will get those out in advance of forwarding the entire file.

Thanks, Steve
248-310-3635

---

**From:** Greenspon, Susan [mailto:SGreenspon@KelleyDrye.com]
**Sent:** Wednesday, May 24, 2006 5:39 PM
**To:** Steven Katzman
**Subject:** FW: Return of Property Demand letter

Steve:
Per your request, attached is the letter sent to you on Friday regarding the return of corporate property.
Thanks
Susan

Susan J. Greenspon

KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.
Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)

-----Original Message-----
**From:** Greenspon, Susan
**Sent:** Friday, May 19, 2006 9:35 PM
**To:** 'stevenkatzman1@yahoo.com'
**Cc:** 'Jon Bauer'
**Subject:** Return of Property Demand letter

<<209503.doc>>

Susan J. Greenspon

KELLEY DRYE & WARREN LLP

8/3/2006

FW: Return of Property Demand letter

333 W. Wacker Dr.
Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

8/3/2006

FW: Return of Property Demand letter

## Greenspon, Susan

**From:**     Steven Katzman [stevenkatzman1@yahoo.com]
**Sent:**     Wednesday, June 14, 2006 9:10 PM
**To:**       Greenspon, Susan
**Subject:**  RE: Return of Property Demand letter

Susan –

I am sending you a disk that includes all company related e-mails and documents that were archived on my home computer. I have also provided a copy to my attorney for safe keeping. I have done so in the event a dispute arises where the integrity of the information becomes important. I will not keep a copy nor will I or anyone on my behalf access the information for any purpose precluded by the employment agreement.

Steven Katzman

**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Monday, June 12, 2006 12:11 PM
**To:** 'Greenspon, Susan'
**Subject:** RE: Return of Property Demand letter
**Importance:** High

Susan –

I am in receipt of your correspondence dated June 8, 2006. It is inaccurate in that you received the e-mail below on June 5th and not on June 7th. More importantly, I take exception to the fact that you are suggesting the first time you became aware that I was putting the requested information together was as a result of the e-mail below. You and I have had several discussions over the telephone concerning this matter since I received your correspondence of May 19th and prior to me sending the e-mail below. I advised you that I am, and continue to, diligently work on assembling the requested information. According to paragraph 11(b) of my employment agreement I am only required to return records that contain any proprietary information. I do not believe anyone is as well positioned as I am to pick out the personal information that is contained in the files. Once I began reviewing the information I discovered that there are in excess of 35,000 items and therefore it has proven to be a much more difficult task than I originally anticipated. I will certainly maintain the integrity of the proprietary information and I have every intention of complying with the non-disclosure requirements under paragraph 11(a) of my employment agreement. I have already sent you the Coremetrics e-mails and I anticipate sending the remaining files out this week. Upon reviewing the items, it is my sense that I don't have anything in my possession that is of a critical business nature. However, please let me know if there is anything that American Blinds believes is of a critical nature and assuming that I have such information I will forward such immediately.

Sincerely,

Steven Katzman

FW: Return of Property Demand letter

**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Monday, June 05, 2006 1:07 PM
**To:** 'Greenspon, Susan'
**Subject:** RE: Return of Property Demand letter
**Importance:** High

Susan –

As we discussed on the telephone for security purposes I did archive my corporate records on my home computer. Also as we discussed as of the first of the year we implemented a new program called Coremetrics that tracks all website activity. One of the features of this software is that it allows you to automate sending reports on a daily basis. Initially for some reason I was not receiving the reports in my corporate e-mail account so I added a personal yahoo e-mail account to also receive the daily reports.

With respect to the Coremetric e-mails, I have copied all 4,368 e-mails to a pst file on a disk and I am sending you 2 disks in the mail today (1 for you to forward to American Blinds and the other to keep for your files). I have also sent a copy to my attorney for safe keeping. I have done so in the event a dispute arises where the integrity of the information becomes important. I will not keep a copy nor will I or anyone on my behalf access the information for any purpose precluded by the employment agreement.

With respect to the corporate records, I am in the process of reviewing over 15,000 items so that I can remove any personal related items before sending you copies. As soon as I have completed this review I will forward pst files on a disk of all corporate related records that I have archived. If there are any specific corporate records that American Blinds believes they need immediately please let me know and I will get those out in advance of forwarding the entire file.

