# EXHIBIT W

Robert N. Phillips (SBN 120970)
Ethan B. Andelman (SBN 209101)
HOWREY SIMON ARNOLD & WHITE, LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

David A. Rammelt (Admitted *Pro Hac Vice*)
Susan J. Greenspon (Admitted *Pro Hac Vice*)
Dawn M. Beery (Admitted *Pro Hac Vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 857-7070
Facsimile: (312) 857-7095

Attorneys for Defendant/Counter-Plaintiff
AMERICAN BLIND AND WALLPAPER
FACTORY, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. C 03-5340-JF (EAI)<br><br>**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26** |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>GOOGLE, INC., AMERICA ONLINE, INC., NETSCAPE COMMUNICATIONS CORPORATION, COMPUSERVE INTERACTIVE SERVICES, INC., ASK JEEVES, INC., and EARTHLINK, INC.<br><br>Counter-Defendants/<br>Third-Party Defendants | |

HOWREY
SIMON
ARNOLD &
WHITE, LLP

AMERICAN BLIND'S INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind") hereby makes the following Initial Disclosures as follows:

## GENERAL OBJECTIONS

1. The following disclosures are based upon information reasonably available to, and currently in the possession, custody or control of, American Blind. To the best of American Blind's knowledge, information and belief, these disclosures are complete and correct as of the date they are made. American Blind anticipates that it will obtain additional facts, identify additional persons who may have knowledge relevant to the issues in this action, and identify additional documents relevant to the factual disputes in this action through their continuing pre-trial research, investigation and analysis and through discovery of Plaintiff/Counter-Defendant Google, Inc., the Third-Party Defendants, and/or other third parties. American Blind expressly reserves its rights: (a) to make subsequent revision, supplementation or amendment to these disclosures based upon any information, evidence, documents, facts and things which hereafter may be discovered, or the relevance of which may hereafter be discovered; and (b) to produce, introduce or rely upon additional or subsequently acquired or discovered writings, evidence and information at trial or in any pre-trial proceedings held herein.

2. American Blind objects to producing any documents or other tangible things that are, or fairly constitute, trade secrets or that otherwise contain confidential, proprietary or sensitive information until the entry of an appropriate Protective Order governing the disclosure and dissemination of such information.

## WITNESSES

As of the date of these Initial Disclosures, American Blind believes, based on information reasonably available to it, that the following individuals may have information that American Blind may use to support its case:

1. Steve Katzman, CEO & President, American Blind

HOWREY
SIMON
ARNOLD &
WHITE, LLP

-2-

AMERICAN BLIND'S INITIAL DISCLOSURES

Mr. Katzman can be contacted through counsel for American Blind.

Mr. Katzman has knowledge regarding American Blind's trademarks, the amount of time and money spent by American Blind building up the value of its trademarks, American Blind's ad campaign with Google, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, the confusion suffered by American Blind's customers and prospective customers due to the "Sponsored Links" posted by Google in response to a search for American Blind's trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

2. Joe Charno, Vice President of Marketing, Advertising & E-Commerce, American Blind

Mr. Charno can be contacted through counsel for American Blind.

Mr. Charno has knowledge regarding American Blind's trademarks, the amount of time and money spent by American Blind building up the value of its trademarks, American Blind's ad campaign with Google, Google's sale of American Blind's trademarks as keywords to American Blind's competitors, the confusion suffered by American Blind's customers and prospective customers due to the "Sponsored Links" posted by Google in response to a search for American Blind's trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

3. Bill Smith, Ecommerce Advisor, American Blind

Mr. Smith can be contacted through counsel for American Blind.

Mr. Smith has knowledge regarding American Blind's trademarks, the amount of time and money spent by American Blind building up the value of its trademarks, American Blind's ad campaign with Google, Google's sale of American Blind's trademarks as keywords to American Blind's competitors, the confusion suffered by American Blind's customers and prospective customers

due to the "Sponsored Links" posted by Google in response to a search for American Blind's trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

4. Jeff Alderman, Ecommerce Relationship Manager, American Blind

Mr. Alderman can be contacted through counsel for American Blind.

