**Exhibit B**

CH01/PLATC/210357.1

Dockets.Justia.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AMERICAN BLIND AND WALLPAPER
FACTORY, INC.,

    Plaintiff,

v.

STEVE KATZMAN,

    Defendant.

Case: 2:06-cv-13576
Assigned To: Cohn, Avern
Referral Judge: Pepe, Steven D
Filed: 08-10-2006 At 10:27 AM
cmp AMERICAN BLIND AND WALLPAPER FA
CTORY, INC V. KATZMAN (TAM)

JURY TRIAL DEMANDED

---

SCOTT A. MACGRIFF (P55864)
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3477
Email: smacgriff@dickinsonwright.com

---

## COMPLAINT

    Plaintiff, American Blind and Wallpaper Factory, Inc. ("American Blind"), by and through its undersigned counsel, as and for its complaint against Steve Katzman ("Katzman"), states as follows:

## INTRODUCTION

    1.    This action arises from Katzman's improper and intentional taking, destruction, disclosure, and use of American Blind's personal property and proprietary information following his resignation as American Blind's CEO. By and through these actions, Katzman willfully breached his Employment Agreement with American Blind and violated various statutes designed to prevent conduct such as his. Accordingly, American Blind seeks money damages and a preliminary injunction to compensate it and enjoin Katzman from using American Blind's

proprietary information in the formation of his new company, Nationwide Blinds & Wallpaper Factory, Inc.

## THE PARTIES

2.    American Blind is a Delaware corporation with its principal place of business at 909 North Sheldon Road, Plymouth, Michigan.

3.    American Blind is the largest direct to customer retailer of window treatments and wall coverings in the United States and on the Internet. American Blind, through its predecessor companies, has been in the home decorating business for over a half century.

4.    On information and belief, Steve Katzman is a Michigan citizen and resident who resides at 6531 Pembridge Hill, West Bloomfield, Michigan.

## JURISDICTION AND VENUE

5.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action raises questions under federal law. This Court has supplemental jurisdiction over American Blind's state law claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Katzman is a resident of this judicial district and because the acts and omissions giving underlying this action occurred substantially in this judicial district.

## FACTS COMMON TO ALL COUNTS

7.    In 1998, Katzman became American Blind's Chief Executive Officer.

8.    On June 5, 2000, American Blind and Katzman entered into an Amended and Restated Employment Agreement, under which Katzman was to serve as CEO for an additional three years (the "Employment Agreement"). (A copy of the Employment Agreement is annexed

as Exhibit A to the Affidavit of Joel Levine, dated August 9, 2006 and filed in support of American Blind's Motion for a Temporary Restraining Order and Preliminary Injunction.)

9.    Paragraph 11(a) of the Employment Agreement contains a provision forbidding Katzman to use American Blind proprietary information for his own personal benefit or for the benefit of anyone other than American Blind without American Blind's consent following termination of Katzman's employment at American Blind, and forbidding him to do so while employed at American Blind absent his good-faith belief that doing so is necessary or desirable to fulfill his duties as CEO.

10.    Paragraph 11(b) of the Employment Agreement contains a provision forbidding Katzman to retain any confidential American Blind records upon his termination from American Blind, and requiring him to promptly return to American Blind such records upon his termination.

11.    On September 18, 2003, American Blind and Katzman renewed the Employment Agreement and extended the term of his tenure as CEO through December 31, 2005.

12.    Beginning on January 1, 2006, pursuant to agreement with American Blind, Katzman continued to serve as American Blind's CEO on a month-to-month basis, receiving the same salary and benefits as set forth in the Employment Agreement.

13.    On February 14, 2006, Katzman executed an Employee Hardware Loan Agreement with American Blind, which obligated Katzman to return, upon his departure from American Blind, the company laptop computer and related accessories that American Blind furnished for him, among other things (the "Hardware Agreement").

14.    At approximately 4:30 p.m. on May 18, 2006, Katzman and American Blind's CFO Gerald Curran participated in a telephone conference from Katzman's office at American

Blind. At this time, various property of American Blind, including files, documents, records, electronic data, computer files, and other proprietary information was located in Katzman's office and on the two desktop computers also located in his office (the "Company Property").

