# Exhibit L

CH01/PLATC/210357.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GOOGLE, INC., a Delaware corporation,

        Plaintiff,

vs.                Case No. C 03-5340-JF

AMERICAN BLIND & WALLPAPER
FACTORY, INC., a Delaware corporation
d/b/a decoratetoday.com, Inc., and
DOES 1 - 100, inclusive,

        Defendants.
_____/

AMERICAN BLIND & WALLPAPER
FACTORY, INC., a Delaware corporation
d/b/a decoratetoday.com, Inc.,

        Counter-Plaintiff,

  vs.

GOOGLE, INC.,

        Counter-Defendant.
_____/

        The video deposition of STEVEN B.
KATZMAN, taken pursuant to the Rules of the State of
California, before Lana Kia Haws, CRR, CM, RPR,
CSR-0995, a Notary Public in and for the County of
Oakland, State of Michigan, at 280 N. Old Woodward,
Suite 400, Birmingham, Michigan, on July 25, 2006,
commencing at or about the hour of 10:00 a.m.

APPEARANCES:
    Keker & Van Nest, LLP
    BY: MR. KLAUS H. HAMM
    710 Sansome Street
    San Francisco, CA 94111-1704
    (415) 391-5400
        Appearing on behalf of the Plaintiff.

    Kelley Drye & Warren, LLP
    BY: MR. PAUL W. GARRITY
    101 Park Avenue
    New York, New York 10178
    (212) 808-7613

Page 2

```
 1   APPEARANCES CONTINUED:
 2       Kelley Drye & Warren, LLP
         BY: MS. SUSAN J. GREENSPON
 3       333 West Wacker Drive
         Chicago, Illinois 60606
 4       (312) 857-7080
             Appearing on behalf of the Defendant.
 5
         Kienbaum Opperwall Hardy & Pelton, P.L.C.
 6       BY: MR. THOMAS G. KIENBAUM
         280 North Old Woodward Avenue, Suite 400
 7       Birmingham, Michigan 48009-5394
         (248) 645-0000
 8
 9           Appearing on behalf of Steven B. Katzman.
10   ALSO PRESENT: Jody C. Chapa, Chapa Legal Video
11
12
...
25
```

Page 3

```
     EXAMINATION INDEX

     Page  Line     Keyword = EXM.

      5    14    CROSS-EXM. BY MR. HAMM

     Page  Line     Keyword = mark'd
      22    15    Deposition Exhibit 1 mark'd
      31     7    Deposition Exhibit 2 mark'd
      90    21    Deposition Exhibit 3 mark'd
     105    17    Deposition Exhibit 4 mark'd
     122     3    Deposition Exhibit 5 mark'd
     131    24    Deposition Exhibit 6 mark'd
     138    25    Deposition Exhibit 7 mark'd
     146    19    Deposition Exhibit 8 mark'd
     165    20    Deposition Exhibit 9 mark'd
     167     5    Deposition Exhibit 10 mark'd
     170    22    Deposition Exhibit 11 mark'd
     178    21    Deposition Exhibit 12 mark'd
     187     1    Deposition Exhibit 13 mark'd
     189     4    Deposition Exhibit 14 mark'd
     201    18    Deposition Exhibit 15 mark'd
     206     9    Deposition Exhibit 16 mark'd
```

Page 4

```
 1          (The deposition commenced
 2   at about 10:15 a.m.)
 3
 4
 5          THE VIDEOGRAPHER: We are on the record.
 6   The time is 10:14:18 a.m.
 7          This is the videotaped deposition of
 8   Mr. Steven B. Katzman taken in the case of Google,
 9   Incorporated, versus American Blind and Wallpaper
10   Factory.
11          Today's deposition is held as 280 North
12   Old Woodward, Suite 400, Birmingham, Michigan.
13          Today's date is July 25, 2006.
14          My name is Jody C. Chapa, C.L.V.S.
15          Today's court reporter is Lana Haws,
16   C.S.R.
17          Please swear the witness.
18          THE REPORTER: Sir, would you raise your
19   right hand, please?
20          Do you solemnly swear or affirm that the
21   testimony you are about to give will be the truth, the
22   whole truth, and nothing but the truth so help you God?
23          THE WITNESS: I do.
24          THE VIDEOGRAPHER: Thank you. Counsel,
25   please state your appearances for the record.
```

