| | |
|---|---|
| 1 | ROBERT N. PHILLIPS (SBN 120970) |
| | ETHAN B. ANDELMAN (SBN 209101) |
| 2 | HOWREY LLP |
| | 525 Market Street, Suite 3600 |
| 3 | San Francisco, CA 94105 |
| | T: (415) 848-4900 |
| 4 | F: (415) 848-4999 |
| 5 | DAVID A. RAMMELT (Admitted *Pro Hac Vice*) |
| | SUSAN J. GREENSPON (Admitted *Pro Hac Vice*) |
| 6 | KELLEY DRYE & WARREN LLP |
| | 333 West Wacker Drive, Suite 2600 |
| 7 | Chicago, IL 60606 |
| | T: (312) 857-7070 |
| 8 | F: (312) 857-7095 |
| 9 | Counsel for Defendant/Counter-Plaintiff |
| | American Blind and Wallpaper Factory, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GOOGLE INC., a Delaware corporation, | | CASE NO. C 03-5340- JF-(RS) |
| Plaintiff, | | **AMERICAN BLIND AND WALLPAPER FACTORY, INC.'S EVIDENTIARY OBJECTIONS TO EXPERT REPORT OF DR. ITAMAR SIMONSON SUBMITTED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| v. | | |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, INCLUSIVE, | | Date: February 16, 2007 |
| | | Time: 9:00 a.m. |
| Defendant. | | Judge: Hon. Jeremy Fogel |
| | | Courtroom 3, 5th Floor |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., | | |
| Counter-Plaintiff, | | |
| v. | | |
| GOOGLE, INC., | | |
| Counter-Defendant. | | |

KELLEY DRYE & WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CASE NO.: C-03-5340-JF (RS)

AMERICAN BLIND'S EVIDENTIARY OBJECTIONS
TO EXPERT REPORT OF DR. ITAMAR SIMONSON

DM_US:20207141_1

Dockets.Justia.com

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence, Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind") submits the following evidentiary objections to the Expert Report of Dr. Itamar Simonson submitted by Plaintiff/Counter-Defendant Google, Inc. ("Google") as Exhibit Q in support of its motion for summary judgment ("Simonson Report").

## INTRODUCTION

Despite Google's substantial financial resources and past experience conducting trademark litigation surveys, Google decided not to perform a survey in this case. Instead, Google is attempting to offer expert opinion testimony on two key issues – secondary meaning and likelihood of confusion – based upon the expert's personal impressions and beliefs, without any supporting research, scientific study, or other factual support. Google's proffered expert Dr. Simonson, while certainly well-credentialed as a marketing professor, has absolutely no factual basis to conclude that (a) the AMERICAN BLINDS trademark lacks secondary meaning, or (b) that Internet users are likely to know that the "Sponsored Links" appearing in Google search results represent products or brands that are different from the trademark entered as the search term by the computer user. These assertions, which are conclusions regarding ultimate factual and legal issues in this case, should be disregarded by the Court as personal opinions that lack any scientific support or other reliable basis in fact, and clearly invade the province of the fact finder.

Also in his report, Dr. Simonson critiques the likelihood of confusion survey performed by American Blind's expert Alvin Ossip. Since Dr. Simonson conducted no survey of his own, he is unable to demonstrate that correcting any of the alleged "flaws" in Mr. Ossip's survey would lead to a different result. Dr. Simonson's testimony criticizing Mr. Ossip's survey is thus entirely without evidentiary support, and should be disregarded.

## FACTUAL BACKGROUND

The parties' expert reports were due on October 20, 2006. At that time, American Blind produced the Expert Report of Alvin Ossip, which sets forth the results of the survey Mr. Ossip designed and supervised to determine whether Internet users seeking to order products on-line from American Blind are likely to be confused by the Sponsored Links presented by Google as a

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CASE NO.: C-03-5340-JF (RS)        -1-        AMERICAN BLIND'S EVIDENTIARY OBJECTIONS
TO EXPERT REPORT OF DR. ITAMAR SIMONSON

