1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   KLAUS H. HAMM - #224905
3  AJAY S. KRISHNAN - #222476
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Plaintiff and Counter-Defendant
   GOOGLE INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | GOOGLE INC., a Delaware corporation, | Case No. C 03-5340-JF (RS)
12 |                          Plaintiff,  | **GOOGLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR TERMINATING, EVIDENTIARY, AND MONETARY SANCTIONS AGAINST ABWF FOR SPOLIATION OF EVIDENCE**
13 |     v.                               |
14 | AMERICAN BLIND & WALLPAPER           |
   | FACTORY, INC., a Delaware corporation|
15 | d/b/a decoratetoday.com, Inc., and   | Date:      February 16, 2007
   | DOES 1-100, inclusive,               | Time:      9:00 a.m.
16 |                                      | Courtroom: 3, 5th Floor
   |                         Defendants.  | Judge:     Hon. Jeremy Fogel
17

18 | AMERICAN BLIND & WALLPAPER
   | FACTORY, INC., a Delaware corporation
19 | d/b/a decoratetoday.com, Inc.,

20 |                  Counter-Plaintiff,

21 |     v.

22 | GOOGLE INC.,

23 |                  Counter-Defendant.

24

25

26

27

28

388968.01 | GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
          | CASE NO. C 03-5340-JF (RS)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. ABWF confuses this spoliation motion with a motion to compel. ..........................2

        1. ABWF repeatedly and erroneously accuses Google of "re-hashing" arguments that were or should have been raised with Judge Seeborg. ...........................................................................................3

        2. ABWF erroneously asserts that Google's spoliation motion is untimely. ..............................................................................................4

    B. Google's has submitted strong, unrefuted evidence that ABWF once possessed responsive documents that were never produced. ..................................5

    C. ABWF does little to detract from Google's showing that the ABWF documents that were not produced must have been destroyed. ..............................7

        1. ABWF performed a woefully inadequate job of preserving evidence. ...............................................................................................7

        2. Katzman destroyed documents; ABWF's only contrary evidence is completely objectionable and implausible. .............................10

    D. Google has established the relevance of the destroyed documents. ......................12

    E. There is no contradiction between bringing a spoliation motion and a summary judgment motion simultaneously. ..........................................................14

III. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advantacare Health Partners v. Access IV*,
  No. C 03-04496 JF, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004)........................................ 12

*iSmart Int'l Ltd. v. I-DocSecure, LLC*,
  No. C 04-03114 RMW (RS), 2006 WL 2263910 (N.D. Cal. Aug. 8, 2006) ............................ 2

*Periman Corp. v. United States*,
  665 F.2d 1214 (D.C. Cir. 1981) ................................................................................................ 8

*U.S. v. Reyes*,
  ___ F.R.D. ___, CR 06-0556 CRB, 2006 WL 3798073 (N.D. Cal. Dec. 22, 2006) ................. 8

## I. INTRODUCTION

American Blind & Wallpaper Factory, Inc.'s ("ABWF") opposition to Google's spoliation motion does little to refute Google's evidence that ABWF destroyed a wide range of relevant documents. ABWF's primary mistake is to confuse the instant spoliation motion with a motion to compel. A motion to compel seeks documents that exist, but were not produced. By contrast, a spoliation motion, such as this one, seeks sanctions for documents that have been destroyed. Thus, many of ABWF's arguments—such as Google is simply "re-hashing" arguments made before Judge Seeborg, or this motion is late because it was filed after the deadline for discovery motions—are simply premised on confusion. To be clear, there is a *connection* between Google's prior motion to compel and this spoliation motion: Google had to compel ABWF to produce documents—thus forcing ABWF to produce all documents it still possessed—before it could know that documents had been destroyed, rather than simply withheld. But that does not change the fact that this is a spoliation motion, and ABWF's contrary characterization is simply wrong.

