1  KEKER & VAN NEST, LLP
   MICHAEL H. PAGE - #154913
2  MARK A. LEMLEY - #155830
   KLAUS H. HAMM - #224905
3  AJAY S. KRISHNAN - #222476
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Plaintiff and Counter Defendant
   GOOGLE INC.

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  GOOGLE INC., a Delaware corporation,        Case No. C 03-5340-JF (RS)

12                              Plaintiff,       **SUPPLEMENTAL DECLARATION OF
                                                 KLAUS H. HAMM IN SUPPORT OF
13         v.                                    GOOGLE'S MOTION FOR SUMMARY
                                                 JUDGMENT**
14  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation        Date:       February 16, 2007
15  d/b/a decoratetoday.com, Inc., and           Time:       9 a.m.
    DOES 1-100, inclusive,                       Courtroom: 3, 5th Floor
16                                               Judge:      Hon. Jeremy Fogel
                             Defendants.
17

18  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation
19  d/b/a decoratetoday.com, Inc.,

20                        Counter Plaintiff,

21         v.

22  GOOGLE INC.,

23                       Counter Defendant.

24

25                        **PUBLIC VERSION**

26

27

28

389212.01
          SUPPLEMENTAL DECLARATION OF KLAUS H. HAMM IN SUPPORT OF GOOGLE'S MOTION FOR
                                      SUMMARY JUDGMENT
                                  CASE NO. C 03-5340-JF (RS)

                                                                        Dockets.Justia.com

1    I, Klaus H. Hamm, declare as follows:

2    1.    I am an attorney at the firm of Keker & Van Nest LLP, counsel for Plaintiff and

3    Counter-Defendant Google Inc., and am admitted to practice before this Court. I make this

4    supplemental declaration in support of Google's Motion for Summary Judgment. Unless

5    otherwise stated, I know the facts stated herein of my personal knowledge and if called as a

6    witness, I would testify competently thereto.

7    2.    Attached hereto as Exhibit A is a true and correct copy of Google's AdWord

8    Editorial Guidelines, Bates labeled GOOGLE 002717 – GOOGLE 002723.

9    3.    Attached hereto as Exhibit B is a true and correct copy of a letter from the Federal

10    Trade Commission to Mr. Gary Ruskin, dated June 27, 2002, and Bates labeled GOOGLE

11    008990 – GOOGLE 008993.

12    4.    Attached hereto as Exhibit C is a true and correct copy of a letter from Susan J.

13    Greenspon to Alana Karen, dated July 24, 2002, and Bates labeled GOOGLE 24572 – GOOGLE

14    24581.

15    5.    Attached hereto as Exhibit D is a true and correct copy of Google Inc.'s First Set

16    of Interrogatories to American Blind & Wallpaper Factory, Inc., dated May 21, 2004.

17    6.    Attached hereto as Exhibit E is a true and correct copy of American Blind &

18    Wallpaper Factory, Inc.'s Answers to Google, Inc.'s First Set of Interrogatories, dated June 10,

19    2005.

20    7.    Attached hereto as Exhibit F is a true and correct copy of a letter from Caroline

21    Plater to myself, dated February 17, 2006.

22    8.    Attached hereto as Exhibit G is a true and correct copy of excerpts from the

23    deposition transcript of Jeffrey Alderman, taken on August 4, 2006. Google has under separate

24    cover requested that this document be filed under seal.

25

26    I state under penalty of perjury of the laws of the United States of American that the

27    foregoing statements are true and correct. Executed February 2, 2007, at San Francisco,

28

389212.01

1  | California.

2

3  |                                              /s/ Klaus H. Hamm
4  |                                         KLAUS H. HAMM

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF KLAUS HAMM IN SUPPORT OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 03-5340-JF (RS)

389212.01

# Exhibit A

 **It's All About Results™**                                   <u>Contact Us</u> - <u>Help</u>

<u>AdWords Home</u>

<u>AdWords Support</u>

**Overview**
  <u>AdWords Advantages</u>
  <u>Program Comparison</u>
  <u>Success Stories</u>
  <u>News and Updates</u>
  <u>Demos and Guides</u>

**Getting Started**
  <u>Editorial Guidelines</u>
  <u>Step-by-Step</u>
  <u>Optimization Tips</u>
  <u>Account Navigation</u>
  <u>Keyword Tools</u>

## Google AdWords Editorial Guidelines
(I'd like to see the <u>Image Ad Editorial Guidelines</u> instead.)

The most effective advertising communicates a clear message to a targeted audience. Once you determine whom you want to reach and select appropriate keywords, you need to create ads that will inform your potential customers about the products and services you offer. The Google AdWords Editorial Guidelines will help you create effective ads to generate sales and meet your goals.

Underlying all the Editorial Guidelines are two simple principles that have worked for thousands of advertisers already in the program:

- Clearly and accurately describe your site.
- Emphasize the unique benefits of your product or service.

Our ultimate goal is your success, and we believe that providing a great user experience is the best way to ensure it. To run your ads on Google and our growing ad network of sites and products, you must adhere to these guidelines.

In cases where only minor changes are required for an ad to comply with our Editorial Guidelines, an AdWords Specialist may edit your ad for you. Examples of the type of edits we may make for you include the following: removing an exclamation point, removing or adding an extra space, and fixing a spelling error. However, Google shall not be responsible in the event that a change is not made to your ad text and a disapproval results. So, please be careful to follow the Editorial Guidelines to help ensure that your ads continue running.

### Ad Style & Grammar                                      ♫ <u>back to top</u>

## Use clear, direct language and avoid gimmicks.

### Use Standard Punctuation

- No repeated and unnecessary punctuation or symbols.
- Your title may not contain an exclamation point.
- Your ad text may only contain one exclamation point.

| Correct Ad | Correct because: |
|---|---|
| <u>Advertise with Google</u><br>Want fast results?<br>Create your campaign today!<br>adwords.google.com | No exclamation point in title.<br><br>Question mark used appropriately.<br><br>One exclamation point in ad text. |
| Incorrect Ad | Incorrect because: |
| <u>Advertise with Google!</u><br>Want fast results??<br>Create your campaign today!!<br>adwords.google.com | Exclamation point in title.<br><br>Repeated question marks on second line.<br><br>More than one exclamation point in ad text. |

CONFIDENTIAL
ATTORNEYS' EYES ONLY
GOOGLE 002717

8/11/2004

## Use Standard Capitalization

- No excessive capitalization such as "FREE" or "GOOGLE ADWORDS."
- Capitalization of the first letter of each word within your displayed URL is permitted.

| Correct Ad | Correct because: |
|---|---|
| Google AdWords<br>Effective CPC Advertising.<br>Fast Results Within Your<br>Budget!<br>AdWords.Google.com | Necessary capitalization for acronym, "CPC."<br><br>Acceptable capitalization in display URL. |
| Incorrect Ad | Incorrect because: |
| Google AdWords<br>EFFECTIVE CPC Advertising.<br>Fast results within your budget!<br>ADWORDS.GOOGLE.COM | Excessive capitalization of "EFFECTIVE."<br><br>Excessive capitalization in display URL. |

## No Repetition

- Avoid gimmicky repetition.

| Correct Ad | Correct because: |
|---|---|
| Google AdWords<br>CPC Ad Campaigns:<br>Fast, easy, and effective!<br>adwords.google.com | Ad clear without repetition. |
| Incorrect Ad | Incorrect because: |
| Google AdWords Ads<br>Ads, ads, ads are:<br>Fast, easy, and effective!<br>adwords.google.com | Gimmicky repetition in "Ads, ads, ads." |

## Use Correct Spelling

- Check that you use correct spelling.

GOOGLE 002718

## Use Proper Grammar

- Your ad text must be in logical sentence or phrase form and must contain grammatically correct spacing.
- The use of symbols, numbers, or letters must adhere to the true meaning of the symbol.

CONFIDENTIAL
ATTORNEYS' EYES ONLY

| Correct Ad | Correct because: |
|---|---|
| Google AdWords Ads<br>Advertising at affordable costs<br>Visit & then see if right for you!<br>adwords.google.com | Ad uses appropriate spacing, grammar, and symbols. |
| **Incorrect Ad** | **Incorrect because:** |
| GoogleAdWordsAds<br>Advertising @ affordable costs<br>Visit & than c if right 4 you!<br>adwords.google.com | Ad is missing spaces in title.<br>Incorrect grammar - 'than' instead of 'then.'<br>Symbols, numbers, letters do not adhere to their true meaning. |

**Keep It Concise**

- Please keep the following ad text limits in mind when planning your ads. We believe that concise ads provide a great user experience and ultimately contribute to your success.
- Ad titles are limited to 25 characters.
- The two description lines and display URL are limited to 35 characters each.

