ROBERT N. PHILLIPS (SBN 120970)
ETHAN B. ANDELMAN (SBN 209101)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
T: (415) 848-4900
F: (415) 848-4999

DAVID A. RAMMELT (Admitted *Pro Hac Vice*)
SUSAN J. GREENSPON (Admitted *Pro Hac Vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
T: (312) 857-7070
F: (312) 857-7095

Counsel for Defendant/Counter-Plaintiff
American Blind and Wallpaper Factory, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, INCLUSIVE,<br><br>    Defendant.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.,<br><br>    Counter-Plaintiff,<br><br>    v.<br><br>GOOGLE, INC.,<br><br>    Counter-Defendant. | CASE NO. C 03-5340-JF(RS)<br><br>**DECLARATION OF JEFFREY ALDERMAN REGARDING ABWF'S PRESERVATION, COLLECTION AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER**<br><br>Hon. Richard Seeborg |

KELLEY DRYE & WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/219363.3

I, JEFFREY ALDERMAN, declare as follows:

1.  I am over the age of eighteen and am competent to make this Declaration based upon my own personal knowledge or, where indicated, based upon facts made known to me through the corporate records of American Blind & Wallpaper Factory, Inc. ("ABWF"). I am fully familiar with the facts set forth herein, and, if called to testify, could do so competently.

2.  I am the Director of Online Marketing and Business Development for ABWF. I have been continuously employed by ABWF since September 2001. At the time Google filed this lawsuit on November 26, 2003, I served as E-Commerce Relationship Manager responsible for starting the e-mail marketing program and forming the E-Commerce Department. I have operated under several titles since 2003 and my current title is Director of Online Marketing and Business Development. In addition to my prior responsibilities, as Director of Online Marketing and Business Development, I became responsible for e-mail marketing, implementing new third-party marketing programs, as well as expanding ABWF's marketing into alternative media.

3.  This Declaration is being submitted in order to summarize the efforts undertaken within ABWF to locate, produce and preserve documents and electronic matter pertaining to the subject matter of the Google trademark lawsuit.

4.  In late 2003 and early 2004, I was instructed by the company's CEO, Steve Katzman, that I was to find and preserve documents that were relevant to the Google lawsuit, which I was told included documentation concerning communications with Google, keyword advertising (including bidding, spending, click-through rates, consumer surveys, trademarks), ABWF's Internet branding efforts, domain names and URLs, and consumer confusion. I was specifically told by Mr. Katzman not to destroy these kinds of materials. This same instruction was issued to all of the management team at more than one meeting, including employees responsible for e-commerce, finance, marketing, brand management and the senior executives.

5. In 2004-2005, the management team likely included myself, Steve Katzman, Dan Gilmartin, Bob Flynn, Joe Charno, Tom Discenna, Sam Stevens, Sue Sullivan, Angie Sustarich and Michael Layne. Because ABWF underwent a fair amount of personnel changes during this time frame, I am unable to state all the team members with certainty.

6. In 2006, the management team likely included myself, Steve Katzman, Jeff Alderman, Sam Stevens, Martha Ross, Michael Layne, Irma Kline, Gerry Curran, Angie Sustarich, and Ron Myers. Because ABWF underwent a fair amount of personnel changes during this time frame, I am unable to state all the team members with certainty.

7. Martha Ross, Jeff Alderman, Angie Sustarich and I are the only individuals still employed by ABWF who were also members of the management team at some point from 2004 to 2006.

8. I complied with the instructions Mr. Katzman gave me at the meetings in late 2003 and early 2004. Specifically, in the first quarter of 2004, I searched my work computer for e-mails relating to the topics Mr. Katzman indicated were relevant to the Google lawsuit. I also searched my personal folder on the network exchange server. In addition, I searched the shared network system, where all important documents are maintained. I subsequently repeated this search in 2005 and 2006. In addition, I took care to preserve all of the documents Mr. Katzman identified to me were relevant to Google's lawsuit.

9. I recall that members of the management team were all asked to search their personal computers and exchange server for these types of documents and to preserve the same. To the best of my knowledge, the members of the management team complied with Mr. Katzman's instructions.

10. On February 25, 2004, an internal ABWF search was conducted to locate, identify and preserve electronic data pertaining to ABWF customers who may have been confused about

the source of their purchases. This search was overseen or conducted by Mr. Katzman. Interviews were also conducted by Michael Layne of members of the sales team.

11. On March 13, 2004, the ABWF computer system was searched by Joe Charno for documents sent to or from seven specific Google employees. These were provided to Mr. Katzman and Kelley Drye & Warren. Another series of searches was conducted for similar items on April 5, 2004.

