KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
MARK A. LEMLEY - #155830
KLAUS H. HAMM - #224905
AJAY S. KRISHNAN - #222476
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff and Counter Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, inclusive,<br><br>Defendants. | Case No. C 03-5340-JF (RS)<br><br>**GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER**<br><br>Hon. Richard Seeborg |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.,<br><br>Counter Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Counter Defendant. | |

1
GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED
PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007
COURT ORDER; CASE NO. C 03-5340-JF (RS)

395868.01

## I. INTRODUCTION

The Court's April 27, 2007 Order (Docket Item No. 311) ("the Order") gave ABWF one last chance to clarify its discovery conduct, which the Court characterized as follows: "it appears that at least until 2006, American Blind made virtually no effort to search for electronic documents, particularly email, that might be responsive to document requests propounded by Google." In retrospect, giving ABWF that one last chance was a mistake. ABWF's four new declarations shed practically no light on the spoliation issues before the Court.

The Order limited ABWF's declarations to *pre-2006* search, collection, and preservation efforts for a reason: Only in 2006—years after this litigation began—did ABWF start taking its discovery obligations seriously. It is therefore crucial to focus on ABWF's October 2005 document production, ABWF's only pre-2006 document production. That production is the best evidence of the limits of ABWF's pre-2006 search efforts. Although ABWF wishes now to paint a picture of extreme diligence and care in preserving documents, the October 2005 document production shows that only a very limited search took place: a handful of employees were asked to print out email correspondence with Google. The vast majority of documents produced were therefore documents that Google already had.

Of the four declarations ABWF submitted, only two—the Alderman and Rupprecht declarations—describe any searches that ABWF allegedly performed. And even these two declarations lack any useful details. These declarations merely describe, in hopelessly vague terms, the searches that were allegedly conducted. They do not describe what documents were found, if any. And they do not describe what happened to these documents. Why were these documents not produced in October 2005? Were the searches simply performed inadequately? Or were the fruits of the searches handed over to Steve Katzman, who subsequently destroyed them? We simply do not know. And this was ABWF's opportunity to explain.

GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER; CASE NO. C 03-5340-JF (RS)

395868.01

## II. FACTS

**A. ABWF's October 2005 document production is the most reliable evidence of ABWF's meager pre-2006 search, collection, and preservation efforts.**

The Order specified that ABWF should produce information about *pre-2006* search, collection, and preservation efforts. This is because ABWF began to take its discovery obligations more seriously, if at all, only after Steve Katzman left in late May of 2006.

The best evidence of ABWF's pre-2006 document search, collection, and preservation efforts is ABWF's October 2005 document production. Prior to the spring of 2006, ABWF produced only one box of documents, which represented less than 6% of ABWF's entire document production. This single box was produced on October 26, 2005, and contained 2790 pages. ABWF does not contend that it searched for and collected responsive documents prior to October 2005 and then waited until June 2006 to produce them, nor would ABWF have had a legitimate reason for doing so.[1] Thus, ABWF's October 2005 document production contains the fruits of *all* of ABWF's pre-2006 search, collection, and preservation efforts.

This is a very important point, because that October 2005 document production places a serious limit on ABWF's recent declarations, which try to create the appearance that ABWF took comprehensive and diligent efforts to preserve documents prior to 2006. In fact, ABWF's October 2005 document production shows that ABWF took almost no steps to find, collect, and preserve documents prior to 2006.

What was in the October 2005 box of documents?[2] Of the 2790 pages, the first 1522

---

[1] This is a very important sticking point between the parties. Google's spoliation motion, as well as Google's two motions to compel, show that Google embarked on a massive letter-writing campaign and push for additional documents between October 2005 and Steve Katzman's departure in late May 2006. ABWF's counsel's consistent refrain during this time period was either (1) that ABWF had produced all documents it had, or (2) that ABWF would produce the requested documents, but that all document search efforts had been stalled because of the Steve Katzman's departure. If ABWF were to argue now (which it has not) that it had collected responsive documents prior to 2005, but sat on them until June 2006, this would raise serious questions about the representations ABWF's counsel made from October 2005 to May 2006.

[2] Google submits the accompanying Declaration of Ajay S. Krishnan in Support of Google's Response to ABWF's Four Declarations Regarding ABWF's Alleged Preservation, Collection, and Production of Materials in Response to April 27, 2007 Court Order ("Krishnan Decl.") pursuant to the exception to the Best Evidence Rule contained in Federal Rule of Evidence 1006, because of the volume of the production. ABWF already has these documents, because it produced them. Should the Court desire copies, Google will be happy to produce them.

pages are clearly documents collected from ABWF's outside counsel, and not the result of a document search at ABWF. These first 1522 documents contain cease-and-desist letters, complaints, settlement agreements, and various other litigation documents related to ABWF's efforts to defend its alleged marks. The documents produced by ABWF are almost uniformly authored by outside counsel. (ABWF has no in-house counsel.)

