*E-FILED 6/27/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GOOGLE INC.,     NO. C 03-5340 JF (RS)

    Plaintiff,     **ORDER RE SANCTIONS**

v.

AMERICAN BLIND & WALLPAPER FACTORY, INC.,

    Defendant.
_____/

## I. INTRODUCTION

Plaintiff Google, Inc. moves for terminating, evidentiary, or monetary sanctions based on the alleged failure of defendant American Blind & Wallpaper Factory, Inc. to preserve, collect, and produce documentary evidence. Because the evidence demonstrates a willful indifference on the part of American Blind with respect to fulfilling its discovery obligations in the early stages of this litigation, and because it appears likely that relevant materials may have been lost or destroyed as a result of that indifference, certain evidentiary and monetary sanctions will be imposed. The record does not, however, support imposing the extreme remedy of terminating sanctions.

## II. BACKGROUND[1]

A. Procedural Matters

This motion was originally noticed for hearing before the presiding judge in conjunction with Google's motion for partial summary judgment. The presiding judge referred the sanctions motion

---

[1] The factual background of this action has been described in prior orders and will therefore not be repeated here.

1

to the undersigned. At the time this motion was heard, the presiding judge had not ruled on Google's summary judgement motion. Once that ruling issued, this Court entered an order soliciting further evidence from American Blind as to the nature and extent of its efforts to preserve, collect, and produce relevant evidence. In response to that order, American Blind submitted four additional declarations, and Google, as permitted, filed additional briefing, all of which the Court has now considered.

### B. Substantive Matters

Google's motion is premised on alleged misconduct that falls into two broad categories. First, Google contends that prior to May of 2006, American Blind made inadequate efforts to preserve, collect, and produce relevant evidence. Second, Google contends that in May of 2006, American Blind's founder and CEO, Steve Katzman, *intentionally* destroyed evidence when he "voluntarily resigned" from his position and erased electronic data from certain computers. Even though, as discussed below, Google speculates that there could be some connection between these two categories of purported wrongdoing, the facts related to each of the contentions are largely independent, and will be discussed in turn.

#### 1. Pre-2006 Document Retention, Collection, and Production

Google served American Blind with summons and the complaint in this action seeking declaratory relief in December of 2003. The presiding judge has previously ruled that a justiciable controversy arose between the parties no later June of 2002 when counsel for American Blind sent Google a "cease and desist" letter that portended litigation. See Docket No. 20 at 6:1-5. Thus, American Blind's duty to preserve relevant evidence arose no later than December of 2003, and likely arose some eighteen months earlier. American Blind does not argue to the contrary.

In support of its motion, Google made a factual showing that:

(a) No deposed employee or ex-employee of American Blind recalled the existence of any document retention policy, recalled being instructed to preserve relevant documents, or recalled engaging in any preservation efforts before or after the litigation began.

(b) At least some American Blind employees routinely deleted draft documents.

2

(c) Email was regularly used as a means of communication at American Blind.

(d) Shortly after the litigation commenced, various American Blind employees were instructed to compile and print out any and all emails *between American Blind and Google.* With almost no exceptions, the emails produced by American Blind in this action are confined to such communications between the two companies, which were already in Google's possession.[2] The total number of emails produced by American Blind is not consistent with the evidence as to how American Blind conducted its business and its contention that no relevant evidence was lost or destroyed.

In opposition to the motion, American Blind offered little if any evidence to rebut this factual showing.[3] Instead, American Blind stated a concern that it could not disclose what it had done, on the advice of counsel, to comply with its discovery obligations without waiving attorney-client privilege. American Blind asserted that it had sought to resolve that apparent dilemma by stipulation, but that Google had not cooperated. In its order requesting further evidentiary submissions, the Court advised American Blind that its concern about waiving attorney-client privilege was misplaced. The Court ordered American Blind to provide declarations from its

---

[2] Even after being allowed to make supplemental filings, American Blind has not accounted for the fact that in at least some instances it produced an email "thread" where the final recipient was a Google employee without producing all of the preceding emails that were exchanged within American Blind. Conceivably, there may have been instances where American Blind produced the underlying intra-company email separately and saw no need to produce the entire thread again, but at a minimum these facts further support the conclusion that American Blind's efforts to preserve, collect, and produce relevant evidence were deficient.

[3] A substantial portion of American Blind's opposition was devoted to an argument that the issues raised in this motion were or could have been resolved in Google's prior motion to compel, decided by an order entered on November 13, 2006. This argument misapprehends the nature of a motion to compel, a motion for sanctions, and the relationship between the two. The prior motion only addressed the question of whether American Blind had made adequate efforts to locate and produce all responsive documents *still* in its possession, custody, or control as of the *time of that motion.* Nothing in that motion, or in the order thereon, addressed the issues raised now as to whether American Blind's *prior* retention, collection, and production efforts were adequate and, if not, what sanctions should be imposed. Google's prior motion to compel was a necessary precursor to the present motion, not a bar to it. American Blind's opposition also focused on rebutting the facts offered by Google as to the conduct of Katzman in May of 2006 rather than document preservation, collection, and production prior to that time.

