KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
MARK A. LEMLEY - #155830
KLAUS H. HAMM - #224905
AJAY S. KRISHNAN - #222476
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff and Counter Defendant
GOOGLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc., and DOES 1-100, inclusive,<br><br>Defendants. | Case No. C 03-5340-JF (RS)<br><br>**GOOGLE'S MOTION TO STRIKE ABWF'S JURY DEMAND**<br><br>Date:       September 28, 2007<br>Time:       9 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:      Hon. Jeremy Fogel<br><br>Date Comp. Filed: November 26, 2003<br><br>Trial Date: November 13, 2007 |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.,<br><br>Counter Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Counter Defendant | |

1

**TABLE OF CONTENTS**

2

**Page**

3   NOTICE OF MOTION AND MOTION .............................................................................1

4   MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

5   I.      INTRODUCTION ..............................................................................................1

6   II.     FACTS ................................................................................................................2

7   III.    ARGUMENT ......................................................................................................5

8           A.      ABWF cannot recover damages on its Lanham Act claims. ...................5

9                   1.      Google is a publisher of paid advertisements in electronic
                            communications. ......................................................................6
10
                    2.      If Google infringes at all, it is an innocent infringer....................6
11
            B.      ABWF's state law claims are preempted under the CDA. ....................10
12
            C.      Because ABWF can seek only injunctive relief, it has no right to a jury
13                  trial. ......................................................................................................11

14  IV.    CONCLUSION..................................................................................................11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

395643.01

1
2

# TABLE OF AUTHORITIES

**Page(s)**

3

## FEDERAL CASES

4

*Anti-Monopoly, Inc. v. General Mills Fun Group,*
    611 F.2d 296 (9th Cir. 1979) ...................................................................8

5

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ...........................................................10, 11

6

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
    526 U.S. 687 (1999)...............................................................................11

7
8

*Dial One of the Mid-South, Inc. v. BellSouth Telcomms., Inc.,*
    269 F.3d 523 (5TH Cir. 2001) .................................................................7

9

*Government Employees Insurance Company v. Google Inc.,*
    2005 WL 1903128 (E.D. Va. 2005)...................................................3, 5, 10

10
11

*Gucci America, Inc. v. Hall & Associates,*
    135 F.Supp.2d 409  (S.D.N.Y. 2001)......................................................6, 7

12

*Hendrickson v. eBay Inc.,*
    165 F.Supp.2d 1082  (C.D. Cal. 2001) ....................................................9, 10

13
14

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    985 F.Supp. 949 (C.D. Cal.) ..................................................................7, 9

15

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    194 F.3d 980 (9th Cir. 1999) ...............................................................6, 7, 9

16
17

*Masson v. New Yorker Magazine, Inc.,*
    501 U.S. 496 (1991)................................................................................7

18

*NBA Properties v. Untertainment Records LLC,*
    1999 WL 335147 (S.D. N.Y. 1999).........................................................7

19
20

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)............................................................................1, 7

21

*Perfect 10, Inc. v. CCBill LLC,*
    481 F.3d 751 (9th Cir. 2007) .................................................................10

22
23

*Playboy Enterprise, Inc. v. Netscape Commc'ns Corp.,*
    354 F.3d 1020  (9th Cir. 2004) ...............................................................8

24

*World Wrestling Federation, Inc. v. Posters, Inc.,*
    58 U.S.P.Q.2d 1783  (N.D. Ill. 2000) .......................................................7

25
26

## FEDERAL STATUTES

15 U.S.C. § 1114(1)....................................................................................6

27
28

ii

1

**TABLE OF AUTHORITIES**
(cont'd)

2

**Page(s)**

3    15 U.S.C. § 1114(2)(B) ................................................................................6

4    15 U.S.C. § 1125(a) ....................................................................................6

5    47 U.S.C. § 230(c) ....................................................................................10

6    47 U.S.C. § 230(e) (3)...............................................................................10

7

**STATE STATUTES**

8    California Business & Professions Code § 17200 .....................................10

9

**MISCELLANEOUS**

10   Remarks of Subcommittee Chairman Robert Kastenmeier,
11        134 Cong.Rec. H10411-02 ...................................................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

395643.01

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

     PLEASE TAKE NOTICE that on September 28, 2007, at 9 a.m., or as soon thereafter as this matter may be heard in Courtroom 3 of the Honorable Jeremy Fogel, United States District Court, located at 280 South First Street, Fifth Floor, San Jose, California, Plaintiff and Counter-Defendant Google Inc. ("Google") will and hereby does move under Federal Rule of Civil Procedure 39(a) to strike Defendant and Counter-Plaintiff American Blind & Wallpaper Factory, Inc.'s ("ABWF") jury demand.

