# EXHIBIT A

Dockets.Justia.com

**Google**
AdWords    It's All About Results™

# Google AdWords Editorial Guidelines

The most effective advertising communicates a clear message to a targeted audience. Once you determine whom you want to reach and select appropriate keywords, you need to create ads that will inform your potential customers about the products and services you offer. The Google AdWords Editorial Guidelines will help you create effective ads to generate sales and meet your goals.

Underlying all the Editorial Guidelines are two simple principles that have worked for thousands of advertisers already in the program:

- Clearly and accurately describe your site.
- Emphasize the unique benefits of your product or service.

Our ultimate goal is your success, and we believe that providing a great user experience is the best way to ensure it. To run your ads on Google and our growing ad network of sites and products, you must adhere to these guidelines.

In cases where only minor changes are required for an ad to comply with our Editorial Guidelines, an AdWords Specialist may edit your ad for you. Examples of the type of edits we may make for you include the following: removing an exclamation point, removing or adding an extra space, and fixing a spelling error. However, Google shall not be responsible in the event that a change is not made to your ad text and a disapproval results. So, please be careful to follow the Editorial Guidelines to help ensure that your ads continue running.

## Ad Style & Grammar                                        ⛶ back to top

## Use clear, direct language and avoid gimmicks.

### Use Standard Punctuation

- No repeated and unnecessary punctuation or symbols.
- Your title may not contain an exclamation point.
- Your ad text may only contain one exclamation point.

| Correct Ad | Correct because: |
|---|---|
| Advertise with Google<br>Want fast results?<br>Create your campaign today!<br>adwords.google.com | No exclamation point in title.<br><br>Question mark used appropriately.<br><br>One exclamation point in ad text. |
| Incorrect Ad | Incorrect because: |
| Advertise with Google!<br>Want fast results??<br>Create your campaign today!!<br>adwords.google.com | Exclamation point in title.<br><br>Repeated question marks on second line.<br><br>More than one exclamation point in ad text. |

### Use Standard Capitalization

GGL002960

- No excessive capitalization such as "FREE" or "GOOGLE ADWORDS."
- Capitalization of the first letter of each word within your displayed URL is permitted.

| Correct Ad | Correct because: |
|---|---|
| Google AdWords<br>Effective CPC Advertising.<br>Fast Results Within Your Budget!<br>AdWords.Google.com | Necessary capitalization for acronym, "CPC."<br><br>Acceptable capitalization in display URL. |
| **Incorrect Ad** | **Incorrect because:** |
| Google AdWords<br>EFFECTIVE CPC Advertising.<br>Fast results within your budget!<br>ADWORDS.GOOGLE.COM | Excessive capitalization of "EFFECTIVE."<br><br>Excessive capitalization in display URL. |

## No Repetition

- Avoid gimmicky repetition.

| Correct Ad | Correct because: |
|---|---|
| Google AdWords<br>CPC Ad Campaigns:<br>Fast, easy, and effective!<br>adwords.google.com | Ad clear without repetition. |
| **Incorrect Ad** | **Incorrect because:** |
| Google AdWords Ads<br>Ads, ads, ads are:<br>Fast, easy, and effective!<br>adwords.google.com | Gimmicky repetition in "Ads, ads, ads." |

## Use Correct Spelling

- Check that you use correct spelling.

## Use Proper Grammar

- Your ad text must be in logical sentence or phrase form and must contain grammatically correct spacing.
- The use of symbols, numbers, or letters must adhere to the true meaning of the symbol.

| Correct Ad | Correct because: |
|---|---|
| Google AdWords Ads<br>Advertising at affordable costs<br>Visit & then see if right for you!<br>adwords.google.com | Ad uses appropriate spacing, grammar, and symbols. |
| **Incorrect Ad** | **Incorrect because:** |

GGL002961

| GoogleAdWordsAds | Ad is missing spaces in title. |
|---|---|
| Advertising @ affordable costs | Incorrect grammar - 'than' instead of 'then.' |
| Visit & than c if right 4 you! | Symbols, numbers, letters do not adhere to their true |
| adwords.google.com | meaning. |

---

**Keep It Concise**

- Please keep the following ad text limits in mind when planning your ads. We believe that concise ads provide a great user experience and ultimately contribute to your success.
- Ad titles are limited to 25 characters.
- The two description lines and display URL are limited to 35 characters each.


## Ad and Keyword Relevance                                    back to top

### Your keywords and ad text must be relevant to your site, products, or services.

**Write Accurate Ad Text**

- Your ad text and keywords must directly relate to the content on the landing page for your ad.
- Distinguish your ad by including your company name, line of business, or product in your ad text or title.
- If you offer a local service or product, clearly indicate your location in your ad text.

*Example:*
If your alterations business only services San Francisco, you should include "San Francisco" in your ad text, mention your company's particular specialty, "experts in reweaving fine garments," and link to a page that displays this service.

---

**Target Specific Keywords**

- Use specific keywords that accurately reflect your site.
- Use keywords that reflect your location if you offer a location-specific product or service.

*Example:*
A San Francisco apartment rental agency would not be allowed to run on only the keyword "rentals." The agency would have to use keywords such as "San Francisco rental agency" or "Bay Area apartments."


## Ad Content                                                   back to top

### Should be informative, targeted, and represent your uniqueness.

**Prescription Drugs and Related Content**

- Websites advertising prescription drugs or using prescription drug keywords targeted to the U.S. must provide a valid SquareTrade identification number. SquareTrade membership is only available for online pharmacies based in the U.S. or Canada; therefore, international online pharmacies must not include the U.S. within their location targeting. Review our FAQ for further details or review Google's Online Pharmacy Qualification Program.

GGL002962

If you do not feel this policy applies to you, you can also request an exception for a particular ad or keyword during the ad creation process.

## Gambling

- Google is dedicated to providing relevant and high-quality ads that contribute to a positive user experience. Therefore we do not permit ads for online casinos, sports books, bingo, and affiliates with the primary purpose of driving traffic to online gambling sites.

## Follow Proper Trademark Usage

- Trademarks are important business assets that can diminish in value if they are not used correctly. We encourage you to familiarize yourself with our trademark policy and our Trademark Guidelines, which provides some basic information about trademarks and offers specifics on the proper use of trademarks belonging to Google or others.

## Maintain Google Standards

- As a business, Google must make decisions about where we draw the line in regards to the advertising we accept, both from a legal and company values perspective. We, therefore, may not accept ad text, ads, or keywords containing or relating to certain products or services. We reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site, as noted in our advertising terms and conditions. Please note that the decisions we make concerning advertising in no way affect the search results we deliver.

## Identify Affiliate Status

- If you are an affiliate and are paid to send traffic to another site or a distributor, you must identify yourself as an affiliate or a distributor in your ad text.

  *Example:*
  Insert the word "affiliate" or "distributor" in your ad text or title.

## Support Competitive Claims

- If your ad text contains comparative language regarding competitors, support for this claim must be displayed on the landing page for your AdWords ad.

## Avoid Superlatives

- If your ad contains comparative or subjective phrases such as "Best," "Cheapest," "Top," or "#1," verification by a third party must be clearly displayed on your website.

GGL002963

**Support Advertised Prices, Discounts, and Free Offers**

- If your ad includes a price, special discount, or 'free' offer, it must be clearly and accurately displayed on your website within 1-2 clicks of your ad's landing page.

    *Example:*
    If you mention that you are selling socks for 20% off in your ad text, your Destination URL should link to a page that clearly displays socks at the discounted price.

---

### No Unacceptable Phrases

- Your ad cannot contain universal call-to-action phrases such as "click here," "link here," "visit this link," "this site is," or other similar phrases that could apply to any ad, regardless of content.
- Use a call-to-action unique to the service or product you provide.
- The limited text space should be used for concise, informative language that sets you apart from your competition.
- Phrases in the 3rd line of your ad cannot continue into the Display URL.

| Correct Ad | Correct because: |
|---|---|
| Target your Ads w/AdWords<br>Create an AdWords account today!<br>Visit Google.com to learn more.<br>adwords.google.com | Uses unique call-to-action phrases.<br><br>3rd line is independent from Display URL |
| Incorrect Ad | Incorrect because: |
| Google AdWords<br>For an account - click here<br>To learn more visit this link:<br>adwords.google.com | Unacceptable phrases 'click here' and 'visit this link.'<br><br>3rd line continues into the Display URL. |

---

### No Inappropriate Language

- Your ad cannot contain offensive or inappropriate language.

---

### Non-Family Safe & Adult Sexual Content

- Ads are reviewed and categorized as "FamilySafe", "Non-FamilySafe," or "Adult Sexual Content" on a case-by-case basis.
- After our AdWords Specialists categorize the ads, Google generally allows ads containing adult themes, such as explicit sexual content, provided that they meet the conditions for AdWords advertising.
- These ads may not be accepted on our ad network of sites and products. Therefore, there is a possibility that your ads will appear only on Google search results pages.

# Links

back to top

## Your URLs must work and accurately reflect your ad and site.

### Display URL Must be Accurate

- Your Display URL must accurately reflect the URL of your website. If your actual destination URL link is too long for your ad, use a shortened version (such as your homepage) that meets the character limit for this field.
- The Display URL field cannot be used as another line of ad text.
- Your Display URL must include the domain extension, for example: .com, .net, or .org.

*Example:*
Destination URL: http://www.shoesforsale.com/ladiesshoes/highheels.html
Display URL: www.shoesforsale.com

## Destination URL Must Work

- Your Destination URL must work properly. Check your spelling and symbols to make sure you entered the correct URL for the page you want users to visit.
- Your Destination URL must link to a working website. You cannot link to an email address or a file (ex. an image, audio, video, or document file that requires an additional program or application to open or run).
- The landing page for your ad cannot be under construction. We require your Destination URL to link to an actual web page with content relevant to your ad. When your site is under construction or down for maintenance, you must pause your Ad Group(s).