Thanks, Steve
248-310-3635

**From:** Greenspon, Susan [mailto:SGreenspon@KelleyDrye.com]
**Sent:** Wednesday, May 24, 2006 5:39 PM
**To:** Steven Katzman
**Subject:** FW: Return of Property Demand letter

Steve:
Per your request, attached is the letter sent to you on Friday regarding the return of corporate property.
Thanks
Susan

Susan J. Greenspon

KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.
Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)

8/3/2006

FW: Return of Property Demand letter

-----Original Message-----
**From:** Greenspon, Susan
**Sent:** Friday, May 19, 2006 9:35 PM
**To:** 'stevenkatzman1@yahoo.com'
**Cc:** 'Jon Bauer'
**Subject:** Return of Property Demand letter

<<209503.doc>>

Susan J. Greenspon

KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.
Suite 2600
Chicago, Illinois 60606
(312) 857-7080 (direct)
(312) 857-7095 (facsimile)

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

8/3/2006



## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

SUSAN GREENSPON

DIRECT LINE: (312) 857-7080

EMAIL: sgreenspon@kelleydrye.com

June 21, 2006

<u>VIA E-MAIL (STEVENKATZMAN1@YAHOO.COM)</u>
<u>& VIA UPS OVERNIGHT COURIER</u>

Mr. Steven Katzman
6531 Pembridge Hill
West Bloomfield, MI 48322

Re:    **Return of Company Property**

Dear Steve:

Please be advised that I finally received the disk containing your electronic files in today's mail. Thank you for sending me same. Please note, however, that it has just come to the Company's attention, that you are still in possession of that certain Dell Laptop Computer, Serial No. CN-0C4708-48643-61A-1421 in addition to the battery, spare battery, mouse, and power cord that you loaned in connection with same from the Company pursuant to that certain Employee Hardware Loan Agreement dated February 14, 2006. Please return all such Company property to the Company by no later than 5:00 pm tomorrow, June 22, 2006. Your anticipated cooperation in this matter is appreciated.

Very truly yours,

Susan J. Greenspon

SJG:bjm
Enclosure



Fw: PDF Cover Sheet

---

**Greenspon, Susan**

**From:**    Steven Katzman1 [stevenkatzman1@yahoo.com]

**Sent:**    Thursday, June 22, 2006 6:44 PM

**To:**    Greenspon, Susan

**Cc:**    joel@americanblinds.com

**Subject:** RE: PDF Cover Sheet

Susan –

Is American Blinds willing to sell me the computer at fair market value?

Steve Katzman

---

**From:** Greenspon, Susan [mailto:SGreenspon@KelleyDrye.com]
**Sent:** Thursday, June 22, 2006 11:44 AM
**To:** Stevenkatzman1@yahoo.com
**Cc:** joel@americanblinds.com
**Subject:** Fw: PDF Cover Sheet

Steve:
Per your request, attached is a copy of the Hardware Loan Agreement you signed for the Dell Laptop and related
accessories. Please advise if you will be complying with the terms of my letter yesterday with respect to the return of same.
Susan
-----------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Pitney Bowes CH
To: Greenspon, Susan
Sent: Thu Jun 22 10:20:48 2006
Subject: PDF Cover Sheet


<<DOC001.PDF>>

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless
otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.


The information contained in this E-mail message is privileged, confidential, and may be protected
from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of
this communication may be subject to legal restriction or sanction. If you think that you have received
this E-mail message in error, please reply to the sender.

8/3/2006

Fw: PDF Cover Sheet

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.



Fw: PDF Cover Sheet

## Greenspon, Susan

**From:**    Joel Levine [joel@americanblinds.com]
**Sent:**    Thursday, June 22, 2006 8:41 PM
**To:**    Greenspon, Susan
**Subject:** FW: PDF Cover Sheet

The answer is no. We want all the items back.

Joel

**From:** Steven Katzman1 [mailto:stevenkatzman1@yahoo.com]
**Sent:** Thu 6/22/2006 7:44 PM
**To:** 'Greenspon, Susan'
**Cc:** Joel Levine
**Subject:** RE: PDF Cover Sheet

Susan —

Is American Blinds willing to sell me the computer at fair market value?

Steve Katzman

**From:** Greenspon, Susan [mailto:SGreenspon@KelleyDrye.com]
**Sent:** Thursday, June 22, 2006 11:44 AM
**To:** Stevenkatzman1@yahoo.com
**Cc:** joel@americanblinds.com
**Subject:** Fw: PDF Cover Sheet

Steve:
Per your request, attached is a copy of the Hardware Loan Agreement you signed for the Dell Laptop and related accessories. Please advise if you will be complying with the terms of my letter yesterday with respect to the return of same.
Susan
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Pitney Bowes CH
To: Greenspon, Susan
Sent: Thu Jun 22 10:20:48 2006
Subject: PDF Cover Sheet

<<DOC001.PDF>>

8/3/2006

## Short David

| | |
|---|---|
| **From:** | Joel Levine [joel@americanblinds.com] |
| **Sent:** | Thursday, August 03, 2006 12:57 PM |
| **To:** | Short David |
| **Subject:** | FW: Competitive Landscape |
| **Importance:** | High |

**From:** Chad Spawr
**Sent:** Wednesday, July 19, 2006 3:50 PM
**To:** Joel Levine
**Subject:** FW: Competitive Landscape
**Importance:** High

Joel,

Just found this email in Irma's Inbox in Outlook.  Note that he wrote it just a couple of days ago.  Not sure what he was thinking, but thought you'd find this interesting.