Mr. Alderman has knowledge regarding American Blind's trademarks, the amount of time and money spent by American Blind building up the value of its trademarks, American Blind's ad campaign with Google, Google's sale of American Blind's trademarks as keywords to American Blind's competitors, the confusion suffered by American Blind's customers and prospective customers due to the "Sponsored Links" posted by Google in response to a search for American Blind's trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

5. Scott Powers, Ecommerce Coordinator, American Blind

Mr. Powers can be contacted through counsel for American Blind.

Mr. Powers has knowledge regarding American Blind's trademarks, the amount of time and money spent by American Blind building up the value of its trademarks, American Blind's ad campaign with Google, Google's sale of American Blind's trademarks as keywords to American Blind's competitors, the confusion suffered by American Blind's customers and prospective customers due to the "Sponsored Links" posted by Google in response to a search for American Blind's trademarks, American Blind's negotiations with Google regarding halting the sale of American Blind's trademarks as Keywords as part of Google's AdWords Program, and the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

6. Rick Steele, Select Blinds

American Blind believes that Mr. Steele has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

7. Sergey Brin, Google

Mr. Brin has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

8. Larry Page, Google

Mr. Page has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

9. Eric Schmidt, Google

Mr. Schmidt has knowledge regarding Google's advertising policies, Google's corporate philosophy, pending litigation, advertising revenues, and profits, including statements made on a 60 Minutes segment aired on January 2, 2005, in Playboy Magazine, in corporate filings, and elsewhere.

10. Kristina C., Google

American Blind believes that Kristina C. has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

11. Jill Randell, Google

American Blind believes that Ms. Randell has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

12. Carrie Chung, Google

American Blind believes that Ms. Chung has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

13. Allison Maranz, Google

American Blind believes that Ms. Maranz has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

14. Laura Balkovich, Google

American Blind believes that Ms. Balkovich has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's

trademarks as Keywords to American Blind's competitors.

15. Kulpreet Rana, Google

American Blind believes that Kulpreet Rana has knowledge regarding Google's AdWords program, Google's policy regarding the sale of trademarks as keywords to advertisers as part of the AdWords program, Google's broad matching algorithm, other lawsuits against Google for sale of a party's trademarks as Keywords as part of the AdWords program, and Google's settlement with other trademark owners regarding the use of trademarks as Keywords.

16. Britton Mauchline (n/k/a Britton Picciolini), Google

Ms. Picciolini was one of American Blind's primary contacts with Google regarding American Blind's own AdWords campaign, and American Blind's complaints regarding Google's sale of American Blind's trademarks to other as Keywords. American Blind believes that Ms. Picciolini has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

17. Rose A. Hagan, Google

American Blind believes that Ms. Hagan has knowledge regarding Google's AdWords program, Google's policy regarding the sale of trademarks as keywords to advertisers as part of the AdWords program, Google's broad matching algorithm, other lawsuits against Google for sale of a party's trademarks as Keywords as part of the AdWords program, and Google's settlement with other trademark owners regarding the use of trademarks as Keywords.

18. K. Robertson, Google

American Blind believes that K. Robertson has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's

-7-

AMERICAN BLIND'S INITIAL DISCLOSURES

1  competitors, and the amount of revenue earned by Google by selling American Blind's trademarks as
2  Keywords to American Blind's competitors.

3
4      19. Charles A. Kilmer, Advertiser on Google
            7008 Tyndale Street, Mclean, VA 22101
5
            American Blind believes that Mr. Kilmer has knowledge regarding Google's sale of
6
7  American Blind's trademarks as Keywords to American Blind's competitors as part of Google's
   AdWords Program, Google's AdWords Keywords Suggestions feature, and the American Blind
8
9  optimization campaign.

10     20. Evan Scott, Advertiser on Google
11          1466 Laurel Oaks Drive, Streamwood, IL 60107
12          American Blind believes that Mr. Scott has knowledge regarding Google's sale of
13 American Blind's trademarks as Keywords to American Blind's competitors as part of Google's
14 AdWords Program, Google's AdWords Keywords Suggestions feature, and the American Blind
15 optimization campaign.