15.    Later that evening on May 18, 2006, Katzman voluntarily resigned from American Blind.

16.    At approximately 8:00 a.m. on the morning of May 19, 2006, Joel Levine, who was chosen to replace Katzman as CEO, entered Katzman's former office at American Blind and discovered that the Company Property that was present only the day before was missing from Katzman's office.

17.    On or about May 19, 2006, Greg Rupprecht, American Blind's Vice President of Technical Operations, inspected the two desktop computers that were in Katzman's office at American Blind and discovered that all electronic files (emails and documents) had been erased from those computers.

18.    On information and belief, Katzman erased the contents of the American Blind desktop computers in order to conceal his wrongful conduct, including, but not necessarily limited to, retaining American Blind proprietary information following his departure from American Blind; using American Blind proprietary information to start a competing business; and destroying American Blind files, data, and other proprietary information.

19.    On May 19, 2006, American Blind demanded that Katzman return the Company Property by 5:00 p.m. on May 22, 2006.

20.    On or about May 19, 2006, Katzman's access to the American Blind's Virtual Private Computer Network ("VPN") was discontinued.

21.     On May 19, 2006, American Blind learned that Katzman had been communicating with certain vendors and creditors of American Blind, including, but not limited to, First Data, Woodland Blinds, and Prestige Manufacturing, following Katzman's resignation. On information and belief, American Blind believes that Katzman falsely indicated or implied that American Blind was in financial distress.

22.     On May 19, 2006, American Blind was also advised that following Katzman's communication with First Data, an entity who processed American Blind's credit card, that First Data had put a "hold" on $750,000 of American Blind's credit, leaving American Blind with a cash shortfall and forcing it to secure a loan in that amount at an unfavorable interest rate.

23.     On June 5, 2006, Katzman informed counsel for American Blind that he was going to return a disk to American Blind containing 4,368 company-related e-mails. Katzman also informed American Blind's counsel that he was forwarding to his personal attorney a copy of the disk for safekeeping, "in the event a dispute arises where [sic] the integrity of the information becomes important."

24.     Katzman further stated in his June 5, 2006 correspondence that he was in the process of reviewing over 15,000 electronic files and documents he had taken from American Blind so that he could remove any "personal" items before sending them to American Blind.

25.     Katzman also stated in his June 5, 2006 correspondence that as soon as he completed his review of the files and documents, he would forward to American Blind a disk containing all corporate records that he had archived.

26.     On or about June 12, 2006, Irma Kline, American Blind's Vice President of Human Resources, resigned from American Blind.

-5-

27.    On June 12, 2006, American Blind received a disk from Katzman, which purportedly contained all of the company-related emails.

28.    By email dated June 12, 2006, Katzman advised counsel for American Blind that he was still working to assemble the electronic files and documents demanded by American Blind, and that he intended to send the remaining files in his possession that week. Katzman acknowledged in this email that he was required, pursuant to paragraph 11(b) of the Employment Agreement, to return to American Blind all documents and records in his possession containing proprietary information.

29.    Katzman also stated in his June 12, 2006 email that he would maintain the integrity of the American Blind proprietary information in his possession, and that he intended to comply with the nondisclosure requirements set forth in paragraph 11(a) of the Employment Agreement.

30.    By email on June 14, 2006, Katzman advised counsel for American Blind that he was returning all company emails and documents that were archived on his home computer. Katzman further stated that he had already provided a copy of all such files to his attorney for safekeeping, "in the event a dispute arises where the integrity of the information becomes important." Katzman also stated that he would not personally retain a copy of these files, and that neither he nor anyone acting on his behalf would access information contained in those files for any purpose forbidden by the Employment Agreement.

31.    On June 21, 2006, counsel for American Blind received a disk from Katzman purportedly containing American Blind's electronic files and documents.

32.    Also on June 21, 2006, counsel for American Blind demanded that Katzman return the American Blind company laptop computer and related accessories, which Katzman

was required to return under the Hardware Agreement. American Blind's counsel demanded the return of the computer by 5:00 p.m. on June 22, 2006.

33.     Thereafter, Katzman returned his laptop computer to American Blind.

34.     Following its return, Greg Ruppert inspected the returned laptop and discovered that the entire contents of the laptop    including all electronic data, documents, and files – had been erased from it.