Page 5

```
 1          MR. HAMM: Klaus Hamm of Keker and Van
 2   Nest for plaintiff, Google, Inc.
 3          MR. GARRITY: Paul Garrity of Kelly,
 4   Drye and Warren for defendant, American Blind and
 5   Wallpaper Factory.
 6          MS. GREENSPON: Susan Greenspon of
 7   Kelley, Drye and Warren for defendant, American Blind
 8   and Wallpaper Factory.
 9          MR. KIENBAUM: Thomas Kienbaum
10   representing the deponent, Steve Katzman.
11
12
13          CROSS-EXAMINATION
14   EXM. BY MR. HAMM:
15     Q. Good morning, Mr. Katzman.
16     A. Good morning.
17     Q. Have you been deposed before?
18     A. I have.
19     Q. When was that?
20     A. You know, I was deposed in a anti-trust
21   litigation probably 13, 14 years ago.
22     Q. And have you been deposed other than that
23   occasion?
24     A. Not that I recall.
25     Q. Did the anti-trust litigation involve trademark
```

Page 66

```
 1   going to be compensated in return for making himself
 2   available on a reasonable basis, and this is certainly
 3   part of the making available on a reasonable basis.
 4       Q. (BY MR. HAMM) Do you intend to appear at trial
 5   in this matter?
 6       A. I can't answer that.
 7       Q. Why not?
 8       A. I don't know. It depends on the circumstances,
 9   I suppose.
10       Q. Have you discussed appearing at trial in this
11   matter with counsel for American Blind or with American
12   Blind?
13       A. I have not.
14       Q. What circumstances would induce you to or --
15   induce is the wrong word. I don't mean to load the
16   question.
17           What circumstances would lead you to
18   appear at trial in this matter?
19           MR. KIENBAUM: Under my advice, I suspect
20   but beyond that, if you want to add to that --
21           THE WITNESS: I was implying that, not
22   knowing where the world is gonna be then, I can't answer
23   that question.
24           I suppose I would seek advice from my
25   counsel on that issue.
```

Page 67

```
 1       Q. (BY MR. HAMM) Okay. Since your resignation
 2   from American Blinds, have you had any communication
 3   with counsel for American Blinds?
 4       A. Yes.
 5       Q. When?
 6       A. I received some correspondences.
 7       Q. From whom?
 8       A. From Susan Greenspon.
 9       Q. Anybody else? From anybody else that
10   represents American Blind?
11       A. I don't believe so, no.
12       Q. Okay. From Mr. Garrity?
13       A. No.
14       Q. How about from David Rammelt?
15       A. No.
16       Q. What kind of -- in what form were the
17   communications that you received from Susan Greenspon
18   since May 18th?
19       A. Letters.
20       Q. Any e-mails?
21       A. There might have been an exchange of e-mails.
22   I'm not sure.
23       Q. Any phone calls?
24       A. There were a couple.
25       Q. Any face-to-face discussion, aside from
```

Page 68

```
 1   anything that you -- aside from today?
 2       A. No.
 3       Q. How many letters did you receive from
 4   Ms. Greenspon?
 5       A. I believe maybe two or three.
 6       Q. Okay. Were they personal letters?
 7       A. No.
 8       Q. Did they refer to this lawsuit?
 9       A. No.
10       Q. Okay.
11           MR. KIENBAUM: I think that, again, is
12   the question, whether the cooperation agreement
13   specifically mentions this litigation.
14           I have to tell you, I don't recall right
15   now either whether it does.
16           MR. HAMM: Well, I'm actually asking
17   about communications that Mr. Katzman had with
18   Ms. Greenspon, aside from the cooperation agreement,
19   about this lawsuit.
20           MR. GARRITY: So the question would
21   be, outside of correspondence as it related to the
22   cooperation agreement, was there any other
23   correspondence?
24           MR. KIENBAUM: So that would
25   cover yesterday as well.
```

Page 69

```
 1           THE WITNESS: Okay.
 2       Q. (BY MR. HAMM) Taking Mr. Garrity's question,
 3   what is your answer?
 4       A. Yes.
 5       Q. Okay.
 6           MR. GARRITY: That's a good one.
 7           THE WITNESS: I have received
 8   correspondences to return corporate records and, you
 9   know, laptop computer, things along those lines.
10       Q. (BY MR. HAMM) Have you discussed the
11   substance of this litigation in any communications to
12   or Ms. Greenspon since May 18th?
13       A. No.
14       Q. Did you meet with Ms. Greenspon yesterday?
15       A. Briefly.
16       Q. What did you discuss when you met with
17   Ms. Greenspon yesterday?
18           MR. KIENBAUM: Let me just interject that
19   I am not up to your discussions about the privilege, but
20   that I am a little concerned about whether or not the
21   privilege is implicated when you have a former executive
22   being deposed in that capacity; and simply by virtue of
23   the fact that I have been retained to represent him in
24   connection with this deposition, I don't think would
25   destroy any privileged nature; but I will leave that to
```