1  result of Google's Ad Words advertising program.  Mr. Ossip found that in excess of 29% of
2  respondents falsely believed, after being shown a Google search results page for the entry
3  "AMERICAN BLINDS," that "Sponsored Links" appearing on that page were affiliated with
4  American Blind.[1]

5    Google did not produce any expert report on October 20, 2006.  Rather, Google waited
6  until rebuttal expert reports were due, and produced the Expert Report of Dr. Simonson.  Dr.
7  Simonson based his entire report on his review of Mr. Ossip's study, the deposition of Mr. Ossip
8  and two American Blind employees, and a post-trial order in the *GEICO v Google* case.
9  (Simonson Report, Ex. C.)  Despite having performed at least one hundred trademark litigation
10 surveys over the last thirteen years (Garrity Decl. Ex. R, Simonson Trans., 57:24-58:7), including
11 secondary meaning studies and likelihood of confusion studies (*Id*. at 58:8-12), Dr. Simonson did
12 ***no survey or other research of his own*** in support of his report.  (*Id*. at 13:2-4.)  Rather, Dr.
13 Simonson merely advanced his own, personal opinions on these ultimate issues.

14   On the issue of secondary meaning, Dr. Simonson opined that "AMERICAN BLINDS is
15 likely to be a weak brand name that lacks secondary meaning."  (Simonson Report, ¶ 37).  This is
16 pure conjecture on the part of Dr. Simonson because (1) he has no personal knowledge concerning
17 American Blind's business (Simonson Trans., 87:2-7), (2) he did not conduct a secondary
18 meaning survey, and (3) did not review any of the objective evidence produced by American
19 Blind establishing its mark has secondary meaning including, without limitation, American

---

[1] This is far in excess of the levels of confusion found to be actionable in other Lanham Act litigation.  *See, e.g., Grotian Helfferich, Schulz, TH Steinweg Nachf v. Steinway & Sons*, 365 F.Supp. 797 (S.D.N.Y. 1973) (8.5% confusion actionable); *Jockey Int'l, Inc. v. Burkard*, 185 U.S.P.Q. 201 (S.D. Cal. 1975) (11.4 % confusion actionable); *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 277-278 (7th Cir. 1976) (15% confusion rate found to be dispositive of likelihood of confusion issue); *Re/Max Int'l, Inc v. Help-U-Sell, Inc.*, 20 U.S.P.Q.2d 1945 (C.D. Cal. 1991) (finding 28% confusion "significant" and noting that "much lower rates have been found to be 'strong evidence' of likelihood of confusion); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058 (2d Cir. 1979) (15-20% rate corroborates finding of likelihood of confusion); *National Football League v. Governor of Delaware*, 435 F. Supp. 1372 (D. Del. 1977) (19-21% rate sufficient to prove substantial confusion); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455 (4th Cir), cert denied, 519 U.S. 976 (1996) (confusion of 30-40% demonstrates likelihood of confusion, and "even if the true figure were only half of the survey estimate [e.g., 15-20%], actual confusion would, in our view, nevertheless exist to a significant degree").

1  Blind's catalogs, sales information, advertisements, articles, trademark registrations, and
2  longstanding use of the www.americanblinds.com URL.  (*Id*. at 87:2-22; 131:25-132:14).   Dr.
3  Simonson has no basis to offer this opinion as an expert witness.

4  On the issue of likelihood of confusion, Dr. Simonson included a section in his report
5  titled "Consumer Information Search and Exposure to Advertising."  (Simonson Report, ¶ 21-27.)
6  In the final paragraph of this section, Dr. Simonson offered the following opinion:  "[a]ccordingly,
7  when using an Internet search engine such as Google, consumers are likely to know that ads and
8  sponsored links that appear on the screen may very well represent products and brands that are
9  different from those entered as the search word."  (*Id*. at ¶ 27.)