Moving to the substance of Google's spoliation motion, ABWF addresses only a very minor subset of the issues. *First*, Google demonstrates in its opening brief that there numerous specific categories of documents that must have at one point existed, but were not produced. ABWF essentially ignored this evidence. *Second*, Google then presented evidence that ABWF destroyed these documents that were not produced by one of two mechanisms: (1) destruction in the usual course of business, due to a failure to preserve documents, and (2) affirmative destruction at the hands of its former CEO and president, Steve Katzman. ABWF did at least try to submit evidence—though it is both inadmissible and lacks any credibility—that Katzman did not destroy the documents that ABWF previously claimed he destroyed. But ABWF provided no evidence at all to refute Google's evidence that ABWF employees were never instructed to preserve documents, and that they never performed an adequate document search until late May 2006. *Third*, Google argued that ABWF's wide-ranging document destruction affected relevant evidence, and that it infected Google's ability to rely on its depositions, to prepare for trial, and to cross-examine ABWF witnesses. Aside from simply reiterating its refrain that "there is

Case 5:03-cv-05340-JF   Document 272   Filed 02/02/2007   Page 5 of 18

1  nothing more to produce"—which is precisely the point of this motion—ABWF simply ignored
2  Google's arguments.
3        Finally, ABWF peppers its brief with an argument utterly devoid of logical basis: that
4  Google's summary judgment motion is somehow at odds with its spoliation motion because the
5  former contends that there are no factual disputes, whereas the latter contends that relevant
6  evidence has been destroyed. The most obvious problem with ABWF's argument—and there are
7  many—is that a summary judgment motion does not contend that there are no factual disputes *in*
8  *the entire case*; it merely contends that there are no factual disputes on certain specific issues.
9  Needless to say, there is no rule of federal procedure that terminates one's right to evidence upon
10 filing a motion for summary judgment.

11                       **II.**        **ARGUMENT**

12 **A.**    **ABWF confuses this spoliation motion with a motion to compel.**

13       A running theme in ABWF's opposition brief is its treatment of Google's spoliation
14 motion as a motion to compel. The two types of motion are different in a very important way. A
15 motion to compel seeks documents that still exist and are in a party's control. A party can only
16 compel production documents that still exist. *See, e.g.*, *iSmart Int'l Ltd. v. I-DocSecure, LLC*,
17 No. C 04-03114 RMW (RS), 2006 WL 2263910 at *2 (N.D. Cal. Aug. 8, 2006) ("[T]he only
18 issue presented at this juncture in the discovery process is to ensure that all extant responsive
19 documents have been or will be produced. Whether any consequences flow from the loss or
20 destruction of documents, for any reason, is a question for another day.") By contrast, a
21 spoliation motion does not seek production of documents, because the documents no longer
22 exist; they have been destroyed.
23       Google's instant motion is a spoliation motion. Google has already sought to compel
24 production of all documents in ABWF's control. Google's motion to compel pointed out "holes"
25 in ABWF's document production—that is, documents that must have existed at some point, but
26 which ABWF never produced. Judge Seeborg recognized the inadequacy of ABWF's document
27 production, and the implausibility of ABWF's claims that it had produced all documents in its
28 control. He therefore ordered ABWF to submit a declaration from a responsible corporate

2

388968.01   GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
CASE NO. C 03-5340-JF (EAI)

officer stating that it had performed a thorough search for all responsive documents, and that it had produced them. ABWF has submitted that declaration ("Levine Declaration"). *See* Greenspon Decl.,[1] Ex. E. Since there are still holes in ABWF's document production, Google must infer that documents were destroyed. (The strength of this inference is discussed below.) Thus, Google's instant motion seeks to bring sanctions for document destruction, not to compel production of documents that still exist.

With this understanding in mind, it is apparent that two major arguments in ABWF's opposition are premised on faulty logic.

### 1. ABWF repeatedly and erroneously accuses Google of "re-hashing" arguments that were or should have been raised with Judge Seeborg.

Importantly, Judge Seeborg gave Google all of the relief he could have: He ordered ABWF to produce all responsive documents and swear that they had done so. Judge Seeborg even recognized that ABWF had not yet adequately searched its emails. His Order states, "It appears that American Blind may not have previously recognized that its obligation to search for documents extended to searching relevant email accounts, but that counsel has now taken steps to rectify that situation." Order Granting in Part and Denying in Part Motion to Compel at 5. It was only when it turned out that ABWF *could not* rectify that situation—that is, when ABWF submitted the Levine Declaration, but had not produced many additional emails—that Google knew it was dealing with a spoliation issue.

In a similar vein, Judge Seeborg never ruled on "Google's claims of 'poor' document retention," as ABWF asserts. Opp. at 6:14. Google did not raise that as an issue for Judge Seeborg to decide because Google had no way of knowing whether the holes in ABWF's document production were due to a failure to search and produce existing documents, or instead, due to spoliation. It was only after ABWF submitted the Levine Declaration that Google knew that ABWF's poor document retention had lead to spoliation.