## Ad and Keyword Relevance                         🏠 back to top

## Your keywords and ad text must be relevant to your site, products, or services.

### Write Accurate Ad Text

- Your ad text and keywords must directly relate to the content on the landing page for your ad.
- Distinguish your ad by including your company name, line of business, or product in your ad text or title.
- If you offer a local service or product, clearly indicate your location in your ad text.

*Example:*
If your alterations business only services San Francisco, you should include "San Francisco" in your ad text, mention your company's particular specialty, "experts in reweaving fine garments," and link to a page that displays this service.

### Target Specific Keywords

- Use specific keywords that accurately reflect your site.
- Use keywords that reflect your location if you offer a location-specific product or service.

*Example:*
A San Francisco apartment rental agency would not be allowed to run on only the keyword "rentals." The agency would have to use keywords such as "San Francisco rental agency" or "Bay Area apartments."

CONFIDENTIAL    **GOOGLE 002719**
ATTORNEYS' EYES ONLY

## Ad Content

⋒ back to top

## Should be informative, targeted, and represent your uniqueness.

#### Prescription Drugs and Related Content

- Websites advertising prescription drugs or using prescription drug keywords targeted to the U.S. must provide a valid SquareTrade Identification number. SquareTrade membership is only available for online pharmacies based in the U.S. or Canada; therefore, international online pharmacies must not include the U.S. within their location targeting. Review our FAQ for further details or review Google's Online Pharmacy Qualification Program.

  If you do not feel this policy applies to you, you can also request an exception for a particular ad or keyword during the ad creation process.

#### Gambling

- Google is dedicated to providing relevant and high-quality ads that contribute to a positive user experience. Therefore we do not permit ads for online casinos, sports books, bingo, and affiliates with the primary purpose of driving traffic to online gambling sites.

#### Follow Proper Trademark Usage

- Trademarks are important business assets that can diminish in value if they are not used correctly. We encourage you to familiarize yourself with our trademark policy and our Trademark Guidelines, which provides some basic information about trademarks and offers specifics on the proper use of trademarks belonging to Google or others.

#### Maintain Google Standards

- As a business, Google must make decisions about where we draw the line in regards to the advertising we accept, both from a legal and company values perspective. We, therefore, may not accept ad text, ads, or keywords containing or relating to certain products or services. We reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site, as noted in our advertising terms and conditions. Please note that the decisions we make concerning advertising in no way affect the search results we deliver.

#### Identify Affiliate Status

- If you are an affiliate and are paid to send traffic to another site or a distributor, you must identify yourself as an affiliate or a distributor in your ad text.

  *Example:*

CONFIDENTIAL
ATTORNEYS' EYES ONLY    GOOGLE 002720

Insert the word "affiliate" or "distributor" in your ad text or title.

---

### Support Competitive Claims

- If your ad text contains comparative language regarding competitors, support for this claim must be displayed on the landing page for your AdWords ad.

---

### Avoid Superlatives

- If your ad contains comparative or subjective phrases such as "Best," "Cheapest," "Top," or "#1," verification by a third party must be clearly displayed on your website.

---

### Support Advertised Prices, Discounts, and Free Offers

- If your ad includes a price, special discount, or 'free' offer, it must be clearly and accurately displayed on your website within 1-2 clicks of your ad's landing page.

  *Example:*
  If you mention that you are selling socks for 20% off in your ad text, your Destination URL should link to a page that clearly displays socks at the discounted price.

---

### No Unacceptable Phrases

- Your ad cannot contain universal call-to-action phrases such as "click here," "link here," "visit this link," "this site is," or other similar phrases that could apply to any ad, regardless of content.
- Use a call-to-action unique to the service or product you provide.
- The limited text space should be used for concise, informative language that sets you apart from your competition.
- Phrases in the 3rd line of your ad cannot continue into the Display URL.

| Correct Ad | Correct because: |
|---|---|
| Target your Ads w/AdWords<br>Create an AdWords account today!<br>Visit Google.com to learn more.<br>adwords.google.com | Uses unique call-to-action phrases.<br><br>3rd line is independent from Display URL |
| **Incorrect Ad** | **Incorrect because:** |
| Google AdWords<br>For an account - click here<br>To learn more visit this link:<br>adwords.google.com | Unacceptable phrases 'click here' and 'visit this link.'<br><br>3rd line continues into the Display URL. |

CONFIDENTIAL
ATTORNEYS' EYES ONLY

GOOGLE 002721

### No Inappropriate Language

- Your ad cannot contain offensive or inappropriate language.

### Non-Family Safe & Adult Sexual Content

- Ads are reviewed and categorized as "FamilySafe," "Non-FamilySafe," or "Adult Sexual Content" on a case-by-case basis.
- After our AdWords Specialists categorize the ads, Google generally allows ads containing adult themes, such as explicit sexual content, provided that they meet the conditions for AdWords advertising.
- These ads may not be accepted on our ad network of sites and products. Therefore, there is a possibility that your ads will appear only on Google search results pages.

## Links                                                                 ⬆ back to top

### Your URLs must work and accurately reflect your ad and site.

#### Display URL Must be Accurate

- Your Display URL must accurately reflect the URL of your website. If your actual destination URL link is too long for your ad, use a shortened version (such as your homepage) that meets the character limit for this field.
- The Display URL field cannot be used as another line of ad text.
- Your Display URL must include the domain extension, for example: .com, .net, or .org.

  *Example:*
  Destination URL: http://www.shoesforsale.com/ladiesshoes/highheels.html
  Display URL: www.shoesforsale.com

#### Destination URL Must Work

- Your Destination URL must work properly. Check your spelling and symbols to make sure you entered the correct URL for the page you want users to visit.
- Your Destination URL must link to a working website. You cannot link to an email address or a file (ex. an image, audio, video, or document file that requires an additional program or application to open or run).
- The landing page for your ad cannot be under construction. We require your Destination URL to link to an actual web page with content relevant to your ad. When your site is under construction or down for maintenance, you must pause your Ad Group(s).

GOOGLE 002722

#### No Pop-ups

- We do not allow links to landing pages that generate pop-ups when users enter

CONFIDENTIAL
ATTORNEYS' EYES ONLY

# Exhibit B



**Bureau of Consumer
Protection
Division of Advertising
Practices**

**UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580**

June 27, 2002

Mr. Gary Ruskin
Executive Director
Commercial Alert
3719 SE Hawthorne Blvd.
Suite 281
Portland, OR 97214

> Re    Complaint Requesting Investigation of Various Internet Search Engine Companies
> for Paid Placement and Paid Inclusion Programs

Dear Mr. Ruskin:

This letter responds to the July 16, 2001 complaint filed by Commercial Alert requesting that the Federal Trade Commission ("FTC" or "Commission") investigate whether Alta Vista Co., AOL Time Warner, Inc., Direct Hit Technologies, iWon, Inc., Looksmart, Ltd., Microsoft Corp., and Terra Lycos S.A. (hereinafter, "named search engine companies") are violating Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1),(1) by failing to disclose that advertisements are inserted into search engine results lists.

### I. Overview

Your complaint alleges that when search engines include Web sites in search results lists, on the basis of "paid placement" and "paid inclusion," such search results are advertisements. Your complaint contends that "without clear and conspicuous disclosure that the ads are ads," such "concealment may mislead search engine users to believe that search results are based on relevancy alone, not marketing ploys." After careful review, the staff of the Bureau of Consumer Protection has determined not to recommend that the Commission take formal action against the search engine companies listed in your complaint at this time. That determination should not, however, be construed as a determination by either the Bureau of Consumer Protection or the Commission as to whether or not the practices described in your complaint violate the FTC Act or any other statute enforced by the Commission.