12. The document collections process occurred in two basic waves. The first wave was overseen by Mr. Katzman, during 2004 through 2005, wherein he disseminated the discovery requests or the subjects of the discovery requests to the management team to collect responsive information. The individuals with the primary responsibility for overseeing the search included, but were not limited to, Mr. Katzman, Greg Rupprecht and Joe Charno. I received the request to compile documents during the first wave from Joe Charno and to the extent that I found anything, I provided responsive documents to Mr. Katzman.

13. The second wave of document collection occurred during 2006. I oversaw the second wave and the individuals primarily responsible for the search effort during this time frame were myself, Greg Rupprecht and Gerry Curran. I was responsible for the collection of all information retrieved during 2006.

14. Being a smaller company, the management team and any other individuals involved in the search effort, such as myself when I was not a member of the management team, were able to and did frequently discuss many of issues that were the subject of discovery or relevant to this case in person during face-to-face meetings.

15. I understand that on May 21, 2004, Google served its first set of document requests and interrogatories. Within a couple of months thereafter – I cannot recall specifically how soon after – I was shown a copy of these requests and asked to locate potentially responsive

materials, which I did. I specifically remember reviewing the materials I located with Joe Charno, who at the time was Vice President of Marketing and Advertising with responsibility for E-commerce.

16. On April 15, 2005, I compiled a list of ABWF and Google employees, as well as competitive websites, to find further potentially responsive documents for this litigation. I searched our network server and my work computer for documents referring to these employees and websites.

17. In 2005, I searched my work computer, and several of the drives on the ABWF network for presentations concerning Google, keyword advertising and branding; anything related to Google paid search advertising; brand word analysis; media plans and all emails and other documentation regarding the foregoing subjects. I provided all documents I found relating to these subjects to Mr. Katzman.

18. In May 2005, I was asked to search for advertisements showing use of the ABWF marks. I collected and provided these materials to Mr. Katzman.

19. I understand that in June 2005, Mr. Katzman and Kelley Drye & Warren collected cease-and-desist letters that had been sent to competitors and other companies who we believed had been bidding on our trademark terms as keywords.

20. As in previous years, in 2006, Mr. Katzman instructed the management team at team meetings to collect and preserve documents relevant to the Google lawsuit.

21. I understand that on May 10, 2006, Google served a second set of document requests and interrogatories. During this time period, ABWF was undergoing a change in management. Mr. Katzman left the company as did several individuals on the management team. In or about June 2006, I was shown a copy of these requests and asked to locate potentially responsive materials, which I did.

22. Between 2004 and early 2006, Mr. Katzman was the person within ABWF who worked with Kelley Drye & Warren to produce documents. Documents that I located were sent to Mr. Katzman. In early 2006, Mr. Katzman was increasingly focused on management issues within the company unrelated to the Google lawsuit, and so at this time I became the primary liaison between ABWF and Kelley Drye & Warren with regard to document production and data retrieval.

23. I have direct personal knowledge of the breadth of the documents ABWF collected both through my personal searches when Mr. Katzman was overseeing the collection and through my subsequent supervision of the collection. I specifically recall compiling all of our responsive marketing materials, including but not limited to our online and print advertising (catalogs and mailers); financial materials, including but not limited to our annual per product break downs; approximately 36,000 pages worth of materials including or regarding Coremetrics reports for web analytics that measured the site traffic and activity, how ABWF's online marketing programs were working and how people were interacting with ABWF's website; and all DVD's and related materials to ABWF's consumer research studies. This list is by no means exhaustive of everything I recall compiling and producing.

24. During my deposition, I was never asked about ABWF's document retention policies or my knowledge regarding what documents ABWF employees were asked to locate, nor was I asked about instructions we received to preserve materials or documents pertaining to the Google lawsuit.

25. Of all the ABWF employee witnesses deposed by Google, I had the most knowledge of the document collection and preservation efforts. My search efforts caused me to search the computers of other employees for responsive materials as well as my own computer and files and the company's server and files. When it became apparent in October 2006 that a

former employee, Michael Layne, had not properly searched his computer or files, at my instruction, ABWF searched Mr. Layne's computer and produced the responsive materials found.

26. In total, between 2004 and 2006, I estimate that I spent over 500 hours searching for, locating and producing relevant documents pertaining to this lawsuit.

27. I am not aware that any relevant document was destroyed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of May 2007, in Plymouth, Michigan.

       \_\_/s/ Jeffrey Alderman_____
       JEFFREY ALDERMAN

KELLEY DRYE &
WARREN LLP
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL 60606

CH01/PLATC/219363.3         - 7 -