Then, there are three sets of emails, which, as explained in the spoliation motion, *were primarily to or from Google*. One set (259 pages) was printed from Jeffrey Alderman's email account. The second set (214 pages) was printed from Steve Katzman's email account. The source account for the third set of emails (261 pages) is unclear, because the top portion of the emails are redacted and ABWF never produced a redaction log despite Google's requests. Judging from the addressing information on these emails, they appear to be from the email accounts of Joe Charno and Bill Smith. Of the emails from Alderman's account, **only five** were emails that were not sent to or from Google.

The production also contains 34 pages of invoices from Google to ABWF, for advertising on Google's AdWords program. Obviously, Google already had these documents.

The remainder of the documents in the October 2005 production were, again, likely maintained by outside counsel, and not the fruits of an internal document search. They consist of (1) a 392-page trademark file, which include documents submitted to and received from the PTO, and (2) four sets of audited financial statements (76 pages).

Notably, other than emails—most of which were correspondence with Google—the October 2005 document production contained practically no documents that would have been found as a result of a document search at ABWF.

### III.   ARGUMENT

**A.   The Alderman declaration is either false or unhelpfully vague as to whether he actually searched for, found, collected, and preserved documents.**

The Alderman declaration creates the appearance that ABWF actually took steps to collect and preserve documents prior to 2006. But on closer inspection, it is clear either that Alderman did not perform the searches he claims to have performed, or that Alderman did
4

GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER; CASE NO. C 03-5340-JF (RS)

395868.01

perform the searches, but they were entirely ineffective. Perhaps Alderman did not do a very thorough job. Or perhaps Alderman found numerous relevant documents, but handed them over to Steve Katzman, who subsequently destroyed them. Whatever the case, one thing is clear: The documents Alderman claims to have searched for prior to 2006 were not produced to Google.

Alderman claims to have personally performed five searches for documents:

- In "early 2004," he allegedly searched his personal computer for emails and the shared network computer for documents falling within a description that was allegedly provided by Steve Katzman (the "Katzman Instruction"). Alderman Decl., ¶8. The documents covered by the alleged Katzman Instruction were those pertaining to "communications with Google, keyword advertising (including bidding, spending, click-through rates, consumer surveys, trademarks), ABWF's Internet branding efforts, domain names and URLs, and consumer confusion." *Id.*, ¶4. Alderman, however, does not say whether he found *any* documents or what he did with documents he did find.

- Between May and July of 2004, he searched for documents "potentially responsive" to Google's first set of document requests and interrogatories. *Id.*, ¶15. Alderman states that he gave the documents he found to Katzman, but does not identify or quantify them.

- On April 15, 2005, Alderman searched his work computer and the network server for documents referring to certain ABWF employees, Google employees, and competitive websites. *Id.*, ¶ 16. Again, he does not say whether he found documents, or what he did with the documents he did find.

- "In 2005," Alderman performed a search on his work computer and on several ABWF network drives for "presentations concerning Google, keyword advertising and branding; anything related to Google paid search advertising; brand word analysis; media plans and all emails and other documentation regarding the foregoing subjects." *Id.*, ¶17. Alderman states that he gave these documents to Katzman.

- In "May 2005," Alderman allegedly searched for "advertisements showing use of the ABWF marks," and provided these materials to Katzman. *Id.*, ¶18.

395868.01

5

GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER; CASE NO. C 03-5340-JF (RS)

First, there is serious doubt as to whether Alderman is telling the truth. If ABWF searched for and collected these documents in 2004 and the first half of 2005, why weren't they part of the October 2005 document production? ABWF gives no explanation, despite ample opportunity to provide one. The only documents from Alderman in the October 2005 production were email, most of which were correspondence with Google. That fact coincides much more closely with deposition testimony of Steve Katzman, Scot Powers, and Joe Charno—that they were asked to search only for correspondence with Google. Google's Memorandum of Points and Authorities in Support of Its Spoliation Motion (Docket Item No. 240) ("SM") at 9. Moreover, Alderman claims that Katzman told him to preserve various documents, and that Katzman repeated this instruction at "more than one meeting." Alderman Decl., ¶4. But Katzman does not recall giving such an instruction. SM at 4. It is highly dubious that Alderman would remember the nine-part Katzman Instruction—supposedly an oral instruction at management meetings in 2004 and 2005—with such precision that he and two other declarants used identical language to describe it. Compare Alderman Decl., ¶4 with Rupprecht Decl., ¶4 & Flynn Decl., ¶5.