3

employees stating "what they *did* with respect to preserving and collecting documents" without regard to the content of communications between American Blind representatives and the company's counsel.

As noted, American Blind filed four declarations in response to the Court's request for further submissions. The declarations of Robert Flynn and Gregory Ruprecht both conclusorily assert that they were each instructed to preserve and collect relevant documents and that they did so on one or more occasions. Neither declaration provides any meaningful detail as to what the declarants did, what they found, or what happened to any documents they collected. The declaration of Joseph Charno is even more terse. It asserts that he was *instructed* to preserve and collect relevant documents, but stops short of claiming that he ever did so.[4] Thus, nothing in the Ruprecht, Flynn, or Charno declarations creates a substantial conflict with the deposition testimony cited by Google in its moving papers or otherwise serves to rebut the showing made by Google set out above.

The fourth declaration offered by American Blind is that of Jeffrey Alderman who, under various titles, has served on American Blind's "management team" continuously throughout this action. In essence, the declaration reveals that Alderman played a primary role in the efforts American Blind undertook to collect and produce documents. Alderman declares that "in late 2003 and early 2004" he and other managers at American Blind were instructed to "find and preserve documents that were relevant to the Google lawsuit." Alderman states he was told such documents included any relating to communications with Google, keyword advertising, American Blind's internet branding efforts, domain names and URLs, and consumer confusion. Alderman asserts that he complied with those instructions in the first quarter of 2004 by searching his work computer for emails, his personal folder on the network server, and the "shared network system, where all important documents are maintained." Alderman repeated the search sometime in 2005.[5] Alderman

---

[4] The Flynn and Charno declarations also both state that they received such instructions from American Blind's *counsel*. The inclusion of such statements is curious given the Court's express instruction that the declarants could and should state what they *did* without disclosing communications with counsel.

[5] Alderman also refers to additional searches performed in 2006. Those searches are not relevant to the adequacy of American Blind's pre-2006 document preservation, collection, and production efforts at issue in this motion, except insofar as the efforts made in 2006 support an

4

1 provides some additional detail by listing certain specific dates on which he or others conducted
2 searches for materials relating to various topics.  In some instances, Adlerman does not state the
3 results of those searches at all.  In others, he reports that he provided "all" the documents he found to
4 Katzman, but does not provide any further information as to what or how much he found.

### 2. Katzman's Departure

As noted, Katzman left the employ of American Blind in May of 2006.  Shortly thereafter, American Blind discovered that Katzman had taken with him a company-owned laptop computer, and that electronic data on two computers in his office had been erased.  American Blind ultimately filed suit against Katzman in the Eastern District of Michigan and sought a temporary restraining order to prevent Katzman from using information that American Blind contended was proprietary and confidential and to obtain the return of such information.  Katzman has since provided declarations asserting that, to the best of his knowledge, he did not destroy or erase any documents relevant to this litigation.  Katzman explains further that the documents and files that he deleted were, again to the best of his knowledge, all *copies* of files that still exist elsewhere.  As Google points out, however, Katzman's declarations fall short of establishing with certainty that every document he erased still exists and was available to American Blind for review and for production to Google if relevant.

### III.  DISCUSSION

District courts may impose sanctions as part of their inherent power "for willful disobedience of a court order."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 420, 258 (1975)).  In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.  *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) (discussing *Hammond Packing Co. v. Ark.*, 212 U.S. 322, 349-54 (1909)); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D.

---

inference that earlier efforts were inadequate.

5

Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party"); *Computer Assoc. Intern., Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990). Additionally, "[t]he obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *National Ass'n of Radiation Survivors*, 115 F.R.D. at 557-58.

Because of their potency, these inherent powers must be exercised with restraint and discretion. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). A primary aspect of that restraint and discretion is fashioning a sanction appropriate to the conduct in question. *Id*. at 765. When choosing among possible sanctions, the Court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore a prejudiced party to the same position he or she would have been in absent wrongful destruction of evidence by the opposing party. See *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *West v. Goodyear Tire and Rubber Co.*, 167 F.3d776, 779 (2d Cir. 1999). In evaluating the propriety of sanctions, the Court may consider all incidents of prior misconduct, including prior misconduct that already has been subject to sanction. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993). Having carefully considered the evidence presented, the Court concludes that there is insufficient evidence to merit imposing terminating sanctions.