     This motion is based upon this notice of motion and motion, the memorandum of points and authorities, and the declaration of Klaus H. Hamm in support thereof filed herewith, the other pleadings, records, and files in this action, and such oral argument at the time of the hearing or other matters this Court deems appropriate.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

     Except in cases of *New York Times* "actual malice"—a standard ABWF cannot possibly meet—the Lanham Act expressly bars damage claims against publishers of advertisements. As a result, ABWF is not entitled to damages, and thus cannot demand a jury trial. By limiting available relief to an injunction, section 1114 of the Lanham Act prohibits damages against a "publisher" of electronic communications when the alleged infringement "is contained in or is part of paid advertising" and the defendant is an "innocent infringer[]." A publisher is "innocent" unless it acts with knowledge of the alleged infringement or with reckless disregard as to whether the material infringes the trademark owner's rights.

     In this case, ABWF alleges that paid advertisements called "Sponsored Links," published by Google and created and placed by companies that sell blinds and wallpaper, infringe ABWF's registered trademarks. But Google has no inkling that it has ever confused anyone by displaying an ad triggered with one of ABWF's trademarks—indeed, ABWF itself has no such knowledge. Rather, Google enforces numerous policies designed to *prevent* confusion, including forbidding advertisers from using the trademarks of others in their ads. Google knows its policies work, in

1

1    part, because they are trial tested. Specifically, Google cannot be charged with *knowledge* that

2    its trademark policies give rise to an actionable likelihood of confusion because the only court to

3    decide that question to date entered judgment to the contrary *as a matter of law*. In that case the

4    plaintiff was a top auto insurance company with the highly visible brand name "GEICO."

5    Google won that trial because the plaintiff had *no* evidence of confusion, and the trial court

6    entered judgment for Google as a matter of law once the plaintiff rested its case. Nor has

7    American Blind presented any evidence of confusion. Despite a huge incentive to find such

8    evidence, after three and half years, ABWF has not identified a single consumer who has ever

9    been confused by Sponsored Links advertising ABWF's competition.

10    Google thus has no reason to believe (much less know) that it has ever infringed any of

11    ABWF's registered trademarks, which means Google is *at most* an "innocent infringer," if it

12    infringes at all. Therefore, ABWF cannot recover damages on its Lanham Act claims. As for

13    ABWF's claims under state law, a recent Ninth Circuit opinion makes clear that they are

14    preempted. Without a damages claim, ABWF has no right to a jury trial.

15                                  **II.    FACTS**

16    Putting to the side the question of whether Google infringes—which, given this Court's

17    prior rulings on both summary judgment and Google's successful spoliation motion, ABWF will

18    be unable to establish at trial—there are three separate sets of facts, each of which independently

19    establishes that Google is *at most* an "innocent infringer," and thus immune to damages. Those

20    facts are (1) Google's polices preventing advertisers from infringing the trademark rights of

21    others; (2) the Eastern District of Virginia's Judgment as a Matter of Law in the *GEICO* case that

22    trademark-triggered Sponsored Links do not cause confusion; and (3) ABWF's failure to provide

23    evidence of even a single instance of actual confusion despite having years to find and produce

24    some.