## No Pop-ups

- We do not allow links to landing pages that generate pop-ups when users enter or leave your landing page. We consider a pop-up to be any window, regardless of content, that opens in addition to the original window.

## Working Back Button

- Links to your website must allow users to return to the Google search results page or ad network by clicking once on the browser's Back button.

## Site Security

- Your site should use a secure server (https://) when collecting personal information from our users.

## Dialers

- Google is dedicated to providing relevant and high-quality ads that contribute to a positive user experience. Therefore we do not permit ads or ads for websites that are associated with dialers in any way.

# EXHIBIT B

**Google** ™
AdWords    **Learning Center**

## Lesson 1b: AdWords Policies

---

**Link Policy**

---

Objective: To learn how to create ads that comply with the <u>link policy</u>.

---

**Link Policy Overview**

---

URL stands for Uniform Resource Locator, and is commonly called a web address. There are two URLs associated with each AdWords ad: display URL and destination URL. The two types are explained below, along with the guidelines for each. Also outlined below are the requirements for the website to which your ad links.

***Display URL***: Each AdWords ad must include a display URL as the fourth line in the ad. For example, the display URL in the ad below is 'www.Books.com.'

<u>Books</u>
Buy a book
Read and become smarter!
www.books.com

So as not to mislead users, the display URL should give users a clear idea of the website or landing page to which they will be taken when they click on an ad. Display URLs must:

- Indicate who owns the destination URL, but does not need to match the actual destination URL of the landing page exactly.
- Appear to be a viable website address. It must include the appropriate extension such as '.com,' '.net,' and 'co.uk,' but 'www' and 'http://' are not required.
- Represent a website. The display URL also cannot be an email address. For example, 'flowers@flowers.com' would not be allowed.
- Comply with editorial policy, which will be discussed in later topics.

Here is an example of a correct and an incorrect display URL:

<u>Correct</u>:
Display URL: bigbookstore.com
Destination URL: bigbookstore.com/new/a-c.htm

<u>Incorrect</u>:
Display URL: bigbookstore.com
Destination URL: http://www.amazon.com/home.html/104-7002842-259

In the first example, clicking on the ad takes users to a page within the bigbookstore.com website. Even though the display URL is different from the destination URL, it accurately represents where the user will be taken when he or she clicks on the ad.

In the second example, the display URL bigbookstore.com does not accurately represent the site to which the user will be taken, which is a page within the amazon.com domain. This is improper use of the display URL. An ad with this

GGL002921

display URL would not be approved.

**Destination URL**: The destination URL is the web address of the landing page to which an ad will actually link. The guidelines surrounding the destination are designed to ensure users clicking on AdWords ads will find what they are looking for easily and quickly. Your ad will not be approved if your destination URL does not meet all three of the following rules:

- It must link to a working website. If a user clicks on your ad but your site isn't working, you are charged for a click, but you have no chance to convert this user into a customer.
- It must not link to a site that is under construction or broken. The site must have content. Otherwise, users will not find what they are looking for.
- It must not require a program other than the browser to view the landing page. In other words, the destination URL must be an HTML page. Some unacceptable formats of destination pages include Adobe Acrobat and MS Word. If your site requires another program to load, not all users will be able to view your site without loading additional software. This detracts from the user experience.

**Back Button**: After linking to your website, the back button must work properly and return the users to the page on which the AdWords ad is located within one or two clicks.

**Pop-Ups**: Pop-ups are defined as any browser window that opens in addition to the original window, regardless of content, function, size, or source. When a user enters or leaves your site, no additional browser window, including pop-unders, should appear. Pop-unders are browser windows that open behind the original browser window. This policy is based on research indicating that users find pop-ups distracting, leading to a poor user experience.

**Affiliate Policy**: Affiliates get paid a commission to promote a merchant's website and drive traffic or create sales on that site. We allow affiliates to use AdWords advertising. Please note that we will only allow one ad for affiliates and parent companies sharing the same display URL per search query.

---

| Editorial Policy |
| --- |

Objective: To walk through the basic set of editorial standards and learn how to create ad text that complies. For a comprehensive explanation of all our ad policies, please review the AdWords Editorial Guidelines.

| Editorial Policies |
| --- |

**Spelling**: Appropriate spelling greatly contributes to the clarity and credibility of your ads. For this reason, the words in your ad must be spelled correctly. The only exceptions to this, are commonly misspelled words or spelling variations. If you can find the word in an online dictionary, it's generally acceptable. The majority of users should recognize and know what the misspelled word means.

**Spacing**: You should have appropriate spacing between each word and after punctuation. For example, 'C-h-e-a-p C-l-o-t-h-e-s' would not be allowed. Similarly, 'Free Shipping.Buy Now' would also not be allowed.

**Punctuation**: Punctuation cannot be used to attract a user's attention. It cannot be unnecessary or repeated two or more times in a row. There are specific rules governing the use of the exclamation point in your ad. The first line of ad text can

GGL002922

never contain an exclamation point, and an ad can contain only one exclamation point in total.

**Grammar**: Ads must comply with basic grammar guidelines. Ad text must use logical sentence or phrase form. In addition, symbols, numbers, or letters must adhere to their true meaning; you may not use them in place of words. For example, 'We have a huge selection 4 U online!' is violating the grammar policy because '4 U' is replacing words.

**Capitalization**: A word cannot appear in all capital letters to draw attention to that word or phrase. For example, 'FREE' or 'NEW' would not be allowed. However, capitalizing the first letter in each word of your ad is allowed.

**Repetition**: Repetition should not be used in a gimmicky manner or for the sake of promotion. Specifically, the same word cannot be repeated three or more times in a row. For example, an ad with the title 'Deals, Deals, Deals Here' would not be allowed. The ad title should be replaced with 'Amazing Deals Here' to comply with this policy requirement.

**Inappropriate Language**: Ads, including the display URL, cannot contain language that may be considered inappropriate or offensive to some users. This also applies to misspellings, self-censored, or other variations of inappropriate language.

**Unacceptable Phrases**: Certain 'call-to-action' phrases cannot appear in the ad text if they are not descriptive of the product, service, or website. For example, phrases like 'click here' and 'visit us' are general phrases that would not be allowed. An example of a good 'call-to-action' phrase would be 'Order Your Online Contacts Today' because it is representative of the product and the site content.

**Superlative Claims**: Superlatives are words that emphasize superiority. In the interest of making sure users feel they are being treated in an honest, credible manner your ad text cannot contain comparative or subjective phrases such as 'Best,' '#1, 'Lowest', unless verified by a third party, This verification must be clearly displayed on your website.

For example, if an ad claims to be the 'Best of the Web', the site must display third party verification of the claim. A Forbes Magazine seal indicating this site received a best of the web award would be acceptable, and the ad would be approved.

**Competitive Claims**: Competitive claims are claims that imply that your product/service is better than a competitor's. Competitive claims in your ad text must specifically be supported on your landing page. This establishes trust with your user and ensures that the user is finding exactly what they expect to find based on your ad text.

You can offer support for your claim in a variety of ways such as a chart or table that compares the features of your product versus your competitor's product or a competitive analysis discussing why your product is superior.

For example, ad text that states 'better than SmartFilter' would be considered a competitive claim and would require support on the website. If the landing page includes a competitive analysis of the advertiser and SmartFilter, this claim would be acceptable and the ad would be approved.

**Prices**: Specific prices appearing in your ad text must be supported within 1-2 clicks of your landing page. Prices in your ad text must be accurate. Prices can also apply to bulk purchases.

**Discount Offers**: Any specific discount offer displayed in ad text must be supported within 1-2 clicks of your landing page. Examples of specific discounts which must be supported include, '50% off all items', 'Save $20 on first purchase',

GGL002923

and similar phrases. Free offers are very appealing to users and therefore, must be supported within 1-2 clicks of your landing page as well. However, it is acceptable if the user can infer that the product is indeed free, even if the word free does not appear along with that product or service.

## Product Policy and Keywords

Learn how to create ads and keyword lists that comply with the AdWords content policy.

## Screened Products

The goal of the product policy is to provide an advertising service with fair and consistent policies that benefit our users, advertisers, partners, and Google.

To run your ads on Google and our growing network of sites, products, and services, you must adhere to all of our policies. Application of our policies will always involve an element of discretion and we reserve the right to reject or approve any ads.

Please note that the decisions we make concerning advertising in no way affect the search results we deliver.

Ads and keywords are screened for products that:

- May be subject to legal regulations and/or restrictions
- May contribute to a negative user experience
- May be contrary to Google's values or policies

Specifically, we currently monitor the following in ad text and keywords:

- Aids to Pass Drug Tests
- Alcohol
- Anti and Violence
- Bulk Marketing
- Cable Descramblers and Black Boxes
- Cell Phone Jammers
- Counterfeit Designer Goods
- Dialer Programs
- Drugs and Drug Paraphernalia
- Fake Documents
- Fireworks/Pyrotechnic Devices
- Gambling
- Hacking and Cracking Sites
- Miracle Cures
- Mod Chips
- Prescription Drugs and Related Content
- Prostitution
- Sexual Content (Adult)
- Solicitation of Funds
- Tobacco and Cigarettes
- Traffic Devices
- Weapons

GGL002924

Please be aware the products discussed previously are on our current list, and products and services appearing on this list are subject to change, as are the guidelines governing this list. Please refer to Google's online guidelines frequently to ensure that your ads and keywords are complying with these guidelines.

---

## Image Ads Policy

Objective: Learn how to create image ads that comply with the image ads guidelines.