Chad

-----Original Message-----
**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Monday, July 17, 2006 11:58 AM
**To:** Irma Kline
**Cc:** Mrluckypk@aol.com
**Subject:** Competitive Landscape
**Importance:** High

Irma –

Can you go through the ordering process with each competitor and see whether there are any additional charges they include right before you buy (i.e. Shipping charges, processing fees, UPS insurance, etc...). In the event you come across any that have these type of charges please describe them in detail.  Also, please make notes on which brand each website carries. I added 4 additional columns to the competitor tracking form.  Let me know if you have any questions.

Thanks,

Steve Katzman
248-310-3635

# EXHIBIT FILED
# UNDER SEAL



**Short David**

| | |
|---|---|
| **From:** | Joel Levine [joel@americanblinds.com] |
| **Sent:** | Thursday, August 03, 2006 12:58 PM |
| **To:** | Short David |
| **Subject:** | FW: Redlined Version Employee Handbook |



Redlined
/ersion.doc (596 KB

-----Original Message-----
From: Chad Spawr
Sent: Monday, July 24, 2006 2:50 PM
To: Joel Levine
Subject: FW: Redlined Version Employee Handbook

Joel,

This is the latest email from Katzman to Irma.

Does he know that she's gone?  Look at the attachment he sent to her?

Chad

-----Original Message-----
From: Steven Katzman [mailto:stevenkatzman1@yahoo.com]
Sent: Friday, July 21, 2006 5:33 PM
To: Irma Kline
Subject: Redlined Version Employee Handbook




* * * * * * * *

The information contained in this E-mail message is privileged, confidential, and may be
protected from disclosure; please be aware that any other use, printing, copying,
disclosure or dissemination
of this communication may be subject to legal restriction or sanction. If you think that
you have received this E-mail message in error, please reply to the sender and delete it
from your computer. T hank you.

1

# EXHIBIT FILED
# UNDER SEAL



## Short David

| | |
|---|---|
| **From:** | Joel Levine [joel@americanblinds.com] |
| **Sent:** | Thursday, August 03, 2006 12:58 PM |
| **To:** | Short David |
| **Subject:** | FW: Competitive Landscape |
| **Importance:** | High |

**From:** Chad Spawr
**Sent:** Monday, July 24, 2006 2:54 PM
**To:** Joel Levine
**Subject:** FW: Competitive Landscape
**Importance:** High

Joel,

This is an updated resend of the document he sent to Irma last week.


Chad


-----Original Message-----
**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Friday, July 21, 2006 5:31 PM
**To:** Irma Kline
**Subject:** FW: Competitive Landscape
**Importance:** High

**From:** Steven Katzman [mailto:stevenkatzman1@yahoo.com]
**Sent:** Monday, July 17, 2006 11:58 AM
**To:** IRMA KLINE (ilk3689@aol.com)
**Cc:** Mrluckypk@aol.com
**Subject:** Competitive Landscape
**Importance:** High

Irma –

Can you go through the ordering process with each competitor and see whether there are any additional charges they include right before you buy (i.e. Shipping charges, processing fees, UPS insurance, etc...). In the event you come across any that have these type of charges please describe them in detail. Also, please make notes on which brand each website carries. I added 4 additional columns to the competitor tracking form. Let me know if you have any questions.