16
       21. Jeff Edwards, Google
17
            American Blind believes that Mr. Edwards has knowledge regarding American Blind's
18
   ad campaign with Google, the amount of money American Blind pays Google for American Blind's
19
   own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's
20
   competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization
21
   campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as
22
   Keywords to American Blind's competitors.
23
24     22. Kimberli Heard, Google
25          American Blind believes that Ms. Heard has knowledge regarding American Blind's ad
26 campaign with Google, the amount of money American Blind pays Google for American Blind's own
27 ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's
28 competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization

campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

23. A. Dimarco, Google

American Blind believes that A. Dimarco has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

24. John DiCola, Google

American Blind believes that Mr. DiCola has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

25. Caroline Escobar, Google

American Blind believes that Ms. Escobar has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

26. Emily Nichols, Google

American Blind believes that Ms. Nichols has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's

HOWREY
SIMON
ARNOLD &
WHITE, LLP

own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, Google's AdWords Keywords Suggestion feature, the American Blind optimization campaign, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

27. Hema Prashad, Google

American Blind believes that Hema Prashad has knowledge regarding American Blind's ad campaign with Google, the amount of money American Blind pays Google for American Blind's own ad campaign, Google's sale of American Blind's trademarks as Keywords to American Blind's competitors, and the amount of revenue earned by Google by selling American Blind's trademarks as Keywords to American Blind's competitors.

28. A corporate representative of eRank.com

American Blind believes that this corporate representative has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

29. A corporate representative of The Blind Factory

American Blind believes that this corporate representative has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

30. A corporate representative of wallpaperstore.com

American Blind believes that this corporate representative has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors, Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

31. A corporate representative of SelectBlinds.com

American Blind believes that this corporate representative has knowledge regarding Google's sale of American Blind's trademarks as keywords to American Blind's competitors,

-10-

Google's AdWords Keywords Suggestions feature, and the American Blind optimization campaign.

32. A corporate representative of America Online, Inc.

American Blind believes that this corporate representative has knowledge regarding America Online, Inc.'s relationship with Google, the revenues and profits earned by America Online, Inc. from posting Google's "Sponsored Links" in response to searches on its website, America Online, Inc.'s policy regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

33. A corporate representative of Netscape Communications Corp.

American Blind believes that this corporate representative has knowledge regarding Netscape Communications Corp.'s relationship with Google, the revenues and profits earned by Netscape Communications Corp. from posting Google's "Sponsored Links" in response to searches on its website, Netscape Communications Corp.'s policy regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

34. A corporate representative of Compuserve Interactive Services, Inc.

American Blind believes that this corporate representative has knowledge regarding Compuserve Interactive Services, Inc.'s relationship with Google, the revenues and profits earned by Compuserve Interactive Services, Inc. from posting Google's "Sponsored Links" in response to searches on its website, Compuserve Interactive Services, Inc.'s policy regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

35. A corporate representative of Ask Jeeves, Inc.

American Blind believes that this corporate representative has knowledge regarding Ask Jeeves, Inc.'s relationship with Google, the revenues and profits earned by Ask Jeeves, Inc. from posting Google's "Sponsored Links" in response to searches on its website, Ask Jeeves, Inc.'s policy

regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

36. A corporate representative of Earthlink, Inc.

American Blind believes that this corporate representative has knowledge regarding Earthlink, Inc.'s relationship with Google, the revenues and profits earned by Earthlink, Inc. from posting Google's "Sponsored Links" in response to searches on its website, Earthlink, Inc.'s policy regarding the sale of trademarks as Keywords, and damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords as part of Google's AdWords Program.

37. A corporate representative of Overture Services Inc. n/k/a Yahoo! Search Marketing Group ("Overture")

American Blind believes that this corporate representative has knowledge regarding Overture's policy regarding the sale of trademarks as keywords or search terms, the confusion suffered by Internet users that results from the sale of trademarks as keywords or search terms, revenues and profits derived from the sale of keywords and search terms, and the technology used to prevent advertisers from bidding on and/or purchasing the trademarks of others.

**DOCUMENTS**

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure and subject to the General Objections stated above, American Blind identifies the following category of documents that American Blind may use to support its case:

38. Screen prints of the Google search results page showing that American Blind's competitors' advertisements appear in response to searches for American Blind's trademarks.

39. Screen prints of the Google search results page from September 17, 2004 from users performing searches for American Blind's trademarks in San Jose, California and other geographic locations in the United States.