35.     On information and belief, Katzman erased the contents of the American Blind laptop computer in order to conceal his wrongful conduct, including, but not necessarily limited to, retaining American Blind proprietary information following his departure from American Blind; using American Blind proprietary information to start a competing business; and destroying American Blind files, data, and other proprietary information.

36.     On July 17, 2006, Katzman sent an email message to the American Blind email address of Irma Kline attaching a spreadsheet containing detailed information about American Blinds' competitors, which spreadsheet had been developed by and belonged to American Blind (the "Competitive Matrix"), and requesting that Kline add additional information to the Competitive Matrix.

37.     On information and belief, both prior to and after his July 17 email addressed to Kline, Katzman was using the Competitive Matrix to aid in his development of a new business, called Nationwide Blinds & Wallpaper Factory, Inc. ("Nationwide"), which would compete with American Blind.

38.     On July 21, 2006, Katzman sent another email message to Kline's American Blind email address, attaching a red-lined version of American Blind's employee handbook (the "Employee Handbook") which contained numerous edits to the handbook.

39.     Based on the edits made to the Employee Handbook, it is clear that both prior and subsequent to his July 21 email addressed to Kline, Katzman was using the Employee Handbook to aid in his development of Nationwide.

40.     On July 21, 2006, Katzman again forwarded the Competitive Matrix to Kline's American Blind email address.

41.     Thereafter, American Blind immediately conducted a thorough search of its computer systems and discovered that 22 attempts – all unsuccessful – had been made since Katzman's resignation to log on to American Blind's Virtual Private Network (VPN) from Katzman's IP address using Katzman's, Kline's, and Rupprecht's passwords.

42.     Upon learning of the repeated attempts made by Katzman to log on to American Blind's VPN, American Blind personnel spent many hours evaluating American Blind's network and having each and every American Blind employee go through the process of changing his or her passwords.

43.     On information and belief, Katzman is presently utilizing American Blind confidential and proprietary information and property in connection with his efforts to start and operate Nationwide.

## FIRST CAUSE OF ACTION
## VIOLATION OF 18 U.S.C. § 1030(a)(4)

44.     American Blind realleges and hereby incorporates paragraphs 1 through 43 of this Complaint above, as fully as if set forth here verbatim.

45.     The computers Katzman accessed in connection with his efforts to obtain American Blind confidential and proprietary information, including, but not necessarily limited to, computers owned by American Blind, are "protected computers" as defined by 18 U.S.C. § 1030(e)(2) because they are used in interstate and foreign commerce and communication.

46.     Katzman accessed those computers without authorization from American Blind or in excess of any authorization granted to him by American Blind.

47.     Katzman accessed those computers knowingly and with the intent to defraud American Blind.

48.     As a result of Katzman's unauthorized access, or access in excess of authorization, to those computers, Katzman furthered his intended fraud and obtained valuable American Blind confidential and proprietary information, including, but not necessarily limited to, the Competitive Matrix and the Employee Handbook.

49.     American Blind has been damaged as a direct result of Katzman's conduct in excess of $5,000.00, and the value of the confidential and proprietary information wrongfully obtained by Katzman exceeds $5,000.00.

## SECOND CAUSE OF ACTION
## VIOLATION OF 18 U.S.C. § 1030(a)(5)

50.     American Blind realleges and hereby incorporates paragraphs 1 through 49 of this Complaint above, as fully as if set forth here verbatim.

51.     The computers Katzman accessed in connection with his efforts to obtain American Blind confidential and proprietary information, including, but not necessarily limited to, computers owned by American Blind, are "protected computers" as defined by 18 U.S.C. § 1030(e)(2) because they are used in interstate and foreign commerce and communication.

52.     On information and belief, Katzman knowingly used a program to erase the entire contents of those computers.

53.     On information and belief, Katzman knowingly caused the transmission of a program, information, code, or command to those computers which caused damage to those computers in an amount exceeding $5,000.00.

## THIRD CAUSE OF ACTION
## VIOLATION OF 18 U.S.C. § 2701

54.    American Blind realleges and hereby incorporates paragraphs 1 through 53 of this Complaint above, as fully as if set forth here verbatim.