Page 70

1  others to address. You know, I just am concerned that
2  my client not be disclosing anything privileged.
3       And, obviously, I was there and my
4  discussions would be privileged.
5       MR. GARRITY: And it would be the
6  company's position that our continuing conversation with
7  this witness in his capacity as testifying as a former
8  executive of the company would be subject to privilege.
9  I don't want to make a mountain out of a molehill.
10      So, to the extent to which you would like
11 to ask the witness generally the topics of the
12 conversation, we wouldn't -- we are not gonna object to
13 that; but, beyond that, we would not be waiving any
14 privilege that we would be asserting as it relates to
15 those communications.
16      MR. HAMM: And it's Google's position
17 that any communications that Mr. Katzman had with
18 American Blind's counsel after leaving American Blind
19 would not be protected by the privilege.
20      In the spirit of not making a mountain
21 out of a molehill, some of my questions are just
22 designed to determine whether or not there were
23 substantive communications.
24      MR. GARRITY: Understood, and I think we
25 are very much speaking the same language here.

Page 71

1       I understand that we take divergent
2  positions as it relates to whether privilege attaches to
3  the communications with Mr. Katzman but I think rather
4  than get things -- rather than wrap things up at this
5  point, maybe what we could do is if there are a series
6  of questions you would like to ask the witness, you can
7  go ahead and do so; and, you know, we'll take that step
8  by step.
9       To the extent to which we get to an issue
10 of privilege, then we will go there; but I think in the
11 interest of cooperating and getting through this
12 examination, I don't think that we really should have
13 much of a problem; but I will let you go ahead.
14      THE WITNESS: I swallowed the wrong way.
15      MR. HAMM: Would you like to go off the
16 record?
17      THE WITNESS: Yes, please.
18      THE VIDEOGRAPHER: Off the record
19 12:11:07 p.m.
20      (Recess taken.)
21      THE VIDEOGRAPHER: Back on the record.
22 This is tape 2 of the deposition of Mr. Stephen Katzman.
23      The time is 12:17:51 p.m.
24      Q. (BY MR. HAMM) Before we took a break, we were
25 discussing communications you had with Ms. Greenspon

Page 72

1  after you left American Blind on May 18th; and I just
2  want to, first of all, to inform you that you should
3  preserve those communications in case this becomes an
4  issue later on in this litigation and Google requests
5  copies of them.
6       So, to take whatever steps you need to do
7  to make sure that they are not destroyed to the extent
8  that they're in writing.
9       Second, I just want to clarify.
10      Did you have any substantive
11 communications with Ms. Greenspon after May 18th,
12 regarding this lawsuit?
13     A. No.
14     Q. Were those communications limited to simply
15 scheduling matters and the like?
16     A. With respect to this lawsuit?
17     Q. Yes.
18     A. Yes.
19     Q. You never discussed your testimony today?
20     A. No.
21     Q. And did Ms. Greenspon ever discuss American
22 Blinds' strategy with you for the lawsuit after
23 May 18th?
24     A. No.
25     Q. Did Ms. Greenspon participate in your

Page 73

1  preparation for this deposition at all?
2       A. No.
3       Q. I saw you hesitate when you answered. Why did
4  you hesitate?
5       MR. KIENBAUM: Let me suggest one thing,
6  Steve.
7       You are gonna have to cut apart the
8  discussions you and I had, because there is no argument
9  that those are privileged. They are privileged.
10      THE WITNESS: Right.
11      MR. KIENBAUM: So I think now, if you can
12 separate those to the best of your ability.
13      To the extent we were sitting here
14 yesterday, I think that's what the question is directed
15 at.
16      MR. HAMM: And just to make sure that we
17 are clear, if you were in the room with your attorney
18 and with Ms. Greenspon, then I am asking about those
19 questions -- those conversations.
20      MR. KIENBAUM: Subject to the --
21      MR. GARRITY: Exactly. We were all
22 talking at the same time.
23      Q. (BY MR. HAMM) So, yesterday, did you have a
24 conversation with your attorney and with Ms. Greenspon?
25      A. Yes, we had a brief conversation.