10  Here again, Dr. Simonson offers an opinion about an ultimate issue in the case without any
11  substantiation other than his personal beliefs and impressions.  Dr. Simonson has no empirical
12  support for this statement.  He is not aware of any research that deals with people's understanding
13  as to what a "Sponsored Listing" is.  (Simonson Trans., 119:18-22.)  He has never done any
14  academic work regarding Internet search engines.  (*Id*. at 45:18-20; 50:5-8.)  He has never
15  reviewed anyone else's research regarding the consumer experience using search engines.  (*Id*. at
16  50:9-15.)  When pressed for the basis of the opinions contained in this section of his report, Dr.
17  Simonson could only state that it was "intuitive" and "obvious," but was not aware of any
18  empirical research or scientific studies or articles supporting his conclusions.  (*Id*. at 102:21-
19  107:24; 104:20-105:13; 106:5-107:7; 111:11-25; 116:15-119:3.)

## ARGUMENT

Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), before accepting the testimony of any expert, this Court must determine whether the testimony that the expert seeks to offer is relevant and reliable. If it is not, the expert must not be permitted to testify.  A review of Simonson's opinions and his deposition testimony reveals that his testimony lacks sufficient factual basis to be relevant and reliable to this Court.  Accordingly, his testimony should be disregarded.

I. **SIMONSON'S TESTIMONY DOES NOT HAVE
A SUFFICIENT FACTUAL BASIS TO BE ADMISSIBLE**

It is a bedrock principle of expert testimony that "an expert must back up his opinion with specific facts." *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981). In *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825 (9th Cir. 2001), the court refused to consider expert testimony proffered by the plaintiff in support of his claim because "our study of the record does not reveal the existence of underlying facts which could support the opinions of the" expert. *Id.* at 831. Similarly, in *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,* 290 F. Supp. 2d 1083 (C.D. Cal. 2003), plaintiff attempted to oppose summary judgment in a trademark case by presenting "expert reports" claiming to demonstrate a likelihood of confusion, but the reports submitted were ruled insufficient to defeat the motion because "[t]he ultimate conclusions in these expert declarations contain nothing more than bottom-line opinions that are completely devoid of any foundation, factual basis, reasons, or evidence." *Id.* at 1096. Finally, in *Pharmacia Corp. v. Alcon Labs., Inc.,* 201 F. Supp. 2d 335, 378 (D.N.J. 2002), experts who purported to testify about likelihood of confusion "in light of their experience in the pharmaceutical industry and an ophthalmologist," had their testimony rejected in favor of a scientific survey. Simonson's failure to support his opinions concerning consumer perception and secondary meaning with any specific facts or methodology whatsoever means that his opinion on these points must be disregarded, especially in light of the clear and convincing evidence presented by American Blind on each of these points.

    A. **Simonson's Testimony About Consumer
Perception Is Not Based On Sufficiently Reliable Facts**

Based on his claimed understanding of "the consumer decision making process," Simonson draws the conclusion that "when using an Internet search engine such as Google, consumers are likely to know that ads and sponsored links that appear on the screen may very well represent products and brands that are different from those entered as the search word." (Simonson Report, ¶ 27.) When pressed during his deposition, Simonson was unable to point to any evidentiary support for this conclusion:

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CASE NO.: C-03-5340-JF (RS)   - 4 -   AMERICAN BLIND'S EVIDENTIARY OBJECTIONS
TO EXPERT REPORT OF DR. ITAMAR SIMONSON

> Q:   What empirical research or scientific studies are you aware of that support the conclusion that consumers are accustomed to the fact that when they search for information about one product/brands that makers of similar product/brands often target them using ads and other promotional needs?
>
> A.   As I said, it's just a basic principle of consumer learning, when something in your life happens over and over again, you learn that that's a reality.
>
> Q.   Okay. But do you know if there are any studies that have actually shown that that is a reality for consumers today?
>
> A.   No, I don't think there is...

(Simonson Trans., 104:20-105:9.)  When pressed further, Simonson again acknowledged that he had no support whatsoever for this claim:

> Q:   Okay. Nor have you seen any evidence supporting your conclusion that in that situation there wouldn't be confusion, is that right?
>
> A.   As I said, based on the basic principles that I teach, I would conclude that the likelihood is low.  Have I seen a survey looking at that specific question?  The answer would be no.

(*Id*. at 118:22-119:3.)