---

[1] "Greenspon Decl." refers to the Declaration of Susan Greenspon in Support of Defendant American Blind and Wallpaper Factory, Inc.'s Opposition to Google Inc.'s Motion for Terminating, Evidentiary, and Monetary Sanctions Against ABWF for Spoliation of Evidence (Docket Item No. 258).

**2.    ABWF erroneously asserts that Google's spoliation motion is untimely.**

ABWF's confusion of the instant spoliation motion with a motion to compel leads it to argue that the deadline for filing discovery motions should apply to this spoliation motion. ABWF is wrong. As explained above, this is not a motion to compel production of existing documents, but a spoliation motion to seek sanctions for destroying documents.

Nowhere is ABWF's confusion clearer than in its citation to a letter from Google's counsel concerning *Google's* production of emails. Opp. at 7. In that situation, ABWF argued for the first time, after discovery closed, that Google failed to produce documents, not that Google destroyed documents. Greenspon Decl., Ex. F. Such an argument would, at most, give rise to a motion to compel, which would be barred by the deadline for filing discovery motions. This spoliation motion, by contrast, does not seek to compel and would not be barred.

Additionally, Google did not delay in bringing its spoliation motion. As explained above, Google's spoliation motion only ripened when ABWF submitted the Levine Declaration, which revealed that documents that once existed no longer exist. ABWF served the Levine Declaration on December 5, 2006. Supp. Krishnan Decl., ¶5.[2] Although Google knew about ABWF's poor document retention practices for quite some time—after all, Google asked practically every single ABWF deponent, with ABWF counsel present, about document retention—Google could not know what the extent of the spoliation was until ABWF completed its production. Similarly, although Google learned of Katzman's document destruction on October 23, 2006, discovery had already closed on August 28, 2006, and Google's motion to compel was under submission. Thus, Google could do nothing but await Judge Seeborg's ruling, and to see if any new documents would be produced. Additionally, Google had reason to believe that the extent of Katzman's spoliation would be limited because ABWF represented in its opposition to the motion to compel that it would search Katzman's emails. Mot. at 17:11-15. It was only on

---

[2] "Supp. Krishnan Decl." refers to the Supplemental Declaration of Ajay S. Krishnan in Support of Google's Reply Brief in Support of Its Motion For Terminating, Evidentiary, And Monetary Sanctions Against ABWF For Spoliation Of Evidence, filed herewith.

388968.01

4
GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
CASE NO. C 03-5340-JF (EAI)

1  December 5, 2006—when ABWF served the Levine Declaration without submitting any new

2  Katzman emails—that Google knew that those emails had been destroyed.

3  Thus, many arguments in ABWF's opposition are premised on a confusion between a

4  spoliation motion and a motion to compel.

**B. Google's has submitted strong, unrefuted evidence that ABWF once possessed responsive documents that were never produced.**

ABWF correctly recognizes that Google's charge of spoliation is a two-part argument. First, Google argues that there were certain responsive documents that must have existed at some point, but were not produced. Second, Google argues that these documents must have been destroyed—an issue addressed in the following section. ABWF attempts to criticize these arguments by calling them "assumptions" and "speculation." Opp. at 4. Call them what you will, but Google based its arguments on evidence, which was submitted to the Court. Granted, Google's evidence is not *perfect*—after all, it is difficult for Google to identify any particular document it has not received due to spoliation. That's the point: ABWF has irreparably damaged Google's ability to discover evidence useful to its defense. But Google's evidence that many more responsive documents must have existed than were produced is strong. More importantly, it is unrefuted by ABWF.

Google's evidence that many responsive emails were not produced included:

- At ABWF email was the "preferred way of communicating" and that Joe Charno, a central figure in this litigation, "was copied on tons of emails," because "people liked to copy people." Mot. at 12:7-11.

- Bill Smith testified to five categories of emails that he remembers having sent or received, but which were not produced. Mot. at 12:26-13:11

- Only 130 internal ABWF emails were produced, even though this lawsuit covers a significant component of ABWF's business and events spanning more than five years. Mot. at 10:4-8.