Although the staff is not recommending Commission action at this time, we are sending letters to search engine companies outlining the need for clear and conspicuous disclosures of paid placement, and in some instances paid inclusion, so that businesses may avoid possible future Commission action. In addition, this response to your complaint will be placed on the Commission's public record and on the FTC's Web site.(2) For the most part, the staff believes that while many search engine companies do attempt some disclosure of paid placement, their current disclosures may not be sufficiently clear. The staff also believes that, depending on the nature of the paid inclusion program, there should be clearer disclosure of the use of paid inclusion, including more conspicuous descriptions of how any such program operates and its impact on search results. As a general matter, clear and conspicuous disclosures would put consumers in a better position to determine the importance of these practices in their choice of search engines to use.

GOOGLE 008990

### II. Paid Placement and Paid Inclusion

In conducting its review, the staff considered "paid placement" to be any program in which individual Web sites or URLs can pay for a higher ranking in a search results list, with the result that relevancy measures alone do not dictate their rank. The staff considered "paid inclusion" to be any program in which individual Web sites or URLs are included in a search engine's index, or pool, of sites available for display as search results, when that Web site or URL might not otherwise have been included, or might not have been included at a particular point in time, but for participation in the paid program.

### A. Paid Placement

Paid placement programs can take many forms. Search engines may operate their own paid placement programs or obtain search results from third parties who in turn operate paid placement programs. The staff agrees that search engines should clearly and conspicuously disclose that certain Web sites or URLs have paid for higher placement in the display of search results. This information is likely to be important to consumers,(3) who otherwise might believe that the sites placed higher up in the list were independently chosen and ranked as being more relevant to the consumer's search query than those search results placed further down in the list. The failure to disclose paid placement adequately within search results deviates from the established deception principle of clearly distinguishing editorial content from advertising content.(4) The purpose of such a demarcation is to advise consumers as to when they are being solicited, as opposed to being impartially informed.

Because search engines historically displayed search results based on relevancy to the search query, as determined by algorithms or other objective criteria, the staff believes that consumers may reasonably expect that the search results displayed by individual search engines are ranked in accordance with this standard industry practice - that is, based on a set of impartial factors. Thus, a departure from the standard practice, such as a search engine's insertion of paid-for placements in the search list, may need to be disclosed clearly and conspicuously to avoid the potential for deception.

Thus, any Web sites or URLs that have paid to be ranked higher than they would be ranked by relevancy, or other objective criteria, should be clearly labeled as such using terms conveying that the ranking is paid for. In the staff's view, to avoid deception such labels need to convey that the sites listed are placed higher, or otherwise presented more prominently, because they have paid for their ranking or position, rather than solely based on some objective criteria relating to the probable relevance of their content to any particular search request.

Paid placement listings may also be denoted by segregating them from non-paid listings. Each separate set of paid placement listings should be clearly labeled as such so they can be easily distinguished from other types. Of the 12 search sites owned or operated by the 7 named search engine companies, 11 segregate paid ranking results by placing them above the non-paid results or prominently elsewhere. Many of these sites appear to be headed in the right direction, using terms such as "Sponsored Links" or "Sponsored Search Listings" to denote payment for rankings. In some cases, these sites display more than one set of paid placement listings, and these additional listings are labeled using terms such as "Recommended Sites," "Featured Listings," "Premier Listings," "Search Partners," "Provided by the [_____] Network," or "Start Here." Other sites use much more ambiguous terms such as "Products and Services," "News," "Resources," "Featured Listings," "Partner Search Results," or "Spotlight," or no labels at all.(5) To avoid deception, these sites should be labeled to better convey that paid placement is being used.

The staff is encouraging search engine companies to make changes to their paid-ranking search results to clearly delineate them as such, whether they are segregated from, or inserted into, non-paid listings. Factors to be considered in making such a disclosure clear and conspicuous are prominence, placement, presentation (i.e., it uses terms and a format that are easy for consumers to understand, and that do not contradict other statements made), and proximity to a claim that it explains or qualifies.

### B. Paid Inclusion

GOOGLE 008991

Paid inclusion can take many forms. Examples of paid inclusion include programs where the only sites listed are those that have paid; where paid sites are intermingled among non-paid sites; and where companies pay to have their Web sites or URLs reviewed more quickly, or for more frequent spidering of their Web sites or URLs, or for the review or inclusion of deeper levels of their Web sites, than is the case with non-paid sites. As with paid placement, search engines may operate their own paid inclusion programs or obtain search results from third parties who in turn operate paid inclusion programs.

To the extent that paid inclusion does not distort the ranking of a Web site or URL, many of these programs provide benefits to consumers, by incorporating more Web sites - or content - into an individual search engine's database than might otherwise be the case. This can give consumers a greater number of choices in search results lists.(6)

In other instances, the intermingling of non-paid Web sites with paid-inclusion Web sites in the search database may cause consumer confusion and mislead consumers as to the reasons for a Web site's or URL's inclusion in the search results. If the program distorts rankings, the program or its impact on rankings should be prominently disclosed. And certainly, if all Web sites included in a search guide or a search engine's database have paid to be included, so that the search engine is essentially an advertising medium, that fact should be disclosed adequately to avoid deception. Accordingly, the staff is encouraging search engines that offer paid inclusion programs to clearly describe how sites are selected for inclusion in their indices.

In short, through the use of clear and conspicuous disclosures, consumers should be able to easily locate a search engine's explanation of any paid inclusion program, and discern the impact of paid inclusion on search results lists. In this way, consumers will be in a better position to determine whether the practice of paid inclusion is important to them in their choice of the search engines they use. Currently, although certain of the named search engines do, in fact, use paid inclusion, in the staff's view none of them adequately discloses its usage or offers clear and conspicuous explanations of its impact on search results. In the staff's view, labels such as "Web Directory Sites," "Results," "Matching Sites," and "Reviewed Web Sites" may not clearly convey that certain sites or URLs in the search result list, or perhaps all of the sites or URLs in the search database, are participants in a paid inclusion program, rather than being included based on some other criteria that may not involve payment.(7)

### III. Conclusion

In short, the staff is recommending that all search engine companies(8) review their Web sites and make any changes necessary to ensure that:

- any paid ranking search results are distinguished from non-paid results with clear and conspicuous disclosures;
- the use of paid inclusion is clearly and conspicuously explained and disclosed; and
- no affirmative statement is made that might mislead consumers as to the basis on which a search result is generated.

To the extent that search engine companies provide search results to third-party Web sites, including other search engines or guides, we are encouraging the companies to discuss with the third-party Web sites whether the above criteria are being met with respect to any supplied search results that involve a payment of any kind for ranking, insertion of paid results into unpaid results, or any pay-for-inclusion program.

The staff recognizes that search engine companies' business models vary and that there is a need for flexibility in the manner in which paid placement and paid inclusion are clearly and conspicuously disclosed. We encourage all companies making disclosures online to review and implement guidance provided in the Commission's business education piece, Dot Com Disclosures: Information About Online Advertising, which discusses how to make clear and conspicuous disclosures online.(9)

GOOGLE 008992

We appreciate your bringing this matter to our attention. Complaints from groups such as yours are a helpful means of reviewing possible unfair or deceptive practices, and we hope you will continue to bring to our attention any practices that you believe may violate the FTC Act.

Very truly yours,

Heather Hippsley
Acting Associate Director
Division of Advertising Practices

Attachment

Endnotes:

1. Section 5 of the FTC Act prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission will find deception if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. See FTC Policy Statement on Deception, appended to Cliffdale Associates, Inc., 103 F.T.C. 110, 174 (1984).

2. Your complaint has become public by virtue of its placement on your Web site, www.commercialalert.org.

3. Currently, there are very few studies on this subject. A Consumers Union national survey found that 60% of U.S. Internet users had not heard or read that certain search engines were paid fees to list some sites more prominently than others in their search results. After being told that some search engines take these fees, 80% said it is important (including 44% who said it is very important) for a search engine to disclose, in its search results or in an easy-to-find page on its site, that it is being paid to list certain sites more prominently. If clearly told in the search results that some sites are displayed prominently because they paid, 30% said they would be less likely to use that search engine, 10% said more likely, and 4% said don't know/refused. Consumers Union also reported that "given the complicated situation, 56% say it would make no difference to them." It stated that the "combination of users' low level of knowledge of search engine practices and their strong demand that search engines should come clean leaves users splintered about how to react." See "A Matter of Trust: What Users Want From Web Sites," www.consumerwebwatch.com/news/report1.pdf (Apr. 16, 2002). A recent BBC-commissioned survey found that 71% of U.K. users were unaware that some search engines let advertisers pay to get more prominent positions in search results. See, e.g., "BBC Launches its Non-Commercial Search Engine in Response to 'Tainted' Results," VentureReporter.net (May 2, 2002).