But even if Alderman's declaration is true, the question persists: why weren't these documents produced in the October 2005 production? The problem with Alderman's declaration is that he never identifies or describes a single document that he found during his alleged searches, nor does he describe the volume of documents. Thus, we do not know whether he performed a completely inadequate search, or whether, instead, he found documents, and gave them to Katzman, who subsequently destroyed them. All we know is that those documents were not produced. Having had ample opportunity to explain what happened to these documents, ABWF must be held responsible for this lack of key information.

The same analysis applies to two other pre-2006 searches that Alderman did not personally perform, but which his declaration describes. Alderman states that "to the best of [his] knowledge," other members of the management team collected and preserved the documents covered by the Katzman Instruction. Alderman Decl., ¶9. As a threshold matter, this statement lacks foundation and is inadmissible. More importantly, the only documents in the

6

GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER; CASE NO. C 03-5340-JF (RS)

395868.01

1  October 2005 production from other members of the management team are emails from Katzman
2  and Joe Charno, and these are primarily correspondence with Google. This suggests either (1)
3  that the other members of the management team did not follow the Katzman Instruction, (2) that
4  they followed it inadequately, or (3) that they followed it, gave Katzman the documents, and he
5  subsequently destroyed them.

6  Alderman also describes a February 2004 investigation performed by Katzman and
7  Michael Layne about "ABWF customers who may have been confused about the source of their
8  purchases." *Id.*, ¶10. Any resulting documents would have been responsive to Google's first set
9  of document requests.[3] Again, what documents were found and why weren't they produced in
10 October 2005? The same three possibilities present themselves: (1) the search was not actually
11 performed, (2) it was performed inadequately, or (3) it was performed adequately, but Steve
12 Katzman destroyed the resulting documents.

13 Finally, Alderman describes two other pre-2006 searches in his declaration, but both are
14 irrelevant to Google's spoliation motion. One was the June 2005 search performed at the office
15 of ABWF's outside counsel, Kelley Drye & Warren, for cease-and-desist letters and other
16 litigation documents. Alderman Decl., ¶19. Obviously, this search did not take place at ABWF,
17 and was not the subject of Google's spoliation motion. The second irrelevant search discussed
18 by Alderman was the March 13, 2004 search by Joe Charno for correspondence with Google.
19 Alderman Decl., ¶11. As discussed in Google's spoliation motion, this search and collection did
20 not advance the cause of document preservation because Google already had these documents.

21 Thus, each of the relevant searches described in Alderman's declaration either (1) were
22 not performed, (2) were performed so inadequately to be meaningless, or (3) were performed
23 adequately, but were rendered meaningless by Katzman's document destruction.

---

[3] Google's first set of document requests contained two requests pertaining to consumer confusion. Request 20 covered "All DOCUMENTS RELATING TO any…investigations…conducted by or on behalf of AMERICAN BLIND relating to consumer or customer perception, understanding or recognition of any name, mark or designation comprised of or containing the AMERICAN BLIND MARKS, or any variation thereof." SM, Ex. I. Request 25 covered "All DOCUMENTS RELATING TO AMERICAN BLIND's allegation that 'Defendants have deliberately manipulated their search engine "results" so that, when consumers use these search engines to find American Blind's products and services, the consumers are

7
GOOGLE'S RESPONSE TO ABWF'S FOUR DECLARATIONS REGARDING ABWF'S ALLEGED PRESERVATION, COLLECTION, AND PRODUCTION OF MATERIALS IN RESPONSE TO APRIL 27, 2007 COURT ORDER; CASE NO. C 03-5340-JF (RS)

395868.01

**B.   Portions of the Alderman and Rupprecht declarations should be stricken because they pertain to search and collection efforts that took place in 2006.**

The Court's Order was absolutely clear: ABWF was supposed to submit declarations discussing its document preservation practices and its practices for responding to document requests "prior to 2006." Order at 2, lns. 19-24. Yet, ABWF has larded its declarations either with information that is unambiguously from 2006, or with statements that ambiguously lump together information from 2006 and the pre-2006 period. 2006 information is irrelevant to Google's spoliation motion because by then any earlier documents were long lost. Thus, these portions of ABWF's declarations should be stricken.

The following portions of the Alderman Declaration discuss search, collection, and preservation efforts explicitly from 2006: ¶13, ¶20, ¶21, and the last sentence of ¶22.

The Alderman Declaration also includes several statements that are ambiguous as to time-frame. Because the order was clear that ABWF was to discuss only pre-2006 efforts, this ambiguity should be construed in Google's favor.