As an initial matter, there is significant tension between the two primary bases on which Google's motion is brought. With respect to American Blind's pre-2006 conduct, Google's most persuasive theory is that the failure to collect and preserve evidence resulted in the loss of material in the ordinary course of business–e.g. emails were deleted, electronic documents overwritten, etc. While such a scenario is plausible–even likely– it suggests that the *same* gradual loss of materials likely would have taken place on Katzman's computers *prior* to the time he deleted files upon

6

leaving the company. Thus, even assuming Katzman deleted a significant number of files that are not available elsewhere, there is no compelling reason to believe that critical materials from earlier time periods likely still existed on his computers.

Google suggests there is a possibility that from the outset Katzman made a deliberate effort to gather relevant documents that might be elsewhere in the company and to ensure those materials were retained only on the computers in his office (or home) and that Katzman consciously chose to withhold (and later destroy) those documents, together with any relevant materials that had *always* been located only on those computers. While such a scenario would mean that Katzman's admitted deletion of files in May of 2006 included many relevant documents, it is supported only by sheer speculation. The evidence simply does not warrant drawing a conclusion that such deliberate and conscious wrongdoing took place. Google characterizes Katzman as a "bad actor," but the most it has shown is that Katzman may have been grossly negligent in carrying out American Blind's discovery obligations, and that he thereafter was involved in a dispute *with American Blind* as to whether he acted inappropriately with respect to its proprietary and confidential information.[6] Thus, while there remains a possibility that at least some relevant documents may have been lost as a result of Katzman's conduct in May of 2006, the weight of the evidence does not support an inference that any wholesale destruction of relevant evidence took place at that time.[7]

The evidence as to American Blind's pre-2006 activities, however, much more strongly supports an inference that a substantial amount of relevant material, particularly in the form of internal American Blind email, may have been lost as a result of American Blind's failure to conduct an adequate search. Notwithstanding references in Alderman's declaration to some searches performed in 2004 and 2005, it remains apparent that prior to 2006, no concerted effort was made to

---

[6] Katzman's contention that his personal files were intermingled with those belonging to American Blind appears plausible. Whether he committed any wrongs against American Blind in connection with his attempts to retain materials to which he may have believed he was entitled, or in any other respect, is for the Eastern District of Michigan to decide.

[7] As noted, Google is entitled to the benefit of doubt where there is a question as to what may have been lost or destroyed. Accordingly, the fact that at least a few relevant documents unavailable elsewhere may have been among those intentionally deleted by Katzman further supports the imposition of some sanctions.

7

search for internal email relating to the specific topics of Google's document requests. Indeed, it is not clear that an adequate search was made even with respect to fulfilling American Blind's initial disclosure obligations under Rule 26. American Blind undisputedly knew and understood that email is subject to production–at the outset it gathered and produced all email between it and Google. It appears, however, that its employees were never adequately instructed as to what was relevant or how to search for such material when responding to discovery thereafter.

American Blind's contention that it is reasonable to conclude documents simply never existed in the quantities envisioned by Google's motion is unavailing. On this record, it is not possible to conclude with any certainty how many documents likely were lost or how important such documents might have been, but that uncertainty weighs against American Blind. Additionally, even though the evidence does not support a conclusion of intentional document destruction or that American Blind or its employees specifically intended to deprive Google of relevant evidence, the record demonstrates a willful indifference at American Blind towards ensuring that relevant documents were preserved, collected, and produced prior to 2006.[8] Accordingly, the imposition of some form of sanctions is appropriate.

As noted above, to the extent possible, sanctions should be designed to eliminate the prejudice caused to the opposing party. Here, Google identifies three categories of prejudice it claims to have suffered. First, Google asserts that the destroyed evidence likely included information as to whether American Blinds *deliberately* bids on its own competitors' trademarks, which Google contends supports an unclean hands or estoppel defense. In this motion, Google asserts that there is no dispute that American Blinds engages in such conduct, but that questions remain as to its intent in doing so.[9]

In the order on Google's motion for summary judgment, the presiding judge has now ruled,

---

[8] As American Blind itself points out, Katzman is a lawyer and should be presumed to know what is required in fulfilling discovery obligations.

[9] In its summary judgment motion, Google argued that its unclean hands defense was based on slightly different alleged conduct; namely, American Blind's failure to designate its competitors' trademarks as "negative keywords" such that American Blind's ads would not appear when a user searches for those trademarks.