25    Google's Sponsored Links policies prevent advertisers from violating third party

26    trademark rights. First, Google clearly labels Sponsored Links as such and displays them

27    separately from search results. As this Court already has held after considering both parties'

28    evidence, "there is no evidence that Google has failed to identify sponsored links in keeping with

2

GOOGLE'S MOTION TO STRIKE ABWF'S JURY DEMAND
CASE NO. C 03-5340-JF (RS)

1    its stated policy for doing so."[1]  Second, Google's advertisers may not use the trademarks of

2    others in their ads, *regardless* whether that use would be confusing.  Again, as this Court has

3    held, there is no evidence "that Google permits purchasers of sponsored links to use trademarked

4    terms in their text or title when the sponsor does not own the trademark."[2]  Third, Google

5    requires Sponsored Links to clearly identify their source.  Its policy requires Sponsored Link text

6    to "[c]learly and accurately describe" the advertised website, and the displayed URL—which

7    provides the link to the advertisers' site—"must accurately reflect the URL of" the advertiser's

8    website.[3]  Finally, Google's terms and conditions for advertisers require them to agree that they

9

10   [1] Order Granting In Part And Denying In Part Motion For Summary Judgment (D.I. 308)
     ("Summary Judgment Order"), 8.

11   [2] *Id.*

12   [3] Declaration of Klaus H. Hamm ("Hamm Decl.") Ex. A (AdWords Editorial Guidelines) at
     GGL002960 and GGL002965. Google's Learning Center explains this requirement in detail:

13
             So as not to mislead users, the display URL should give users a
14           clear idea of the website or landing page to which they will be
             taken when they click on an ad. Display URLs must:
15
             Indicate who owns the destination URL, but does not need to
16           match the actual destination URL of the landing page exactly.

17           ***

18           Here is an example of a correct and an incorrect display URL:

19           Correct:
             Display URL: bigbookstore.com
             Destination URL: bigbookstore.com/new/a-c.htm
20
             Incorrect:
21           Display URL: bigbookstore.com
             Destination URL: http://www.amazon.com/home.html/104-
22           7002842-259

23           In the first example, clicking on the ad takes users to a page within
             the bigbookstore.com website. Even though the display URL is
24           different from the destination URL, it accurately represents where
             the user will be taken when he or she clicks on the ad.
25
             In the second example, the display URL bigbookstore.com does
26           not accurately represent the site to which the user will be taken,
             which is a page within the amazon.com domain. This is improper
27           use of the display URL. An ad with this display URL would not be
             approved.
28
     Hamm Decl. Ex. B (AdWords Learning Center) at GGL002921-22.

3

GOOGLE'S MOTION TO STRIKE ABWF'S JURY DEMAND
CASE NO. C 03-5340-JF (RS)

1    are responsible for any "trademark issues" associated with their ads, and that their ads do not

2    violate any "third party rights."[4]

3       One of the nation's top car insurance companies tested Google's policies at trial, and

4    could not produce any evidence that those policies fail to prevent confusion. *Government*

5    *Employees Insurance Company v. Google Inc.*, 2005 WL 1903128 (E.D. Va. 2005) ("*GEICO*"),

6    involved similar facts to those at issue in this case. GEICO sued Google alleging that Sponsored

7    Links that were triggered by its trademarks, but that did not contain them, violated the Lanham

8    Act under an initial interest confusion theory.[5] The court held that Google "used" GEICO's

9    trademarks, and allowed the case to go to trial on the issue of whether this use caused confusion.

10   But GEICO—just as ABWF here—had no evidence of actual confusion, instead relying—just as

11   ABWF here—on a flawed survey as evidence of a likelihood of confusion.[6] At the conclusion of

12   GEICO's evidence, the court granted Google Judgment as a Matter of Law under Federal Rule of

13   Civil Procedure 52(c). It held: "plaintiff has failed to establish a likelihood of confusion

14   stemming from Google's use of GEICO's trademark as a keyword and has not produced

15   sufficient evidence to proceed on the question of whether the Sponsored Links that do not

16   reference GEICO's marks in their headings or text create a sufficient likelihood of confusion to

17   violate either the Lanham Act or Virginia common law."[7]

18      There is no evidence in this action that suggests that Google's trademark-infringement

19   prevention policies have failed to prevent infringement of ABWF's marks. During the *more*

20   *than three and half years* since Google filed its complaint for declaratory relief, ABWF has not

21   produced a shred of evidence that anyone has ever been confused by Google's Sponsored Links,

22   despite its enormous incentive to find and produce such evidence. In particular, Google's eighth

23   interrogatory, served on May 21, 2004, asked ABWF to state all facts in support of its contention

24

25   ───────────────────────

     [4] Hamm Decl. Ex. C (AdWords Terms & Condictions); *see also*
26   https://adwords.google.com/select/tsandcsfinder.