---

## Image Ad Guidelines

Image ad policy regulates the type and quality of images that you may use in your image ads. The goal is to maintain standards for image quality and content, to ensure user satisfaction and your success.

The policy covers image ads specifications, such as ad and image quality, unacceptable image content, and image layout.

It's important to note that:

- Your image ads must adhere to the policies that apply to text ads, as well as these additional policies for image ads.
- Image ads are available in many languages. Here is a complete list.
- Image ads are not shown on Google search results pages. Image ads are shown on some partner sites.

Guidelines summary:

**Quality**: Google does not allow images to be of poor quality. Images must be clear and readable. The content and purpose must be easy to understand, and all text must be clear and legible.

**Deceptive Tactics**: AdWords does not allow mock animated features, such as mock drop down menus, search boxes, or other functionality that does not actually work for the user. Mock dialog boxes or error messages such as those generated by windows or Internet Explorer are not allowed. Clicking on these drop downs or boxes will be registered as a click on the image ad, and thus these features are unnecessary and deceptive.

**Image Ad Layout**: Image layout guidelines govern the size and orientation of your ad. Image ads have specific height and width requirements, and must completely fill the area of the size you choose. Otherwise, image ads may not look correct on partner sites since images may be much smaller than the format chosen. Images cannot be rotated or inverted. Images cannot show more than one ad at a time or the same ad multiple times.

**Image Ad User Bar**: When your image appears on Google's partner sites, an image user bar will automatically be included. The user bar is comprised of a display URL, a link for users to give feedback to Google on the ad, and a designation that this ad is provided by Google. Since these features are already included by our automated system, you do not need to include any of them in the images you upload. Otherwise, the information will be duplicated.

**Image Ad Content**: Just as we do for text ads, we have guidelines for appropriate content that can appear in images. Generally, the content of image ads must be

GGL002925

family safe, meaning the images must be appropriate for viewing by minors. Therefore, your image ad cannot contain any adult material, sexual themes, or inappropriate language. Examples of ad content that would not be approved include an ad that promotes drinking alcohol, scantily clad women, and an ad for a porn site.

## Trademarks

Objective: Understand Google's trademark policy and complaint procedures.

### Google Trademarks

Trademarks owned by Google are not allowed in ad text. Currently, these include Google, Froogle, Gmail, Orkut, Keyhole and PageRank.

### What is a Trademark?

A trademark is a word, phrase, logo, or symbol that identifies and distinguishes a product or service from others in the marketplace. Multiple trademark owners may claim the right to the same term, as long as each owner operates in a different industry. Trademark ownership is location-based, and therefore must be obtained on a country-by-country basis.

### Google's Trademark Policy

With Google AdWords, advertisers may select trademarked terms as keywords or use them in the content of the ad. As a provider of space for advertisements, Google is not in a position to arbitrate trademark disputes between advertisers and trademark owners. As stated in our Terms and Conditions, advertisers are responsible for the keywords and ad text that they choose to use. Accordingly, Google encourages trademark owners to resolve their disputes directly with the advertiser, particularly because the advertiser may have similar ads on other sites. However, as a courtesy to trademark owners, Google is willing to perform a limited investigation of reasonable complaints.

Google's trademark policy does not apply to search results, only to sponsored links. For trademark concerns about websites that appear in Google search results, the trademark owner should contact the site owner directly.

### Trademark Complaint Procedures

Google requires certain information from trademark owners wishing to file an official trademark complaint. The required information varies, depending on the country(s) in which an owner's trademark rights exist. For a detailed list of the required information, visit Google's Trademark Complaint Procedure page: http://www.google.com/tm_complaint.html

Once Google receives all of the required information from the trademark owner, the claim will be investigated, and appropriate action will be taken. Advertisers may be restricted from using certain trademarks as ad text per the request of the trademark owner. In cases where the trademark owner claims rights to a term in countries outside the US and Canada, advertisers might not be allowed to use certain trademarks as keywords or as ad text per the request of the trademark owner.

If an advertiser has been restricted from using a trademark and disagrees with the

GGL002926

owner's assertion of exclusive rights, we encourage the advertiser to contact the trademark owner directly and request permission to use the trademark. The owner reserves the right to grant permission to a third party to use the term. Trademark owner authorized exceptions are incorporated into our trademark procedure.

In some instances, Google may not remove the ad or ads as requested. For example, with Google's broad match keyword option, an ad can show on variations of a keyword term. As a result, an ad may show for a term that is a variation of an advertiser's keyword. Even if the search query that shows the ad contains a trademarked term, Google will not remove an ad if the advertiser isn't using a trademarked term as a keyword.

## US/Canada Trademarks

When Google receives a complaint from a trademark owner claiming rights in the US and/or Canada, Google will only investigate whether the advertisements at issue are using the trademarked term in the ad text. Google will not disable keywords in response to a trademark complaint. To file a trademark complaint, the trademark owner must provide all of the following information in a signed letter on company stationery:

1. Name of company.
2. Contact information, including email address and mailing address.
3. List of trademark or trademarks at issue and the country or countries in which it is registered.
4. The identity of the ad or ads at issue via the URL stated on the bottom line of the ad. Please indicate if your complaint is limited to specific advertisers or advertisements or if it is a general objection to all advertisers.
5. If certain affiliates or partners are permitted to use your trademark in their ad content, please list the company names in your letter.
6. Include the following statement: 'I have a good faith belief that use of the trademarks described above with the advertisements described above are not authorized by the trademark owner or its agent, nor is such use otherwise permissible under law.'
7. Include the following statement: 'I represent that the information in this notification is true and correct and that I am authorized to act on behalf of the trademark owner.'
8. Your signature.

## Non-US/Canada Trademarks

When Google receives a complaint from a trademark owner claiming rights in countries outside the US and Canada, Google will investigate whether the advertisements at issue are using the trademarked term in the ad content or as a keyword. To file a trademark complaint, the trademark owner must provide all of the following information in a signed letter on company stationery:

1. Name of company.
2. Contact information, including email address.
3. List of trademark or trademarks at issue and the country or countries in which it is registered.
4. The identity of the advertisement or advertisements at issue via the URL stated on the bottom line of the ad or other identifying information. Please indicate if your complaint is limited to specific advertisers or if it is a general objection to all advertisers.
5. The nature of your concern(s) with the advertisement's content and/or the keywords that trigger the advertisement. (Note: This item doesn't appear in the form for US/Canada.)
6. If certain affiliates or partners are permitted to use your trademark, please list the company names in your letter.
7. Include the following statement: 'I have a good faith belief that use of the

GGL002927

trademarks described above with the advertisements described above are not authorized by the trademark owner or its agent, nor is such use otherwise permissible under the law.

8. Include the following statement: 'I represent that the information in this notification is true and correct and that I am authorized to act on behalf of the trademark owner.'
9. Your signature.

## Where to Send Your Letter

Trademark complaints should be mailed to the following address:

Google, Inc.
Attn: Google AdWords, Trademark Complaints
1600 Amphitheatre Parkway
Mountain View, CA 94043
USA

You can also fax us your letter.
In the US: 650-618-1499
Outside the US: 011-650-618-1499
Attn: Google Trademark Complaints

## Copyrights

Objective: Understand Google's copyright policy and copyright claims procedure.

## What is a Copyright?

A copyright is the legal right granted to an author, composer, playwright, or publisher to exclusive publication, production, sale, or distribution of a literary, musical, or artistic work.

## Google's Copyright Policy

Google's policy on copyrights pertains to website content and can apply to ads, search results, and Google Groups postings. Google's policy stems from the Digital Millennium Copyright Act (DMCA). Once a copyright owner submits a form with the required information, Google will investigate the claim per the DMCA and remove the allegedly infringing material, if appropriate.

In accordance with the DMCA, ads may be removed for copyright infringement reasons. Ad disapprovals due to copyright complaints may be contested through the DMCA counter notification procedure.

## Copyright Claims Procedure

For Google to investigate claims of alleged copyright infringement, the copyright owner must provide the following information in a signed letter on company stationery:

1. Identify in sufficient detail the copyrighted work that you believe has been infringed. For example, 'The copyrighted work at issue is the text that appears on www.google.com/ads.'
2. Identify the material that you claim is infringing the copyrighted work listed in

GGL002928

item #1 above. This requires you to provide the search query that you used and the URL for each allegedly infringing ad.

3. Provide information reasonably sufficient to permit Google to contact you (email address is preferred.)
4. Provide information, if possible, sufficient to permit Google to notify the owner or administrator of the web page that allegedly contains infringing material (email address is also preferred.)
5. Include the following statement: 'I have a good faith belief that use of the copyrighted materials described above on the allegedly infringing web pages is not authorized by the copyright owner, its agent, or the law.'
6. Include the following statement: 'I swear, under penalty of perjury, that the information in the notification is accurate and that I am the copyright owner or am authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.'
7. Your signature.

The administrator of an affected site may make a counter notification. When we receive a counter notification, we will reinstate the material in question. To file a counter notification with us, you must provide a written communication that sets forth the items specified below.

1. Identify the specific URLs of material that Google has removed or to which Google has disabled access. For Google Groups, identify the sender, date, newsgroup, and subject matter of all the material in question.
2. Provide your name, address, telephone number, email address, and a statement that you consent to the jurisdiction of Federal District Court for the judicial district in which your address is located (or Santa Clara County, California if your address is outside of the United States), and that you will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.
3. Include the following statement: "I swear, under penalty of perjury, that I have a good faith belief that each search result or message identified above was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled."
4. Your signature.