Thanks,

Steve Katzman
248-310-3635

8/3/2006

# EXHIBIT FILED
# UNDER SEAL



steve access.txt

```
2006-05-21,07:27:14,2006-05-21,07:27:14,172.16.17.2,23,4,131190 05/21/2006
07:28:52.580 SEV=3 AUTH/5 RPT=704 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 502, server = Internal, user = skatzman, domain = <not
specified>
2006-05-21,07:27:17,2006-05-21,07:27:17,172.16.17.2,23,4,131192 05/21/2006
07:28:55.830 SEV=3 AUTH/5 RPT=705 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 503, server = Internal, user = skatzman, domain = <not
specified>
2006-05-21,07:27:21,2006-05-21,07:27:21,172.16.17.2,23,4,131194 05/21/2006
07:28:59.350 SEV=3 AUTH/5 RPT=706 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 504, server = Internal, user = skatzman, domain = <not
specified>
2006-05-21,07:27:34,2006-05-21,07:27:34,172.16.17.2,23,4,131203 05/21/2006
07:29:12.480 SEV=3 AUTH/5 RPT=707 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 506, server = Internal, user = skatzman, domain = <not
specified>
2006-05-21,07:27:50,2006-05-21,07:27:50,172.16.17.2,23,4,131205 05/21/2006
07:29:28.080 SEV=3 AUTH/5 RPT=708 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 507, server = Internal, user = irmak, domain = <not
specified>
2006-05-21,07:27:54,2006-05-21,07:27:54,172.16.17.2,23,4,131207 05/21/2006
07:29:32.680 SEV=3 AUTH/5 RPT=709 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 508, server = Internal, user = irmak, domain = <not
specified>
2006-05-21,07:28:10,2006-05-21,07:28:10,172.16.17.2,23,4,131216 05/21/2006
07:29:48.610 SEV=3 AUTH/5 RPT=710 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 510, server = Internal, user = ikline, domain = <not
specified>

2006-06-04,19:08:50,2006-06-04,19:08:50,172.16.17.2,23,4,158945 06/04/2006
19:11:00.170 SEV=3 AUTH/5 RPT=866 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 950, server = Internal, user = imhotep, domain = <not
specified>
2006-06-04,19:09:26,2006-06-04,19:09:26,172.16.17.2,23,4,158947 06/04/2006
19:11:36.990 SEV=3 AUTH/5 RPT=867 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 951, server = Internal, user = grupprecht, domain = <not
specified>
2006-06-04,19:09:32,2006-06-04,19:09:32,172.16.17.2,23,4,158949 06/04/2006
19:11:42.530 SEV=3 AUTH/5 RPT=868 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 952, server = Internal, user = grupprecht, domain = <not
specified>
2006-06-04,19:10:19,2006-06-04,19:10:19,172.16.17.2,23,4,158971 06/04/2006
19:12:29.130 SEV=3 AUTH/5 RPT=869 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 955, server = Internal, user = grupprecht, domain = <not
specified>
2006-06-04,19:10:24,2006-06-04,19:10:24,172.16.17.2,23,4,158973 06/04/2006
19:12:34.540 SEV=3 AUTH/5 RPT=870 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 956, server = Internal, user = grupprecht, domain = <not
specified>
2006-06-04,19:10:43,2006-06-04,19:10:43,172.16.17.2,23,4,158980 06/04/2006
19:12:53.670 SEV=3 AUTH/5 RPT=871 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 958, server = Internal, user = grupprecht, domain = <not
specified>
2006-06-04,19:12:36,2006-06-04,19:12:36,172.16.17.2,23,4,158989 06/04/2006
19:14:46.780 SEV=3 AUTH/5 RPT=872 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 960, server = Internal, user = ikline, domain = <not
specified>
2006-06-04,19:12:39,2006-06-04,19:12:39,172.16.17.2,23,4,158991 06/04/2006
19:14:49.750 SEV=3 AUTH/5 RPT=873 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 961, server = Internal, user = ikline, domain = <not
specified>
```

steve access.txt

2006-06-05,10:10:55,2006-06-05,10:10:55,172.16.17.2,23,4,160303 06/05/2006
10:13:06.950 SEV=3 AUTH/5 RPT=878 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 48, server = Internal, user = irmak, domain = <not
specified>
2006-06-05,10:11:01,2006-06-05,10:11:01,172.16.17.2,23,4,160305 06/05/2006
10:13:13.000 SEV=3 AUTH/5 RPT=879 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 50, server = Internal, user = irmak, domain = <not
specified>
2006-06-05,10:11:11,2006-06-05,10:11:11,172.16.17.2,23,4,160307 06/05/2006
10:13:23.070 SEV=3 AUTH/5 RPT=880 68.40.136.63  Authentication rejected: Reason =
Access hours restrictions in effect handle = 51, server = Internal, user = ikline,
domain = <not specified>
2006-06-05,10:11:50,2006-06-05,10:11:50,172.16.17.2,23,4,160316 06/05/2006
10:14:01.960 SEV=3 AUTH/5 RPT=881 68.40.136.63  Authentication rejected: Reason =
Invalid password handle = 53, server = Internal, user = ikline, domain = <not
specified>
2006-06-05,10:11:55,2006-06-05,10:11:55,172.16.17.2,23,4,160318 06/05/2006
10:14:06.840 SEV=3 AUTH/5 RPT=882 68.40.136.63  Authentication rejected: Reason =
Access hours restrictions in effect handle = 55, server = Internal, user = ikline,
domain = <not specified>
2006-06-05,10:12:05,2006-06-05,10:12:05,172.16.17.2,23,4,160320 06/05/2006
10:14:16.800 SEV=3 AUTH/5 RPT=883 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 54, server = Internal, user = irmak, domain = <not
specified>
2006-06-05,10:12:20,2006-06-05,10:12:20,172.16.17.2,23,4,160329 06/05/2006
10:14:31.760 SEV=3 AUTH/5 RPT=884 68.40.136.63  Authentication rejected: Reason =
User was not found handle = 57, server = Internal, user = irmak, domain = <not
specified>