40. Google's past and present printed trademark policies.

41. Documents filed by Google with the Securities and Exchange Commission in connection with and subsequent to Google's initial public offering.

42. Various e-mail and letter communications between American Blind and Google regarding American Blind's advertising campaign.

43. Various e-mail and letter communications between American Blind and Google regarding American Blind's competitors' use of American Blind's trademarks as Keywords.

44. Communications between American Blind and some of American Blind's competitors regarding the competitors' use of American Blind's trademarks as keywords for Google's AdWords Program.

45. Assorted financial data from American Blind to prove the damages suffered by American Blind as a result of Google's sale of American Blind's trademarks as Keywords.

46. Communications between Google and its advertisers illustrating the advertisers' purchase of American Blind's trademarks as Keywords.

47. Overture Services, Inc. n/k/a Yahoo! Search Marketing Group's policy regarding the sale of trademarks as keywords or search terms.

48. The transcript of a 60 Minutes segment aired on January 2, 2005 regarding Google.

49. The Playboy magazine article regarding Google and its founders.

50. Documents evidencing American Blind's rights to the American Blind federally registered and common law trademarks.

51. The Permanent Injunction Order issued by the United States District Court for the Eastern District of Michigan permanently enjoining a competitor from using American Blind's "trademarks, service marks or the word 'American' in any variation or combination with the word "Blinds" either singular or plural...."

52. Documents evidencing the strength of American Blind's federally registered and common law trademarks.

53. Documents evidencing the proximity and/or similarity of the goods sold by American Blind and American Blind's competitors to whom Google sells American Blind's trademarks as keywords.

54. Documents evidencing the similarity between the American Blind trademarks and the keywords sold by Google to American Blind's competitors.

55. Documents evidencing confusion by customers and potential customers as a result of Google's sale of American Blind's federally registered and common law trademarks to American Blind's competitors as keywords.

56. Research and studies indicating that consumers are confused by the sale of trademarks as keywords.

57. Documents evidencing that American Blind and American Blind's competitors to whom Google sells American Blind's federally registered and common law trademarks as keywords are using the same marketing channels.

58. Documents evidencing the type of goods sold by American Blind and the degree of care likely to be exercised by the purchaser of American Blind's goods.

## DAMAGES

American Blind is unable to quantify its damages at this early stage of this litigation. American Blind's damages result from lost Internet traffic, lost sales, and lost visibility because customers and potential customers are diverted to competitors' websites due to Google's illegal sale of American Blind's trademarks to American Blind's competitors. American Blind is also damaged because its brand name is diluted and tarnished, which has resulted in further lost sales. However, much of the information that American Blind (and its expert witnesses) will require for American Blind's damages computation is in Google's possession and has not been produced to American Blind.

Until American Blind obtains discovery from Google, for example, it cannot know how much Internet traffic has been diverted to its competitors' websites by Google's "Sponsored Links" that were triggered by searches for American Blind's trademarks.

**INSURANCE**

American Blind believes that it does not have insurance coverage covering the types of claims asserted in this case.

Dated: April 27, 2005

HOWREY SIMON ARNOLD & WHITE, LLP

By: *[signature]*
ROBERT N. PHILLIPS

David A. Rammelt
Susan J. Greenspon
Dawn M. Beery
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Attorneys for Defendant/Counter-Plaintiff
AMERICAN BLIND AND WALLPAPER FACTORY, INC.

-15-

# PROOF OF SERVICE

I am a citizen of the United States and a resident of the State of California. I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105. On the date set forth below, I served the document(s) described below in the manner described below:

**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26**

<u>**VIA FACSIMILE & U.S. MAIL**</u>
Michael H. Page
Mark A. Lemley
Ravind S. Grewal
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Facsimile: (415) 397-7188

<u>**VIA FACSIMILE & U.S. MAIL**</u>
Stephen E. Taylor
Jan J. Klohonatz
Taylor & Company Law Offices, Inc.
One Ferry Building, Suite 355
San Francisco, CA 94111
Facsimile: (415) 788-8208

**XX**   (BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

_____   (BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

_____   (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

**XX**   (BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

Executed on April 27, 2005, at San Francisco, California

_____         _____
Patricia Cranmer                              (Signature)

HOWREY
SIMON
ARNOLD &
WHITE