55.    Each of American Blind's computer is a "facility through which an electronic communication service is provided", pursuant to 18 U.S.C. § 2701(a)(1).

56.    On information and belief, Katzman repeatedly knowingly and intentionally accessed the American Blind computer's without authorization.

57.    On information and belief, Katzman repeatedly knowingly and intentionally accessed the American Blind Network in excess of his authorization.

58.    Through his unauthorized access, and through his access in excess of authorization, Katzman obtained or altered electronic communications while they were in electronic storage in the American Blind Network.

59.    American Blind has been damaged as a direct result of Katzman's conduct.

## FOURTH CAUSE OF ACTION
## VIOLATION OF M.C.L. § 445.1901 *ET SEO.*

60.    American Blind realleges and hereby incorporates paragraphs 1 through 59 of this Complaint above, as fully as if set forth here verbatim.

61.    The Competitive Matrix and the Employee Handbook are independently economically valuable to American Blind because they are not readily available through proper means to anyone other than American Blind who could obtain economic value through their disclosure or use, and because they are the subject of reasonable efforts by American Blind to maintain their secrecy.

-10-

62.    The Competitive Matrix and the Employee Handbook are trade secrets as defined by M.C.L. § 445.1902(d).

63.    Following termination of his employment at American Blind, Katzman acquired the Competitive Matrix and the Employee Handbook by improper means.

64.    Katzman knew, or had reason to know, that he was not authorized to acquire the Competitive Matrix or the Employee Handbook following termination of his employment at American Blind.

65.    Katzman knew, or had reason to know, that he used improper means in acquiring the Competitive Matrix and the Employee Handbook following termination of his employment at American Blind.

66.    American Blind has been damaged as a direct result of Katzman's conduct.

### FIFTH CAUSE OF ACTION
### VIOLATION OF M.C.L. § 445.1901 ET SEQ.

67.    American Blind realleges and hereby incorporates paragraphs 1 through 66 of this Complaint above, as fully as if set forth here verbatim.

68.    The Competitive Matrix and the Employee Handbook are independently, economically valuable to American Blind because they are not readily available through proper means to anyone other than American Blind who could obtain economic value through their disclosure or use, and because they are the subject of reasonable efforts by American Blind to maintain their secrecy.

69.    The Competitive Matrix and the Employee Handbook are trade secrets as defined by M.C.L. § 445.1902(d).

70.    Katzman acquired the Competitive Matrix and the Employee Handbook by improper means.

71. Katzman used and disclosed the contents of the Competitive Matrix and the Employee Handbook without American Blind's consent, to American Blind's detriment, and for Katzman's own commercial advantage.

72. Katzman's use and disclosure of the contents of the Competitive Matrix and the Employee Handbook occurred with Katzman's full knowledge that he had acquired the Competitive Matrix and the Employee Handbook through improper means.

73. Katzman's use and disclosure of the contents of the Competitive Matrix and the Employee Handbook occurred with Katzman's full knowledge that he had a duty to keep the contents of the Competitive Matrix and the Employee Handbook secret.

74. American Blind has been damaged as a direct result of Katzman's conduct.

**SIXTH CAUSE OF ACTION**
**CONVERSION**

75. American Blind realleges and hereby incorporates paragraphs 1 through 74 of this Complaint above, as fully as if set forth here verbatim.

76. The Employment Agreement and the Competitive Matrix are the personal property of American Blind.

77. Katzman improperly, without American Blind's consent, and wrongfully acquired the Employment Agreement and the Competitive Matrix from American Blind and utilized them following termination of his employment at American Blind.

78. On information and belief, Katzman improperly, without American Blind's consent, and wrongfully acquired additional personal property of American Blind and utilized such property following termination of his employment at American Blind.

79. Katzman wrongfully exerted distinct acts of dominion over the Competitive Matrix and the Employee Handbook.

80.    On information and belief, Katzman wrongfully exerted distinct acts of dominion over additional personal property of American Blind.

81.    American Blind has been damaged as a direct result of Katzman's conduct.

## SEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

82.    American Blind realleges and hereby incorporates paragraphs 1 through 81 of this Complaint above, as fully as if set forth here verbatim.