19 (Pages 70 to 73)

U.S. Legal Support

f7af98d4-b844-484f-8032-6e84695913e7

Page 74

1  Q. Was Mr. Garrity there as well?
2  A. Yes.
3  Q. During that conversation, did you discuss the
4  substance of this lawsuit?
5  A. What do you mean by the substance?
6  Q. Did you discuss this lawsuit?
7  A. We reviewed some documents.
8  Q. Were these documents documents that American
9  Blind had produced to Google in this litigation?
10  A. Yes.
11  Q. Did you discuss those documents? I'm sorry.
12  Yeah. Did you discuss those documents?
13  A. I reviewed the documents.
14  Q. During your review of the documents, did
15  Ms. Greenspon say anything about those documents?
16  A. You know, it was a very brief time that we were
17  all in the room together; and the document that I
18  reviewed, I believe, was a verification, something that
19  I had signed as part of this litigation that I should be
20  familiar with, since it was something that endorsed. I
21  reviewed that document and that was pretty much it.
22  Q. Can you be more specific about what document
23  that was?
24  A. It was one of the, I believe, one of the
25  interrogatories, sets of interrogatories that were early

Page 75

1  on. It was suggested to refresh my recollection.
2  Q. Did you review any other documents with
3  Ms. Greenspon or Mr. Garrity yesterday?
4  A. No, no.
5  Q. Did Ms. Greenspon or Mr. Garrity say anything
6  about the verification that you reviewed yesterday with
7  them?
8  A. No. Again, I didn't review it with them. It
9  was brought to my attention that I should be familiar
10  with it.
11  Q. Okay. Did any lay-offs take place at American
12  Blind in American Blind's upper management between
13  October, 2004 and your departure?
14  A. We had a series of what we would characterize
15  as reduction in workforces, yes.
16  Q. Did the reductions in workforce involve upper
17  management?
18  A. Yes.
19  Q. How many reductions in workforce did you have?
20  A. Over a two-year period of time -- specifically
21  upper management or in general?
22  Q. No, in general.
23  A. Over a two to three-year period of time, I
24  would say close to 250 to 300 people.
25  Q. And how many people from upper management in

Page 76

1  that two-year period of time?
2  A. We had a Chief Operating Officer. That
3  position was eliminated. The controller position,
4  vice-president of telecommunications, vice-president of
5  sales, vice-president of customer service, controller.
6  I don't believe I said that. So that's seven.
7  I would say approximately seven to ten
8  people that you would consider senior management.
9  Q. And, in each case, was the position eliminated?
10  A. Either eliminated or consolidated.
11  Q. So, in each case, when somebody -- when a
12  person was laid off, I take it they were not replaced
13  with somebody else?
14  A. For the most part, that's correct.
15  Q. Well, were there any exceptions to that?
16  A. We had -- well, we didn't eliminate -- whenever
17  we eliminated a position, we, for the most part, right,
18  did not rehire somebody to fill that position; and we
19  assigned that responsibility to somebody else.
20  Q. And was the somebody else somebody who is
21  already working at the company?
22  A. Yeah, yeah, with the exception that I keep
23  hesitating. It wasn't a position we eliminated. Our
24  C.F.O. resigned and we replaced our C.F.O. but, other
25  than that position, pretty much every other position

Page 77

1  that I mentioned was eliminated; and that responsibility
2  was reassigned to somebody else.
3  Q. Do you know Joe Charno?
4  A. Sure.
5  Q. Who is he?
6  A. He was our Vice-President of Advertising.
7  Q. Does he still work with American -- at American
8  Blind and Wallpaper Factory?
9  A. No.
10  Q. When did he leave?
11  A. You know, I couldn't tell you the exact date.
12  I couldn't tell you the exact date. Sometime, I would
13  imagine, in 2005.
14  Q. Did he resign?
15  A. He did resign.
16  Q. Was he asked to resign?
17  A. We entered into a separation agreement.
18  Q. Why did you enter into a separation agreement?
19  A. For a couple different reasons. One -- well,
20  there were two reasons.
21  One, we were looking to reduce our
22  overall payroll. That was the primary reason.
23  Q. Were there any other reasons?
24  A. I was concerned about the quality of his work.
25  Q. What were your concerns?