Thus, Simonson concedes that his opinion concerning consumer perception is simply that – his personal opinion, with no scientific, technical or specialized basis for his claim that consumers do not perceive "Sponsored Links" appearing on Google search pages for a trademarked term as being affiliated with the trademark owner.  To the extent Simonson relies on his own personal impressions as a consumer and review of the evidence, he is in no better position to opine on this matter than is the finder of fact.  Indeed, "[e]xpert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact to understand the evidence or determine a fact in issue."  Weinstein's Federal Evidence § 702.03[2][a], *see also United States v. Hanna¸* 293 F.3d 1080, 1085-86 (9th Cir. 2002) (refusing to allow testimony about how alleged "threats" would have been perceived by recipients, as trier of fact was able to make same determination without need for expert); *United States v. Feutes-Caraiga*, 209 F.3d 1140, 1142 n. 3 (the court may exclude "general [expert] testimony about an issue within the den of the jury's knowledge").

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CASE NO.: C-03-5340-JF (RS) — - 5 - — AMERICAN BLIND'S EVIDENTIARY OBJECTIONS TO EXPERT REPORT OF DR. ITAMAR SIMONSON

1  An ordinary lay person, such as the trier of fact, can review the same evidence that Simonson did
2  and may come to different conclusions. Nothing Simonson offers with respect to his conclusions
3  about how consumers view advertisements they receive from search engines is based on any
4  scientific, technical, or other specialized knowledge. Accordingly, his testimony on this point
5  cannot be accepted.

### B. Simonson's Testimony About Secondary Meaning Lacks A Factual Basis

Simonson repeats the same error he made in drawing conclusions about consumer perception in his attempt to reach a conclusion that the AMERICAN BLINDS mark is "weak" and lacks secondary meaning. As outlined above, Simonson conducted no survey, conducted no independent research, and took no steps to validate his conclusion. His sole basis for this conclusion is:

> Consumers are bombarded on a daily basis by information about thousands of brands (e.g., in stores, on the web, in newspapers and magazines) and ads. As a result, getting consumers to pay attention to any particular brand or ad is very challenging and requires extensive and expensive marketing efforts over an extended period. This problem is particularly severe when trying to establish brand equity and recognition for a brand of window blinds called "American Blinds" for two reasons. First, although not impossible (e.g., American Airlines) building awareness and acquiring secondary meaning for a rather generic sounding, nondistinctive name such as "American Blinds" is particularly challenging. Second, ABWF's tendency to change frequently the company name, the brand names it is using, the various websites it relies on, and the vendors that produce its private label blinds (i.e., the American BRAND brand) further diminishes the likelihood of building equity in any specific brand name or acquitting secondary meaning in any of the various brand names it might have used.

(Simonson Report, ¶ 37.) Nothing in this testimony identifies any research, activity, or other investigation that Simonson conducted in order to come to this determination. As discussed above, this means that his conclusions are inadmissible, since the purported expert testimony does not go beyond common knowledge.

Indeed, Simonson acknowledged that he did not review a variety of factors which would be relevant to the determination of whether American Blind's marks have secondary meaning. Such factors include:

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CASE NO.: C-03-5340-JF (RS)    - 6 -    AMERICAN BLIND'S EVIDENTIARY OBJECTIONS TO EXPERT REPORT OF DR. ITAMAR SIMONSON

> customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, number of sales, the amount, nature and geographical scope of advertising, the period of time during which the mark has been used, the number of customers, and actual confusion.

*American Scientific Chemical, Inc. v. American Hospital Supply Corp.*, 690 F.2d 791, 793 (9th Cir. 1982). As Simonson testified, he did no research or review whatsoever directed to many of these factors:

> Q: Before this case, had you heard of American Blinds Wallpaper and More or American Blinds & Wallpaper Factory?
>
> A. No.
>
> Q. Or American Blinds?
>
> A. No.
>
> Q. Okay. During this case, have you ever reviewed a catalog from American Blinds?
>
> A. No.
>
> Q: Have you ever reviewed any sales information regarding American Blinds?
>
> A. No.
>
> Q. Any advertisements from American Blinds?
>
> A. No.
>
> Q. Have you done any searches of the trademark office to see what registrations they own?
>
> A. No.
>
> Q. Have you done any searches of LexisNexis for any news articles about them?
>
> A. No.