- To give context to that number, 65 of those emails came from the email account of Michael Layne, who was only a tangential figure in this litigation. Mot. at 11:17-20. Additionally, 350-360 emails were produced that constituted correspondence between ABWF and Google. Mot. at 12:12-13.

1  *Not one of these facts was disputed by ABWF*. These facts gave Google a very solid basis to
2  argue that responsive documents must have existed, which were not produced.
3    To get at this same point from a different angle, Google specified categories of
4  documents that Google expressly requested, and which must have existed, but were not
5  produced: (1) "Documents related to the 'Online Customer Satisfaction Survey," (2) "Documents
6  related to the Kaden Company reports," and (3) "Documents related to the American Wallpaper
7  Survey." Mot. at 15:26-17:19. ABWF only addressed the second category, but entirely missed
8  the point. Opp. at 7:18-26.
9    The issue Google raised in its spoliation motion with regard to the Kaden documents was
10 that Google had previously asked ABWF to produce any documents *related to* the Kaden
11 reports, such as "invoices, e-mails, and contracts associated with these three studies." Supp.
12 Krishnan Decl., Ex. A at 1-2. ABWF responded that it had no documents related to the Kaden
13 reports other than the reports themselves. *Id.*, Ex. B at 1. Google accepted ABWF's
14 representation, and this issue was never presented to Judge Seeborg. (ABWF addressed a
15 different issue in its opposition, about documents possessed by the Kaden Company itself. Opp.
16 at 7-8. That issue was presented to Judge Seeborg, but was later withdrawn by Google when
17 ABWF represented that it sought such documents from Kaden.[3]) But the question remained:
18 Why didn't ABWF have any other documents related to the Kaden reports? Recall that ABWF's
19 obligation to preserve documents attached in February 2002. Mot. at 19. And the reports were
20 drafted in September 2002, March 2003, and February 2006. Greenspon Decl., Ex. J at 3, 19 &
21 48. Surely, if ABWF asked an outside vendor to produce a study, wouldn't it at least have a
22 contract or invoice to show for it? ABWF never answered this question, nor did it even address
23 the other two categories of documents. Thus, Google presented unrefuted evidence to argue that
24 responsive ABWF documents were not produced.

---

[3] *See* Counter-Defendant Google Inc.'s Memorandum of Points and Authorities in Support of Its Motion to Compel Counter-Plaintiff ABWF to Satisfy Its Outstanding Discovery Obligations (Docket Item No. 186) at 13:18-14:5.

**C.     ABWF does little to detract from Google's showing that the ABWF documents that were not produced must have been destroyed.**

ABWF remains curiously silent on a central issue presented by Google: If ABWF had the documents described above at some point, but did not produce them, **where are they?**  ABWF submitted the Levine Declaration, stating that it had performed a thorough search for documents, and produced everything it found.  So where could these documents possibly be?  Google provided evidence of two factual theories as to why documents that must have existed, but were not produced, were destroyed: (1) ABWF failed to adequately preserve documents, so documents were destroyed in the usual course of business, and (2) Steve Katzman affirmatively destroyed the contents of several computers.  ABWF disputes that evidence, and Google will address that dispute here.  But the fact still remains that ABWF provides no explanation of the whereabouts of these documents that it claims were not destroyed.  The only party that has provided a reasonable inference about what happened to these documents is Google.

**1.     ABWF performed a woefully inadequate job of preserving evidence.**

Google's argument on how ABWF destroyed documents in the usual course of business is straightforward: (1) ABWF's counsel never instructed its employees to preserve documents, and as such, documents were regularly destroyed in the usual course of business, and (2) ABWF never performed a proper document collection until late May, 2006, by which time at least four years of documents were destroyed in the usual course of business.  It is important to keep separate the time periods before and after late May 2006.  Late May 2006 was when management changed at ABWF and when Katzman left the company.  It is also the time period when ABWF started taking its document collection obligations more seriously.

Notably, ABWF hardly addresses its failure to instruct its employees to preserve documents.  Not one single ABWF employee, when asked under oath, recalled being instructed to preserve documents or knew of any ABWF document retention policy.  Mot. at 4-5.  Nonetheless, ABWF asserts, without providing any elaboration, that "American Blind preserved and searched its documents…."  Opp. at 17:11-12.  And the referenced paragraphs in ABWF counsel Susan Greenspon's declaration is equally inscrutable.  It states:

1  2  3
> In late 2003, I and [ABWF counsel] David Rammelt traveled to American Blind's headquarters in Plymouth Michigan, for the purpose of meeting with Steve Katzman, then American Blind's CEO and President, and Joseph Charno, then Vice President of Marketing, to address the collection and preservation of documents…. Katzman, educated as an attorney, understood this undertaking.