4. The Commission has brought actions against infomercial producers for failure to disclose that a television show was not an independent program but was, instead, a paid commercial advertisement. See, e.g., National Media Corp., 116 F.T.C. 549 (1993) (consent order). Similarly, the Commission alleged as deceptive the use of misleading formats that made an advertisement appear to be an independently written article published in a magazine. See, e.g., Georgetown Publishing House Limited Partnership, 122 F.T.C. 392 (1996) (consent order).

5. We note that several search engines not named in the complaint also use labels such as "Featured Search Results" and "Premier Listings" to denote paid-for higher rankings; some, however, provide no indication at all that certain sites have paid for their higher positions.

6. Indeed, if the pay-for-inclusion mechanism does not distort the placement criteria, this fact might be a positive selling point for search engines.

7. Similarly, several of the named search engines that obtain listings from third parties using paid inclusion programs display the third-party's logo or terms such as "Provided By ____" or "Powered By ____" at the bottom of their search results lists. The staff believes that, as disclosures, these measures are not conspicuously located nor do they adequately explain the existence of paid inclusion or its impact on the search results list.

8. This would include the named search engine companies, and other companies providing similar Internet search services to consumers, as well as meta search engines that submit simultaneous search queries to (and display results from) numerous third-party search engines.

9. Dot Com Disclosures: Information About Online Advertising is available on the FTC Web site at www.ftc.gov/bcp/conline/pubs/buspubs/dotcom/index.pdf.

GOOGLE 008993

# Exhibit C

JUL 24 2002 14:25 FR KELLEY DRYE & WARREN　　　TO 916506181499　　　P.01/10

# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Ms. Alana Karen |
| **FIRM** | AdWords Trademark Complaints |
| **CITY** | Mountain View, CA |
| **FAX** | 650-618-1499 |
| **PHONE** | |
| **NO. OF PAGES** | *10* (including this page) |
| **DATE** | July 24, 2002 |

**KELLEY DRYE & WARREN LLP**
**333 WEST WACKER DRIVE**
**SUITE 810**
**CHICAGO, ILLINOIS 60606**
**(312) 857-7070**
**FAX (312) 857-7095**

**MESSAGE:**　　Please see attached.

| | |
|---|---|
| **FROM** | Susan J. Greenspon |
| **PHONE** | (312) 857-7080 |
| **E-MAIL** | sgreenspon@kelleydrye.com |
| **TIMEKEEPER ID** | 04500 |
| **CLIENT NO.** | 014405-0002 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS
HONG KONG

AFFILIATE OFFICES
BANGKOK
JAKARTA
MUMBAI
TOKYO

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (312) 857-7238.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

CH02/GREES/8.1

GOOGLE 24572

CONFIDENTIAL

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE

### CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
LOS ANGELES, CA
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM
HONG KONG

AFFILIATE OFFICES
BANGKOK, THAILAND
JAKARTA, INDONESIA
MUMBAI, INDIA
TOKYO, JAPAN

SUSAN J. GREENSPON

DIRECT LINE: (312) 857-7080

EMAIL: sgreenspon@kelleydrye.com

July 23, 2002

VIA FACSIMILE 650.618.1499 AND MAIL.

Ms. Alana Karen
AdWords Trademark Complaints
Google
2400 Bayshore Parkway
Mountain View, CA 94043

Re:    American Blind and Wallpaper Factory Trademark Complaints

Dear Ms. Karen:

    We are trademark counsel to American Blind and Wallpaper Factory, Inc. d/b/a decoratetoday.com, Inc. ("ABWF"). In connection therewith, it has come to our attention that several of ABWF's competitors have purchased advertising keywords from Google that are identical or substantially similar to ABWF's registered trademarks. We understand that ABWF contacted Google to resolve this issue and was informed that Google would rectify this situation only if such competitors purchased ABWF's "full" trademark.

    As you probably know, federal and state trademark law protects a trademark owner's commercial identity (goodwill, reputation and investment in advertising) by giving such owner the exclusive right to use the trademark for its goods or services. What you may not know is that trademark law also protects the trademark owner from any person or entity that uses a trademark (i.e. keyword, word, name, symbol or device) that so *resembles a trademark already in use as to be likely to cause confusion or mistake* in the marketplace. Furthermore, federal law protects trademarks that are unregistered.

    ABWF is the owner of and has the exclusive rights to use the following trademarks registered with the United States Patent and Trademark Office ("USPTO"):

CH02/CARTS/11016.3

GOOGLE 24573

CONFIDENTIAL

**KELLEY DRYE & WARREN LLP**

Ms. Alana Karen
July 23, 2002
Page Two

| Mark | Reg. Number | Reg. Date |
|------|-------------|-----------|
| AMERICAN BLIND & WALLPAPER FACTORY | 2,022,925 | 12/17/96 |
| AMERICAN BLIND FACTORY | 1,463,548 | 11/3/87 |
| DECORATETODAY | 2,470,542 | 7/17/01 |

(See enclosed web site pages from the USPTO).

ABWF is recognized and well known in the home decorating industry and to consumers nationwide as "American Blind" and "decoratetoday." Many of ABWF's competitors have exploited the notoriety and success of ABWF, and flagrantly attempted to confuse consumers and capitalize illegally on ABWF goodwill and reputation by purchasing identical or substantially similar keywords from search engines. ABWF has been vigilant in defending its marks from infringement and dilution at all costs. As an example, ABWF was awarded in the matter of *Decoratetoday.com, Inc. (d/b/a American Blind and Wallpaper Factory, Inc.) v. American Blind & Accessory Co., Inc. and Directory One, Inc.*, Case No. 01-CV-70804-DT, a permanent injunction by the United States District Court for the Eastern District of Michigan, permanently enjoining the defendants from using ABWF's "trademarks, service marks or the word 'American' in any variation or combination with the word 'Blinds' either singular or plural...." We would be glad to send you a copy of the Permanent Injunction Order if you would like to read it in its entirety. Please note that ABWF was successful in defending not only its registered marks, but marks that were confusingly similar thereto. Consequently based upon federal law and precedent, use of the following similar marks by Google's advertisers constitutes infringement of ABWF's registered marks:

| | |
|---|---|
| american blind | american blind wallpaper |
| american blind and wall covering | american blind wallpaper company |
| american blind and wallpaper | american blind wallpaper factory |
| american blind and wallpaper co | american home decorating |
| american blind and wallpaper company | american wall covering |
| american blind and wallpaper discount | american wallpaper |
| american blind and wallpaper factory | american wallpaper and blind |
| american blind and wallpaper factory discount | american wallpaper company |
| | american wallpaper discount |
| american blind and wallpaper outlet | american wallpaper factory |
| american blind company | americanblind |
| american blind discount | americanblindfactory.com |
| american blind factory | americanblindandwallpaperfactory |

CH02/CARTS/11016.3

GOOGLE 24574

**CONFIDENTIAL**

### KELLEY DRYE & WARREN LLP

Ms. Alana Karen
July 23, 2002
Page Two

| | |
|---|---|
| americanhomedecorating.com | decorate today.com |
| americanwallpaper | decoratetoday .com |
| americanwallpaperfactory.com | decoratetoday com |
| decorate today | decoratetodaycom |
| decorate today discount | decoratetoday.com |
| decoratetoday | |

  In light of the foregoing, we request Google to immediately (a) cease selling ABWF's proprietary marks and marks similar thereto (as set forth above), (b) remove such marks from all campaigns, and (c) remove all advertisers who have purchased such marks (including Wallpaper Wholesaler, Tuggles.net, ezblinds, USA Wallpaper, Window Designer, and Blinds Galore). Please contact the undersigned at (312) 857-7080 with regard to how you wish to proceed with this matter.

Sincerely,

Susan Greenspon

SG/sec
Enclosures

cc: Steve Katzman

CH02/CARTS/11016.3

GOOGLE 24575

CONFIDENTIAL

JUL 24 2002 14:26 FR KELLEY DRYE & WARREN          TO 916506181499       P.05/10

TESS - Document Display                                          Page 1 of 2

 

## UNITED STATES PATENT AND TRADEMARK OFFICE

*TESS was last updated on Tue Jul 23 04:28:42 EDT 2002*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Please logout when you are done to release system resources allocated for you.