- Paragraph 23 either refers exclusively to 2006 search efforts, or it lumps 2006 search efforts in with pre-2006 search efforts. For instance, ABWF produced the "catalogs and mailers," the "annual per product break downs," the 36,000 pages of Coremetrics reports, and the DVD's relating to ABWF's consumer research studies only in 2006. The other portions of paragraph 23 are described too ambiguously for Google to determine whether the listed documents were produced in 2005 or 2006.

- Paragraph 25 either refers exclusively to 2006 search efforts, or it lumps 2006 search efforts in with pre-2006 search efforts. The first two sentences of paragraph 25 do not specify a time frame. But the third sentence unambiguously refers to 2006, which suggests, at the least, that the prior two sentences refer, at least in part, to 2006 search efforts.

- Paragraph 26 clearly lumps 2006 search efforts in with pre-2006 search efforts.

Finally, paragraph 17 of the Rupprecht declaration lumps 2006 search efforts in with pre-2006 search efforts, and should be stricken as well.

---

unwittingly diverted to competitors' products and services.'" *Id.*

**C.    The Rupprecht declaration has the same deficiencies as the Alderman declaration.**

The reasons that the Alderman declaration is unreliable apply equally to the Rupprecht declaration. Rupprecht is ABWF's Vice President of Technology.

*First*, Rupprecht states that he performed various searches in 2004 and 2005 on his work computer for documents covered by the nine-part Katzman Instruction and for documents relating to "Google, keyword advertising, [ABWF]'s Internet branding efforts, domain names and URLs, and consumer confusion. Rupprecht Decl., ¶6, ¶11. Importantly, Rupprecht never states that he performed any searches of the network servers. *Id.*, ¶16. Rupprecht states that he gave all documents he found to Katzman. *Id.*, ¶ 14. Like Alderman, Rupprecht never describes a single document that he found. It is therefore impossible to tell whether he performed an inadequate search, or whether, instead, Katzman destroyed the documents. And because no documents in the October 2005 document production appear to have come from Rupprecht, there is reason to believe that he actually performed the search.

*Second*, Rupprecht states that he searched in January 2004 for documents concerning "the domain names and URLs owned or controlled by ABWF." *Id.*, ¶5. Documents fitting this description were produced in May 2006, not in October 2005. The timing of the production suggests that Rupprecht did not actually collect these documents until after October 2005.

*Third*, Rupprecht states that Michael Layne preserved customer survey results by placing them on ABWF's "L" drive. *Id.*, ¶13. This sentence is deceptive, because Layne had no intention of preserving documents for this litigation. He simply happened to save those survey results. Layne testified that he did not know of any document retention policy, and that he stored or deleted emails as he saw fit. SM at 4. Additionally, ABWF produced an email demonstrating that Layne learned that the survey results were necessary for this litigation only in May 2006. Krishnan Decl., Ex. A.

*Fourth*, Rupprecht states that he taught certain members of the management team how to perform advanced searches on their work computers. Rupprecht Decl., ¶15. Rupprecht says nothing, however, as to whether or not they performed these searches. He also states that with regard to emails, "[t]o the best of [his] knowledge," employees with relevant emails searched

their computers. *Id.*, ¶16. These statements are unhelpful. They do not state whether the searches were performed, what searches were performed, what documents were found, and what was done with these documents.

For these reasons, Rupprecht's declaration is just as unreliable as Alderman's.

**D.   Joe Charno's declaration should be stricken, and in any event, it provides no useful information.**

Joe Charno's declaration simply states that counsel asked him and Katzman to collect and to preserve documents. This is precisely what the Court told ABWF not to submit, so as to avoid a waiver of attorney-client privilege. This is also precisely the type of attorney-client communication with regard to which Google could not have sought discovery. For this reason, the Court should not consider Charno's declaration.

Interestingly, Charno's declaration does not do what the Court specifically advised ABWF to do—namely, to specify what he *did* to collect and preserve documents. Thus, Charno's declaration has no probative value with regard to spoliation.

**E.   Robert Flynn's declaration contains no useful information.**

Robert Flynn simply repeats that he heard the Katzman Instruction at management meetings, and that he complied with it. As stated before, Katzman himself does not recall providing the Katzman Instruction, so this after-the-fact declaration that conflicts with prior deposition testimony is inherently dubious. In any event, Flynn's conclusory statement that he "complied with" the Katzman Instruction contains no verifiable information, and no details that shed any light on the spoliation issues in Google's motion. It should therefore be ignored.

## IV.   CONCLUSION

For the above reasons, the Court should sanction ABWF for the spoliation of evidence.

Dated: May 25, 2007                          KEKER & VAN NEST, LLP


By: /s/ Ajay S. Krishnan
    AJAY S. KRISHNAN
    Attorneys for Plaintiff and Counter Defendant
    GOOGLE INC.