8

"[t]he Court has considered the equities involved in this case and concludes that the doctrine of unclean hands does not bar [American Blind's] claims." Docket No. 308, p. 20. Among other things, the presiding judge observed that there is a significant public interest in resolving whether the AdWords program violates trademark law. Under these circumstances, it does not appear that the unclean hands defense will be viable regardless of the precise alleged conduct of American Blind upon which Google makes the argument. Nevertheless, because American Blind did not seek and was not granted summary judgment in its favor on the point, the presiding judge technically has not ruled that the defense is barred as a matter of law, so there is at least an argument that Google is not foreclosed from presenting the defense at trial, and therefore may still suffer some unfair disadvantage from the loss of relevant evidence.[10]

Google's second claim of prejudice is that it believes documents related to the strength of American Blind's claimed trademarks likely were destroyed. The presiding judge has greatly diminished the importance of this issue by ruling that American Blind may not proceed based on its claimed rights in the "American Blind" or "American Blinds" marks. Docket No. 308, p.13. Strength of mark, however, remains relevant as one of the *Sleekcraft* factors to be considered in connection with the remaining claims. See *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Thus, there arguably is some remaining prejudice to Google arising from the loss of evidence bearing on the strength of the marks still in issue.

Finally, Google contends it has been prejudiced by the likely loss of documents bearing on damages. American Blind responds that it has elected to present its damages evidence solely through expert testimony. Google is correct that American Blind's choice to rely on expert testimony would not eliminate Google's right to discover documents relevant to damages that it potentially could use to rebut the expert witness's analysis. That said, it does not appear likely that Google has been substantially prejudiced in this regard, as the crux of the damages dispute will not center on information likely to have existed in any documents that may have been lost or destroyed

---

[10] That argument likely is stronger with respect to presenting facts other than those addressed in the summary judgment motion as the basis of unclean hands. As noted above, the facts Google asserts in this motion give rise to unclean hands *are* different than those presented in the summary judgment motion.

9

prior to 2006.

In fashioning an appropriate sanctions order, the Court is mindful of the need to punish and deter intentional acts or omissions contrary to the rules of discovery, but at the same time to refrain from formulating a remedy out of all proportion to the actual harm wrought by the failure to meet those discovery obligations. Taking into account that operating principle, the Court imposes the following evidentiary and monetary sanctions:

1. In the event the presiding judge permits Google to pursue an unclean hands defense at all, it will be deemed judicially established that American Blinds bids on its competitors' trademarks with the deliberate purpose and intent of attempting to entice persons who are specifically looking for the websites of those competitors to visit the website of American Blinds. It remains for the finder of fact, either the jury or the court sitting in equity, or both,[11] to determine whether under all the circumstances here, that conduct, standing alone or in conjunction with any other conduct, legally constitutes "unclean hands" and the extent to which, if any, American Blind's recovery of damages is thereby barred or limited.

2. It is hereby deemed judicially established that the first *Sleekcraft* factor–strength of mark– weighs in favor of Google. It remains for the trier of fact to evaluate the significance of that finding in light of the evidence as to the remaining factors.

3. A monetary sanction shall be imposed in the amount of $15,000, payable by American Blind to Google within 30 days of the date of this order. That amount represents a sum sufficiently large to penalize and deter the sanctioned conduct and to reimburse Google for some portion of its expenses in bring this motion, without giving Google a windfall or creating undue financial hardship to American Blind.

---

[11] The respective roles of court and jury at trial are a matter for the presiding judge to decide.

## IV. CONCLUSION

Google's motion for sanctions is granted to the limited extent set forth above and is otherwise denied.

IT IS SO ORDERED.

Dated: June 27, 2007

_____
RICHARD SEEBORG
United States Magistrate Judge

C 03-5340 JF (RS)

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Ethan B. Andelman    andelmane@howrey.com, fabianj@howrey.com

Dawn Beery    dbeery@kelleydrye.com

Susan Jean Greenspon    sgreenspon@kelleydrye.com, cplater@kelleydrye.com; vallen@kelleydrye.com; sdunlap@kelleydrye.com

Ravind Singh Grewal    rsg@kvn.com

Klaus Hemingway Hamm    khamm@kvn.com, efiling@kvn.com; wik@kvn.com

Ajay Krishnan    akrishnan@kvn.com, efiling@kvn.com; rthomas@kvn.com

Mark Alan Lemley    mlemley@kvn.com, srosen@kvn.com

Michael Henry Page    mhp@kvn.com, efiling@kvn.com; nsn@kvn.com

Robert Nathan Phillips    phillipsr@howrey.com, fabianj@howrey.com

Caroline Claire Plater    cplater@kelleydrye.com, heberhart@kelleydrye.com

David A. Rammelt    drammelt@kelleydrye.com, sdunlap@kelleydrye.com; pgarrity@kelleydrye.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 6/27/07**                                                            **Chambers of Judge Richard Seeborg**

**By:        /s/ BAK**

C 03-5340 JF (RS)