27   [5] *Government Employees Ins. Co.*, 2005 WL 1903128 (E.D. Va. 2005).

     [6] *Id.*
28   [7] *Id.* at *7.

GOOGLE'S MOTION TO STRIKE ABWF'S JURY DEMAND
CASE NO. C 03-5340-JF (RS)

395643.01

1    that consumers are confused by Google's search engine results.[8] In response, ABWF pointed

2    only to studies about search engines generally and to unspecified hearsay "telephone calls from

3    consumers," along with unsupported speculation that those consumers possibly were confused

4    when attempting to reach ABWF's website.[9] In correspondence, Google repeatedly requested

5    ABWF to provide specific information about these calls.[10] ABWF eventually admitted that it

6    had none, responding that it "has no record of any contact or orders from these type of callers

7    [and] cannot provide any additional information concerning these types of telephone calls at this

8    time."[11] ABWF also has failed to produce a survey showing that anyone is likely to be confused

9    by Sponsored Links triggered with its registered trademarks. Instead, ABWF's survey does not

10    relate to *any* trademarks still in issue and whose many methodological flaws include the lack of a

11    control.[12] As this Court has ruled, this "lack of a control in the study clearly reduces its

12    probative value."[13]

13                     **III.    ARGUMENT**

14        Because the Lanham Act prevents ABWF from recovering monetary damages against

15    Google, and ABWF's state law claims are preempted, ABWF is not entitled to a jury trial.

16    **A.    ABWF cannot recover damages on its Lanham Act claims.**

17        The Lanham Act does not allow for money damages against most publishers. It provides:

18        Where the infringement or violation complained of is contained in or is part of

           paid advertising matter in a newspaper, magazine, or other similar periodical or in

19        an electronic communication as defined in section 2510 (12) of title 18, the

           remedies of the owner of the right infringed or person bringing the action under

20        section 1125 (a) of this title as against the publisher or distributor of such

           newspaper, magazine, or other similar periodical or electronic communication

21        shall be limited to an injunction against the presentation of such advertising

           matter in future issues of such newspapers, magazines, or other similar periodicals

22        or in future transmissions of such electronic communications. The limitations of

23    _____

     [8] Hamm Decl. Ex. D (Google's First Set of Interrogatories) at 3-4.

24    [9] Hamm Decl. Ex. E (ABWF's Answers to Google First Set of Interrogatories) at 8-9.

25    [10] Hamm Decl. Exs. F - H (Nov. 10, 2005, Dec. 5, 2005, and Feb. 9, 2006 letters from Hamm to
     Rammelt).

26    [11] Hamm Decl. Ex. I (Feb. 17, 2006 letter from Plater to Hamm).

27    [12] Google's briefing on its motion for summary judgment, and the rebuttal expert report of Dr.
     Itamar Simonson filed therewith, explains these flaws in detail.

28    [13] Summary Judgment Order at 15.

395643.01

1      this subparagraph shall apply only to innocent infringers and innocent violators.[14]

2 This provision limits the relief against publishers of paid advertisements, including online

3 publishers, to injunctive relief, so long as the publisher is an innocent infringer.[15]  The limitation

4 applies to each of ABWF's remaining federal causes of action: its first cause of action for

5 trademark infringement under 15 U.S.C. § 1114(1);[16] its second cause of action for false

6 representation under 15 U.S.C. § 1125(a);[17] and its eighth cause of action for contributory

7 trademark infringement under 15 U.S.C. § 1114(1).[18]

8      **1.    Google is a publisher of paid advertisements in electronic communications.**

9      Google satisfies the preliminary requirements for damages immunity under Section

10 1114(2)(b): Sponsored Links are paid advertisements and electronic communications, and are

11 published by Google.  First, there is no dispute that Sponsored Links are paid advertisements and