## Where to Send Your Copyright Claim Letter

Copyright complaints, like Trademark complaints, should be mailed to the following address:

Google, Inc.
Attn: Google AdWords, Copyright Complaints
1600 Amphitheatre Parkway
Mountain View, CA 94043
USA

You can also fax us your letter.
In the US: 650-618-1499
Outside the US: 011-650-618-1499
Attn: Google Copyright Complaints

## Google's Invalid Clicks Policy

Objective: Learn how to define invalid clicks and explain the steps that Google takes to monitor invalid clicks on AdWords ads.

GGL002929

### What Are Invalid Clicks?

Invalid clicks are clicks generated by prohibited methods. Examples of invalid clicks may include repeated manual clicking or the use of robots, automated clicking tools, or other deceptive software. Invalid clicks are sometimes intended to artificially and/or maliciously drive up an advertiser's clicks and or a publisher's earnings. Sources of invalid clicks may include:

- Manual clicks intended to increase your advertising costs or to increase profits for website owners hosting your ads.
- Clicks by automated tools, robots, or other deceptive software.

We closely monitor these and other scenarios to help protect advertisers from receiving invalid clicks.

### How Google Combats Invalid Clicks

The security of Google AdWords advertisers is important to Google. Our proprietary technology analyzes clicks and impressions in an attempt to determine whether they fit a pattern of use intended to artificially drive up an advertiser's clicks or impressions, or a publisher's earnings.

The goals of our system are to automatically identify clicks generated by unethical users and automated robots and to filter out these clicks before they ever reach your reports. However, if we believe you've been charged for invalid clicks in the past two months, we'll apply a credit to your account .

Google has three powerful tools for protecting clicks on AdWords ads:

**Detection and filtering techniques:** Each click on an AdWords ad is examined by our system. Google looks at numerous data points for each click, including the IP address, the time of the click, any duplicate clicks, and various other click patterns. Our system then analyzes these factors to try to isolate and filter out potentially invalid clicks.

**Advanced monitoring techniques:** Google uses a number of unique and innovative techniques for managing invalid click activity. We can't disclose details about the software, except to say that we're constantly working to expand and improve our technology.

**The Google Team:** In addition to our automated click protection techniques, we have a team that uses specialized tools and techniques to examine individual instances of invalid clicks. When our system detects potentially invalid clicks, a member of this team examines the affected account to glean important data about the source of the potentially invalid clicks.

### Identifying Invalid Clicks

Objective: Learn how to explain possible reasons for an increase in clicks, and why high click volume doesn't necessarily indicate invalid click activity.

### Common Reasons for Click Increases

An ad may receive a large number of clicks for several legitimate reasons. The following factors may lead to an increase in clicks:

GGL002930

***Competitor Behavior:*** If a competitor has stopped running his or her ad, your ad may start receiving more clicks.

***Google Network:*** You may see an increase in traffic if your ads have recently been approved to run on search and content sites and products in the Google Network, if you recently opted in to the Google Network, or if new sites for which your ads are relevant join our content network. Also, your ad may receive an unexpected increase in clicks if it appears on a site with a large audience. For example, if you run an ad for a weight loss product, you might see a significant increase in impressions and clicks when the online version of The New York Times runs a feature on weight loss. Please see the <u>Ad Distribution</u> lesson for more information about the search and content networks.

***Seasonal Changes:*** Fluctuation in clicks due to seasonal promotions or special sales are common. Keywords popular at particular times of the year will also experience a higher click volume regardless of whether you have made proactive seasonal changes to your account content. For example, if you sell greeting cards, you may see a significant increase in clicks as a holiday approaches, even if you aren't advertising cards for that particular holiday.

***Budget Changes:*** Increasing your daily budget or maximum cost-per-click (CPC) may cause an increase in clicks and impressions. A higher maximum CPC can help to increase the position of your ad, which can lead to more clicks on Google and on the Google Network.

***Ad Relevancy:*** If your keywords are too general, your ad may accrue clicks and impressions but yield very few sales. To make sure your ads are running optimally, please refer to the <u>Beginning Optimization</u> lesson.

## Multiple Clicks from One Source

Even if an ad receives multiple clicks from a single source, the clicks aren't necessarily invalid. Be sure to consider the following possibilities if your weblogs show multiple clicks from a single source:

***Internet service provider:*** an Internet provider (such as AOL, Earthlink, or Comcast) may assign identical IP addresses to multiple users by geographic area.

***Comparison shopping:*** individual users may legitimately click on your ad more than one time when comparison shopping or returning to your site for more information.

## Identifying Invalid Clicks

If you believe your ads have been affected by invalid clicks, please follow the steps below before you contact us:

1. Identify instances of suspicious activity, such as receiving 2 or 3 times the normal number of clicks you would receive on a single day. Keep in mind that you may see a sudden increase in impressions or clicks as a result of legitimate user activity, such as seasonal increases in clicks or the appearance of your ad on the Google Network. Google's proprietary technology works to filter out invalid impressions and clicks before they reach your reports.
2. Look at click patterns over time. Identify changes from week to week that aren't explained by any of the legitimate reasons for high click volume. See the <u>Reports</u> lesson to learn more about how to review your account activity.
3. Compare your weblogs to your AdWords account reports. (If you're not sure how to access your web logs, talk with your webmaster or website hosting service.) If your web logs show a higher number of clicks, remember that

GGL002931

Case 5:03-cv-05340-JF     Document 331-2     Filed 08/10/2007     Page 20 of 54

Google's technology works to filter out invalid clicks before they reach your reports. If your account shows a higher number of clicks, remember that Google relies on its own servers' web logs to supply site traffic data to include in your reports. By creating an AdWords account, advertisers agree to accept the Google AdWords reporting system and reported metrics as provided in the AdWords program Terms and Conditions.

## Begin an Investigation

If you believe that your account reports reflect clicks that are more extreme than ordinary user behavior or that exhibit strange patterns, please contact us.

We have a team that investigates invalid click activity on a case-by-case basis. To expedite their time-intensive investigation, please include the following information in your email to us:

1. The campaign(s), Ad Group(s), and/or keyword(s) associated with the suspicious clicks.
2. The date(s) and time(s) of the suspicious click activity.
3. Any data in your weblogs or reports that indicate suspicious IP addresses, referrers, or requests.
4. A paragraph describing the trends in logs and/or reports that led you to believe the click activity is invalid.

The verification and research process can be time consuming, and we appreciate your patience while our investigation team reviews your account. Please allow 3-5 business days for us to respond. If you have any additional information, please be sure to let us know so we can include it in our review.

GGL002932

# EXHIBIT C



**Premium Sponsorships Advertising**

## Google, Inc. Advertising Terms and Conditions

*Find on this site:*

Search

These terms and conditions (the "Terms") are entered into between Google, Inc. and its affiliates ("Google") and the Advertiser and/or Agency ("Customer") referenced on the corresponding insertion order ("IO"). If Customer is an Agency, Agency represents and warrants that (1) Advertiser has authorized Agency to enter into this Agreement on Advertiser's behalf and to represent the Advertiser within the scope of this Agreement, and (2) Advertiser agrees to be bound by the terms of this Agreement, including but not limited to paying Google for advertisements delivered pursuant to this Agreement and any corresponding IOs. These Terms shall be deemed incorporated by reference into any IO submitted by Customer. The Terms and IOs collectively form the "Agreement."

1. Term; Renewal. The term of these Terms commences on the Start Date set forth in the IO ("Start Date") and continues in force and effect until terminated pursuant to section 2. Except as expressly set forth in the IO, any renewal of the IO, acceptance of any additional IOs, and pricing for such renewal or additional IOs shall be at Google's sole discretion.

2. Termination; Effect of Termination. Google shall have the right to terminate any IO (and this Agreement), in whole or in part, with or without cause, at any time except as provided in an IO. Once an IO is submitted, Customer cannot terminate it for any reason unless expressly provided in the IO. Upon termination for any reason, (i) Customer shall remain liable for any amount due under an IO for advertisements delivered by Google and such obligation to pay shall survive termination of this Agreement, (ii) at the request of either party, the other party shall return all Confidential Information and (iii) Sections 2-9 shall survive termination.

3. Confidentiality. Customer shall make no public announcement regarding the existence or content of the IO without Google's prior written approval. Furthermore, during the term of this Agreement, and for a period of two years following any IO End Date, neither party will use or disclose any Confidential Information of the other party except as provided herein. "Confidential Information" includes (1) advertisements, prior to publication, (2) IOs, (3) any Google statistics and information designated by either party in writing, or identified orally at time of disclosure as "confidential" or "proprietary." The foregoing restriction does not apply to information that has become publicly known through no breach by a party, or has been: (1) independently developed without access to the other party's Confidential Information; (2) rightfully received from a third party; (3) approved in writing for release by the disclosing party; (4) required to be disclosed by law or by a governmental authority.

4. No Warranty. GOOGLE MAKES NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO ADVERTISING AND OTHER SERVICES, AND EXPRESSLY DISCLAIMS THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

5. Limitations of Liability; Force Majeure. In no event shall Google be liable for any act or omission, or any event directly or indirectly resulting from any act or omission, of Customer, or any third parties (if any). EXCEPT FOR THE PARTIES' INDEMNIFICATION AND CONFIDENTIALITY OBLIGATIONS HEREUNDER, (I) IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, OR OTHER DAMAGES WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY AND (II) EACH PARTY'S AGGREGATE LIABILITY UNDER THIS AGREEMENT FOR ANY CLAIM IS LIMITED TO THE AMOUNT PAID OR PAYABLE TO GOOGLE FROM CUSTOMER FOR THE IO GIVING RISE TO THE CLAIM. Without limiting the foregoing and except for payment obligations, neither party shall have any liability for any failure or delay resulting from any condition beyond the reasonable control of such party, including but not limited to governmental action or acts of terrorism, earthquake or other acts of God, labor conditions, and power failures.