83.    American Blind had ongoing business relationships and expectancies with its customers, vendors, and creditors, including, but not limited to, First Data.

84.    Katzman had knowledge of American Blind's business relationships and expectancies with its customers, vendors, and creditors, including, but not limited to, First Data.

85.    Katzman intentionally, with malice, without justification, and wrongfully interfered with American Blind's business relationships and expectancies with its customers, vendors, and creditors, including, but not limited to, First Data, by, *inter alia*, falsely implying to them that American Blind was in financial distress.

86.    As a direct result of Katzman's interference, American Blind's business relationships and expectancies with its customers, vendors, and creditors, including, but not limited to, First Data, were breached or terminated.

87.    American Blind has been damaged as a direct result of Katzman's conduct.

## EIGHTH CAUSE OF ACTION
## BREACH OF PARAGRAPH 11(a) OF THE EMPLOYMENT AGREEMENT

88.    American Blind realleges and hereby incorporates paragraphs 1 through 87 of this Complaint above, as fully as if set forth here verbatim.

89.    American Blind and Katzman were competent to enter into the Employment Agreement.

90.    The Employment Agreement consists of proper subject matter for a contract.

91.    The Employment Agreement provided for legal consideration to both American Blind and Katzman.

92.    American Blind and Katzman both agreed to supply the consideration as stated in the Employment Agreement.

93.    American Blind and Katzman were obligated to perform as stated in the Employment Agreement.

94.    The Employment Agreement constituted a valid contract between American Blind, on the one hand, and Katzman, on the other hand.

95.    Katzman breached paragraph 11(a) of the Employment Agreement by using American Blind proprietary information for his own benefit and for the benefit of Nationwide without American Blind's consent following termination of Katzman's employment at American Blind.

96.    Katzman breached paragraph 11(a) of the Employment Agreement by using American Blind proprietary information for his own benefit and for the benefit of Nationwide while still employed at American Blind.

97.    American Blind has been damaged as a direct result of Katzman's breach of the Employment Agreement.

## NINTH CAUSE OF ACTION
## BREACH OF PARAGRAPH 11(b) OF THE EMPLOYMENT AGREEMENT

98.    American Blind realleges and hereby incorporates paragraphs 1 through 97 of this Complaint above, as fully as if set forth here verbatim.

-14-

99.    American Blind and Katzman were competent to enter into the Employment Agreement.

100.    The Employment Agreement consists of proper subject matter for a contract.

101.    The Employment Agreement provided for legal consideration to both American Blind and Katzman.

102.    American Blind and Katzman both agreed to supply the consideration as stated in the Employment Agreement.

103.    American Blind and Katzman were obligated to perform as stated in the Employment Agreement.

104.    The Employment Agreement constituted a valid contract between American Blind, on the one hand, and Katzman, on the other hand

105.    Katzman breached paragraph 11(b) of the Employment Agreement by retaining confidential American Blind records upon termination of his employment at American Blind.

106.    Katzman breached paragraph 11(b) of the Employment Agreement by failing to promptly return confidential American Blind records upon termination of his employment at American Blind.

107.    American Blind has been damaged as a direct result of Katzman's breach of the Employment Agreement.

### TENTH CAUSE OF ACTION
### SEEKING INJUNCTIVE RELIEF

108.    American Blind realleges and hereby incorporates paragraphs 1 through 107 of this Complaint above, as fully as if set forth here verbatim.

109.    American Blind has a clear and ascertainable interest in protecting its business and its goodwill among its vendors, customers, distributors, and creditors.

-15-

110.    No remedy at law can properly protect or compensate American Blind for the damages that will be caused by Katzman's wrongful use of American Blind's confidential and proprietary information.