(Simonson Trans., 87:2-22.) In his haste to come to the conclusion that American Blind's marks are weak and lack secondary meaning, Simonson failed to give any consideration whatsoever to these critically important areas that weigh on whether secondary meaning exists. As a result, his opinion on secondary meaning is wholly without merit and should not be admitted.

## II. SIMONSON'S CRITIQUE OF THE OSSIP STUDY IS INADMISSIBLE WITHOUT A SURVEY OF HIS OWN TO SUPPORT THE CRITICISMS

As stated in a leading treatise on trademark law, "it is notoriously easy for one survey expert to appear to tear apart the methodology of a survey conducted by someone else." McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2006); *see also U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1252 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982) ("[I]t is relatively easy for one ad expert to criticize a survey done by another expert."). The failure of a party (especially one as well-funded as Google) to test the criticisms made by its expert was considered by the court in *Whirlpool Props., Inc. v. LG Electronics*, 2006 WL 62846 (W.D. Mich. 2006), which ruled:

> the absence of competing survey evidence from Dr. Cogan showing divergent survey results significantly undermines the efficacy of plaintiffs' arguments that defendants' evidence is so unreliable that it must be excluded. In other words, plaintiffs' criticisms of the methodology used by the defense experts would have been substantially aided by proof that the "correct" methodology would have led to a different result.

*See also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 979 n. 23 (11th Cir. 1983) (giving "little weight" to expert testimony where no survey was conducted to support expert's theories). Similarly, in *Tyco Indust., Inc. v. Lego Systems, Inc.*, 1987 WL 44363 (D.N.H. 1987), Tyco, which was seeking a declaratory judgment that it had not engaged in false advertising, offered only a critique of the survey presented by Lego, which demonstrated that Tyco's claims were likely to mislead. The court held that "Although [Tyco] offered criticisms of the [Lego] survey, I conclude that these are entitled to little weight." *Id.* at *10. Particularly important in the determination that little weight would be given to the criticisms was that "[Tyco] has done no survey or other research of [its] own to support [its] arguments." *Id. See also, e.g., President and Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804 (1st Cir. 1975) (finding it improper to reject survey based on critique where critic had failed to conduct survey of his own), *Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F.Supp.2d 561 (E.D. Ky. 2004) (survey accepted despite defendant's criticism in part because defendant "offers no survey evidence to rebut it").

1  Also, in the analogous situation of when a trademark plaintiff fails to offer survey evidence to show likelihood of conclusion, but had the opportunity and financial resources to do so, courts find that this undermines plaintiff's position, and may even raise a *negative inference* against the plaintiff.  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013 (C.D. Cal. 1998); *see also Playboy Enters., Inc. v. Netscape Comm. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) (failure to provide a survey "warrants a presumption that the results would have been unfavorable").

Google adopted the same, disfavored approach here.  Rather than conducting a survey and presenting the Court with affirmative evidence that confusion is unlikely and meeting its burden as a declaratory judgment plaintiff, Google has instead chosen to sit back and launch attacks at the survey produced by American Blind.  Google would have this Court issue a broad declaratory judgment that its keyword advertising practices do not violate anyone's rights under the Lanham Act, without coming forward with any survey evidence demonstrating the absence of confusion.  Google's only evidence is the unsubstantiated critique by Dr. Simonson.  But Dr. Simonson is unable to show that had his preferred approach been used, this would have established the absence of confusion.

## **CONCLUSION**

For the foregoing reasons, American Blind's evidentiary objections to the expert report of Dr. Simonson submitted by Google in support of its motion for summary judgment should be sustained.

Dated: January 26, 2007　　　　　　　　　　　　HOWREY LLP

By:   /s/ Robert N. Phillips
　　　　ROBERT N. PHILLIPS

David A. Rammelt
Susan J. Greenspon
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, Illinois 60606

Attorneys for Defendant/Counter-Plaintiff
American Blind and Wallpaper Factory, Inc.