4 Greenspon Decl., ¶ 16. Notably, Ms. Greenspon does not state that she actually instructed

5 Katzman to preserve documents! Rather, it appears that Katzman was simply presumed to know

6 to preserve documents because he was "educated as an attorney," and because Ms. Greenspon

7 apparently "attended law school with Katzman," and was therefore "well aware of his

8 understanding of legal matters, including the discovery process in litigation." *Id*., ¶¶ 14, 17.

9 Putting aside that law schools rarely teach discovery, and that Katzman attended law school over

10 17 years ago, there is no foundation for Ms. Greenspon to testify to Katzman's knowledge.

11 *Indeed Katzman's own declaration, prepared for this motion, does not say that he knew to*

12 *preserve documents.* And at his deposition, Katzman testified that he did not recall (1) being

13 asked to preserve documents, or (2) ABWF's document retention policy. Mot. at 4:10-18.

14    ABWF then tries to cloak its lack of evidence in attorney-client privilege, but the Court

15 should not permit this. ABWF states, "If necessary, American Blind is prepared to submit

16 additional declarations of Susan Greenspon and Joseph Charno…regarding the issue of

17 preservation instructions…to the Court for *in camera* inspection, due to the privileged nature of

18 the materials disclosed therein." Opp. at 17, n.9. Google strongly objects to this procedure, and

19 to any consideration of ABWF's veiled suggestion that Greenspon in fact instructed Charno to

20 preserve documents. The law is clear that, "Parties cannot be permitted to pick and choose in

21 their disclosure of protected communications, waiving the privilege for some and resurrecting

22 the claim of confidentiality to obstruct others." *U.S. v. Reyes*, ___ F.R.D. ___, CR 06-0556

23 CRB, 2006 WL 3798073 at *8 (N.D. Cal. Dec. 22, 2006) (internal quotation marks omitted)

24 (quoting *Periman Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981). ABWF's

25 suggested *in camera* inspection procedure would still be a selective waiver. Google already

26 explained this point to ABWF. Supp. Krishnan Decl., Ex. C. Plus, Google would have no

27 opportunity to dispute ABWF's evidence. If ABWF is permitted to submit to the Court—even *in*

28 *camera*—evidence of communications between ABWF and counsel, this should be deemed a full

8

1   waiver of privilege.  ABWF should be compelled to produce all attorney-client privileged or

2   work-product documents on document preservation, retention, search, collection, and

3   destruction, and to produce witnesses from both ABWF and from ABWF's outside counsel

4   concerning communications on the subject.  Otherwise, the Court should credit the only

5   admissible evidence on preservation that exists: repeated, consistent testimony by ABWF's

6   employees that they were never instructed to preserve documents.

7   The second component of Google's argument on document preservation is that the harm

8   caused by the failure to instruct ABWF's employees to preserve documents was heightened by

9   the failure to perform an adequate document collection before late May 2006.  In its opening

10  brief, Google provided strong evidence that ABWF's document collection efforts prior to May

11  2006 were abysmal.  Only 6% of ABWF's final document production was produced before May

12  2006.  Mot. at 5:15-23.  And, for the most part, ABWF employees were instructed to collect only

13  communications between Google and ABWF—that instruction did not serve to preserve

14  documents because Google already had all of those documents.  Mot. at 9:5-26.  These facts go

15  unrefuted by ABWF.  All that Ms. Greenspon's declaration says about document collection *prior*

16  *to late May 2006* is that (1) in late 2003, documents were collected from the computers of

17  Katzman, Charno, and William Smith, and (2) at some point prior to his leaving the company,

18  Katzman "and other American Blind employees compiled materials that were responsive to

19  Google's First Set of Interrogatories and First Set of Requests for Production.  Greenspon Decl.,

20  ¶¶ 16-18.  **So what?**  This does not mean that ABWF performed an *adequate* search.  Katzman's

21  declaration is even less helpful, and further confirms Google's account of events.  Katzman

22  states that (1) in 2003, ABWF's counsel "requested that all e-mail correspondences between all

23  American Blind employees and Google be printed out and delivered to counsel, which was done

24  the same day," and (2) "Following that, all of the document requests were given to me to

25  disseminate to the appropriate employees so they could provide the necessary responsive

26  documents."  Katzman Spoliation Decl., ¶4.[4]  **Again, so what?**  Katzman's declaration does not

---

[4] "Katzman Spoliation Decl." refers to the Declaration of Steve Katzman (Docket Item No. 259).

even say that he actually disseminated the document requests or collected responsive documents. *Id.* Moreover, Katzman's declaration shows that the late 2003 document search that Ms. Greenspon apparently supervised was only for correspondence between Google and ABWF. In other words, no evidence shows that Katzman or any other ABWF employee knew how or were instructed how to properly preserve or collect documents.

Thus, ABWF's failure to preserve evidence, which explains why documents that were not produced to Google must have been destroyed, is unrefuted by ABWF.

### 2. Katzman destroyed documents; ABWF's only contrary evidence is completely objectionable and implausible.

Google's second reason to believe that documents not produced by ABWF were destroyed is that Katzman destroyed them. Google's evidence comes from ABWF's own representations to a federal court: Katzman—the primary contact at ABWF responsible for all document collection and production, who apparently never involved anyone else in that "effort"—erased all of the files from two computers in his office, and from a laptop. Now, in front of a different court, ABWF argues, implausibly, that no documents were ever destroyed because all of them were either (1) stored on Katzman's home computer or his personal portable hard drive, (Greenspon Decl., Ex. D, ¶4), or (2) stored on another ABWF employee's computer, so the destruction was harmless (Katzman Spoliation Decl., ¶5). These arguments are pure fantasy, and in any event, inadmissible.

*First*, the idea that Katzman saved back-up copies of everything he deleted to his home computer or personal hard drive is utterly implausible and objectionable. Katzman's own declaration makes it clear that his declaration is unreliable. Katzman states:

> 1.  I cannot recall the specific name of any specific document, file, program, information, or data related to or derived from things belonging to American Blinds that I erased or deleted….
>
> 2.  …I also *occasionally* would save both personal and business files on my computer at work and *occasionally* I would transfer them to my portable hard drive and delete them from my computers at work. *I never systematically or on any regular basis transferred and or deleted files.*

Greenspon Decl., Ex. D, ¶¶1-2. (emphasis added). It therefore rings hollow for Katzman to say, two paragraphs later:

10
GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
CASE NO. C 03-5340-JF (EAI)

388968.01

>4. To the best of my knowledge and belief, I did not delete or erase any business related files on any computer either at work or at home (including the laptop that I returned to American Blind) that I do not have either on my portable hard drives or on my home computer system.

*Id.*, Ex. D, ¶4. How can Katzman possibly testify to this fact when he cannot recall any specific files, and he never dealt with files or documents in any systematic way? Katzman clearly lacks personal knowledge to say that all of the files he erased were backed up. And even if the testimony were admissible, it should be accorded no weight.[5]

*Second*, the idea that a copy of every responsive document on Katzman's three spoliated computers was stored somewhere else at ABWF is equally implausible and objectionable. Katzman lacks personal knowledge as to what was stored on the computers of other ABWF employees. This is particularly so because he does not recall the names of any specific documents or files from his work computers, and because ABWF employees were never instructed to preserve or collect documents before he left the company in May 2006.

Aside from these specific problems with Katzman's declarations, it is important for the Court to have a healthy skepticism for any statements provided by Katzman, particularly on the issue of document preservation or collection. There are several reasons for this:

- *First*, Katzman intentionally erased all of the files from the laptop he took with him when he left ABWF, even though it was clear that one lawsuit was pending between ABWF and Google, and a second lawsuit was imminent between himself and ABWF. Mot. at 13:19-14:4.

- *Second*, Katzman had either no respect for or no knowledge of his discovery obligations when he was in charge of collecting documents for ABWF. ABWF produced only 6% of its entire document production when Katzman was in charge.

- *Third*, Katzman gave blatantly misleading testimony in his deposition in this case. Mot. at 15:5-21. When asked what his current business was, he did not reveal that he

---

[5] Even if Katzman backed up every document that he erased, his home computer and personal hard drive have never been searched for responsive documents. Obviously, this is ABWF's fault. ABWF neglected to tell Google prior to Katzman's deposition and prior to the close of discovery that he had erased the contents of three computers. And ABWF told the Court in its opposition to Google's motion to compel—after discovery closed—that it would search Katzman's emails, suggesting that it had recovered Katzman's computer files. Google's only remedy now would be for the Court to grant leave for Google to subpoena Katzman for an additional deposition and for production of his home computer and personal hard drives. This would likely be a futile effort, however, because the files from Katzman's work computers are probably permanently destroyed.

  had started a venture to compete with ABWF. And when asked if he had taken any computers with him when he left the company, he initially responded that he had not, and then retracted that testimony, but never revealed that he had erased the contents of the laptop he had taken.

- *Fourth*, in his second declaration submitted in his lawsuit against ABWF, Katzman retracted important testimony that he had given in a prior declaration. In his initial declaration he testified that he retained no ABWF confidential documents on his personal computers, which was a key issue in that case. Greenspon Decl., Ex. D., ¶6. He retracts that statement in a later declaration. Greenspon Decl., Ex. D., ¶3.

Finally, the Court should not permit ABWF to avoid responsibility for Katzman's bad acts. ABWF wants to take the position that it is too bad for Google that a renegade employee destroyed two computer's worth of documents before leaving the company. But Katzman is not just some low-level employee acting outside the scope of his employment. He was the President and CEO when he destroyed the two computers in his office and while he was shirking his discovery obligations. And, before he resigned, ABWF had designated him to testify on all 25 of Google's Rule 30(b)(6) deposition topics. His acts *were* the company's acts. Moreover, the impact of Katzman's spoliation would have been substantially less if ABWF had alerted Google and the Court immediately, particularly prior to his deposition, prior to the close of discovery, or during the briefing on Google's motion to compel.

Ultimately, Google's argument that the documents that ABWF did not produce were destroyed—either due to poor document preservation or due to Katzman's affirmative destruction—rests on a solid evidentiary basis.

**D. Google has established the relevance of the destroyed documents.**

ABWF conveniently accuses Google of failing to present "a shred of evidence that a single document relevant to this case was destroyed, altered, or otherwise spoiled." Opp. at 2-4. Three points should be made about this accusation. *First*, the law disfavors this sort of accusation. It is always easy for a spoliating party to attack the moving party's evidence. This is why the party responsible for document destruction bears the risk of an erroneous ruling on spoliation. *Advantacare Health Partners v. Access IV*, No. C 03-04496 JF, 2004 WL 1837997 at *4 (N.D. Cal. Aug. 17, 2004).

1  *Second*, the accusation is simply not true.  Google has identified at least three categories
2  of relevant documents (*i.e.*, those relating to the Online Customer Satisfaction Survey, the Kaden
3  studies, and the "American Wallpaper" survey (Mot. at 15:26-17:19)) that were not produced.
4  And Google has produced a good deal of evidence to suggest that these documents were
5  destroyed either through lack of document preservation or by Katzman.

6  *Third*, and most importantly, ABWF's accusation misses the point of Google's spoliation
7  motion: Google is not arguing that ABWF selectively destroyed some particular group of "hot"
8  documents.  Rather, Google is arguing that ABWF indiscriminately destroyed wide swaths of
9  documents, relevant and irrelevant alike.  Google cannot know what particular documents were
10 destroyed (a) because they were destroyed, and (b) because it cannot conduct an investigation of
11 documents and computers at ABWF.  But Google can, and has, outlined the three categories of
12 evidence that were most likely impacted by ABWF's spoliation.

13 **Evidence of Unclean Hands.**  ABWF argues that Google "never sought unclean hands
14 information in discovery."  Opp. at 9: 13-14.  This is simply false.  Obviously, Google never
15 issued a document request for "All documents demonstrating 'unclean hands.'"  ABWF would
16 have simply responded that no such documents exist, claiming that it does not have unclean
17 hands. But Google did request documents pertaining to the underlying facts.  Google's unclean
18 hands argument has to do with ABWF's practice of bidding on its competitors' trademarked
19 keywords.  Google issued requests for "All documents relating to strategies and/or methods for
20 increasing internet traffic to any American Blind website," and "All documents relating to
21 strategies and/or methods for advertising with search engines," among others.  Krishnan Decl.,
22 Ex. C at 4.  ABWF's E-Commerce Marketing Group routinely discussed ABWF's AdWords
23 bidding strategy by e-mail, and ABWF does not deny this.  Mot. at 22:18-19.

24 **Evidence of the Strength of ABWF's Marks.**  Google raised this category of evidence
25 in its opening brief, and ABWF did not respond substantively.  Google's point was that strength-
26 of-marks evidence is the type of evidence that was likely contained in ABWF's corporate email.
27 All three categories of relevant documents that were not produced (*i.e.*, those relating to the
28 Online Customer Satisfaction Survey, the Kaden studies, and the "American Wallpaper" survey

13
GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
CASE NO. C 03-5340-JF (EAI)

388968.01

1  (Mot. at 15:26-17:19)) pertain to the strength of marks.  ABWF simply stated that it produced all
2  existing documents.  But that misses the point: many documents that once existed, may now be
3  destroyed.  And, as discussed in more detail below, the fact that Google raised some strength-of-
4  marks issues in its summary judgment brief means nothing.  Obviously, Google only raised those
5  issues (1) for which there were no factual disputes, and (2) which would allow Google to prevail.
6  If Google does not prevail on those issues, other issues, for which there are factual disputes, will
7  need to be tried.  Thus, the fact that Google raised *some* strength-of-marks issues in its summary
8  judgment brief does not mean that there are no factual disputes on *any* issue pertaining to the
9  strength of marks.

10  **Evidence of Damages.**  Google argued that evidence mitigating ABWF's damages
11  claims was likely to be found in ABWF's corporate email and other files.  ABWF responded that
12  it has chosen to limit itself to expert testimony on damages, so damages evidence is irrelevant.
13  Opp. at 9:22-10:8.  That is wrong.  *Google* has not chosen to limit *itself* to expert testimony—
14  only ABWF has.  Thus, ABWF's spoliation is still relevant to Google's case.
15  As a final point about the impact or relevance of ABWF's spoliation, Google must
16  reemphasize that ABWF's entire document production was implicated.  As Google argued in its
17  opening brief, this implicates all of Google's depositions, Google's ability to prepare for trial,
18  and Google's cross examination of ABWF witnesses.  ABWF never responded to this point.
19  Google has therefore amply demonstrated the impact of ABWF's spoliation.

20  **E.    There is no contradiction between bringing a spoliation motion and a summary judgment motion simultaneously.**
21
22  ABWF repeatedly suggest that a paradox that exists when a party simultaneously moves
23  for summary judgment and spoliation.  Opp. at 2:12-24.  ABWF's argument boils down to the
24  overly general observation that a summary judgment motion asserts that there are no factual
25  disputes, but if there are no factual disputes, there is no harm in destroying all the evidence.
26  There are at least three problems with this thinking.
27  *First*, a summary judgment movant need not assert that there are no factual disputes *in the entire case*.  Rather, a summary judgment movant need only assert that are no factual
28

14
GOOGLE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION
CASE NO. C 03-5340-JF (EAI)

388968.01

1  disputes regarding the issues on which he is moving.  So, if a party moved for summary
2  judgment on a statute of limitations issue, the party could still complain that the opposing party
3  destroyed documents concerning the merits.  If the summary judgment motion is granted, the
4  spoliation motion is moot, except for the issue of monetary damages.  Otherwise, it remains live.

5  *Second*, the summary judgment movant might lose because there *is* a factual dispute on
6  an issue that he raised.  In that case, the destroyed evidence would become relevant after the
7  summary judgment motion is denied.

8  *Third*, a party opposing a summary judgment motion can manufacture a factual dispute,
9  knowing that the only evidence that would make it clear that there is no factual dispute, has been
10 destroyed.  In such a case, spoliation and summary judgment are intimately intertwined.

11 Obviously, if Google prevails completely on its summary judgment motion, the
12 spoliation motion would be largely moot.  Otherwise, the spoliation motion must be granted.

### III.   CONCLUSION

For the foregoing reasons, this Court should issue terminating, evidentiary, and/or monetary sanctions against ABWF, as requested in Google's opening brief.

Dated:  February 2, 2007                    KEKER & VAN NEST, LLP


                                            By:  /s/ Ajay S. Krishnan
                                                 Ajay S. Krishnan
                                                 Attorneys for Plaintiff and Counter-Defendant
                                                 GOOGLE INC.