List At: [          ] OR [          ] to record: [          ]   **Record 7 out of 11**

Check Status   *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **AMERICAN BLIND** FACTORY |
| **Goods and Services** | IC 020. US 032. G & S: WINDOW BLINDS. FIRST USE: 19860410. FIRST USE IN COMMERCE: 19860410 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 73651046 |
| **Filing Date** | March 23, 1987 |
| **Published for Opposition** | August 11, 1987 |
| **Registration Number** | 1463548 |
| **Registration Date** | November 3, 1987 |
| **Owner** | (REGISTRANT) AMERICAN BLIND FACTORY, INC. CORPORATION MICHIGAN SUITE 750 3000 TOWN CENTER SOUTHFIELD MICHIGAN 48075 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | ALLEN M. KRASS |

GOOGLE 24576

**CONFIDENTIAL**

http://tess.uspto.gov/bin/showfield?f=doc&state=c8de3t.2.7

TESS - Document Display                                    Page 2 of 2

| | |
|---|---|
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BLIND FACTORY" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | THE LINING IN THE DRAWING DOES NOT REPRESENT COLOR. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP | PREV LIST
CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

GOOGLE 24577

CONFIDENTIAL

 UNITED STATES PATENT AND TRADEMARK OFFICE



*TESS was last updated on Tue Jul 23 04:28:42 EDT 2002*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**LOGOUT** Please logout when you are done to release system resources allocated for you.

**START** List At: [        ] OR **JUMP** to record: [        ]   **Record 4 out of 11**

**Check Status** *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



AMERICAN BLIND & WALLPAPER FACTORY

| Word Mark | **AMERICAN BLIND & WALLPAPER FACTORY** |
| Goods and Services | IC 042. US 100 101. G & S: retail mail order services in the field of wall and window coverings. FIRST USE: 19860500. FIRST USE IN COMMERCE: 19860500 |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 090110 200302 |
| Serial Number | 74636528 |
| Filing Date | February 21, 1995 |
| Published for Opposition | September 24, 1996 |
| Registration Number | 2022925 |
| Registration Date | December 17, 1996 |
| Owner | (REGISTRANT) COLOR TILE, INC. CORPORATION DELAWARE 515 Houston Street Fort Worth TEXAS 76102 |
| Assignment Recorded | ASSIGNMENT RECORDED |

GOOGLE 24578

CONFIDENTIAL

| | |
|---|---|
| **Attorney of Record** | Robert A. Felsman |
| **Prior Registrations** | 1463548 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BLIND & WALLPAPER FACTORY" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | The lining shown in the drawing is a feature of the mark and not intended to indicate color. |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP | PREV LIST

CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

GOOGLE 24579

**CONFIDENTIAL**

JUL 24 2002 14:27 FR KELLEY DRYE & WARREN          TO 916506181499       P.09/10
TESS - Document Display                                                  Page 1 of 2



## UNITED STATES PATENT AND TRADEMARK OFFICE



*TESS was last updated on Tue Jul 23 04:28:42 EDT 2002*

[PTO HOME] [TRADEMARK] [TESS HOME] [NEW USER] [STRUCTURED] [FREE FORM] [BROWSE DICT] [BOTTOM] [HELP] [PREV LIST]
[CURR LIST] [NEXT LIST] [FIRST DOC] [PREV DOC] [NEXT DOC] [LAST DOC]

[LOGOUT] Please logout when you are done to release system resources allocated for you.

[START] List At: [      ] OR [JUMP] to record: [      ]  **Record 2 out of 4**

[Check Status] *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

**Typed Drawing**

| | |
|---|---|
| **Word Mark** | DECORATETODAY |
| **Goods and Services** | IC 035. US 100 101 102. G & S: RETAIL STORE SERVICES AND ON-LINE RETAIL MAIL ORDER SERVICES IN THE FIELD OF WALL AND WINDOW COVERINGS AND HOME DECORATING PRODUCTS. FIRST USE: 20000400. FIRST USE IN COMMERCE: 20000400 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75841054 |
| **Filing Date** | November 4, 1999 |
| **Filed ITU** | FILED AS ITU |
| **Published for Opposition** | May 16, 2000 |
| **Registration Number** | 2470542 |
| **Registration Date** | July 17, 2001 |
| **Owner** | (REGISTRANT) DECORATETODAY.COM, INC. CORPORATION DELAWARE 909 NORTH SHELDON ROAD PLYMOUTH MICHIGAN 48170 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Elizabeth F Janda |
| **Type of Mark** | SERVICE MARK |

GOOGLE 24580

**CONFIDENTIAL**

http://tess.uspto.gov/bin/showfield?f=doc:&state=lde71f2.2                    7/23/2002

| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP | PREV LIST
CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

GOOGLE 24581

CONFIDENTIAL

http://tess.uspto.gov/bin/showfield?f=doc&state=mb71f2.2

# Exhibit D

KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
MARK A. LEMLEY - #155830
RAVIND S. GREWAL - #220543
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff and Counterdefendant
GOOGLE INC. and Third-Party Defendants
ASK JEEVES, INC. and EARTHLINK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.; and DOES 1-100, inclusive,<br><br>                              Defendants. | Case No. C 03-5340-JF (EAI)<br><br>**GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO AMERICAN BLIND & WALLPAPER FACTORY, INC.** |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.<br><br>                              Counterclaimant,<br><br>        v.<br><br>GOOGLE, INC., AMERICA ONLINE, INC., NETSCAPE COMMUNICATIONS CORPORATION, COMPUSERVE INTERACTIVE SERVICES, INC., ASK JEEVES, INC., and EARTHLINK, INC.,<br><br>                              Counterdefendants/<br>                              Third-Party Defendants. | |

| 1 | PROPOUNDING PARTY: | Plaintiff GOOGLE INC. |
|---|---|---|
| 2 | RESPONDING PARTY: | Defendant AMERICAN BLIND & WALLPAPER FACTORY, INC. |
| 3 | | |
| 4 | SET NO.: | ONE |

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Google Inc. ("Google") requests that Defendant American Blind & Wallpaper Factory, Inc. ("American Blind") respond to the following interrogatories separately, fully and under oath within 30 days of their service.

## DEFINITIONS

1.      "AMERICAN BLIND" means American Blind, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

2.      "GOOGLE" means Google, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

3.      The phrase "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

4.      The term "COMMUNICATION(S)" means every manner or method of disclosure or transfer or exchange of information, whether oral or by document, and whether face-to-face, by telephone, mail, personal delivery or otherwise.

5.      The term "IDENTIFY" means:

(a)      with respect to a person, that person's:  full name, last known home and business address, responsibilities with respect to the subject matter of the interrogatory, and the periods of time that person had such responsibilities;

(b)      with respect to a corporation, partnership or other business entity, that

1

332246.01

1 entity's full name including any "dba" names, form of organization, and address of principal

2 place of business;

3            (c)    with respect to a document or thing:  a description sufficient in specificity

4 such that the document or thing can be unambiguously obtained by means of such description in

5 a request for production pursuant to Federal Rule 34, which will include, where applicable, the

6 document or thing's title, date, author(s) or creator, recipient(s) and present location;

7            (d)    with respect to a COMMUNICATION:  a description including the names

8 of the parties to the COMMUNICATION, the date of the COMMUNICATION, the substance of

9 the COMMUNICATION, and all documents containing or relating to the COMMUNICATION.

10       6.    The term "STATE" means to state with particularity all facts known that bear

11 upon or are related to the matter that is the subject of the inquiry, using the simplest and most

12 factual statements of which you are capable.

13       7.    The words "and" and "or" shall be construed in the conjunctive or disjunctive,

14 whichever makes the request more inclusive.

15       10.    "Any" shall mean one or more; "each" shall mean "each and every."

16                              **INSTRUCTIONS**

17       1.    If American Blind elects to answer any interrogatory pursuant to Federal Rule of

18 Civil Procedure 33(d), Google requests that American Blind identify the particular documents

19 relating to the subject matter of the specific interrogatory, and separately for each document, the

20 date the document bears, the title of the document, if any, the identity of the authors of the

21 document, the identity of each addressee or recipient of the document, the type and subject

22 matter of the document and the present location or custodian of the document.

23       2.    If American Blind cannot answer an interrogatory in full, American Blind is

24 hereby directed to answer it to the fullest extent possible, specify the reasons for its inability to

25 answer the remainder, and state whatever information or knowledge American Blind has

26 concerning the unanswered portion.

27                              **INTERROGATORIES**

28

**INTERROGATORY NO. 1:**

IDENTIFY, by title, court or tribunal, and case number, all litigation in which AMERICAN BLIND is or has been a party.

**INTERROGATORY NO. 2:**

IDENTIFY each COMMUNICATION RELATING TO GOOGLE between AMERICAN BLIND and any other individual or entity.

**INTERROGATORY NO. 3:**

IDENTIFY all persons that you believe have personal knowledge of facts relevant to this lawsuit.

**INTERROGATORY NO. 4:**

STATE all facts supporting AMERICAN BLIND's contention that "the American Blind Marks have acquired an outstanding celebrity as a source of quality home decorating products and related services."

**INTERROGATORY NO. 5:**

STATE all facts supporting AMERICAN BLIND's contention that "Google intentionally has designed its financially lucrative 'AdWords' program to maximize the infringement and dilution of American Blind's marks."

**INTERROGATORY NO. 6:**

STATE all facts supporting AMERICAN BLIND's contention that "Defendants and their advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such as American Blind."

**INTERROGATORY NO. 7:**

STATE all facts supporting AMERICAN BLIND's contention that "[t]he manipulated search engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a source of its goods and services."

**INTERROGATORY NO. 8:**

STATE all facts supporting AMERICAN BLIND's contention that "American Blind's customers have been and will likely continue to be confused about the origin and sponsorship of

1    the companies other than American Blind listed by the Defendants in their deceptive search

2    engine 'results.'"

3    **INTERROGATORY NO. 9:**

4         STATE all facts supporting AMERICAN BLIND's contention that "Defendants' actions

5    have caused damage and irreparable injury to American Blind."

6    Dated: May 21, 2004                                    KEKER & VAN NEST, LLP

7

8

9                                              By: _____
                                                   MICHAEL H. PAGE
10                                                 Attorneys for Plaintiff and Counterdefendant
                                                   GOOGLE INC. and Third-Party Defendants
11                                                 ASK JEEVES, INC. and EARTHLINK, INC.,

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On May 21, 2004, I served the following document(s):

**GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO AMERICAN BLIND & WALLPAPER FACTORY, INC.**

☑    by **PDF TRANSMISSION AND UNITED STATES MAIL**, by transmitting via PDF on this date. A true and correct copy of same was placed in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Susan J. Greenspon                           Robert N. Phillips
David A. Rammelt                             Howrey Simon Arnold & White, LLP
Kelley Drye & Warren LLP                     525 Market Street, Suite 3600
333 West Wacker Drive                        San Francisco, CA 94105-2708
Chicago, IL 60606                            Telephone:    415/848-4900
Telephone:    312/857-7070                   Facsimile:    415/848-4999
Facsimile:    312/857-7095

Stephen E. Taylor
Taylor & Company Law Offices, Inc.
One Ferry Building, Suite 355
San Francisco, CA 94111-4209
Telephone:    415/788-8200
Facsimile:    415/788-8208

Executed on May 21, 2004, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Noelle Nichols_
_____
NOELLE S. NICHOLS

PROOF OF SERVICE
CASE NO. C 03-5340-JF (EAI)

# Exhibit E

1   Robert N. Phillips (SBN 120970)
    Ethan B. Andelman (SBN 209101)
2   HOWREY, LLP
    525 Market Street, Suite 3600
3   San Francisco, CA  94105
    Telephone:  (415) 848-4900
4   Facsimile:   (415) 848-4999

5   David A. Rammelt (Admitted *Pro Hac Vice*)
    Susan J. Greenspon (Admitted *Pro Hac Vice*)
6   Dawn M. Beery (Admitted *Pro Hac Vice*)
    KELLEY DRYE & WARREN LLP
7   333 West Wacker Drive, Suite 2600
    Chicago, IL  60606
8   Telephone:  (312) 857-7070
    Facsimile:  (312) 857-7095
9
    Attorneys for Defendant/Counter-Plaintiff
10  AMERICAN BLIND AND WALLPAPER
    FACTORY, INC.
11
                    UNITED STATES DISTRICT COURT
12                  NORTHERN DISTRICT OF CALIFORNIA

13  GOOGLE INC., a Delaware corporation,          Case No. C 03-5340-JF (EAI)

14              Plaintiff,                         **AMERICAN BLIND & WALLPAPER
                                                   FACTORY, INC.'S ANSWERS TO
15         v.                                      GOOGLE, INC.'S FIRST SET OF
                                                   INTERROGATORIES**
16  AMERICAN BLIND & WALLPAPER
17  FACTORY, INC., a Delaware corporation
    d/b/a decoratetoday.com, Inc.; and DOES 1-
18  100, inclusive,

19              Defendants.

20  AMERICAN BLIND & WALLPAPER
    FACTORY, INC., a Delaware corporation
21  d/b/a decoratetoday.com, Inc.,

22              Counter-Plaintiff,

23         v.

24  GOOGLE, INC., AMERICA ONLINE, INC.,
    NETSCAPE COMMUNICATIONS
25  CORPORATION, COMPUSERVE
    INTERACTIVE SERVICES, INC., ASK
26  JEEVES, INC., and EARTHLINK, INC.

27              Counter-Defendants/
                Third-Party Defendants
28

HOWREY LLP  American Blind's Answers to Google's First Set of
            Interrogatories
            Case No. C03-5340 JF (EAI)
            DM_US\8214710.v1

PROPOUNDING PARTY:    PLAINTIFF/COUNTER-DEFENDANT GOOGLE, INC.

RESPONDING PARTY:    DEFENDANT/COUNTER-PLAINTIFF AMERICAN BLIND & WALLPAPER FACTORY, INC.

SET NUMBER:    ONE

Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind") hereby answers Plaintiff/Counter-Defendant Google, Inc.'s First Set Of Interrogatories as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY, by title, court or tribunal, and case number, all litigation in which AMERICAN BLIND is or has been a party.

**RESPONSE TO INTERROGATORY NO. 1:**

American Blind objects to this interrogatory because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As written, this interrogatory is overbroad and unduly burdensome in that it would require American Blind to identify every collection action, employment action, and every other lawsuit in which American Blind has been involved since its inception to the present. The allegations set forth in Google's Complaint For Declaratory Judgment Of Non-Infringement do not warrant subjecting American Blind to such an unreasonable burden. Subject to and without waiving this objection, American Blind states that it has been involved in the following lawsuits involving American Blind's trademarks:

    (a)    *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, Case No. C 03-5340-JF, pending in the United States District Court for the Northern District of California;

    (b)    *Decoratetoday.com, Inc. (d/b/a American Blind & Wallpaper Factory, Inc.) v. Wallpaper Wholesaler, Inc., et al.*, Case No. 02-73226, pending in the United States District Court for the Eastern District of Michigan;

    (c)    *American Blind & Wallpaper Factory, Inc. d/b/a Decoratetoday.com, Inc. v. By Design & USA Wallpaper f/k/a American Blind & Wallcoverings, et al.*, Case No. 03-60039, pending in the United States District Court for the Eastern District of Michigan;

(d)  *Decoratetoday.com, Inc. (d/b/a American Blind & Wallpaper Factory, Inc.) v. American Blind & Accessory Co., Inc.*, Case No. 01-70804, pending in the United States District Court for the Eastern District of Michigan;

(e)  *American Blind and Wallpaper Factory, Inc. v. Richard Barnes, et al.*, Case No. 97-73363 pending in the United States District Court for the Eastern District of Michigan;

(f)  *American Blind and Wallpaper Factory, Inc. v. Arthur Drinkwater d/b/a American Blinds and Draperies, et al.*, Case No. 99-73148, pending in the United States District Court for the Eastern District of Michigan;

(g)  *American Blind and Wallpaper Factory, Inc. v. David B. Katzman, et al.*, Case No. 96-74831, pending in the United States District Court for the Eastern District of Michigan;

(h)  *American Blind and Wallpaper Factory, Inc. v. American Blinds, Inc.*, Case No. 99-71776, pending in the United States District Court for the Eastern District of Michigan;

(i)  *American Blind and Wallpaper Factory, Inc. v. American Blinds Factory, Inc. d/b/a American Blinds and Decorating Centers*, Case No. 99-73972, pending in the United States District Court for the Eastern District of Michigan;

(j)  *Decoratetoday.com, Inc. v. All American Blinds and Brent Richards*, Case No. 01-7176, pending in the United States District Court for the Eastern District of Michigan;

## INTERROGATORY NO. 2:

IDENTIFY each COMMUNICATION RELATING TO GOOGLE between AMERICAN BLIND and any other individual or entity.

## RESPONSE TO INTERROGATORY NO. 2:

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, American Blind presently is a customer of Google and, therefore, regularly communicates with Google representatives concerning business matters, including but not limited to American Blind's advertising campaign with Google. In addition, this interrogatory is overbroad in that it is not limited to a certain period of time and American Blind has been doing business with Google for many years. Moreover, this interrogatory is not limited to communications with Google, but rather encompasses American

1  Blind's communications with any individual or entity regarding Google, thereby making it much too

2  broad and unduly burdensome to answer.  In addition, American Blind objects to this interrogatory to

3  the extent that it seeks information regarding attorney/client privileged communications.  Subject to

4  and without waiving these objections and pursuant to Federal Rule of Civil Procedure 33(d), American

5  Blind refers Google to documents that will be produced or made available for inspection and copying

6  by American Blind consisting of electronic communications between American Blind and Google

7  regarding Google's sale of American Blind's trademarks as keywords as part of the AdWords

8  program, as well as monthly invoices received from Google concerning American Blind's participation

9  in Google's AdWords program.  Discovery and investigation continue regarding other relevant

10  communications with Google.

11

12  **INTERROGATORY NO. 3**:

13          IDENTIFY all persons that you believe have personal knowledge of facts relevant to this

14  lawsuit.

15

16  **RESPONSE TO INTERROGATORY NO. 3**:

17          American Blind refers to and incorporates herein the individuals listed in its Initial Disclosures

18  Pursuant to Federal Rule of Civil Procedure 26, which were served on April 20, 2005 ("Initial

19  Disclosures").  In addition to the individuals listed in American Blind's Initial Disclosures, American

20  Blind believes that an unknown number of its competitors have knowledge regarding Google's

21  AdWords Keywords Suggestions feature and the "American Blind" optimization campaign.  Google is

22  in a superior position to American Blind to know the identities of these American Blind competitors

23  that have accessed the AdWords Keywords Suggestion Feature.  In addition, American Blind believes

24  that an unknown number of its customers and potential customers have been confused by Google's

25  sale of American Blind's trademarks to American Blind's competitors.  Investigation and discovery

26

27  continue regarding the identity of these customers and potential customers, and regarding the identity

28

-4-

1  of other persons with personal knowledge of facts relevant to this lawsuit.

2  **INTERROGATORY NO. 4:**

3      STATE all facts supporting AMERICAN BLIND's contention that "the American Blind Marks

4  have acquired an outstanding celebrity as a source of quality home decorating products and related

5  services."

6  **RESPONSE TO INTERROGATORY NO. 4:**

7      American Blind preliminarily states that American Blind is one of the largest direct-to-

8  consumer retailers of custom order window treatments and wall coverings in the United States and on

9  the Internet.  American Blind, in conjunction with its predecessor companies, has been in the home

10  decorating business for over a half century.  American Blind sells and promotes its home decorating

11  products and related services across the United States through a website and toll-free telephone

12  numbers.  Since at least as early as 1986, American Blind has adopted and used, and has continued to

13  adopt and to use, the American Blind trademarks in connection with home decorating products and

14  related services offered for sale and sold throughout the United States.  American Blind's home

15  decorating products and related services sold under the American Blind trademarks have been

16  extensively advertised, promoted and sold by American Blind in interstate commerce throughout the

17  United States.  American Blind is an industry leader and expends millions of dollars each year in

18  connection with the advertisement and promotion of its products and services sold under the American

19  Blind trademarks.  Among other things, American Blind advertises extensively in national publications

20  and on television and radio.  The public has used and now uses the American Blind trademarks to

21  identify American Blind and its home decorating products and related services and to distinguish

22  American Blind and its products and services from the home decorating products and related services

23  offered by others.  The American Blind trademarks symbolize and embody the goodwill rightfully

24  belonging exclusively to American Blind.  Investigation and discovery continue regarding further

25

26

27

28

1    evidence that "American Blind's Marks have acquired an outstanding celebrity as a source of quality

2    home decorating products and related services."

3    **INTERROGATORY NO. 5**:

4        STATE all facts supporting AMERICAN BLIND's contention that "Google intentionally has

5    designed its financially lucrative 'Ad Words' program to maximize the infringement and dilution of

6    American Blind's marks."

7

8    **RESPONSE TO INTERROGATORY NO. 5**:

9        American Blind objects to this Interrogatory on the grounds that it is premature given that

10   American Blind has not yet received meaningful discovery responses from Google and has not yet had

11   an opportunity to take any depositions in this case.  Subject to and without waiving this objection,

12   American Blind states that, as Google is aware, Google has advertised, promoted, offered for sale, and

13   sold keywords identical and substantially similar to American Blind's trademarks to various third

14   parties.  Specifically, a competitor of American Blind that is in the process of designing its advertising

15   campaign with Google has been encouraged to purchase as keywords numerous terms that are identical

16   or substantially similar to American Blind's trademarks.  It is apparent and inescapable that Google has

17   designed its AdWords Keyword Suggestion feature with this exact goal in mind.  Google has even

18   labeled an optimization campaign containing every practical iteration of American Blind's trademarks

19   the "American Blind" optimization campaign.  Investigation and discovery continue regarding the

20   number of American Blind's competitors who purchased American Blind's trademarks as keywords as

21   a result of the AdWords Keyword Suggestion feature.  Investigation and discovery also continue

22   regarding the revenues earned by Google as a result of Google's sale of American Blind's trademarks

23   as keywords.

24

25   **INTERROGATORY NO. 6**:

26

27       STATE all facts supporting AMERICAN BLIND's contention that "Defendants and their

28   advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such as

1  American Blind."

2  **RESPONSE TO INTERROGATORY NO. 6:**

3      American Blind objects to this Interrogatory on the grounds that it is premature given that

4  American Blind has not yet received meaningful discovery responses from Google and has not yet had

5  an opportunity to take any depositions in this case.  Subject to and without waiving this objection,

6  American Blind states that, as Google is aware, Google has advertised, promoted, offered for sale, and

7  sold keywords identical and substantially similar to American Blind's trademarks to various third

8  parties in violation of federal and state law.  Among other things, Google's filings with the SEC and

9  information posted on its own website state that it had revenues of $3,189,223,000 in 2004 and

10  $1,256,516,000 in the first fiscal quarter of 2005.  Google has stated that approximately 95% of its net

11  revenues are derived from its advertising programs, and American Blind reasonably suspects that a

12  material percentage of this revenue comes from the sale of trademarks as keywords.  Investigation and

13  discovery continue regarding the revenues earned by Google as a result of Google's sale of American

14  Blind's trademarks as keywords.

15  **INTERROGATORY NO. 7:**

16      STATE all facts supporting AMERICAN BLIND's contention that "[t]he manipulated search

17  engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a

18  source of its goods and services.

19

20  **RESPONSE TO INTERROGATORY NO. 7:**

21      American Blind objects to this Interrogatory on the grounds that it is premature given that

22  American Blind has not yet received meaningful discovery responses from Google and has not yet had

23  an opportunity to take any depositions in this case.  Subject to and without waiving this objection,

24  American Blind states that Google causes consumers who specifically intend and desire to find

25  American Blind's website, products, and services to be diverted to web pages that list American

26  Blind's competitors' products and services.  Consumers may not realize that they have unwittingly

27  "clicked" on a competitors' website.  Google's search results page fails to inform the consumer that the

28

American Blind's Answers to Google's First Set of Interrogatories
Case No. C03-5340 JF (EAI)
DM_US\8214710.v1

1  companies listed as "Sponsored Links" may have no relationship with – and, indeed, may directly

2  compete with – American Blind.  As a result, the consumer believes that he/she is purchasing goods

3  from American Blind or a related entity, when he/she is actually purchasing goods from an American

4  Blind competitor.  Furthermore, American Blind believes that the evidence generally will show that

5  consumer association between American Blind's Marks and its products and/or services is harmed,

6
7  diminished, or otherwise lessened each time a consumer is presented with confusingly similar and/or

8  inferior goods and services in response to attempts to locate American Blind.  Thus, Google's sale of

9  American Blind's trademarks as keywords lessens the capacity of American Blind's trademarks to

10  distinguish American Blind's products and services from those of others, and dilutes the distinctive

11  quality of American Blind's trademarks.

12
13  **INTERROGATORY NO. 8**:

14       STATE all facts supporting AMERICAN BLIND's contention that "American Blind's

15  customers have been and will likely continue to be confused about the origin and sponsorship of the

16  companies other than American Blind listed by the Defendants in their deceptive search engine

17  'results.'"

18  **RESPONSE TO INTERROGATORY NO. 8**:

19       American Blind objects to this Interrogatory on the grounds that it is premature given that

20  American Blind has not yet received meaningful discovery responses from Google and has not yet had

21  an opportunity to take any depositions in this case.  American Blind further objects to this

22  Interrogatory on the ground that it seeks information that will be the subject of expert testimony prior

23  to the time for disclosure of expert opinions.  Subject to and without waiver of these objections,

24  American Blind refers Google to national studies that establish definitively the pervasive consumer

25
26  confusion associated with paid search advertising, including without limitation an article by Deborah

27  Fallows, PhD, entitled "Search Engine Users:  Internet Searchers Are Confident, Satisfied and Trusting

28

1  – But They Are Also Unaware And Naïve," published by PEW Internet & American Life Project, and

2  an article by Leslie Marable, entitled "FALSE ORACLES: Consumer Reaction To Learning The Truth

3  About How Search Engines Work," copies of which were produced in response to Google's First Set

4  Of Requests For Production Of Documents And Things.  In addition, American Blind has received

5  telephone calls from consumers with questions about their online order, when American Blind has no

6  record of such an order.  It was later determined that the consumer placed his/her order with a

7

8  competitor of American Blind, likely because such consumer was confused when he/she attempted to

9  locate American Blind's website.

10  **INTERROGATORY NO. 9**:

11      STATE all facts supporting AMERICAN BLIND's contention that "Defendants' actions have

12  caused damage and irreparable injury to American Blind."

13  **RESPONSE TO INTERROGATORY NO. 9**:

14      American Blind objects to this Interrogatory on the grounds that it is premature given that

15  American Blind has not yet received meaningful discovery responses from Google and has not yet had

16  an opportunity to take any depositions in this case.  American Blind further objects to this

17

18  Interrogatory on the ground that it seeks information that will be the subject of expert testimony prior

19  to the time for disclosure of expert opinions.  Subject to and without waiving this objection, American

20  Blind states that Google causes consumers who specifically intend and desire to find American Blind's

21  website, products, and services to be diverted to web pages that list American Blind's competitors'

22  products and services.  Consumers may not realize that they have unwittingly "clicked" on a

23  competitors' website.  Google's search results page fails to inform the consumer that the companies

24

25  listed as "Sponsored Links" may have no relationship with – and, indeed, may directly compete with –

26  American Blind.  Google's actions steal customers from American Blind's website, divert consumers

27  to inferior products and services, erode the distinctiveness of American Blind's trademarks, and impair

28

1  American Blind's honest and good faith efforts to promote and sell its products on the Internet.

2

3  DATED:  June 10, 2005                    HOWREY, LLP

4

5

6  By: _____
                                        ROBERT N. PHILLIPS
7                                       ETHAN B. ANDELMAN

8                                       David A. Rammelt
                                        Susan J. Greenspon
9                                       Dawn M. Beery
                                        KELLEY DRYE & WARREN LLP
10                                      333 West Wacker Drive, Suite 2600
                                        Chicago, IL  60606

11                                      Attorneys for Defendant/Counter-Plaintiff
                                        AMERICAN BLIND AND WALLPAPER
12                                      FACTORY, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Verification

I, Steve Katzman, declare under penalty of perjury that on or before June 10, 2005, I

reviewed each of American Blind & Wallpaper Factory, Inc.'s Answers To Google, Inc.'s First

Set Of Interrogatories, and that each of the written responses therein was true and correct based

upon my personal knowledge or upon information reasonably available to me.

Steve Katzman
President, American Blind & Wallpaper
Factory, Inc.,

1

# PROOF OF SERVICE

2      I am a citizen of the United States and a resident of the State of California. I am employed in
San Francisco County, State of California, in the office of a member of the bar of this Court, at whose

3    direction the service was made. I am over the age of eighteen years, and not a party to the within
action. My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105. On the date

4    set forth below, I served the document(s) described below in the manner described below:

5

**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S ANSWERS TO GOOGLE, INC.'S**

6   **FIRST SET OF INTERROGATORIES**

7      **VIA MESSENGER**
       Michael H. Page

8      Mark A. Lemley
       Ravind S. Grewal

9      Keker & Van Nest, LLP
       710 Sansome Street

10     San Francisco, CA 94111
       Facsimile: (415) 397-7188

11

12      (BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon
Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused

13   such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed
below.

14      (BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey

15   Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I
caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by

16   Federal Express for overnight delivery.

**XX**      **(BY MESSENGER SERVICE)** by consigning the document(s) to an authorized courier

17   and/or process server for hand delivery on this date.

18      (BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey

19   Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the
United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be

20   placed in the United States Postal Service at San Francisco, California.

21      Executed on June 10, 2005, at San Francisco, California.

22

23   _____          _____
       Patricia Cranmer                        (Signature)

24

25

26

27

28

# Exhibit F

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## 333 WEST WACKER DRIVE

### SUITE 2600

### CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2501

EMAIL: cplater@kelleydrye.com

February 17, 2006

VIA FACSIMILE

Klaus Hamm
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Re:   Google Inc. v. American Blind & Wallpaper Factory, Inc.

Dear Klaus:

In response to your correspondence of February 9, 2006, we submit the following supplementation to American Blind's answer to Interrogatory No. 8:

**Supplemental Answer:** Subject to and without waiving any objections previously or presently made in response to this Interrogatory, American Blind submits that it does not maintain any formal records of telephone calls received from consumers with questions about orders which were mistakenly placed with another company due to confusion. American Blind has over 300 telephone sales representatives taking between 60 to 70 calls per day. These telephone sales representatives are instructed to focus on their productivity and are not instructed to monitor issues regarding consumer confusion. Logically, American Blind has no records of any contact or orders from these types of callers, since the caller is not a customer of American Blind, although such caller believes he or she is. Accordingly, American Blind cannot provide any additional information concerning these types of telephone calls at this time. American Blind does not maintain, nor could it maintain, any sort of record of consumers who may call the company and hang up once they realize that they have contacted the wrong company. Although American Blind does not have formal records of calls from confused consumers, there have been many anecdotal stories conveyed by the telephone sales representatives to their supervisors concerning calls received from consumers who believe that they have placed an order with American Blind, only to discover upon inquiring of the status of their orders that they have placed their orders with another company.

**KELLEY DRYE & WARREN** LLP

Klaus Hamm
February 17, 2006
Page Two

     In addition to American Blind's evidence of consumer confusion, documents produced by Google in its first document production demonstrate that there has been profound consumer confusion in connection with Google's "sponsored links" program.

     Finally, this Interrogatory remains premature given that American Blind has not yet received Google's supplemental discovery responses as ordered by the court and no depositions have been taken in this case. American Blind maintains all previously made objections and substantive answers in response to this Interrogatory. American Blind will supplement this answer in the event that responsive information is discovered.

     Sincerely,

     Caroline C. Plater

CCP:ccp

cc:  David A. Rammelt

# Exhibit G

MANUAL FILING NOTIFICATION

Regarding Exhibit G to the SUPPLEMENTAL DECLARATION OF KLAUS H. HAMM IN SUPPORT OF GOOGLE'S MOTION FOR SUMMARY JUDGMENT

This filing is in paper form only, and is being maintained in the case file in the Clerk's office. If you are a participant in this case, this filing will be served in hard-copy shortly.

This document was not electronically filed because it is under seal.