12 that Google publishes the site where they appear.  Second, there should be no dispute that

13 Google's website is an electronic communication.  Section 1114(2)(B) refers to Section 2510(12)

14 of title 18 for the definition of "electronic communications," and that section states that the term

15 "means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature

16 transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical

17 system."  As one case has held, that definition "precisely describes the typical commercial

18 internet website."[19]

19      **2.    If Google infringes at all, it is an innocent infringer.**

20      Google disputes that it infringes ABWF's trademarks in the first place, but even if it does

21 infringe, any infringement is innocent.  Although the term "innocent infringer" is not defined in

22

---

23 [14] 15 U.S.C. § 1114(2)(B).

24 [15] *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999).

25 [16] The limitations of Section 1114(2)(B) explicitly apply to causes of action brought by the "owner of the right infringed" under Section 1114.

26 [17] The limitations of Section 1114(2)(B) explicitly apply to causes of action "under section 1125(a)."

27 [18] The limitations of Section 1114(2)(B) explicitly apply to causes of action brought by the "owner of the right infringed" under Section 1114.

28 [19] *Gucci America, Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 419 n.20 (S.D. N.Y. 2001).

395643.01

1  the statute, the legislative history and subsequent case law make clear that it embraces libel law's

2  "actual malice" standard as set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

3  Congress revised Section 1114(2)(B) to its current formulation in 1992. At the time, the bill's

4  co-sponsor in the House, Congressman Robert Kastenmeier, explained that the revision:

5       exempts from liability 'innocent' disseminators of offending material, whether
         that material constitutes a violation of Section 32(1) relating to infringement, or of
6       proposed Section 43(a), relating to false and misleading commercial advertising.
         Most prominently, the change protects newspapers, magazines, broadcasters, and
7       other media from liability for the innocent dissemination of commercial false
         advertising, including promotional material. The word "innocent" is intended to
8       encompass the constitutional standards set forth in *New York Times v. Sullivan*,
         376 U.S. 254 (1964) and its progeny.[20]
9

10  Guided by *New York Times*, courts thus have concluded that "an infringer is 'innocent' unless it

11  acted either (1) with knowledge of the infringement or (2) with reckless disregard as to whether

12  the material infringed the trademark owner's rights."[21] Under this standard, actual malice must

13  be proved by clear and convincing evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S.

14  496, 510 (1991).

15       In the contributory trademark infringement context, a party does not have knowledge that

16  it contributes to infringing a trademark simply because someone has accused it of doing so.[22]

17  Moreover, because the "use of an identical or similar mark does not necessarily constitute

18  infringement" and, instead, the "use must also cause a likelihood of confusion as to origin or

19  sponsorship,"[23] knowledge of trademark use is not knowledge of trademark infringement. For

20  example, when a party who registers internet domain names is on notice from a trademark owner

21  that the registration of a domain name would infringe the trademark owner's mark, the accused

22

23  [20] Remarks of Subcommittee Chairman Robert Kastenmeier, 134 Cong. Rec. H10411-02 (Oct. 19, 1988).

24  [21] *Gucci America*, 135 F. Supp. 2d at 420; *see also World Wrestling Fed'n, Inc. v. Posters, Inc.*,
25  58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000); *NBA Properties v. Untertainment Records LLC*, 1999 WL
    335147 (S.D. N.Y. 1999). *But see Dial One of the Mid-South, Inc. v. BellSouth Telcomms., Inc.*,
26  269 F.3d 523, 526 (5th Cir. 2001) (adopting "objective reasonableness" standard).

    [22] *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997)
27  ("The mere assertion by a trademark owner that a domain name infringes its mark is not
    sufficient to impute knowledge of infringement …").

28  [23] *Id.*

1   party cannot reasonably "presume infringement even where the domain name is identical to a

2   mark and registered for use in connection with a similar or identical purpose."[24] Thus, to show

3   that a defendant has knowledge of trademark infringement, a plaintiff must demonstrate (1) that

4   the defendant knows of its use of the mark *and* (2) that it knows the use is likely to cause

5   confusion as to origin or sponsorship of the service identified by the mark.  Similarly, to prove

6   that a defendant has acted with reckless disregard, a plaintiff must show that the defendant acted

7   with reckless disregard about whether its use of a plaintiff's trademark is likely to cause

8   confusion as to origin or sponsorship.

9          Rather than knowingly allowing trademark infringement or taking a cavalier attitude

10  about whether it takes place, Google actively enforces several policies designed to prevent

11  trademark infringement.  Most importantly, Google forbids advertisers from using the

12  trademarks of others in the text of their ads, even though many such uses undoubtedly are not

13  infringement.  For example, parties may use their competitors' trademarks in competitive

14  advertising without violating trademark laws, but as a prophylactic measure Google prohibits

15  such use.[25]  To further ensure that users are not confused by an advertisement's source, Google

16  requires advertisers to include the ad's source (*i.e.*, the advertised website) as one of its four lines

17  of text (including the title line).  Indeed, this fact alone demonstrates any infringement is

18  innocent because the Ninth Circuit has held that if a trademark-triggered advertisement on a

19  search engine "clearly identified its source … no confusion would occur."[26]  Given that the Ninth

20  Circuit has provided guidance on how search engines can avoid infringement, and Google has

21  followed it, Google cannot be considered anything but an innocent infringer if it later turns out

22  that Google is infringing despite following this guidance.

23         Google's experience confirms that its anti-confusion policies work.  As detailed above,

24  one of the top insurance companies in the country (GEICO) represented by one of the top law

25  _____

26  [24] *Id.*

27  [25] *See Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 301 n. 2 (9th Cir. 1979)
    ("The owner of a widely recognized trademark cannot ... prevent a competitor from referring to
    the owner's mark in the context of comparative advertising.").

28  [26] *Playboy Enter., Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1025 n.16 (9th Cir. 2004).

8

1  firms in the country (Arnold & Porter) was not able to identify any evidence of a likelihood of

2  confusion in a case with the same fact pattern as this case.  Nothing that has happened so far in

3  this litigation has changed Google's well-founded view that it causes no confusion.  Indeed,

4  ABWF's would-be evidence of trademark confusion is far less convincing than GEICO's.  While

5  GEICO's survey had an ill-conceived control, ABWF's has none at all.  And while GEICO's

6  survey related to marks at issue in the case (including one of the most recognized marks in the

7  nation), ABWF's do not:  ABWF survey tests the mark "American Blinds," while the trademarks

8  at issue are "American Blind & Wallpaper Factory," "American Blind Factory" and

9  "Decoratetoday"!  Thus, even if ABWF is somehow miraculously able to prove confusion on

10  this evidence, Google has never had any reason to anticipate that result.

11       Moreover, ABWF has not identified particular Sponsored Links displayed by Google and

12  explained why their text causes confusion.  In *Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082

13  (C.D. Cal. 2001), the plaintiff sued eBay for displaying advertisements posted by sellers that

14  allegedly infringed his tradedress.  The court held that eBay was entitled to the "innocent

15  infringer" protections of Section 1114(2)(B) because the plaintiff had not identified particular

16  advertisements that violated his Lanham Act rights and because "eBay has no affirmative duty to

17  monitor its own website for potential trade dress violation."[27]  Indeed, the court held that because

18  eBay published so many advertisements and monitoring them would pose such a burden, that

19  plaintiff also was not entitled to an injunction preventing false and or misleading advertisements

20  related to his tradedress.  Like the plaintiff in *Hendrickson*, ABWF has not identified particular

21  ads that cause confusion.  Instead, ABWF makes the sweeping accusation that all ads triggered

22  with its trademarks infringe the marks simply because the ads appear next to search results for

23  queries containing ABWF's trademarks.  This type of broad brush accusation, however, may not

24  serve as a shortcut for proving that a particular ad's text confuses users.  ABWF's failure to

25  identify particular Sponsored Links that cause confusion and the fact that Google displays so

26  many Sponsored Links means that Google cannot possibly know that any particular

27  advertisement causes confusion.

28

9

395643.01

1   It is important to keep in mind that Google is not asking the Court to issue a ruling on the

2   question of whether the ads Google posts cause confusion. The question here is—in advance of

3   any determination in this case and in the face of a contrary determination in *GEICO*—simply

4   whether Google *already knows* that the ads cause confusion or acts in reckless disregard as to

5   whether the ads infringe. Because Google enforces policies designed to *prevent* confusion, and

6   Google has received multiple assurances that its policies work—from its prior litigation, the

7   Ninth Circuit's ruling in *Playboy*, and from ABWF's admitted failure to produce evidence that

8   Google has confused a single consumer—the *worst* that can possibly be said about Google is that

9   it is an innocent infringer.

10  **B.    ABWF's state law claims are preempted under the CDA.**

11  ABWF's state law causes of action[28] are preempted under the Communications Decency

12  Act ("CDA"). A Ninth Circuit opinion filed on March 29, 2007, *Perfect 10, Inc. v. CCBill LLC*,

13  481 F.3d 751, 767-68 (9th Cir. 2007), held that, under 47 U.S.C. §§ 230(c)(1) and 230(e)(3) of

14  the CDA, parties may not bring *any* state law claims, including intellectual property claims,

15  against an "interactive computer service" when a third party provides the content that is the

16  subject of the would-be claim.[29] In other words, the CDA prohibits state law causes of action

17  against Internet services who publish information provided by another party.[30]

18  Google first raised this issue in 2004 when it moved to dismiss ABWF's non-intellectual

19  property state law cause of action for tortious interference with prospective business advantage

20  because the CDA preempts it. The Court dismissed that cause of action on other grounds and did

21  not reach the preemption issue. At the time, ABWF argued that the CDA did not preempt the

22  cause of action because Google plays too active a role in posting the third parties' Sponsored

23  ────────────

24  [27] *Hendrickson*, 165 F. Supp. 2d at 1095.

[28] ABWF's remaining state law causes of action are its fifth cause of action for unfair business
25  competition under California Business & Professions Code § 17200 and its sixth cause of action
for common law trademark infringement under California law.

26  [29] Before *Perfect 10*, it was unclear which state law claims the CDA preempted. *Perfect 10* held
that the preemption extended to *all* state law causes of action, including state law intellectual
27  property claims.

28  [30] *Perfect 10*, 481 F.3d at 767-68; *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122-1125
(9th Cir. 2003).

1   Links and thus qualified as a "content provider" for the Sponsored Links at issue rather than a

2   publisher of third parties' content.  Subsequent case law clearly shows that this argument could

3   never succeed.

4        The Ninth Circuit has held that the preemption "provides broad immunity for publishing

5   content provided primarily by third parties," such that "so long as a third party willingly provides

6   the essential published content, the interactive service provider receives full immunity regardless

7   of the specific editing or selection process."[31]  Thus ABWF cannot argue that its claims are not

8   preempted because Google allows advertisers to display their Sponsored Links when users

9   search for particular trademarks.  The Sponsored Links at issue are advertisements paid for by

10  third parties.  Google's "specific editing or selection process" is irrelevant to the preemption

11  analysis.  CDA preemption applies, and ABWF's state law causes of action may not go forward.

12  **C.**    **Because ABWF can seek only injunctive relief, it has no right to a jury trial.**

13       "It is settled law that the Seventh Amendment" right to a jury trial "does not apply" in

14  "suits seeking only injunctive relief."[32]  Because the Lanham Act and CDA prohibit ABWF from

15  all relief except injunctive relief, the Seventh Amendment right to a jury trial does not apply in

16  this case.

17                         **IV.**    **CONCLUSION**

18       For the foregoing reasons, the Court should hold that ABWF is entitled neither to

19  damages nor to a jury trial.

20  Dated:  August 10, 2007                    KEKER & VAN NEST, LLP

21

22                               By: /s/ Klaus H. Hamm _____
                                   KLAUS H. HAMM

23                                 Attorneys for Plaintiff and Counter Defendant
                                   GOOGLE INC.

24

25  _____

    [31] *Carafano*, 339 F.3d at 1123-24.

26  [32] *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).

27

28

GOOGLE'S MOTION TO STRIKE ABWF'S JURY DEMAND
CASE NO. C 03-5340-JF (RS)