GGL002958

6. Customer's Responsibilities. Customer is responsible for the selection of keywords, the content and display of advertisements, URL links, and IOs including any trademark issues associated therewith. Customer shall ensure that(a) Customer holds all rights needed to permit the use, reproduction, display, transmission and distribution of the advertisement and all contents therein ("Use") by Google; and (b) Google's Use, Customer's keywords, any data regarding users, and any material to which users can link, or any products or services made available to users through the advertisement will not (i) violate any criminal laws or third party rights; (ii) encourage conduct that would constitute a criminal offense or violate any law; or (iii) give rise to civil liability.

7. Advertisement Placement and Modification. Customer agrees (unless otherwise specified in an IO) that advertisements will be displayed whenever the selected keywords are entered in a search query, either alone or in combination with other terms. Customer may, in good faith, modify key words so long as the total value of an IO is not materially reduced. If Google receives a complaint from a third party alleging that the keywords or advertisements corresponding to an IO infringe the third party's trademark or other proprietary rights, Google shall have the right to disable the keywords or advertisements at issue.

8. Indemnification. Each party agrees to indemnify the other party and its respective agents, affiliates, subsidiaries, directors, officers, employees and applicable third parties (e.g., syndication partners, licensors, licensees, consultants, and contractors) ("Indemnified Person(s)") from and against any third party claim, liability, loss and expense (including damage awards, settlement amounts, and reasonable legal fees and expenses incurred by the indemnifying party in such defense) ("Liabilities"), arising out of the breach by the indemnifying party of its obligations under this Agreement and failure to comply with applicable law in the performance of its obligations hereunder during the Term. The indemnification obligations regarding the Indemnified Person(s) and Liabilities shall exist only if the indemnified party (the "Indemnitee") (1) promptly notifies the indemnifying party (the "Indemnitor") of any claim, (2) provides the Indemnitor with reasonable information and cooperation in defending the claim, and (3) gives the Indemnitor full control and sole authority over the defense and settlement of such claim. The Indemnitee may join in defense with counsel of its choice at its own expense. The Indemnitor shall not reimburse the Indemnitee for any expenses incurred without prior written approval.

9. Priority; Miscellaneous. These Terms shall supersede any and all conflicting terms in an IO unless a provision of these Terms expressly allows for control by the IO. This Agreement: (1) shall be governed by the laws of California, except for its conflicts of laws principles. Any dispute or claim arising out of or in connection with this Agreement shall be adjudicated in Santa Clara County, California. This constitutes the entire agreement between the parties with respect to the subject matter hereof. Each party hereto is duly authorized to enter into this Agreement and perform its obligations hereunder. Any modifications to this Agreement must be made in a writing executed by both parties. The parties will negotiate any dispute hereunder in good faith within thirty (30) days of receiving written notice; this obligation shall not eliminate any remedies available to the parties. Any notices shall be sent to the addresses set forth in the IO by facsimile or overnight courier and shall be deemed given upon receipt. The waiver of any breach or default of this Agreement will not constitute a waiver of any subsequent breach or default. If any provision herein is unenforceable under any applicable law, then such provision will be modified to reflect the intention of the parties, and the remaining provisions of this Agreement will remain in full force and effect. Any reference to the term "partner" herein does not denote a legal partnership relationship, but one of independent contractors. Customer may not resell, assign, or transfer any of its rights hereunder. Any such attempt shall automatically terminate the Agreement, without liability to Google.

*v. 082902*

©2003 Google - Home - All About Google - We're Hiring - Site Map



GGL002959

# EXHIBIT D

KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
MARK A. LEMLEY - #155830
RAVIND S. GREWAL - #220543
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff and Counterdefendant
GOOGLE INC. and Third-Party Defendants
ASK JEEVES, INC. and EARTHLINK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.; and DOES 1-100, inclusive,<br><br>                    Defendants. | Case No. C 03-5340-JF (EAI)<br><br>**GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO AMERICAN BLIND & WALLPAPER FACTORY, INC.** |
| AMERICAN BLIND & WALLPAPER FACTORY, INC., a Delaware corporation d/b/a decoratetoday.com, Inc.<br><br>                    Counterclaimant,<br><br>        v.<br><br>GOOGLE, INC., AMERICA ONLINE, INC., NETSCAPE COMMUNICATIONS CORPORATION, COMPUSERVE INTERACTIVE SERVICES, INC., ASK JEEVES, INC., and EARTHLINK, INC.,<br><br>                    Counterdefendants/<br>                    Third-Party Defendants. | |

PROPOUNDING PARTY:          Plaintiff GOOGLE INC.

RESPONDING PARTY:           Defendant AMERICAN BLIND & WALLPAPER FACTORY, INC.

SET NO.:                    ONE

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Google Inc. ("Google") requests that Defendant American Blind & Wallpaper Factory, Inc. ("American Blind") respond to the following interrogatories separately, fully and under oath within 30 days of their service.

## DEFINITIONS

1.    "AMERICAN BLIND" means American Blind, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

2.    "GOOGLE" means Google, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

3.    The phrase "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

4.    The term "COMMUNICATION(S)" means every manner or method of disclosure or transfer or exchange of information, whether oral or by document, and whether face-to-face, by telephone, mail, personal delivery or otherwise.

5.    The term "IDENTIFY" means:

(a)    with respect to a person, that person's:  full name, last known home and business address, responsibilities with respect to the subject matter of the interrogatory, and the periods of time that person had such responsibilities;

(b)    with respect to a corporation, partnership or other business entity, that

1

1  entity's full name including any "dba" names, form of organization, and address of principal

2  place of business;

3           (c)      with respect to a document or thing:  a description sufficient in specificity

4  such that the document or thing can be unambiguously obtained by means of such description in

5  a request for production pursuant to Federal Rule 34, which will include, where applicable, the

6  document or thing's title, date, author(s) or creator, recipient(s) and present location;

7           (d)      with respect to a COMMUNICATION:  a description including the names

8  of the parties to the COMMUNICATION, the date of the COMMUNICATION, the substance of

9  the COMMUNICATION, and all documents containing or relating to the COMMUNICATION.

10      6.      The term "STATE" means to state with particularity all facts known that bear

11  upon or are related to the matter that is the subject of the inquiry, using the simplest and most

12  factual statements of which you are capable.

13      7.      The words "and" and "or" shall be construed in the conjunctive or disjunctive,

14  whichever makes the request more inclusive.

15      10.      "Any" shall mean one or more; "each" shall mean "each and every."

16                          **INSTRUCTIONS**

17      1.      If American Blind elects to answer any interrogatory pursuant to Federal Rule of

18  Civil Procedure 33(d), Google requests that American Blind identify the particular documents

19  relating to the subject matter of the specific interrogatory, and separately for each document, the

20  date the document bears, the title of the document, if any, the identity of the authors of the

21  document, the identity of each addressee or recipient of the document, the type and subject

22  matter of the document and the present location or custodian of the document.

23      2.      If American Blind cannot answer an interrogatory in full, American Blind is

24  hereby directed to answer it to the fullest extent possible, specify the reasons for its inability to

25  answer the remainder, and state whatever information or knowledge American Blind has

26  concerning the unanswered portion.

27                          **INTERROGATORIES**

28

**INTERROGATORY NO. 1:**

IDENTIFY, by title, court or tribunal, and case number, all litigation in which AMERICAN BLIND is or has been a party.

**INTERROGATORY NO. 2:**

IDENTIFY each COMMUNICATION RELATING TO GOOGLE between AMERICAN BLIND and any other individual or entity.

**INTERROGATORY NO. 3:**

IDENTIFY all persons that you believe have personal knowledge of facts relevant to this lawsuit.

**INTERROGATORY NO. 4:**

STATE all facts supporting AMERICAN BLIND's contention that "the American Blind Marks have acquired an outstanding celebrity as a source of quality home decorating products and related services."

**INTERROGATORY NO. 5:**

STATE all facts supporting AMERICAN BLIND's contention that "Google intentionally has designed its financially lucrative 'AdWords' program to maximize the infringement and dilution of American Blind's marks."

**INTERROGATORY NO. 6:**

STATE all facts supporting AMERICAN BLIND's contention that "Defendants and their advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such as American Blind."

**INTERROGATORY NO. 7:**

STATE all facts supporting AMERICAN BLIND's contention that "[t]he manipulated search engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a source of its goods and services."

**INTERROGATORY NO. 8:**

STATE all facts supporting AMERICAN BLIND's contention that "American Blind's customers have been and will likely continue to be confused about the origin and sponsorship of

1  the companies other than American Blind listed by the Defendants in their deceptive search

2  engine 'results.'"

3  **INTERROGATORY NO. 9:**

4      STATE all facts supporting AMERICAN BLIND's contention that "Defendants' actions

5  have caused damage and irreparable injury to American Blind."

6  Dated: May 21, 2004                    KEKER & VAN NEST, LLP

7

8

                        By: _____

9                          MICHAEL H. PAGE
                           Attorneys for Plaintiff and Counterdefendant
10                         GOOGLE INC. and Third-Party Defendants
                           ASK JEEVES, INC. and EARTHLINK, INC.,
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE INC.'S FIRST SET OF INTERROGATORIES
CASE NO. C 03-5340-JF (EAI)

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On May 21, 2004, I served the following document(s):

**GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO AMERICAN BLIND & WALLPAPER FACTORY, INC.**

☑ by **PDF TRANSMISSION AND UNITED STATES MAIL**, by transmitting via PDF on this date. A true and correct copy of same was placed in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Susan J. Greenspon                     Robert N. Phillips
David A. Rammelt                       Howrey Simon Arnold & White, LLP
Kelley Drye & Warren LLP               525 Market Street, Suite 3600
333 West Wacker Drive                  San Francisco, CA 94105-2708
Chicago, IL 60606                      Telephone:    415/848-4900
Telephone:    312/857-7070             Facsimile:    415/848-4999
Facsimile:    312/857-7095

Stephen E. Taylor
Taylor & Company Law Offices, Inc.
One Ferry Building, Suite 355
San Francisco, CA 94111-4209
Telephone:    415/788-8200
Facsimile:    415/788-8208

Executed on May 21, 2004, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Noelle Nichols_
NOELLE S. NICHOLS

# EXHIBIT E

1  Robert N. Phillips (SBN 120970)
   Ethan B. Andelman (SBN 209101)
2  HOWREY, LLP
   525 Market Street, Suite 3600
3  San Francisco, CA  94105
   Telephone:  (415) 848-4900
4  Facsimile:  (415) 848-4999

5  David A. Rammelt (Admitted *Pro Hac Vice*)
   Susan J. Greenspon (Admitted *Pro Hac Vice*)
6  Dawn M. Beery (Admitted *Pro Hac Vice*)
   KELLEY DRYE & WARREN LLP
7  333 West Wacker Drive, Suite 2600
   Chicago, IL  60606
8  Telephone:  (312) 857-7070
   Facsimile:  (312) 857-7095
9
   Attorneys for Defendant/Counter-Plaintiff
10 AMERICAN BLIND AND WALLPAPER
   FACTORY, INC.
11
                    UNITED STATES DISTRICT COURT
12                 NORTHERN DISTRICT OF CALIFORNIA

13 GOOGLE INC., a Delaware corporation,         Case No. C 03-5340-JF (EAI)

14                 Plaintiff,                   **AMERICAN BLIND & WALLPAPER**
                                                **FACTORY, INC.'S ANSWERS TO**
15        v.                                    **GOOGLE, INC.'S FIRST SET OF**
                                                **INTERROGATORIES**
16 AMERICAN BLIND & WALLPAPER
   FACTORY, INC., a Delaware corporation
17 d/b/a decoratetoday.com, Inc.; and DOES 1-
   100, inclusive,
18
                 Defendants.
19
   AMERICAN BLIND & WALLPAPER
20 FACTORY, INC., a Delaware corporation
   d/b/a decoratetoday.com, Inc.,
21
                 Counter-Plaintiff,
22
          v.
23
   GOOGLE, INC., AMERICA ONLINE, INC.,
24 NETSCAPE COMMUNICATIONS
   CORPORATION, COMPUSERVE
25 INTERACTIVE SERVICES, INC., ASK
   JEEVES, INC., and EARTHLINK, INC.
26
                 Counter-Defendants/
27               Third-Party Defendants
28

   American Blind's Answers to Google's First Set of
   Interrogatories
   Case No. C03-5340 JF (EAI)
   DM_US\8214710.v1

1  PROPOUNDING PARTY:    PLAINTIFF/COUNTER-DEFENDANT GOOGLE, INC.

2  RESPONDING PARTY:    DEFENDANT/COUNTER-PLAINTIFF AMERICAN BLIND &
                        WALLPAPER FACTORY, INC.

3
   SET NUMBER:    ONE
4
        Defendant/Counter-Plaintiff American Blind & Wallpaper Factory, Inc. ("American Blind")
5
   hereby answers Plaintiff/Counter-Defendant Google, Inc.'s First Set Of Interrogatories as follows:
6
                                    **INTERROGATORIES**
7
   **INTERROGATORY NO. 1**:
8
        IDENTIFY, by title, court or tribunal, and case number, all litigation in which AMERICAN
9
   BLIND is or has been a party.
10
   **RESPONSE TO INTERROGATORY NO. 1**:
11
        American Blind objects to this interrogatory because it is over broad, unduly burdensome, and
12
13 not reasonably calculated to lead to the discovery of relevant or admissible evidence. As written, this

14 interrogatory is overbroad and unduly burdensome in that it would require American Blind to identify

15 every collection action, employment action, and every other lawsuit in which American Blind has been

16 involved since its inception to the present. The allegations set forth in Google's Complaint For

17 Declaratory Judgment Of Non-Infringement do not warrant subjecting American Blind to such an

18 unreasonable burden. Subject to and without waiving this objection, American Blind states that it has

19 been involved in the following lawsuits involving American Blind's trademarks:

20
21      (a)    *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, Case No. C 03-5340-
               JF, pending in the United States District Court for the Northern District of
22             California;

23      (b)    *Decoratetoday.com, Inc. (d/b/a American Blind & Wallpaper Factory, Inc.) v.
               Wallpaper Wholesaler, Inc., et al.*, Case No. 02-73226, pending in the United
24             States District Court for the Eastern District of Michigan;

25      (c)    *American Blind & Wallpaper Factory, Inc. d/b/a Decoratetoday.com, Inc. v. By
               Design & USA Wallpaper f/k/a American Blind & Wallcoverings, et al.*, Case
26             No. 03-60039, pending in the United States District Court for the Eastern
27             District of Michigan;

28

(d) *Decoratetoday.com, Inc. (d/b/a American Blind & Wallpaper Factory, Inc.) v. American Blind & Accessory Co., Inc.,* Case No. 01-70804, pending in the United States District Court for the Eastern District of Michigan;

(e) *American Blind and Wallpaper Factory, Inc. v. Richard Barnes, et al.,* Case No. 97-73363 pending in the United States District Court for the Eastern District of Michigan;

(f) *American Blind and Wallpaper Factory, Inc. v. Arthur Drinkwater d/b/a American Blinds and Draperies, et al.,* Case No. 99-73148, pending in the United States District Court for the Eastern District of Michigan;

(g) *American Blind and Wallpaper Factory, Inc. v. David B. Katzman, et al.,* Case No. 96-74831, pending in the United States District Court for the Eastern District of Michigan;

(h) *American Blind and Wallpaper Factory, Inc. v. American Blinds, Inc.,* Case No. 99-71776, pending in the United States District Court for the Eastern District of Michigan;

(i) *American Blind and Wallpaper Factory, Inc. v. American Blinds Factory, Inc. d/b/a American Blinds and Decorating Centers,* Case No. 99-73972, pending in the United States District Court for the Eastern District of Michigan;

(j) *Decoratetoday.com, Inc. v. All American Blinds and Brent Richards,* Case No. 01-7176, pending in the United States District Court for the Eastern District of Michigan;

**INTERROGATORY NO. 2:**

IDENTIFY each COMMUNICATION RELATING TO GOOGLE between AMERICAN BLIND and any other individual or entity.

**RESPONSE TO INTERROGATORY NO. 2:**

American Blind objects to this request because it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. As an initial matter, American Blind presently is a customer of Google and, therefore, regularly communicates with Google representatives concerning business matters, including but not limited to American Blind's advertising campaign with Google. In addition, this interrogatory is overbroad in that it is not limited to a certain period of time and American Blind has been doing business with Google for many years. Moreover, this interrogatory is not limited to communications with Google, but rather encompasses American

1  Blind's communications with any individual or entity regarding Google, thereby making it much too

2  broad and unduly burdensome to answer.  In addition, American Blind objects to this interrogatory to

3  the extent that it seeks information regarding attorney/client privileged communications.  Subject to

4  and without waiving these objections and pursuant to Federal Rule of Civil Procedure 33(d), American

5  Blind refers Google to documents that will be produced or made available for inspection and copying

6  by American Blind consisting of electronic communications between American Blind and Google

7  regarding Google's sale of American Blind's trademarks as keywords as part of the AdWords

8  program, as well as monthly invoices received from Google concerning American Blind's participation

9  in Google's AdWords program.  Discovery and investigation continue regarding other relevant

10  communications with Google.

11  **INTERROGATORY NO. 3**:

12  IDENTIFY all persons that you believe have personal knowledge of facts relevant to this

13  lawsuit.

14  **RESPONSE TO INTERROGATORY NO. 3**:

15  American Blind refers to and incorporates herein the individuals listed in its Initial Disclosures

16  Pursuant to Federal Rule of Civil Procedure 26, which were served on April 20, 2005 ("Initial

17  Disclosures").  In addition to the individuals listed in American Blind's Initial Disclosures, American

18  Blind believes that an unknown number of its competitors have knowledge regarding Google's

19  AdWords Keywords Suggestions feature and the "American Blind" optimization campaign.  Google is

20  in a superior position to American Blind to know the identities of these American Blind competitors

21  that have accessed the AdWords Keywords Suggestion Feature.  In addition, American Blind believes

22  that an unknown number of its customers and potential customers have been confused by Google's

23  sale of American Blind's trademarks to American Blind's competitors.  Investigation and discovery

24  continue regarding the identity of these customers and potential customers, and regarding the identity

1 │ of other persons with personal knowledge of facts relevant to this lawsuit.

2 │ **INTERROGATORY NO. 4**:

3 │     STATE all facts supporting AMERICAN BLIND's contention that "the American Blind Marks

4 │ have acquired an outstanding celebrity as a source of quality home decorating products and related

5 │ services."

6 │
7 │ **RESPONSE TO INTERROGATORY NO. 4**:

8 │     American Blind preliminarily states that American Blind is one of the largest direct-to-

9 │ consumer retailers of custom order window treatments and wall coverings in the United States and on

10 │ the Internet.  American Blind, in conjunction with its predecessor companies, has been in the home

11 │ decorating business for over a half century.  American Blind sells and promotes its home decorating

12 │ products and related services across the United States through a website and toll-free telephone

13 │ numbers.  Since at least as early as 1986, American Blind has adopted and used, and has continued to

14 │ adopt and to use, the American Blind trademarks in connection with home decorating products and

15 │ related services offered for sale and sold throughout the United States.  American Blind's home

16 │ decorating products and related services sold under the American Blind trademarks have been

17 │ extensively advertised, promoted and sold by American Blind in interstate commerce throughout the

18 │
19 │ United States.  American Blind is an industry leader and expends millions of dollars each year in

20 │ connection with the advertisement and promotion of its products and services sold under the American

21 │ Blind trademarks.  Among other things, American Blind advertises extensively in national publications

22 │ and on television and radio.  The public has used and now uses the American Blind trademarks to

23 │ identify American Blind and its home decorating products and related services and to distinguish

24 │
25 │ American Blind and its products and services from the home decorating products and related services

26 │ offered by others.  The American Blind trademarks symbolize and embody the goodwill rightfully

27 │ belonging exclusively to American Blind.  Investigation and discovery continue regarding further

28 │

HOWREY LLP

American Blind's Answers to Google's First Set of Interrogatories
Case No. C03-5340 JF (EAI)
DM_US\8214710.v1

1   evidence that "American Blind's Marks have acquired an outstanding celebrity as a source of quality

2   home decorating products and related services."

3   **INTERROGATORY NO. 5:**

4       STATE all facts supporting AMERICAN BLIND's contention that "Google intentionally has

5   designed its financially lucrative 'Ad Words' program to maximize the infringement and dilution of

6   American Blind's marks."

7

8   **RESPONSE TO INTERROGATORY NO. 5:**

9       American Blind objects to this Interrogatory on the grounds that it is premature given that

10  American Blind has not yet received meaningful discovery responses from Google and has not yet had

11  an opportunity to take any depositions in this case. Subject to and without waiving this objection,

12  American Blind states that, as Google is aware, Google has advertised, promoted, offered for sale, and

13  sold keywords identical and substantially similar to American Blind's trademarks to various third

14  parties. Specifically, a competitor of American Blind that is in the process of designing its advertising

15  campaign with Google has been encouraged to purchase as keywords numerous terms that are identical

16  or substantially similar to American Blind's trademarks. It is apparent and inescapable that Google has

17

18  designed its AdWords Keyword Suggestion feature with this exact goal in mind. Google has even

19  labeled an optimization campaign containing every practical iteration of American Blind's trademarks

20  the "American Blind" optimization campaign. Investigation and discovery continue regarding the

21  number of American Blind's competitors who purchased American Blind's trademarks as keywords as

22  a result of the AdWords Keyword Suggestion feature. Investigation and discovery also continue

23  regarding the revenues earned by Google as a result of Google's sale of American Blind's trademarks

24  as keywords.

25

26  **INTERROGATORY NO. 6:**

27       STATE all facts supporting AMERICAN BLIND's contention that "Defendants and their

28  advertisers are wrongfully profiting off of the goodwill and reputation of trademark owners such as

1  American Blind."

2  **RESPONSE TO INTERROGATORY NO.** 6:

3      American Blind objects to this Interrogatory on the grounds that it is premature given that

4  American Blind has not yet received meaningful discovery responses from Google and has not yet had

5  an opportunity to take any depositions in this case.  Subject to and without waiving this objection,

6  American Blind states that, as Google is aware, Google has advertised, promoted, offered for sale, and

7  sold keywords identical and substantially similar to American Blind's trademarks to various third

8  parties in violation of federal and state law.  Among other things, Google's filings with the SEC and

9  information posted on its own website state that it had revenues of $3,189,223,000 in 2004 and

10  $1,256,516,000 in the first fiscal quarter of 2005.  Google has stated that approximately 95% of its net

11  revenues are derived from its advertising programs, and American Blind reasonably suspects that a

12  material percentage of this revenue comes from the sale of trademarks as keywords.  Investigation and

13  discovery continue regarding the revenues earned by Google as a result of Google's sale of American

14  Blind's trademarks as keywords.

15  **INTERROGATORY NO. 7:**

16      STATE all facts supporting AMERICAN BLIND's contention that "[t]he manipulated search

17  engine 'results,' . . . dilute the ability of the American Blind Marks to identify American Blind as a

18  source of its goods and services.

19

20  **RESPONSE TO INTERROGATORY NO. 7:**

21      American Blind objects to this Interrogatory on the grounds that it is premature given that

22  American Blind has not yet received meaningful discovery responses from Google and has not yet had

23  an opportunity to take any depositions in this case.  Subject to and without waiving this objection,

24  American Blind states that Google causes consumers who specifically intend and desire to find

25  American Blind's website, products, and services to be diverted to web pages that list American

26  Blind's competitors' products and services.  Consumers may not realize that they have unwittingly

27  "clicked" on a competitors' website.  Google's search results page fails to inform the consumer that the

28

1    companies listed as "Sponsored Links" may have no relationship with – and, indeed, may directly

2    compete with – American Blind. As a result, the consumer believes that he/she is purchasing goods

3    from American Blind or a related entity, when he/she is actually purchasing goods from an American

4    Blind competitor. Furthermore, American Blind believes that the evidence generally will show that

5    consumer association between American Blind's Marks and its products and/or services is harmed,

6
7    diminished, or otherwise lessened each time a consumer is presented with confusingly similar and/or

8    inferior goods and services in response to attempts to locate American Blind. Thus, Google's sale of

9    American Blind's trademarks as keywords lessens the capacity of American Blind's trademarks to

10   distinguish American Blind's products and services from those of others, and dilutes the distinctive

11   quality of American Blind's trademarks.

12   **INTERROGATORY NO. 8**:

13          STATE all facts supporting AMERICAN BLIND's contention that "American Blind's

14   customers have been and will likely continue to be confused about the origin and sponsorship of the

15
16   companies other than American Blind listed by the Defendants in their deceptive search engine

17   'results.'"

18   **RESPONSE TO INTERROGATORY NO. 8**:

19          American Blind objects to this Interrogatory on the grounds that it is premature given that

20   American Blind has not yet received meaningful discovery responses from Google and has not yet had

21   an opportunity to take any depositions in this case. American Blind further objects to this

22   Interrogatory on the ground that it seeks information that will be the subject of expert testimony prior

23   to the time for disclosure of expert opinions. Subject to and without waiver of these objections,

24
25   American Blind refers Google to national studies that establish definitively the pervasive consumer

26   confusion associated with paid search advertising, including without limitation an article by Deborah

27   Fallows, PhD, entitled "Search Engine Users: Internet Searchers Are Confident, Satisfied and Trusting

28

HOWREY LLP

American Blind's Answers to Google's First Set of Interrogatories
Case No. C03-5340 JF (EAI)

1   – But They Are Also Unaware And Naïve," published by PEW Internet & American Life Project, and

2   an article by Leslie Marable, entitled "FALSE ORACLES: Consumer Reaction To Learning The Truth

3   About How Search Engines Work," copies of which were produced in response to Google's First Set

4   Of Requests For Production Of Documents And Things.  In addition, American Blind has received

5   telephone calls from consumers with questions about their online order, when American Blind has no

6   record of such an order.  It was later determined that the consumer placed his/her order with a

7

8   competitor of American Blind, likely because such consumer was confused when he/she attempted to

9   locate American Blind's website.

10  **INTERROGATORY NO. 9**:

11       STATE all facts supporting AMERICAN BLIND's contention that "Defendants' actions have

12  caused damage and irreparable injury to American Blind."

13  **RESPONSE TO INTERROGATORY NO. 9**:

14       American Blind objects to this Interrogatory on the grounds that it is premature given that

15  American Blind has not yet received meaningful discovery responses from Google and has not yet had

16  an opportunity to take any depositions in this case.  American Blind further objects to this

17

18  Interrogatory on the ground that it seeks information that will be the subject of expert testimony prior

19  to the time for disclosure of expert opinions.  Subject to and without waiving this objection, American

20  Blind states that Google causes consumers who specifically intend and desire to find American Blind's

21  website, products, and services to be diverted to web pages that list American Blind's competitors'

22  products and services.  Consumers may not realize that they have unwittingly "clicked" on a

23

24  competitors' website.  Google's search results page fails to inform the consumer that the companies

25  listed as "Sponsored Links" may have no relationship with – and, indeed, may directly compete with –

26  American Blind.  Google's actions steal customers from American Blind's website, divert consumers

27  to inferior products and services, erode the distinctiveness of American Blind's trademarks, and impair

28

HOWREY LLP

American Blind's Answers to Google's First Set of Interrogatories
Case No. C03-5340 JF (EAI)
DM_US\8314710 v.1

1  American Blind's honest and good faith efforts to promote and sell its products on the Internet.

2

3  DATED:  June 10, 2005                        HOWREY, LLP

4

5                                         By:  _____

6                                              ROBERT N. PHILLIPS
                                               ETHAN B. ANDELMAN
7

8                                              David A. Rammelt
                                               Susan J. Greenspon
9                                              Dawn M. Beery
                                               KELLEY DRYE & WARREN LLP
10                                             333 West Wacker Drive, Suite 2600
                                               Chicago, IL  60606
11
                                               Attorneys for Defendant/Counter-Plaintiff
12                                             AMERICAN BLIND AND WALLPAPER
                                               FACTORY, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

American Blind's Answers to Google's First Set of Interrogatories
Case No. C03-5340 JF (EAI)
DM_US\8214710.v1

# Verification

I, Steve Katzman, declare under penalty of perjury that on or before June 10, 2005, I reviewed each of American Blind & Wallpaper Factory, Inc.'s Answers To Google, Inc.'s First Set Of Interrogatories, and that each of the written responses therein was true and correct based upon my personal knowledge or upon information reasonably available to me.

Steve Katzman
President, American Blind & Wallpaper
Factory, Inc.,

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the State of California. I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 525 Market Street, Suite 3600, San Francisco, CA 94105. On the date set forth below, I served the document(s) described below in the manner described below:

**AMERICAN BLIND & WALLPAPER FACTORY, INC.'S ANSWERS TO GOOGLE, INC.'S FIRST SET OF INTERROGATORIES**

**VIA MESSENGER**
Michael H. Page
Mark A. Lemley
Ravind S. Grewal
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Facsimile: (415) 397-7188

(BY FACSIMILE) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

(BY FEDERAL EXPRESS) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

**XX**    (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

(BY U.S. MAIL) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

Executed on June 10, 2005, at San Francisco, California.

_____        _____
           Patricia Cranmer                              (Signature)

HOWREY
SIMON
ARNOLD &

# EXHIBIT F

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

KLAUS H. HAMM
KHAMM@KVN.COM

November 10, 2005

**VIA FACSIMILE AND U.S. MAIL**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
26th Floor
Chicago, IL  60606

Re:    <u>Google Inc. v. American Blind & Wallpaper Factory, Inc.</u>,
       <u>USDC ND Cal. Case No. C-03-5340</u>

Dear David:

I write regarding deficiencies in American Blind's responses to Google's first set of interrogatories.  Specifically:

- Interrogatory No. 2 requests American Blind to identify all communications relating to Google between American Blind and any other party.  In response, American Blind indicates that it will produce only electronic communications between American Blind and Google "regarding Google's sale of American Blind's trademarks as keywords" and monthly invoices received from Google. This response is insufficient for several reasons.  First, American Blind must identify or produce all communications with Google relevant to this suit, not just electronic communications and not just those communication related to topics of American Blind's choosing.  Second, American Blind must identify or produce communications relating to Google that American Blind has had with third parties.  Please identify or produce the requested communications.

- Interrogatory No. 3 requests American Blind to identify all persons with personal knowledge of facts relevant to this lawsuit.  In response, American Blind references only those persons listed in American Blind's initial disclosures.  The scope of the initial disclosures and the information requested in this interrogatory, however, differ.  The initial disclosures require a listing of only those people with information that American Blind "may use" to support its claims.  Google's interrogatory, on the other hand, requests a listing of all persons with relevant

David A. Rammelt, Esq.
November 10, 2005
Page 2

knowledge, whether or not American Blind intends to use these individuals to support its claims. Please provide the requested information about all people known to American Blind who have personal knowledge of facts relevant to this lawsuit, including without limitation, all such past and present American Blind employees and any persons who have been confused by Google Sponsored Links that are triggered by terms that American Blind claims as its trademarks.

- In response to Interrogatory No. 5, American Blind references "a competitor of American Blind[.]" Please identify that competitor.

- Interrogatories Nos. 7-9 request American Blind to state all facts supporting its contentions that Google's actions have diluted American Blind's marks, have caused confusion among American Blind's customers and have damaged or injured American Blind. In response, American Blind states that each interrogatory is premature because American Blind is still taking discovery. But it is not premature for American Blind to provide specific information already known to it. Indeed, if American Blind currently possesses specific information that is responsive to these interrogatories, it must provide it. For example, in response to Interrogatory No. 8, American Blind cites "telephone calls from consumers" as evidence in support of its contention regarding consumer confusion. If American Blind plans to rely on such evidence, please provide a complete response to Google's interrogatory, including the identities of the consumers, when they called, with whom they spoke, and the precise nature of their confusion. Additionally, provide similar, specific information about those consumers, referenced by American Blind in its response to Interrogatory No. 9, who "unwittingly 'clicked' on a competitors' website."

If American Blind does not provide information currently within its possession now, Google will contest any attempt by American Blind to rely upon such information at a later date, including at trial.

Thank you for your attention to these issues.

Very truly yours,

Klaus H. Hamm

KHH/dbm

362067.01

# EXHIBIT G

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

KLAUS H. HAMM
KHAMM@KVN.COM

December 5, 2005

VIA FACSIMILE AND U.S. MAIL

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
26th Floor
Chicago, IL 60606

**Re:**   **Google Inc. v. American Blind & Wallpaper Factory, Inc.,**
         **SDC ND Cal. Case No. C-03-5340**

Dear David:

    I write in response to your letters and emails regarding the confidentiality designations on documents produced by Google.

    In your November 29, 2005 email you wrote that "literally tens of thousands of pages of documents produced to us . . . have been marked 'Confidential - Attorneys' Eyes Only' even though they do not . . . qualify for this heightened level of protection." Yet, you have not identified what documents you believe are improperly designated. It follows naturally from your refusal to identify the supposedly misdesignated documents that you have not explained why these documents "do not fall within one of the four narrow categories of material" that qualify for the "Confidential - Attorneys' Eyes" designation.

    If you let me know what documents you are complaining about, I will gladly consider your complaint. For example, a month ago, when you identified 338 pages that you believed we had misdesignated, I considered your complaint. Although I did not agree with your argument that we had misdesignated these pages under the protective order, in the interest of not wasting the parties' resources debating designations, I agreed that you could treat them as if we had designated them "Confidential." As I have previously informed you, and as my actions have demonstrated, we will quickly and reasonably consider additional complaints that we have misdesignated specific documents. You have not made any such complaints.

    As for your protestation in your November 22, 2005 letter that it would be unfair to burden you with "wad[ing] through tens, if not hundreds, of thousands of pages of Google

363368.01

David A. Rammelt, Esq.
December 5, 2005
Page 2

documents" in order to determine if Google misdesignated the documents, I don't see the burden. I assume that you requested these documents because you wanted to review them, and that you plan to do so.

In your November 29, 2005 email you made numerous requests that Google provide details about its document production. You asked us to:

- "identify specifically which documents Google has produced . . . in this case in response to our specific document requests;"
- "identify for me, by box of Bates number, which documents were being produced in response to each specific request in this case;" and/or
- "identify the source for each of the documents, or boxes."

Leaving aside the fact that I don't understand the difference between your first two requests, it is clear that we have no obligation to provide this level of detail. You didn't do so when you provided us with the one box of documents that you have produced thus far. Nor do the rules, which allow us to produce documents "as they are kept in the usual course of business," require us to do so.

Finally, when do you plan to produce to us a privilege log? I asked that you do so in my November 8, 2005 letter to you, and I have received no response. Also, when do you plan on fully responding to Google's first set of interrogatories? I identified specific deficiencies in your responses in my November 10, 2005 letter to you, and I have received no response. The date for our mediation is rapidly approaching, and if you're in possession of relevant information that we've requested, you must produce it.

As always, I am available if you would like to discuss any of these issues.

Very truly yours,

Klaus H. Hamm

KHH:daf

363368.01

# EXHIBIT H

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

KLAUS H. HAMM
KHAMM@KVN.COM

February 9, 2005

**VIA FACSIMILE**

David A. Rammelt, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
26th Floor
Chicago, IL  60606

       Re:    **Google Inc. v. American Blind & Wallpaper Factory, Inc.,**
               **SDC ND Cal. Case No. C-03-5340**

Dear David:

       I write because two months have passed and I have not received a response to my November 10, 2005 letter requesting further responses to certain interrogatories propounded by Google.  Among other deficiencies, I am particularly concerned about American Blind's failure to respond adequately to Interrogatory No. 8.  That interrogatory requested "all facts" supporting American Blind's contention that customers have been confused by the Google advertising practices at issue.  American Blind's response cited telephone calls it had received from consumers.  We have since requested that American Blind fully respond to the interrogatory by providing all facts regarding these alleged telephone calls.  For your reference, I attach my November 10, 2005 letter, as well as a follow-up letter dated December 5, 2005.

       If we don't receive an adequate response by Tuesday, February 14, 2006, we will file a motion to compel.

                     Very truly yours,

                     Klaus H. Hamm

KHH:daf
Enclosures

367037.01

# EXHIBIT I

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE

### SUITE 2600

### CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2501

EMAIL: cplater@kelleydrye.com

February 17, 2006

**VIA FACSIMILE**

Klaus Hamm
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

       Re:    Google Inc. v. American Blind & Wallpaper Factory, Inc.

Dear Klaus:

       In response to your correspondence of February 9, 2006, we submit the following supplementation to American Blind's answer to Interrogatory No. 8:

       **Supplemental Answer:** Subject to and without waiving any objections previously or presently made in response to this Interrogatory, American Blind submits that it does not maintain any formal records of telephone calls received from consumers with questions about orders which were mistakenly placed with another company due to confusion. American Blind has over 300 telephone sales representatives taking between 60 to 70 calls per day. These telephone sales representatives are instructed to focus on their productivity and are not instructed to monitor issues regarding consumer confusion. Logically, American Blind has no records of any contact or orders from these types of callers, since the caller is not a customer of American Blind, although such caller believes he or she is. Accordingly, American Blind cannot provide any additional information concerning these types of telephone calls at this time. American Blind does not maintain, nor could it maintain, any sort of record of consumers who may call the company and hang up once they realize that they have contacted the wrong company. Although American Blind does not have formal records of calls from confused consumers, there have been many anecdotal stories conveyed by the telephone sales representatives to their supervisors concerning calls received from consumers who believe that they have placed an order with American Blind, only to discover upon inquiring of the status of their orders that they have placed their orders with another company.

### KELLEY DRYE & WARREN LLP

Klaus Hamm
February 17, 2006
Page Two

     In addition to American Blind's evidence of consumer confusion, documents produced by Google in its first document production demonstrate that there has been profound consumer confusion in connection with Google's "sponsored links" program.

     Finally, this Interrogatory remains premature given that American Blind has not yet received Google's supplemental discovery responses as ordered by the court and no depositions have been taken in this case.  American Blind maintains all previously made objections and substantive answers in response to this Interrogatory.  American Blind will supplement this answer in the event that responsive information is discovered.

                         Sincerely,

                         Caroline C. Plater

CCP:ccp

cc:    David A. Rammelt