111.    If an injunction is not issued, Katzman will cause irreparable harm to American Blind's business.

112.    American Blind is likely to prevail at trial on the merits of its claims against Katzman.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, American Blind, demands judgment as follows:

(A)    That on American Blind's First Cause of Action, Katzman be adjudged to have violated 18 U.S.C. § 1030(a)(4), and that American Blind recover damages from Katzman in an amount to be determined at trial;

(B)    That on American Blind's Second Cause of Action, Katzman be adjudged to have violated 18 U.S.C. § 1030(a)(5), and that American Blind recover damages from Katzman in an amount to be determined at trial;

(C)    That on American Blind's Third Cause of Action, Katzman be adjudged to have violated 18 U.S.C. § 2701, and that, pursuant to 18 U.S.C. § 2707, American Blind recover damages from Katzman in an amount to be determined at trial, and that American Blind recover from Katzman the amount of its attorneys' fees incurred in bringing this action;

(D)    That on American Blind's Fourth Cause of Action, Katzman be adjudged to have violated M.C.L. § 445.1901, and that American Blind recover damages from Katzman in an amount to be determined at trial, and that American Blind obtain injunctive relief as set forth below in paragraph (J);

(E)    That on American Blind's Fifth Cause of Action, Katzman be adjudged to have violated M.C.L. § 445.1901, and that American Blind recover damages from Katzman in an amount to be determined at trial, and that American Blind obtain injunctive relief as set forth below in paragraph (J);

(F)    That on American Blind's Sixth Cause of Action, Katzman be adjudged to have committed conversion, and that American Blind recover damages from Katzman in an amount to be determined at trial;

(G)    That on American Blind's Seventh Cause of Action, Katzman be adjudged to have tortiously interfered with American Blind's business expectancy, and that American Blind recover damages from Katzman in an amount to be determined at trial;

(H)    That on American Blind's Eighth Cause of Action, Katzman be adjudged to have breached Paragraph 11(a) of the Employment Agreement, and that American Blind recover damages from Katzman in an amount to be determined at trial;

(I)    That on American Blind's Ninth Cause of Action, Katzman be adjudged to have breached Paragraph 11(b) of the Employment Agreement, and that American Blind recover damages from Katzman in an amount to be determined at trial;

(J)    That on American Blind's Tenth Cause of Action, this Court grant injunctive relief in the form of an order prohibiting Katzman and any persons or entities acting on behalf of, or at the request of, Katzman, including, but not limited to Nationwide Blinds & Wallpaper Factory, Inc., from using any of American Blind's confidential and proprietary information, including, but not necessarily limited to, the Competitive Matrix and the Employee Handbook, for any purpose, and an order requiring Katzman to return all of American Blind's proprietary, confidential and personal property immediately, including but not limited to an external hard

drive and all information thereon; and

(K)    That this Court grant such other, further, and different relief to American Blind,

including costs and reasonable attorney fees, that this Court deems just and proper.

DICKINSON WRIGHT RLLC

BY:

SCOTT A. MACGRIFF (P55864)
Attorneys for Plaintiff
500 Woodward Avenue
Suite 4000
Detroit, MI 48226
(313) 223-3477
Email: smacgriff@dickinsonwright.com

Date:   August  10, 2006

DETROIT 24336-8 950056v1

-18-

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

AMERICAN BLIND AND WALLPAPER FACTORY, INC.

(b) County of Residence of First Listed Plaintiff    WAYNE
(EXCEPT IN U.S. PLAINTIFF CASES)

26163

(c) Attorney's (Firm Name, Address, and Telephone Number)

Scott A. MacGriff (P55864)
500 Woodward Avenue, Suite 4000
Detroit, MI 48226    313/223-3427

## DEFENDANTS

STEVE KATZMAN

County of Residence of First Listed Defendant    OAKLAND
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

Citizen of This St
Citizen of Anothe
Citizen or Subjec
Foreign Coun

Case: 2:06-cv-13576
Assigned To: Cohn, Avern
Referral Judge: Pepe, Steven D
Filed: 08-10-2006 At 10:27 AM
cmp AMERICAN BLIND AND WALLPAPER FA
CTORY, INC V. KATZMAN (TAM)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. §1030, 18 U.S.C. §2701
Brief description of cause: Violation of Computer Abuse and Fraud Act, violation of Stored Wire and Electronic Communications Act, state law claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                    DOCKET NUMBER

DATE    8-10-2006

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.    Is this a case that has been previously dismissed?          ☐ Yes
                                                                  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.    Other than stated above, are there any pending or previously          ☐ Yes
      discontinued or dismissed companion cases in this or any other         ☒ No
      court, including state court? (Companion cases are matters in which
      it appears substantially similar evidence will be offered or the same
      or related parties are present and the cases arise out of the same
      transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :